UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

──────────────────────────────── x

D. JOSEPH KURTZ, Individually and on :    Civil Action No. 1:14-cv-01142
Behalf of All Others Similarly Situated, :
                                        :    <u>CLASS ACTION</u>
                    Plaintiff, :
                                        :    OMNIBUS MEMORANDUM OF LAW IN
     vs.                              :    OPPOSITION TO THE MOTIONS OF
                                        :    DEFENDANTS KIMBERLY-CLARK
KIMBERLY-CLARK CORPORATION, et al., :    CORPORATION AND COSTCO
                                        :    WHOLESALE CORPORATION TO
                Defendants. :    DISMISS PLAINTIFF'S CLASS ACTION
                                        :    COMPLAINT

──────────────────────────────── x

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................1

II.   STATEMENT OF FACTS .........................................................................2

III.  LEGAL STANDARD................................................................................5

     A.    Plaintiff's Claims Satisfy Rule 9(b) ....................................................6

IV.  PLAINTIFF HAS STANDING TO CHALLENGE THE LABELING OF THE
KIMBERLY-CLARK FLUSHABLE PRODUCTS......................................7

     A.    New York Law Confers Standing on Plaintiff Kurtz for all Kimberly-
Clark Flushable Products ....................................................................9

     B.    New Jersey Law Confers Standing on Plaintiff Kurtz for all Kimberly-
Clark Flushable Products ....................................................................9

V.   PLAINTIFF HAS ADEQUATELY PLED CAUSATION .............................12

VI.  PLAINTIFF ADEQUATELY STATES A CLAIM UNDER THE NEW YORK
CONSUMER PROTECTION LAWS ...............................................16

     A.    Standards Applicable to New York General Business Law §§349 and 350..........16

     B.    Defendants Cannot Dispute the Sufficiency Plaintiff's GBL Claims..................17

VII.  PLAINTIFF ADEQUATELY STATES A CLAIM UNDER THE NEW JERSEY
CONSUMER FRAUD ACT ................................................................18

     A.    Unlawful Conduct ..........................................................................18

     B.    Ascertainable Loss .........................................................................19

          1.    Plaintiff Did Not Receive the Benefit of the Bargain with
Defendants ................................................................................20

          2.    Plaintiff Incurred "Out-of-Pocket" Losses.................................23

     C.    Plaintiff Has Sufficiently Plead a Causal Relationship Between
Defendants' Unlawful Conduct and Plaintiff's Ascertainable Loss ....................25

VIII.  PLAINTIFF ADEQUATELY STATED A CLAIM FOR NEGLIGENT
MISREPRESENTATION.......................................................................26

     A.    Privity.............................................................................................27

Page

B.      Economic Loss .......................................................................................29

IX.   PLAINTIFF ADEQUATELY STATED A CLAIM FOR BREACH OF
      EXPRESS WARRANTY ...................................................................................31

      A.      Privity Between Plaintiff and Defendant Kimberly-Clark is Not Required ..........32

      B.      Defendants Have Been Adequately Notified of Consumers' Claims for
              Breach of Warranty ...............................................................................33

X.    PLAINTIFF ADEQUATELY STATED A CLAIM FOR UNJUST
      ENRICHMENT .................................................................................................35

      A.      Plaintiff Has Sufficiently Pled Unjust Enrichment Under Both New York
              and New Jersey Law ...............................................................................35

      B.      Plaintiff's Unjust Enrichment Claim is Not Duplicative ......................................36

      C.      Plaintiff's Unjust Enrichment Claim Has Been Pled in the Alternative ................37

      D.      Defendants' Additional Arguments Challenging Plaintiff's Unjust
              Enrichment Claim Under New Jersey Law Are Equally Meritless ......................39

              1.      Plaintiff is Not Required to Plead a Direct Relationship with
                      Kimberly-Clark ...........................................................................39

              2.      Plaintiff's Unjust Enrichment Claim is Based On a Contract
                      Theory of Recovery .....................................................................40

XI.   PLAINTIFF'S CLAIMS CAN BE CERTIFIED AS A NATIONWIDE CLASS.............42

XII.  CONCLUSION...................................................................................................44

# TABLE OF AUTHORITIES

**Page**

**CASES**

*18 KT.TV, LLC v. Entest Biomedical, Inc.*,
No. 3:11cv244, 2011 U.S. Dist. LEXIS 128435
(M.D. Pa. Nov. 7, 2011).................................................................................................38

*Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*,
910 F. Supp. 2d 543 (S.D.N.Y. 2012)..........................................................................27

*Ackerman v. Coca-Cola Co.*,
No. 09CV395 (DLI) (RML), 2013 U.S. Dist. LEXIS 184232
(E.D.N.Y. July 18, 2013).............................................................................................17

*Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*,
17 A.D.3d 825 (3d Dep't 2005)....................................................................................30

*Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n.*,
981 F. Supp. 2d 153 (E.D.N.Y. 2013) .........................................................................16

*Arcand v. Brother Int'l Corp.*,
673 F. Supp. 2d 282 (D.N.J. 2009) ..............................................................................25

*Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*,
No. 93-CV-3068, 1996 U.S. Dist. LEXIS 9013
(S.D.N.Y. June 27, 1996).............................................................................................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................5

*Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*,
No. 03-CV-4892, 2006 U.S. Dist. LEXIS 66078
(E.D.N.Y. Sept. 15, 2006)............................................................................................34

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).............................................................................................6

*Ault v. J.M. Smucker Co.*,
No. 13 Civ 3409 (PAC), 2014 U.S. Dist. LEXIS 67118
(S.D.N.Y. May 15, 2014)..................................................................................9, 18, 31, 32

*Avola v. Louisiana-Pacific Corp.*,
No. 11-CV-4053 (PKC), 2013 U.S. Dist. LEXIS 122930
(E.D.N.Y. Aug. 28, 2013).............................................................................................32

**Page**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................5, 6

*Blennis v. Hewlett-Packard Co.*,
   No. 07-00333 JF, 2008 U.S. Dist. LEXIS 106464
   (N.D. Cal. March 25, 2008) ..............................................................................38

*Burke v. Weight Watchers Int'l, Inc.*,
   No. 2:12-06742 (WJM), 2013 U.S. Dist. LEXIS 149249
   (D.N.J. Oct. 17, 2013)....................................................................................9, 10

*Century Pac., Inc. v. Hilton Hotels Corp.*,
   No. 03 Civ. 8258, 2004 U.S. Dist. LEXIS 6904
   (S.D.N.Y. Apr. 21, 2004).................................................................................28

*Cohen v. JP Morgan Chase & Co.*,
   498 F.3d 111 (2d Cir. 2007)............................................................................16

*Computer Strategies, Inc. v. Commodore Bus. Machines, Inc.*,
   105 A.D.2d 167 (2d Dep't 1984) .....................................................................34

*Curley v. AMR Corp.*,
   153 F.3d 5 (2d Cir. 1998) ................................................................................43

*Dal Ponte v. Am. Mortg. Express Corp.*,
   No. 04-2152, 2006 U.S. Dist. LEXIS 57675
   (D.N.J. Aug. 17, 2006).....................................................................................42

*Daniels v. Forest Riv., Inc.*,
   No. 07-4227, 2013 N.Y. Misc. LEXIS 2915
   (N.Y. Sup. Ct. June 28, 2013).....................................................................31, 33

*DiBartolo v. Abbott Labs.*,
   914 F. Supp. 2d 601 (S.D.N.Y. 2012)..............................................................28

*Dicuio v. Brother Int'l Corp.*,
   No. 11-144 (FLW), 2012 U.S. Dist. LEXIS 112047
   (D.N.J. Aug. 9, 2012).......................................................................................23

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) .............................................................43

**Page**

*Dzielak v. Whirlpool Corp.*,
  No. 2:12-CV-0089 (KM), 2014 U.S. Dist. LEXIS 83148
  (D.N.J. June 16, 2014) ................................................................................................23

*Ebin v. Kangadis Food, Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014), *mot. to reconsider denied*,
  2014 U.S. Dist. LEXIS 44780 (S.D.N.Y. Mar. 19, 2014) .................................14, 42

*Ebin v. Kangadis Food Inc.*,
  No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 174174
  (S.D.N.Y. Dec. 11, 2013) .................................................................6, 26, 27, 28

*Elias v. Ungar's Food*,
  252 F.R.D. 233 (D.N.J. 2007)......................................................................... *passim*

*Esposito v. Ocean Harbor Cas. Ins. Co.*,
  No. 13CV7073 (SJF), 2013 U.S. Dist. LEXIS 179262
  (E.D.N.Y. Dec. 19, 2013) ............................................................................................17

*Ford Motor Co. v. Edgewood Props.*,
  No. 06-1278, 2012 U.S. Dist. LEXIS 125197
  (D.N.J. Aug. 31, 2012)..................................................................................................31

*Franulovic v. Coca-Cola Co.*,
  No. 07-539 (RMB), 2007 U.S. Dist. LEXIS 79732
  (D.N.J. Oct. 25, 2007)...................................................................................................22

*Gale v. IBM*,
  9 A.D.3d 446 (2d Dep't 2004) ...............................................................15, 16, 17

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  No. 13-CV-3073 (NSR), 2014 U.S. Dist. LEXIS 47180
  (S.D.N.Y. Mar. 27, 2014) ..................................................................................12, 32

*Graco, Inc. v. PMC Global, Inc.*,
  No. 08-1304 (FLW), 2009 U.S. Dist. LEXIS 26845
  (D.N.J. Mar. 31, 2009)..................................................................................................38

*Gray v. Bayer Corp.*,
  No. 08-4716, 2009 U.S. Dist. LEXIS 48181
  (D.N.J. June 9, 2009) ...................................................................................................41

*Green v. Green Mountain Coffee Roasters, Inc.*,
  279 F.R.D. 275 (D.N.J. 2011).................................................................................11, 12

**Page**

*Hammer v. Vital Pharms., Inc.*,
   No. 11-4124, 2012 U.S. Dist. LEXIS 40632
   (D.N.J. Mar. 26, 2012) ...................................................................................18, 23, 24

*Hehr Int'l, Inc. v. Sika Corp.*,
   No. 12-1624 (FSH), 2013 U.S. Dist. LEXIS 109355
   (D.N.J. Aug. 5, 2013) ..........................................................................................31

*Hemy v. Perdue Farms, Inc.*,
   No. 11-888, 2011 U.S. Dist. LEXIS 137923
   (D.N.J. Nov. 30, 2011) .....................................................................................11, 12

*Hodgson v. Isolatek Int'l Corp.*,
   300 A.D.2d 1051 (4th Dep't 2002) ......................................................................29

*Hoffman v. Supplements Togo Mgmt., LLC*,
   No. A-5022-09T3, 2011 N.J. Super. .....................................................................37

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
   No. 11-1857, 2012 U.S. Dist. LEXIS 162800
   (D.N.J. Nov. 14, 2012) .........................................................................................31

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) .........................................................6, 28, 36

*In re Bridgestone/Firestone Inc. v. Wilderness Tires Prods. Liab. Litig.*,
   155 F. Supp. 2d 1069 (S.D. Ind. 2001) ............................................................34, 35

*In re Frito-Lay N. Am., Inc.*,
   No. 12-MD-2413 (RRM) (RLM), 2013 U.S. Dist. LEXIS 123824
   (E.D.N.Y. Aug. 29, 2013) ...........................................................................8, 9, 35, 44

*In re Grand Theft Auto Video Game Consumer Litig.*,
   No. 06 MD 1739, 2006 U.S. Dist. LEXIS 78064
   (S.D.N.Y. Oct. 25, 2006) ......................................................................................43

*In re Mercedes Benz Tele Aid Contract Litig.*,
   257 F.R.D. 46 (D.N.J. 2009) .............................................................................35, 42

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   379 F. Supp. 2d 348 (S.D.N.Y. 2005) ..................................................................17

Page

*In re Scotts EZ Seed Litig.*,
   No. 12, CV 4727 (VB), 2013 U.S. Dist. LEXIS 73808
   (S.D.N.Y. May 22, 2013) ........................................................................................33

*In re Toshiba America. HD DVD Marketing & Sales Practices Litigation,*
   No. 08-939, 2009 U.S. Dist. LEXIS 82833
   (D.N.J. Sept. 11, 2009) ....................................................................................15, 16

*Int'l Union of Operating Eng'rs Local 68 Welfare Fund v. Merck & Co.*,
   894 A.2d 1136 (N.J. App. Div. 2006), *overruled on other grounds*, 192 N.J. 372 (2007) .....42

*Kalow & Springut, LLP v. Commence Corp.*,
   No. 07-3442, 2012 U.S. Dist. LEXIS 173785
   (D.N.J. Dec. 7, 2012) ............................................................................................42

*Kam Int'l v. Franco Mfg. Co*.,
   No. 2:10-02733, 2010 U.S. Dist. LEXIS 135455
   (D.N.J. Dec. 22, 2010) ..........................................................................................31

*Koch v. Acker, Merrall & Condit Co*.,
   18 N.Y.3d 940 (2012) ............................................................................................17

*Kuzian v. Electrolux Home Prods*.,
   937 F. Supp. 2d 599 (D.N.J. 2013) ..........................................................................6

*Lamont v. OPTA Corp.*,
   No. A-0710-05T3, 2006 N.J. Super Unpub. LEXIS 1081
   (Super Ct. App. Div. June 16, 2006) .......................................................................22

*Lee v. Carter Reed Co. LLC*,
   203 N.J. 496 (2010) ....................................................................................18, 24, 25

