UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

| | |
|---|---|
| D. Joseph Kurtz, Individually and on Behalf of All Others Similarly Situated, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | :   No. 1:14-cv-01142 |
| | : |
| Kimberly-Clark Corporation and Costco Wholesale Corporation | : |
| | : |
| Defendants. | : |

----------------------------------------------------------------x

**DEFENDANT KIMBERLY-CLARK CORPORATION'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION**

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York  10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

James W. Mizgala (*pro hac vice*)
Kara L. McCall (*pro hac vice*)
Daniel A. Spira (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Kimberly-Clark Corporation*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND .........................................................................................................3

I.     PLAINTIFF'S CLAIMS AGAINST KIMBERLY-CLARK AND COSTCO ...................3

II.    KIMBERLY-CLARK'S FLUSHABLE MOIST WIPES AND CHANGES IN
       TECHNOLOGY .................................................................................................4

III.   REASONS FOR CONSUMER PURCHASE AND VARIATIONS IN USE OF
       KIMBERLY-CLARK'S FLUSHABLE MOIST WIPES....................................................6

       A.    Consumers Care More About Cleaning Ability Than Flushability. .......................6

       B.    The "Flushability" Claim Is Typically Not A Reason To Purchase. .......................7

       C.    Around Half Of Purchasers Do Not Flush Flushable Wipes. .................................7

       D.    Consumers Flush Other Non-Flushable Materials....................................................8

       E.    Most Kimberly-Clark Flushable Wipe Consumers Have No Sewer Problems. ......8

IV.    VARIATIONS IN THE PRICE OF KIMBERLY-CLARK FLUSHABLE WIPES...........9

V.     PLAINTIFF'S PURCHASE AND USE OF FLUSHABLE MOIST WIPES ...................10

       A.    Plaintiff Used Kimberly-Clark's Cottonelle Flushable Wipes For Almost A
             Decade With No Problems.........................................................................................10

       B.    After Using Baby Wipes And Flushable Wipes, Plaintiff Experiences Sewer
             Problems Within A Week of Moving Into His New York Residence..................10

       C.    One Week After Moving Into A New Jersey Summer Rental, Plaintiff
             Experienced Sewer Problems. ...............................................................................12

       D.    Plaintiff Continues to Purchase — But Not Flush — Flushable Wipes. ...............13

ARGUMENT ..............................................................................................................14

I.     THERE IS NO COMMON, CLASS-WIDE INJURY RESULTING FROM KIMBERLY-
       CLARK'S "FLUSHABLE" LABEL CLAIMS................................................................15

       A.    Many Class Members Suffered No Injury to Property. ........................................15

       B.    Many Class Members Suffered No Economic Injury.............................................16

       C.    The Lack Of A Classwide Injury Is Fatal To Class Certification..........................17

II.    THE NECESSARY ELEMENTS OF CAUSATION AND RELIANCE CANNOT BE
       ESTABLISHED WITH COMMON CLASS-WIDE PROOF.........................................21

       A.    Whether Consumers Purchased Flushable Wipes Because Of The "Flushable"
             Claim Is An Individualized Issue.............................................................................23

       B.    Whether Kimberly-Clark's Flushable Wipes Caused Property Damage Is An
             Individualized Issue. ...............................................................................................25

III.   PLAINTIFF HAS NO METHODOLOGY FOR DETERMINING COMMON, CLASS-WIDE DAMAGES. ...................................................................................................27

    A.   Property Damages Are Inherently Individualized. ................................................28

    B.   Economic Damages Are Inherently Individualized. ..............................................30

IV.   MEMBERSHIP IN THE PUTATIVE CLASSES IS NOT ASCERTAINABLE. ............32

V.   CERTIFICATION OF A NATIONWIDE CLASS WOULD BE IMPROPER. ...............34

    A.   Plaintiff Cannot Maintain Nationwide GBL Or NJCFA Claims As A Matter Of Law. ......................................................................................................................34

    B.   The Necessary Application Of All 50 States' Laws To Class Members' Claims Makes The Class Action Unmanageable And Not Superior To Other Methods Of Adjudication.........................................................................................................35

        1.   New York Courts Would Apply The Law Of The State Of Residence Or Purchase To Plaintiff's Common Law Claims. .........................................35

        2.   A Trial Applying The Law Of 50 States Would Be Unmanageable. ........37

VI.   THE COURT SHOULD DENY CERTIFICATION OF A RULE 23(b)(2) CLASS. ......38

CONCLUSION................................................................................................................................40

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE(S)**

*Abraham v. Am. Home Mortg. Servicing, Inc.,*
   947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...................................................................21

*Ackerman v. Coca-Cola Co.,*
   No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............27, 31, 32, 33

*Adams v. Fed. Materials Co.,*
   No. 5:05-CV-90-R, 2006 WL 3772065 (W.D. Ky. Dec. 19, 2006) ........................................29

*Amara v. CIGNA Corp.,*
   775 F.3d 510 (2d Cir. 2014) ................................................................................38

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ...........................................................................................21

*Carrera v. Bayer Corp.,*
   727 F.3d 300 (3d Cir. 2013) ................................................................................32

*Chin v. Chrysler Corp.,*
   182 F.R.D. 448 (D.N.J. 1998) .............................................................................37

*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013) .................................................................................14, 28

*Cooper v. Samsung Elecs. Am., Inc.,*
   374 F. App'x 250 (3d Cir. 2010) .........................................................................34

*Curley v. AMR Corp.,* 153 F.3d 5, 11 (2d Cir. 1998)
   153 F.3d 5 (2d Cir. 1998) ...................................................................................36

*Dungan v. The Acad. at Ivy Ridge,*
   249 F.R.D. 413 (N.D.N.Y. 2008), *aff'd,* 344 F. App'x 645 (2d Cir. 2009) ................23, 27, 28

*Fedotov v. Peter T. Roach & Assocs., P.C.,*
   354 F. Supp. 2d 471 (S.D.N.Y. 2005) ...................................................................14

*Fogarazzao v. Lehman Bros., Inc.,*
   232 F.R.D. 176 (S.D.N.Y. 2005) .........................................................................32

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   903 F.2d 176 (2d Cir. 1990) ................................................................................25

*Goshen v. Mut. Life Ins. Co. of New York,*
   98 N.Y.2d 314 (2002) ...................................................................................21, 34

*Green v. Green Mountain Coffee Roasters, Inc.*,
   279 F.R.D. 275 (D.N.J. 2011)..................................................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014)...........................................................................................22

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) ...................................................................22

*In re Beacon Assocs. Litig.*,
   No. 09 Civ. 8362 (LBS), 2012 WL 1372145 (S.D.N.Y. Mar. 19, 2012) ...............17

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
   No. 08-1967, 2011 WL 6740338 (W.D. Mo. December 22, 2011).........................18

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
   288 F.3d 1012 (7th Cir. 2002) ...............................................................................37

*In re Canon Cameras*,
   237 F.R.D. 357 (S.D.N.Y. 2006) ...........................................................................19

*In re Ford Ignition Co. Ignition Switch Prods. Liab. Litig.*,
   174 F.R.D. 332 (D.N.J. 1997).................................................................................37

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   MDL No. 1687, 2012 WL 379944 (D.N.J. Feb. 6, 2012).......................................24

*In re Fosamax Prods. Liab. Litig.*,
   248 F.R.D. 389 (S.D.N.Y. 2008) ...........................................................................27

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
   No. 12-MD-2413 (RRM), 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...... 34, 36

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008). ......................................................................36, 37

*In re Initial Public Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006).................................................................................14, 32

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C.Cir.2013).................................................................................15

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004).............................................................................37

*In re Rezulin Prods. Liab. Litig.*,
   210 F.R.D. 61 (S.D.N.Y. 2002) .........................................................................35, 37

*In re Stucco Litig.*,
  175 F.R.D. 210 (E.D.N.C. 1997) ...........................................................29

*In re Thelen LLP*,
  736 F.3d 213 (2d Cir. 2013)..................................................................36

*In re: Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
  No. 05 C 4742, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) .................37

*Janes v. Triborough Bridge & Tunnel Auth.*,
  889 F. Supp. 2d 462 (S.D.N.Y. 2012)..............................................15, 18

*Kaczmarek v. Int'l Business Machines Corp.*,
  186 F.R.D. 307 (S.D.N.Y. 1999) ...............................................25, 36, 37

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014)....................................................22

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
  108 F.3d 1531 (2d Cir. 1997).................................................................36

*Leider v. Ralfe*,
  No. 1:01-CV-3137-HB, 2003 WL 24571746 (S.D.N.Y. Mar. 4, 2003) .................................28

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
  211 F.R.D. 228 (S.D.N.Y. 2002) .....................................................20, 34

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) .......................................................21

*Luedke v. Delta Airlines Inc.*,
  155 B.R. 327 (S.D.N.Y. 1993)................................................................32

*Madanat v. First Data Corp.*,
  282 F.R.D. 304 (E.D.N.Y. 2012) ...........................................................15

*Major v. Ocean Spray Cranberries, Inc.*,
  No. 5:12-CV-03067, 2013 WL 2558125 (N.D. Cal. June 10, 2013).......................................20

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) ............................................................................22

*Marcus v. BMW of N. Am.*,
  687 F.3d 583 (3d Cir. 2012)...................................................................22

*Martin v. Home Depot U.S.A., Inc.*,
  225 F.R.D. 198 (W.D. Tex. 2004) ..........................................................29

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..............................................................................37

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v.
    Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ...............................................22, 24, 27, 28

*Newman v. RCN Telecom Servs., Inc.*,
    238 F.R.D. 57 (S.D.N.Y. 2006) .............................................................................27

*Nicosia v. Amazon.com, Inc.*,
    -- F. Supp. 3d --, No. 14–cv–4513 (SLT)(MDG), 2015 WL 500180 (E.D.N.Y. Feb. 4,
    2015) ...................................................................................................................39

*Oscar v. BMW of N. Am., LLC*,
    09 Civ. 11, 2012 WL 2359964 (S.D.N.Y. June 19, 2012)......................................31

*Pagan v. Abbott Labs., Inc.*,
    287 F.R.D. 139 (E.D.N.Y. 2012) ..............................................................15, 18, 19

*Pelman v. McDonald's Corp.*,
    272 F.R.D. 82 (S.D.N.Y. 2010) ..................................................................23, 26, 27

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
    11 CIV. 6546-JPO, 2013 WL 93636 (S.D.N.Y. Jan. 9, 2013).................................25

*Roach v. T.L. Cannon Corp.*,
    -- F.3d --, No. 13-3070-CV, 2015 WL 528125 (2d Cir. Feb. 10, 2015)..................28

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..................................................................................19

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001)...................................................................................38

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)...................................................................................39

*Singer v. Beach Trading Co., Inc.*,
    876 A.2d 885 (N.J. Super. Ct. App. Div. 2005).......................................................22

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) .............................................................................14

*Sykes v. Mel S. Harris & Assocs. LLC*,
    -- F.3d --, 2015 WL 525904 (2d Cir. Feb. 10, 2015)........................................15, 18

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    546 F.3d 196 (2d Cir. 2008)...................................................................................................14

*Tomasino v. Estee Lauder Cos.*,
    -- F. Supp. 2d--, No. 13–CV–4692 (ERK)(JMA), 2014 WL 4244329 (E.D.N.Y. Aug.
    26, 2014) ..............................................................................................................................39

*UFCW Local 1776 v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*,
    Nos. 04-MD-1596, 2008 WL 2696916 (E.D.N.Y. July 2, 2008) (Weinstein, J.)....................37

*Vaccariello v. XM Satellite Radio*,
    295 F.R.D. 62 (S.D.N.Y. 2013) ..............................................................................19, 27, 39

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).................................................................................................. passim

*Weiner v. Snapple Bev. Corp.*,
    No. 07 Civ. 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).......................... passim

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ..............................................................................................35


**RULES AND STATUTES**

Fed. R. Civ. P. 23 ............................................................................................................ passim

New York General Business Law § 349............................................................................. passim

New York General Business Law § 350............................................................................. passim

## PRELIMINARY STATEMENT

Defendant Kimberly Clark Corporation ("Kimberly-Clark") respectfully submits this Memorandum of Law in Support of its Motion to Deny Class Certification.

