James M. Bergin
Kayvan B. Sadeghi
Adam J. Hunt
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000

*Attorneys for Defendant*
*Costco Wholesale Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

D. JOSEPH KURTZ,

            Plaintiff,

         v.

KIMBERLY-CLARK CORPORATION and
COSTCO WHOLESALE CORPORATION,

           Defendants.

------------------------------------------------------------- x

No. 1:14-cv-01142 (JBW)(RML)

**FILED UNDER SEAL**
(Leave to File Under Seal Requested March 26, 2015)

## DEFENDANT COSTCO WHOLESALE CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

James M. Bergin
Kayvan B. Sadeghi
Adam J. Hunt
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone:  (212) 468-8000

*Attorneys for Defendant*
*Costco Wholesale Corporation*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

RESPONSE TO PLAINTIFF'S "SUMMARY OF COMMON FACTS" ................................ 3

    A.    Plaintiff Seeks To Ignore The Individualized Inquiries That Will Dominate This Litigation. ....................................................................... 3

        1.    Plaintiff Has No Clear Evidence That Costco's Wipes Clogged His Plumbing. ......................................................................... 4

        2.    Plaintiff Continued To Purchase Kirkland Signature Flushable Wipes Long After He Stopped Flushing Them Because, Like Many Other Consumers, He Valued Characteristics Of The Product Aside From Flushability. ............................................... 8

    B.    Plaintiff Has Failed To Proffer Any Evidence That Would Enable Him To Prove, On A Class-Wide Basis, That Kirkland Signature Flushable Wipes Are Not Flushable. ................................................................................. 9

        1.    Plaintiff Cannot Rely On Wastewater Agency Communications To Show, On A Class-Wide Basis, That Kirkland Signature Flushable Wipes Fail To Meet Consumer Expectations Of Flushability. ................. 9

        2.    Plaintiff Mischaracterizes The Incidence Of Consumer Complaints Because The Actual Rate Of Complaints Weighs Heavily Against Plaintiff's Claims. ................................................................... 12

        3.    Legislative Proposals And Government Inquiry Are Not Evidence. ....... 14

        4.    Independent Testing Confirms That The Kirkland Signature Product Satisfies The INDA Flushability Guidelines. ........................... 14

ARGUMENT ...................................................................................................... 15

I.    PLAINTIFF FAILS TO DEMONSTRATE THAT HIS CLAIMS ARE AMENABLE TO CLASS-WIDE PROOF AND SIMPLY IGNORES THE INDIVIDUAL INQUIRIES THAT WILL PREDOMINATE. ....................................... 16

    A.    There Is No Evidence That The Purportedly Common Question—Whether "Flushable" Is Materially Misleading—Can Be Answered By Common Proof. ............................................................................................... 18

    B.    Plaintiff Fails To Present Any Evidence Of Common Injury. ....................... 22

    C.    Courts Routinely Deny Class Certification In Cases Like This One, Where A Product's Ability To Perform As Advertised Depends In Part On Individualized Circumstances. ............................................................... 33

**TABLE OF CONTENTS**
**(continued)**

Page

1. None of the Authority Relied Upon By Plaintiff Absolves Him Of The Requirement To Establish Common Injury At The Class Certification Stage. ................................................................... 35

D. Statutory Damages Under G.B.L. § 349 Do Not Absolve Plaintiff Of The Need To Establish Common Injury. ................................................................. 38

E. Individualized Inquiries Also Preclude Certification Of Plaintiff's Common Law Claims. ........................................................................................ 39

1. Whether Class Members Provided Notice of a Breach Precludes Certification on Plaintiff's Breach of Express Warranty Claim. ............. 39

2. Whether Putative Class Members Got the "Benefit of the Bargain" is an Inherently Individualized Inquiry. ................................................. 39

II. A CLASS ACTION IS NOT SUPERIOR. ......................................................... 40

III. PLAINTIFF CANNOT ESTABLISH NUMEROSITY, TYPICALITY, OR ADEQUACY. ..................................................................................................... 41

A. Plaintiff Has Failed to Meet His Burden to Establish Numerosity. ...................... 41

B. Plaintiff's Claims Are Not Typical. ............................................................... 42

C. Plaintiff Is Not An Adequate Class Representative. ......................................... 43

IV. THE PROPOSED CLASS IS NOT ASCERTAINABLE. ................................... 44

V. PLAINTIFF'S CLAIMS DO NOT SUPPORT A NATIONWIDE CLASS. ................. 45

VI. AN INJUNCTIVE RELIEF CLASS IS NOT APPROPRIATE. ........................... 47

CONCLUSION ........................................................................................................ 52

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dep't of Homeland Sec.*,
    No. 07 Civ. 8224 (KBF), 2012 WL 1344417 (S.D.N.Y. Apr. 16, 2012) ...............................48

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................................50

*ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*,
    No. 1:05-CV-00732, 2008 WL 384530 (S.D. Ohio Aug. 14, 2008) ....................................46n

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)................................................................................................42

*Berkman v. Robert's Am. Gourmet Food, Inc.*,
    16 Misc. 3d 1104(A), (Sup. Ct., New York County 2007)..................................................46n

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)..........................................................................................19, 42

*Caldera v. J.M. Smucker Co.*,
    No. CV 12-4936-GHK, 2014 WL 1477400 (C.D. Cal. Apr. 15, 2014).................................23

*Charron v. Pinnacle Grp. N.Y. LLC*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ...................................................................................43, 45

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998).............................................................................................46

*City of Los Angeles v. Lyons*,
    103 S. Ct. 1660 (1983)......................................................................................................51

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)..................................................................................................29, 30

*Ctr. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care,
    L.L.C.*,
    433 F.3d 181 (2d Cir.2005)..............................................................................................49n

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998) ................................................................................................47n

*Dal Ponte v. Am. Mortg. Express Corp.*,
    Civil Action No. 04-2152 (JEI), 2006 WL 2403982 (D.N.J. Aug. 17, 2006) ........................47

*DiMuro v. Clinique Labs., LLC*,
    572 F. App'x 27 (2d Cir. 2014) ...................................................................49

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ........................................................46

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................ 36-37

*Ebin v. Kangadis Food, Inc.*,
    No. 13 Civ. 2311(JSR), 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014) ....................36

*Forcellati v. Hyland's, Inc.*,
    No. CV 12-1983-GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)..................49n

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    120 S. Ct. 693 (2000) ........................................................................... 47-48

*Gardner v. W. Beef Properties, Inc.*,
    No. 07-CV-2345 (RJD)(JMA), 2011 WL 6140518 (E.D.N.Y. Sept. 26, 2011) *report
    and recommendation adopted as modified sub nom. White v. W. Beef Properties, Inc.*,
    No. 07 CV 2345 (RJD)(JMA), 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011) ........................51

*Gary Plastic Packaging Corp. v. Merrill Lynch*,
    903 F.2d 176 (2d Cir. 1990).................................................................42, 44

*Guido v. L'Oreal U.S.A., Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) ...............................................................37

*Guido v. L'Oreal U.S.A., Inc.*,
    No. CV 11-1067 CAS, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ....................... 37-38, 38n

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013).....................................................................45

*Hazelhurst v. Brita Prods. Co.*,
    295 A.D.2d 240, 744 N.Y.S.2d 31 (1st Dep't 2002) ..........................................34

*Himber v. Intuit, Inc.*,
    No. 10-CV-2511 (JFB)(AKT), 2012 WL 4442796 (E.D.N.Y. Sept. 25, 2012) ....................38

*In re Canon Cameras*,
    237 F.R.D. 357 (S.D.N.Y. 2006) ..................................................23, 33-34, 40

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
    174 F.R.D. 332 (D.N.J. 1997)...................................................................46n

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
  No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).................45

*In re Grand Theft Auto Video Game Consumer Litig.*,
  No. 06 MD 1739 (SWK) (MHD), 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ............ 46-47

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) ......................................................................................47

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ..........................................................................................16

*In re Rezulin Prods. Liab. Litig.*,
  210 F.R.D. 61 (S.D.N.Y. 2002) ..................................................................................23, 45

*In re Scotts EZ Seed Litig.*,
  No. 12 CV 4727(VB), 2015 WL 670162 (S.D.N.Y. Jan. 26, 2015)................................. 35-36

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig..*,
  678 F.3d 409 (6th Cir. 2012) ......................................................................................24, 46

*Int'l Union Operating Eng'g Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
  192 N.J. 372, 929 A.2d 1076 (2007).................................................................................36

*Jermyn v. Best Buy Stores, L.P.*,
  256 F.R.D. 418 (S.D.N.Y. 2009) .......................................................................................38

*Johnson v. Nextel Commc'ns Inc.*,
  No. 14-454, 2015 WL 897653 (2d Cir. Mar. 4, 2015)........................................................40

*Kalow & Springut, LLP v. Commence Corp.*,
  Civ. Action No.07-3442, 2012 WL 6093876 (D.N.J. Dec. 7 2012)......................................47

*Leider v. Ralfe*,
  No. 01 Civ. 3137(HB)(FM), 2004 WL 1773330 (S.D.N.Y. July 30, 2004).....................27, 37

*Leonard v. Abbott Labs., Inc.*,
  No. 10-CV-4676 (ADS)(WDW), 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012).......................41

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
  211 F.R.D. 228 (S.D.N.Y. 2002) .................................................................................. 45-46

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ...................................................................................49

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012)...............................................................................................45

*McBean v. City of N.Y.*,
   260 F.R.D. 120 (S.D.N.Y. 2009) ............................................................45

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v.*
   *Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ................................ 25, 34-35

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ...............................................................23

*Morrissey v. Nextel Partners, Inc.*,
   72 A.D.3d 209, 895 N.Y.S.2d 580 (3d Dep't 2010) ..................................38n

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
   189 F.R.D. 194 (D. Mass. 1999) ...........................................................46n

*Newman v. RCN Telecom Servs., Inc.*,
   238 F.R.D. 57 (S.D.N.Y. 2006) .........................................................34, 42

*Nicosia v. Amazon.com, Inc.*,
   No. 14-cv-4513 (SLT)(MDG), 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015), *appeal*
   *filed* No. 15-423 (2d Cir. Feb. 13, 2015) ...............................................50

*Oscar v. BMW of N. Am., LLC*,
   274 F.R.D. 498 (S.D.N.Y. 2011) ...........................................................32

*Pagan v. Abbott Labs., Inc.*,
   287 F.R.D. 139 (E.D.N.Y. 2012) ..................................................17-18, 38-39

*Pelman v. McDonald's Corp.*,
   272 F.R.D. 82 (S.D.N.Y. 2010) .............................................................35

*Phillips Petroleum Co. v. Shutts*,
   105 S. Ct. 2965 (1985) ......................................................................47n

*Pungitore v. Barbera*,
   506 F. App'x 40 (2d Cir. 2012) ..........................................................50-51

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
   No. 11 Civ. 6546 (JPO), 2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) .................42

*Rodriguez v. It's Just Lunch, Int'l*,
   300 F.R.D. 125 (S.D.N.Y. 2014) ...........................................................46

*Small v. Lorillard Tobacco Co., Inc.*,
   94 N.Y.2d 43 (1999) .........................................................................48

*Solomon v. Bell Atl. Corp.*,
    9 A.D.3d 49, 777 N.Y.S.2d 50 ........................................................................34

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ....................................................................44

*Statler v. Dell, Inc.*,
    775 F. Supp. 2d 474 (E.D.N.Y. 2011) ........................................................40n

*Sykes v. Mel S. Harris & Assocs. LLC*,
    Nos. 13-2742-cv, 13-2747-cv, 13-2748-cv, 2015 WL 525904 (2d Cir. Feb. 10, 2015)....16, 38

*Szymczak v. Nissan N. Am., Inc.*,
    No. 10 CV 7493 (VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011)................46n

*Vaccariello v. XM Satellite Radio*,
    295 F.R.D. 62 (S.D.N.Y. 2013) ............................................................23, 49n

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ....................................................................... *passim*

*Warth v. Seldin*,
    95 S.Ct. 2197 (1975) ...................................................................................49n

*Weiner v. Snapple Bev. Corp.*,
    No. 07 Civ. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y Aug. 5, 2010)................ 24, 25, 39-40

*Weiss v. Polymer Plastics Corp.*,
    21 A.D.3d 1095, 802 N.Y.S.2d 174 (2d Dep't 2005) ..................................46n

**STATUTES AND RULES**

N.Y. Gen. Bus. Law § 349 (McKinney 1963) ................................................... *passim*

N.J.S.A. 12A:2-607(3)(a).............................................................................39

N.Y. U.C.C. § 2-607(3)(a) ..........................................................................39

Fed. R. Civ. P. 23(b) ...............................................................................47-51

Defendant Costco Wholesale Corporation, for its opposition to Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel (the "Motion"), states as follows.

## PRELIMINARY STATEMENT

Plaintiff's Motion amounts to verbal sleight-of-hand:  unable to overcome the obvious weaknesses of his plumbing claim, he instead asserts broadly that Costco's Kirkland Signature Flushable Wipes are not flushable, and that the labeling of Costco's product is therefore false and misleading.  But "flushable" is a performance claim, and if Plaintiff seeks to certify a class to claim that this label is misleading, he must offer *generalized proof* sufficient to show that the Kirkland Signature Flushable Wipes fail to perform as expected on a *class-wide* basis.

