UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
D. Joseph Kurtz, Individually and on           :
Behalf of All Others Similarly Situated,       :
                                               :
                           Plaintiff,          :
                                               :
            vs.                                :          No. 1:14-cv-01142-JBW-RML
                                               :
Kimberly-Clark Corporation and                 :
Costco Wholesale Corporation,                  :
                                               :
                           Defendants.         :
---------------------------------------------------------------x

## DEFENDANT KIMBERLY-CLARK CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO CLASS CERTIFICATION

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

James W. Mizgala (*pro hac vice*)
Kara L. McCall (*pro hac vice*)
Daniel A. Spira (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Kimberly-Clark Corporation*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ......................................................................................................................3

I. PLAINTIFF'S CLAIMS, DAMAGE THEORIES, AND MOTION FOR CLASS
CERTIFICATION ........................................................................................................3

II. KIMBERLY-CLARK'S FLUSHABILITY CLAIMS AND CHANGES IN PRODUCT
TECHNOLOGY ...........................................................................................................4

III. REASONS FOR CONSUMER PURCHASES, AND VARIATIONS IN EXPERIENCES
WITH FLUSHABLE MOIST WIPES...........................................................................6

IV. DR. KURTZ'S PURCHASE AND USE OF FLUSHABLE MOIST WIPES ...................8

ARGUMENT............................................................................................................................9

I. THERE IS NO COMMON, CLASS-WIDE INJURY RESULTING FROM KIMBERLY-
CLARK'S "FLUSHABLE" LABEL CLAIMS, LET ALONE ONE SUFFICIENT TO
DEMONSTRATE PREDOMINANCE. ........................................................................9

    A. Plaintiff Makes No Effort To Show How Injury To Property—And Causation Of
That Injury—Could Be Proven On A Classwide Basis. .......................................10

    B. Plaintiff Is Unable To Show Class-Wide "Economic Injury" (Or Causation Or
Reliance) Through Common Proof............................................................................12

        1. Plaintiff Cannot Show That All Class Members Sustained Economic
Injury........................................................................................................12

        2. Plaintiff Cannot Show Causation or Reliance Through Classwide Proof. 15

II. PLAINTIFF'S CLAIMS ARE ATYPICAL, AND HE IS AN INADEQUATE CLASS
REPRESENTATIVE. ..................................................................................................17

III. PLAINTIFF HAS NO METHODOLOGY FOR DETERMINING COMMON, CLASS-
WIDE DAMAGES. .....................................................................................................19

    A. Plumbing Damages Are Inherently Individualized...............................................20

    B. A "Full Refund" Does Not Accurately Measure Class Members' Alleged
Damages.................................................................................................................21

        1. Consumers of Flushable Wipes Received Some Benefit..........................21

        2. Using An "Average Retail Price" Over- And Under-Compensates Class
Members. ..................................................................................................22

    C. "Price Premium Damages" Are Not Measurable On A Class-Wide Basis. ..........22

    D. Statutory Damages Cannot Be Applied On A Class-Wide Basis..........................25

IV. MEMBERSHIP IN THE PUTATIVE CLASSES IS NOT ASCERTAINABLE. ............27

V. CLASS CERTIFICATION OF A NATIONWIDE CLASS WOULD BE IMPROPER...28

A. Plaintiff Cannot Maintain Nationwide GBL Or NJCFA Claims As A Matter Of Law. ..................................................................................................29

B. The Necessary Application Of All 50 States' Laws To Class Members' Claims Makes The Class Action Unmanageable And Not Superior To Other Methods Of Adjudication...................................................................................30

  1. Conflicts Exist Between The 50 States' Laws. ..........................31

  2. New York Courts Would Apply The Law Of The State Of Residence Or Purchase To Class Members Claims..........................................33

VI. THE COURT SHOULD DENY CERTIFICATION OF A RULE 23(B)(2) CLASS.......33

CONCLUSION.......................................................................................41

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                           **PAGE(S)**

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................25, 28, 37

*AHW Inv. P'ship v. Citigroup Inc.*,
   980 F. Supp. 2d 510 (S.D.N.Y. 2013)..................................................................................32

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................................19, 29

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998)...................................................................................35, 36, 37

*Belfiore v. Procter & Gamble Co.*,
   No. 14-cv-4090, slip op. (E.D.N.Y. Mar. 20, 2015) .........................................................39, 40

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)................................................................................................36

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)..............................................................................................................40

*Clay v. Am. Tobacco Co.*,
   188 F.R.D. 483 (S.D. Ill. 1999) .........................................................................................32

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)...........................................................................................21, 22, 26

*Dal Ponte v. Am. Mortg. Express Corp.*,
   No. 04-2152, 2006 WL 2403982 (D.N.J. Aug. 17, 2006) ...................................................30

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008)..........................................................................................30

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................................30

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ...........................................................................14, 16, 28

*Elias v. Ungar's Food Prods. Inc.*,
   252 F.R.D. 233 (D.N.J. 2008).............................................................................................30

*Gary Plastic Pkg. Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990)................................................................................................18

*Guido v. L'Oreal, USA, Inc.*,
  Nos. CV 11-1067, 2013 WL 3353857 (C.D. Cal. July 1, 2013)...............................................26

*Handschu v. Special Servs. Div.*,
  787 F.2d 828 (2d Cir. 1986)...............................................................................................35

*Hecht v. United Collection Bureau, Inc.*,
  691 F.3d 218 (2d Cir. 2012)...............................................................................34, 40, 41

*Heindel v. Pfizer, Inc.*,
  381 F. Supp. 2d 364 (D.N.J. 2004)....................................................................................24

*In re AIG, Inc. Secs. Litig.*,
  689 F.3d 229 (2d Cir. 2012)...............................................................................................29

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002)...........................................................................................31

*In re Canon Cameras*,
  237 F.R.D. 357 (S.D.N.Y. 2006).......................................................................................11

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
  291 F.R.D. 13 (D. Mass. 2013).........................................................................................31

*In re Fosamax Prods. Liab. Litig.*,
  248 F.R.D. 389 (S.D.N.Y. 2008).......................................................................................18

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*,
  241 F.R.D. 305 (S.D. Ill. 2007).........................................................................................32

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008)...........................................................................30, 31, 32

*In re MTBE Prods. Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002).................................................................................26, 36

*In re Nassau County Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006)...............................................................................................36

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013)..............................................................................................9

*In re Rezulin Prods. Liab. Litig.*,
  210 F.R.D. 61 (S.D.N.Y. 2002)...............................................................................29, 33, 36

*In re Scotts EZ Seed Litig.*,
  2015 WL 6700162...............................................................................................................22

iv

*In re Scotts EZ Seed Litig.*,
No. 12 CV 4727, 2015 WL 670162 (S.D.N.Y. Jan. 26, 2015)..................................15

*In re Teflon Prods. Liab. Litig.*,
254 F.R.D. 354 (S.D. Iowa 2008) .............................................................................37

*In re Thelen LLP*,
736 F.3d 213 (2d Cir. 2013).....................................................................................31

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001).....................................................................................26

*In re Worldcom, Inc.*,
343 B.R. 412 (S.D.N.Y. 2006)..................................................................................31

*Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
894 A.2d 1136 (N.J. Super. Ct. 2006) ......................................................................30

*Jermyn v. Best Buy Stores, L.P.*,
256 F.R.D. 418 (S.D.N.Y. 2009) ..............................................................................15

*Jones v. ConAgra Foods*,
3:12-cv-01633(CRB), 2014 WL 2702726 (N.D. Cal. June 13, 2014).......................13, 38, 39

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
186 F.R.D. 307 (S.D.N.Y. 1999) ..............................................................................18, 32

*Kalow & Springut, LLP v. Commence Corp.*,
No. 07-3442, 2012 WL 6093876 (D.N.J. Dec. 7, 2012).............................................30

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
634 F.3d 883 (7th Cir. 2011) ...................................................................................38

*Larsen v. JBC Legal Group, P.C.*,
235 F.R.D. 191 (E.D.N.Y. 2006)..............................................................................36

*Leonard v. Abbott Labs., Inc.*,
No. 10-CV-4676, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012)...................................12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..................................................................................................40

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012)......................................................................................17

*Marino v. Home Depot U.S.A., Inc.*,
245 F.R.D. 729 (S.D. Fla. 2007)...............................................................................37

*Mason v. Coca-Cola Co.,*
    774 F. Supp. 2d 699 (D.N.J. 2011) .................................................................20

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ..........................................................................31

*McLaughlin v. Am. Tobacco Co.,*
    522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond*
    *& Indem. Co.,* 553 U.S. 639 (2008) ................................................................16

*McNair v. Synapse Grp., Inc.,*
    No. 06-5072(JLL), 2010 WL 4777483 (D.N.J. Nov. 15, 2010), *aff'd on other*
    *grounds,* 672 F.3d 213 (3d Cir. 2012) .......................................................37, 38

*McNair v. Synapse Grp., Inc.,*
    672 F.3d 213 (3d Cir. 2012) ............................................................................40

*Pagan v. Abbott Labs., Inc.,*
    287 F.R.D. 139 (E.D.N.Y. 2012) ........................................................11, 12, 14

*Roach v. T.L. Cannon Corp.,*
    778 F.3d 401 (2d Cir. 2015) ............................................................................19

*Servedio v. State Farm Ins. Co.,*
    889 F. Supp. 2d 450 (E.D.N.Y. 2012) ........................................................20, 21

*Small v. Lorillard Tobacco Co.,*
    94 N.Y.2d 43 (1999) .........................................................................20, 34, 37

*Solomon v. Bell Atl. Corp.,*
    9 A.D.3d 49 (1st Dep't 2004) .........................................................................37

*Sykes v. Mel S. Harris & Assocs. LLC,*
    -- F.3d --, 2015 WL 525904 (2d Cir. Feb. 10, 2015)...........................9, 11, 14, 29

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,*
    546 F.3d 196 (2d Cir. 2008).............................................................................9

*Thompson v. Jiffy Lube Int'l, Inc.,*
    250 F.R.D. 607 (D. Kan. 2008).......................................................................32

*Vaccariello v. XM Satellite Radio,*
    295 F.R.D. 62 (S.D.N.Y. 2013) ..................................................................11, 18

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)........................................................................... passim

*Weiner v. Snapple Beverage Corp.,*
   No. 07 Civ. 8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ..........................17, 25, 27, 28

**RULES / STATUTES**

Federal Rule of Civil Procedure 23 ................................................................... passim

New York General Business Law ("GBL") §§ 349-350 ...................................... passim

**OTHER AUTHORITIES**

*McLaughlin on Class Actions: Law & Practice* § 5:15 (8th ed.)...................................................35

## PRELIMINARY STATEMENT

Defendant Kimberly Clark Corporation ("Kimberly-Clark") respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel [D.E. 81, 83].

In seeking certification of six proposed classes of consumers of nineteen flushable moist wipe products that are allegedly not "flushable," Plaintiff D. Joseph Kurtz ("Plaintiff" or "Dr. Kurtz") fails to address evidence pertinent to both Plaintiff and putative class members, which demonstrates that Plaintiff cannot satisfy his burden of proving that the requirements of Federal Rules 23(a), (b)(2), or (b)(3) are met.