*Leon v. Rite Aid Corp.*,
   774 A.2d 674 (N.J. App. Div. 2001) ........................................................................19

*Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*,
   879 F. Supp. 2d 243 (E.D.N.Y. 2012) ......................................................................6

*Lieberson v. Johnson & Johnson Consumer Cos*.,
   865 F. Supp. 2d 529 (D.N.J. 2011) ..........................................................11, 12, 13, 22

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................7, 8

**Page**

*Lynch v. Tropicana Prods.*,
  No. 2:11-cv-07382, 2013 U.S. Dist. LEXIS 82829
  (D.N.J. June 12, 2013) ........................................................................................................41

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) ..........................................................................................................28

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
  244 F.R.D. 204 (S.D.N.Y. 2007) .........................................................................................30

*Maniscalco v. Brother Int'l Corp.*,
  627 F. Supp. 2d 494 (D.N.J. 2009) ...............................................................14, 21, 24, 26

*Marcus v. BMW of N. Am.*,
  687 F.3d 583 (3d Cir. 2012) .............................................................................9, 10, 12

*Marcus v. BMW of N. Am., LLC*,
  No. 08-5859, 2010 U.S. Dist. LEXIS 122908
  (D.N.J. Nov. 19, 2010) ...............................................................................................14, 26

*McCalley v. Samsung Elecs. Am., Inc.*,
  No. 07-2141, 2008 U.S. Dist. LEXIS 28076
  (D.N.J. Mar. 31, 2008) ...............................................................................................15, 24

*Medinol Ltd. v. Boston Sci. Corp.*,
  346 F. Supp. 2d 575 (S.D.N.Y. 2004) .................................................................................34

*Mickens v. Ford Motor Co.*,
  900 F. Supp. 2d 427 (D.N.J. 2012) ...............................................................................21, 22

*Miller v. Am. Family Publishers*,
  663 A.2d 643 (N.J. Super. Ct. Ch. Div. 1995) ...................................................................19

*MK Strategies LLC v. Ann Taylor Stores Corp.*,
  567 F. Supp. 2d 729 (D.N.J. 2008) ...............................................................................35, 38

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
  331 F.3d 406 (3d Cir. 2003) ...................................................................................................6

*Murrin v. Ford Motor Co.*,
  303 A.D.2d 475 (2d Dep't 2003) ........................................................................................33

**Page**

*Nationwide CATV Auditing Servs., Inc. v. Cablevision Sys. Corp.*,
No. 12-CV-3648 (SJF) (ETB), 2013 U.S. Dist. LEXIS 65795
(E.D.N.Y. May 7, 2013) ...................................................................................17

*Noble v. Porsche Cars N. Am., Inc.*,
694 F. Supp. 2d 333 (D.N.J. 2010) ..................................................................30

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1995) ........................................................................................16

*Palmeri v. LG Elecs. USA*,
No. 07-5706 (JAG), 2008 U.S. Dist. LEXIS 58374
(D.N.J. July 30, 2008) ......................................................................................38

*Payne v. Fujifilm U.S.A., Inc.*,
No. 07-385 (JAG), 2007 U.S. Dist. LEXIS 94765
(D.N.J. Dec. 28, 2007) .....................................................................................42

*Pelman v. McDonald's Corp.*,
396 F.3d 508 (2d Cir. 2005)..............................................................................18

*Perkins v. DaimlerChrysler Corp.*,
890 A.2d 997 (N.J. App. Div. 2006)..................................................................22

*Phillips Petroleum v. Shutts*,
472 U.S. 797 (1985) .........................................................................................43

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008)................................................................................6

*Pinello v. Andreas Stihl Ag & Co. KG*,
No. 8:08-CV-004452, 2011 WL 1302223
(N.D.N.Y. Mar. 31, 2011)..................................................................................27

*Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*,
No. 08 Civ. 10578, 2010 U.S. Dist. LEXIS 27609
(S.D.N.Y. Mar. 12, 2010) ...........................................................................36, 37

*Posner v. Minn. Mining & Mfg. Co., Inc.*,
697 F. Supp. 122 (E.D.N.Y. 1988) ...................................................................44

*Praxair, Inc. v. Gen. Insulation Co.*,
611 F. Supp. 2d 318 (W.D.N.Y. 2009) .........................................................29, 30

**Page**

*Pullman v. Alpha Media Publ., Inc.*,
No. 12-CV-1924, 2013 U.S. Dist. LEXIS 50697
(S.D.N.Y. Jan. 11, 2013)...................................................................................6, 7

*Rait v. Sears, Roebuck & Co.*,
No. 08-2461, 2009 U.S. Dist. LEXIS 7540
(D.N.J. Feb. 3, 2009)........................................................................................35

*Randy Knitwear v. Am. Cyanamid Co.*,
11 N.Y.2d 5 (1962) ...........................................................................................33

*Refundo, LLC v. Drake Enters.*,
No. 13-643 (JLL), 2013 U.S. Dist. LEXIS 57671
(D.N.J. Apr. 22, 2013) ......................................................................................35

*Sang Lan v. Time Warner, Inc.*,
No. 11 Civ. 2870, 2014 U.S. Dist. LEXIS 25382
(S.D.N.Y. Feb. 25, 2014)...................................................................................36

*Serrano v. Cablevision Sys. Corp.*,
863 F. Supp. 2d 157 (E.D.N.Y. 2012) ...............................................................18

*Singer v. Beach Trading Co., Inc.*,
876 A.2d 885 (N.J. App. Div. 2005)..................................................................27

*Smajlaj v. Campbell Soup Co.*,
782 F. Supp. 2d 84 (D.N.J. 2011) ................................................20, 21, 22, 23

*Snyder v. Farnam Cos.*,
792 F. Supp. 2d 712 (D.N.J. 2011) ....................................................................32

*Spagnola v. Chubb Corp.*,
574 F.3d 64 (2d Cir. 2009)................................................................................16

*St. John's Univ. v. Bolton*,
757 F. Supp. 2d 144 (E.D.N.Y. 2010) .........................................................35, 38

*Stewart v. Beam Global Spirits & Wine, Inc.*,
877 F. Supp. 2d 192 (D.N.J. 2012) ..............................................35, 39, 40, 41

*Stewart v. Smart Balance, Inc.*,
No. 11-6174 (JLL), 2012 U.S. Dist. LEXIS 138454
(D.N.J. June 26, 2012) ........................................................................... *passim*

- x -

**Page**

*Strzakowlski v. GMC*,
No. 04-4740, 2005 U.S. Dist. LEXIS 18111
(D.N.J. Aug. 16, 2005)..........................................................................14, 15

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001)...........................................................................29

*Szymczak v. Nissan N. Am., Inc.*,
No. 10CV7493 (VB), 2011 U.S. Dist. LEXIS 153011
(S.D.N.Y. Dec. 16, 2011) ...............................................................................44

*Talalai v. Cooper Tire & Rubber Co.*,
823 A.2d 888 (N.J. Law Div. 2001) ...............................................19, 23, 24

*Thiedemann v. Mercedes-Benz USA, LLC*,
183 N.J. 234 (2005) .......................................................................19, 22, 23

*Thompson v. Gjivoje*,
687 F. Supp. 922 (S.D.N.Y. 1988)..................................................................44

*Triple R Farm P'ship v. IBA, Inc.*,
21 A.D.3d 1260 (4th Dep't 2005) ..................................................................30

*U.S. ex Rel. Polansky v. Pfizer, Inc.*,
No. 04-CV-0704 (ERK), 2009 U.S. Dist. LEXIS 43438
(E.D.N.Y. May 22, 2009) ..................................................................................6

*Union Ink Co. v. AT&T Corp.*,
801 A.2d 361 (N.J. App. Div. 2002)..............................................................19

*Varacallo v. Mass. Mut. Life Ins. Co.*,
752 A.2d 807 (N.J. App. Div. 2000)..............................................................25

*Vertex Constr. Corp. v. T.F.J. Fitness L.L.C.*,
No. 10 Civ 683, 2011 U.S. Dist. LEXIS 135453
(E.D.N.Y. Nov. 23, 2011) ..............................................................................38

*Wade v. Tiffin Motorhomes, Inc.*,
686 F. Supp. 2d 174 (N.D.N.Y 2009) ...........................................................30

*Weiss v. Polymer Plastics Corp.*,
21 A.D.3d 1095 (2d Dep't 2005) ...................................................................29

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 8(a)(2) ...................................................................................................5
    Rule 8(d)(2) .................................................................................................37
    Rule 9(b) ...............................................................................5, 6, 23, 36
    Rule 12(b)(6) ...........................................................................................1, 5
    Rule 23 .......................................................................................................44

U.C.C. §2-607(3)(a) ......................................................................................34

New York General Business Law
    §349 ............................................................................................. *passim*
    §350 ............................................................................................. *passim*

New Jersey Consumer Fraud Act ....................................................... *passim*

Plaintiff D. Joseph Kurtz ("Plaintiff") respectfully submits this Omnibus Memorandum of Law in Opposition to the Motions of Defendants Kimberly-Clark Corporation ("Kimberly-Clark") and Costco Wholesale Corporation ("Costco" and, together with Kimberly-Clark, "Defendants") to Dismiss Plaintiffs' Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     PRELIMINARY STATEMENT

Plaintiff's claim is simple and straightforward: Defendants falsely and misleadingly label and market their Flushable Products, defined below, as "sewer and septic safe" and as containing a unique feature – the ability to "break up after flushing" – that regular non-flushable products, including wipes, do not contain.  Defendants encourage consumers to use the Flushable Products as they would use toilet paper.  In truth, Flushable Products are not flushable and do not break down in a manner that would make them safe to flush, safe for home plumbing, or safe for sewer and septic systems.

Kimberly-Clark's and Costco's separate motions to dismiss do not provide any support for their flushability representations and, instead, assert meritless arguments that primarily raise issues of fact not appropriate for resolution on a motion to dismiss.  Defendant Kimberly-Clark argues that Plaintiff lacks standing to bring claims for all Flushable Products and that his claims should be limited to those products he purchased and used.  Numerous cases, however, hold that a putative class representative can represent a class of consumers of all products, even ones that the plaintiff did not buy, as long as the products were marketed with a consistent scheme and identical misrepresentations and defects.  As detailed in a Plaintiff's complaint, that is the case here (*see* ¶¶2, 4, 14-17, 19-20, 23-25), and, in any event, the issue of the scope of the class can, and should, await class certification proceedings.

As detailed herein, Plaintiff has adequately pleaded violations of New York and New Jersey consumer protection laws and claims for negligent misrepresentation, express warranty and unjust

enrichment.  Defendants' challenges to the sufficiency of these allegations should be rejected and, it is respectfully submitted, Defendants' motions should be denied in their entirety.

## II.     STATEMENT OF FACTS

Kimberly-Clark develops, markets and manufactures a variety of products as "flushable." Kimberly-Clark encourages consumers to flush the following products: Cottonelle Gentle Care Flushable Cleansing Cloths with Aloe & E, Cottonelle Fresh Folded Wipes, Cottonelle Soothing Clean Flushable Moist Wipes with Aloe, Scott Naturals Flushable Moist Wipes, Scott Naturals Flushable Moist Wipes with Aloe Vera, Scott Naturals Folded Flushable Moist Wipes, Pull-Ups Big Kid Flushable Wipes, U by Kotex Refresh Wipes, Poise Intimate Cleansing Cloths, Kleenex Cottonelle Flushable Moist Wipes Refills, Scottex Pure Sensitive Wipes, Scottex Hygienic Comfort Wipes, Scottex Naturally Gentle Wipes, Scottex Junior Wipes, Scottex Fresh Wipes, Andrex Washlets Flushable Toilet Tissue Wipes, and Andrex Kids Flushable Toilet Tissue Wipes (the "Kimberly-Clark Flushable Products").  ¶2.[1]

Plaintiffs recalls, and alleges in his Complaint, that he purchased Cottonelle FreshCare Flushable Wipes & Cleansing Cloths ("Cottonelle Flushable Wipes"), which are prominently labeled as "flushable" and "sewer and septic safe" in various drug stores and supermarkets in both Brooklyn, New York and Elberon, New Jersey.  ¶¶14, 73; Kurtz Decl. ¶6.[2]  The webpage for Cottonelle Flushable Wipes says that they may be flushed safely down toilets because they are made using "a patented dispersible technology, which means that when used as directed they break up after flushing and clear properly maintained toilets, drainlines, sewers, pumps, and septic and municipal treatment systems."  ¶14.  Kimberly-Clark labels, and generally touts the supposed "flushability" of all the

---

[1]    "¶__" refers to Plaintiff's Complaint, filed on February 21, 2014.

[2]    "Kurtz Decl. ¶__" refers to the Declaration of D. Joseph Kurtz.

Kimberly-Clark Flushable Products, in a nearly identical way.  For instance, the Complaint provides depictions of Cottonelle Flushable Wipes and Scott Naturals Flushable Wipes packaging – both of which are manufactured by defendant Kimberly-Clark.  ¶¶16, 19.  Both products' packaging have the word "flushable" clearly displayed in the product name and both display claims that the wipes are safe to be flushed.  *Id*.  Cottonelle Flushable Wipes prominently feature a circular logo containing with the words "sewer and septic safe" and Scott Naturals Flushable Wipes also have a circular logo with the words "breaks up after flushing." *Id.*  The same marketing and sales strategy, labeling the products flushable and stating that they are "safe for sewers and septics" and "break up after flushing[,]" appears on the packaging of  virtually all of the Flushable Products Kimberly-Clark manufactures. ¶19.  In addition, Kimberly-Clark's Flushable Products all have webpages containing the same message regarding flushability.  ¶20.