Plaintiff D. Joseph Kurtz ("Plaintiff") seeks certification of nine classes of consumers of nineteen different "flushable moist wipe" products. Plaintiff alleges that he and all other purchasers of the products — nationwide, in New York, and in New Jersey — suffered various types of damages, including "significant plumbing costs," as a result of Defendants' allegedly false labeling of their wipes as "flushable."

Plaintiff alleges that after flushing Defendants' flushable moist wipes for several years in different houses without incident, he flushed (i) Kimberly-Clark's Cottonelle brand flushable wipes; (ii) Costco Wholesale Corporation's ("Costco's") Kirkland brand flushable wipes; and (iii) non-flushable baby wipes – all at the same time – and had clogging incidents. Plaintiff does not know which wipes caused the clogging, and does not know anything about the design or the condition of his plumbing systems. Moreover, even after he believed that the products were not flushable in his sewer systems, he continued to purchase Defendants' wipes, throwing them in the trash after use. Each of these facts demonstrates that the putative classes' claims are not susceptible to classwide proof and, moreover, rebuts any contention that Kimberly-Clark's labeling of the products as "flushable" caused Plaintiff's alleged injuries, that Kimberly-Clark's wipes, in particular, were the cause of his property damage, or that Plaintiff relied on Defendants' "flushable" representations at all times.

Nevertheless, he seeks to bring claims on behalf of all purchasers of Kimberly-Clark and Costco flushable wipe products, whether or not those purchasers had any plumbing issues, whether or not they bought the product because it was labeled "flushable," and whether or not they flushed the product. Because individual issues related to purchasing behavior, use of the

product, injury, and damages predominate, Plaintiff cannot satisfy the requirements of Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure with regard to any of his putative classes, and class certification should be denied.  More specifically:

*No Common Injury*.  There is no common, class-wide injury.  Because the classes are defined to include all purchasers of the products at issue, some – and more likely, the overwhelming majority of – putative class members who have purchased Kimberly-Clark's flushable moist wipes experienced *none* of the injuries Plaintiff alleges.  That is, the products flushed just fine or the class members disposed of them in the trash.

*No Method to Determine Causation, Reliance, or Damages Through Classwide Proof.* The evidence shows that the vast majority of proposed class members have suffered no plumbing damages from their use of flushable moist wipes, such that commonality is lacking, and class certification is improper.  Even if they did suffer property damages, causation issues would overwhelm the proof.  Indeed, Plaintiff himself cannot establish that his property damage was caused by Kimberly-Clark's wipes (as opposed to Costco's wipes or the baby wipes he also flushed at the same time).  And even with respect to "economic" damages (*i.e.*, a refund of the supposed premium consumers paid for flushable wipes versus what they would have paid for purportedly comparable non-flushable wipes), individual issues regarding whether they sustained any economic injury, their expectations, payment price, purchasing behavior, reliance on the challenged claims, cause of their injuries, and use of the product predominate over any issues that may be common across the class.

*No Method to Determine Class Membership.*  No means exist to identify class members who allegedly purchased Kimberly-Clark's flushable wipes.  The majority of putative class members – Plaintiff included – have no proof of purchasing Kimberly-Clark wipes, and

Kimberly-Clark (who does not sell directly to consumers) has no proof of purchases made by class members.  Accordingly, Plaintiff's proposed classes are not objectively and reliably ascertainable.

       ***No Method to Manage Trial of a 50-State Class.***  Plaintiff's proposed nationwide classes are unmanageable, because conflicting laws of all fifty states must be applied with regard to putative class members' causes of action.

       For these reasons and those described further below, class certification should be denied.

<div align="center">

**BACKGROUND**

</div>

## I.     PLAINTIFF'S CLAIMS AGAINST KIMBERLY-CLARK AND COSTCO

       Plaintiff alleges that Defendants Kimberly-Clark and Costco (collectively "Defendants") have engaged in "deceptive, improper or unlawful conduct in the design, marketing, manufacturing, distribution, and sale of flushable wipes" (Compl. ¶ 1).  In particular, Plaintiff alleges that despite being marketed as "flushable," Defendants' products "do not disintegrate immediately upon flushing, like toilet paper," and therefore "cause serious problems for homeowners and municipalities alike" (*id*. ¶ 3).  Plaintiff maintains that he and class members suffered damages in the form of "significant plumbing costs," inflated prices over unspecified non-flushable wipes, and/or the unspecified full purchase price for flushable wipes (*id*. ¶¶ 76-83).

       Plaintiff seeks certification of nine different Rule 23(b)(2) and (b)(3) putative classes of consumers of nineteen different products, even though he himself purchased only two of the products (*id*. ¶¶ 2, 90, 96, 97; Deposition of Plaintiff D. Joseph Kurtz ("Kurtz Dep.") (Ex. A to Declaration of Eamon P. Joyce[1]) at 139:17-140:15, 144:13-146:5).  Three of the proposed classes

---

[1] All the exhibits cited in this Memorandum are attached to the same Declaration and therefore are simply cited by the relevant Exhibit letter ("Ex. __") hereafter.

<div align="center">

3

</div>

include nationwide, New York, and New Jersey purchasers of "Cottonelle Flushable Wipes," a line of four products manufactured by Kimberly-Clark (Compl. ¶¶ 2, 90). Three additional classes encompass nationwide, New York, and New Jersey consumers of "Kimberly-Clark Flushable Wipes," which Plaintiff defines to include the four "Cottonelle Flushable Wipes," plus fourteen additional products manufactured by Kimberly-Clark (*id*.). Finally, Plaintiff proposes nationwide, New York, and New Jersey classes consisting of all purchasers of "Kirkland Signature Flushable Wipes," a product sold by Costco (*id*.). None of Plaintiff's proposed classes are limited to any time period (*id*. ¶ 90).

Plaintiff brings six causes of action against both Defendants on behalf of himself and each proposed class: negligent misrepresentation (Count I), breach of express warranty (Count II), violation of the New York General Business Law ("GBL") §§ 349 and 350 (Counts III and IV), violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count V), and unjust enrichment (Count VI). Because Plaintiff alleges that he was injured in both New York and New Jersey, each of his common law claims will need to be proven under the laws of both states. In addition to class certification, Plaintiff seeks statutory, compensatory, and punitive damages; disgorgement and restitution; attorneys' fees and costs; and declaratory and injunctive relief (*id*. at Prayer for Relief).

## II.  KIMBERLY-CLARK'S FLUSHABLE MOIST WIPES AND CHANGES IN TECHNOLOGY

Kimberly-Clark has manufactured and sold various flushable moist wipe products under its Cottonelle, Scott, Huggies, Pull-Ups, and U by Kotex brands (KCC-Kurtz0019341-42 (Ex. B); Compl. ¶ 2).[2] The labeling and packaging for each of these brands is handled independently

---

[2] The Scottex and Andrex product lines identified in the Complaint were never sold in the United States (Kimberly-Clark's Resp. to Pl.'s First Set of Interr. (Ex. C) at Gen. Obj. No. 16). The

by Kimberly-Clark's brand teams (Deposition of Amanda O'Connor ("O'Connor Dep.") (Ex. D) at 24:23-25:3).

Between 2007 and 2014, Kimberly-Clark improved the technology used in its flushable moist wipes on three occasions, each time increasing the dispersability of its products (KCC-Kurtz0019341-42 (Ex. B) (outlining product technology changes in approximately 2007, 2011, and 2013); Deposition of David Powling ("Powling Dep") (Ex. E) at 25:17-26:16, 27:12-18, 28:10-22, 29:22-30:14 (changes resulted in products that disperse three times as quickly as the previous versions)). Each of those technologies has been used on multiple Kimberly-Clark flushable wipe product lines (KCC-Kurtz0019341-42 (Ex. B)). Likewise, any given product line has utilized multiple, distinct technologies during overlapping time periods (*id.* at n.1). And because different retailers sell products at different speeds, older technology might still be available at one retailer while newer technology is on the shelf at a different retailer (*id.*). In addition to spanning different product technologies, Kimberly-Clark's various brands of flushable wipes have different sizes and packaging, and are marketed differently as either "premium" or "value" brands (O'Connor Dep. (Ex. D) at 84:1-22).