However, Plaintiff's own experience with Kirkland Signature Flushable Wipes shows clearly that questions about "flushability" are highly individualized.  To name just a few issues: there is no evidence that Plaintiff actually had Kirkland Signature Flushable Wipes at either his Brooklyn residence or his New Jersey rental property prior to experiencing the plumbing problems of which he complains; Plaintiff contends he flushed multiple products, including non-flushable baby wipes, and thus he cannot state with certainty which product (if any) caused the blockages; and inspections of his residences revealed that the plumbing systems were obstructed by tree roots and other blockages, any one of which could cause a clog.  Moreover, almost all of Plaintiff's purchases of Kirkland Signature Flushable Wipes occurred when he had no intention of flushing them, including after filing this lawsuit.  Plaintiff's own experience provides *no basis whatever* to claim that Kirkland Signature Flushable Wipes are not flushable, or that he has been injured by Costco's product.  Similar inquiries will be necessary for every putative class member to determine whether the product, for that class member, was not flushable.

1

Plaintiff cannot fill the void in this purported *consumer* class action with unsubstantiated complaints from a few *municipal* wastewater agencies. As this Court has recognized, municipal injury is not part of this case. Plaintiff tries to get alleged municipal injury in the back door by asserting that flushability must mean "much more" to consumers than passing through their own household systems, speculating that they paid a price premium for a product that they expected would pass through municipal systems as well.

This argument also fails for lack of evidence on all fronts. Plaintiff offers no admissible evidence that Kirkland Signature Flushable Wipes, themselves, do not pass through any particular municipal system, and no evidence to suggest how one might try to go about proving or disproving a causal relationship between Kirkland Signature Flushable Wipes and municipal clogs on a class-wide basis. Quite the opposite, evidence from wastewater agencies strongly suggests that other, non-flushable products are a much bigger problem and that it would be virtually impossible to determine that Kirkland Signature Flushable Wipes, or any wipes labeled as flushable, were the cause of any municipal clog. Nor, for that matter, does plaintiff offer any evidence that consumers had any consistent expectations about how municipal wastewater systems would be affected by their flushing wipes of any kind.

Plaintiff's attempt to satisfy the common injury requirement with allegations of a "price premium" for flushability fails as well. The evidence shows that Costco does not, in fact, charge a premium for Kirkland Signature Flushable Wipes—to the contrary, Costco charges less for this product than the vast majority of conceivable substitute products. Moreover, studies indicate that as many as REDACTED to REDACTED of consumers who purchase flushable wipes, like Plaintiff, do not intend to flush them. None of these customers can be said to have paid a premium for a product characteristic that clearly did not impact their decision to purchase the product.

2

The suggestion by Plaintiff's expert that he can demonstrate a price premium through "hedonic regression" is manifestly insufficient; indeed, Plaintiff's expert *concedes* that the various product attributes he has identified—which include the flushable claim—may have no correlation to price, and he has no way of knowing whether the model will show any significant results without running an "iterative" analysis. Moreover, the "hedonic regression" model he suggests is simply unsuited to estimating a price premium in this case; as Costco's expert shows, the model cannot account for all necessary variables and will inevitably lead to a distorted and unreliable result.

Plaintiff's failure to show a common injury, or that any purportedly common question can be *answered* with common evidence much less predominate over individualized issues, is fatal to his class claims. The myriad of unique and perplexing facts specific to Plaintiff—who cannot be said to be typical of, or adequate to represent, any certifiable class—only further compel denial of class certification.

## RESPONSE TO PLAINTIFF'S "SUMMARY OF COMMON FACTS"

### A.      Plaintiff Seeks To Ignore The Individualized Inquiries That Will Dominate This Litigation.

Costco's motion to deny class certification set forth extensive evidence of Dr. Kurtz's highly individualized experience with flushable wipes, and the many discrepancies between his testimony and Plaintiff's earlier filings. Among other things: (i) the evidence strongly suggests that Kirkland Signature Flushable Wipes were not even present in either of his residences before he experienced the clogs of which he complains (Dr. Kurtz's recollection of what he had purchased and when was simply mistaken); (ii) in fact, *ninety percent* of Dr. Kurtz's purchases of Kirkland Signature Flushable Wipes occurred *after* he had stopped flushing flushable wipes; and (iii) Dr. Kurtz admits to having flushed *non-flushable baby wipes* immediately prior to

3

experiencing the clogs in his Brooklyn house, and the only documentary evidence he produced

regarding the clog in his New Jersey residence—a plumber's receipt—similarly attributed the

clog to baby wipes.  Not surprisingly, Plaintiff's brief tries to ignore Dr. Kurtz almost entirely,

but Plaintiff cannot make these unique facts unearthed in discovery go away.

### 1.   Plaintiff Has No Clear Evidence That Costco's Wipes Clogged His Plumbing.

In the less than two pages devoted to Dr. Kurtz, Plaintiff's brief repeats admittedly false

allegations and ignores highly material facts, to make his claims against Costco appear plausible.

First, Plaintiff's brief suggests that Dr. Kurtz began using Kirkland Signature Flushable Wipes in

early 2013 and experienced plumbing problems several months later, "in or around the summer

of 2013," as a result of using those wipes.  (Kurtz Br.[1] at 12.)  Yet at his deposition, Dr. Kurtz

candidly admitted that those allegations are simply not true.  (*See* Kurtz Dep.[2] 48:6-12.)

In fact, Dr. Kurtz and his family had been purchasing and flushing flushable wipes for *ten

years*, including four continuous years at his prior residence, without experiencing plumbing

problems at those residences.  (Kurtz Dep. 133:16-25; 36:16-37:13.)  Plaintiff first experienced

plumbing problems at his current Brooklyn residence—located at 409 Quentin Road—in

February 2013, "[n]ot more than a week" after he moved in, and then again, 24 to 48 hours later.

(Kurtz Dep. 17:3-22.)  Confronted with documentary evidence that he did not buy any Kirkland

Signature  Flushable Wipes when he stocked up his new home in February 2013, Plaintiff

---

[1] "Kurtz Br." refers to the Omnibus Memorandum of Law in Support of Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. February 27, 2015), ECF No. 81.
[2] The following deposition transcripts referenced herein were attached as exhibits to the Declaration of Mark S. Reich in Support of Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel, dated February 27, 2015: Exhibit BB ("Kurtz Dep."); Exhibit G ("Powling Dep."); Exhibit F ("Babusik Dep."); Exhibit W ("Walior Dep."); Exhibit I ("Hurley Dep.").

admitted that "[i]t is possible" that the wipes flushed prior to the clogs were not Kirkland Signature Flushable Wipes and that *he does not know one way or the other*.  (Kurtz Dep. 91:24-92:13.)

The Kurtz family's only prior purchase of Kirkland Signature Flushable Wipes occurred several months before they moved, and there is no evidence suggesting that any of those wipes were present in the new home, particularly given the Kurtz family's multiple intervening purchases of other flushable wipes.  (*See* Kurtz. Dep. Ex. M at 3; Costco Br.[3] at 12.)  Indeed, there is no evidence at all of what flushable wipes products Dr. Kurtz purchased or used in February 2013.

Plaintiff's brief also ignores the *most likely* cause of the back-to-back clogs he experienced in February 2013.  Plaintiff admitted at his deposition that, during the brief period of time between when he moved to 409 Quentin Road and when he experienced the first plumbing issue at that residence, he and his family flushed *non-flushable baby wipes* as well as flushable wipes.  (Kurtz Dep. 109:6-19.)  Dr. Kurtz admits he believes baby wipes caused or contributed to the first clog in his new home (*see id.*), yet Plaintiff's brief makes no mention of this fact.

Plaintiff experienced a second clog "[w]ithin 24 to 48 hours" of the first clog (*id.* at 22:5-22), which Plaintiff's brief asserts "occurred shortly after a plumber cleared his plumbing system of any blockages."  (Kurtz Br. at 12.)  But Plaintiff admitted at his deposition that he does not know whether the site of the clog was cleared after the baby wipe incident.  (Kurtz Dep. 73:18-74:19.)  Defendants' inspection of the plumbing system at 409 Quentin Road revealed that the

---

[3] "Costco Br." refers to the Memorandum of the Law in Support of Costco Wholesale Corporation's Motion to Deny Class Certification, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. February 27, 2015), ECF No. 87, which contains a detailed recitation of the relevant facts in this case and is incorporated by reference and referred to herein in order to avoid duplication.

plumbing system was not properly maintained, and exhibited several conditions— including a blocked house trap and roots growing in the pipe—which, singly or in combination, could have caused a clog.  (Boyer Report[4] § 3.02.01.)[5]

Plaintiff's brief ignores—because it can offer no explanation consistent with certifying a class—the fact that Dr. Kurtz stopped flushing flushable wipes in February 2013 but continued purchasing Kirkland Signature Flushable Wipes with no intent to flush them.  (Kurtz Dep. 38:13-39:16.)

Dr. Kurtz further testified that, approximately four months after the Brooklyn clogs led him and his family to stop flushing flushable wipes at their own home, they went back to flushing wipes at a rental property in Elberon, New Jersey belonging to Dr. Kurtz's father.[6]  (*Id.* at 29:11-16; 33:4-34:8.)  Plaintiff's brief again repeats the wholly unfounded allegation that Plaintiff "experienced a plumbing issue at a New Jersey rental home, in or around June 2013, as a direct result of using the Kirkland Signature Flushable Wipes."  (Kurtz Br. at 13.)  In fact, however, Dr. Kurtz testified that the wipes flushed in the New Jersey home that summer were purchased by his wife at the Costco location in New Jersey when she stocked up the home at the

---

[4] "Boyer Report" refers to the Expert Report of John T. Boyer, dated February 27, 2015, filed as Sadeghi Decl. Ex. 2.

[5] It is impossible to determine the condition of the plumbing at the time of the incidents in February 2013 because in late 2014, months after filing this lawsuit, Plaintiff renovated the plumbing in his house.  (Kurtz Dep. 71:25-72:12.)  Upon inspection in December 2014, the house trap at the location where Plaintiff asserts the clogs occurred was largely filled with construction debris, and it is impossible to determine whether that was the case at the time of the clogs (based on earlier construction), or whether that obstruction is new.  (Boyer Report § 3.02.01.)  Defendants were not notified of Plaintiff's plans to modify his plumbing before doing so, even though the work occurred after discovery in this case had begun.

[6] Both Plaintiff's Complaint and his Motion fail to mention that he experienced a plumbing issue at the New Jersey rental property in the summer of 2012 and that the plumber who was called to deal with the issue "advised at the time [in 2012] to not flush anything but toilet paper down the toilet."  (Kurtz Dep. 66:21-67:24.)

beginning of the summer, in June 2013 (Kurtz Dep. 33:11-34:12; 89:13-90:3); and Mrs. Kurtz's purchasing history showed that she did *not* purchase any Kirkland Signature Flushable Wipes during that shopping trip to Costco. (Kurtz Dep. Ex. N at 2.)  Confronted with this evidence, Dr. Kurtz admitted that "[i]t's possible" that there were no Kirkland Signature Flushable Wipes in the house.  (Kurtz Dep. 91:11-16.)  There is no evidence to suggest that there were any—to the contrary, the Kurtz family's only purchase of Kirkland Signature Flushable Wipes in New Jersey occurred *after* the New Jersey plumbing clog occurred.  (*See id.* at 92:25-93:9.)

Plaintiff acknowledged that he does not know what was flushed down the toilets at the Elberon house by other renters in the months before Plaintiff and his family moved into the house in the summer of 2013.  (Kurtz Dep. 34:13-35:3.)  And the plumber's invoice, dated July 20, 2013—the only record of any plumbing work produced by Plaintiff—reflects that "baby wipes," not flushable wipes, were the cause of the clog.  (*See* Kurtz Dep. Ex. J.)

In addition, Defendants' inspection of the Elberon residence identified numerous site-specific factors that might have caused or contributed to the repeated incidence of clogs at this property.  The plumbing system is not properly designed or maintained.  (Boyer Report § 3.02.02.)  The piping was "significantly filled with water, toilet paper and other unidentifiable floating debris," indicating a "sag" in the piping system that reduces flow through the system. (*Id.*)  "[Tree] [r]oots and what appears to be trapped toilet paper was observed" in the piping, as well as some scale and corrosion, and water flow was "very poor."  (*Id.*)  These conditions "do not provide the proper flow characteristics for waste to pass through."  (*Id.* at § 3.03.)  If baby wipes were flushed, as the plumber's invoice indicates, that "would exacerbate the faults in the existing system and likely cause a blockage" because baby wipes are not flushable.  (*Id.*)

7

2.    **Plaintiff Continued To Purchase Kirkland Signature Flushable Wipes Long After He Stopped Flushing Them Because, Like Many Other Consumers, He Valued Characteristics Of The Product Aside From Flushability.**

Plaintiff's cursory recitation of the facts omits another critical detail:  he and his wife continued to purchase Kirkland Signature Flushable Wipes long after they experienced plumbing problems, *including after the Complaint was filed in this action.*  (*See* Kurtz Dep. Ex. N at 1.)  In fact, Plaintiff and his wife purchased a total of ten cartons of Kirkland Signature Flushable Wipes—*nine* of which were purchased after their Brooklyn clogs, *eight* of which were purchased after their New Jersey plumbing clog, and *three* of which they purchased after filing this lawsuit. (*Id.* at 1-2; *see also* Kurtz Dep. 57:10-25.)