With regard to his own experience, for instance—which is relevant to whether he is an adequate class representative, whether his claims are typical, whether common issues exist and, if so, whether they predominate—Plaintiff neglects to mention in his Memorandum of Law in Support of his Motion for Class Certification [D.E. 83] ("Plaintiff's Memorandum" or "Pl. Mem.") that:

- He used and flushed Cottonelle flushable moist wipes for nearly a decade, without any problems.

- Only within the first week of moving into a different New York residence with poorly maintained plumbing did he experience clogging.

- His family was flushing non-flushable *baby wipes* down their toilets at the same time that they were flushing Cottonelle flushable wipes.

- Plaintiff allegedly flushed both Kimberly-Clark and Costco Wholesale Corporation ("Costco") (together, "Defendants") flushable wipes before each of his plumbing incidents, and has no way of determining which of these wipes (if any) caused his plumbing issues.

- After he personally concluded that Defendants' wipes were not flushable in his plumbing system, Plaintiff continued to purchase and use them, disposing of them in the garbage at his home, and in toilets elsewhere.

1

Plaintiff similarly casts aside facts regarding putative class members that would be critical to resolve his claims on a classwide basis.  For example, although Dr. Kurtz (i) primarily seeks to proceed on a property damage- or plumbing problem-based theory of injury and damages and (ii) expressly disavowed during his deposition any interest in representing class members who did not incur plumbing problems, Plaintiff's Memorandum hardly says a word about how such property damage theories could be litigated on a classwide basis, let alone why individualized issues of specific causation would not predominate.  *See* Pl. Mem. 3-4 (clogged plumbing theory); *id.* at 17 (acknowledging theory, but failing to articulate how it could be proven classwide and admitting that it pertains to only "*certain* class members") (emphasis added).  The vast majority of class members have never experienced any plumbing problems or incurred expenses as a result of using flushable moist wipes, and Defendants have routinely reimbursed those few putative class members who have.

Moreover, with respect to the "price premium" theory of injury and damages, *see, e.g.,* Pl. Mem. at 2, 4, 6-7, 17, Plaintiff fails to address market research that demonstrates that consumers purchase flushable wipes for several reasons other than their "flushability."  Nor does Plaintiff mention that approximately *half* of consumers do not dispose of flushable moist wipes in their toilets, instead throwing them in the trash after use.  And for those consumers who *do* flush the products, the vast majority flush the products successfully, without incident.  Plaintiff and his wife did so for a decade.  In other words, even if Plaintiff could show that Kimberly-Clark's flushable wipes have a "premium price" due to their flushability—which he cannot—that premium is earned for many consumers.  Plaintiff has no basis for pursuing a class action that fails to distinguish between these different categories of consumers.

As explained below and in Kimberly-Clark Corporation's Memorandum of Law in Support of Motion to Deny Class Certification [D.E. 85] ("Kimberly-Clark's Memorandum" or "K-C Mem."), incorporated by reference here, class certification should be denied.

## BACKGROUND

### I.    PLAINTIFF'S CLAIMS, DAMAGE THEORIES, AND MOTION FOR CLASS CERTIFICATION

Plaintiff asserts that his Complaint is based on the alleged "nondispersability of [defendants' flushable moist wipe] products they claim are flushable." Pl. Mem. at 1; *see also* K-C Mem. 3-14 (facts relevant to motions). While Kimberly-Clark's product labeling contains the word "flushable," only on its website (never allegedly viewed by Plaintiff) does it refer to its flushable moist wipes as "dispersible." *See, e.g.*, Compl. ¶¶ 14-16, 19, 21.[1]

Plaintiff now seeks certification under New York and New Jersey statutory and common law of six Rule 23(b)(2) and 23(b)(3) classes of consumers, three of which include "all persons and entities . . . who purchased Kimberly-Clark Flushable Wipes from February 21, 2008 to the present" in New York, New Jersey, and nationwide. Pl. Mem. at 3.[2] Plaintiff defines "Kimberly-Clark Flushable Wipes" to include eighteen different products that are part of seven different product lines. *Id.* at 3 n.2; *see also* K-C Mem. at 4 n.2 (seven of the products have never been sold in the United States). Seven of the Kimberly-Clark Flushable Wipe products do not contain the word "flushable" in the product name. Pl. Mem. at 5 n.5.

---

[1] While Plaintiff conflates flushability with dispersibility (Pl. Mem. at 1), the plain meaning of "flushable" refers to something being "suitable for disposal by flushing down a toilet," Merriam-Webster Dictionary, or "designed to be flushed down a toilet after use," Oxford English Dictionary. "[D]ispersible" means "to cause to break up." Merriam-Webster Dictionary. These concepts may be related depending on the context, but it is the former that is primarily relevant for consumers (the latter may be relevant for municipalities, which are not parties in this case).

[2] The remaining three classes encompass purchasers of Costco's Kirkland Signature Flushable Wipes from July 1, 2011 to the present. Pl. Mem. at 3. Between the time of his Complaint and his Motion, Plaintiff dropped three additional classes. *See* Compl. ¶ 90.

Plaintiff seeks to recover class damages under four theories: (1) "actual costs associated with a pipe clog or sewer backup," which Plaintiff admits were only experienced by "certain class members"; (2) a "full refund for consumers' purchases of the Flushable Products;" (3) alleged "price premium[s]" based on "the difference between the purchase price of the Flushable Products versus comparable products that do not contain the flushability claim;" and (4) "statutory damages" in the amount of $50 or $500 under New York General Business Law ("GBL") §§ 349-350.  Pl. Mem. at 4, 16-17; *see also* Declaration of Colin B. Weir [D.E. 84] ("Weir Decl.").  Plaintiff also seeks injunctive relief.  Pl. Mem. at 3 ("Defendants must be enjoined from continuing to sell products falsely labeled as flushable"); *id.* at 38 (instead suggesting that "the 'flushable' claim [should be] removed from Defendants' packaging").

## II.   KIMBERLY-CLARK'S FLUSHABILITY CLAIMS AND CHANGES IN PRODUCT TECHNOLOGY

While Plaintiff asserts claims regarding eighteen different Kimberly-Clark products sold since 2008, he ignores that during that time period, Kimberly-Clark sold flushable wipes that utilize at least three different technologies.  K-C Mem. at 5; Ex. B to K-C Mem. (exhibits to the Declaration of Eamon P. Joyce [D.E. 86] are referred to herein as "Ex. ___ to K-C Mem.").  Each change in technology, which was implemented in multiple product lines, increased the dispersability of Kimberly-Clark's wipes and sought to further improve performance on various "flushability" testing guidelines set forth by the International Nonwovens and Disposables Association ("INDA") and the European Disposables Nonwovens Associations ("EDANA").  *See, e.g.*, Powling Dep. (Ex. G to Reich Decl. [D.E. 83] at 26:20-28:22; Ex. B to K-C Mem.; K-C Mem. at 5.  Because different retailers sell products at different rates, and because any given product line utilized multiple technologies during overlapping time periods, it is unknown which

4

technology was purchased by Plaintiff or any given class member. *See* Ex. B to K-C Mem.; K-C Mem. at 5.[3]

Moreover, it is undisputed that Kimberly-Clark's flushable claims have been grounded on the fact that its flushable wipes "meet and exceed" the aforementioned INDA/EDANA testing guidelines, which "provide[] an industry-accepted definition of flushability." K-C Mem. at 5-6 & n.3; O'Connor Dep. (Ex. D to K-C Mem.) at 30:11-14. Plaintiff's Memorandum, on the other hand, fails to advance any definition of what it means to be "flushable," any evidence of what consumers understand "flushable" to mean, or any explanation as to how his experience without clogs for a decade (an experience many consumers could not attest to as to toilet paper alone) is inconsistent with the fact that the wipes are "flushable." Instead, Plaintiff argues that *all* Kimberly-Clark flushable wipes sold during the class period are not "flushable" based on evidence of (1) "direct communications from a host of wastewater district representatives complaining about the monetary damage caused to their systems," ignoring evidence, including that which Plaintiff subpoenaed from municipalities, that the primary cause of such damage is *non*-flushable wipes and other products being flushed,[4] (2) "homeowner complaints," (3)

---

[3] In addition to these changes that bear on flushability or dispersability, Kimberly-Clark made other changes to its wipes that, for instance, improved their softness, the ability to dispense them from the tubs in which they are sold, or changed their fragrances. *See* Powling Dep. (Ex. G to Reich Decl.) at 28:23-32:22, 33:23-35:8.

[4] Contrary to the claims trumpeted in the Complaint and sensationalist media accounts on which it relies, third-party municipalities from whom Plaintiff obtained discovery explained, "[t]he consensus . . . is that 'flushable' wipes are a very minor problem (less than 10% if that) while 'non-flushable' items and female hygiene products are the real problem." KIRKLAND006698-701 (Ex. A to Declaration of Daniel A. Spira) at 699; *see also, e.g.,* COV010079-80 (Spira Decl., Ex. B) at 79 (stating baby wipes are "the main problem," there is "agreement that most of this problem goes away if we get baby wipes, as they are now constructed, out of our sewers," and flushable wipes are "not as big a problem and becoming less so with the more dispersible substrates we are seeing"); KIRKLAND004536-40 (Spira Decl., Ex. C) at 37 ("[m]any of the items that cause problems in the wastewater industry have nothing to do with [wipes] products"); KIRKLAND005303-08 (Spira Decl., Ex. D) at 03 ("'flushable' products are probably not the

███████████████████████████ and (4) one non-INDA/EDANA test performed by one lab.  Pl. Mem. at 1-2, 8-11.

None of these bases constitutes common proof that Kimberly-Clark's flushable wipes are not "flushable," or common proof of the many other elements of Plaintiff's claims.  Indeed, under the first two bases relied on by Plaintiff's Memorandum, toilet paper itself would be fit for a consumer class action as to whether it can be lawfully marketed as flushable.  Toilet paper unquestionably causes home owner complaints that have kept plumbers in business for decades, and can turn up in wastewater facilities (often mixed with grease or other debris).  And although Plaintiff contends that █████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ Similarly, pointing to one test—which is one of several optional tests used to measure dispersability and is not part of the of the current INDA/EDANA guidelines, *see* Ex. F to K-C Mem.—by one lab on one brand of Kimberly-Clark flushable wipes is not proof, let alone common proof, that *all* Kimberly-Clark flushable wipes are defective.  *See* Pl. Mem. at 11.

## III.   REASONS FOR CONSUMER PURCHASES, AND VARIATIONS IN EXPERIENCES WITH FLUSHABLE MOIST WIPES

While Plaintiff concludes, without support, that flushability "constituted the most important attribute of [defendants'] product[s]," Pl. Mem. at 27, the evidence produced in this case shows otherwise.  *See* K-C Mem. at 6-8.  As discussed in Kimberly-Clark's Memorandum, consumer research demonstrates instead that █████████████████████████ ████████████████████████████████████████████████

---

biggest problem" and "baby wipes MUST have better labeling").  *See also* Costco's Memorandum of Law in Opposition to Plaintiff's Motion ("Costco Opp."), Response to Pl.'s "Summary of Common Facts" § B.1.