Defendant Costco manufactures and sells Kirkland Signature[3] Moist Flushable Wipes ("Kirkland Flushable Wipes").  ¶2.  The Kirkland Flushable Wipes product name, in and of itself, promotes its supposed "flushability."  The label on the packaging of Kirkland Flushable Wipes is equally blatant in its descriptiveness, conspicuously using phrases such as "moist flushable wipes" and "safe for well-maintained sewer & septics." ¶23.  The product webpage for Kirkland Flushable Wipes contains a "Frequently Asked Questions on Flushability" section, which provides Costco's response to the question as to whether the wipes are truly flushable, stating as follows: "Yes, Kirkland Signature™ Moist Flushable Wipes comply with industry guidelines and are proven to pass through a home's well-maintained toilet, pump and drain line without clogging.  The wipe is very different than other wipes and made of a special material."  ¶26.

---

[3]    Costco manufactures numerous products, including Flushable Products, under its private label Kirkland Signature.  *See* ¶2; Reich Decl. ¶6, Exhibit D.

- 3 -

The representations made by Kimberly-Clark and Costco concerning the flushability of the Kimberly-Clark Flushable Products and Kirkland Flushable Wipes (collectively referred to as the "Flushable Products") are false.

The Flushable Products are not safe to flush.  The Flushable Products are not safe for sewer or septic systems.  The Flushable Products are not safe for drain lines.

As alleged, rather than breaking up after flushing, the Flushable Products remain largely intact.  *See* ¶3.  According to various studies, the Flushable Products remain intact not only after flushing, but also as they attempt to pass through homeowners plumbing, sewer pipes and, in instances where they reach so far, waste treatment plants.  ¶¶50-53.  Flushable Products are known to have caused a wide-variety of plumbing issues to piping, septic tanks and sewers in homes across the country.  *See generally* ¶¶53-71.  There have been countless new articles, television news segments, as well as internet video coverage describing the damage attributed to Flushable Products and other products similarly advertised as flushable because they do not break down.  ¶¶3, 31-40, 72. Even the web pages of manufacturers and retailers of these products contain customer complaints that repeat virtually identical experiences of damage caused as a result of the use of products that purport to be (but are not) flushable.  ¶87 (posts on Costco's webpage); ¶88 (posts on Kimberly-Clark's webpage).

Plaintiff Kurtz alleges that he incurred damage to two of his homes – one in New York, and the other in New Jersey – as a result of using the Flushable Products.  ¶74; Kurtz Decl. ¶9.  Plaintiff states in the Complaint that his home plumbing was clogged, his sewer line backed up, and that the plumbers he hired to fix the issues attributed the problems to the use of Defendants' Flushable Products.  ¶74.  These allegations are similar to those described in publicly-made complaints by

- 4 -

other homeowners.   ¶87 (posts of consumer complaints on Costco's webpage); ¶88 (posts of consumer complaints on Kimberly-Clark's webpage).

Plaintiff alleges that he was induced to purchase the Flushable Products by Defendants' misrepresentations.   ¶81.   The labels on the Flushable Products used words like "flushable," ¶¶15, 23, and statements like "break up after flushing", ¶¶14-16, and "safe for well-maintained sewer & septics[,]" ¶23, to encourage consumers to purchase and flush the Flushable Products.   In the Complaint, Plaintiff alleges that had he known that these representations were untrue, he would not have purchased and/or paid the purchase price for the Flushable Products.   ¶4.   Plaintiff was damaged by his purchases of the Flushable Products as: (a) the products did not function in the way they were advertised to perform; and (b) he was economically damaged by the monetary cost he incurred as a result of using the Flushable Products in his home.   ¶77.

## III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   To avoid dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).[4]   To satisfy Rule 12(b)(6), a plaintiff's short and plain statement of the claim need only "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Even to extent that Fed. R. Civ. P. 9(b) applies, the accompanying "heightened pleading standard for fraud claims does not require the plaintiffs to come forward with 'proof' at this early

---

[4]   Unless otherwise noted, all emphasis is added and citations and internal quotation marks are omitted.

stage of the litigation." *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 273 (E.D.N.Y. 2012).[5]

In evaluating the sufficiency of a complaint "the [c]ourt must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 452 (E.D.N.Y. 2013); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A district court, in weighing a motion to dismiss, asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Kuzian v. Electrolux Home Prods.*, 937 F. Supp. 2d 599, 606 (D.N.J. 2013) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)). Indeed, in *Bell Atlantic*, the Supreme Court ruled that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl.*, 550 U.S. at 556.

A.    **Plaintiff's Claims Satisfy Rule 9(b)**

Plaintiff, in his Complaint, satisfies the elements of Rule 9(b). The Second Circuit has held that for a complaint to satisfy Rule 9(b), it should "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). In essence, a plaintiff may "set forth the who, what, when, where and how of the alleged fraud." *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 174174, at *15 (S.D.N.Y. Dec. 11, 2013) (quoting *U.S. ex Rel. Polansky v. Pfizer,*

---

[5]    "Rule 9(b) merely requires that the Complaint provide[ ] sufficient information for the Defendant[s] to prepare a defense as to the particular allegations of fraud." *Pullman v. Alpha Media Publ., Inc*., No. 12-CV-1924, 2013 U.S. Dist. LEXIS 50697, at *81 (S.D.N.Y. Jan. 11, 2013). Furthermore, Rule 9(b)'s purpose is simply to provide notice and "not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003).

*Inc.*, No. 04-CV-0704 (ERK), 2009 U.S. Dist. LEXIS 43438, at *11 (E.D.N.Y. May 22, 2009)).

However, "every element of the who, what, where, why and when of the fraud does not need to be

pled with utmost detail so long as the scheme of fraud itself is specifically and particularly pled."

*Pullman*, 2013 U.S. Dist. LEXIS 50697, at *42.

The Complaint: (1) details the fraudulent statements – *e.g.*, "flushable," "safe for well-

maintained sewers and septics" and "break up after flushing"; (2) identifies Defendants as the

speakers for the representations made on the labeling of their respective Flushable Products; (3)

identifies where and when[6] the untrue flushability representations were made; and (4) explains, with

the support of studies and countless reports, why statements made by Defendants were false,

including, for example, because the Flushable Products clog pipes and sewers.  The Flushable

Products, simply stated, are not flushable and are not safe to be flushed.

## IV.   PLAINTIFF HAS STANDING TO CHALLENGE THE LABELING OF
##        THE KIMBERLY-CLARK FLUSHABLE PRODUCTS

There is no dispute that Plaintiff alleges he was damaged as a result of using Cottonelle

Flushable Wipes, a Kimberly-Clark Flushable Product.  ¶74.  There is no dispute that Plaintiff

alleges he suffered economic harm as a result of misrepresentations contained on the labels of

Cottonelle Flushable Wipes, a Kimberly-Clark Flushable Product.  ¶¶76-77.  As such, there is no

dispute that Plaintiff has standing to pursue his claims as applied to his purchase and use of

Cottonelle Flushable Wipes.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)

(detailing the elements of Article III standing).

---

[6]   Where? On the actual labels of the Flushable Products and, specifically with respect to Plaintiff,
on the label of the Flushable Products he purchased in Brooklyn, New York and Ocean Township,
New Jersey.  When?  Since the Flushable Products were introduced to the marketplace and,
specifically with respect to Plaintiff, in the early 2013 time frame.

Through his Complaint, Plaintiff seeks to represent a putative class of consumers who were similarly harmed through their purchase of Cottonelle Flushable Wipes. ¶90. The representation of this set of putative class members is rooted in the fact that the Cottonelle Flushable Wipes are labeled as flushable when, according to the Complaint, they are not safe to flush. Plaintiff likewise seeks to represent a putative class of consumers who were similarly harmed through their purchase of Kimberly-Clark Flushable Products. *Id.* The representation of this *same* set of putative class members is rooted in the fact that the Kimberly-Clark Flushable Products – *in precisely the same manner as Cottonelle Flushable Wipes* – are labeled as flushable when, according to the Complaint, they are not safe to flush.

Kimberly-Clark has an overarching, singular marketing strategy and labeling protocol for its Kimberly-Clark Flushable Products: they are ostensibly flushable. Kimberly-Clark advertises Cottonelle Flushable Wipes as part of an overall product line that is comprised of the Kimberly-Clark Flushable Products. Identical labeling strategy. Identical advertising campaign. Identical "flushability" feature. Defendant Kimberly-Clark, in fact, has one product line that it calls "flushable" and a second product line that it calls "non-flushable."[7] Defendant Kimberly-Clark likewise set up a webpage to educate its consumers about whether to "Flush? Or Don't Flush?" and, in so doing, separated its product lines into those that are "not clearly labeled as safe for flushing" and those that are "flushable." Reich Decl. ¶4, Exhibit A.

Because the Kimberly-Clark Flushable Products are unquestionably part of a single product line, New York and New Jersey law confers standing on a plaintiff who may not have purchased all of the items in the product line. *See In re Frito-Lay N. Am., Inc*., No. 12-MD-2413 (RRM) (RLM), 2013 U.S. Dist. LEXIS 123824, at *41 (E.D.N.Y. Aug. 29, 2013) (reasoning that a plaintiff has

---

[7]   http://www.kimberly-clark.com/newsroom/media_resources/safetoflush.aspx (last visited on June 26, 2014).

standing to assert class claims for products he did not purchase so long as the products and alleged misrepresentations are "sufficiently similar"); *Burke v. Weight Watchers Int'l, Inc.*, No. 2:12-06742 (WJM), 2013 U.S. Dist. LEXIS 149249, at *10 (D.N.J. Oct. 17, 2013) (determining that plaintiff had standing to bring claims for all of defendant's Diet Bars, not just the specific Diet Bar she purchased, because plaintiff's claims "[are] the same with respect to all of the Diet Bars, the Diet Bars are closely related because they belong to the same product line, and the Defendants are the same").

### A.   New York Law Confers Standing on Plaintiff Kurtz for all Kimberly-Clark Flushable Products

The Court in *Ault v. J.M. Smucker Co.*, No. 13 Civ 3409 (PAC), 2014 U.S. Dist. LEXIS 67118, at *21-*22 (S.D.N.Y. May 15, 2014) considered the question as to whether a plaintiff who did not purchase all of the items in Crisco's oil product line can have Article III standing to bring claims against all Crisco Oil products labeled "All Natural."   Judge Crotty concluded that the plaintiff did, indeed, have standing to bring claims relating to the entire Crisco oil product line.  *See id*.  Defendants fail to cite a single New York case that says otherwise.  The lone New York case that defendant Kimberly-Clark cited on this topic clearly cuts in favor of Plaintiff.  *See Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *42 (holding that "because the plaintiffs have Article III standing, at this stage, they may press claims, on behalf of putative class members, arising out of products that the plaintiffs did not themselves purchase").  Kimberly-Clark Mem. at 7, n.4.[8]

### B.   New Jersey Law Confers Standing on Plaintiff Kurtz for all Kimberly-Clark Flushable Products

The Third Circuit further endorsed the approach of conferring standing on a plaintiff who may not have purchased all of the items in the product line.  *See Marcus v. BMW of N. Am.*, 687 F.3d 583 (3d Cir. 2012).  In *Marcus*, the court held that a plaintiff who only bought one model of the

---

[8]   "Kimberly-Clark Mem." refers to Defendant Kimberly-Clark's Memorandum of Law in Support of Motion to Dismiss, filed on May 5, 2014.

allegedly defective tires could represent the class because there was no "indication that BMW's and Bridgestone's representations differed significantly depending on the model-year BMW[.]" *Marcus*, 687 F.3d at 599. Here, the representations on the Kimberly-Clark Flushable Products' labeling relayed a common theme – that they were flushable and safe to use for sewer lines and septic tanks. Accordingly, Plaintiff has standing to represent all consumers that suffered losses as a result of purchasing both the Cottonelle Flushable Wipes and the line of the Kimberly-Clark Flushable Products.

The court's decision in *Elias v. Ungar's Food*, 252 F.R.D. 233 (D.N.J. 2007), is also on point. There, the court concluded that a plaintiff representing a class of consumers who purchased diet food products that were allegedly mislabeled had standing to pursue claims against a food manufacturer for its entire line of products even though plaintiff did not purchase all of the five products identified in the complaint. *See id.* at 244, *class cert. granted by Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 240, 2008 U.S. Dist. LEXIS 49729, at *12 (D.N.J. June 30, 2008). The *Elias* court reasoned that because "all of the claims and allegations involve an evaluation of the product's representations regarding fat and calories, and arise from an alleged course of conduct in selling a product with false nutritional information [,]" plaintiffs' claims were typical of the class and they had standing to bring them. *Id.* at 244; *see also Burke*, 2013 U.S. Dist. LEXIS 149249, at *10; *Stewart v. Smart Balance, Inc.*, No. 11-6174 (JLL), 2012 U.S. Dist. LEXIS 138454, at *47 (D.N.J. June 26, 2012) (finding that, because "the basis for each of the claims relating to the [three milk products] is the same, the products are closely related, and the Defendants are the same[,]" class certification was the proper time to determine standing). The same rationale applies here. Plaintiff has standing to represent a class of consumers that suffered loss as result of the same alleged course of conduct – Defendants' deceptive labeling of the Kimberly-Clark Flushable Products.