While Kimberly-Clark has continuously improved the technology used in its products, its "flushability" claims are based on the ability of its wipes to "meet and exceed" testing guidelines set forth by the International Nonwovens and Disposables Association ("INDA") and the European Disposables Nonwovens Associations ("EDANA") (O'Connor Dep. (Ex. D) at 30:11-20; Powling Dep. (Ex. E) at 18:16-19:4, 61:5-14). At all relevant times, Kimberly-Clark has followed and complied with the principles of the INDA/EDANA Guidelines for Assessing the Flushability of Disposable Nonwoven Products, which provide the criteria and testing used to

---

"Poise Intimate" feminine hygiene wipe identified in Plaintiff's Complaint has been discontinued (O'Connor Dep. (Ex. D) at 19:5-8).

determine whether a wipe is "flushable" (Kimberly-Clark's Resp. to Pl.'s First Set of Interr. (Ex. C) at No. 2; O'Connor Dep. (Ex. D) at 30:11-14 ("All our products . . . meet, and exceed those guidelines, so therefore we call our product flushable."))[3]

## III.   REASONS FOR CONSUMER PURCHASE AND VARIATIONS IN USE OF KIMBERLY-CLARK'S FLUSHABLE MOIST WIPES

### A.   Consumers Care More About Cleaning Ability Than Flushability.

In a 2005 qualitative study, flushable moist wipe users indicated that in addition to flushability, they consider cleanliness/freshness, moistness, durability, softness/comfort, thickness/size, scent, and dispensability when choosing a flushable moist wipe (KCC-Kurtz0001973-94 (Ex. H) at 87-88; Powling Dep. (Ex. E) at 17:3-18:11 (attributes such as strength, softness, hand feel, drape, wetness, and thickness are important to the consumer)). Consumers "noted that a clean, fresh feeling was the ***primary reason*** for using a flushable moist wipe . . ." (*id*. at 1987) (emphasis added).  Data from a 2013 survey similarly demonstrates that



(KCC-Kurtz0000686-89 (Ex. I) at 87).  Other attributes, such as

were also highly ranked considerations for consumers (*id.*; *see also*

---

[3] INDA and EDANA first established flushability standards in 2008, to "provide[] an industry-accepted definition of flushability, greater clarity on when flushing should be considered an appropriate means of disposal, and a specified approach for assessing the flushability of consumer products" (Guidelines for Assessing the Flushability of Disposable Nonwoven Products (3d ed. 2013) (Ex. F) ("3d ed. INDA Guidelines") at 4).  The standards were "the culmination of four years of industry collaboration during which the flushability assessment approach was developed and test methods were trialed using an independent testing laboratory" (KCC-Kurtz0000001-05 (Ex. G) at 03).  The resulting tests for flushability were "peer reviewed by 12 experts with various backgrounds in wastewater disposal, conveyance and treatment" (*id*.). Since that time, INDA and EDANA have published second and third editions of the flushability standards, in 2009 and 2013, respectively, "to reflect advances in environmental science and nonwoven technologies as well as changes in consumer practices and wastewater infrastructure" (3d ed. INDA Guidelines (Ex. F) at 3).  The current edition of the guidelines consists of a series of "seven tests . . . , all of which a product must pass to be considered flushable" (*id*.).

Declaration of Keith R. Ugone, Ph.D. ("Ugone Decl.") (Ex. Y) § VI.A (discussing various reasons why consumers purchase flushable moist wipes)).

### B.     The "Flushability" Claim Is Typically Not A Reason To Purchase.



Another study, conducted in 2013, revealed that participants ███████████████

████████████████████████████████████████████████████████████████████████

██████████████████████ (KCC-Kurtz0002654-66 (Ex. K) at 60-61). ██████████████

██████████████████████████████████████████████████████ (*id.* (emphasis

added); *see also* KCC-Kurtz0000714-32 (Ex. L) at 26 (identifying only 32% of participants in a

2005 study "who consider clog prevention as extremely important"); KCC-Kurtz0000686-89

(Ex. I) at 87 ████████████████████████████████████████████████████████

███████████████████████████████████; O'Connor Dep. (Ex. D) at 40:21-41:1 (testifying

that the company conducted market research of the flushability claims and "didn't find interest

from our consumers as a primary benefit")).[4]  Moreover, many consumers do not even read the

labels – in a 2012 study, ████████████████████████████████████████████████

████████████████████████ (KCC-Kurtz0011209-13 (Ex. O) at 11).

### C.     Around Half Of Purchasers Do Not Flush Flushable Wipes.

In a market research study conducted in 2004, nearly 40% of the 306 respondents who

had used flushable wipes on a regular basis indicated that they "sometimes" or "always" dispose

of their flushable wipes in the garbage — not a toilet — after use (KCC-Kurtz0019453-71 (Ex.

---

[4] Kimberly-Clark's marketing strategies bear out that consumer priority (KCC-Kurtz0019352-67 (Ex. M) at 54 (emphasizing that Cottonelle flushable moist wipes provide "[a] fresher clean," and that flushable wipes "contain just the right amount of moisture to get you cleaner and fresher than toilet paper alone")).  Kimberly-Clark's advertisements for its flushable wipes rarely focus on the flushability or dispersability attributes (*e.g.*, KCC-Kurtz0002877-2896 (Ex. N); O'Connor Dep. (Ex. D) at 112:5-13 (noting that "media" related to Cottonelle typically does not discuss dispersability because customers are much more interested in "clean and fresh" attributes)).

P) at 65; *see also* KCC-Kurtz0004093-125 (Ex. Q) at 096 ("About 40% [of flushable wipe users in a 2005 study] flush [flushable moist wipes] less than 80% of the time")). A 2012 study similarly revealed that only ███████████████████████████████████████████ ███████████████████████ (KCC-Kurtz0011209-13 (Ex. O) at 10). In a 2013 study, participants were shown a news report indicating that flushable wipes can clog sewer systems, after which ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████ (KCC-Kurtz0007030-36 (Ex. R) at 30, 33-34; *see also* Ugone Decl. (Ex. Y) § VI.B.1).

**D.    Consumers Flush Other Non-Flushable Materials.**

Approximately 60% of flushable moist wipe users in a 2005 study indicated that they flush wipes with other products, including toilet paper, tampons, facial tissues, bathroom cleaning wipes, and baby wipes (KCC-Kurtz0004093-125 (Ex. Q) at 118; *see also* KCC-Kurtz0007030-36 (Ex. R) at 33 (in a 2013 study, respondents had ████████████████████ ████████████████████████████████████████); KCC-Kurtz0017561-85 (Ex. S) at 69 ("almost a third" of non-flushable baby wipe users "flush them at least occasionally"); Ugone Decl. (Ex. Y) § VI.B.2). As a result, notwithstanding Plaintiff's many allegations about the harms flushable wipes pose to wastewater systems (*e.g.*, Compl. ¶¶ 39-40, 48-72), studies show that "[n]on-flushable items (including Paper Towels, Feminine Hygiene Products and Baby wipes) are the lead contributors to the wastewater system issues, not the products labeled 'Flushable' that pass the Flushability Guidelines" (KCC-Kurtz0015144 (Ex. T); *cf.* D.E. 41 (ordering that this case will not "proceed based on alleged municipal injury").

**E.    Most Kimberly-Clark Flushable Wipe Consumers Have No Sewer Problems.**

In the same 2005 study noted above, 82% of respondents (flushable moist wipe users) indicated that they had never had a sewer back-up caused by flushable moist wipes (KCC-

Kurtz0004093-125 (Ex. Q) at 113; *see also* Ugone Decl. (Ex. Y) § VI.C).  Consumers of

Kimberly-Clark flushable wipes who *have* experienced product dissatisfaction or plumbing

issues have routinely been compensated (O'Connor Dep. (Ex. D) at 126:9-11, 127:17-20).

## IV.    VARIATIONS IN THE PRICE OF KIMBERLY-CLARK FLUSHABLE WIPES

Sales data demonstrates that prices paid by consumers for Kimberly-Clark flushable

moist wipes vary dramatically depending on the wipe product purchased; the sales channel and

particular retailer from which the consumer purchased the wipes; the geographic location in

which the consumer purchased the wipes; whether the consumer paid an everyday price or a

promotional/coupon price for the wipes; and the packaging and unit size in which the consumer

purchased the wipes (Ugone Decl. (Ex. Y) § VII).

For instance, depending on the sales channel from which a consumer purchased

Kimberly-Clark flushable moist wipes (*e.g.*, drug store, mass merchandiser, dollar store, *etc.*),

the retail price could vary by as much as 97% (*id*. § VII.B.1; *see also* O'Connor Dep. (Ex. D) at

74:14-17, 75:13-19 (retailers, not Kimberly-Clark, set the prices charged to consumers)).  Even

within a given retail channel, prices for Kimberly-Clark flushable moist wipes vary significantly

by particular retailer (Ugone Decl. (Ex. Y) § VII.B.2 (across grocery store chains, average retail

prices vary by approximately ▮ to ▮; across drug store chains, prices vary by

approximately ▮ to ▮; mass merchandiser prices vary by about ▮ to ▮)).  And even

the *same* retailer charges different prices based on geographic location (*id*. § VII.B.3; *see also id*.

§ VII.B.4-5 (retail prices also vary depending on whether consumers made purchases at everyday

or promotional prices, and depending on the size and type of packaging purchased); O'Connor

Dep. (Ex. D) at 77:9-17 (retailers, not Kimberly-Clark, typically determine whether to charge

promotional prices for products)).  Plaintiff himself acknowledged that prices for flushable wipes

vary depending on whether they are sold at a drugstore, grocery store, or Costco (Kurtz Dep. (Ex. A) at 113:22-114:2).

## V.  PLAINTIFF'S PURCHASE AND USE OF FLUSHABLE MOIST WIPES

### A.  Plaintiff Used Kimberly-Clark's Cottonelle Flushable Wipes For Almost A Decade With No Problems.

Plaintiff first purchased and used Kimberly-Clark's Cottonelle flushable wipes around 2004 (Kurtz Dep. (Ex. A) at 133:11-15).  He believes that he purchased the product at a supermarket, does not know the price he paid because he "never look[s] at price" (*id*. at 132:12-133:10, 137:8-9), and decided to purchase flushable wipes because of the hygiene they provide (*id*. at 135:12-15).  For approximately the next decade, Plaintiff continued to purchase, use, and flush Cottonelle flushable wipes, experiencing no plumbing issues or problems with flushability (*id*. at 133:16-25, 36:16-37:10).  By around February 2013, Plaintiff purchased Cottonelle brand flushable wipes "whenever he went shopping at various drug stores . . . and supermarkets," and also purchased Kirkland Signature Moist Flushable Wipes from Costco stores approximately every three months (Pl.'s Answer and Obj. to Costco's Interr. (Ex. U) at No. 5; Kurtz Dep. (Ex. A) at 50:8-20).[5]

### B.  After Using Baby Wipes And Flushable Wipes, Plaintiff Experiences Sewer Problems Within A Week of Moving Into His New York Residence.

On February 1, 2013, Plaintiff and his family moved to a new home in Brooklyn, New York (*id*. at 70:14-19).  Within one week of moving in, Plaintiff allegedly experienced a clog in his plumbing, requiring a plumber to clean out his pipes (*id*. at 17:10-20:21).  Plaintiff's plumbing had not been inspected before he moved in to his home, he had no knowledge of the

---

[5] Despite his decade of purchases, Plaintiff has no receipts for any Cottonelle wipes (Kurtz Dep. (Ex. A) at 136:11-19).  He does not know precisely where he purchased Cottonelle wipes, how many wipes he purchased, or the prices he paid for those wipes, and he has no documentation from which he could make those determinations (*id*. at 113:7-21, 136:25-137:9, 143:4-22).

condition of his piping at that time, and he is not aware of what renovations, if any, had been made to the plumbing since the home was built in the 1920s (*id*. at 73:13-74:6, 120:5-121:12).

In the days preceding the clog, Plaintiff's wife allegedly had been flushing non-flushable baby wipes down their toilets, in addition to both Kimberly-Clark's and Costco's flushable wipes (*id*. at 35:12-23, 61:17-62:20, 89:2-12, 109:6-19).  Plaintiff testified that a plumber removed "wipes" from his piping, but Plaintiff does not know whether baby wipes, Kimberly-Clark wipes, or Kirkland wipes caused the plumbing issues, and does not "think it's possible to tell" (*id*. at 134:12-25).  Plaintiff also does not know whether his family members (who include small children) may have flushed other products down his toilets during that time (*id*. at 63:7-11), or what the prior owner of the home flushed down the toilets before Plaintiff and his family moved in (*id*. at 119:10-16).