Plaintiff explained that he and his family continued to use flushable wipes in the bathroom after the New Jersey plumbing incident, but that they threw the wipes out after using them.  (Kurtz Dep. 39:8-16, 66:7-13.)   The Kurtz family also used Kirkland Flushable Signature Wipes in a variety of circumstances, including "in the car, to clean up messes, [and] to clean the children."  (*Id.* at 58:9-24; *see also* 59:17-60:3 ("We still use[d] them for our children and myself and my wife use[d] them as well as around the house and on road trips and in the car.").)

Plaintiff's purchasing habits and use of flushable wipes other than for flushing are by no means unique.  A nationwide survey conducted in 2012 found that a significant percentage of consumers who purchase flushable wipes dispose of the wipes in the garbage.  (3-27-15 Sadeghi Decl.[7] Ex. 2 (51% of consumers discard wipes in the garbage).)  An earlier market research study conducted by Kimberly-Clark found similar results.  (3-27-15 Sadeghi Decl. Ex. 3 (finding that,

---

[7] "3-27-15 Sadeghi Decl." refers to the Declaration of Kayvan B. Sadeghi in Support of Costco's Opposition to Plaintiff's Motion for Class Certification, dated March 27, 2015.

ny-1179925

of survey respondents who regularly use flushable wipes, 40% of consumers discard wipes in the garbage).)

**B.      Plaintiff Has Failed To Proffer Any Evidence That Would Enable Him To Prove, On A Class-Wide Basis, That Kirkland Signature Flushable Wipes Are Not Flushable.**

Plaintiff proposes four "sources" to support his theory that flushable wipes are not flushable and that every consumer who has purchased Kirkland Signature Flushable Wipes suffered an injury: (1) what municipalities and wastewater officials have said about flushable wipes products; (2) the fact that some homeowners have complained about flushable wipes products; (3) that government agencies have opened inquiries into flushable wipes; and (4) the results of Costco's own internal testing of the Kirkland Signature Flushable Wipes.  (Kurtz Br. at 1-2.)  Plaintiff's characterization of these "sources" is highly misleading and none of them supports class certification here.

**1.      Plaintiff Cannot Rely On Wastewater Agency Communications To Show, On A Class-Wide Basis, That Kirkland Signature Flushable Wipes Fail To Meet Consumer Expectations Of Flushability.**

Plaintiff's reliance on what municipalities and wastewater officials have publicly said about flushable wipes (Kurtz Br. at 8-9) is irrelevant to class certification.  As the Court recognized early on—and has since reiterated—municipalities' experiences with flushable wipes products have no bearing on the question of whether Plaintiff or any other consumer has been injured.  *See* Order, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. October 10, 2014), ECF No. 41 (ordering that this case will not "proceed based on alleged municipal injury"); *see also* Scheduling Order, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. March 24, 2015), ECF No. 98 (similar).

Regardless, examining what wastewater officials have said about flushable wipes in their own internal communications illustrates that these officials have no reliable evidence that

flushable wipes in general, or the Kirkland Signature Flushable Wipes in particular, are not flushable.  Rather, the limited evidence that does exist strongly suggests that flushable wipes are not a significant contributor to clogs in municipal wastewater systems and that a variety of non-flushable products are far larger culprits.  Real-world studies that INDA and wastewater officials jointly conducted found paper products—such as paper towels—made up over 40% of the material collected at wastewater treatment facilities, and that baby wipes (18%) and feminine hygiene products (14%) were also found in large numbers.  (3-27-15 Sadeghi Decl. Ex. 4; Ex. 5.)[8]  Plaintiff cites no evidence to the contrary.

Moreover, in light of these studies, wastewater officials have admitted that "[t]he consensus … is that 'flushable' wipes are a very minor problem (less than 10% if that) while 'non-flushable' items and female hygiene products are the real problem."  (3-27-15 Sadeghi Decl. Ex. 7.)  As one wastewater official stated, "we are pretty much in agreement that most of this problem goes away if we get baby wipes, as they now constructed, out of our sewers."  (3-27-15 Sadeghi Decl. Ex. 8;  see also 3-27-15 Sadeghi Decl. Ex. 9 ("'flushable' products are probably not the biggest problem [for municipal wastewater systems]."); Ex. 10 ("[m]any of the items that cause problems in the wastewater industry have nothing to do with your products – in my operation I have seen concrete, toys, animals, car engines").)  Further, one wastewater official cautioned that "it is VERY difficult to characterize what kinds of wipes, paper towels, and swiffers gets captured on the bar screens coming into the pumping station.  The paper towels

---

[8] Although Plaintiff references "real world testing" that municipalities conducted on their own accord (see Kurtz Br. at 1, 8-9), he does not cite any such tests performed on the Kirkland Signature Flushable Wipes.  Moreover, one wastewater official who sought to conduct a "real world test" on Kirkland Signature Flushable Wipes conceded, in response to criticism that his test actually modified the dispersibility of the wipes, that he "didn't intend it to be a controlled scientific test."  (3-27-15 Sadeghi Decl. Ex. 6.)

were the easiest, but distinguishing between the 'flushable' wipes and those wipes for which the label may say 'do not flush' is difficult at best."  (3-27-15 Sadeghi Decl. Ex. 11 (emphasis in original).)

Finally, what is considered flushable from the perspective of the wastewater industry, focused on the potential impact to their systems, says nothing about what flushable means "to a reasonable consumer."  (Kurtz Br. at 16.)  Plaintiff testified that, from his perspective, "flushable would mean that I can take a product, flush it down the toilet, and it would not cause any problem to any part of *my* flushing system, any pipes."  (Kurtz Dep. 37:14-20 (emphasis added).) Studies performed by the wastewater industry echo Plaintiff's view:  "[w]hen determining what is 'flushable' *consumers* think of what will fit down their toilet without clogging … [m]ost consumers do not consider the downstream impact to wastewater systems or the environment." (3-27-15 Sadeghi Decl. Ex. 12  (emphasis added).)  Plaintiff's brief runs away from his own common-sense definition to insist that "[f]lushable clearly does not mean that a product or wipe will simply pass through a toilet … Flushable means much more than that."  (Kurtz Br. at 7-8.) In taking this position, Plaintiff is effectively denying his sworn testimony.

In fact, the "evidence" on which Plaintiff relies to support his assertion that "[f]lushable means much more than that" comes from the INDA Guidelines' definition of "flushable"— guidelines which, as Plaintiff admits, have evolved over time to consider the perspectives of both consumers and the wastewater industry.  (*Compare* Kurtz Br. at 7-8 *with* Babusik Decl.  ¶¶ 10-11 and Powling Dep. 18:14-19:4; 153:1-154:8 (same).)[9]  As shown below, however—and as

---

[9] Further, the record establishes – and Plaintiff does not contest – that the Kirkland Signature Flushable Wipes meet and always have met the INDA Guidelines definition of flushability, as determined through independent testing.  (Declaration of Kim Babusik in Support of Costco's Motion to Deny Class Certification, dated February 27, 2015 and the exhibits attached thereto ("Babusik Decl.")  ¶¶ 15-16.)

Plaintiff tries vainly to deny—the Kirkland Signature Flushable Wipes have always been in compliance with those Guidelines, so Plaintiff rejects that standard as well.  Plaintiff offers no alternative definition to the consumer and industry expectations supported by the record, both of which Kirkland Signature Flushable Wipes satisfy.

> ### 2.     Plaintiff Mischaracterizes The Incidence Of Consumer Complaints Because The Actual Rate Of Complaints Weighs Heavily Against Plaintiff's Claims.

Plaintiff's attempt to characterize complaints about the Kirkland Signature Flushable Wipes as "wide-ranging and extensive" is unfounded and flatly contradicted by the record. (Kurtz Br. at 9.)  It is undisputed that nationwide, Costco and its manufacturer, Nice-Pak Products, Inc., received complaints from only                    REDACTED

Costco and Nice-Pak received                              REDACTED

throughout the entire time from the initial launch of Kirkland Signature Flushable Wipes in 2011 through December 31, 2014.  (Babusik Decl. at ¶ 18.)[11] Moreover,   REDACTED

---

10                              REDACTED

[11] Nice-Pak retains records of every complaint made by Costco members regarding the Kirkland Signature Flushable Wipes, including plumbing-related complaints.  (Babusik Decl. ¶ 18.)

In addition, Plaintiff's suggestion that Costco's and Nice-Pak's policies for handling complaints were instituted in response to member complaints about flushability is a blatant misstatement of the record.  Costco's and Nice-Pak's policies with respect to member complaints were the same for *any* type of member complaint, from general dissatisfaction with the product to specific complaints, such as complaints about plumbing.  (Babusik Dep. 50:7-51:3; Walior Dep. 81:3-82:3.)                                    REDACTED

                                                                                  Nice-Pak

testified that "[i]t's Costco's practice *for any reason* a member might be dissatisfied to refund [the customer's costs]."  (Babusik Dep. 55:11-16 (emphasis added).)

        Nor can Plaintiff rely on complaints from Costco members to prove critical elements of his claims, injury and causation.  Consistent with Costco's customer satisfaction priority, in the rare instances where a Costco member informs either Costco or Nice-Pak of a plumbing problem and documents the plumbing costs,                    REDACTED

                Those consumers who have had plumbing issues but have been reimbursed for their out-of-pocket expenses have suffered no redressable injury.  Further, the complaint records maintained by Nice-Pak provide no evidence of what actually caused a member's plumbing issues.  Notably, however, in a few instances where a member has claimed unusually high damages—and where Nice-Pak has referred the claim to its insurance carrier— the evidence suggests that Kirkland Signature Flushable Wipes were not the cause of the customer's plumbing issues.  In one such instance, the insurer's investigation showed that the member was also flushing non-flushable feminine hygiene products.  (*Id.* at ¶ 21; Babusik Dep. 54:14-25.)  Similarly, one of the few members who directly contacted Costco's buyer with a

complaint acknowledged that she was also flushing baby wipes and cleaning wipes. (Walior Dep. 86:21-87:6.) Like Plaintiff, for these customers, the evidence strongly suggests that something other than Kirkland Signature Flushable Wipes caused their plumbing issues.

### 3.   Legislative Proposals And     REDACTED        Are Not Evidence.

Plaintiff's passing reference to                    REDACTED                 and "proposed laws addressing the flushability of wipes" provides no support whatever for his class certification motion. (Kurtz Br. at 10-11.) Nothing about either assertion suggests any finding of any kind, much less a finding with respect to the flushability of the Kirkland Signature Flushable Wipes. Plaintiff's suggestion that the Court should draw some negative inference from legislative proposals              REDACTED              does not amount to any evidence at all, let alone evidence sufficient to certify a class.

### 4.   Independent Testing Confirms That The Kirkland Signature Product Satisfies The INDA Flushability Guidelines.

Plaintiff also misrepresents the evidence of Costco and Nice-Pak's testing of the Kirkland Signature Flushable Wipes pursuant to guidelines promulgated by INDA. (Babusik Decl. ¶¶ 8-10.) The INDA Guidelines provide objective criteria in the form of standardized tests, intended to determine whether a product may be marketed and labeled as flushable. (*Id.* at ¶ 8.)

Plaintiff cannot escape the fact that independent laboratories have repeatedly confirmed that Kirkland Signature Flushable Wipes have been in compliance with the INDA Guidelines at all times since they were introduced to the market in 2011. (Babusik Decl. ¶¶ 15-16; Babusik Decl. Ex. 2; Costco Br. at 6.) Instead, Plaintiff cherry-picks a single instance in which a lab conducted only one of 27 tests in Second Edition of the INDA Guidelines (a so-called "tipping tube" test). In doing so, Plaintiff fails to explain that this particular test was not mandatory under the Second Edition Guidelines; rather, it was one of multiple ways to show compliance with one

14

of the Second Edition's criteria for defining flushability.  (Kurtz Br. at 11; *see also* Hurley Dep. 97:6-11 & Ex. 3[12]; 3-27-15 Sadeghi Decl. Ex. 13, excerpt of 2d Ed. INDA Guidelines.)[13]   An alternative to the tipping tube test under the Second Edition Guidelines was the "Lab Household Pump" test.  (*Id.*)  The Kirkland Signature Flushable Wipes passed the Lab Household Pump test, as well as all other tests necessary to substantiate the "flushable" label under the Second Edition of the INDA Guidelines.  (*See* Babusik Decl. Ex. 2.)

## ARGUMENT

Plaintiff has failed to meet his evidentiary burden to show that the requirements for class certification are met.  Instead, Plaintiff impermissibly seeks to shift the burden of proof to Defendants, arguing that "a plaintiff might bear the initial burden of advancing *reasons* why a putative class action meets Rule 23 requirements.  Once a plaintiff has made a preliminary *legal showing* that the requirements of Rule 23 have been met, however, *the burden of proof is shifted to defendants* to demonstrate otherwise."  (Kurtz Br. at 21 (emphasis added).)  That plainly misrepresents the controlling legal standard.

To prevail on this motion, Plaintiff must affirmatively *prove* (i.e. with evidence, not "reasons" or a "legal showing"), that each of the requirements of Rule 23 has *in fact* been satisfied.

> "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."

---

[12] The Reich Declaration did not attach Exhibit 3 to the Hurley Dep., so the documents is provided as Exhibit 14 to the 3-27-15 Sadeghi Declaration.

[13] Costco also expressed reservations about how that test was conducted.  (3-27-15 Sadeghi Decl. Ex. 14 ("I am not sure if the test was performed accurately").)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). *See also*

*Sykes v. Mel S. Harris & Assocs. LLC*, Nos. 13-2742-cv, 13-2747-cv, 13-2748-cv, 2015 WL

525904, at *9 (2d Cir. Feb. 10, 2015)("plaintiffs must . . . show that they can prove, through

common evidence, that all class members were . . . injured" )(quoting *In re Rail Freight Fuel*

*Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)).