███████████████████████████████████ K-C Mem. at 6-8, *see, e.g.,* K-C Mem., Exs. H,

I, Y at 11-16 (summarizing consumer research).

Plaintiff also fails to acknowledge the fact that consumers purchase flushable moist wipes

for reasons other than their flushability; notably, many consumers███████████████

████████████████████████" KCC-Kurtz0011209-13 (Ex. O to K-C Mem.) at 210;

Ugone Decl. (Ex. Y to K-C Mem.) § VI.A.  Accordingly, advertising related to Cottonelle

flushable wipes typically focuses on the product's "clean and fresh" attributes and rarely, if ever,

on flushability.  O'Connor Dep. (Ex. D to K-C Mem.) at 112:5-13; *see also* KCC-Kurtz0019352-

67 (Ex. M to K-C Mem.) at 54.

Indeed, a significant portion of consumers do not flush the products at all.  K-C Mem. at

7-8.  Approximately *half* of flushable moist wipe consumers throw their wipes in the trash after

use, not in their toilets.  Ex. O to K-C Mem. at 11210; *see also* Ex. P. to K-C Mem. at 19465; Ex.

Q to K-C Mem. at 4096; Ex. R. to K-C Mem. at 7030, 33-34; Ugone Decl. (Ex. Y to K-C Mem.)

§ VI.B.1.  Those consumers who *do* dispose of flushable moist wipes in their toilets also

frequently flush other products, including toilet paper, tampons, facial tissues, bathroom cleaning

wipes, and baby wipes.  Ex. Q to K-C Mem. at 4118; Ex. R to K-C Mem. at 7033; Ex. S to K-C

Mem. at 17569; Ugone Decl. (Ex. Y to K-C Mem.) § VI.B.2.

Moreover, even as to those consumers who do flush, the vast majority have never had a

sewer back-up that they attribute to flushable moist wipes.  Ex. Q to K-C Mem. at 4113; Ugone

Decl. (Ex. Y to K-C Mem.) § VI.C.  And this small minority who *have* experienced plumbing

issues or other product dissatisfaction (whether from flushable wipes or any other Kimberly-

Clark product) routinely have been compensated.  O'Connor Dep. (Ex. D to K-C Mem.) at

126:9-11, 127:17-20.

Finally, the prices that consumers paid for Kimberly-Clark's flushable wipes during the class period vary significantly depending on the particular product purchased; the sales channel and particular retailer from which the consumer purchased the wipes; the geographic location in which the consumer purchased the wipes; whether the consumer paid an everyday price or a promotional/coupon price for the wipes; and the packaging and unit size in which the consumer purchased the wipes.  K-C Mem. at 9-10; Ugone Decl. (Ex. Y to K-C Mem.) § VII.

## IV.    DR. KURTZ'S PURCHASE AND USE OF FLUSHABLE MOIST WIPES

Plaintiff acknowledges that he purchased Kirkland Flushable Wipes and Cottonelle Fresh Flushable Cleansing Cloths "at various times between earlier 2013 and 2014."  Pl. Mem. at 12. Significantly, however, Plaintiff's Memorandum fails to mention that Dr. Kurtz had been purchasing Cottonelle flushable wipes since 2004, and flushed them without complication until 2013.  K-C Mem. at 10 (citing Plaintiff's Deposition ("Kurtz Dep.") (Ex. A to K-C Mem.)).

Nonetheless, Plaintiff brings this lawsuit based on two plumbing issues he had within a week of moving into a new residence in New York in 2013, and one plumbing issue in the summer of 2013 in his New Jersey rental home.  *Id.* at 10-13.  Plaintiff does not know—and has no way to find out—whether Kimberly-Clark's wipes, Costco's wipes, or (with regard to his first clog) non-flushable baby wipes caused these plumbing issues, or whether these issues were unrelated to wipes.  *Id.*  Inspections conducted in connection with this litigation revealed that the plumbing in both of Plaintiffs' homes was not well-maintained and could contribute to clogs.  *Id*; Report of John T. Boyer, Sr., P.E. CDP, GBE ("Boyer Rep.") (Ex. Z to K-C Mem); *see also* Costco Opp., Response to Pl.'s "Summary of Common Facts" § A.1.

Plaintiff's Memorandum also fails to reveal that following these incidents, he continued to purchase and use Defendants' flushable wipes, including by *flushing them* in his office building's toilet without incident.  K-C Mem. at 13-14.

**ARGUMENT**

Despite Plaintiff's impermissible attempt to shift the burden of proof to Defendants, *see* Pl. Mem. at 21, he "must affirmatively demonstrate his compliance with Rule 23," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011), by proving, "*in fact*," that all of the Rule 23(a), and the applicable Rule 23(b), requirements are met. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); K-C Mem. at 14; Costco Opp. at "Argument." For the reasons set forth below and in Kimberly-Clark's Memorandum, he is unable to do so, and class certification should be denied.

**I.     THERE IS NO COMMON, CLASS-WIDE INJURY RESULTING FROM KIMBERLY-CLARK'S "FLUSHABLE" LABEL CLAIMS, LET ALONE ONE SUFFICIENT TO DEMONSTRATE PREDOMINANCE.**

Rule 23's commonality and predominance elements "require[ ] the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551, and "[t]he plaintiffs must . . . show that they can prove, *through common evidence*, that *all* class members were . . . injured." *Sykes v. Mel S. Harris & Assocs. LLC*, -- F.3d --, 2015 WL 525904, at *9 (2d Cir. Feb. 10, 2015) (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)) (emphasis added); *see also* K-C Mem. at 15 (collecting cases).

Plaintiff made clear at his deposition that the primary "injury" for which he seeks class certification is class members' plumbing damage, explaining that if consumers "purchased the product and have no plumbing issues whatsoever," or if they "are satisfied with their product purchase," they should not be class members. Kurtz Dep. (Ex. A to K-C Mem.) at 154:17-22, 164:13-16, 173:16-20; *see also* Compl. ¶¶ 4, 31-37 (focusing on plumbing issues and property damages). He added, "[t]here are people that have issues with the wipes, there are people that didn't. I was a happy consumer until I had issues myself." Kurtz Dep. (Ex. BB to Reich Decl.) at 164:4-7.

**A.     Plaintiff Makes No Effort To Show How Injury To Property—And Causation Of That Injury—Could Be Proven On A Classwide Basis.**

Plaintiff does not argue that all class members have suffered the same (or even any) injury to their plumbing or other property, that any such injury could be demonstrated through common proof, or that he can make any showing of predominance related to this central aspect of his Complaint.  He instead concedes that only "*certain* class members were . . . injured in the form of plumbing and related costs stemming from sewer backups or pipe clogs." Pl. Mem. at 17 (emphasis added).  The *majority* of class members suffered no plumbing issues or other injury to property.  K-C Mem. at 15-16.  Thus, as both consumer research and Plaintiff's admissions make evident, most class members purchased flushable wipes that they successfully flushed through their toilets and plumbing.  *Id.*

While Plaintiff argues that "[h]omeowners complained directly to Defendants about the lack of flushability of the Flushable Products," Pl. Mem. at 9, the exhibits to which he points show that a minute fraction of a percent of consumers have complained of alleged plumbing injuries (and do not address whether the consumers in question were attempting to use such wipes in plumbing systems that were not properly maintained or in other ways contrary to the labeled directions for use).  *Id.*  Even if these complaints amounted to more than a fraction of a percent of consumers, they still would not demonstrate that *all* class members suffered a common plumbing injury, let alone one with a common cause (*see infra*).[5]  And although Plaintiff acknowledges that Defendants compensated consumers for alleged damages to their

---

[5] *Any* flushable material, including toilet paper, will correlate with a number of clogged toilets (regardless of whether the flushable material caused the clogs).  The allegation that some small percentage of consumers experience clogs with their flushable wipes cannot demonstrate all consumers have been injured, any more than a handful of toilet paper users who experience routine clogs could claim a common injury on behalf of all consumers of toilet paper.

plumbing (Pl. Mem. at 9), he ignores that those compensated consumers have no injury, and fails to explain how his class definitions are appropriate in light of such consumers.

Even if *certain* class members have sustained an unreimbursed plumbing injury, it is indisputable that not all class members have suffered the *same* injury, such that Rule 23(a)(2) commonality is lacking. *Dukes*, 131 S. Ct. at 2551; *accord Sykes*, 2015 WL 525904, at *11; *see also Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 148-49 (E.D.N.Y. 2012) (denying class certification for lack of commonality where "most of the members of the class would have not suffered any injury at all"); *see also* K-C Mem. at 17-21.[6]

Further, because individual issues regarding the existence, type, and cause of class members' property damage would overwhelm any issues common to the classes, Rule 23(b)(3) predominance cannot be met. *See, e.g.*, *Vaccariello v. XM Satellite Radio*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013); *In re Canon Cameras*, 237 F.R.D. 357, 359-60 (S.D.N.Y. 2006); K-C Mem. at 18-19. For example, even if there is some subset of consumers of Kimberly-Clark's flushable wipes who have had plumbing problems and who have not been compensated, the Complaint identifies individualized questions regarding putative class members' toilets and plumbing that must be answered to determine the *cause* of any such plumbing problems. Compl. ¶¶ 48-49; *see also* K-C Mem. at 25-26. Even aside from causation issues related to plumbing maintenance, the majority of flushable wipe consumers flush their wipes with other products, including toilet paper, tampons, facial tissues, bathroom cleaning wipes, and baby wipes, KCC-Kurtz0004093-

---

[6] While Plaintiff points to alleged evidence that "municipalities and water districts" have "advised Defendants of the problems they caused" with their flushable wipes, those allegations belie the possibility that class members have suffered a common plumbing injury. Pl. Mem. at 1, 8-9. Any alleged issues experienced by municipalities and water districts caused by supposed shortcomings in dispersability necessarily means that flushable wipes *successfully flushed through class members' toilets and plumbing systems*. They provide no evidence that *any* (much less *all*) class members were injured. Accordingly, the Court already has held that this "case will [not] proceed based on alleged municipal injury." Order [D.E. 23] at 2.

125 (Ex. Q to K-C Mem.) at 118, any one of which could be responsible for a given clog or other problem. *See, e.g.*, K-C Mem. at 22-23, 27 (collecting cases).

Finally, the fact that putative class members are already reimbursed for their plumbing damages means not only that class members have suffered no common injury, but also that Plaintiff cannot satisfy Rule 23(b)(3)'s superiority requirement. *See, e.g.*, *Pagan*, 287 F.R.D. at 151 ("'[w]here available refunds afford class members a comparable or even better remedy than they could hope to achieve in court, a class action would merely divert a substantial percentage of the refunds' aggregate value to the class lawyers'") (quoting *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 WL 764199, at *27 (E.D.N.Y. Mar. 5, 2012)).

**B.      Plaintiff Is Unable To Show Class-Wide "Economic Injury" (Or Causation Or Reliance) Through Common Proof.**

With regard to putative class members' allegedly common "economic injury," Plaintiff argues that he has been injured "through the purchase of Defendants' Flushable Products that did not conform to the representations on their packaging." Pl. Mem. at 17; *see id.* at 23 ("injury is proven by demonstrating that a plaintiff paid a premium for a product"). But the evidence that he offers does not demonstrate that common proof can be used to demonstrate that all class members were deceived by Kimberly-Clark's representations about flushability or sustained an economic injury, or that any supposed common showings will predominate over the numerous individualized inquiries required here.