Defendant Kimberly-Clark challenges Plaintiff's standing, relying on three District of New Jersey decisions: *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. 2011); *Lieberson v. Johnson & Johnson Consumer Cos*., 865 F. Supp. 2d 529 (D.N.J. 2011); and *Hemy v. Perdue Farms, Inc*., No. 11-888, 2011 U.S. Dist. LEXIS 137923 (D.N.J. Nov. 30, 2011).  *See* Kimberly-Clark Mem. at 6-7, 7 n.3.  None of those decisions, however, have any bearing to the facts at issue here.

In both *Lieberson* and *Purdue*, plaintiffs could not allege that the defendants employed a uniform marketing strategy for all of their respective products.  And, in neither case did defendants make "sufficiently similar" misleading statements about the products at issue.  In *Lieberson*, for example, the plaintiff brought consumer fraud claims pertaining to four different baby bath products, only two of which she actually purchased.  *See* 865 F. Supp. 2d at 537.  The four products were all manufactured by the same company, but they did not contain uniform misleading statements.  *See id.* at 533-34 (noting that three of the products contained a purportedly misleading statement "Clinically Proven," while the fourth product – which the plaintiff had not purchased – did not include any reference to clinical proof).  Similarly, in *Hemy*, the plaintiff alleged that the defendant manufactured both "Perdue-branded chicken products and Harvestland-branded chicken products."  2011 U.S. Dist. LEXIS 137923, at *3.  While the plaintiff alleged that the defendant "prominently advertised" misleading statements on all of its Harvestland chicken products, it could not allege or show that the same or similar misleading statements appeared on the labels of all the Perdue-branded chicken products.  *See id.*

In *Green*, the plaintiff sought to bring a claim against the defendant manufacturer of single-cup brewing systems for all of its various brewing systems and coffee makers.  *See* 279 F.R.D. at 278.  But, other than the fact that the products at issue all brewed "K-cups," the allegations showed

that the products themselves had unique qualities (*e.g.*, listing, among others, the "OfficePRO" and the "MINI Plus") and there were no allegations that the various machines had a common marketing scheme or identical misrepresentation.  Here, conversely, Plaintiff alleges that representations made by Kimberly-Clark on the labeling of its Kimberly-Clark Flushable Products is identical and that its employs a uniform marketing strategy for these products.  *See* ¶¶2, 4, 14-17, 19-20, 23-25.

Aside from the clearly distinguishing factors of *Lieberson*, *Hemy*, and *Green*, those 2011 decisions are not binding on this Court and, additionally, are contrary to the Third Circuit's opinion in *Marcus*, which trumps the District Court level decisions *and* was decided, in 2012, after the lower Court decisions relied upon by defendant Kimberly-Clark.

Accordingly, Plaintiff has standing[9] to assert his claims, and the claims of the putative class, with respect to the entire line of Kimberly-Clark Flushable Products.

## V.   PLAINTIFF HAS ADEQUATELY PLED CAUSATION

Plaintiff connects the misrepresentations made by Defendants on the Flushable Products' labels to the injury he sustained, thereby making the necessary showing for causation.  *See Goldemberg v. Johnson & Johnson Consumer Cos*., No. 13-CV-3073 (NSR), 2014 U.S. Dist. LEXIS 47180, at *29 (S.D.N.Y. Mar. 27, 2014) ("The reasonable inference . . . is that Plaintiff saw the Aveeno website and Facebook page described previously in the Complaint, and was thus deceived into purchasing the products in question.  Accordingly, causation is sufficiently pled.").  The Complaint alleges that Defendants advertised the Flushable Products as safe to flush.  ¶1.  The

---

[9]   Kimberly-Clark's challenge of Plaintiff's standing for the claims relating to the closely related Kimberly-Clark Flushable Products, *see* Kimberly-Clark Mem. at 6-7, is an issue that this Court can also defer and issue a finding that it is inappropriate for conclusive determination at the motion to dismiss stage.  *See Stewart*, 2012 U.S. Dist. LEXIS 138454, at *48 ("even though [plaintiffs may] not have standing to challenge the [related products'] claims themselves, dismissal is inappropriate at this stage of the litigation because whether they may represent a class of plaintiffs who do have standing is not before the Court").

Complaint then details the manner in which the Flushable Products are, in fact, unsafe for sewer pipes or septic systems – or, *not* flushable.  ¶¶3, 31 ("The problem with flushable wipes is clear: they do not break down as manufacturers advertise.").  The Complaint attaches the misrepresentations to the injury through its depiction of the injury or economic harm sustained by Plaintiff via plumbing costs and overpayment for product.  ¶¶74-83.

Notwithstanding the ironclad causation that accompanies Plaintiff's causes of action in the Complaint, Defendants somehow claim that Plaintiff did not allege that he actually saw any of the misrepresentations about the flushability of the Flushable Products.[10]  Kimberly-Clark Mem. at 7-9. That is simply untrue.  The Complaint pleads that Plaintiff would not have purchased the Flushable Products if he knew it would cause plumbing issues (¶¶4, 79, 125); that he would not have purchased the Flushable Products "absent Defendants' false and misleading misrepresentations" (¶79; Kimberly-Clark Mem. at 8, n.5); and that he was "induced to" purchase the Flushable Products based on the false statements and misrepresentations contained on their labels.  ¶80, Kurtz Decl. ¶8. Despite these allegations, which presuppose that Plaintiff saw or read the misrepresentations contained on the labels of the Flushable Products, Defendants appear to be searching for a direct statement describing which store and aisle Plaintiff was standing in when he read or saw the label on

---

[10]   Defendant's reliance on *Lieberson* in connection with this position is misplaced, and based on a misreading of Plaintiff's Complaint.  *See* Kimberly-Clark Mem. at 9 n.6.  In *Lieberson*, the court stated that it was "fair. . . to infer that Plaintiff saw the labels, at the least, at the time she purchased the Products" despite the fact that she did not specifically allege "when" she viewed the Product labels since she, *inter alia*, alleged that "the labels 'reinforced' her decision to purchase the products."  *Id*. at 540.  Here, the applicable allegations concerning Plaintiff's personal experience is less attenuated than in *Lieberson*.  The Flushable Products' labels did more than "reinforce" Plaintiff's decision to purchase the defective products – it "induced" him to do so.  ¶81.

one or more of the Flushable Products representing that the product was flushable or safe for sewer and septic systems.  That sort of granular narrative, however, is not required.[11]

Separately, when the misrepresentation is associated or contained within the products' name (*e.g.*, 100% Olive Oil; flushable wipes), or where "the representations are in written and uniform materials presented to each prospective plaintiff," New York and New Jersey court hold that there is a presumption of causation and class members necessarily had to rely on it.  *Elias*, 252 F.R.D. at 249; *see also Ebin*, 297 F.R.D. 561 at 569.  Here, as alleged, Defendants uniformly used the term flushable to describe the Flushable Products.  What is more, they incorporated the word directly into the products' names.[12]  Causation is, therefore, presumed.[13]

In addition to, or even aside from, the presumption of causation in this case, causation is sufficiently pled "if a plaintiff avers that had the alleged [d]efect been disclosed, consumers would not have purchased [defendant's product]."  *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 503 (D.N.J. 2009) (denying dismissal where the plaintiff alleged, among other things, that she was not aware of the defect in the product at issue and would not have purchased it if not for the

---

[11]  Plaintiff maintains that the Complaint pleads that he read or viewed the labels on the Flushable Products.  Should this Court call for more detail to sustain an element of reliance, Plaintiff has verified, in support of this omnibus brief, the following supplemental statement: "The labels on these products indicated that the wipes were 'flushable' and, upon reading these labels at the time of purchase, I bought these products so that they could be safely flushed down the toilets in each of my homes."  Kurtz Decl. at ¶8.

[12]  *See, e.g.*, ¶2 (Cottonelle Fresh Care Flushable Wipes & Cleansing Cloths; Cottonelle Gentle Care Flushable Cleansing Cloths with Aloe & E; Cottonelle Soothing Clean Flushable Moist Wipes with Aloe; Scott Naturals Flushable Moist Wipes; Scott Naturals Flushable Moist Wipes with Aloe Vera; Scott Naturals Folded Flushable Moist Wipes; Pull-Ups Big Kid Flushable Wipes; Kleenex Cottonelle Flushable Moist Wipes Refills; Andrex Washlets Flushable Toilet Tissue Wipes; Andrex Kids Flushable Toilet Tissue Wipes; Kirkland Signature Moist Flushable Wipes).

[13]  *Marcus v. BMW of N. Am., LLC*, No. 08-5859, 2010 U.S. Dist. LEXIS 122908, at *36 (D.N.J. Nov. 19, 2010) (noting the presumption of causation); *Strzakowlski v. GMC*, No. 04-4740, 2005 U.S. Dist. LEXIS 18111, at *30-*31 (D.N.J. Aug. 16, 2005) (same).

defendant's failure to disclose the existence of the defect); *McCalley v. Samsung Elecs. Am., Inc.*, No. 07-2141, 2008 U.S. Dist. LEXIS 28076, at *26-*27 (D.N.J. Mar. 31, 2008) (holding that the plaintiff established a causal relationship by claiming that "had the alleged Defect been disclosed, consumers would not have purchased the Televisions"); *Strzakowlski*, 2005 U.S. Dist. LEXIS 18111, *25 (holding the plaintiff alleged causation where the plaintiff claimed that she and members of the class would not have purchased defendant's vehicles if they knew of their defective condition). The Complaint, here, distinctly pleads this form of causation: "Plaintiff and the other members of the Class, unaware of Defendants' deception, purchased Defendants' flushable wipe products. Had Plaintiff and the other members of the Class known that Defendants were deceiving them, they would not have purchased [the Flushable Products] or paid the price that they did." ¶125; *see also* ¶¶4, 76, 79.

Defendant Kimberly-Clark cannot cite to any New York or New Jersey case law to support the notion that the Complaint fails to plead causation. The authority it relies on certainly does not support that proposition. *See* Kimberly-Clark Mem. at 8-9. For example, in *In re Toshiba America HD DVD Marketing & Sales Practices Litigation,* No. 08-939, 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 11, 2009), the court reasoned that plaintiff did not adequately allege causation because he failed to allege when Toshiba made its alleged misrepresentations and when, if ever, the plaintiffs were exposed to those misrepresentations. *See id.* at *11-*12 (noting that the Toshiba plaintiffs referred to unidentified and apparently largely unseen promotional brochure, as well as to an inoperable website as the bases for the representations). Similarly, the decision in *Gale v. IBM*, 9 A.D.3d 446 (2d Dep't 2004) involved unique circumstances in which there were no allegations that plaintiff saw the representations, or even could have seen the representations. *See id.* at 447. There were, further, no allegations that he saw the product's packaging or labeling, or even could have seen

the product's packaging or labeling.  *See id.* ("the failure to plead the name of the seller of the computer component rendered defective the plaintiff's causes of action").  In essence, the plaintiff in *Gale* was far removed from even the opportunity to see the IBM representations.  *See id.*

Unlike in *Toshiba* and *Gale*, there is no disputing the existence of allegations of where and when Plaintiff could have been exposed to the ubiquitous marketing of the Flushable Products.  Plaintiff's allegations go well beyond that, including to the point of pleading that he was "induced to" purchase the Flushable Products based on the false statements and misrepresentations contained on their labels.

## VI.   PLAINTIFF ADEQUATELY STATES A CLAIM UNDER THE NEW YORK CONSUMER PROTECTION LAWS

### A.   Standards Applicable to New York General Business Law §§349 and 350

New York General Business Law ("GBL") proscribes the use of any "[d]eceptive acts or practices" or "[f]alse advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state."   GBL §§349(a) and 350(a).  A "deceptive act" or "false advertisement" is a material statement that is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).  "A §349 claim has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result."  *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007); *see also Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n.*, 981 F. Supp. 2d 153 (E.D.N.Y. 2013) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)).   The pleading requirements for GBL §350 claims are nearly identical in that a plaintiff must allege: "(1) the act, practice or advertisement was consumer-oriented; (2) the act, practice or advertisement was

- 16 -

misleading in a material respect, and (3) the plaintiff was injured as a result of the deceptive practice, act or advertisement." *Ackerman v. Coca-Cola Co.*, No. 09CV395 (DLI) (RML), 2013 U.S. Dist. LEXIS 184232, at *8 (E.D.N.Y. July 18, 2013).

Reliance is not an element of a cause of action under GBL §349. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 942 (2012); *Gale*, 9 A.D.3d at 447; *see also Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *8; *cf. Esposito v. Ocean Harbor Cas. Ins. Co.*, No. 13CV7073 (SJF) AKT), 2013 U.S. Dist. LEXIS 179262, at *13 (E.D.N.Y. Dec. 19, 2013); *Nationwide CATV Auditing Servs., Inc. v. Cablevision Sys. Corp.*, No. 12-CV-3648 (SJF) (ETB), 2013 U.S. Dist. LEXIS 65795, at *26 n.7 (E.D.N.Y. May 7, 2013).

### B.   Defendants Cannot Dispute the Sufficiency Plaintiff's GBL Claims

Tellingly, Defendants do not deny the allegations that their Flushable Products are not flushable and are not safe for septic and sewer systems.[14]

The only challenge posed by Defendants that even touches upon Plaintiff's GBL claims is in Kimberly-Clark's catchall section claiming that Plaintiff did not sufficiently allege causation or reliance. *See* Kimberly-Clark Mem. 7-10.[15] Plaintiff has already delineated the manner in which the Complaint pled causation (*see, supra,* §V) and reliance (*see, supra,* p. 13; *see also* n.11). Without rehashing the fulsome argument: (a) causation was alleged through allegations that Defendants

---

[14]   Defendant Costco's brief inquires as to whether Plaintiff "or anyone in his household flushed any non-flushable products or objects down the drains." Memorandum of Law in Support of Defendant Costco's Motion to Dismiss, filed May 5, 2014 ("Costco Mem.") at 1. Costco does not, though, refute that its Kirkland Flushable Wipes could have caused the damage incurred by Plaintiff and the Class. At best, Costco insinuates that it may have only contributed to the plumbing issues. Even if true, and Costco was only partially responsible, that is an issue requiring a factual determination. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 377 (S.D.N.Y. 2005) ("it is not possible at the pleading stage to determine whether other environmental factors could have caused or materially contributed to the harm . . .").