After cleaning out the piping, Plaintiff's contractor, Bedford Sewer and Drain Service, Inc. ("Bedford"), instructed him to discontinue flushing any wipes down the toilet, even ones labeled "flushable," but Plaintiff allegedly continued to flush Defendants' wipes (*id*. at 20:17-21; 22:5-19; 27:6-25, 28:12-22).  Approximately 48 hours later, Plaintiff experienced a second clog, requiring a second visit from Bedford (*id*. at 22:20-23:24).  Plaintiff does not know whether Bedford had fully cleared the pipes during the first visit to Plaintiff's home, or whether additional material remained in the pipes (*id*. at 74:7-13).  During the second visit, Bedford again instructed Plaintiff to discontinue flushing wipes (*id*. at 23:18-24).  Plaintiff has no records of Bedford's work, but estimates that he paid between $200 and $300 total for the work performed (*id*. at 40:13-24, 47:21-48:19).  Bedford likewise has no record of its work (Decl. of Robert N. Hauck (Ex. V)).

An inspection of the plumbing in Plaintiff's New York home, performed in connection with this litigation, revealed "that there is root infiltration into the pipe system and the trap is partially blocked with debris," which "reduces the capacity of the pipe and can lead to a blockage regardless of what may be flushed. The system is not properly maintained" (Report of John T. Boyer, Sr., P.E. CDP, GBE ("Boyer Rep.") (Ex. Z) § 3.02.01). *See also* Kurtz Dep. (Ex. A) at 74:25-75:19 (describing inspection, during which Plaintiff was informed of the roots growing into his sewer line and the blockage in the trap of his piping).

### C. One Week After Moving Into A New Jersey Summer Rental, Plaintiff Experienced Sewer Problems.

In the summers of 2012, 2013, and 2014, Plaintiff rented a home in Elberon, New Jersey, owned by his father (Kurtz Dep. (Ex. A) at 127:9-128:7). Plaintiff does not know when the house was built, or whether the plumbing has ever been renovated (*id*. at 129:16-22). Similar to his experience in his Brooklyn residence, a plumbing clog occurred within approximately one week of Plaintiff moving into the New Jersey home in the summer of 2012 (*id*. at 66:17-67:7). Again, a plumber cleared the pipes and instructed Plaintiff's family not to flush anything but toilet paper down the toilet (*id*. at 67:8-24).

Nonetheless, contrary to his plumber's instructions, in the summer of 2013 Plaintiff and his family allegedly continued to use and flush Defendants' wipes (again, both Kimberly-Clark's and Costco's), purportedly resulting in additional plumbing issues and causing the same plumber to unclog Plaintiff's pipes (*id*. at 29:11-16, 31:11-32:15). An invoice produced by Plaintiff indicates that his brother-in-law paid $267.50 for these plumbing costs, and further states that the plumber "removed *baby wipes* from the [sewer] line" (Kurtz00005 (Ex. W) (emphasis added);

Kurtz Dep. (Ex. A) at 31:22-32:4).[6]  Plaintiff's New Jersey summer home is rented during the winter, but Plaintiff does not know to whom it is rented, nor what those residents flush down the toilets (*id*. at 34:13-35:3).

An inspection of the New Jersey home revealed "[s]tanding water in the piping system," which "indicates that a sag in the system traps water and debris" that can "reduce[] the flow through the system," and cause "debris [to] . . . eventually accumulate, causing a blockage. Inspections indicate that there is a root infiltration into the pipe system with standing water. . . . The sanitary sewer system at this property is not properly maintained.  These factors can work in combination to cause poor performance, including clogs or blockages" (Boyer Rep. (Ex. Z) § 3.02.02).

### D. Plaintiff Continues to Purchase — But Not Flush — Flushable Wipes.

Following these alleged clogging incidents, Plaintiff continued to use and flush Defendants' products in his office building, without incident (Kurtz Dep. (Ex. A) at 130:22-132:11).  At the New York and New Jersey properties, Plaintiff continued to purchase and use Defendants' flushable wipes for personal use, disposing of them in the garbage instead of a toilet (*id*. at 39:8-16, 55:13-24, 66:7-13).  Plaintiff testified that he maintained this practice because he felt that there was "no alternative" product available (*id*. at 39:17-20).  Moreover, Plaintiff purchased and used Defendants' flushable wipes for use outside of the bathroom, "as a substitute for tissues, to clean a spill or a mess" (*id*. at 58:5-24, 59:17-60:3).  Indeed, records maintained by Costco reflect that Plaintiff's wife purchased flushable moist wipes as recently as June 10, 2014,

---

[6] Plaintiff testified that despite this invoice, he believes that he paid for the plumbing costs associated with this clog himself, and that the invoice reflects an incorrect date on which the plumbing work was performed (*id*. at 79:8-81:22, 82:3-83:3).  Plaintiff, however, has no other records of payment made for the plumbing costs incurred (*id*. at 80:20-81:7).

almost four months after Plaintiff filed his Complaint (Ex. N to Kurtz Dep. (Ex. J hereto); Kurtz Dep. (Ex. A) at 87:16-23, 92:25-93:9).

## ARGUMENT

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotations omitted).  To proceed on behalf of a class, Plaintiff "'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011)); *see id.* (explaining that "Rule 23 does not set forth a mere pleading standard").  Accordingly, Plaintiff bears the burden of demonstrating, "*in fact*," *id.*, "whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy," and for purposes of Rule 23(b)(3), whether "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) (quoting Fed. R. Civ. P. 23).  Class certification must be denied if *any* of these requirements are not met.  *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 40-41 (2d Cir. 2006).

Moreover, pursuant to Rule 23(c)(1)(A), a "defendant need not wait for the plaintiff to act," and instead "may move for an order denying class certification." *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (internal quotations omitted). "Irrespective of which party makes the motion, the plaintiff will bear the burden of establishing the certification requirements of Rule 23." *Id.*; *accord Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010) ("Even though the issue of class certification thus comes before the court on Defendants' motion, the burden remains on Plaintiffs to prove that each of the required elements

14

for class certification under Rule 23 has been satisifed.").  Here, Plaintiff cannot carry his burden

to prove, by a preponderance of the evidence, that each requirement of Rule 23(a), (b)(2), or

(b)(3) is met, and class certification should therefore be denied.

## I.   THERE IS NO COMMON, CLASS-WIDE INJURY RESULTING FROM KIMBERLY-CLARK'S "FLUSHABLE" LABEL CLAIMS.

Rule 23's commonality and predominance elements "require[ ] the plaintiff to

demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551.

As the Second Circuit recently explained, "[t]he plaintiffs must . . . show that they can prove,

*through common evidence*, that *all* class members were . . . injured.'" *Sykes v. Mel S. Harris &*

*Assocs. LLC*, -- F.3d --, 2015 WL 525904, at *9 (2d Cir. Feb. 10, 2015) (quoting *In re Rail*

*Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C.Cir.2013)) (emphasis added);

*see also Madanat v. First Data Corp.*, 282 F.R.D. 304, 311 (E.D.N.Y. 2012) ("The commonality

inquiry must turn on whether plaintiff has demonstrated that members within each class have

suffered the same injury"); *Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 151 (E.D.N.Y. 2012)

(class certification is inappropriate where "individual inquiries will be required in order to

determine . . . whether those who did purchase [the product at issue] sustained any injuries").

Likewise, Article III standing requires that the common, class-wide injury be "a concrete,

particularized, and 'actual or imminent' injury." *Janes v. Triborough Bridge & Tunnel Auth.*,

889 F. Supp. 2d 462, 465 (S.D.N.Y. 2012).

### A.   Many Class Members Suffered No Injury to Property.

As Plaintiff defines the classes, all that is required for class membership is the *purchase*

of any of the nineteen products at issue.  Compl. ¶ 90.  The *majority* of class members, therefore,

are necessarily individuals who purchased Defendants' flushable wipe products, but then

successfully flushed the products down their toilets (or disposed of them in the trash), and

experienced no resulting septic issues or "plumbing costs" (*see* Comp. ¶ 77; *see also* KCC-Kurtz0004093-125 (Ex. Q) at 113 (82% of flushable moist wipe users never had a sewer back-up caused by flushable moist wipes); Ugone Decl. (Ex. Y) § VI.C). Indeed, Plaintiff himself alleges that differences in toilets and sewage lines may impact whether flushable wipes are able to pass through sewage systems (Compl. ¶ 49), and that certain "wipes make it through home plumbing systems" (*id*. ¶ 50). These class members received exactly what they bargained for – flushable wipes that flushed through their toilets and plumbing – and they accordingly suffered no injury (Kurtz Dep. (Ex. A) at 154:17-22 (admitting that consumers who "purchased the product and have no plumbing issues" should not be class members), 167:23-168:3 (admitting that Plaintiff does not know which putative class members, if any, had plumbing problems after using flushable wipes)). Furthermore, even if certain class members did experience plumbing problems, and even if those problems were attributable to Defendants' flushable wipes, they may have been compensated for any resulting harm (O'Connor Dep. (Ex. D) at 126:7-11), and therefore may lack any cognizable injury.

### B.   Many Class Members Suffered No Economic Injury.

Even if Plaintiff were only seeking damages for "economic injury" based on the purchase price (or a portion of that price attributable to the "flushable" claims) (Compl. ¶¶ 76, 79-81), any economic injury is not common across the class. First, the evidence shows that most consumers who have purchased flushable moist wipes received exactly that – a moist wipe that was capable of being flushed through their toilets and plumbing systems (KCC-Kurtz0004093-125 (Ex. Q) at 113; *supra,* Background § III.E). Accordingly, even if those consumers purchased Defendants' products or paid a purported "premium" because they were flushable, they received the full value of that "premium," and suffered no economic injury.

16

Second, the evidence also shows that the primary reason that consumers purchase flushable moist wipes is the "clean, fresh feeling" they provide, not because of the flushability claim (*see* KCC-Kurtz0001973-94 (Ex. H) at 87-88; *supra,* Background § III.A).  Many class members (including Plaintiff) who have used flushable moist wipes ***choose to dispose of them in the garbage*** (*see*, *e.g.*, KCC-Kurtz0019453-71 (Ex. P) at 65; KCC-Kurtz0004093-125 (Ex. Q) at 096; KCC-Kurtz0011209-13 (Ex. O) at 10; Kurtz Dep. (Ex. A) at 39:8-16, 55:13-24, 66:7-13; *supra,* Background § III.C).  If class members did not purchase the products at issue because of the "flushable" claim (put another way, if they would have purchased the product whether it was flushable or not), they have no injury.  These class members received exactly what they bargained for – a moist wipe that they used for cleaning.  *See* Kurtz Dep. (Ex. A) at 164:13-16, 173:16-20 (admitting that consumers who are "satisfied with their product purchase" should not be class members).