Plaintiff's lack of evidence is fatal to his motion for class certification.  The core issues in

this case cannot be resolved with class-wide proof, and the record confirms that Dr. Kurtz's

many individualized issues—ignored in Plaintiff's moving brief—will be endemic to the class.

For all the reasons set forth in Defendants' motions to deny class certification, and those

highlighted below, Plaintiff's motion for class certification should be denied.

## I.   PLAINTIFF FAILS TO DEMONSTRATE THAT HIS CLAIMS ARE AMENABLE TO CLASS-WIDE PROOF AND SIMPLY IGNORES THE INDIVIDUAL INQUIRIES THAT WILL PREDOMINATE.

Class certification should be denied because Plaintiff has failed to offer any evidence of

common *injury*, much less an injury subject to generalized proof of damages.  Plaintiff has

effectively abandoned the argument that consumer plumbing damages constitute common injury.

(*See* Kurtz Br. at 15-16.)  Instead, Plaintiff relies primarily on the argument that a class should be

certified to address the purportedly common *question* of whether the "flushable" claim on

Kirkland Signature Flushable Wipes is materially misleading, relying on the wholly unsupported

speculation that he may later be able to demonstrate a price premium to satisfy the common

injury requirement.  Plaintiff's argument fails for numerous reasons.

First, Plaintiff's proposed common questions—what "the word flushable means to a

reasonable consumer," and whether the Kirkland Signature Flushable Wipes packaging is "false

or misleading" (Kurtz Br. at 16)—are insufficient to support class certification because there is

no evidence that Plaintiff can generate a common *answer* to these questions, much less one that will predominate over individualized issues.  (*See* Section I.A, below.)

Second, Plaintiff's argument fails because he does not offer any *evidence* of a common injury.  Speculating that a price premium for a "flushable" claim might exist to support class certification is insufficient because Plaintiff fails to offer evidence of such a price premium, or even evidence that the existence or non-existence of that purported premium could be determined.  The regression model that Plaintiff's expert proposes to employ in search of answers to these questions is manifestly not suited to the task.  Even if Plaintiff could show that the "flushable" claim was misleading—which he cannot—individualized injury inquiries would overwhelm the proceedings and render the case unmanageable.  (*See* Section I.B.)

Plaintiff's laundry-list of other purportedly common questions cannot satisfy his burden and overcome the myriad individual issues in this case.  (*See* Kurtz Br. at 15-16.)  Four of the questions simply recite his causes of action; these are exactly the sort of "common questions" that were rejected by the Supreme Court as meaningless for purposes of assessing commonality. *Compare Dukes*, 131 S. Ct. at 2551 *with* Kurtz Br. at 16.[14]  *See also Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 148 (E.D.N.Y. 2012) (finding that the plaintiffs did not satisfy the commonality requirement because allegations that plaintiffs "have suffered a violation of the same provision

---

[14] *Dukes* noted that "Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once," and gave as an example of a question that was *not* probative of commonality: "Is that an unlawful employment practice?" 131 S. Ct. at 2551.  Kurtz's questions six through nine are exactly that type:  "whether Defendants' representations or labeling constitute negligent misrepresentation;" "whether Defendants' representations or labeling claims created express warranties and whether Defendants' breached those warranties;" "whether Defendants' conduct violated New York's General Business Law §§349 and 350;" and "whether Defendants violated the New Jersey Consumer Fraud Act." (Kurtz Br. at 16.)

17

of law . . . does not necessarily mean they suffered the same injury under the *Dukes* standard.")
(citing *Dukes*, 131 S. Ct. at 2551).

Plaintiff's two remaining questions ask whether the claims "safe for sewer and septic systems" and "break apart" after flushing are "false or misleading." (Kurtz Br. at 16.) These questions cannot support class certification for the same reasons the "flushable" question fails (as shown below), and for at least three additional reasons. First, Plaintiff himself never suggests that these claims were material to him, instead focusing exclusively on the word "flushable" in the name of the product. (*See* Kurtz Dep. 37:14-38:2.) Second, Plaintiff's expert also focuses solely on the "flushable" claim and does not suggest that he could assess a class-wide price premium or any other common measure of injury specific to these additional performance claims. (*See generally* Declaration of Colin B. Weir in Support of Plaintiff's Motion for Class Certification ("Weir Decl."), dated February 27, 2015.) Third, Plaintiff will not be able to establish any price impact for these claims because, as Plaintiff himself points out, these "designations regarding the efficacy" of the product were modified and/or removed over time (Kurtz Br. at 5), but none of those changes had any impact on the price of Kirkland Signature Flushable Wipes, which has remained constant since the product's launch. (Declaration of Kim Walior in Support of Costco's Motion to Deny Class Certification, dated February 25, 2015, ¶ 8.)

### A. There Is No Evidence That The Purportedly Common Question—Whether "Flushable" Is Materially Misleading—Can Be Answered By Common Proof.

Class certification should be denied because Plaintiff fails to show that he can *answer by common proof* whether Kirkland Signature Flushable Wipes perform as a reasonable consumer would expect when flushed, either in homes or in municipal systems, on a state-wide or nationwide basis. *See Dukes*, 131 S. Ct.at 2551 (what matters to class certification "is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide

18

proceeding to generate common *answers* apt to drive the resolution of the litigation.").  For the same reasons, Plaintiff is far from meeting Rule 23(b)(3)'s more demanding predominance requirement, which requires that a plaintiff "establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal quotations marks omitted).

Plaintiff's argument that common questions predominate boils down to the assertion that the second element of his Section 349 claim—whether the "flushable" claim is materially misleading to a reasonable consumer acting reasonably under the circumstances—is sufficient to support class certification because that element is determined by an objective standard.  (*See* Kurtz Br. at 22-23.)  But this is not a case about mislabeled ingredients, the accuracy of which can readily be determined by common proof.  "Flushable" is a representation about product performance, so the accuracy of that representation is inherently tied to proof of plumbing problems.  Plaintiff's argument fails because his unique facts cannot support a finding that Kirkland Signature Flushable Wipes failed to perform as expected even for him, and there is no evidence to suggest that the question can be more easily answered on a larger scale.  Without common proof of a causal connection to some class-wide problem caused by flushing Kirkland Signature Flushable Wipes, Plaintiff has no basis to assert that the flushable claim is misleading.

First, Plaintiff has failed to provide any evidence that the Kirkland Signature Flushable Wipes were not "flushable" with respect to his own use of the products.  He has no evidence that Kirkland Signature Flushable Wipes were present at either 409 Quentin Road or his Elberon, New Jersey summer residence prior to experiencing plumbing issues at those residences.  (*See* Kurtz Dep. 91:24-92:13; 91:11-16.)  Nor does Plaintiff have any physical evidence of what

19

caused his plumbing issues. (*See, e.g.*, Declaration of Robert N. Hauck, dated December 18, 2014, ¶¶ 4-5; Kurtz Dep. Ex. J.) In fact, the only evidence that Plaintiff does present strongly suggests that something else—baby wipes or roots growing through his pipes, among other things—was responsible for his plumbing issues. (Kurtz Dep. 74:20-76:3; 109:6-19.)

Moreover, Plaintiff has provided no evidence that any significant number of other consumers experienced any problem flushing Kirkland Signature Flushable Wipes. The record is clear that there have been extremely few plumbing-related complaints regarding Kirkland Signature Flushable Wipes. (Babusik Decl. ¶18                     REDACTED


(Babusik Decl. ¶ 18.)

Faced with evidence that the overwhelming majority of Kirkland Signature Flushable Wipes perform as expected for *consumers*, Plaintiff now concedes that plumbing injury is not common to the proposed class. (*See* Kurtz Br. at 17 (admitting that only "certain class members" experienced plumbing issues).)

Instead, Plaintiff argues that flushable must mean "much more" and that "[e]ven when, by chance, the Flushable Products do escape homeowners' plumbing systems, they enter wastewater systems" and cause damage to those systems. (Kurtz Br. at 8.) Plaintiff's attempt to import municipal issues into consumers' purported expectation of "flushability" does not solve his evidentiary problem for a very simple reason: *there is no evidence that common proof can establish whether Kirkland Signature Flushable Wipes cause municipal clogs at all, much less on a state-wide or nationwide basis*, any more than there is evidence that they cause consumer's clogs. Quite the opposite, the amalgamation of all products flushed, into a wide variety of

disparate municipal plumbing systems, renders proof of the cause of any municipal clogs at least as daunting and individualized as consumer clogs, if not more so.

First, Plaintiff fails to meet his evidentiary burden because the record does not establish that *any* municipalities in New York or New Jersey have experienced any problems that specifically implicate Kirkland Signature Flushable Wipes.  Quite the opposite, the record suggests that it would be practically impossible to prove any such causal connection.  As one wastewater official cautioned "it is VERY difficult to characterize what kinds of wipes, paper towels, and swiffers gets captured on the bar screens coming into the pumping station.  The paper towels were the easiest, but distinguishing between the 'flushable' wipes and those wipes for which the label may say 'do not flush' is difficult at best."  (3-27-15 Sadeghi Decl. Ex. 11 (emphasis in original).)  Real-world studies that INDA and wastewater officials jointly conducted found paper products—such as paper towels—made up over 40% of the material collected at wastewater treatment facilities, and that baby wipes (18%) and feminine hygiene products (14%) were also found in large numbers.  (3-27-15 Sadeghi Decl. Ex. 4; Ex. 5.)

Accordingly, wastewater officials have admitted that "[t]he consensus … is that 'flushable' wipes are a very minor problem (less than 10% if that) while 'non-flushable' items and female hygiene products are the real problem" (3-27-15 Sadeghi Decl. Ex. 7), that "most of this problem goes away if we get baby wipes, as they now constructed, out of our sewers" (3-27-15 Sadeghi Decl. Ex. 8) and that "[m]any of the items that cause problems in the wastewater industry have nothing to do with [flushable wipe] products – in my operation I have seen concrete, toys, animals, car engines."  (3-27-15 Sadeghi Decl. Ex. 10.)

Moreover, even if one could prove that flushable wipes were causally connected to a problem in a municipal system, it would not follow that this was an issue subject to common

proof on a state-wide or nationwide basis.  At a minimum, individualized inquiry at the municipal level would be required to determine if, for example, certain municipal systems process flushable wipes routinely without incident and it is only a few systems for which flushable wipes pose any potential concern.  As a result, even alleged municipal injury, which Plaintiff seeks to import into consumers' expectation of the term "flushable", provides no opportunity for common answers to whether flushable wipes are in fact flushable on a state-wide or nationwide basis.  To establish whether wipes can be safely flushed would devolve into a series of mini-trials at both the consumer and municipal level that would predominate over any common issues.

Of course, it is possible to construct a uniform and objective set of tests to determine what should be labeled as "flushable."  INDA has done exactly that (Babusik Decl. ¶ 8), and is continuing to evolve those standards together with representatives of the wastewater industry, as they collectively work through the enormous complexity of understanding the cause of clogs in wastewater systems.  (*Id.* at ¶¶ 9-11.)  Kirkland Signature Flushable Wipes have at all times met the standards of the INDA Guidelines.  (*Id.* at ¶¶ 15-16.)  At the same time, Costco is at the forefront of efforts to promote "Do Not Flush" logos for products like baby wipes that appear more likely to be contributing factors to municipal clogs.  (*Id.* at ¶ 26.) Those voluntary efforts may be lauded or criticized, and alternative standards can surely be postulated.

But Plaintiff has failed to offer evidence that he could establish through common proof that the Kirkland Signature Flushable Wipes fail to meet a reasonable *consumer*'s existing expectations of performance in real-world circumstances.

### B.      Plaintiff Fails To Present Any Evidence Of Common Injury.

Even if one constructed a definition of "flushable" that Kirkland Signature Flushable Wipes could not meet, Plaintiff fails to establish commonality or predominance because there is

no evidence of any resulting *injury* to consumers, much less a common injury. *See Dukes*, 131 S. Ct. at 2551; *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1255 (2d Cir. 2002) (requiring common injury and noting that the mere allegation of a "common course of conduct […] is not sufficient to establish liability of the defendant to any particular plaintiff.") (citations omitted.). Because individual issues regarding the existence, type, and cause of class members' injuries would overwhelm any issues common to the classes, Rule 23(b)(3) predominance cannot be met. *See*, *e.g., Vaccariello v. XM Satellite Radio*, 295 F.R.D. 62, 68-69 (S.D.N.Y. 2013); *In re Canon Cameras*, 237 F.R.D. 357, 359-60 (S.D.N.Y. 2006).

While Plaintiff half-heartedly suggests counting the entire purchase price as damages—which would require that the product be worthless—that argument is foreclosed by Plaintiff's own testimony and purchase history demonstrating that he did not view Kirkland Signature Flushable Wipes as worthless and that he purchased and used them for reasons other than their flushability long after he stopped flushing them—like many other customers. *See In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 68-69 (S.D.N.Y. 2002) ("[p]laintiffs' contention that everyone who took [a diabetes drug] sustained an ascertainable loss presum[ed] that [the drug] was worthless," was "not a defensible position" because the drug was "enormously beneficial" to many people who "presumably got their money's worth and suffered no economic injury"); *see also Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK (VBKx), 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) ("Restitution based on a full refund would only be appropriate if not a single class member received any benefit from the products.") (citation omitted); (Kurtz Dep.