1.      <u>Plaintiff Cannot Show That All Class Members Sustained Economic Injury.</u>

To begin, Plaintiff's never says what he believes "flushable" means, except to suggest that it somehow implies that flushing the wipes is fail-proof (something not true of toilet paper or anything else ordinarily understood to be flushable). *See* Pl. Mem. at 2, 4. But, for example, to the extent consumers interpret "flushable" to have its most natural and logical meaning—*i.e.*,

something capable of being "flushed" through toilets and pipes, *see supra* at 3 n.1 (quoting dictionary definitions)—it is beyond dispute that putative class members have received "flushable" wipes.[7]  Similarly, to the extent flushability is understood to mean that the products meet industry guidelines (as Kimberly-Clark's website explains), Plaintiff does not, and cannot, refute that Kimberly-Clark's flushable wipes are "flushable."

Plaintiff's Memorandum offers no evidence that either of these definitions are inaccurate or will not apply to some consumers, nor does he suggest any alternative definition. Accordingly, the "evidence" Plaintiff highlights to suggest that Kimberly-Clark's representations are "untrue," and thus that every consumer was deceived, *see supra* at 5-6, holds Kimberly-Clark's "flushability" claims up against a non-existent standard that is not susceptible to common proof and would not prevent individualized issues from predominating. *See Jones v. ConAgra Foods*, 3:12-cv-01633(CRB), 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014) (denying class certification where there was "no fixed meaning for the word" about which plaintiffs complained, and "consumers' understanding of th[e] representations would not be [uniform]").

In addition to this basic shortcoming, the lack of any uniform economic injury is fatal to class certification.  Consumers who purchased flushable wipes that effectively flushed through their toilets and plumbing (which evidence demonstrates constitutes the *majority* of consumers (K-C Mem. at 8-9)) received the benefit of any purported "premium" they paid for the flushability of the wipes, and therefore suffered no economic injury.  K-C Mem. at 16.  They purchased a product that fully "conform[ed] to the representations on their packaging."  Pl.

---

[7] Dr. Kurtz's own testimony, which Plaintiff's Memorandum ignores, is not far off from this understanding.  He testified that from his perspective "flushable would mean that I can take a product, flush it down the toilet, and it would not cause any problem to any part of *my* flushing system, any pipes."  Kurtz Dep. (Ex. A to K-C Mem.) at 37:14-20 (emphasis added).

Mem. at 17.[8]  Similarly, consumers who purchased defendants' products for reasons other than their flushability (including those who disposed of the products in the garbage), received the full benefit of their purchases.  And, again, class members who have not been satisfied with their purchases have routinely been reimbursed for any dissatisfaction.  They too have no economic injury.  *Id.*  Thus, as with property injury, even if some class members experienced an "economic injury," not *all* putative class members suffered the *same* injury, and certification is improper. *See, e.g., Dukes*, 131 S. Ct. at 2551; *Sykes*, 2015 WL 525904, at *7; *Pagan*, 287 F.R.D. at 148-49; K-C Mem. at 18.

These facts are not comparable to those in *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), upon which Plaintiff heavily relies.  *See, e.g.*, Pl. Mem. at 23, 24, 27.  There, despite being "*fundamentally different* from what is commonly known as 'olive oil,'" defendant sold pomace, a product that typically sells for 50% less than olive oil, as "100% Pure Olive Oil." *Ebin*, 297 F.R.D. at 564 (emphasis added).  Here, Plaintiff argues that Kimberly-Clark's flushable wipes do not meet some unspecified definition of "flushability."  But he does not—and cannot—allege that the flushable moist wipes at issue are actually the same as (or equivalent to) wipe products that are not designed or labeled to be flushed.  Kimberly-Clark's flushable wipes utilize an entirely different (and patented) technology from non-flushable wipes.  *See* Powling Dep. (Ex. G to Reich Decl.) at 73:23-74:6, 75:6-14.

---

[8] As explained, *supra* at 3 n.1, "the representations on the packaging" (*id.*) are regarding "flushability," not "dispersability."  Accordingly, class members whose wipes cleared their plumbing lines (*i.e.,* the vast majority) received a product that performed as labeled.  Moreover, consistent with the municipality evidence showing that flushable wipes are not the primary, or even a significant, cause of their wastewater problems, *see supra* at 5-6 n.4, Costco correctly details that a case regarding dispersability and municipalities would be no more susceptible to common proof than the one Plaintiff has actually brought, *see* Costco Opp., Argument § I.A; *id.* Response to Summary of Fact § B.1.

*Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009) (Pl. Mem. at 23) is likewise distinguishable. In that case, *all* class members were injured by defendant's undisclosed policy, because the class was limited only to consumers who "made a purchase at a Best Buy . . . [,] and were denied the benefit of Best Buy's price match guarantee." *Id.* at 423. Had the class encompassed *all* Best Buy consumers, it necessarily would have included those who were not "denied the benefit of" defendant's policy, just as many consumers of Defendants' flushable wipes have not been "denied the benefit[s] of" Kimberly-Clark's flushable moist wipes. *Id.*; *see also In re Scotts EZ Seed Litig.*, No. 12 CV 4727, 2015 WL 670162, at *7 (S.D.N.Y. Jan. 26, 2015) (classwide injury existed because, *inter alia*, "*nobody* was able to grow grass using EZ Seed") (emphasis in original) (Pl. Mem. at 23).

           2.    <u>Plaintiff Cannot Show Causation or Reliance Through Classwide Proof.</u>

Not surprisingly, Plaintiff says little about the fact that all his claims require proof of causation or reliance, *see* K-C Mem. at 21-22, and what he does say is off-the-mark. Although Plaintiff summarily concludes that all class members inevitably "had to rely on" Kimberly-Clark's "flushable" statements, Pl. Mem. at 24; *id.* at 27, the evidence is directly contrary. Kimberly-Clark's market research shows that the "primary reason" consumers purchase and use flushable moist wipes is the "clean fresh feeling" they provide, not the manner in which they can be disposed after use. K-C Mem. at 23; KCC-Kurtz0001973-94 (Ex. H to K-C Mem.) at 87. Many consumers ███████████████████████████████████████ Ex. O to K-C Mem. at 11210; *see also* Ugone Decl. (Ex. Y to K-C Mem.) § VI.A.[9] And Plaintiff's own allegations demonstrate that many putative class members were likely aware of the myriad news

_____

[9] In addition to ignoring the evidence, Plaintiff repeatedly asserts that reliance was inevitable because "flushable" was put "in the product name," Pl. Mem. at 27; *see also id.* at 1, 17, 24, but that is simply not true for seven of the Kimberly-Clark products encompassed by his class definitions. *Id.* at 5 n.5.

reports and publications broadcasting the alleged non-flushability of flushable wipes, and nonetheless decided to purchase the products.  *See* K-C Mem. at 23-24 n.11; *see* Ex. R to K-C Mem. at 7030 (majority of consumers exposed to news report still would likely purchase flushable wipes, and a significant number still would likely flush them).  Further, approximately half of flushable moist wipe consumers do not even flush their wipes after use.  K-C Mem. at 23; KCC-Kurtz0019453-71 (Ex. P to K-C Mem.) at 65; KCC-Kurtz0004093-125 (Ex. Q to K-C Mem.) at 096; KCC-Kurtz0011209-13 (Ex. O to K-C Mem.) at 210.

These class members could not have purchased Kimberly-Clark's wipes *because of* the flushability claims, or *relied* on those claims.  Accordingly, determining whether class members can establish that any alleged economic injury was caused by defendants' claims, and whether they relied on those claims, will require individualized questions that will predominate over any issues common to class members.  *See, e.g.*, *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008) (proof of causation and reliance required individualized inquiries due to possibility that class members bought light cigarettes for reasons other than the belief that they were a healthier alternative), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); K-C Mem. at 22-24.[10]

---

[10] Case law relied on by Plaintiff is inapposite.  As set forth above, *Ebin* (Pl. Mem. at 24) involved pomace being labeled and sold as a "fundamentally different" product, such that the court could conclude that class members "had to rely on" the demonstrably false claim that they were purchasing olive oil, and the court could follow the "'presumption of causation in NJCFA Cases.'"  297 F.R.D. at 569.  Any "presumption" here is rebutted by the evidence set forth above regarding the reasons consumers purchase Kimberly-Clark's products and the manner in which they use them.  *See, e.g., Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 610 (3d Cir. 2012) (rejecting any "presumption of reliance and/or causation" with regard to NJCFA claim, because "if the evidence suggests that class members did not react to information about the product they purchased . . . in a sufficiently similar manner such that common issues of fact would predominate, then certification is improper."); *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) (for breach of express warranty claim, "plaintiffs' purported reliance on [defendant's] label cannot be the subject of generalized proof.

## II.   PLAINTIFF'S CLAIMS ARE ATYPICAL, AND HE IS AN INADEQUATE CLASS REPRESENTATIVE.

Plaintiff's assertion that his claims are typical focuses solely on the purported common course of Kimberly-Clark's conduct and the mass marketing of its products. Pl. Mem. at 17. Plaintiff's Memorandum studiously avoids the facts underlying Dr. Kurtz's claims, *id.*, and never attempts to actually show that whatever discrepancies exist between his claims and those of absent class members are "[m]inor," *id.* His alleged injury and damages are different from most class members at the outset because they can claim no plumbing injury. *See* K-C Mem. at 19-21. And Plaintiff's claims are atypical because he seeks to recover for an injury and damages allegedly jointly caused by Kimberly-Clark and Costco flushable wipes. Pl. Mem. at 3 n.2, 12.

Further unique causation and reliance issues affect Plaintiff's individual claims and render him atypical and an inadequate class representative. As to the plumbing injury-related claims, for instance, Dr. Kurtz allegedly flushed Kimberly-Clark wipes, Costco wipes, and *non-flushable baby wipes* down his toilets, and has "no idea" which product caused his plumbing problems. Kurtz Dep. (Ex. A to K-C Mem.) at 35:12-23, 61:17-62:20, 89:2-12, 109:6-19, 107:17-108:5, 134:12-15, 166:13-16. He also used Kimberly-Clark's flushable wipes for nearly ten years without incident, before experiencing two issues within one week of moving into an eighty-year old home with plumbing that was not "properly maintained." Kurtz Dep. (Ex. A to K-C Mem.) at 17:10-20:22, 61:17-62:20, 109:6-19, 120:5-9, 133:16-25; Boyer Rep. (Ex. Z to K-C Mem.) § 3.02.01-.02; K-C Mem. at 26. Determining whether the non-flushable baby wipes he flushed, or his or poorly maintained plumbing, and which (if either) of Defendants' wipes caused Plaintiff's alleged plumbing injuries, is a significant and likely dispositive hurdle for Plaintiff to

---

The record in this case, including the plaintiffs' own testimony, shows that consumers may have purchased [defendant's] beverages for many reasons other than the 'All Natural' label"). For these reasons, additional case law that Plaintiff relies upon is similarly irrelevant. *See* Pl. Mem. at 25-28 (arguing for presumption or inference of causation or reliance).

clear in order to prove any of his causes of action. Plaintiff's claims, therefore, are atypical and he will be subject to a host of unique defenses. *See, e.g. In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 400 (S.D.N.Y. 2008) (denying class certification where "class representative's claim with respect to causation is not typical of other class members' claims"); *Vaccariello*, 295 F.R.D. at 68 (denying certification of GBL § 349 claim where "Defendant could submit individual defenses to Plaintiff's claims").