[15]   Costco does not challenge the sufficiency of Plaintiff's own GBL claims at all.

- 17 -

labeled their Flushable Products as safe to be flushed in sewer and septic systems, they later exhibited to be non-flushable, and caused economic harm to Plaintiff and other users of the Flushable Products as a result; and (b) reliance[16] was alleged through a series of allegations, including a direct statement that Plaintiff was induced to purchase the Flushable Products based on the untrue representations by Defendants as to the flushability of the Flushable Products.  *See Ault*, 2014 U.S. Dist. LEXIS 67118, at *16 ("'A deceptive act' or 'false advertisement' is a material statement that is likely to mislead a reasonable consumer acting reasonably under the circumstances.").

## VII.   PLAINTIFF ADEQUATELY STATES A CLAIM UNDER THE NEW JERSEY CONSUMER FRAUD ACT

A New Jersey Consumer Fraud Act (the "NJCFA") claim has three elements: (1) unlawful conduct; (2) ascertainable loss; and (3) causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss.  *See Lee v. Carter Reed Co. LLC*, 203 N.J. 496, 521 (2010); *see also Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 168 (E.D.N.Y. 2012).  Plaintiff has sufficiently pled all three.

### A.   Unlawful Conduct

Affirmative misrepresentations constitute "unlawful conduct" where defendant makes a statement that is "(1) material to the transaction; (2) a statement of fact; (3) found to be false; (4) and calculated to induce the buyer to make the purchase."  *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *12 (D.N.J. Mar. 26, 2012).  Defendants do not contend that Plaintiff failed to plead the unlawful conduct element.  Nor could they.

---

[16]   Reliance is not even a required element under GBL §349.  *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (holding "a private action brought under §349 does not require proof of actual reliance").

The Complaint alleges affirmative misrepresentations relating to the flushability of the Flushable Products and their supposed ability to be safely flushed in sewer and septic systems. Those representations misled consumers into believing that those products were flushable and would not harm their plumbing systems. *See Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. App. Div. 2002) (noting that "[w]hether an advertisement is misleading presents a question of fact in most cases"); *Leon v. Rite Aid Corp.*, 774 A.2d 674, 678 (N.J. App. Div. 2001) (stating that any question as to whether the labeling as a whole is "misleading to the average consumer" is one of fact); *Stewart*, 2012 U.S. Dist. LEXIS 138454, at *27 ("Whether the labeling as a whole is misleading to an average consumer is a question of fact.").

## B.    Ascertainable Loss

In order to prove "ascertainable loss" under the NJCFA, plaintiffs need only establish that they "received something less than, and different from, what they reasonably expected in view of defendant's presentations." *Miller v. Am. Family Publishers*, 663 A.2d 643, 655 (N.J. Super. Ct. Ch. Div. 1995). "[O]ne has suffered an ascertainable loss under the [NJCFA] where that loss is measurable – even though the precise amount is not known." *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 899 (N.J. Law Div. 2001); *see also Elias*, 252 F.R.D. at 249 (noting that ascertainable loss may occur "when a consumer receives less than what was promised"). In *Elias*, the Court sustained Plaintiff's NJCFA claim where "plaintiffs contend[ed] that they suffered an ascertainable loss up to the money they spent on the products" and the Court reasoned to satisfy the ascertainable loss element of the NJCFA, finding plaintiffs need only prove that they paid for a product and "got something less than what had been promised." 252 F.R.D. at 249.

A plaintiff can allege ascertainable loss by showing "out-of-pocket" losses *or* by alleging that she did not receive the "benefit of the bargain." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J.

234, 248 (2005) ("In breach of contract or misrepresentation cases, an out-of-pocket loss or loss of value will establish an ascertainable loss.").  Plaintiff, here, establishes both.

Specifically, Plaintiff alleged three different measures of damages that he incurred as a result of Defendants' misrepresentations concerning the flushability of the Flushable Products.  *First*, Plaintiff alleges that he suffered a loss of the difference in value between the product he paid a premium for (*e.g.*, flushable wipes) and the product he actually received (*e.g.*, non-flushable wipes). *Second*, Plaintiff alleges that that he incurred expenses due to the plumbing issues that arose after using the Flushable Products in both of his homes.  *Third*, Plaintiff alleges that he paid for products that are inherently defective and, as a result, he suffered a direct economic injury for the entire purchase price of the Flushable Products.

The *first* measure of damages alleged by Plaintiff falls under the benefit of the bargain theory, while the *second* and *third* forms of damages constitute out-of-pocket losses.[17]

### 1.    Plaintiff Did Not Receive the Benefit of the Bargain with Defendants

Ascertainable loss can be pled by alleging that a plaintiff did not receive the "benefit of the bargain."  Under the "benefit of the bargain" theory, a plaintiff can show ascertainable loss by alleging: "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received ***can be*** reasonably quantified."  *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011); *see also id.* ("The

---

[17]    As of July 1, 2014, the following reflects the pricing of the relevant products referenced in Plaintiff's ascertainable loss argument: (i) package of 504 Cottonelle Flushable Wipes – $18.99 per package, at $0.0376 per wipe; (ii) 600 Kirkland Signature Flushable Moist Wipes – $19.97 per package, at $0.033 per wipe; (iii) package of 900 non-flushable, Kirkland Signature Premium Baby Wipes – $19.79 per package, at $0.021 per wipe; (iv) package of 768 non-flushable Huggies Simply Clean Baby wipes – $14.97, at $0.19 per wipe; (v) 8100 sheets of Kleenex Cottonelle Ultra ComfortCare Jumbo Roll toilet paper, sold as a package of 12 rolls – $29.99, at $0.003 per sheet. *See* Reich Decl. ¶2.

New Jersey Supreme Court has repeatedly and explicitly endorsed a benefit-of-the-bargain theory under the [NJCFA] that requires nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product  he was promised.").

Plaintiff alleges that he was promised a product that could be safely flushed in sewer and septic systems, paid a premium for the supposed benefits of these products, and did not realize these benefits.  ¶¶4, 76, 79, 125.  As further detail of this measure of damages, the Complaint specifically alleges that "Defendants market and sell flushable wipes at a higher cost than comparable, non-flushable wipes."  ¶89.  The Complaint then relays that "Cottonelle Fresh Care Flushable Cleansing Cloths Refill cost $0.04 per wipe and Kirkland Signature Moist Flushable Wipes cost $0.028 per wipe."  *Id.*  Comparable wipes "that are not labeled as flushable sell for $0.02 per wipe, or nearly half the cost of flushable wipes."  *Id.*  Through this detail, the Complaint covers both his expectation based on Defendants' misrepresentations ***and*** quantifies the difference in value between the product received (*e.g.*, non-flushable wipes) as compared with the product promised (*i.e.*, flushable wipes).  Ascertainable loss under the "benefit-of-the-bargain" theory has, therefore, been more than sufficiently pled through a "reasonably quantified" measure of damages.  *See Smajlaj*, 782 F. Supp. 2d at 99; *cf. Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 446 (D.N.J. 2012) ("The plaintiff need not . . . plead ascertainable loss with pinpoint specificity.").

Notwithstanding this alleged detail, defendant Kimberly-Clark maintains that Plaintiff "failed to plead with particularity any 'ascertainable loss.'"  Kimberly-Clark Mem. at 11.  In doing so, defendant Kimberly-Clark seeks to impose greater specificity requirements on Plaintiff than those required by NJCFA or the Courts interpreting it.  *See* Kimberly-Clark Mem. at 13.  Contrary to Kimberly-Clark's, position, under the NFCFA, "[a]lthough the loss must be ascertainable, no special specificity with regard to pleading ascertainable loss is required."  *Maniscalco*, 627 F. Supp. 2d at

503; *see also Lamont v. OPTA Corp.*, No. A-0710-05T3, 2006 N.J. Super. Unpub. LEXIS 1081, at *18-*19 (Super. Ct. App. Div. June 16, 2006) ("There is nothing in [New Jersey Supreme Court precedent] that requires the pleading of an ascertainable loss element of a [NJCFA] cause of action with any special specificity."); *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1003 (N.J. App. Div. 2006) (finding that the plaintiff alleged an ascertainable loss even though she "did not allege the nature of that loss"); *see also Mickens*, 900 F. Supp. 2d at 446 ("Even in opposition to a motion for summary judgment, '[a]n estimate of damages, calculated within a reasonable degree of certainty will suffice to demonstrate an ascertainable loss.'") (citing *Thiedemann*, 872 A.2d at 793).

Plaintiff has alleged the difference in the price paid of what was promised (a flushable product) and what was received (a non-flushable product). This is sufficient for pleading ascertainable loss at the motion to dismiss stage. *See Smajlaj*, 782 F. Supp. 2d at 103 (finding allegation comparing the price of less-sodium soup with regular soup to be "a sufficient allegation of ascertainable loss under New Jersey law").

The cases cited by Kimberly-Clark likewise do not support the greater specificity requirements it seeks to enact. In *Lieberson* for example, *see* Kimberly-Clark Mem. 11-12, the court dismissed a consumer's complaint because it did not include *any* allegations regarding the price plaintiff paid or even the "price of the products generally." 865 F. Supp. 2d 529, 541. In *Franulovic v. Coca-Cola Co.*, No. 07-539 (RMB), 2007 U.S. Dist. LEXIS 79732, at *19-*24 (D.N.J. Oct. 25, 2007), *see* Kimberly-Clark Mem. at 12, the plaintiff made only general assertions concerning the "average reasonable customer" and failed to even allege that she "actually purchased" or used the product at issue.

Those cases reflect weak sets of facts and have no association to the substantial facts pled by Plaintiff here. Plaintiff alleged, for example, the price-per-item of the products he purchased that

contained the misrepresentation, as well as the comparative prices of products that do not contain the misrepresentations.  ¶89.  Notably, none of the cases cited by Defendants require ***proof*** of damages at this early stage.  Courts interpreting NJCFA actually say the opposite.  *See Talalai*, 823 A.2d at 564 (noting that "ascertainable loss" does not require "specific amount of actual damages" and holding "that the information cited by the defendant as lacking – the date plaintiffs' tires were purchased, the type of tire, the size, and the price of the tries – are matters of discovery").

## 2. Plaintiff Incurred "Out-of-Pocket" Losses

An "out-of-pocket" theory of damages for ascertainable loss requires even less than a "benefit-of-the-bargain" theory.  Under this theory, to sufficiently plead ascertainable loss, a plaintiff need only "demonstrate that he paid money, and is now, out-of-pocket."  *Dicuio v. Brother Int'l Corp.*, No. 11-144 (FLW), 2012 U.S. Dist. LEXIS 112047, at *19 (D.N.J. Aug. 9, 2012).  "The 'out-of-pocket' theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless." *Hammer*, 2012 U.S. Dist. LEXIS 40632, at *22-*23.

The Complaint alleges "out-of-pocket" plumbing costs incurred by Plaintiff as a result of using the Flushable Products in both of his homes.  The measure of damages relating to the cost of repairing the plumbing issues caused by Defendants' Flushable Products can be "reasonably quantified,"[18] and, in turn, was sufficiently pled.  *See Smajlaj*, 782 F. Supp. 2d at 99.[19]

---

[18]   The Complaint, in fact, alleges general cost ranges associated with plumbing repairs following the use of flushable wipes products.  *See* ¶¶86 and 87.  With an estimate of damages to consumers' plumbing and septic systems caused by the use of flushable products, ascertainable loss under the "out-of-pocket" theory has been met.  *See Dzielak v. Whirlpool Corp.*, No. 2:12-CV-0089 (KM), 2014 U.S. Dist. LEXIS 83148, at *68-*69 (D.N.J. June 16, 2014) ("Rule 9(b) does not require that a plaintiff allege a specific dollar amount to survive the pleadings stage."); *Thiedemann*, 872 A.2d at 249 (holding "[a]n estimate of damages, calculated within a reasonable degree of certainty will suffice to demonstrate an ascertainable loss").

The Complaint also alleges an additional "out-of-pocket" theory of damages.  In particular, Plaintiff has suffered out-of-pocket losses in the form of the entire purchase price of the Flushable Products.  Under this theory, a plaintiff can sufficiently allege an out-of-pocket loss of "the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless."  *See Hammer*, 2012 U.S. Dist. LEXIS 40632, at *22-*23; *see also Lee*, 4 A.3d at 580 ("Each purchase of [the defective product at issue] – not refunded – is an out-of-pocket loss.").  Here, Defendants have not offered the general public, nor has Plaintiff received, a refund for the defective Flushable Products.  And, Defendants' misrepresentations about the ability to safely flush the Flushable Products rendered the products "essentially worthless" as they do not work in the way they are labeled and marketed.  But for these misrepresentations, Plaintiff would not have purchased those products.  ¶¶4, 79, 125; *Maniscalco*, 627 F. Supp. 2d at 503 ("it is sufficient if a plaintiff avers that 'had the alleged defect been disclosed, consumers would not have purchased [Defendants' Products]'") (quoting *McCalley v. Samsung Elec. Am., Inc.*, No. 07-2141, 2008 U.S. Dist. LEXIS 28076, at *26-*27 (D.N.J. Mar. 31, 2008) (brackets in original)).