Third, again those class members who allegedly did not receive a product with which they were satisfied may have already been reimbursed for their purchases (O'Connor Dep. (Ex. D) at 125:19-126:11), and therefore also suffered no injury.

### C.      The Lack Of A Classwide Injury Is Fatal To Class Certification.

This lack of a common, class-wide injury presents at least five particular problems for Plaintiff under Rule 23.  ***First***, because his classes include members who suffered no injury and therefore cannot state a claim or have no standing to sue, class certification is improper.  *See*, *e.g.*, *In re Beacon Assocs. Litig.*, No. 09 Civ. 8362 (LBS), 2012 WL 1372145, at *2 (S.D.N.Y. Mar. 19, 2012) ("One of the ways in which a claim for class certification can fail as a matter of law is when the members of the proposed class lack standing to raise the asserted claims.").[7]  *See*

---

[7] *Janes*, 889 F. Supp. 2d at 465-66 (recognizing that Article III standing requires "a concrete, particularized, and 'actual or imminent' injury," and denying class certification because "certain

*also Sykes*, 2015 WL 525904, at *9 ("we do expect the common evidence to show all class members suffered *some* injury") (emphasis in original).

**Second**, even if class members had suffered *an* injury – which they have not – they have not suffered the *same* injury.  Because Plaintiff acknowledges that only certain consumers have experienced plumbing problems, *see* Compl. ¶¶49-50, and because "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," Plaintiff cannot satisfy Rule 23(a)(2)'s commonality requirement.  *Dukes*, 131 S. Ct. at 2551.

In *Pagan v. Abbott Laboratories, Inc.*, the Court relied on these principles in denying the plaintiffs' motion to certify classes of consumers of defendant's infant formulas.  *Pagan,* 287 F.R.D. at142, 145-46.  Despite plaintiffs' argument in support of their GBL § 349 and other statutory consumer protection claims that they purchased defendant's product "rather than purchasing a less expensive alternative, based on various statements by" defendant, *id*. at 142, the Court denied class certification, explaining that "most of the members of the class would have not suffered any injury at all," because the product those class members purchased did not contain the complained-of defect.  Accordingly, the Court found that "Plaintiffs have not satisfied the commonality requirement for the New York class."  *Id*. at 148-149.

**Third**, individual issues related to a showing of injury predominate:  Because certain class members necessarily suffered no injury through their purchase or use of the flushable wipe products, or, at the very least, suffered none of the plumbing issues that Plaintiff alleges, individual inquiries into the type and existence of class members' injuries will overwhelm any

---

individuals encompassed within the current class definition in fact lack standing") (bold text and capitalization omitted); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, No. 08-1967, 2011 WL 6740338, at *2-3 (W.D. Mo. December 22, 2011) (denying class certification, in part because consumers who "fully used Defendants' baby bottles and other products without physical harm" suffered no injury and lacked standing to sue, and rejecting argument that class members' "purchases, ipso facto, caused an economic loss").

common issues.  *See, e.g.*, *Vaccariello v. XM Satellite Radio*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (denying certification of a Rule 23(b)(3) class:  "Plaintiff cannot demonstrate injury under GBL § 349 on a class-wide basis because individual issues predominate"); *In re Canon Cameras*, 237 F.R.D. 357, 359-60 (S.D.N.Y. 2006) (denying certification because plaintiffs "have not shown that more than a tiny fraction of the cameras in issue malfunctioned," and rejecting argument that "it is sufficient for Rule 23 purposes to simply show that most or all of the cameras in issue contained 'defective parts, *i.e.*, parts that could have resulted in malfunctions").[8]  Furthermore, even for a class member able to show injury in the form of plumbing problems, individualized issues will be overwhelming.  As detailed below (*infra* Arg. § II.B), the issue of specific causation with respect to plumbing injuries is inherently individualized, and contributory causes, including contributory neglect, will present significant individualized issues even for individuals who could show that a flushable wipe was among the specific causes of his or her injury.

**Fourth**, pursuant to Rule 23(a)(3), Plaintiff's individual "claims or defenses" must be "typical of the claims or defenses of the class."  The "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  The requirement "is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation."  *Pagan*,

---

[8] *See also, e.g.*, *Weiner v. Snapple Bev. Corp.*, No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) ("Because individualized inquiries as to causation, injury, and damages for each of the millions of putative class members would predominate over any issues of law or fact common to the class, plaintiffs' § 349 claim cannot be certified under Rule 23(b)(3)."); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 284-85 (D.N.J. 2011) (denying class certification because "the Complaint does not allege that all individuals in New Jersey who purchased the [product at issue] have experienced the defect," such that "common issues of fact do not predominate with the CFA claim").

287 F.R.D. at 146 (internal quotation omitted).  Here, Plaintiff cannot satisfy Rule 23(a)(3) because he is atypical, if not unique, in many respects.

His theory of injury and causation is illustrative.  He contends that Kimberly-Clark's Cottonelle flushable wipes and Costco's Kirkland flushable wipes worked in combination to cause clogs.  Compl. ¶ 64.  Thus, not only are Plaintiff's claims and the corresponding defenses applicable to them necessarily atypical of class members who did *not* suffer plumbing damages, but presumably most, if not the majority of, class members who might allege plumbing damages lack allegations of injury based on such a combination of use for which Kimberly-Clark and Costco purportedly are jointly liable.  Additionally, Plaintiff alleges that he used this combination of Kimberly-Clark and Costco flushable wipes in tandem with other non-flushable wipe products (Kurtz Dep. (Ex. A) at 109:6-19, 134:12-25, 166:13-16), which compounds the atypical nature of his claims and the defenses that will be raised.

Furthermore, Plaintiff's claims are atypical of absent class members because of what he *cannot* allege.  Although he seeks certification of classes of consumers of many different Kimberly-Clark flushable wipe products, he purchased and alleges injury based on just one.  *See*, *e.g.*, *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.,* 211 F.R.D. 228, 234 (S.D.N.Y. 2002) (denying certification of consumer class on plaintiff's NJCFA claim for lack of typicality, despite argument that "claims arose from a . . . defect in a family of related products," because, *inter alia*, "the plaintiff only purchased two of the over sixty products listed in the Third Amended Complaint that allegedly contained . . . defects"); *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067, 2013 WL 2558125, at *4 (N.D. Cal. June 10, 2013) ("The primary reason behind the Court's determination that the typicality requirement has not been met is that Plaintiff's proposed classes are so broad and indefinite that they encompass products that she

20

herself did not purchase."); *see also* O'Connor Dep. (Ex. D) at 24:23-25:3, 84:1-22 (packaging and marketing for Kimberly-Clark's different lines of wipes are handled by independent brand teams).

> **Fifth**, in light of his atypical alleged injuries and based on his own testimony about such injuries, Plaintiff is also an inadequate class representative. *See* Fed. R. Civ. P. 23(a)(4); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as class members.") (quotations omitted).  Plaintiff testified that if consumers, unlike him, "purchased the product and have no plumbing issues whatsoever," or if they "are satisfied with their product purchase," they should not be class members (Kurtz Dep. (Ex. A) at 154:17-22, 164:13-16, 173:16-20).  Because he did not suffer the same alleged injuries, and does not "possess the same interest" as class members under the putative classes defined by his counsel, Plaintiff is an inadequate class representative. *Amchem*, 521 U.S. at 626 (denying class certification where "the interests of those within the single class are not aligned").

## II.     THE NECESSARY ELEMENTS OF CAUSATION AND RELIANCE CANNOT BE ESTABLISHED WITH COMMON CLASS-WIDE PROOF.

To state a claim under GBL §§ 349 and 350, the NJCFA, or breach of express warranty pursuant to New Jersey law (Counts II, III, IV, and V), Plaintiff and putative class members must prove that Defendants' alleged misrepresentations *caused* their injuries or loss.[9]  With regard to

---

[9] *See, e.g.*, *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (for a GBL § 349 claim "'[t]he causation element is essential:  The plaintiff must show that the defendant's material deceptive act caused the injury'"); *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349."); *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) ("To state a prima facie case under the NJCFA, a plaintiff must demonstrate . . . a causal connection between

negligent misrepresentation (Count I) and breach of express warranty under New York law (Count II), Plaintiff and class members must prove *reliance* on Defendants' conduct (*i.e.*, the labeling of the wipes as "flushable").[10]  And Plaintiff's unjust enrichment claim (Count VI) is dependent on proving the elements of his other causes of action.  *See, e.g.*, *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (dismissing unjust enrichment claim as duplicative of GBL § 349 and breach of express warranty claims, because "an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim") (quotation omitted).

Here, Plaintiff cannot prove either causation or reliance on a classwide basis, and individual issues regarding these elements would overwhelm issues common to class members, making class certification is improper.  *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) ("If every plaintiff had to prove direct reliance on the defendant's misrepresentation, 'individual issues then would overwhelm the common ones,' making certification under Rule 23(b)(3) inappropriate") (alterations within internal quotation omitted); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008) (proof of causation and reliance required individualized inquiries due to possibility that class members bought light cigarettes for reasons other than the belief that they were a healthier alternative), *abrogated in*

---

the defendant's unlawful conduct and the plaintiff's ascertainable loss"); *Marcus v. BMW of N. Am.*, 687 F.3d 583, 600 n.8 (3d Cir. 2012) ("A claim for breach of express warranty [under New Jersey law] similarly requires proof of proximate cause.").

[10] *See, e.g.*, *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) ("It is well settled that '[a] claim for negligent misrepresentation requires the plaintiff to demonstrate . . . reasonable reliance'"); *Singer v. Beach Trading Co., Inc.*, 876 A.2d 885, 890-91 (N.J. Super. Ct. App. Div. 2005) ("A negligent misrepresentation constitutes '[a]n incorrect statement, negligently made and justifiably relied on'"); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 286 (E.D.N.Y. 2009) ("Under New York law, an action for breach of express warranty requires both the existence of an express promise or representation and reliance on that promise or representation.").

*part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Pelman v.*

*McDonald's Corp.*, 272 F.R.D. 82, 95 (S.D.N.Y. 2010) (finding class certification for plaintiffs'

GBL § 349 claim improper, because "individual questions about causation would overwhelm"

any common questions); *Dungan v. The Acad. at Ivy Ridge*, 249 F.R.D. 413, 416-17 (N.D.N.Y.

2008) (denying class certification for lack of predominance because the reliance and causation

"inquiry necessarily is personal to each potential class member"), *aff'd*, 344 F. App'x 645 (2d

Cir. 2009).  Even if causation and reliance issues would not predominate over class members'

causes of action, they are certainly particular to Plaintiff's claims, rendering him atypical.

*Robidoux*, 987 F.2d at 936 (To satisfy Rule 23(a)(3), Plaintiff's individual "claims or defenses"

must be "typical of the claims or defenses of the class.").