58:2-24, 67:8-24;                          REDACTED

)[15]

Rather, Plaintiff's theory of common injury is entirely dependent on the argument that all consumers paid a price premium associated with the "flushable" claim (*see* Kurtz Br. at 3, 17, 23), and that they were all injured by that premium even if they purchased Kirkland Signature Flushable Wipes and happily used them for whatever purpose they intended without experiencing any problems.[16]  But in order to certify a class based on this theory, Plaintiff must present evidence that a price premium *in fact* exists and that any such price premium can be linked to a *representation* about flushability, as distinct from any premium reflecting the actual increase in dispersibility observable between baby wipes and flushable wipes.  *See Weiner v. Snapple Bev. Corp.*, No. 07 Civ. 8742 (DLC), 2010 WL 3119452, at *6 (S.D.N.Y Aug. 5, 2010) ("[o]nly by showing that plaintiffs in fact paid more for Snapple beverages *as a result* of Snapple's 'All Natural' labeling can plaintiffs establish the requisite elements of causation and actual injury under § 349").  Plaintiff has presented no such evidence.

Consumers like Plaintiff—who bought Kirkland Signature Flushable Wipes without any intention of flushing them—cannot reasonably be viewed as paying a premium for the "flushable" labeling.  Plaintiff continued to purchase flushable wipes even after being warned by a plumber in 2012—well before the plumbing issues at 409 Quentin Road—not to flush anything

---

[15] This case is therefore distinguishable from *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.* because, unlike here, the defendant in that case received over 1.3 million complaints in a three-year time period and the plaintiff provided extensive evidence that a design flaw in defendant's washing machine "provided the ideal environment for bacteria and mold to flourish" and that "no matter what consumers did or did not do, the mold problem persisted." 678 F.3d 409, 420 (6th Cir. 2012).

[16] Tellingly, at his deposition, Dr. Kurtz did not espouse this strained theory of injury and instead made clear that he viewed his claims as limited to consumers who experienced a plumbing problem.  (Kurtz Dep. 154:17-22; 164:13-16.)

other than toilet paper and human waste down the toilet.  (Kurtz Dep. 66:17-67:24.)  And, like many customers, Plaintiff bought flushable wipes without intending to flush them, using the wipes for a variety of reasons such as "in the car, to clean up messes, [and] to clean the children." (*Id*. at 58:9-24.)  That Dr. Kurtz continued to purchase Kirkland Signature Flushable Wipes despite concerns about plumbing issues severs the causal link between Plaintiff's purchasing decisions and the "flushability" representation.  That similar inquiries would be required for every class member underscores Plaintiff's inability to satisfy either the commonality or the predominance requirement.  *See Weiner*, 2010 WL 3119452 at *11 ("[i]ndividualized inquiries" would have been necessary to determine "whether [class members] continued to purchase Snapple despite their beliefs concerning [the alleged misrepresentations]."); *McLaughlin v. Am. Tobacco Co.*, 522. F.3d 215, 228 (2d Cir. 2008) (losses could not "be shown by common evidence" and required an "inherently individual inquiry" where purported class members "would have incurred different losses depending on what they would have opted to do, but for defendants' misrepresentation"), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

Moreover, Plaintiff's theory that Kirkland Signature Flushable Wipes are sold at a price premium fails because *Plaintiff offers no evidence that a price premium exists for Kirkland Signature Flushable Wipes.*  Plaintiff makes a brash assertion that "First- and third-party discovery in this action confirms that the Flushable Products are priced and sold at a substantial premium to moist wipes not labeled or sold as flushable."  (Kurtz Br. at 6.)  But the *only* "evidence" cited in support of this statement is a declaration of Plaintiff's attorney filed *before*

*discovery began* (*see id.*), and discovery has since proven that declaration to be wrong.[17]

Plaintiff's inability to find *any* support for his price premium theory speaks volumes.

In fact, there is no discernible "flushability" premium for Kirkland Signature Flushable

Wipes.  As set forth in detail in Costco's motion to deny class certification, the prices per wipe

for Kirkland Signature Flushable Wipes and Kirkland Baby Wipes differ by only $0.003, and

that difference is fully explained by the volume discount associated with the larger package size

of Kirkland Baby Wipes (100 wipes per pack and 900 per carton for Kirkland Baby Wipes, as

opposed to 60 wipes per pack and 600 per carton for Kirkland Signature Flushable Wipes).

(Martin Report ¶ 35.))

Not surprisingly, the report submitted by Mr. Weir fails to provide any evidence of a

flushability premium for Kirkland Signature Flushable Wipes for numerous reasons, including:

(i) Mr. Weir does not actually conduct any analysis or even attempt to determine whether a price

premium actually exists for a "flushable" claim; (ii) the "hedonic regression" model he proposes

to run would fail to isolate the extent of the alleged misrepresentation, as distinct from other

correlated attributes, and therefore simply measures the wrong thing; and (iii) hedonic regression

as a statistical tool is fundamentally ill-suited to analyzing price impact in situations like this one,

challenging to the entire category of flushable wipes.  (Expert Rebuttal Report of Denise N.

Martin, Ph.D., dated March 27, 2015 ("Martin Rebuttal Rep.") ¶¶ 5-9, filed as 3-27-15 Sadeghi

---

[17] The pre-discovery declaration simply reflects that Plaintiff's attorney went online to
Costco.com and Amazon.com and selectively chose single prices to suggest that Kirkland
Signature Flushable Wipes are sold at a 50% premium to Kirkland Baby Wipes.  (*See*
Declaration of Mark S. Reich in Support of Plaintiff's Opposition to Defendants' Motions to
Dismiss, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. July 1, 2014), ECF No. 31, ¶ 2.)  All
Costco.com and Amazon.com data for these products was produced in discovery, and the Martin
Report sets forth a comprehensive analysis showing that there is only a very minor price
discrepancy between the two products, fully explained by the volume discount associated with
their different package sizes.  (*See* Martin Report ¶¶ 32-35.)

Decl. Ex. 1.)  Mr. Weir's failure to even attempt an analysis of price premium and his vague description of a regression model that he concedes may not generate any reliable results, renders his method "so insubstantial as to amount to no method at all."  (Kurtz Br. at 29 (quoting *Leider v. Ralfe*, No. 01 Civ. 3137(HB)(FM), 2004 WL 1773330, at *13 (S.D.N.Y. July 30, 2004) (acknowledging a minimum threshold that Mr. Weir's report fails to meet) (citation omitted).)

*First*, Mr. Weir's report does not purport to offer evidence of a price premium. Mr. Weir simply notes the existence of hedonic regression as a statistical tool, positing that it *could* be used to inquire into whether a price premium exists and, *if so*, potentially measure it.  He hypothesizes that he could run a hedonic regression model controlling for attributes including the "'flushable' claim" and four other attributes.  (Weir Decl. ¶ 38-39.)  But Mr. Weir acknowledges that this list is "preliminary" and would require an "iterative" process of actually running the model to determine what attributes to use. (*Id.* at ¶ 40.)

Tellingly, Mr. Weir admits that he does not know whether there is any "flushability" premium and acknowledges that it may not exist at all:

> Sometimes a variable may seem relevant theoretically, but may later be discovered to not be proper for inclusion in the model, and vice versa.  *Some product attributes that I have suggested for inclusion in the model* [*a list that includes the "'flushability claim'"*] … *may turn out to not drive the price of the Product.*"

(*Id.*) (emphasis and bracketed comment added).)  That admission alone renders Mr. Weir's report irrelevant for purposes of proving whether any price premium *in fact* exists, the burden Plaintiff must carry to demonstrate a common injury under *Dukes*.  131 S. Ct. 2551.

Indeed, it is not even clear that Mr. Weir would be able to run the model to generate any statistically sound result capable of confirming or denying the existence of a price premium. "Without generating and testing such a model, he can offer no assurances that it will be statistically sound, and in this context there are many reasons to expect that it will not be."

27

ny-1179925

(Martin Rebuttal Rep. ¶ 36.)  For example, Mr. Weir speculates that the available data is sufficient, but that is based on data that he claims "is, or will become available as the litigation progresses."  (Weir Decl. ¶ 48.)  It is unclear how he could reasonably reach this conclusion before determining what attributes he must include in the model, to know whether those attributes are reflected in the available data.  He also does not take a position on how he will account for the data that has been made available in this litigation, which do not track the same information but rather vary by geography (national vs. state-specific), scope (retailer averages vs. individual transactions), and timing (individual transactions vs. weekly transactions vs. monthly transactions vs. quarterly transactions vs. annual transactions).  (*See* Martin Rebuttal Rep. ¶ 38.) Mr. Weir also fails to address the many product attributes that consumers care about, but that are not reflected in sales data that he proposes to use for his model.  For example, no data on attributes such as cleaning ability, softness, texture, moistness, and drying ability—all of which consumers have indicated are important to them—are present in data to which Mr. Weir refers. (*Id*. at ¶ 46.)  It is not clear how Mr. Weir could capture or quantify these attributes for use in a model, particularly for products that have changed over time.  (*Id.* at ¶ 45.)

The "hedonic" model that Mr. Weir proposes can only generate statistically reliable results if all of the relevant product attributes can be objectively measured and quantified. (Martin Rebuttal Rep. ¶¶ 48-49.)  But a hedonic model cannot quantify or properly account for inherently subjective product attributes such as "softness."  A hedonic model that fails to account for all relevant attributes is "subject to a statistical failure known as 'omitted variable bias" and cannot generate truly reliable results.  (*Id*. at ¶ 6(c).)

***Second***, Mr. Weir's proposed regression theory offers no way to isolate and measure the alleged misrepresentation—a purported *overstatement* of "flushable" performance—as distinct

from the actual flushable performance and the other attributes that are unique to flushable wipes as compared to baby wipes or other non-flushable wipes.  "Rather than solely capturing any price effect associated with the alleged overstatement of performance, Mr. Weir's proposed model will also capture the price impact associated with the improvement in dispersibility for MTT products that purchasers did receive relative to non-flushable wipes."  (Martin Rebuttal Rep. ¶ 6(a).)  The price impact of other excluded attributes will also "be erroneously attributed to the presence of the flushable claim on the label."  (*Id.* ¶ 6(c).)  This violates the requirement that a "model purporting to serve as evidence of damages in this class action *must measure only those damages attributable to that theory*.  If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (emphasis added).

Binary "flushable" or "not flushable" analysis fails to capture observable differences in dispersibility between Kirkland Signature Flushable Wipes and, for example, baby wipes.  Plaintiff's own experience demonstrates that the real-world difference in flushability performance is substantial.  He flushed flushable wipes for *ten years* without incident before moving to his current home, where he flushed baby wipes and promptly experienced a clog within one to two weeks.  (Kurtz Dep. 133:11-25; 36:7-15.)  The tiny fraction of Kirkland Signature Flushable Wipes purchasers to ever have complained about flushability performance (Babusik Decl. ¶ 18) further confirms that the performance benefits of Kirkland Signature Flushable Wipes are real and cannot be ignored.  Because Mr. Weir proposes to measure the price impact of the "flushable" claim but cannot disentangle that claim from the benefit of improved "performance of the product in terms of flushability" that consumers actually receive,

29

his estimate of the price impact from the alleged misrepresentation "would necessarily be overstated." (Martin Rebuttal Rep. ¶ 39.)

Moreover, other physical characteristics, such as moisture-absorption and the overall hand-feel (or drape) of the product—also differ between flushable wipes and other wipes as a result of the different technology used to make them. (Hurley Dep. 56:12-16; 58:12-61:16). "[T]his inextricable coupling between the word 'flushable' and the physical characteristics of MTT . . . means that no regression equation can be used to parse out the portion of a price impact, if any, attributable to the 'flushable claim.'" (Martin Rebuttal Rep. ¶ 60.) "[A] methodology that identifies damages *that are not the result of the wrong*" is an impermissible basis for calculating class-wide damages. *Comcast Corp.*, 133 S. Ct. at 1434 (emphasis added).

This inextricable coupling problem is particularly acute for Costco's products, because Costco only sells one Kirkland Signature Flushable Wipe and one Kirkland Signature Baby wipe product, each sold in only one packaging configuration that differ from each other in package size. As Dr. Martin explains, because these products each exist in only one configuration, and because the disparity in price-per-wipe falls within the range observed for volume discounts in the broader market, "it is not possible using an hedonic model to distinguish the price impact of flushability from the impact of the smaller wipe count size." (Martin Rebuttal Rep. ¶ 61.)

*Third*, Mr. Weir's proposal to rely on hedonic regression is inappropriate in this case because Plaintiff is challenging the viability of the entire product category of flushable wipes. Hedonic regression assumes that changing the feature being analyzed—the "flushable" claim—would have no impact on the broader market supply/demand equilibrium that established the prices in the first place. (Martin Rebuttal Rep. ¶ 25(c).) In other words, in this case one would have to assume that removing the "flushable" claim would not materially alter the broader

market and Costco would choose to continue to sell the product, just without the "flushable" claim and without any theoretical premium.  (*See id*. at ¶ 62-64.)  But this cannot be assumed here because Plaintiff is challenging the entire flushable wipe category of products.  In a "but-for" world with no wipes on the market labeled as "flushable," it is possible that "some manufacturers may have elected not to enter the market," impacting the overall market supply and demand, potentially reducing competition and thus increasing the price for remaining moist toilet tissue products.  Hedonic regression models cannot be used to estimate price impact of changes that impact the broader market in this way.  (*See id.* at ¶64)

In short, all Mr. Weir offers is the self-evident statement that there exists a concept called hedonic regression, which may or may not prove capable of reliably measuring the price impact of a "flushability" claim and, *if* it can come up with a statistically significant finding at all, may conclude that the "flushability" claim has no impact on price whatsoever.  On that basis, Plaintiff's suggestion of a price premium as common injury is rank speculation, and fails to meet his burden of showing that the question of common injury can "*in fact*" be shown by generalized proof.  *Dukes*, 131 S. Ct. at 2551 (emphasis in original).