Plaintiff's claims of economic injury fare no better. Plaintiff first purchased Kimberly-Clark flushable wipes because of the "hygiene" they provide, Kurtz Dep. (Ex. A to K-C Mem.) at 135:12-15, and continued to purchase them even after concluding that Defendants' products were not flushable. *Id.* at 39:8-16, 55:13-24, 66:7-13. As to these purchases, he did not *rely* on defendants' "flushability" claims, or purchase products *because* they were labeled as flushable. His claims therefore should be denied for lack of typicality, *see, e.g.*, K-C Mem. at 24-25; *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 313 (S.D.N.Y. 1999) (denying class certification for lack of typicality because "each plaintiff's decision to purchase [the relevant product], including that plaintiff's reliance upon any representation by [defendant] . . . is different"), or inadequacy as a class representative, *see Gary Plastic Pkg. Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990) (denying certification based on lack of adequacy where plaintiff's "claim is subject to several unique defenses including its continued purchases of CDs through [defendant] despite having notice of, and having investigated, the alleged fraud").

Finally, with respect to adequacy, Plaintiff's Memorandum says much about Dr. Kurtz's commitment to representing the class, Pl. Mem. 18-19, but ignores that he effectively redefined his putative classes at his deposition in a manner that would exclude the overwhelming majority

of absent members.  Plaintiff conceded that if consumers, unlike him, "purchased [defendants']
product[s] and have no plumbing issues whatsoever," or if they "are satisfied with their product
purchase," they should not be class members.  Kurtz Dep. (Ex. A to K-C Mem.) at 154:17-22,
164:13-16, 173:16-20.  He does not "possess the same interest" as these consumers, all of whom
are putative class members based on their purchases of Defendants' products alone, and there is a
risk that he could sacrifice their "price premium"-based claims in favor of his higher value
property damage claims. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997); K-C
Mem. at 21.

### III.   PLAINTIFF HAS NO METHODOLOGY FOR DETERMINING COMMON, CLASS-WIDE DAMAGES.

Plaintiff seeks four categories of damages on behalf of class members: (1) "Actual costs
associated with a pipe clog or sewer backup caused by the use of flushable products that did not
properly disperse;" (2) "a full refund for consumers' purchases of the Flushable Products;" (3)
"price premium damages" based on the alleged "difference between the purchase price of the
Flushable Products versus comparable products that do not contain the flushability claim;" and
(4) "statutory damages" under GBL §§ 349-350.  Pl. Mem. at 3-4; *see also id.* at 30-31.  None of
these categories of damages, however, are subject to common proof, and individualized damages
questions compound the individualized liability issues discussed above.  *See Roach v. T.L.
Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015) (whether "'damages may have to be ascertained
on an individual basis is . . . a factor that we must consider'" "when weighing predominance
issues") (citations omitted); K-C Mem. at 27-31.

Plaintiff's ability to prove class-wide damages is fundamental to his ability to maintain a
class action, more so than in many other cases.  Because there is no credible claim here that there
is a common plumbing injury to consumers, even if Plaintiff could establish deception (and

causation or reliance) on a class-wide basis, Plaintiff must establish a "price premium" to create liability. This is because deception alone is insufficient to establish one's consumer claim; rather, a consumer must sustain a financial loss to do so. *See, e.g.*, *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (rejecting the theory that an injury exists where consumers merely allege that they "b[ought] a product that they would not have purchased, absent a manufacturer's deceptive commercial practices" and holding that a claim fails where it "sets forth deception as both act and injury").[11]

### A.    Plumbing Damages Are Inherently Individualized.

No common means exist by which to calculate or measure class members' plumbing damages. Plaintiff does not—and cannot—argue otherwise. Instead, he half-heartedly concludes that "a calculation of reasonably quantified out-of-pocket plumbing expenses" can be used as a measure of damages. Pl. Mem. at 31. Plaintiff's putative expert likewise has nothing to say about putative class members' alleged plumbing damages. *See* Weir Decl.

Any apportionment of plumbing damages would be individualized and complicated, requiring consideration of contributory causes; the measure of harm done to toilets, plumbing, and other property; and the costs of labor and repairs. *See* K-C Mem. at 28-29; Compl. ¶¶ 32, 36; Ugone Decl. (Ex. Y to K-C Mem.) § IX. Accordingly, courts routinely find that classes seeking property damages cannot be certified. K-C Mem. at 29 n.16 (collecting cases).

---

[11] *See also Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) ("The rationale of *Small* and its progeny is that deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying."); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) ("Dissatisfaction with a product, however, is not a quantifiable loss that can be remedied under the NJCFA.").

**B.      A "Full Refund" Does Not Accurately Measure Class Members' Alleged Damages.**

Plaintiff provides almost no explanation regarding his argument that damages "can also be calculated by utilizing a full refund approach." Pl. Mem. at 30. Instead, he cites to Mr. Weir's Declaration, whose single-paragraph analysis of "full compensatory damages" is that such damages are "easily calculated" as the "Average Retail Purchase Price per Unit of Purchase X Number of Units Sold." Weir Decl. ¶ 18. This analysis is overly simplistic and unsustainable as a method of proving classwide injury or damages. *See* K-C Mem. at 27.

### 1.      Consumers of Flushable Wipes Received Some Benefit

Dr. Kurtz admits that, for nearly a decade of using and flushing the Cottonelle wipes, he "was a happy consumer." Kurtz Dep. (Ex. A to K-C Mem.) at 164:4-7. He kept purchasing the products even after he purportedly could no longer flush them at certain locations (he still flushed them at his office), because they were providing other benefits. *See, e.g., Servedio*, 889 F. Supp. 2d at 452. For absent class members who had no problems flushing the wipes, a full refund model is even more unsound. *See* Rebuttal Declaration of Keith R. Ugone, Ph.D ("Ugone Rebuttal") § VII.B. Because a "full refund" for class members' purchases of flushable wipes would overcompensate every putative class member for their alleged economic harm, it cannot provide an accurate measure of damages. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (rejecting certification under Rule 23(b)(3) because proposed method for determining class members' damages did not adequately measure those damages that allegedly resulted from plaintiffs' theory of liability); Ugone Rebuttal § VII.A ("[F]rom an economic perspective, putative Class members received some value from purchasing and using the Challenged

Products. Mr. Weir's proposed 'full refund' approach does not account for that value received by putative Class members.").[12]

    2.    <u>Using An "Average Retail Price" Over- And Under-Compensates Class Members.</u>

The prices for Kimberly-Clark's wipes vary dramatically based on sales channel, retailer, geographic area, coupons, discounts applied, and packaging. K-C Mem. at 30; Ugone Decl. (Ex. Y to K-C Mem.) § VII. Different products included within Plaintiff's putative classes are sold at different prices based on whether they are "premium" or "value" brands. O'Connor Dep. (Ex. D to K-C Mem.) at 84:1-22. Kimberly-Clark's products will inevitably have been sold at different prices over the course of Plaintiff's proposed 7-year class period. *See* Ugone Decl. (Ex. Y to K-C Mem.) § VII; Ugone Rebuttal § III.D. Accordingly, any calculated "average retail purchase price per unit" is a drastic over-generalization of the purchase prices actually paid by class members, and cannot be used as a measure of damages. *See Comcast*, 133 S. Ct. at 1433; Ugone Rebuttal § VII.C.

**C.    "Price Premium Damages" Are Not Measurable On A Class-Wide Basis.**

Plaintiff next argues for a "price premium" measure of damages, citing again to Mr. Weir's analysis. Pl. Mem. at 31. Weir represents that he will calculate the "price premium" paid for Defendants' flushable wipes through a hedonic regression analysis that will isolate the value of the "flushable" product attribute from all other product attributes. *See* Weir Decl. ¶¶ 19-60. As an initial matter, Weir presumes the very thing he has to prove—that there is a price premium associated with Defendants' "flushable" claims. *Id.* But Weir evidently has not yet performed

---

[12] *Cf. In re Scotts EZ Seed Litig.*, 2015 WL 6700162, at *12 (Pl. Mem. at 31) (admitting Dr. Weir's "full refund" model of damages for purposes of class certification because, unlike here, "[t]his model matches plaintiffs' first theory of liability—that EZ Seed does not grow grass, and is thus valueless"). Here, Plaintiff cannot seriously claim that the flushable wipe products are valueless.

any analysis, and has no basis to make that assumption. *Id.* ¶ 40 (admitting that "product attributes that I have suggested for inclusion in the model," which necessarily include flushability, "*may turn out not to drive the price of the product.*") (emphasis added).

In order to calculate the value of any purported price premium, it is essential for Mr. Weir to identify all relevant product "attributes" of Defendants' flushable wipes, as well as those of other comparator products that he will necessarily use to calculate the value of the "flushable" attribute. Ugone Rebuttal § IV.B, C. But Weir offers *no* explanation or assurance as to *how* he will identify these product attributes, either for Defendants' products or for those sold by non-parties. *Id.* Indeed, he has thus far identified a list of five attributes, Weir Decl. ¶ 39, which he admits is incomplete. *Id.* ¶ 40; Ugone Rebuttal § IV.C. Notably, there is no comparable moist wipe offered by either Kimberly-Clark or Costco without the challenged "flushable" attribute, significantly complicating Weir's proposed analysis. Ugone Rebuttal § IV.B. Even if he could identify non-party "comparable" products that did not include "flushable" claims (which he has yet to do), his analysis would necessarily rely on unfounded assumptions that the calculated value for "flushable" claims could nonetheless be applied between the non-party products and Kimberly-Clark's eighteen challenged flushable wipes. *Id.* ("At best, if Mr. Weir can identify other branded comparator products with and without the 'flushable' claim, his calculated value would represent an average price premium <u>across those other products</u>, and he could only <u>assume</u> that the same value holds for the Challenged Products. However, there is no economic reason or support for Weir to assume that the impact of a "flushable" claim on the price of a Cottonelle or Scott brand product would be identical to the impact of a "flushable" claim on the price of other branded products.").

Even if Weir could identify all relevant comparator products and attributes, he offers no explanation as to how he would obtain the relevant data pertaining to each of those attributes. *Id.* § IV.D. While he states that "[t]he available data is sufficient to conduct the analysis," this is conjecture. Weir Decl. ¶ 57. Weir has not even identified the attributes for which he *needs* data. *Id.* ¶ 40; *see* Ugone Rebuttal § IV.D.