To sustain his "out-of-pocket" theory of damages, as in *Talalai*, Plaintiff can easily estimate or ascertain the market value of the Flushable Products marketed to consumers.  *See Talalai*, 823 A.2d at 899 (denying dismissal for failure to allege ascertainable loss because "in order to survive a motion to dismiss a plaintiff under the [NJCFA] need only supply an estimate of damages calculated with a reasonable degree of certainty").  After all, not only has Plaintiff provided the baseline for the value of the Flushable Products in his Complaint (*see* ¶89), the purchase price of Defendants'

---

[19]   Should this Court call for more detail to sustain a showing of ascertainable loss, Plaintiff has verified, in support of this omnibus brief, that he incurred approximately $450 in total plumbing-related costs as a result of using Defendants' Flushable Products.  *See* Kurtz Aff. ¶¶11-12.

Flushable Products is widely-available to the public and, more importantly, to Defendants themselves.  Therefore, Plaintiff has adequately met the pleading stage requirement that the full purchase price is the loss incurred from purchasing Defendants' defective Flushable Products.  *See id.*; *Lee*, 4 A.3d at 580 (concluding that "[e]ach purchase of [defendant's product] – not refunded – is an out-of-pocket loss").[20]  In *Lee*, the Court acknowledged that, even at the class certification stage, "individual questions will remain" including "the number of bottles of [the defendant's product] purchased, by a class member" and the "price of each bottle."  4 A.3d at 580.  The lack of these pieces of detail, however, are not grounds to dismiss a NJCFA claim under ascertainable loss.

As it stands, Plaintiff has alleged three measures of calculable damages under either the "out-of-pocket" or "benefit of the bargain" theories of ascertainable loss.

### C.    Plaintiff Has Sufficiently Plead a Causal Relationship Between Defendants' Unlawful Conduct and Plaintiff's Ascertainable Loss

To plead the causal relationship element, a plaintiff need only allege that a defendant's misrepresentations  "misled, deceived, induced ***or*** persuaded the plaintiff to purchase defendant's product or service."  *Elias*, 252 F.R.D. at 248-249.  "[T]he NJCFA does not require that the allegedly unlawful conduct serve as the lone cause of Plaintiffs' loss, but merely that it be a cause."  *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 304 (D.N.J. 2009); *see also Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 816 (N.J. App. Div. 2000) (same).

Plaintiff alleges that Defendants' misrepresentations misled, deceived, induced ***and*** persuaded him to purchase the Flushable Products.  *See generally* ¶¶14-20, 23-27, 81 (Costco Flushable Products).  By way of example, the Complaint states that "[o]n the packaging of

---

[20]    Again, should this Court seek additional detail to sustain a showing of ascertainable loss, the Reich Declaration demonstrates that the estimated cost of the Flushable Products purchased by Plaintiff currently retail at: $10.47 for the Cottonelle FreshCare Flushable Cleansing Clothes; and $19.90 for the Kirkland Signature Moist Flushable Wipes.  *See* Reich Decl. ¶2.

[Defendant's] Cottonelle FreshCare Flushable Cleansing Cloths, the word 'flushable' is clearly displayed, along with a circular logo containing a symbol and the words 'sewer and septic safe.'" ¶15.  He adds that Plaintiff and the Class were "unaware of Defendants' deception" when they purchased the Flushable Products and "would not have purchased flushable wipes or paid the price that they did" had they known about the misrepresentations.  ¶125; *see also* ¶¶4, 76, 79.  These allegations are more than sufficient to plead a causal relationship under the NJCFA.  *See Maniscalco*, 627 F. Supp. 2d at 503.

What is more, the Flushable Products' labeling actually includes the word "flushable" in the name of the products themselves, prominently displayed on the packaging labels.  Because these misrepresentations concerning flushability are "in written and uniform materials presented to each prospective plaintiff," the causal relationship may be presumed for Plaintiff's NJCFA claim.  *See Ebin*, 2014 U.S. Dist. LEXIS 25838, at *21 (applying presumption where the alleged misrepresentation was in "the name of the product itself"); *Elias*, 252 F.R.D at 249 (presuming "a connection between the statements and the purchase of a product different from that which was promised" because "[t]he statements to each purchaser are finite and identical" and "were made to all customers"); *Marcus*, 2010 U.S. Dist. LEXIS 122908, at *36 (applying presumption of causation where the defendants "marketing statements . . . did not differ from one class member to another").

\*       \*       \*

The Complaint sufficiently alleges all three elements of its NJCFA claim.  As such, this Court should deny Defendants' Motions to Dismiss as to Count V.

## VIII.   PLAINTIFF ADEQUATELY STATED A CLAIM FOR NEGLIGENT MISREPRESENTATION

Defendants (as manufacturers) imparted information to Plaintiff and the Class (as consumers) through their marketing and product labeling.  *See* ¶¶7, 8, 14-16, 23-25.  That information

(specifically, that the Flushable Products were safe to be flushed) was incorrect.  And Plaintiff and the Class reasonably relied on that information.  *See, e.g.,* ¶¶ 4, 79, 125.  These facts, as alleged, plead a classic cause of action for negligent misrepresentation.  *See Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*, 910 F. Supp. 2d 543, 548 (S.D.N.Y. 2012).

Aside from the question of reliance,[21] Defendants raise separate arguments concerning the sufficiency of Plaintiff's negligent misrepresentation claim, including: (a)  Kimberly-Clark argues that there is a lack of privity or special relationship between it and Plaintiff (*see* Kimberly-Clark Mem. 13-14); and (b) Costco argues that the cause of action is barred under the economic loss doctrine (*see* Costco Mem. 6-8).  Plaintiff will address these separately briefed issues, below, and demonstrate why both fail.

### A.    Privity

In *Ebin*, the Court held that plaintiffs adequately pled a claim for negligent misrepresentation in connection with a set of facts that are strikingly similar to those at issue here:

| Factor (as stated by *Ebin* Court) | Responsive fact in *Ebin* | Responsive fact by Kurtz |
|---|---|---|
| "who made the false statement" | manufacturer Kangadis | manufacturers Kimberly-Clark and Costco |

---

[21]    The issue of reliance has been amply refuted by Plaintiff (*see, supra*, p. 13 and n.11), including references to specific allegations about the manner in which Plaintiff was induced to purchase the Flushable Products based on Defendants' misrepresentations.    Further, Kimberly-Clark's dependence, *see* Kimberly-Clark Mem. at 10, on the decisions in *Singer v. Beach Trading Co., Inc.*, 876 A.2d 885 (N.J. App. Div. 2005) and *Pinello v. Andreas Stihl Ag & Co. KG*, No. 8:08-CV-004452, 2011 WL 1302223 (N.D.N.Y. Mar. 31, 2011), which were decided on motions for summary judgment and hinged on what reliance plaintiffs demonstrated in the discovery process, are inapposite to the procedural posture of this case.  *See also, supra*, at n.11.

| Factor (as stated by *Ebin* Court) | Responsive fact in *Ebin* | Responsive fact by Kurtz |
| --- | --- | --- |
| "what the false statement was" | labeling and describing product as 100% Pure Olive Oil | labeling and describing product as "flushable," "break up after flushing," "safe for well-maintained sewer & septics" |
| "when the statement was made" | "in late 2012 or early 2013" | in February 2013 |
| "where the statement was made" | "on the Capatriti containers plaintiffs purchased from the local grocery store" | on the Flushable Products' containers purchased from Costco or local drug stores and supermarkets |
| "how that statement was false" | "the product was Pomace rather than pure olive oil" | the Flushable Products were not flushable and not safe for sewer and septic systems |

2013 U.S. Dist. LEXIS 174174, at *14-*15. *Ebin* and the instant action both involve manufacturer-consumer relationships, with local retailers acting as the direct seller. The *Ebin* court, as the Court should here, sustained the negligent misrepresentation claim. *See* 2013 U.S. Dist. LEXIS 174174, at *15; *see also Hughes*, 930 F. Supp. 2d at 475 (holding that plaintiffs, who purchased Ester C from various grocery and drug stores, had sufficient privity with the defendant manufacturer to adequately sustain a claim for negligent misrepresentation).[22]

In addition, the issue of privity is factual in nature. Courts have held that it is premature to decide questions of privity or special relationship at the motion to dismiss stage. *See Century Pac., Inc. v. Hilton Hotels Corp*., No. 03 Civ. 8258, 2004 U.S. Dist. LEXIS 6904, at *24-*25 (S.D.N.Y. Apr. 21, 2004) ("Courts in this circuit have held that a determination of whether a special

---

[22]   The authority relied on by Kimberly-Clark stems from facts demonstrating no connection between the representations made and the plaintiff who allegedly relied on them. For example, in *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 176-77 (2011), *see* Kimberly-Clark Mem. at 10, 13, an art appraisal was prepared for and given to a third party; not to plaintiff. The appraiser did not make any representation to plaintiff and there were no allegations that the appraiser even knew the representations would be viewed – let alone relied on – by the plaintiff. *See id*. at 180; *cf DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 624 (S.D.N.Y. 2012).

- 28 -

relationship exists is highly fact-specific and generally not susceptible to resolution at the pleadings stage."); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001) (holding that "a determination of whether a special relationship exists is essentially a factual inquiry").

Kimberly-Clark's argument to dismiss the New York common law negligent misrepresentation claim based on lack of privity between Kimberly-Clark and Plaintiff should, therefore, be denied.

### B.     Economic Loss

Costco's economic loss doctrine theory, *see* Costco Mem. at 6-9, is premised on the fact that Plaintiff's damages are linked to costs associated with the Flushable Products' failure to perform their intended purposes. *See Hodgson v. Isolatek Int'l Corp.*, 300 A.D.2d 1051, 1052-53 (4th Dep't 2002). Assuming, for the moment, that Plaintiff's damages were limited to the money he paid or overpaid for the Flushable Products, then Costco's argument in favor of the application of the economic loss rule might be plausible. *See, e.g., Weiss v. Polymer Plastics Corp.*, 21 A.D.3d 1095, 1096 (2d Dep't 2005) (focusing on the fact that "[t]he essence of the plaintiffs' claims are that the [stucco] did not perform properly"). That assumption, though, ignores the additional or other damage caused by the use of the Flushable Products; specifically, the plumbing costs. ¶77; *see Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d 318, 326 (W.D.N.Y. 2009).

The language in the *Praxair* decision, which was strategically and only partially quoted by defendant Costco in its briefing, well illustrates the distinction between damages sought for the failure of the product itself versus other damages caused by the failure of the product. Costco quotes *Praxair* for the following: "Critical to a determination of whether a tort claim is barred by the economic loss doctrine is whether damages are sought for the failure of the product to perform its intended purpose, in which case recovery is barred by the economic loss doctrine." Costco Mem. at

6.  Costco's brief leaves out the continuation of that sentence, which reads, ". . . or for direct and consequential damages caused by a defective and unsafe product." *Praxair*, 611 F. Supp. 2d at 326. More pointedly, the very next sentence in the *Praxair* decision reads:  "***The economic loss doctrine does not apply where a defective product causes damage to 'other property.***'"  *Id*.  The last sentence applies directly to the plumbing-related damage caused by the use of the Flushable Products.  Sewer backups and piping issues caused by using the Flushable Products constitutes damage to 'other property' and not to damages sought for the failure of the product itself.[23]

The holding in *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A*., 244 F.R.D. 204, 220 (S.D.N.Y. 2007) illustrates the same dimension.  Specifically, Costco says that the *Manhattan Motorcars* decision applied "the economic loss doctrine to dismiss a negligent misrepresentation claim and [found] that the defendant was 'limited to an action in contract for the benefit of its bargain'"  Costco Mem. at 7, directly citing *Manhattan Motorcars, Inc.*, 244 F.R.D. at 220. The full and accurate quote from that decision reads:  "Under New York's economic loss rule, ***because Manhattan has not suffered any personal or property damage***, it is limited to an action in contract for the benefit of its bargain."  *Id*.  Clearly, the court's decision there hinged on the absence

---

[23]  *See Wade v. Tiffin Motorhomes, Inc*., 686 F. Supp. 2d 174, 189 (N.D.N.Y 2009) (finding that damaged property inside of a motor home was separate and apart from the defective motor home, and, thus, the plaintiff could recover under a negligence theory of liability); *Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*, No. 93-CV-3068, 1996 U.S. Dist. LEXIS 9013, at *8-*9 (S.D.N.Y. June 27, 1996) (allowing tort claims against manufacturer of defective governor to proceed because the governor damaged not only itself, "but also adjacent generators, floors, ceilings, furniture and other items of real and personal property . . . ."); *Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*, 17 A.D.3d 825, 827 (3d Dep't 2005) (explaining that plaintiff could seek a tort remedy because plaintiff sought to recover for damages sustained to other property, not defendant's controller device); *Triple R Farm P'ship v. IBA, Inc.*, 21 A.D.3d 1260, 1261 (4th Dep't 2005) (concluding, although without much discussion, that the plaintiff could recover "for injury to property" because its cows (*e.g.,* separate property) were harmed by a defective product).  New Jersey courts also recognize the "other property" exception to the economic loss rule.  *See, e.g.*, *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 336 (D.N.J. 2010) (noting that the economic loss doctrine "bars tort claims for harm sustained to the product alone, as opposed to harm to persons or other property damage").

of property damage and the court, therefore, decided to apply the economic loss doctrine to bar plaintiff's claim. Here, however, Plaintiff clearly alleged the existence of property damage and, therefore, the economic loss doctrine is inapplicable to Plaintiffs' negligent misrepresentation claim.[24]

## IX. PLAINTIFF ADEQUATELY STATED A CLAIM FOR BREACH OF EXPRESS WARRANTY

In order to state a claim for breach of express warranty under New York law, "a plaintiff must show that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase, that the plaintiff relied upon the promise as part of the bargain, and that the promisor's breach of the promise was to the plaintiff's detriment." *Daniels v. Forest Riv., Inc.*, No. 07-4227, 2013 N.Y. Misc. LEXIS 2915, at *9 (N.Y. Sup. Ct. June 28, 2013). "But what a reasonable consumer's interpretation might be is a matter of fact which is not appropriate for decision on a motion to dismiss." *Ault*, 2014 U.S. Dist. LEXIS 67118, at *20.