> **A.    Whether Consumers Purchased Flushable Wipes Because Of The "Flushable" Claim Is An Individualized Issue.**

Market research demonstrates that the "primary reason" consumers use flushable moist

wipes is the "clean, fresh feeling" they provide, not the manner in which they can be disposed

after use (*e.g.*, KCC-Kurtz0001973-94 (Ex. H) at 88; *supra*, Background § III.A).  Moreover,

significant portions of consumers do not flush flushable moist wipes after use (*e.g.*, KCC-

Kurtz0019453-71 (Ex. P) at 65; KCC-Kurtz0004093-125 (Ex. Q) at 096; KCC-Kurtz0011209-13

(Ex. O) at 10; *supra*, Background § III.C).  Research shows that some consumers do not even

believe "flushability" claims (Ugone Decl. (Ex. Y) § VI.B ("putative Class members'

knowledge, perceptions, and behavior may vary with respect to . . . whether [they] believed that

wipes marketed as 'flushable' actually were safe to flush")).[11]  It logically follows that these

---

[11] In his Complaint, Plaintiff also identifies multiple news reports and other publications
broadcasting the alleged non-flushability of products like those at issue (Compl. ¶¶ 72 ("*New
York Magazine*, *USA Today*, *Huffington Post*, and numerous local outlets have all reported on
plumbing and sewer problems caused by flushable wipes."), 32-40, 48-71 (compiling news
stories and other publications)).  Therefore, Plaintiff's proposed classes undoubtedly include

consumers did not purchase Defendants' flushable moist wipes because of their "flushability" claims, and did not rely on those claims in making their purchases.

Indeed, Plaintiff himself first decided to buy Kimberly-Clark's flushable moist wipes because of the "hygiene" they provide (Kurtz Dep. (Ex. A) at 135:12-15), and continued to purchase Defendants' wipes after he no longer intended to flush them (*id*. at 39:8-16, 55:13-24, 66:7-13). Plaintiff's continued purchase of Defendants' products despite understanding that he could not flush them indicates – if not proves – that Plaintiff did not rely on Defendants' challenged "flushability" claims when purchasing their wipes.

Like many of the class members he seeks to represent, Plaintiff cannot reasonably assert that Defendants' challenged conduct caused all of his purchases or that he relied on Defendants' claims at all times, and determining which class members *can* satisfy causation and reliance elements requires individual inquiries that would predominate over common issues (Kurtz Dep. (Ex. A) at 167:8-13 (admitting that Plaintiff does not know why other class members purchased flushable wipes)). *See also*, *e.g.*, *McLaughlin*, 522 F.3d at 223.

And because Plaintiff himself continued to purchase flushable wipes after he knew, according to him, that they were not flushable, he is certainly subject to these causation and reliance defenses. Accordingly, even if individual issues of causation and reliance did not

---

members who were familiar with these reports and believed the wipes were not flushable at the time of purchase, or accepted a risk that they would not be able to successfully flush the wipes, such that they were not deceived by – and did not rely on or make purchases because of – Kimberly-Clark's alleged misrepresentations. *See McLaughlin*, 522 F.3d at 226 ("we are not blind to the indeterminate likelihood that . . . some members of plaintiffs' desired class were aware that Lights are not, in fact, healthier than full-flavored cigarettes, and they therefore could not have relied on defendants' marketing in deciding to purchase Lights"); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, MDL No. 1687, 2012 WL 379944, at *15 (D.N.J. Feb. 6, 2012) ("it stands to reason that the consumers who saw these reports and understood the E-350 van to have significant handling problems will have a difficult time proving causation, and in doing so, they would not rely on common proof").

predominate over issues common to the class, they would render Plaintiff atypical, and class

certification remains improper.  *See*, *e.g.*, *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307,

313 (S.D.N.Y. 1999) (denying class certification for lack of typicality because "each plaintiffs

decision to purchase [the relevant product], including that plaintiff's reliance upon any

representation by [defendant] . . . is different"); *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, 11

CIV. 6546-JPO, 2013 WL 93636, at *9 (S.D.N.Y. Jan. 9, 2013) (denying class certification

because "atypical issues and defenses plague [the plaintiff's] claims requiring reliance or

causation," and explaining that plaintiff's alleged injury "suffers from a causal break that will

focus the litigation on the particulars and factual circumstances of [plaintiff's] own purchase").

These defenses – and the fact that Plaintiff continued purchasing Defendants' wipes after he

knew they were allegedly non-flushable – also make Plaintiff an inadequate class

representative.[12]

### B. Whether Kimberly-Clark's Flushable Wipes Caused Property Damage Is An Individualized Issue.

To the extent Plaintiff intends to maintain that Defendants' products caused any physical

damage to class members' septic systems, plumbing, and other property (Compl. ¶¶ 4, 77),

individualized issues regarding causation will again predominate.  Plaintiff himself identifies in

his Complaint individual questions regarding (i) the age, model, and maintenance of one's toilet

and plumbing; (ii) the method by which different sewage systems move waste; and (iii) the size

of a toilet's flush (*id.* ¶¶ 48-49), all of which must be answered to assess the cause of each

---

[12] *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990) (affirming denial of class certification for lack of adequacy where plaintiff "was an inappropriate class representative since its claim is subject to several unique defenses including its continued purchases of CDs through [defendant] despite having notice of, and having investigated, the alleged fraud," because "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation").

individual's alleged damages resulting from Defendants' flushable wipes.  Moreover, as explained above, the *majority* of flushable wipe consumers flush their wipes with other products, including toilet paper, tampons, facial tissues, bathroom cleaning wipes, and baby wipes (KCC-Kurtz0004093-125 (Ex. Q) at 118; *supra*, Background § III.D).  Determining whether flushable wipes or one of these other products caused an individual's plumbing damages cannot be answered based on common proof.  *See*, *e.g.*, *Pelman*, 272 F.R.D. at 94 (denying certification of GBL § 349 claim because individual questions would be required to determine whether defendant's marketing conduct or other factors caused class members' alleged health problems, and would "predominate . . . with respect to an essential element of Plaintiffs' cause of action").

Again, Plaintiff provides a prime example of these individualized questions that must be answered, given that he flushed baby wipes, Kimberly-Clark wipes, and Costco wipes in the same time period, and has "no idea" which product caused his plumbing damages (Kurtz Dep. (Ex. A) at 35:12-23, 61:17-62:20, 89:2-12, 109:6-19, 107:17-108:5, 134:12-15, 166:13-16).[13] Moreover, Plaintiff used Kimberly-Clark's flushable wipes for nearly ten years without incident, and experienced plumbing issues within one week of moving into an eighty-year old home after non-flushable baby wipes were flushed down his toilets (Kurtz Dep. (Ex. A) at 17:10-20:22, 61:17-62:20, 109:6-19, 120:5-9, 133:16-25).  Finally, inspections of Plaintiff's homes reveal that his plumbing is not "properly maintained" – unique issues of improper maintenance exist at each property – yet another potential cause of his alleged plumbing damages (Boyer Rep. (Ex. Z) § 3.02.01-.02).  This evidence *strongly* suggests that non-flushable products and/or the condition of

---

[13] Indeed, Kimberly-Clark's wipes and Costco's Kirkland wipes are manufactured using different technologies and dispersion mechanisms.  COSTCO00012928 (Ex. X).  Testing produced in this case reflects that Costco Kirkland flushable wipes and Kimberly-Clark flushable wipes perform differently in flushability testing (Powling Dep. (Ex. E) at 123:23-124:20, 128:4-16).

the plumbing in Plaintiff's homes, not Kimberly-Clark's flushable wipes, caused Plaintiff's plumbing damages (*see id.*).

Because individual issues regarding causation of plumbing damages would therefore predominate over class members' causes of action – just as they would predominate any evaluation of Plaintiff's individual claims – class certification should be denied. *See, e.g.*, *McLaughlin* 522 F.3d at 223; *Pelman*, 272 F.R.D. at 95; *Dungan*, 249 F.R.D. at 416-17; *Weiner*, 2010 WL 3119452, at *6-7; *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 75 (S.D.N.Y. 2006) (denying certification of GBL § 349 claim because "individual questions regarding causation would overwhelm" questions common to the proposed class).[14]

And again, given his use of a combination of products at the same time, and given the condition of his plumbing systems, Plaintiffs' claims are subject to potentially fatal defenses related to causation, rendering him atypical and incapable of pursuing claims on behalf of his proposed classes. *See, e.g. In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 400 (S.D.N.Y. 2008) (denying class certification where "class representative's claim with respect to causation is not typical of other class members' claims"); *Vaccariello*, 295 F.R.D. at 68 (denying certification of GBL § 349 claim where "Defendant could submit individual defenses to Plaintiff's claims").

## III.   PLAINTIFF HAS NO METHODOLOGY FOR DETERMINING COMMON, CLASS-WIDE DAMAGES.

To the extent purported class members suffered any injury (*see supra*, Arg. § I), their damages are not subject to common proof.  Rather, the individual issues regarding class

---

[14] Because of the myriad of individual issues that predominate over class members claims, Rule 23(b)(3) superiority is similarly lacking.  "The inquiries surrounding predominance of common facts and superiority of the class action are intertwined.  The greater the number of individual issues, the less likely that a class action is the superior method of adjudication." *Ackerman v. Coca-Cola Co.,* No. 09 CV 395 DLI RML, 2013 WL 7044866, at *21 (E.D.N.Y. July 18, 2013) (quotation omitted).

members' alleged damages compound the individualized liability issues discussed above. *See generally Roach v. T.L. Cannon Corp.*, -- F.3d --, No. 13-3070-CV, 2015 WL 528125, at *6 (2d Cir. Feb. 10, 2015) (discussing *Comcast*, *McLaughlin* and other authority, and recognizing that whether "'damages may have to be ascertained on an individual basis is . . . a factor that we must consider'" "when weighing predominance issues"); *see also*, *e.g.*, *Leider v. Ralfe*, No. 1:01-CV-3137-HB, 2003 WL 24571746, at *10-11 (S.D.N.Y. Mar. 4, 2003) (denying class certification where "proof of [class members'] damages would . . . require highly individualized determinations of fact as to each class member," and "[i]ndividual issues . . . abound with respect to the plaintiffs' claims for damages under N.Y. Gen. Bus. Law §§ 349 and 350"); *Dungan*, 249 F.R.D. at 417 (denying plaintiffs' motion for class certification because "different rates were charged to different [plaintiffs]" and "out-of-pocket losses cannot be shown by common evidence because they constitute an inherently individual inquiry"). Plaintiff alleges that he and class members suffered damages in the form of (i) "significant plumbing costs," (ii) inflated prices over unspecified non-flushable wipes, and/or (iii) the unspecified full purchase price for the flushable wipes (Compl. ¶¶ 76-83). None of these can be proven using classwide proof.

### A.     Property Damages Are Inherently Individualized.

To the extent Plaintiff purports to assert property damages on behalf of the class members, no common means exist by which to calculate or measure such damages. *See Comcast*, 133 S. Ct. at 1433 (rejecting certification under Rule 23(b)(3) because proposed method for determining class members' damages did not adequately measure those damages that allegedly resulted from plaintiffs' theory of liability); *see also* Kurtz Dep. (Ex. A) at 168:9-12 (Plaintiff does not know the existence or extent of any putative class members' plumbing damages).