Even if Plaintiff could prove an undeserved price premium for Kirkland Signature Flushable Wipes—which he has failed to identify any means of doing—Plaintiff would still be unable to satisfy the predominance requirement.  For any consumer who alleges plumbing injury, that injury clearly predominates over any price premium they may have paid.  As Dr. Martin explained, the difference in price-per-wipe between Kirkland Signature Flushable Wipes and Kirkland Signature Baby Wipes is $0.003—less than $2 per container—and fully explainable by volume discounting.  (Martin Report ¶ call33.)  But even if that disparity was fully attributed to the "flushable" claim, it would pale in comparison to the $200 to $300 dollars in damages per

plumbing incident that Plaintiff asserts. (*See* Kurtz Dep. 47:21-48:19; 110:6-22.) Indeed, Plaintiff made clear that, for him, the plumbing injury was effectively the only thing that mattered. He knew that he could have returned Kirkland Signature Flushable Wipes to recover his entire purchase price with no questions asked, but did not notify Costco at all because he thought that Costco would not address the predominant injury in his mind: his plumbing costs. (Kurtz Dep. 105:6-17; 106:25-107:12.)

The same will hold true throughout the purported class: for anyone alleging that flushable wipes did not perform as expected *for them*, individualized plumbing damages are likely to vastly exceed any alleged price premium. If there were any significant number of consumer plumbing problems, they would quickly overwhelm the common issues in this litigation with highly fact-intensive inquiries, as proved necessary with Dr. Kurtz, and the case would devolve into a series of "minitrials." *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 513 (S.D.N.Y. 2011) (denying certification where individual injuries would require mini-trials). This puts Plaintiff in the paradoxical situation that ***the only way common injury will predominate is if individual plumbing problems are very rare***, which would cast serious doubt on whether the "flushable" claim is misleading in the first place. A class representative will therefore focus throughout the litigation on proving some common form of injury other than plumbing injury, as Plaintiff seeks to do in his brief, at odds with any class members who actually allege that they experienced a problem with flushable wipes, for whom the primary concern would be proving the cause of their individual injury.

Because injury is a required element for each of Plaintiff's six causes of action, because Plaintiff has offered no evidence that the only purported common injury in fact exists, and because the fact-intensive inquiry into individualized plumbing problems would predominate

ny-1179925

over any common injury if flushable wipes actually failed to perform for a significant number of consumers—which they don't—none of the claims are appropriate for class-wide adjudication.[18]

### C.   Courts Routinely Deny Class Certification In Cases Like This One, Where A Product's Ability To Perform As Advertised Depends In Part On Individualized Circumstances.

This case is quite different from cases where a plaintiff claims that defendant misrepresented the ingredients of a product (*e.g. Ebin v. Kangadis Food, Inc.*, *see* pp. 36-37, *infra*), such that every plaintiff will have been deprived of the benefit of the bargain.  Rather, this case falls into a well-established body of cases addressing individual plaintiffs' claims that a product did not *perform* as advertised *for them*, and then seeking to generalize their experience to a broader population.

Class certification is not appropriate where, as here, Plaintiff cannot demonstrate on a class-wide basis—or even individually—whether any particular product labeled as flushable performed as advertised.  The putative class of "all purchasers" necessarily includes consumers for whom the product *did* perform as advertised.  This case is therefore analogous to *In re Canon Cameras Litig.*, where Judge Rakoff determined that  "proof of malfunction is a prerequisite to any of plaintiffs' claims" under GBL 349. The plaintiff there asserted that a defect in a digital camera was purportedly common to all such cameras, but "[did] not show[] that more than a tiny fraction of the cameras at issue malfunctioned *for any reason*" and therefore Judge Rakoff

---

[18] Each of Plaintiff's common law claims is also deficient as a matter of law and therefore cannot sustain a class action.  Plaintiff's breach of express warranty claim fails because he did not provide the required notice of a breach to Costco; his negligent misrepresentation claim is barred by the economic loss doctrine; his unjust enrichment claim fails because it is duplicative of his contract claim; and his claim under the New Jersey Consumer Fraud Act fails to meet the particularity requirements of Fed. R. Civ. P. 9(b).  Mem. of Law in Supp. of Def. Costco Wholesale Corp.'s Mot. to Dismiss Counts I, II, V, and VI and Certain Class Allegation of the Compl., No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. May 5, 2014), ECF No. 21) ("Costco MTD").

determined that the purported class "likely consists in overwhelming measure of owners of cameras that did not malfunction at all." 237 F.R.D. at 359-60. Accordingly, Judge Rakoff denied class certification. *Id*. at 360.

Similarly, in *Solomon v. Bell Atl. Corp.*, the First Department overturned certification of a class alleging Section 349 claims based on defendant's allegedly false advertising concerning the speed of internet service. The court noted that "that DSL speed is dependent on a number of factors, including the subscriber's own computer and network elements that are unrelated to the service itself, such as the server on which the Web site sought to be accessed resides." 9 A.D.3d 49, 54, 777 N.Y.S.2d 50, 56 (1st Dep't 2004). Accordingly, "individual trials would be required to determine which plaintiffs experienced either slower than advertised Internet download speeds or connectivity outages and the nature, cause and extent of those adverse experiences." *Id. See also Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 81 (S.D.N.Y. 2006) ("Here, as in *Solomon*, proof of injury and damages would require individual trials as to which class members received slower than advertised speeds and why"); *Hazelhurst v. Brita Prods. Co.*, 295 A.D.2d 240, 242-43, 744 N.Y.S.2d 31, 33-34 (1st Dep't 2002) (noting that "[w]hile General Business Law § 349 does not require reliance, it does require an injury" and denying class certification because "[t]o determine if a particular class member was injured, it will be necessary to determine whether the class member received" water filters that performed as advertised).

Further, Plaintiff cannot establish by common proof what class members would do if adult wipes were not labeled as flushable. *McLaughlin* is therefore directly on point. The claim in *McLaughlin* that there was a price premium for "light" cigarettes could not "be shown by common evidence," and the case thus required an "inherently individual inquiry" because class members "would have incurred different losses depending on what they would have opted to do,

but for defendants' misrepresentation."  22 F.3d at 228 (noting that consumers who would simply have switched from light cigarettes to full flavor "would have suffered no injury because Lights have always been priced the same as full-flavored cigarettes.")  Here too, it would require individualized inquiry to know whether any given consumer would continue purchasing flushable wipes (as Dr. Kurtz did), switch to a cheaper brand of baby wipes (if they could find one), or stop using moist wipes altogether.

Finally, Plaintiff has failed to demonstrate that there are any other consumers of Kirkland Signature Flushable Wipes who suffered an injury of the type that Plaintiff claims to have suffered.   In *Pelman v. McDonald's Corp.*, plaintiff attempted to link McDonald's food to childhood obesity.  While McDonald's food and representations are impressively uniform nationwide, the court declined to certify a class because plaintiff had "not presented the court with any specific evidence that there are any other persons" in the proposed class who ate at McDonald's "and subsequently developed the same medical conditions as Plaintiffs," and "the presence of such causal connection [to the alleged injury], if any, depends heavily on a range of factors unique to each individual."  272 F.R.D. 82, 93, 99-100 (S.D.N.Y. 2010).

## 1.   None of the Authority Relied Upon By Plaintiff Absolves Him Of The Requirement To Establish Common Injury At The Class Certification Stage.

In defense of his failure to establish common injury, Plaintiff relies on a series of cases holding that a plaintiff need not be able to calculate damages with precision at the class certification stage.  (*See* Kurtz Br. at 23-24, 29-31.)  But those cases only excuse calculation of damages after injury has been established, and do not undercut Plaintiff's obligation to *prove* that a common injury does *in fact* exist.

Plaintiff relies most heavily on *In re Scotts EZ Seed Litig.*, where the Court held that an expert was are not required to perform his full damages analysis at the certification stage.  No. 12

CV 4727(VB), 2015 WL 670162, at *13 (S.D.N.Y. Jan. 26, 2015). (*See* Kurtz Br., *passim*.)  But in *In re Scotts EZ Seed* the Court made clear that the full damages analysis was not necessary because "Weir has provided enough evidence-at this stage-to satisfy the Court that a price premium associated with the 50% thicker claim exists."  2015 WL 670162, at *13.  That evidence included defendants' "internal documents suggesting the existence of a premium based on the 50% thicker claim" as well as the named plaintiff's testimony that "they would not have bought EZ Seed in the absence of the 50% thicker claim."  *Id.*  Because there was independent evidence of the existence of a common injury, the Court allowed the case to proceed.

The same was true in *Ebin v. Kangadis Food, Inc.*, where the court certified a class of those who purchased pomace oil mislabeled as 100% Pure Olive Oil.  No. 13 Civ. 2311(JSR), 2014 WL 737878, at *3 (S.D.N.Y. Feb. 25, 2014).  The court noted that plaintiff had met its burden only "when the existence of damage is known but its extent is opaque," and found that "plaintiffs have provided evidence sufficient to meet" this burden, in the form of "admissible raw data" demonstrating the relative prices of virgin olive oil and pomace oil.  *Id.* at *2.  Calculating the "definitive figures as to the average price" could wait.  *Id.*

In the course of granting class certification, the *Ebin* court again noted its finding that plaintiffs had "paid too much," in order to distinguish a case that is much more like the case presently before this Court.  *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014).  Judge Rakoff was distinguishing the New Jersey Supreme Court's decision in *Int'l Union Operating Eng'g Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 929 A.2d 1076 (2007), where class certification was denied on the basis that individual reactions to drug advertising predominated over questions concerning defendants' conduct.  *Ebin*, 297 F.R.D. at 568-69 (noting that in the case of medicine, "individual injury varies far more significantly than

the injury incurred from buying an overpriced product alleging to be olive oil").  Here, the situation is much more akin to the drugs, as there is no clear failure of performance or price premium, and individual plumbing injuries, if any, will vary substantially.

Plaintiff similarly relies on *Leider*, for the proposition that he is not required to set forth his final damages model at this preliminary stage.  (Kurtz Br. at 29.)  In *Leider*, however, injury in the form of price inflation was *admitted*.  After foreign defendant De Beers defaulted in responding to the complaint, the Magistrate recommended certifying a class of "persons who (through its default) De Beers has admitted were duped into buying diamonds and diamond jewelry at inflated prices in New York State."  *Leider*, 2004 WL 1773330, at * 12.  Needless to say, there is no such admission here.  Notably, the court still declined to certify a class under Rule 23(b)(2), because plaintiff was not at risk of future injury.  *Id.* at *11-12.

Further, the claims in *Guido v. L'Oreal, USA, Inc.* are distinguishable because in that case, "each named plaintiff testified that she would not have purchased [the product] or would have paid less for [it] had she known it had flammable characteristics."  284 F.R.D. 468, 479 (C.D. Cal. 2012).  Here, of course, Plaintiff purchased and used Kirkland Signature Flushable Wipes long after he stopped flushing them because he used the product for other purposes. (Kurtz Dep. 66:17-67:24; 39:8-16; 58:2-24.)  Moreover, the *Guido* court later denied certification of a class based on a price premium theory because, as here, the plaintiff in that case failed to satisfy her evidentiary burden.  *See Guido v. L'Oreal U.S.A., Inc.*, No. CV 11-1067 CAS (JCx), 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013)(on a renewed motion for class certification, finding that there was no evidence that "the false advertising at issue had a

measurable impact on the market price").[19]  Because there is no evidence of a "flushability" price premium for Kirkland Signature Flushable Wipes, Plaintiff has failed to satisfy his burden.

Finally, Plaintiff's reliance on *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009) (addressing Best Buy's universal offer of a "price match guarantee") is misguided because there, the proposed class definition was narrowly tailored *not* to include all purchasers, but rather *only* those Best Buy customers who were actually injured by attempting to take advantage of the guarantee and being denied when Best Buy failed to honor it.[20]  (*See* Kurtz Br. at 23-24, 37.)

### D.   Statutory Damages Under G.B.L. § 349 Do Not Absolve Plaintiff Of The Need To Establish Common Injury.

Plaintiff also asserts that "individualized issues with respect to injury and damages" will not predominate in light of the availability of statutory damages for violations of GBL § 349. (*See* Kurtz Br. at 24 (relying on *Sykes*, 2015 WL 525904.)  But the potential for statutory damages does not absolve Plaintiff of his threshold obligation to establish injury, which is a statutory prerequisite to bringing the claim:  "The existence of a minimum amount of statutory damages does not assist the Plaintiffs in overcoming the hurdle of affirmatively demonstrating commonality, because, as explained above, the Plaintiffs need to first show that the class members have been injured or harmed in the same way."  *Pagan*, 287 F.R.D. at 149 (*citing Himber v. Intuit, Inc.*, No. 10-CV-2511 (JFB)(AKT), 2012 WL 4442796, at *9 (E.D.N.Y. Sept.