Nor does Weir explain how he will control for the myriad individualized pricing issues identified above. For instance, he fails to clarify whether he will need to run a separate analysis of—or how he will otherwise account for—each of the nineteen flushable wipe products included in the class; products offered in different packaging; products sold in different locations (*e.g.*, nationwide, in New York, and in New Jersey); and products sold by Kimberly-Clark using different technologies during different time periods that require different manufacturing costs to include a "flushable" claim. *See* Ugone Rebuttal. §§ III.B, D; IV.C. Weir also fails to explain how (or if) he will address sales prices or discounts at which consumers purchased defendants' wipes. *Id.* § III.D. If, for instance, he determines that the "flushable" claim adds $1.00 to the price of flushable wipes, but class members received a $2.00 discount, he does not indicate how the "premium" for those class members will be measured. Similarly, he ignores that dissatisfied class members have been compensated already for their purchases, and therefore paid no premium (or anything at all).[13]

---

[13] Finally, Weir's attempt to establish damages based on the purportedly uniform "difference between the market price of the Products and a measure of the market price that would exist but for the Defendants' unlawful, unfair or fraudulent business practices," Weir Decl. ¶ 19, is nothing more than an alleged "fraud on the market" theory, borrowed from private securities litigation. Ugone Rebuttal § III.E. But unlike a security traded in an "efficient" market, markets for retail goods are "vast, complex, and unpredictable," 5-23 Moore's Fed. Practice - Civil § 23.45(v)(b), such that it would be "patently absurd," *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 380-81 (D.N.J. 2004), and a drastic change to settled law, to apply the fraud-on-the-market presumption to consumer fraud claims. *Id.*

Because Weir has performed no analysis, and has provided the Court with no indication as to how his analysis will accurately measure "price premium" on a classwide basis, his Declaration cannot support class certification. *See, e.g., Weiner*, 2010 WL 3119452, at *6 (denying Rule 23(b)(3) certification regarding GBL § 349 claim where plaintiff alleged a price premium for defendant's product, because plaintiffs "failed to show how damages could be proven class-wide," such that "individualized inquiries as to . . . damages . . . would predominate over any issues of law or fact common to the class"); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *20 (E.D.N.Y. July 18, 2013) ("Proof that each class member paid a premium for vitaminwater over another beverage would not be susceptible to generalized proof.").

**D.      Statutory Damages Cannot Be Applied On A Class-Wide Basis.**

Finally, Plaintiff argues that all class members can be compensated through GBL §§ 349 and 350 statutory damages.  Pl. Mem. at 30.  But GBL § 349 "provides for the recovery of 'actual damages or fifty dollars, *whichever is greater*,'" *id.* (quoting GBL § 349(h) (emphasis added), and GBL § 350 similarly "provides for the recovery of actual damages or $500, *whichever is greater*.'" *Id.* (quoting GBL § 350) (emphasis added).

Neither statute precludes the need for individualized determinations, because neither statutory minimum would sufficiently compensate class members whose claimed "actual damages" are greater than $50 or $500.  This is significant because the Complaint details "horror stories" of flushable wipe consumers who allegedly suffered plumbing damages far exceeding those amounts.  Compl. ¶¶ 34, 86, 87.  Plaintiff believes that he paid between $200 and $300 for his New York plumbing damages, Kurtz Dep. (Ex. A to K-C Mem.) at 40:13-24, 47:21-48:19.  And while he has not indicated how much money he has spent to purchase Defendants' products, he bought Cottonelle brand flushable wipes "whenever he went shopping at various drug stores

25

. . . and supermarkets," and also purchased Kirkland Signature Moist Flushable Wipes from Costco stores approximately every three months, suggesting his own alleged damages would well exceed any statutory minimum.  *See* K-C Mem. at 10. ██████████████████████ ████████████████████████████████████████████████ Wailor Decl., Ex. 1 at 1-4, Ex. 2 at 2, 5 (filed in support of Costco's Motion to Deny Class Certification [D.E. 87].  To the extent Plaintiff nonetheless proposes that class members should be compensated for "the number of units sold . . . multiplied by the $50 or $500 statutory minimum," Pl. Mem. at 30, without consideration of those class members' "actual damages," such a method would not adequately measure the damages that allegedly resulted from Plaintiff's theory of liability.  *See Comcast*, 133 S. Ct. at 1433; Ugone Rebuttal § VIII.[14]  Moreover, to the extent Plaintiff purports to abandon class members' actual damages above $50 or $500, he is not an adequate class representative.  *See, e.g., In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 339-340 (S.D.N.Y. 2002) ("the waiver or abandonment of personal injury or other claims by named plaintiffs render them inadequate class representatives").[15]

---

[14] Plaintiff does not cite any case from within the Second Circuit in which a court certified a class on the basis of statutory damages under the GBL.  He cites a case that evidently did not consider, for purposes of plaintiff's GBL § 349 claim, whether "actual damages" above the $50 statutory minimum would present individualized issues, as they would here.  *See Guido v. L'Oreal, USA, Inc.,* Nos. CV 11-1067, 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013) (Pl. Mem. at 30 n.26).

[15] Plaintiff further argues that if individualized damages issues overwhelm questions common to class members, the Court can certify a liability-only class.  *See* Pl. Mem. at 31 n.28.  But in the one case that Plaintiff relies on for this argument the Second Circuit recognized that the possibility of doing so is only present where certification would otherwise be denied "*on the sole ground*" that individualized damages calculations would be unmanageable.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (emphasis added).  Here, by contrast, Plaintiff's failure to offer any means through which to accurately measure class members' damages is only one issue among many that make certification improper.  Moreover, as shown *supra* at 19-20, demonstrating that plaintiffs sustained economic damages is necessary to proving injury here (except as to the above-discussed plumbing injury theory), thus a liability-only class would have the same deficiency as a class certified for all purposes.

Even if statutory damages under the GBL were sufficient to measure class members' damages, they could not be applied to the putative members in Plaintiff's nationwide classes, because GBL § 349 and § 350 claims are inapplicable to out-of-state consumers. *See infra*, § V.

## IV.   MEMBERSHIP IN THE PUTATIVE CLASSES IS NOT ASCERTAINABLE.

Plaintiff is incorrect that his proposed classes are ascertainable. Pl. Mem. at 34-36. There are no "administratively feasible" means by which to determine who purchased Kimberly-Clark's flushable wipes. K-C Mem. at 32-33. Plaintiff argues that class members can be identified through Costco sales data, subpoenas regarding "retailers' loyalty card programs or other records," and "sworn affidavits identifying the particulars of the purchase[s] and/or through records of class members' purchase[s]." Pl. Mem. at 35. While Plaintiff has allegedly obtained records from two online retailers, *id.*, internet sales make up a small fraction of Kimberly-Clark's total sales. *See* O'Connor Dep. (Ex. D to K-C Mem.) at 76:1-5 (testifying that Amazon, the largest online retailer of Kimberly-Clark's flushable wipes, accounts for "less than 1 percent" of "the overall business"). Plaintiff offers no evidence that any other retailers retain information regarding those customers who have purchased Kimberly-Clark flushable wipes, and it is unlikely that they do.

Although Plaintiff identifies "sworn affidavits" as a means to identify class members, there is no reason to believe that putative class members will accurately recall details pertaining to the products they allegedly purchased since 2008, particularly in light of the dozens of flushable wipe products manufactured and sold by non-parties. *See* K-C Mem. at 33; Compl. ¶¶ 28-30; *see also Weiner*, 2010 WL 3119452, at *13 ("soliciting declarations from putative class members regarding their history of [product] purchases would invite them to speculate, or worse").

27

*Ebin*, upon which Plaintiff again largely stakes his case for certification, Pl. Mem. at 34-36, is distinguishable.  After recognizing that the "ascertainability difficulties" were "formidable," Judge Rakoff held that the court would not deny certification on that "*sole ground.*"  297 F.R.D. at 567.  Plaintiff in this case cannot satisfy Rule 23 commonality, typicality, adequacy, predominance, or superiority requirements, and the more "formidable" lack of ascertainability here compounds those shortcomings.  Moreover, Plaintiff's failure to demonstrate ascertainability is more glaring here than in *Ebin*, where the plaintiff at least presented evidence from a class action administrator regarding the proposed means through which he believed he could identify class members.  *Id.*  Plaintiff here has done no such thing.

Because no sufficient means exist to determine class membership for the vast majority of putative members, Plaintiff's proposed classes cannot be ascertained and class certification should be denied.  *See Ackerman*, 2013 WL 7044866, at *21 (denying certification for lack of predominance and superiority where "it would be exceedingly difficult to identify the members of these two classes and give them appropriate notice and an opportunity to opt out"); *Weiner*, 2010 WL 3119452, at *13.

## V.   CLASS CERTIFICATION OF A NATIONWIDE CLASS WOULD BE IMPROPER.

Plaintiff fails to show that a nationwide class-wide trial on the causes of action pleaded here would be manageable.  Rather, he bases his assertion that nationwide certification is appropriate on three footnotes in which he largely relies on cases certifying nationwide *settlement* classes.  *See* Pl. Mem. at 24-25 n.20, 26 n.22, 30 n.27.  These cases are inapposite because "'some inquiries essential to litigation class certification are no longer problematic in the settlement context . . . [T]he settlement class *presents no management problems* because the case

will not be tried.'" *In re AIG, Inc. Secs. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (emphasis added); *see also Amchem*, 521 U.S. at 620.

Plaintiff ignores the Second Circuit's recognition that "manageability is by the far, the most critical concern in determining whether a class action is superior," *Sykes*, 2015 WL 525904, at *9 (quotation omitted), and offers no explanation as to how the trial of a nationwide class would be manageable.  Plaintiff argues instead that "[u]nless Defendants present a conflict of material difference between the consumer fraud statutes . . . , Plaintiff is not precluded from bringing a claims on behalf of a nationwide class for violations of the New York statutes." *See* Pl. Mem. at 24-25 n.20.

Not only are there material conflicts between state consumer fraud statutes (and between state laws controlling Plaintiff's common law claims), see *infra*, but Plaintiff's attempt to unload his own burden of proof onto Defendants is a misstatement of the law: "Plaintiff[] b[ears] the burden of providing an extensive analysis of state law variations to determine whether there are insuperable obstacles to class certification." *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 71 n.59 (S.D.N.Y. 2002) (citations omitted).  Plaintiff's failure to satisfy his burden is, alone, sufficient to deny nationwide class certification.  Nonetheless, as set forth below, because (i) the GBL and NJCFA cannot be applied extra-territorially as a matter of law, and (ii) each of Plaintiff's claims would require the unmanageable application of all 50 states' laws, certification of proposed nationwide classes is improper.

### A.    Plaintiff Cannot Maintain Nationwide GBL Or NJCFA Claims As A Matter Of Law.

Kimberly-Clark showed that the GBL and NJCFA are inapplicable to purchases made outside of New York and New Jersey, respectively.  K-C Mem. at 34.  Plaintiff ignores this law, arguing that "Plaintiff's claims under GBL §§349 and 350 can be brought or certified on a

nationwide basis," Pl. Mem. at 24 n.20, and that "[t]he NJCFA claim can be certified on a nationwide basis," *id.* at 26 n.22.  The *only* New York case that Plaintiff cites for this premise involved a settlement class, in which the court never even considered the nationwide applicability of GBL §§349 and 350.[16]  Cases that Plaintiff relies upon regarding nationwide application of the NJCFA are likewise inapposite, because the extension of the statute requires a defendant who, unlike here, is a New Jersey citizen.[17]  Certification of Plaintiff's proposed nationwide classes should therefore be denied with regard to his GBL and NJCFA claims (Counts III, IV, and V).