Under New Jersey law, in order to plead a claim for breach of express warranty, Plaintiff must allege: (1) that defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description. *See*

---

[24] *Cf. Hehr Int'l, Inc. v. Sika Corp.*, No. 12-1624 (FSH), 2013 U.S. Dist. LEXIS 109355, at *3 (D.N.J. Aug. 5, 2013) (dismissing negligence claim pursuant to the economic loss doctrine "*because there was no allegation of physical damage to property* other than to the allegedly defective product"); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 11-1857, 2012 U.S. Dist. LEXIS 162800, at *10 (D.N.J. Nov. 14, 2012) ("New Jersey's economic loss rule bars plaintiffs with contract claims from recovering in tort for economic losses *in the absence of personal injury or property damage*."); *Ford Motor Co. v. Edgewood Props.*, No. 06-1278, 2012 U.S. Dist. LEXIS 125197, at *74 (D.N.J. Aug. 31, 2012) (only in the absence of personal injury or consequential property damage does "a plaintiff's negligence claim fails under the economic loss doctrine"); *Kam Int'l v. Franco Mfg. Co.*, No. 2:10-02733, 2010 U.S. Dist. LEXIS 135455, at *11 (D.N.J. Dec. 22, 2010) ("The economic loss doctrine is a judicially created rule that prevents a party from being able to collect in negligence for pecuniary harm that is unaccompanied by personal injury or consequential damages to other property.").

*Stewart*, 2012 U.S. Dist. LEXIS 138454, at *35; *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011); *see also* N.J.S.A. §12A:2-313.  At the motion to dismiss stage, "it is enough that Plaintiffs provide more than 'bald assertions,' and identify specific affirmations by Defendant that could be found to constitute an express warranty."  *Snyder*, 792 F. Supp. 2d at 722; *Stewart*,  2012 U.S. Dist. LEXIS 138454, at *38.

Defendant Kimberly-Clark contends that Plaintiff's express warranty claims fail to plead privity between Kimberly-Clark and Plaintiff.  Defendants Kimberly-Clark and Costco both argue that Plaintiff's express warranty claims fail for lack of  pre-suit notice.  Plaintiff responds to, and rejects, these argument as follows:

### A.   Privity Between Plaintiff and Defendant Kimberly-Clark is Not Required

"A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies." *Ault*, 2014 U.S. Dist. LEXIS 67118, at *21.  In *Ault*, the plaintiff brought a breach of express warranty claim against J.M. Smucker Co., the manufacturer of Crisco Oil products, claiming the products were not "all natural" as stated on the labels.  *Id*. at *3.  The defendant company argued, as Kimberly-Clark does here, that the plaintiff's express warranty claim against the manufacturer failed for lack of privity.  The court rejected the defendant's argument there, saying:  "Plaintiff may maintain her breach of warranty claims even though she did not purchase the products directly from Defendant." *Id.*; *see also Goldemberg*, 2014 U.S. Dist. LEXIS 47180, at *34-*35 (same); *Avola v. Louisiana-Pacific Corp.*, No. 11-CV-4053 (PKC), 2013 U.S. Dist. LEXIS 122930, at *20 (E.D.N.Y. Aug. 28, 2013) (same).

Other New York courts have reached the same conclusion, maintaining that in New York "privity between the parties is not required to maintain a cause of action for breach of an express warranty against a manufacturer." *Daniels*, 2013 N.Y. Misc. LEXIS 2915, at *10 (citing *Randy Knitwear v. Am. Cyanamid Co*., 11 N.Y.2d 5 (1962); *see also Murrin v. Ford Motor Co*., 303 A.D.2d 475, 477 (2d Dep't 2003) (holding "privity is not required to sustain a cause of action seeking to recover damages for breach of an express warranty"); *In re Scotts EZ Seed Litig*., No. 12 CV 4727 (VB), 2013 U.S. Dist. LEXIS 73808, at *23, n.4 (S.D.N.Y. May 22, 2013) ("Privity is generally not required for liability on an express warranty because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies.").

Accordingly, Kimberly-Clark's attempt to escape its responsibilities under the express warranty claim based on a misguided privity argument should be denied.

## B.   Defendants Have Been Adequately Notified of Consumers' Claims for Breach of Warranty

Defendants cannot genuinely say that they were unaware of the consumer complaints associated with their Flushable Products.  The problems that the use of Defendants' Flushable Products have caused was – and has been – well known to them since at least 2013.  *See* ¶¶87-88. Consumer complaints were not only posted on internet blogs and forums on a variety of websites, ¶38 (Consumer Reports), ¶¶32-37 (various news and blog articles), but several targeted consumer complaints were posted on Defendants' own company web pages.  *See* ¶87 (complaints recorded in the reviews section of Costco's Kirkland Flushable Wipes page); ¶88 (complaints recorded in the reviews section of Kimberly-Clark's Cottonelle website).  These complaints contained the same

grievance and factual underpinning contained in Plaintiff's Complaint: the Flushable Products are not flushable and should not be advertised as a safe for sewer and septic systems.[25]

The pervasive and publicized grievances provided notice to Defendants of the problems caused by their Flushable Products. That notice was given to them well before Plaintiff's Complaint was filed. Defendants' only gripe is over the form of the notice. No matter. *See Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575, 620 (S.D.N.Y. 2004) ("Notice need not be expressed in any magical formula such as a lawyer's letter."). It is also insignificant whether or not the postings specified damages or threatened litigation. *See Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*, No. 03-CV-4892, 2006 U.S. Dist. LEXIS 66078, at *29 (E.D.N.Y. Sept. 15, 2006) ("The notification need only alert the seller that the transaction is troublesome and does not need to include a claim for damages or threat of future litigation.") (citing *Computer Strategies, Inc. v. Commodore Bus. Machines, Inc.*, 105 A.D.2d 167, 176 (2d Dep't 1984)).

Significantly, this case presents a rare and unique scenario where there has been public outcry, testing done by independent labs, and intense media scrutiny on the exact problem. The policies underlying §2-607(3)(a)'s notice requirement are best served by finding that Defendants were on notice. *See In re Bridgestone/Firestone Inc. v. Wilderness Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001). Indeed, Defendants have taken steps to react to the public outcry and the volume of complaints regarding the untrue labeling on their Flushable Products, including the preparation and online posting of rebuttal reports regarding their flushability claims. *See* Reich Decl. ¶4, Ex. A.

---

[25]   Under the U.C.C. §2-607(3)(a), "[w]here a tender has been accepted[,] the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

Section 2-607(3)(a)'s pre-suit notice requirement is not served in cases, like this one, "where Defendants had ample notice of the defect in the products well before the lawsuit was filed, and, indeed, allegedly well before Plaintiffs themselves did, and chose not to remedy those defects, no purpose would be served by requiring pre-litigation notice." *Bridgestone/Firestone*, 155 F. Supp. 2d at 1109. The bottom line is that Defendants were well aware of consumer complaints arising from the use of the supposedly flushable items they manufactured. They chose not to remedy them.[26]

## X. PLAINTIFF ADEQUATELY STATED A CLAIM FOR UNJUST ENRICHMENT

### A. Plaintiff Has Sufficiently Pled Unjust Enrichment Under Both New York and New Jersey Law

Under both New York and New Jersey law, a claim for unjust enrichment can be pled as an alternative theory of recovery. *See, e.g., St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 183-84 (E.D.N.Y. 2010); *Rait v. Sears, Roebuck & Co.*, No. 08-2461, 2009 U.S. Dist. LEXIS 7540, at *14-*15 (D.N.J. Feb. 3, 2009); *MK Strategies LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008).

To establish a claim for unjust enrichment under New Jersey law, a plaintiff need only show "that defendant received a benefit and that retention of that benefit without payment would be unjust." *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012). "In other words, Plaintiffs must show that they got something less than they paid for, and [Defendant] should be required as a matter of equity to make them whole." *In re Mercedes Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 72 (D.N.J. 2009). Under New York law "[t]here are three elements

---

[26] At a minimum, the issue of notice is factual in nature inappropriate for review on a motion to dismiss. *See Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *44 ("a question of fact . . . cannot be resolved on a motion to dismiss"); *Refundo, LLC v. Drake Enters.*, No. 13-643 (JLL), 2013 U.S. Dist. LEXIS 57671, at *13 (D.N.J. Apr. 22, 2013) (holding "a question of fact that would be inappropriate to decide on a motion to dismiss").

to a claim of unjust enrichment . . . '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Sang Lan v. Time Warner, Inc*., No. 11 Civ. 2870, 2014 U.S. Dist. LEXIS 25382, at *14 (S.D.N.Y. Feb. 25, 2014).

The Complaint alleges that Plaintiff purchased and used the Flushable Products *specifically* because of the Flushable Products' labeling touting that they were "flushable" and "sewer and septic safe." ¶¶15, 20, 107.  Plaintiff has, effectively, pled a claim for unjust enrichment by demonstrating that Defendants would not have received the profits they garnered from the sales of Flushable Products – which Defendants sold at a premium price – but for their false and misleading statements regarding the flushability of the Flushable Products.  ¶¶4, 79, 125.  In other words, Defendants were enriched through their misrepresentations regarding the competences of the Flushable Products, which induced Plaintiff's purchase.   These allegations adequately plead a claim of unjust enrichment.  *See Hughes*, 930 F. Supp. 2d at 471-472 (finding similar allegations concerning defective immune system boosting products sufficient to meet the heightened pleading requirements of Rule 9(b)).

## B.    Plaintiff's Unjust Enrichment Claim is Not Duplicative

When "there is a genuine dispute as to the existence of a contract, Plaintiffs may assert causes of action in both breach of contract and quasi-contract and need not make a pretrial election between these theories." *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P*., No. 08 Civ. 10578, 2010 U.S. Dist. LEXIS 27609, at *25 (S.D.N.Y. Mar. 12, 2010) (denying motion to dismiss plaintiff's unjust enrichment claim because defendants disputed the existence of a valid contract). Here, such a dispute may exist.

Specifically, Defendants argue that Plaintiff does not have a valid claim for: (1) express warranty; (2) under New Jersey law; (3) GBL §§349 and 350; and (4) the NJCFA, because, among

other things, "Plaintiff never identifies any representations that he actually saw that caused him to purchase or use any of the products in question."  Kimberly-Clark Mem. at 8; *see also id*. at 10 ("Specifically, where, as here, Plaintiff has failed to allege which of Defendants' alleged representations he saw, it is axiomatic that he has also failed to allege which of Defendants' alleged misrepresentations he relied on in purchasing or using the products at issue.").  By doing so, Defendants have put in dispute whether a valid contract existed between the parties at all.  *See Hoffman v. Supplements Togo Mgmt*., *LLC*, No. A-5022-09T3, 2011 N.J. Super. Unpub. LEXIS 1246, at *15 (N.J. App. Div. May 13, 2011) ("For mutual assent to exist, there must have been a meeting of the minds of the parties. . . .  This signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement.").

Defendants concurrently claim Plaintiff's unjust enrichment claim is duplicative.  *See* Kimberly-Clark Mem. at 16; Costco Mem. at 8-9.  In essence, Defendants ask this Court to dismiss this alternative cause of action before giving the Court an opportunity to decide on the primary cause(s) of actions.  *See Piven*, 2010 U.S. Dist. LEXIS 27609, *26 ("Here, Defendants dispute the existence of a valid contract.  Plaintiffs' unjust enrichment claim is therefore not duplicative of its breach of contract claim, and Plaintiffs are entitled to proceed on both contractual and quasi-contractual theories.").

Accordingly, Plaintiff's unjust enrichment claim should not be dismissed as duplicative at this stage in the litigation.

### C.    Plaintiff's Unjust Enrichment Claim Has Been Pled in the Alternative

While *recovery* under unjust enrichment and express warranty, GBL §§349 and 350, NJCFA and/or negligent misrepresentation can be deemed duplicative and impermissible; Plaintiff may still initially plead these causes of action as alternatives.  Fed. R. Civ. 8(d)(2) provides that a "party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single

count or defense or in separate ones."  In reality, "unjust enrichment is, by its nature, an alternative remedy to contract and tort remedies . . . [i]t is inherent in a claim for unjust enrichment that it is pled in the alternative to a claim for recovery on the contract."  *Palmeri v. LG Elecs. USA*, No. 07-5706 (JAG), 2008 U.S. Dist. LEXIS 58374, at *19 (D.N.J. July 30, 2008); *see also St. John's Univ.*, 757 F. Supp. 2d at 183-84; *Vertex Constr. Corp. v. T.F.J. Fitness L.L.C.*, No. 10 Civ. 683, 2011 U.S. Dist. LEXIS 135453, at *14-*15 (E.D.N.Y. Nov. 23, 2011) (noting that "because it is difficult to determine the validity or scope of the contract at the pleading stage, courts routinely reject arguments" to dismiss unjust enrichment claims as premature).