28

Rather, contributory causation issues, including issues of class members' own negligence for failure to properly maintain their plumbing systems, will render any apportionment of damages individualized and complicated (*see supra,* Arg. § II.B).  Even setting aside contribution issues, however, calculating damages alone would require intensive individualized inquiries regarding, for instance, harm done to toilets, piping, and other property, and costs of labor and repairs (Compl. ¶¶ 32, 36 (alleging, for example, damages to a consumer's laundry room and backyard, "plumbing services" costs, and damages to a consumer's basement); *see also* Ugone Decl. (Ex. Y) § IX ("Individual inquiry would be required to determine the relevant plumbing expenses (if any) incurred by each putative Class member from using the Challenged Products due to important variations across the Class members . . . .  Substantial variation in plumbing expenses can be observed among those reported (a) nationwide, (b) in New Jersey, and (c) in New York, *inter alia*.")).[15]  Courts consistently find that classes seeking property damage are inherently ill-suited for certification.[16]

---

[15] Plaintiff himself is unable to offer any proof of the plumbing damages allegedly incurred at his New York residence, other than his own testimony in which he estimated that his costs ranged from $200 to $300 (Kurtz Dep. (Ex. A) at 40:13-24, 47:21-48:19).  Likewise, he disclaims the accuracy of the only available documentary proof regarding damages incurred at his New Jersey rental property (*id*. at 79:8-81:22, 82:3-83:3).

[16] *See, e.g.*, *In re Stucco Litig.*, 175 F.R.D. 210, 215 (E.D.N.C. 1997) ("[T]he question of compensation for physical damage to the homes will implicate myriad "house specific" issues"); *Adams v. Fed. Materials Co.*, No. 5:05-CV-90-R, 2006 WL 3772065, at *2 (W.D. Ky. Dec. 19, 2006) ("Defendants note that each class member will require a separate determination of damages should the Plaintiffs succeed in their claims.  This determination would require examination of the extent of the damage present and of the class member's treatment of the concrete which might contribute to the damage. . . .  Both causation and damages would be reserved for individual trials, and very few issues could be resolved in a class adjudication."); *Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 201-02 (W.D. Tex. 2004) ("[T]here are too many property-specific factors influencing the issues of whether, and to what extent, treated wood leaches, and whether a given property would be contaminated if the wood did leach, to permit certification. . . . adjudicating each claim would require intense scrutiny of each potential plaintiff's property to a degree that would not be feasible.") (internal quotation marks omitted).

**B.**      **Economic Damages Are Inherently Individualized.**

Even if limited to Plaintiff's price premium and/or purchase price theories of damages

(Compl. ¶ 79), individual inquiries will still predominate.  The flushable wipe products at issue

vary significantly in price based on sales channel, retailer, geographic area, discounts applied,

and packaging (Ugone Decl. (Ex. Y) § VII; *supra*, Background § IV).[17]  Suggested retail prices

for Kimberly-Clark flushable wipes have ranged from $.99 to $16.99 (Kimberly-Clark's Resp. to

Pl.'s First Set of Interr. (Ex. C) at No. 15).  Thus, individualized inquires would be required to

determine what each class member paid for her purchase, assuming she could even remember –

Plaintiff could not (Kurtz Dep. (Ex. A) at 113:16-21, 136:25-137:9).

Moreover, the "competing products" without claims of "flushab[ility]" that class

members allegedly would have purchased instead, *id*. ¶ 81 (whatever those might be) — and

their associated prices — would vary dramatically between different putative class members.

First, it is impossible to know what the "alternative" would have been, given that Cottonelle does

not make a "non-flushable" wipe (O'Connor Dep. (Ex. D) at 52:3-5).  Plaintiff himself testified

that, at least at some point in time, he did not consider baby wipes to be an alternative to

flushable wipes (Kurtz Dep. (Ex. A) at 39:17-20), and Kimberly-Clark's corporate representative

testified that, if flushable wipes were not available, consumers may use baby wipes, wet towels,

paper towels, toilet paper, or simply take a shower instead of using flushable moist wipes

(O'Connor Dep. (Ex. D) at 92:25-93:7).  Thus, individualized inquires would be required to

---

[17] Plaintiff himself recognizes that prices for Kimberly-Clark's wipes vary by retailer (Kurtz Dep. (Ex. A) at 113:22-114:2; *see also id*. at 113:7-21, 136:11-19, 136:25-137:9, 143:4-22,166:17-25 (admitting that Plaintiff has no documentation or knowledge of the prices that he paid for Kimberly-Clark flushable wipes, let alone the prices that putative class members paid for Kimberly-Clark products)).  *See also* O'Connor Dep. (Ex. D) at 74:14-17, 75:13-19, 77:7-17 (explaining that retailers – not Kimberly-Clark – set retail prices and issue coupons)).

determine what each class member would have purchased had she not purchased Kimberly-Clark flushable wipes.

Even if there was an obvious "competing" product that consumers would have purchased had they believed the "flushable" claim was false, the prices of those competitors would also vary dramatically.[18] (*See* Ugone Decl. (Ex. Y) § VIII ("retail prices of alternative products that putative Class members might have purchased" are dependent on "differences in . . . sales channel, retailer, geographic location, promotions utilized, and package size, *inter alia*")).

Assessing damages — even if limited to economic injury — would therefore require individual questions regarding prices paid, discounts invoked, and alternative product pricing.  In short, class certification should be denied because each of Plaintiff's theories of damages requires individual inquiries that will overwhelm classwide questions.  *See*, *e.g.*, *Oscar v. BMW of N. Am., LLC,* 09 Civ. 11, 2012 WL 2359964, at *6 (S.D.N.Y. June 19, 2012) (denying certification and explaining that consumers' "purchase decisions, and, *a fortiori*, the particular price paid . . . may be based on a variety of factors"); *Weiner*, 2010 WL 3119452, at *6 (denying Rule 23(b)(3) certification regarding GBL § 349 claim where plaintiff alleged a price premium for defendant's product, because plaintiffs "failed to show how damages could be proven class-wide," such that "individualized issues as to . . . damages . . . would predominate over any issues of law or fact common to the class"); *Ackerman*, 2013 WL 7044866, at *20 ("Proof that each class member paid a premium for vitaminwater over another beverage would not be susceptible to generalized proof.").

---

[18] Further, Kimberly-Clark's wipes have undergone technology changes that have significantly impacted their dispersability (KCC-Kurtz0019341-42 (Ex. B); Powling Dep. (Ex. E) at 25:17-26:16, 27:12-18, 28:10-22, 29:22-30:14).  Therefore, to the extent consumers were charged a premium for the product's "flushability" claim, it was necessarily diminished with each improved technology.

## IV.    MEMBERSHIP IN THE PUTATIVE CLASSES IS NOT ASCERTAINABLE.

Ascertainability of class membership is an "implied" requirement of Rule 23. *In re Initial Public Offerings Sec. Litig.*, 471 F.3d at 30; *see also Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005). The requirement "eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action, . . . protects absent class members by facilitating the best notice practicable, . . . and protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Carrera v. Bayer Corp.*, 727 F.3d 300, 305-06 (3d Cir. 2013) (quotation omitted); *cf. Ackerman*, 2013 WL 7044866, at *21 (where it is "exceedingly difficult to identify" class members, they are denied "appropriate notice and an opportunity to opt out").

To demonstrate ascertainability, "parties who seek class action certification must establish that a suitable method of identification [of class members] is 'administratively feasible.'" *Luedke v. Delta Airlines Inc.*, 155 B.R. 327, 330 (S.D.N.Y. 1993) (citation omitted); *see also Weiner*, 2010 WL 3119452, at *12 ("'To be ascertainable, the class must be readily identifiable, such that the court can determine who is in the class, and thus, bound by the ruling.'") (citation omitted).

Here, Plaintiff cannot establish ascertainability because no "administratively feasible" means exist for determining who purchased Kimberly-Clark's flushable wipes. Plaintiff recognizes that the flushable wipe products are sold at "various drug stores . . . and supermarkets." Compl. ¶ 6. While Plaintiff does not know the price he paid for Kimberly-Clark's products (Kurtz Dep. (Ex. A) at 113:16-21, 136:25-137:9), he alleges that "Cottonelle Fresh Care Flushable Cleansing Cloths Refill cost $.04 per wipe" (Compl. ¶ 89). These are inexpensive products for which Kimberly-Clark, retail stores, and class members are highly

unlikely to retain receipts or other proof of purchases.[19]  Plaintiff himself has no receipts, and has kept no packaging or other proof of purchase (Kurtz Dep. (Ex. A) at 113:7-21, 136:11-19, 136:25-137:9, 143:4-22).  The absence of any proof of purchase defeats the ascertainability of a consumer class.  *See*, *e.g.*, *Weiner*, 2010 WL 3119452, at *13 (finding lack of ascertainability where "[p]laintiffs offer no basis to find that putative class members will have retained a receipt, bottle label, or any other concrete documentation of their purchases of [defendant's] beverages").

Moreover, Plaintiff himself contends that "[i]n addition to the flushable wipes manufactured by Defendants, many other brands of wipes are being marketed as 'flushable.' . . . Large chain retailers are also offering general brands of wipes that claim to be flushable. . . . Many chain drugstores offer their own brands of wipes purporting to be flushable" (Compl. ¶¶ 28-30 (identifying at least nine other companies' flushable wipe products)).  There is no reason to believe that consumers in the putative classes (which are unlimited in time) will recall whether they purchased one of the eleven products manufactured by Kimberly-Clark and sold in the United States that are the subject of this lawsuit, or whether they purchased one of the dozens of other "flushable wipes" produced by at least nine other companies.

In sum, it is implausible that purported class members have retained proof of their Kimberly-Clark flushable wipe purchases, and no other sufficient means exist to determine class membership.  Therefore, Plaintiff's proposed class cannot be ascertained "by objective criteria that are administratively feasible," *Weiner*, 2010 WL 3119452, at *12, and class certification should be denied.  *See*, *e.g.*, *Ackerman*, 2013 WL 7044866, at *21 (denying certification for lack of predominance and superiority where "it would be exceedingly difficult to identify the members of these two classes and give them appropriate notice and an opportunity to opt out").

---

[19] Kimberly-Clark does not have sales data at the consumer level (O'Connor Dep. (Ex. D) at 71:3-7).

V.      **CERTIFICATION OF A NATIONWIDE CLASS WOULD BE IMPROPER.**

Among Plaintiff's nine putative classes, he seeks certification of three on behalf of "[a]ll persons and entities in the United States who purchased" the specified products (Compl. ¶ 90). Because (i) the GBL and NJCFA cannot be applied extra-territorially as a matter of law, and (ii) each of Plaintiff's claims would require the unmanageable application of all 50 states' laws, certification of each of Plaintiff's putative nationwide classes should be denied.