---

[19] In *Guido*, the Central District of California certified a class under GBL § 349 based on statutory damages, apparently without considering the need to still conduct individualized damages inquiry to determine whether each plaintiff would receive "actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. Law § 349 (McKinney 1963).  Plaintiff cites no New York or Second Circuit authority adopting similar interpretation of GBL § 349.

[20] The proposed class in *Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 212 n.4, 895 N.Y.S.2d 580, 584 n.4 (3d Dep't 2010) was similarly limited to only those customers who were actually injured when they received an allegedly deceptive optional billing statement "and were billed" pursuant to that statement.  The representation alone was not sufficient to establish injury.

25, 2012) ("the lack of a non-speculative, non-hypothetical injury in this case is not cured by the existence of statutory damages under [GBL §§ 349 and 350]")); *see also* N.Y. Gen. Bus. Law § 349(h) (McKinney 1963) ("any person *who has been injured* by reason of any violation of this section may bring an action . . . to recover his actual damages or fifty dollars") (emphasis added).

### E.   Individualized Inquiries Also Preclude Certification Of Plaintiff's Common Law Claims.

#### 1.   Whether Class Members Provided Notice of a Breach Precludes Certification on Plaintiff's Breach of Express Warranty Claim.

Both New York and New Jersey have adopted the Uniform Commercial Code, which requires that, in order to bring a breach of express warranty claim in connection with the sale of goods, "[i]f a tender has been accepted: the buyer must within a reasonable time after [he] discovers or should have discovered any breach notify the seller of breach *or be barred from any remedy.*" N.Y. U.C.C. § 2-607(3)(a) (emphasis added); N.J.S.A. 12A:2-607(3)(a) (same). Here, there is no dispute that Plaintiff failed to notify Costco after experiencing plumbing issues at 409 Quentin Road and the Elberon rental property. (Kurtz Dep. 93:14-20.) Determining whether any other putative class members failed to provide notice can only be done on a cases-by-case basis, rendering certification of Plaintiff's breach of express warranty claims unmanageable.

#### 2.   Whether Putative Class Members Got the "Benefit of the Bargain" is an Inherently Individualized Inquiry.

Each putative class member's—and Plaintiff's—breach of express warranty and unjust enrichment claims hinge on whether they received the benefit of the bargain when they purchased Kirkland Signature Flushable Wipes. *See Weiner*, 2010 WL 3119452, at *10-11 (unjust enrichment claim requires that "plaintiffs must show that the benefits that members of the plaintiffs' class received were less than what they bargained for" and New York uses a "'basis of the bargain' conception of reliance for express warranty claims") (internal citations and

quotations omitted).  Here, consumers got the benefit of the bargain if they purchased Kirkland Signature Flushable Wipes and the product cleared their household and drain line as expected, and did not cause any issues with the consumer's residential plumbing systems.  Consumers also got the benefit of the bargain if they purchased Kirkland Signature Flushable Wipes for reasons unrelated to the "flushability" representation, and the product met the consumer's expectations.  Because the evidence indicates that the vast majority of consumers fall into one of these two categories, class certification of Plaintiff's unjust enrichment and breach of express warranty claims must be denied.  *See id.* at *11 (finding that individual inquiries predominate on negligent misrepresentation claims because "[t]he record in this case, including plaintiffs' own testimony, shows that consumers may have purchased Snapple beverages for many reasons other than the 'All Natural' label"); *In re Canon Cameras*, 237 F.R.D. at 360 (denying class certification on unjust enrichment claim because "[a] plaintiff who purchases a digital camera that never malfunctions over its ordinary period of use cannot be said to have received less than what he bargained for when he made the purchase).[21]

## II.    A CLASS ACTION IS NOT SUPERIOR.

None of Plaintiff's claims can satisfy Rule 23(b)(3)'s superiority requirement.  Where, as here, individual issues predominate over common issues, s*ee* Section I, *supra*, it is axiomatic that a class action is not a superior method of resolving the dispute.  *See Johnson v. Nextel Commc'ns Inc.*, No. 14-454, 2015 WL 897653, at *15 (2d Cir. Mar. 4, 2015).

---

[21] Plaintiff's unjust enrichment claim also fails as a matter of law because it is duplicative of his breach of express warranty claim.  *See Statler v. Dell, Inc.,* 775 F. Supp. 2d 474, 485 (E.D.N.Y. 2011) (dismissing unjust enrichment claim in part because plaintiff's breach of contract claim was premised on breach of "specific warranty obligations"); *see also* Costco MTD at 8-9.

Further, a class action is not superior in light of Costco's refund policy.  (Costco Br. at 48-49.)  Under Costco's well-publicized refund policy, members can obtain a full refund of Kirkland Signature Flushable Wipes, no questions asked.  In addition, Nice-Pak's policy is to compensate Costco members for their reasonable plumbing expenses on the rare occasions that come up, as long as the customer provides a receipt for their expenses and signs a release.  Thus, Plaintiff's assertion that no one will be compensated for the damage allegedly caused by flushable wipes absent certification of a class is simply not true.  (Kurtz Br. at 32-33.)  Refund policies like Costco's, which are expedient and trouble-free, are vastly superior to a class action, which will likely drag on for months, if not years.  *See Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 (ADS)(WDW), 2012 WL 764199, at *27 (E.D.N.Y. Mar. 5, 2012).

## III.  PLAINTIFF CANNOT ESTABLISH NUMEROSITY, TYPICALITY, OR ADEQUACY.

### A.  Plaintiff Has Failed to Meet His Burden to Establish Numerosity.

Because Plaintiff "bears the burden of demonstrating numerosity, he must show some evidence of or reasonably estimate the number of class members."  *Pagan*, 287 F.R.D. at 145 (citation and internal quotation marks quotations omitted).  Plaintiff has not met his burden.  Instead, he contends that numerosity is "self-evident," citing the number of units of Kirkland Signature Flushable Wipes sold between 2011 and 2014.  (Kurtz Br. at 15.)  Just because a Costco member purchased a unit of Kirkland Signature Flushable Wipes, however, does not mean that the customer has been injured, for the reasons discussed above.  *See supra* Section I.B.  Stripped of the argument that all purchasers of Kirkland Signature Flushable Wipes have been injured, Plaintiff has no basis to satisfy the numerosity requirement.  (*See* Costco Br. at 41-44.)

41

**B.      Plaintiff's Claims Are Not Typical.**

Plaintiff argues that his claims are typical because he purchased a product labeled as "flushable." (Kurtz Br. at 17.) But Plaintiff fails to address a critical component the typicality analysis: "Typicality requires that the claims *or defenses* of the class representatives be typical of the claims or defenses of the class members." *Brown v. Kelly*, 609 F.3d at 475 (emphasis added). Class certification is not appropriate where a putative class representative is subject to unique defenses because, in such situations, there is a risk "that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir. 1990); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

The record demonstrates that Plaintiff is vulnerable to numerous unique defenses, several of which would likely become the focus of a trial. For example, Plaintiff was expressly told by a plumber not to flush any wipes before he *ever* purchased Kirkland Signature Flushable Wipes, but nevertheless proceeded to purchase and flush both flushable and non-flushable wipes. (Kurtz Dep. 67:8-24.) Plaintiff also flushed non-flushable baby wipes immediately preceding his plumbing issues at 409 Quentin Road in February 2013. (*Id.* at 109:6-19.) And he continued purchasing Kirkland Signature Flushable Wipes long after his alleged plumbing problems, including for months after filing this case. (Kurtz Dep. Ex. N.; Kurtz Dep. 57:10-58:24.) These examples are just a snapshot of all the problems that Plaintiff poses to a class-wide proceeding. (*See* Costco Br. at 44-46.) Accordingly, Plaintiff cannot meet Rule 23(a)'s typicality requirement. (*See id.* (citing *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11 Civ. 6546 (JPO), 2013 WL 93636, at *9 (S.D.N.Y. Jan. 9, 2013); *Newman*, 238 F.R.D. at 64).)

**C.       Plaintiff Is Not An Adequate Class Representative.**

"Adequacy of representation is evaluated in two ways:  by looking to the qualifications of

plaintiffs' counsel and by examining the interests of the named plaintiffs."  *Charron v. Pinnacle*

*Grp. N.Y. LLC*, 269 F.R.D. 221, 234 (S.D.N.Y. 2010) (citing *Baffa*, 222 F.3d at 60).  Here, class

certification should be denied because Plaintiff has demonstrated that he is not capable of

adequately representing a class.  (*See* Costco Br. 46-48.)

Plaintiff has submitted inaccurate sworn statements on more than one occasion.  In

opposition to Defendants' motion to dismiss, Plaintiff submitted a declaration reiterating the

allegations in his Complaint and asserting that he purchased Kirkland Signature Flushable Wipes

every three months "[b]eginning in or around early February 2013," and "[i]n the summer of

2013, I incurred a total of approximately $200-$300 in costs to repair" the Brooklyn home and

"$250 in costs to repair" plumbing systems at the Elberon residence.  (*See* Declaration of D.

Joseph Kurtz in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, No. 14-cv-

1142 (JBW)(RML) (E.D.N.Y. June 30, 2014), ECF No. 32 at ¶¶ 5, 10, 11.)  At his deposition,

however, Plaintiff testified that the Brooklyn clog about which he is suing was two separate

clogs, that they occurred immediately after his move in February 2013, not after months of

flushing both of Defendants' wipes, and that they were immediately preceded by flushing baby

wipes.  (Kurtz Dep. 17:3-22; 109:6-19).  Incredibly, Plaintiff relies on this declaration—which

he admitted to be inaccurate—in his motion for class certification.  (*Compare* Kurtz Br. at 12-13

*with* Kurtz Dep. 48:6-12.)  Thus, Plaintiff's attempt to argue that he is an adequate class

representative based on the fact that he "reviewed the complaint in full" and that he "reviewed

and verified detailed responses to interrogatories" falls flat.  (*See* Kurtz Br. at 18.)  Both the

Complaint and Plaintiff's interrogatory responses contained inaccurate statements concerning

when the plumbing problems occurred, Plaintiff's purchasing habits, and what he was flushing

43

down his toilet.  That Plaintiff continues to make the same inaccurate statements in his motion

for class certification, after conceding they were false at his deposition, makes him an inadequate

class representative. *See Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010) ("the

Court has serious concerns relating to [putative class representative's] … constantly changing

interpretation of the contract and his abjuration of the very allegations of his Complaint.")

Moreover, the facts omitted from Plaintiff's complaint and opening brief, including that

he continued to purchase Kirkland Signature Flushable Wipes long after he stopped flushing

them, and even after filing this case, are themselves grounds to find him an inadequate class

representative.  *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990) (denying certification and finding plaintiff inadequate

based on "continued purchases of CDs through [defendant] despite having notice of, and having

investigated, the alleged fraud").

Similarly unavailing are Plaintiff's statements about "the search he performed for

documents responsive to defendants' requests." (Kurtz Br. at 19.)  The record is clear that

Plaintiff failed to preserve records of his numerous purchases of flushable wipes, even after the

filing of the Complaint, and that in October 2014, he modified the plumbing at 409 Quentin

Road without documenting the condition of the plumbing as it existed when he experienced his

alleged plumbing problems.  (Kurtz Dep. 84:12-14; 96:21-97:2; 156:18-22; 71:11-73:8.)

## IV.    THE PROPOSED CLASS IS NOT ASCERTAINABLE.

Plaintiff presumes that the class is ascertainable merely because Costco tracks its

members' sales.  (Kurtz Br. at 35.)  But this argument is based entirely on Plaintiff's flawed

theory that every consumer who purchased Kirkland Signature Flushable Wipes has been

damaged, even if they are satisfied with the product.  His proposed classes of "all purchasers" of

Kirkland Signature Flushable Wipes are therefore overbroad because they include an

ny-1179925

overwhelming number of consumers who have not been injured.  *See supra* Section I.A.

Regardless, Plaintiff has put forth no "reliable and administratively feasible mechanism" of

ascertaining which consumers, if any, suffered an injury.  *See Hayes v. Wal-Mart Stores, Inc.*,

725 F.3d 349, 355 (3d Cir. 2013) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94

(3d Cir. 2012)).  Because Plaintiff has not met his burden to establish that the putative class is

"readily identifiable, such that the court can determine who is in the class and, thus, bound by the

ruling," class certification should be denied.  *Charron*, 269 F.R.D. at 229 (quoting *McBean v.

City of N.Y.,* 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009)).

## V.     PLAINTIFF'S CLAIMS DO NOT SUPPORT A NATIONWIDE CLASS.

In addition, Plaintiff's proposed nationwide class is not superior in light of differences

between the state laws for Plaintiff's various claims.  Plaintiff misconstrues the law to argue that

"[u]nless Defendants present a conflict or material difference between the consumer fraud

statutes . . . , Plaintiff is not precluded from bringing claims on behalf of a nationwide class for

violations of the New York statutes."  (Kurtz Br. at 24-25 n.20.)  On the contrary, "[P]laintiff[]

b[ears] the burden of providing an extensive analysis of state law variations to determine whether

there are insuperable obstacles to class certification."  *In re Rezulin Prods. Liab. Litig.*, 210

F.R.D. 61, 71 n.59 (S.D.N.Y. 2002) (citations and internal quotation marks omitted).