**B.      The Necessary Application Of All 50 States' Laws To Class Members' Claims Makes The Class Action Unmanageable And Not Superior To Other Methods Of Adjudication.**

Even if Plaintiff's statutory consumer claims were not barred as to out-of-state consumers as a matter of law, material conflicts between the 50 states' consumer statutes and the states' common laws would render nationwide certification unmanageable.  *See* K-C Mem. at 35-38.

---

[16] *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 236 (E.D.N.Y. 2010) (Pl. Mem. at 24 n.20) (assessing fairness of nationwide *settlement*); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 48 (E.D.N.Y. 2008) (granting certification of *New York-only class*).  *In re Grand Theft Auto Video Game Consumer Litig.*, also relied on by Plaintiff for the conclusion that "[i]t is entirely appropriate for Plaintiff . . . to represent a *putative* nationwide class," Pl. Mem. at 24 n.20 (emphasis added), did not involve a motion for class certification, but rather a motion to dismiss on the pleadings.  No. 06 MD 1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006).

[17] *See Elias v. Ungar's Food Prods. Inc.*, 252 F.R.D. 233, 247 (D.N.J. 2008) (Pl. Mem. at 26 n.22) (NJCFA could be applied to nationwide class because "New Jersey is the location of defendants' place of business, where it maintains its headquarter offices, plans its product development, advertising, promotion, and marketing strategies, and the state where it manufactures and ships its products.  Thus all of the products and statements about them were conceived in and emanated from New Jersey."); *Kalow & Springut, LLP v. Commence Corp.*, No. 07-3442, 2012 WL 6093876, at *3 (D.N.J. Dec. 7, 2012) (Pl. Mem. at 26 n.22) (similar); *Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152, 2006 WL 2403982, at *7 (D.N.J. Aug. 17, 2006) (Pl. Mem. at 26, n.22) (similar); *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 894 A.2d 1136, 1148-49 (N.J. Super. Ct. 2006) (similar).

1.    <u>Conflicts Exist Between The 50 States' Laws.</u>

"[T]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (quotation omitted).  With regard to each of Plaintiff's claims, courts have found material conflicts between the state laws.[18]

***State Consumer Protection Statutes***.  States' consumer protection laws differ with respect to the required elements to state a cause of action, including, *inter alia*, reliance, scienter, ascertainable loss, and notice.  *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 n.8 (S.D.N.Y. 2008); *In re Worldcom, Inc.*, 343 B.R. 412, 427 (S.D.N.Y. 2006) (similar); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) (citing varying statutory scienter and reliance requirements); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules.").  Likewise, "there are also material differences in the remedies given by state [consumer] laws." *Mazza*, 666 F.3d at 591.  States also differ with respect the availability of class actions under their consumer protection statutes, *In re Grand Theft Auto*, 251 F.R.D. at 147 n.8, and statutes of limitations, relevant here in light of Plaintiff's proposed 7-year class period.  *See, e.g.*, *In re Worldcom*, 343 B.R. at 427 (noting "substantial differences regarding . . . statute of limitations"); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 291 F.R.D. 13, 19 (D. Mass. 2013) (recognizing "the varying statute of limitations with respect to consumer fraud laws").

---

[18] Given Plaintiff's non-existent showing regarding conflicts of law and manageability, it would be inefficient to brief exhaustively the overwhelming number of differences among the 50 states' laws.  If this Court has any doubt about manageability, Kimberly-Clark is willing to submit further briefing citing the laws of each and every state.

*Breach of Express Warranty*.  "[S]tates have diverse bodies of law on warranty." *Kaczmarek*, 186 F.R.D. at 312.  For instance, "many states require proof of privity to state a claim for breach of warranty, while many others require no such proof." *In re Grand Theft Auto*, 251 F.R.D. at 147 n.8.  Further, "a significant number of . . . states . . . require specific reliance on a seller's statements" to state a breach of express warranty claim. *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 320 (S.D. Ill. 2007).

*Negligent Misrepresentation*.  States likewise "have diverse bodies of law on . . . negligent misrepresentation," including with regard to privity and reliance requirements. *Kaczmarek*, 186 F.R.D. at 312; *see also AHW Inv. P'ship v. Citigroup Inc.*, 980 F. Supp. 2d 510, 524 (S.D.N.Y. 2013) ("New York law requires 'the existence of a special or privity-like relationship' between the plaintiff and defendant for a successful negligent misrepresentation claim").

*Unjust Enrichment*.  While Plaintiff never actually argues for certification of his putative nationwide classes with regard to his unjust enrichment claim, "there are differences nationwide in the very definition of unjust enrichment and its availability as a remedy.  Some states preclude such claims when an adequate legal remedy is available, and many states say the existence of an enforceable contract will preclude an unjust enrichment claim." *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008).  Unjust enrichment laws also vary with respect to whether defendant's "misconduct [must] include dishonesty or fraud," and whether defendants can put forth "an equitable defense of unclean hands." *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999).

2.    New York Courts Would Apply The Law Of The State Of Residence Or
Purchase To Class Members Claims.

In light of these conflicts, a choice of law analysis must be conducted under New York law. *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 69 ("[i]n determining what substantive law applies, federal courts apply the choice of law rules of the forum state"). For both tort and contract claims, that analysis results in the application of the law of each putative class member's state of residence or purchase. K-C Mem. at 35-37. And courts within this Circuit and elsewhere routinely recognize that where conflicting state laws must be applied, trial of a nationwide class action is untenable. *Id.* at 37-38 (collecting cases). For these reasons—and because of Plaintiff's failure to carry his burden of demonstrating the manageability of his proposed classes—his motion should be denied.

## VI.    THE COURT SHOULD DENY CERTIFICATION OF A RULE 23(B)(2) CLASS.

Plaintiff's request for Rule 23(b)(2) certification of his proposed classes should be rejected for a litany of reasons. *See* Pl. Mem. at 36-38. *First*, because Plaintiff cannot satisfy Rule 23(a) commonality, typicality, and adequacy requirements, certification under any prong of Rule 23(b) is improper. *See supra* Argument §§ I-II; Fed. R. Civ. P. 23(b) (prerequisite to any 23(b) class is that "Rule 23(a) is satisfied").

*Second*, despite Plaintiff's contention that an injunction is "one of the goals of the litigation," Pl. Mem. at 37-38, he fails to make the necessary showing that monetary damages are merely "incidental to the injunctive or declaratory relief" sought. *Dukes*, 131 S. Ct. at 2557; K-C Mem. at 38-39. Plaintiff seeks monetary damages in the form of plumbing costs, refunds for purchases, price premiums paid, and statutory damages, and he has hired an expert economist to assist in that endeavor. The Complaint and Dr. Kurtz's testimony make clear that monetary damages are the primary goal of this litigation. He testified, for instance, that he brought suit

because he thought "to approach, at the time, Costco, regarding my products, . . . I knew at most they would reimburse me for the cost of my product *which nowhere neared what my damages were.* Kurtz Dep. (Ex. BB to Reich Decl.) at 105:9-17 (emphasis added).[19]

Plaintiff has no interest in including in his class "the person who purchased the product and ha[s] no plumbing issues whatsoever." Kurtz Dep. (Ex. BB to Reich Decl.) at 154:17-22. He is fundamentally seeking to pursue a class of damage claimants, not to prevent future injuries. This is not a case that meets the Second Circuit's requirement that to certify a (b)(2) class "a court should, 'at a minimum, satisfy itself [that] even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 223 (2d Cir. 2012) (citation omitted); *see id.* at 224 (holding that (b)(2) class was inappropriate where it was not clear that injunction would "appl[y] to every class member"). Furthermore, because his ability to prove any injury aside from consumers' plumbing injury hinges on his ability to show that individuals incurred monetary damage in the form of a "price premium," *see supra* Argument § III (discussing, *inter alia*, *Small*, 94 N.Y.2d at 56), damages cannot be deemed incidental. Because Rule 23(b)(2) certification here would serve only as an end-run around the "procedural protections attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt-out," it should be denied. *Dukes*, 131 S. Ct. at 2558.

*Third*, Plaintiff does not and cannot make any showing that a non-opt out 23(b)(2) class is based on a group harm and seeks class-wide relief necessary to demonstrate "cohesion" and

---

[19] *See also, e.g.*, Compl. ¶¶ 4, 75, 76, 77, 79, 80, 82, 83, 86, 87, 89, 93, 94; Kurtz Dep. (Ex. BB to Reich Decl.) at 109:20-25 ("Q. What do you want from this lawsuit? A. I want to be reimbursed for the damages that I incurred. I also think that I overpaid for a product, which is marketed as flushable which is not flushable."); *id.* at 154:4-113 (similar); *but cf. id.* at 109:25-110:5 ("I also would like the product to either be stop being sold, relabeled, something being done with the product itself to stop further damage."); *id.* at 154:12-16 (similar).

satisfy the requirements the Supreme Court articulated in *Dukes*. *See* Pl. Mem. at 36-37. In particular, the *Dukes* Court explained that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class," and "the relief sought must perforce affect the entire class at once." 131 S. Ct. at 2557-58; *see id.* at 2558 (explaining that Rule 23(b)(3) "allows class certification in a much wider set of circumstances" than Rule 23(b)(2), and describing commonality and predominance as lower thresholds). A (b)(2) class is appropriate only where the challenged conduct may "be enjoined or declared unlawful only as to all of the class members or as to none of them" and the relief sought is "indivisible." *Id.* at 2557.[20]

Stated differently, consistent with the absence of opt-out rights afforded to members of a (b)(2) class, "[i]f class members cannot exclude themselves from the binding effect of a class-wide determination, fairness dictates that *no material variation* distinguish the class members' circumstances concerning the claim, including the injuries allegedly suffered by class members, so that a single injunction need not differentiate among class members." *McLaughlin on Class Actions: Law & Practice* § 5:15, p.1054 (8th ed.) (emphasis added).

Thus, even well before *Dukes* put more teeth in the Rule 23(b)(2) standard, the Second Circuit and other courts had recognized that the certification of a Rule 23(b)(2) class requires "cohesion" among the class members, *see, e.g., Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143-45 (3d Cir. 1998), such that their interests are fundamentally aligned throughout litigation, and individualized issues do not interfere with the proof of the group injury and a singular remedy. *See, e.g., Barnes*, 161 F.3d at

---

[20] The Court observed that "[i]n none of the cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for *individualized relief* with their classwide injunction." *Dukes*, 131 S. Ct. at 2558 (emphasis added).