That is why courts generally allow plaintiffs to plead causes of action which allege a contractual relationship while concurrently alleging a claim for unjust enrichment.  *See MK Strategies*, 567 F. Supp. 2d at 736 ("This Court has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature."); *see also Graco, Inc. v. PMC Global, Inc.*, No. 08-1304 (FLW), 2009 U.S. Dist. LEXIS 26845, at *94 (D.N.J. Mar. 31, 2009) (holding "an unjust enrichment claim may be sustained independently as an alternative theory of recovery"); *18 KT.TV, LLC v. Entest Biomedical, Inc.*, No. 3:11cv244, 2011 U.S. Dist. LEXIS 128435, at *14 (M.D. Pa. Nov. 7, 2011) (holding "until the express contract has been conclusively established, plaintiff can plead an implied contract in the alternative to an express contract. . . [t]o allow otherwise would be inconsistent with the rules of civil procedure, which allow the pleading of multiple claims regardless of consistency"); *Blennis v. Hewlett-Packard Co.*, No. 07-00333 JF, 2008 U.S. Dist. LEXIS 106464, at *12 (N.D. Cal. March 25, 2008) (denying dismissal of unjust enrichment claim despite plaintiff's express warranty claims because "Plaintiffs are entitled to plead an unjust enrichment claim in the alternative").

Therefore, Plaintiff's unjust enrichment claim is properly plead in the alternative, and should not be dismissed at this stage.

### D. Defendants' Additional Arguments Challenging Plaintiff's Unjust Enrichment Claim Under New Jersey Law Are Equally Meritless

#### 1. Plaintiff is Not Required to Plead a Direct Relationship with Kimberly-Clark

There is no bright line rule that "a plaintiff must plead a 'direct relationship' between the parties" to succeed in asserting a claim for unjust enrichment in New Jersey. *Stewart*., 877 F. Supp. 2d at 199. In fact, the "'some direct relationship' element of an unjust enrichment claim *does not* standing alone preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer and not directly from the manufacturer." *Id.*

In *Stewart*, the court found that "where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retails sales could have the effect of increasing the amount of wholesale sales to the manufacturer, it is plausible that a plaintiff can show evidence of a sufficiently direct relationship between the parties under New Jersey law." 877 F. Supp. 2d at 200. That relationship exists, and was alleged, here. The Complaint states that defendant Kimberly-Clark falsely represents that the Kimberly-Clark Flushable Products are flushable on its packaging, as well as on its website and marketing materials, when, in fact, the Flushable Products do not break down as promised and, in effect, cause significant plumbing issues when flushable down toilets. ¶3. Through these misrepresentations and corresponding sales, Kimberly-Clark reaps the benefit of increased retail sales of its Kimberly-Clark Flushable Products. As Plaintiff alleges, he would not have purchased Defendant's Flushable Products or paid the price that he did had he known they were not "flushable" as per the representations on the packaging. ¶79. Indeed, if the representations on the Flushable

- 39 -

Products packaging were true and the purportedly-Flushable Products were actually "sewer and septic safe," Plaintiff and members of the Class would not have suffered plumbing issues as a result of flushing them down toilets.  ¶14.

Because the Flushable Products are labeled and marketed as "flushable", a benefit regular, non-flushable products do not have, defendant Kimberly-Clark charges a noticeable premium for their Flushable Products when compared to the price of non-flushable wipes.  ¶75.  Defendant Kimberly-Clark would not have received the benefit of the profits from Kimberly-Clark Flushable Products had it not been for its fraudulent conduct.  ¶76 ("Plaintiff and members of the Class paid more for Defendants' flushable wipes than they otherwise would have had they not been misled by the false and misleading labeling and advertisements and misrepresentations complained of herein.").  As *Stewart* held, it would be "inequitable" to allow defendant Kimberly-Clark to "insulate [it]self from liability on an unjust enrichment claim simply by asserting that retail sales by [retailers like defendant Costco] cut off any relationship between the consumers and the manufacturer."  877 F. Supp. 2d at 200.

### 2.    Plaintiff's Unjust Enrichment Claim is Based On a Contract Theory of Recovery

Plaintiff properly pled his unjust enrichment claim under a quasi-contract theory and not, as defendant Kimberly-Clark contends (*see* Kimberly-Clark Mem. at 17-18) – based on a tort theory.  Specifically, Plaintiff has properly alleged a claim for express warranty under both New York and New Jersey law against both Defendants Kimberly-Clark and Costco.  Akin to *Stewart*, Plaintiff's unjust enrichment claim is properly pled in quasi-contract.  *See* 877 F. Supp. 2d at 196.  The *Stewart* court reasoned that:

> the recognition that "some direct relationship" should exist between the parties to an unjust enrichment claim simply reflects the need to curtail the reach of this equitable remedy — a so called "legal fiction" — to prevent a finding of liability in cases where the defendant had absolutely no course of dealings with, and no other

demonstrated connection to, the plaintiff.  The notion that "some direct relationship" exist between the [parties] is simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiff's claims.  *Id*.

That reasoning applies with equal force here.  Defendant Kimberly-Clark is not "too far removed or too attenuated" from the misrepresentations that injured Plaintiff.  To the contrary, defendant Kimberly-Clark is not an innocent third party.  Notwithstanding that Plaintiff's purchases were made via a retailer, defendant Kimberly-Clark made the express warranty with the alleged misrepresentations contained on its products labeling, packaging and other marketing materials.  *See Stewart*, 877 F. Supp. 2d at 200 (noting "where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retails sales could have the effect of increasing the amount of wholesale sales to the manufacturer, it is plausible that a plaintiff can show evidence of a sufficiently direct relationship between the parties under New Jersey law"); *accord Lynch v. Tropicana Prods*., No. 2:11-cv-07382, 2013 U.S. Dist. LEXIS 82829, at *33 (D.N.J. June 12, 2013).  The basis for Plaintiff's unjust enrichment claim is that he bargained for goods that were flushable and in turn received goods that, contrary to defendant Kimberly-Clark's express warranty, were not flushable.  As such, Plaintiff's unjust enrichment claim is grounded in a contract theory of recovery and has been properly pled under New Jersey law.

Yet, defendant Kimberly-Clark insists that Plaintiff's unjust enrichment claim sounds in tort.  It relies on *Gray v. Bayer Corp*., No. 08-4716, 2009 U.S. Dist. LEXIS 48181 (D.N.J. June 9, 2009) in support.  *See* Kimberly-Clark Mem. at 18.  *Gray*, however, has no relevance to the instant action.  Here, Plaintiff pled a cause of action for breach express warranty.  In *Gray*, the plaintiff asserted "claims for violations of the NJCFA, negligent misrepresentation, intentional misrepresentation, and unjust enrichment," but no contract or quasi-contractual claims.  *See* 2009 U.S. Dist. LEXIS 48181,

at *3; Kimberly-Clark Mem. at 18.  Here, though, Plaintiff's unjust enrichment claim is rooted in a quasi-contract theory.  Plaintiff, therefore adequately pled a claim for unjust enrichment under New Jersey law.

## XI.  PLAINTIFF'S CLAIMS CAN BE CERTIFIED AS A NATIONWIDE CLASS

The common law claims asserted by Plaintiff have routinely been certified on a nationwide basis.  *See, e.g.*, *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 570 (S.D.N.Y. 2014), *mot. to reconsider denied*, 2014 U.S. Dist. LEXIS 44780, at *4 (S.D.N.Y. Mar. 19, 2014) (certifying a nationwide class asserting claims for negligent misrepresentation under New York and New Jersey law and breach of express warranty under New Jersey law); *Elias*, 252 F.R.D. at 240 (certifying a nationwide class asserting claims under the NJCFA and breach of warranty).

NJCFA claims have likewise been certified as a nationwide class.  *See Payne v. Fujifilm U.S.A., Inc.*, No. 07-385 (JAG), 2007 U.S. Dist. LEXIS 94765, at *23-*25 (D.N.J. Dec. 28, 2007) (denying dismissal of NJCFA claim on behalf of nationwide class and noting that "[t]he NJCFA is intended to be liberally applied, and permits recovery . . . by persons, whether or not New Jersey residents, who suffer any ascertainable loss"); *see also Mercedes-Benz Tele Aid*, 257 F.R.D. at 55-69 (applying New Jersey law, including the NJCFA, to a nationwide class of automobile purchasers), *mot. to decertify class denied*, 267 F.R.D. 113 (D.N.J. 2010); *Kalow & Springut, LLP v. Commence Corp.*, No. 07-3442, 2012 U.S. Dist. LEXIS 173785 (D.N.J. Dec. 7, 2012) (applying NJCFA to nationwide class of purchasers of defective software); *Elias*, 252 F.R.D. at 240 (applying New Jersey law, including the NJCFA, to nationwide class of purchasers of food products sold in misrepresenting packaging); *Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152, 2006 U.S. Dist. LEXIS 57675 (D.N.J. Aug. 17, 2006) (applying NJCFA to nationwide class involving mass cancellation of mortgages); *Int'l Union of Operating Eng'rs Local 68 Welfare Fund v. Merck & Co.*,

- 42 -

894 A.2d 1136, 1153 (N.J. App. Div. 2006) (applying NJCFA to nationwide class of third-party payers who overpaid for falsely marketed drugs), *overruled on other grounds*, 192 N.J. 372 (2007).

The main target of Defendants' contention that a nationwide class cannot be certified is directed toward GBL §§349 and 350.  *See* Costco Mem. at 11-13; Kimberly-Clark Mem. 20-22.  The notion averred by Defendants, that GBL §§349 and 350 claims **cannot** be brought or certified on a nationwide basis is simply wrong.  *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 236 (E.D.N.Y. 2010).  Here, in fact, it is entirely appropriate for Plaintiff, a New York resident who purchased and used the Flushable Products, to represent a putative nationwide class.  *See In re Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739, 2006 U.S. Dist. LEXIS 78064, at *10 (S.D.N.Y. Oct. 25, 2006) (noting that "this is not a case where the Named Plaintiffs are attempting 'to piggy-back on the injuries of the unnamed class members'").

Notably, while Defendants balk at the idea that a nationwide class can be certified for the GBL §§349 and 350 claims, they failed to exhibit even a single conflict or material difference between the consumer fraud statutes of either New York (or New Jersey for that matter) and any other state, such that it would have a "significant possible effect on the outcome" of the action and preclude bringing claims on behalf of a nationwide class for violations of the New York statutes. *See Phillips Petroleum v. Shutts*, 472 U.S. 797, 816 (1985) ("no injury" in applying single state's law unless that state's law conflicts with other jurisdictions implicated in suit).  Indeed,  where New York is the forum court, a court is free to bypass the choice of law analysis and apply New York law in the absence of a material conflict.  *See Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) ("It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis.").

- 43 -

Still, without justification, Defendants argue that it is "appropriate to dismiss these facially improper national class allegations at the pleading stage."  Costco Mem. at 12; *see also* Kimberly-Clark Mem. at 20-21.  While it may be theoretically *permissible* to dismiss such claims at the pleading stage, under the circumstances here, it is more *appropriate* to defer ruling on this issue until class certification.

Defendants' reliance, in this regard, on *Frito-Lay* and *Szymczak v. Nissan N. Am., Inc.*, No. 10CV7493 (VB), 2011 U.S. Dist. LEXIS 153011 (S.D.N.Y. Dec. 16, 2011) is misplaced.  *See* Costco Mem. at 2; *see Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *58 ("courts have recognized that this question is usually addressed on a class certification motion . . . ."); *Szymczak*, 2011 U.S. Dist. LEXIS 153011, at *35 ("This issue, however, is usually resolved at the Rule 23 class certification stage, not on a motion to dismiss.").

At a minimum, this Court should defer ruling on a determination for nationwide class treatment at a later stage in this litigation.

## XII.   CONCLUSION

For the foregoing reasons, it is respectfully submitted that this Court should deny Defendants' motions in their entirety.  In the event that this Court grants the motions, however, this Court should also grant Plaintiff leave to amend to correct any deficiencies identified by the Court.[27]

---

[27]   In connection with this omnibus brief, Plaintiff and his counsel filed declarations with data corresponding to what was already pled in the Complaint, including, for example, detail concerning the cost of repairing the damage to Plaintiff's plumbing in both of his homes (*see supra* at p. 24, n. 19) and the price of various Flushable Products along with comparative alternatives (*see supra* at p. 25, n. 20), as well as a more literal statement verifying that Plaintiff saw, read and relied on the misrepresentations made by Defendants on, and in connection with, their Flushable Products (*see supra* at p. 13, n. 11).  If necessary, these accompanying details can form support for an amended complaint should this Court determine that repleading is necessary to sustain one or more of Plaintiff's claims.  *See Thompson v. Gjivoje*, 687 F. Supp. 922, 925 (S.D.N.Y. 1988) (granting the plaintiff leave to amend his fraud claim with respect to purchase price); *Posner v. Minn. Mining & Mfg. Co., Inc.*, 697 F. Supp. 122, 124 (E.D.N.Y. 1988) (granting leave to amend reliance allegations).

DATED: July 1, 2014

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
MARK S. REICH
EDWARD Y. KROUB


*s/ Mark S. Reich*

MARK S. REICH

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rrothman@rgrdlaw.com
mreich@rgrdlaw.com
ekroub@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2014, I authorized the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.


*/s/ Mark S. Reich*
MARK S. REICH