A.      **Plaintiff Cannot Maintain Nationwide GBL Or NJCFA Claims As A Matter Of Law.**

To the extent Plaintiff seeks to apply the GBL and NJCFA to nationwide classes, certification should be denied because these statutes are inapplicable to purchases made outside of New York and New Jersey, respectively.  In particular, GBL § 349 explicitly states that it pertains to "[d]eceptive acts or practices . . . *in this state*," GBL § 349(a) (emphasis added), such that it "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York. . . .  Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Goshen*, 98 N.Y.2d at 324-25 (dismissing out-of-state plaintiffs' GBL § 349 claims); *see also*, *e.g.*, *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM), 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) ("[s]ections 349 and 350 of the GBL, by their terms, apply only to transactions occurring in New York State").

Similarly, courts have rejected NJCFA claims that – like Plaintiff's claims here – are asserted on behalf of non-New Jersey plaintiffs who purchased products outside of New Jersey. *See*, *e.g.*, *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (dismissing non-New Jersey purchaser's NJCFA claim because the law of the state where the product was "marketed, purchased, and used" was applicable); *see also Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 233 (S.D.N.Y. 2002) (denying certification of a nationwide NJCFA

claim because "[t]here is no basis from which to conclude that sales made by the defendants, to class members who are scattered throughout the country would provide a basis for those individuals or entities to bring claims under the NJCFA," given that "plaintiffs have provided no legal basis from which to conclude that the NJCFA covers sales occurring outside New Jersey, to non-New Jersey residents without any connection to New Jersey").

Certification of Plaintiff's proposed nationwide classes should therefore be denied with regard to his GBL and NJCFA claims (Counts III, IV, and V).

> **B.    The Necessary Application Of All 50 States' Laws To Class Members'
> Claims Makes The Class Action Unmanageable And Not Superior To Other
> Methods Of Adjudication.**

With respect to the common law claims (Counts I, II, and VI), a nationwide class is equally inappropriate.  To certify a class under Rule 23(b)(3), Plaintiff must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," which includes consideration of "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  As part of this "manageability" consideration, "Plaintiff[] b[ears] the burden of providing an extensive analysis of state law variations to determine whether there are insuperable obstacles to class certification."  *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 71 n.59 (S.D.N.Y. 2002) (citations omitted); *accord Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).  Here, the laws of all 50 states must be applied to putative class members' claims, rendering Plaintiff's proposed nationwide classes unmanageable and unsuitable for class certification.

> 1.    New York Courts Would Apply The Law Of The State Of Residence Or
> Purchase To Plaintiff's Common Law Claims.

"In tort actions, . . . New York applies an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Rezulin*, 210 F.R.D. at 70

(quoting *Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir. 1998)).  "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort."  *Id.* (quoting *Curley*, 153 F.3d at 11).  "In contract cases, such as where a breach of warranty is alleged, New York courts . . . 'consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter [of the contract], and the domicile or place of business of the contracting parties.'"  *In re Frito-Lay N. Am.*, 2013 WL 4647512, at *19 (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)).  "The traditional choice of law factors, the places of contracting and performance, are given the heaviest weight in this analysis."  *Id.* (quoting *Lazard*, 108 F.3d at 1539).

Kimberly-Clark is a Delaware corporation, headquartered in Dallas, Texas (Compl. ¶ 7). Putative class members are domiciled and purchased the relevant products in each of the fifty states.  Under similar facts, courts routinely conclude that putative class members' consumer fraud-type claims are controlled by the laws of the states in which each class member resides and/or purchased the products at issue.[20]  *See, e.g.*, *In re Grand Theft Auto Video Game*

---

[20] "[T]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (quotation omitted).  Because Plaintiff is expected to affirmatively move for class certification at the same time as this motion, and will likely indicate therein whether he intends to continue pursuing claims on behalf of consumers nationwide or narrow the scope of his proposed classes, Kimberly-Clark does not provide an exhaustive conflict of laws analysis here, and reserves the right to do so in response to Plaintiff's anticipated motion.
  Nonetheless, courts have frequently found that the laws of the 50 states materially differ with respect to each of Plaintiff's causes of action.  *See, e.g.*, *In re Grand Theft Auto*, 251 F.R.D. at 147 ("Most of the courts that have addressed the issue have determined that the consumer-fraud and breach-of-warranty laws in the fifty states differ in relevant respects. . . .  Likewise, several courts have determined that the states' unjust enrichment laws vary in relevant respects.") (collecting cases); *Kaczmarek*, 186 F.R.D. at 312 ("the states have diverse bodies of law on warranty and negligent misrepresentation, . . . including differing requirements of privity, demand, scienter and reliance").

*Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) ("Because the fraud at issue in this case occurred in the state of purchase, . . . the interest analysis favors the application of the consumer-fraud law of the state wherein each Settlement Class member purchased [the product]. . . . [T]he significant-contacts test requires the application of the law of the state of purchase to Settlement Class members' claims for breach of warranty and unjust enrichment.").[21]

>       2.     A Trial Applying The Law Of 50 States Would Be Unmanageable.

Courts within this circuit and elsewhere frequently recognize that where varying state laws must be applied, trial of a nationwide class action is untenable. *In re Grand Theft Auto*, 251 F.R.D. at 147 (decertifying settlement class due to differences in state consumer fraud laws encompassing issues of reliance, scienter, burden of proof, availability of class actions, and notice); *Rezulin*, 210 F.R.D. at 64-67; *see also UFCW Local 1776 v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, Nos. 04-MD-1596, 2008 WL 2696916, at *138 (E.D.N.Y. July 2, 2008) (Weinstein, J.) ("The application of various state laws to a class, which would be required here, presents both predominance and manageability issues.").[22]  Accordingly, because each of

---

[21] *See also, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place"); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278 (D. Mass. 2004) (finding consumer fraud laws of place of purchase applicable); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) (applying consumer fraud and breach of warranty laws of each plaintiff's home state); *In re Ford Ignition Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 347-48 (D.N.J. 1997) (same); *In re: Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 4742, 2006 WL 3754823, at *3 (N.D. Ill. Dec. 18, 2006) ("the laws of each of the plaintiffs' home states apply to their unjust enrichment claims"); *Kaczmarek*, 186 F.R.D. at 312 (recognizing the need to apply "materially different" negligent misrepresentation laws).

[22] *Accord Mazza*, 666 F.3d at 596 ("Because the law of multiple jurisdictions applies here to any nationwide class…, variances in state law overwhelm common issues and preclude predominance for a single nationwide class"); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable.").

Plaintiff's proposed nationwide classes would require application of all 50 states' laws with respect to each of Plaintiff's causes of action, and such application would be unmanageable, class certification should be denied.

## VI.   THE COURT SHOULD DENY CERTIFICATION OF A RULE 23(b)(2) CLASS.

In addition to seeking certification under Federal Rule 23(b)(3), Plaintiff alleges that "the Class[es] may also be certified under Rule 23(b)(2)."  (Compl. ¶ 97; *see also id.* ¶ 90). Regardless of what sort of classwide injunctive or declaratory relief Plaintiff is seeking, *see* Fed. R. Civ. P. 23(b)(2) (allowing for class where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole"); Compl. at 45, Prayer For Relief ¶ D, there is no basis for certifying a (b)(2) class here.

*First*, a 23(b)(2) class is not certifiable because Plaintiff fails to satisfy many of the Rule 23(a) factors discussed above.  *See* Fed. R. Civ. P. 23(b) (prerequisite to any 23(b) class is that "Rule 23(a) is satisfied").

*Second*, for the reasons discussed above, this is not a case involving "a group-wide injury," *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 162 (2d Cir. 2001), "where the remedy sought is 'an indivisible injunction' that applies to all class members 'at once,'" *Amara v. CIGNA Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) (quoting *Dukes*, 131 S. Ct. at 2558).  For instance, any injunction that prevented Kimberly-Clark from selling flushable wipes or making claims about their flushability would negatively affect consumers who are satisfied with their use of such wipes or who seek out wipes marketed as "flushable."

*Third*, in *Dukes*, the Supreme Court held that claims for monetary relief may not be certified under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief" sought. 131 S. Ct. at 2557; *see Amara*, 775 F.3d at 519-20.  Here, however,

monetary damages are Plaintiff's primary goal, and are certainly not "incidental to" his

Complaint's passing reference to 23(b)(2) certification (*see*, *e.g.*, Compl. ¶¶ 4, 75, 76, 77, 79, 80,

82, 83, 86, 87, 89, 93, 94 (alleging monetary damages in the form of consumers' plumbing

damages and/or prices paid for flushable wipes)). This Court, therefore, should not entertain

Plaintiff's request for certification of a Rule 23(b)(2) class as an end-run around the "procedural

protections attending the (b)(3) class – predominance, superiority, mandatory notice, and the

right to opt-out." *Dukes*, 131 S. Ct. at 2558 ("Permitting the combination of individualized and

classwide relief in a (b)(2) class is also inconsistent with the structure of Rule 23(b)(3).").

     *Fourth*, even if Plaintiff's claim for monetary damages were incidental – which it is not –

certification of a Rule 23(b)(2) class would be inappropriate because Plaintiff now is aware of

Defendants' allegedly deceptive statements (*see* Kurtz Dep. (Ex. A) at 38:3-6). Accordingly, he

is unlikely to suffer future injury and therefore lacks standing to pursue prospective, injunctive

relief on behalf of the proposed classes. *See Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)

("In order to meet the constitutional minimum of standing to seek injunctive relief, [Plaintiff]

must carry the burden of establishing that 'he has sustained or is immediately in danger of

sustaining some direct injury as the result of the challenged . . . conduct."); *Nicosia v.

Amazon.com, Inc.*, -- F. Supp. 3d --, No. 14–cv–4513 (SLT)(MDG), 2015 WL 500180, at *11-12

(E.D.N.Y. Feb. 4, 2015) (holding consumer lacked standing to pursue injunctive relief because

he was not in danger of being wronged again); *Tomasino v. Estee Lauder Cos.*, -- F. Supp. 2d--,

No. 13–CV–4692 (ERK)(JMA), 2014 WL 4244329, at *3 (E.D.N.Y. Aug. 26, 2014) (plaintiff

could not seek injunctive relief under GBL § 349 because she failed to allege "a sufficient future

injury"); *Vaccariello*, 295 F.R.D. at 72 (named plaintiff lacked standing to represent Rule

23(b)(2) class because he could not "demonstrate that he faced a likelihood of future harm from" defendant's conduct).

For all these reasons, certification of a Rule 23(b)(2) class also is not warranted here.

## CONCLUSION

For the foregoing reasons, class certification should be denied with respect to each of Plaintiff's proposed classes.

Dated:  February 27, 2015

<div style="margin-left: 3em">

SIDLEY AUSTIN LLP

By:/s/  *Eamon P. Joyce*
Eamon P. Joyce
ejoyce@sidley.com
787 Seventh Avenue
New York, New York  10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

James W. Mizgala (*pro hac vice*)
jmizgala@sidley.com
Kara L. McCall (*pro hac vice*)
kmccall@sidley.com
Daniel A. Spira (*pro hac vice*)
dspira@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Kimberly-Clark Corporation*

</div>