Courts routinely bar putative nationwide class actions in cases asserting the exact same

claims that Plaintiff asserts here, because state law differences render the class action

unmanageable.  *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)

(RLM), 2013 WL 4647512, at *17-18 (E.D.N.Y. Aug. 29, 2013) (dismissing putative nationwide

GBL §§ 349 and 350 claims); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 233

(S.D.N.Y. 2002) (denying class certification and holding that non-New Jersey class members

have no basis to bring a NJCFA claim against a defendant that is not a domiciliary of New

Jersey); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 455 (D.N.J. 1998) (denying certification of nationwide class for breach of express warranty claims); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 143 (S.D.N.Y. 2014) (declining to certify a nationwide class on unjust enrichment claims).[22]  The same result is warranted here.  *See* Kimberly-Clark Corporation's Memorandum of Law In Opposition to Plaintiff's Motion For Class Certification, ECF No. 103, § IV.

The cases that Plaintiff cites to support his argument that GBL § 349 claims can be certified on a nationwide basis are plainly inapposite and do not depart from well-settled law that Section 349 claims are limited to conduct that occurs in New York state.[23]  In *Dupler v. Costco Wholesale Corp.*, the court approved a class settlement, highlighting the risk that plaintiff's GBL § 349 claim *could not* proceed as a nationwide class.  705 F. Supp. 2d 231, 241 (E.D.N.Y. 2010) (noting that GBL § 349 requires that the "transaction in which the consumer is deceived must occur in New York") (citation and internal quotation marks omitted).  Plaintiff's reliance on *In re Grand Theft Auto Video Game Consumer Litig.*, a ruling on a motion to dismiss, does not support him because the court later declined to certify a nationwide class given the differences

---

[22] *See also In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 351 (D.N.J. 1997) (denying nationwide class certification for express and implied warranty claims because of substantial variations in state law); *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 197-99 (D. Mass. 1999) (denying class certification as to claims for breach of express warranties where the claims raised issues of reliance on a seller's representations that required individualized determinations).  As an example of the conflicts in state laws, *compare Weiss v. Polymer Plastics Corp.*, 21 A.D.3d 1095, 1096, 802 N.Y.S.2d 174, 175-76 (2d Dep't 2005) (applying economic loss doctrine to bar negligent misrepresentation claim under New York law) *with ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*, No. 1:05-CV-00732, 2008 WL 384530, at *13-14 (S.D. Ohio Aug. 14, 2008) (noting that Ohio appellate courts recognize a claim for negligent misrepresentation even when the plaintiff's damages consist only of economic loss). (*See also* Costco MTD at 6-8.)

[23] *See Berkman v. Robert's Am. Gourmet Food, Inc.*, 16 Misc. 3d 1104(A), at *5 (Sup. Ct., New York County 2007) (holding that the territorial limitation on N.Y. Gen. Bus. Law § 349 precluded nationwide class certification); *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493 (VB), 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011) (holding that GBL §§ 349 and 350 "do not apply to transactions occurring outside the state.")

among the states' consumer fraud statutes.  No. 06 MD 1739 (SWK) (MHD), 2006 WL

3039993, at *3 (S.D.N.Y. Oct. 25, 2006); *In re Grand Theft Auto Video Game Consumer Litig.*,

251 F.R.D. 139, 154-55 (S.D.N.Y. 2008).

Every case Plaintiff cites in support of certifying a nationwide class under the NJCFA

misses the mark, because the NJCFA expressly governs *New Jersey-based companies*' conduct

outside the state, and all those cases involved defendants incorporated in, or with their principal

place of business in, New Jersey.  (*See* Kurtz Br. at 26 n.22.)  *See also, e.g., Dal Ponte v. Am.*

*Mortg. Express Corp.*, Civil Action No. 04-2152 (JEI), 2006 WL 2403982, at *6-7 (D.N.J. Aug.

17, 2006) (concluding that New Jersey had the strongest interest in applying its consumer fraud

statute to deter fraudulent conduct by its domestic businesses); *Kalow & Springut, LLP v.*

*Commence Corp.,* Civ. Action No.07-3442 (JEI/AMD) , 2012 WL 6093876, at *3 (D.N.J. Dec. 7

2012) (defendant was incorporated in New Jersey and had its principal place of business in New

Jersey).  By contrast, Costco is incorporated in Washington State, and there is no basis on which

a non-New Jersey purchaser might bring a NJCFA claim against Costco.[24]  A nationwide class is

therefore not available for Plaintiff's NJCFA claims.

## VI.  AN INJUNCTIVE RELIEF CLASS IS NOT APPROPRIATE.

There is no basis to certify a class against Costco under Rule 23(b)(2) for some of the

same reasons set forth above, but also due to core standing problems unique to Plaintiff's claims

against Costco.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 120 S. Ct.

---

[24] Plaintiff's reliance on *Phillips Petroleum Co. v. Shutts*, is not to the contrary, since in that case, the Supreme Court reversed the Kansas Supreme Court decision to allow Kansas law to apply to out-of-state transactions involving out-of-state parties. 105 S. Ct. 2965 (1985).  Plaintiff's reliance on *Curley v. AMR Corp.* is equally unpersuasive.  *See* 153 F.3d 5 (2d Cir. 1998) (finding that a conflict existed between New York and Mexican law and applied Mexican law).

ny-1179925

693 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.") (citations omitted).

First, because Plaintiff fails to satisfy the requirements of Rule 23(a), the court need not address the requirements of Rule 23(b)(2) to conclude that denial of class certification is necessary.  *See* Fed. R. Civ. P. 23(b); *Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dep't of Homeland Sec.*, No. 07 Civ. 8224 (KBF), 2012 WL 1344417, at *9 (S.D.N.Y. Apr. 16, 2012) (denying certification of Rule 23(b)(2) class because "named plaintiffs herein cannot establish the commonality required to satisfy Rule 23(a)").

Second, Plaintiff's failure to establish common injury—by conceding that there is no common plumbing injury and by putting forth no cognizable evidence that a price premium actually exists—requires denial of class certification under Rule 23(b)(2) as well.  All that remains is the allegedly deceptive "flushable" claim, but that is not enough to sustain a Rule 23(b)(2) class because the New York Court of Appeals has expressly rejected the "deception-as-injury" theory and held that *actual injury, more than deception alone, is required to pursue a claim under Section 349.  See Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56-57 (1999) ("rejecting plaintiffs' flawed 'deception as injury' theory," affirming decertification of a class, and dismissing Section 349 and common law claims, noting that the deception-as-injury "flaw in plaintiffs' statutory claim foretells the inadequacy of the common-law claims" as well).

More fundamentally, Plaintiff lacks standing to seek prospective injunctive relief against Costco because he never purchased the Kirkland Signature Flushable Wipe product that is currently on the market prior to filing his Complaint.  The Kirkland Signature Flushable Wipes that Plaintiff purchased were based on an applicator (the cloth-like base material that one generally thinks of as the wipe), that was discontinued in early 2014.  At that time, Kirkland

48

Signature Flushable Wipes were converted to a new applicator using entirely different flushable

technology.  (Hurley Dep. 48:14-24.)  And prior to filing his Complaint in February 2014,

*Plaintiff never purchased, much less suffered injury from, the current Kirkland Signature*

*Flushable Wipe product*.  (*See* Class Action Complaint, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y.

February 21, 2014), ECF No. 1. ("Compl."); *see* Kurtz Dep. Ex. N.)[25]  He therefore lacks

standing to seek prospective relief.  *See, e.g., DiMuro v. Clinique Labs., LLC,* 572 F. App'x 27,

29 (2d Cir. 2014) (dismissing claims with respect to products plaintiffs did not purchase because

they "lack class standing to bring claims for the four products that they did not purchase"); *See*

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011)

("Plaintiff cannot establish standing to pursue a claim that products she neither purchased nor

used did not work as advertised.").[26]

     Nor can Plaintiff pursue class-wide injunctive relief on behalf of consumers who

---

[25] Ms. Kurtz did purchase the current product on one occasion after the Complaint was filed, in June 2014 (*see* Kurtz Dep. Ex. M at 9 (showing new product code).),  Plaintiff cannot claim that he was injured by this purchase because (a) he has acknowledged that he and his family had stopped flushing any flushable wipes after their prior clogs (*see* Kurtz Dep. 38:13-39:16; 65:23-66:13), and (b) since his Complaint—filed several months earlier—specifically alleged that the defendants' claims of flushability were false, he cannot be heard to allege that he was misled by such a representation.  It would set a strange precedent indeed if Plaintiff were allowed to manufacture standing solely on the basis of a purchase that occurred months after the filing of his lawsuit.

[26] *See also Ctr. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 433 F.3d 181, 199 (2d Cir. 2005) ("the named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Warth v. Seldin,* 95 S.Ct. 2197, 2207 (1975)).  Plaintiff also lacks standing because he is not at risk of future injury. *Vaccariello,* 295 F.R.D. at 72 (Rule 23(b)(2) class certification denied because plaintiff could not "demonstrate that he faced a likelihood of future harm" to himself; *Forcellati v. Hyland's, Inc.,* No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *12 (C.D. Cal. Apr. 9, 2014) (denying Rule 23(b)(2) class certification because plaintiffs lacked Article III standing to seek injunctive relief because they had no reason repurchase products they consider worthless and ineffectual).

purchased an entirely different version of the Kirkland Signature Flushable Wipes from the version that he purchased.  *See Nicosia v. Amazon.com, Inc.*, No. 14-cv-4513 (SLT)(MDG), 2015 WL 500180, at *12 (E.D.N.Y. Feb. 4, 2015) (plaintiff "cannot assert claims on behalf of unnamed class members who purchased or will purchase dietary supplements other than the [product that the named plaintiff purchased]"), *appeal filed* No. 15-423 (2d Cir. Feb. 13, 2015).

In addition, the fact that Plaintiff's claims are premised only on the discontinued version of Kirkland Signature Flushable Wipes presents an additional reason why he cannot meet the requirements of Rule 23(a).  His interest in challenging the flushability of the prior Kirkland Signature Flushable Wipe technology is not the same interest held by a class of potential future consumers addressing the current Kirkland Signature Flushable Wipe product.  *See Amchem Prods., Inc. v. Windsor*, 117 S. Ct. 2231, 2236 (1997) ("Representatives must be part of the class and possess the same interest and suffer the same injury as the class members.").

Regardless, Plaintiff has failed to show that there is any future risk of harm to *anyone* from Kirkland Signature Flushable Wipes:  his claims and evidence (such as it is) relate almost exclusively to the prior version of the Kirkland Signature Flushable Wipes that he purchased.[27] None of that pre-2014 evidence provides any basis to certify a Rule 23(b)(2) class for prospective relief directed at the current product.  Plaintiff has therefore failed to demonstrate that *any class member* could meet the threshold requirement for seeking injunctive relief:  that there be a risk of future harm.  *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future*

---

[27] (*See* Kurtz Br. at 8-11 (citing to (i) the Complaint, which itself preceded the current product and thus contains only allegations related to the old product; (ii) 2012 and 2013 emails and a letter (Reich Decl. Exs. A, N, V); (iii) a complaint log                REDACTED
                    (Reich Ex. Q); and (iv) a December 2011 partial test result (Reich Decl. Ex. Z).)

or *continuing* harm." ) (summary order, emphasis in original) (citing *City of Los Angeles v. Lyons,* 103 S. Ct. 1660, 1677 (1983)).[28]

It is clear that Plaintiff's claims are predominantly for money damages and not for injunctive relief.  (*See, e.g.,* Compl. Prayer for Relief, D (requesting that the putative injunctive relief class receive "reimburse[ment for] any fees to be incurred by consumers").) Indeed, Plaintiff's *only* asserted common injury is his price premium theory of damages, so he cannot argue that those damages are anything but central to his claim.  That by itself precludes class certification under Rule 23(b)(2).  *See Dukes*, 131 S. Ct. at 2561 (agreeing with the majority that the class "should not have been certified under [Rule 23(b)(2)]" because the plaintiffs "[sought] monetary relief that is not merely incidental to any injunctive or declaratory relief that might be available") (Ginsburg, J., concurring); *Gardner v. W. Beef Properties, Inc.*, No. 07-CV-2345 (RJD)(JMA), 2011 WL 6140518, at *6 (E.D.N.Y. Sept. 26, 2011) (where "a review of the complaint reveals that the primary impetus for bringing the suit is financial recompense" rather than injunctive relief, certification under Rule 23(a)(2) is not appropriate), *report and recommendation adopted as modified sub nom. White v. W. Beef Properties, Inc.*, No. 07 CV 2345 (RJD)(JMA), 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011).

---

[28] Plaintiff's proposed class definition—all purchasers of Kirkland Signature Flushable Wipes (nationally, and in New York and New Jersey)—is also ill-suited to injunctive relief because it includes past purchasers who may never purchase the product again and who may not even be Costco members.  *See Dukes*, 131 S. Ct. at 2560 (former employees seeking prospective injunctive relief through a Rule 23(b)(2) class "have no claim for injunctive or declaratory relief at all").

## CONCLUSION

For the foregoing reasons, as well as those set forth in Costco's Motion to Deny Class Certification, Costco respectfully requests that the Court deny Plaintiff's motion to certify a class of purchasers of Kirkland Signature Moist Flushable Wipes.

Dated: New York, NY
   March 27, 2015

MORRISON & FOERSTER LLP

By:  /s/ James M. Bergin
    James M. Bergin
    Kayvan B. Sadeghi
    Adam J. Hunt
    250 West 55th Street
    New York, NY  10019
    Telephone:  (212) 468-8000
    Facsimile:  (212) 468-7900
    jbergin@mofo.com
    ksadeghi@mofo.com
    ahunt@mofo.com

*Attorneys for Defendant*
*Costco Wholesale Corporation*

ny-1179925