143 ("courts must determine whether a proposed (b)(2) class implicates individual issues" and "disparate issues make class treatment inappropriate"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 75 ("The individual issues that defeat the predominance requirement of Rule 23(b)(3) also pose an obstacle to class certification in the Rule 23(b)(2) context.").[21] The cohesion essential to a (b)(2) class "can be destroyed by showing individualized issues as to liability or remedy." *Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 197 (E.D.N.Y. 2006) (citing Manual for Complex Litigation § 21.142 (4th ed. 2004)); *accord In re MTBE Prods. Liab. Litig.*, 209 F.R.D. at 342-43 (individualized issues destroyed cohesion and the lack of cohesiveness precluded the court from issuing an injunction that would comply with the federal rules).

As explained, Plaintiff and the putative class members' claims are rife with individualized issues, *supra* Argument §§ I-III, and this is far from a circumstance where the challenged conduct may "be enjoined or declared unlawful only as to all of the class members or as to none of them," or where the relief sought is "indivisible." *Dukes*, 131 S. Ct. at 2557. Although Plaintiff argues that "Defendants' deceptive marketing of the Flushable Products is an action of general applicability to all members of the classes," Pl. Mem. at 36, that is not so given what each class member must prove to demonstrate liability,[22] and how that proof affects

---

[21] The Second Circuit and other courts repeatedly have recognized that predominance and cohesion are related inquiries. *See Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) ("'As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'") (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006)). As noted, *Dukes* stated that the 23(b)(3) requirement of predominance is easier to satisfy than the requirements of Rule 23(b)(2). *See* 131 S. Ct. at 2558.

[22] The *Ackerman* analysis upon which Plaintiff relies (Pl. Mem. 38) is incomplete insofar as it suggests that if "the name 'vitaminwater' is misleading to a reasonable consumer," then liability is established such that "equitable relief in the form of an injunction would be an appropriate remedy." 2013 WL 7044866, at *17. Regardless of whether a reasonable consumer would be

whether an injunction would benefit the entire class.[23]   As described above, there are significant numbers of consumers who are satisfied with their purchases and use of Kimberly-Clark's flushable wipes, have flushed them down their toilets without incident (Plaintiff, for nearly his first decade of use, for instance), and who seek out other unique attributes of the wipes apart from their flushability.  *See, e.g., McNair*, 2010 WL 4777483, at *6 (denying Rule 23(b)(2) certification of consumer class action based on lack of cohesion where "not all of the Plaintiffs were deceived by the [allegedly objectively misleading representations]").

Indeed, not only does Plaintiff fail to offer any workable definition of "flushable" that suggests why Kimberly-Clark's usage is misleading, but even if Plaintiff could demonstrate that "flushable" was objectively misleading, there are multiple reasons why a consumer may not have

---

misled, a plaintiff cannot demonstrate liability where he or she was not him or herself deceived, or where any material deception did not cause injury.  *See, e.g., Small*, 94 N.Y.2d at 56  (holding that the act of deception does not alone suffice to demonstrate injury); *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 53 (1st Dep't 2004) (requiring plaintiff to show that "defendant made misrepresentations or omissions that were likely to mislead a reasonable consumer in the plaintiff's circumstances, that the plaintiff was deceived by those misrepresentations or omissions and that as a result the plaintiff suffered injury"); *see generally Dukes*, 131 S. Ct. at 2557; *see also supra* Argument § I.

[23] Before and after *Dukes*, courts have consistently rejected the notion that a common course of conduct is sufficient to establish cohesion and the propriety of a (b)(2) class.  *See, e.g., Barnes*, 161 F.3d at 143-45; *McNair v. Synapse Grp., Inc.*, No. 06-5072(JLL), 2010 WL 4777483, at *6 (D.N.J. Nov. 15, 2010) (rejecting plaintiff's attempt "to simply equate a common course of conduct with cohesion," and explaining "if a plaintiff could show that one person was injured by a defendant's practice, it could obtain certification of a class seeking injunctive relief for all people who also experienced the practice, regardless of whether they were injured or whether they had any facts in common with the other plaintiffs"), *aff'd on other grounds*, 672 F.3d 213 (3d Cir. 2012); *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 369 (S.D. Iowa 2008) ("The Court would be hard-pressed to conclude that the sole common trait necessarily shared by all plaintiffs—ownership of cookware with a non-stick coating manufactured by DuPont—renders each class cohesive under the meaning of Rule 23(b)(2)."); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 736 (S.D. Fla. 2007) (similar); *compare* Pl. Mem. 36-38 (relying on allegedly common conduct).

been deceived, which would preclude a classwide injunction. *See McNair*, 2010 WL 4777483, at *6 (explaining that for plaintiffs not deceived "the relief requested would have no benefit").[24]

In finding, in the 23(b)(3) context, that a similar "lack of cohesion" existed in a putative consumer class action alleging that it was misleading to label certain foods as "natural," Judge Breyer reasoned "that "'even if the challenged statements were *facially* uniform, consumers' *understanding* of those representations would not be.'" *Jones*, 2014 WL 2702726, at *14. The court explained that this was especially so because "there is no fixed meaning for the word 'natural.'" *Id.*; *see id.* at *15 (relying on evidence that "some customers have never noted the 'natural claim,'" "would buy a product regardless of whether the product says 'natural,' and do not care about labeling statements"); *id.* at *17 (similar); K-C Mem. at 6-8 (detailing similar and richer evidence here). Just as "there is no single, controlling definition of the word 'natural,'" *Jones*, 2014 WL 2702726, at *15, there is no universal definition of "flushable," which unravels any claim of cohesiveness or hope of formulating a one-size-fits-all injunction that benefits the entire class. *See Dukes*, 131 S. Ct. at 2557-59; *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 n.8 (7th Cir. 2011) ("Where a class is not cohesive such that a uniform remedy will not redress the injuries of *all* plaintiffs, class certification is typically not appropriate.").

Moreover, given the rare instances in which consumers have reported problems flushing Kimberly-Clark's wipes (and even assuming the consumers who experience such problems have well-maintained plumbing and use the wipes as directed), there are many consumers who would

---

[24] For example, a class member who understands "flushable" to have its dictionary definition (designed to be flushed) would not be deceived; there is no dispute that Kimberly-Clark's products were designed and patented for that purpose. Nor would such a class member be deceived (or injured) if he or she always flushed the product successfully. Another class member who reads Kimberly-Clark's website and therefore understands "flushable" to mean, as Kimberly-Clark defines it, that the product passes the tests set forth in the 3rd Edition of the INDA/EDANA Guidelines, likewise would not be deceived.

be negatively impacted by injunctive relief that would prohibit Kimberly-Clark from selling wipes labeled as "flushable," which apparently is the relief Plaintiff seeks.  Pl. Mem. at 38. Whatever Plaintiff believes "flushable" means or should mean, there is no dispute that Kimberly-Clark's wipes are designed for flushing down toilets (and utilize patented technology to do so), which makes them wholly unlike wipes not labeled as flushable that are not designed for or warranted to ever perform for that purpose.  By the same token, Plaintiff does not allege or put forward evidence that non-flushable wipes are capable of being flushed without incident, let alone that their flushing performance is equal to or better than that of Kimberly-Clark's flushable wipes.[25]  But if an injunction is granted, consumers—including those for whom flushable wipes always have flushed—would need to guess at which products they could purchase to use in their well-maintained plumbing.  Because the evidence shows that consumers (and the municipalities which Plaintiff repeatedly invokes) experience most of their problems from attempting to flush wipes not designed or labeled for flushing (*see supra* n.4), the negative repercussions of an injunction for consumers could be extensive.  Plainly, not all class members would benefit.

*Finally*, Plaintiff lacks Article III standing to seek injunctive relief, rendering his putative (b)(2) class unfit for certification.  See K-C Mem. at 39-40.[26]  Because Plaintiff is aware of

---

[25] The case for cohesion among the class is weaker yet insofar as Plaintiff's class encompasses multiple technologies that Kimberly-Clark has used in its flushable wipes. *See Jones*, 2014 WL 2702726, at *14 (finding "a lack of cohesion among the class members . . . because consumers were exposed to label statements that varied by can size, variety, and time period (*and the challenged ingredients also differed*)") (emphasis added).  Therefore, even if Plaintiff could show that it was misleading to label wipes that used a former technology as "flushable" and that individual class members were injured by those representations, that says nothing about whether an injunction should prohibit Kimberly-Clark from labeling wipes as flushable that use different technologies today.

[26] Although Kimberly-Clark acknowledges this Court's related standing ruling in denying a motion to dismiss an injunctive relief claim in *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, slip op. at 5-7 (E.D.N.Y. Mar. 20, 2015), Kimberly-Clark respectfully raises this issue for the purpose of error preservation and because the *Belfiore* briefing and disposition may have

Defendants' allegedly deceptive statements, he cannot demonstrate an injury-in-fact traceable to the conduct in question that would be redressed by a favorable decision and injunction.[27]  In *McNair v. Synapse Grp. Inc.*, the Third Circuit denied 23(b)(2) certification of consumer fraud claims brought on behalf of consumer class, because plaintiffs were no longer customers of defendant, and therefore could not "satisfy the constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm" for Article III standing.  672 F.3d 213, 223-225 (3d Cir. 2012) (citing *Lyons*, 461 U.S. at 109).

Similarly, in *Hecht* the Second Circuit held that a district court's approval of a pre-*Dukes* class settlement, which provided both monetary and injunctive relief, was improperly certified under Rule 23(b)(2) and therefore did not preclude the claims of a plaintiff who fell within the class definition.  691 F.3d at 223-24.  In determining whether the plaintiff should have been afforded notice and opt-out rights (as required for 23(b)(3) classes, but not (b)(2) classes, *see Dukes*, 131 S. Ct. at 2559), the court examined the class definition, finding that it was "retrospective" "even though the injunction order was solely addressed to [defendant's] future conduct."  691 F.3d at 223.  The Second Circuit then reasoned that because "an injunction is generally 'unavailable where there is no showing of any real or immediate threat that the plaintiff will be wronged again,'" *id.* at 223-24 (quoting *Lyons*, 461 U.S. at 111), the class merely "ensure[d] that every member would be entitled to damages, but not that every member would have *standing to seek injunctive relief.*"  *Id.* (emphasis added, additional emphasis omitted). Because not all class members had standing to seek injunctive relief, the court held that "the

---

overlooked conflicting guidance from the Second Circuit and a square holding of the Third Circuit.

[27] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (requiring a "real or immediate threat that plaintiff will be wronged again"); *id.* at 105 ("*Lyons'* standing to seek the injunction requested depended on whether he was likely to suffer future injury").

claim for damages in [the settlement class] predominated" and therefore notice and opt-out rights should have been granted, *i.e.*, the class was not properly certified as a (b)(2) class. *Id.* at 224. Here too, a Rule 23(b)(2) class would be inappropriate because not all class members have standing to seek injunctive relief.

## CONCLUSION

For the foregoing reasons and those stated in Kimberly-Clark's Memorandum, class certification should be denied with respect to each of Plaintiff's proposed classes.

Dated: March 27, 2015

SIDLEY AUSTIN LLP

By: /s/ *Eamon P. Joyce*
Eamon P. Joyce
ejoyce@sidley.com
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

James W. Mizgala (*pro hac vice*)
jmizgala@sidley.com
Kara L. McCall (*pro hac vice*)
kmccall@sidley.com
Daniel A. Spira (*pro hac vice*)
dspira@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Kimberly-Clark Corporation*