UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————— x

D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

     Plaintiff,

  vs.

KIMBERLY-CLARK CORPORATION, et al.,

     Defendants.

—————————————————— x

Civil Action No. 1:14-cv-01142

<u>CLASS ACTION</u>

OMNIBUS MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION AND
APPOINTMENT OF CLASS
REPRESENTATIVE AND CLASS
COUNSEL

**FILED UNDER SEAL**
(Leave to File Under Seal Granted February
27, 2015)

**Page**

I.  INTRODUCTION .................................................................................1

II.  SUMMARY OF COMMON FACTS ...................................................4

    A.  Defendants' Promotion of Flushable Products as Safe for Home Plumbing ..........7

    B.  Defendants' Flushability, and Related Claims, Are Untrue ...................................8

    C.  Plaintiff Was Harmed Through His Purchases and Use of Defendants' Flushable Products ...................................................................12

III.  LEGAL STANDARD FOR CLASS CERTIFICATION ..................................14

IV.  THE REQUIREMENTS OF RULE 23(a) ARE READILY MET ...................15

    A.  The Classes Satisfy the Numerosity Requirement ...................................15

    B.  Commonality Is Satisfied ...................................15

    C.  Plaintiff's Claims Are Typical ...................................16

    D.  Plaintiff Will Adequately Represent the Classes ...................................18

        1.  Plaintiff's Interests Do Not Conflict with the Classes ...................................18

        2.  Plaintiff's Counsel Are More Than Qualified ...................................19

V.  REQUIREMENTS FOR CERTIFICATION UNDER RULE 23(b) ARE SATISFIED ...................................21

    A.  The Requirements for Certification Under Rule 23(b)(3) Are Readily Met .........21

        1.  Common Questions of Law or Fact Predominate ...................................21

            a.  The Elements of the New York and New Jersey Consumer Protection Claims Can Be Established Through Common Proof ...................................22

                (i)  The New York Consumer Protection Claim ..........22

                (ii)  The New Jersey Consumer Fraud Claim ..............25

            b.  The Elements of Negligent Misrepresentation Can Be Established Through Common Proof ...................................27

- i -

**Page**

c.     The Elements of the Express Warranty Claim Can Be Established Through Common Proof ............................................... 27

d.     Damages Are Measureable on a Classwide Basis ........................ 29

2.     Class Litigation Is Superior to Other Methods of Adjudication ............... 31

3.     The Six Proposed Classes Are Ascertainable ........................................... 34

B.     The Requirements for Certification Under Rule 23(b)(2) Are Satisfied .............. 36

VI.     CONCLUSION ............................................................................................................. 38

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ackerman v. The Coca-Cola Co.*,
CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156
(E.D.N.Y. July 21, 2010) ........................................................................................22, 23, 38

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................... *passim*

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ........................................................................................18

*Bosland v. Warnock Dodge, Inc.*,
197 N.J. 543 (2009) ........................................................................................25

*Bregman Screen & Lumbar Co. v. Bechefsky*,
16 N.J. Super. 35 (App. Div. 1951) ........................................................................................28

*Bristol Village, Inc. v. Louisiana–Pacific Corp.*,
916 F. Supp. 2d 357 (W.D.N.Y. 2013) ........................................................................................30

*Broder v. MBNA Corp.*,
281 A.D.2d 369 (1st Dep't N.Y. 2001) ........................................................................................24

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) ........................................................................................21

*Butler v Sears, Roebuck & Co.*
702 F.3d 359 (2012) ........................................................................................14

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ........................................................................................1, 29, 31

*Carnegie v. Household Intern., Inc.*,
376 F.3d 656 (7th Cir. 2004) ........................................................................................36

*Civic Ass'n of the Deaf v. Giuliani*,
915 F. Supp. 622 (S.D.N.Y. 1996) ........................................................................................15

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ........................................................................................29, 31

*Consol. Rail Corp. v. Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ........................................................................................15

**Page**

Cortigiano v. Oceanview Manor Home for Adults,
227 F.R.D. 194 (E.D.N.Y. 2005) .......................................................14

Cromer Finance Ltd. v. Berger,
205 F.R.D. 113 (S.D.N.Y. 2001) ..................................................32, 33

Curley v. AMR Corp.,
153 F.3d 5 (2d Cir. 1998) ..............................................................25

Dal Ponte v. Am. Mortg. Express Corp.,
No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675
(D.N.J. Aug. 17, 2006) ...................................................................26

Dupler v. Costco Wholesale Corp.,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) .............................................24

Dura-Bilt Corp. v. Chase Manhattan Corp.,
89 F.R.D. 87 (S.D.N.Y. 1981) .........................................................33

Ebin v. Kangadis Food Inc.,
No. 13 Civ. 2311 (JSR), 2014 U.S. Dist. LEXIS 26439
(S.D.N.Y. Feb. 24, 2014) ................................................................31

Ebin v. Kangadis Food, Inc.,
297 F.R.D. 561 (S.D.N.Y. 2014) .............................................. passim

Elias v. Unger Food Products, Inc.,
252 F.R.D. 233 (D.N.J. 2008) .........................................25, 26, 28, 31

Enzo Forcellati v. Hyland's Inc.,
No. CV 12-1983-GHK, 2014 U.S. Dist. LEXIS 50600
(C.D. Cal. 2014) ........................................................................34, 35

Fitzpatrick v. General Mills, Inc.,
263 F.R.D. 687 (S.D. Fla. 2010),
vacated on other grounds, 635 F.3d 1279 (11th Cir. 2011) ..................24

Fogarazzao v. Lehman Bros., Inc.,
232 F.R.D. 176 (S.D.N.Y. 2005) .....................................................16

Gennari v. Weichert Cop. Realtors,
148 N.J. 582 (1997) ......................................................................25

**Page**

*Gorat v. Capala Bros., Inc.,*
07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451
(E.D.N.Y. Apr. 9, 2010)..................................................................................34

*Gortat v. Capala Bros., Inc.,*
257 F.R.D. 353 (E.D.N.Y. 2009) ....................................................................14

*Goshen v. Mut. Life Ins. Co. of N.Y.,*
98 N.Y.2d 314, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002)........................22

*Guido v. L'Oreal, USA, Inc.,*
284 F.R.D. 468 (C.D. Cal. 2012) ...................................................................23

*Guido v. L'Oreal, USA, Inc.,*
CV 11-1067 CAS (JCx), 2013 U.S. Dist. LEXIS 94031
(C.D. Cal. July 1, 2013) .................................................................................30

*Gulf Oil Co. v. Bernard,*
452 U.S. 89 (1981).........................................................................................14

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .......................................................................34

*In re Grand Theft Auto Video Game Consumer Litig.,*
06 MD 1739 (SWK) (MHD), 2006 U.S. Dist. LEXIS 78064
(S.D.N.Y. Oct. 25, 2006) ...............................................................................24

*In re Initial Pub. Offerings Sec. Litig.,*
471 F.3d 24 (2d Cir. 2006).............................................................................34

*In re Mercedes-Benz Tele Aid Contract Litigation,*
257 F.R.D. 46 (D.N.J. 2009),
*mot. to decertify class denied,* 267 F.R.D. 113 (D.N.J. 2010) .....................26

*In re Methyl Tertiary Buyl Ether ("MTBE") Prods. Liab. Litig.,*
209 F.R.D. 323 (S.D.N.Y. 2002) ..............................................................34, 35

*In re Nassau County Strip Search Cases,*
461 F.3d 219 (2d Cir. 2006)...........................................................................21

*In re Scotts EZ Seed Litig.,*
12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 9116
(S.D.N.Y. Jan. 26, 2015).......................................................................*passim*

**Page**

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)..........................................................................14, 31, 33

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   678 F.3d 409 (6th Cir. 2012) ........................................................................1, 16, 33

*Int'l Union of Operating Eng'rs Local 68 Welfare Fund v. Merck & Co.*,
   894 A.2d 1136 (N.J. App. Div. 2006),
   *overruled on other grounds*, 192 N.J. 372 (2007) ................................................26

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) .............................................................23, 24, 37

*Kalow & Springut, LLP v. Commence Corp.*,
   No. 07-3442, 2012 U.S. Dist. LEXIS 173785
   (D.N.J. Dec. 7, 2012) ........................................................................................26

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ..........................................................................32

*Koch v. Acker, Merrall & Condit Co.*,
   18 N.Y.3d 940, 967 N.E.2d 675, 944 N.Y.S.2d 452 (2012)...................................22

*Kraft v. Staten Island Boat Sales, Inc.*,
   715 F. Supp. 2d 464 (S.D.N.Y. 2010).................................................................28

*Laufer v. U. S. Life Ins. Co. in City of New York*,
   385 N.J. Super. 172 (App. Div. 2006) ................................................................37

*Lee v. Carter-Reed Co., L.L.C.*,
   203 N.J. 496 (2010) .........................................................................................25

*Leider v. Ralfe*,
   01 Civ. 3137 (HB)(FM), 2004 U.S. Dist. LEXIS 15345
   (S.D.N.Y. July 30, 2004) ...................................................................................29

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).........................................................................14, 15

*Metromedia Co. v. Fugazy*,
   983 F.2d 350 (2d Cir. 1992)..............................................................................28

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. N.Y. 2002).................................................................27

*Morrissey v. Nextel Partners, Inc.*,
    72 A.D.3d 209 (3d Dep't 2010)....................................................................23

*Myers v. Hertz Corp.*,
    624 F.3d. 537 (2d Cir. 2010)........................................................................21

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) .................................................................35

*NSA Invs. II L.L.C. v. SeraNova, Inc.*,
    227 F. Supp. 2d 200 (D. Mass. 2002) ..........................................................28

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995)..........................22

*Phillips Petroleum v. Shutts*,
    472 U.S. 797 (1985).....................................................................................25

*Roach v. T.L. Cannon Corp.*,
    No. 13-3070-cv, 2015 U.S. App. LEXIS 2054
    (2d Cir. Feb. 10, 2015).................................................................................29

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).........................................................................17

*Seekamp v. It's Huge, Inc.*,
    No. 09-CV-00018 (LEK/DRH), 2012 U.S. Dist. LEXIS 33295
    (N.D.N.Y. Mar. 13, 2012).............................................................................28

*Seijas v. Republic of Arg.*,
    606 F.3d 53 (2d Cir. N.Y. 2010) ..................................................................32

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    130 S. Ct. 1431 (2010).................................................................................30

*Shuldman v. DaimlerChrysler Corp.*,
    1 A.D.3d 343 (2d Dep't Nov. 3, 2003) .........................................................31

*Smajlaj v. Campbell Soup Co.*,
    782 F. Supp. 2d 84 (D.N.J. 2011) ................................................................31

Page

*Smith v. Nikolayevskiy,*
23 Misc.3d 1133(A) (N.Y. Civ. Ct. May 12, 2009)................................................................31

*Stinson v. City of New York,*
282 F.R.D. 360 (S.D.N.Y. 2012) ..........................................................................................37

*Sykes v. Mel Harris & Assocs. LLC,*
285 F.R.D. 279 (S.D.N.Y. 2012) ..........................................................................................37

*Sykes v. Mel S. Harris & Assocs. LLC,*
No. 13-2742-cv, 2015 U.S. App. LEXIS 2057
(2d Cir. Feb. 10, 2015)....................................................................................................24, 29

*Taylor v. American Bankers Ins. Group,*
267 A.D.2d 178 (1st Dep't N.Y. 1999)..................................................................................24

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
546 F.3d 196 (2d Cir. 2008).................................................................................................21

*Thiedemann v. Mercedes-Benz USA, LLC,*
183 N.J. 234 (2005) .......................................................................................................25, 31

*United States v. City of New York,*
276 F.R.D. 22 (E.D.N.Y. 2011) .................................................................................21, 22, 32

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)..............................................................................................15, 30, 38

## STATUTES, RULES AND REGULATIONS

28 U.S.C. App..........................................................................................................................29

Civil Practice Law and Rules
§901(b)..............................................................................................................................30
§901(b) a ...........................................................................................................................30

N.Y. General Business Law
§349........................................................................................................................... *passim*
§349(b)..............................................................................................................................37
§349(h)..............................................................................................................................30
§350...................................................................................................................................22
§350-e................................................................................................................................36

**Page**

N.Y. Uniform Commercial Code
  §2-714 ............................................................................................................31
  §2-715 ............................................................................................................31

New Jersey Consumer Fraud Act (N.J.S.A)
  56:8-1 ............................................................................................3, 16, 22, 25
  56:8-2 ............................................................................................................25

Federal Rules of Civil Procedure
  Rule 23(a) ...............................................................................................14, 15
  Rule 23(a)(2) ................................................................................................15
  Rule 23(a)(3) ................................................................................................16
  Rule 23(a)(4) ................................................................................................18
  Rule 23(b) ..............................................................................................14, 21
  Rule 23(b)(2) ..........................................................................................*passim*
  Rule 23(b)(3) ..........................................................................................*passim*
  Rule 23(c)(2)(B) .....................................................................................35, 36

## SECONDARY AUTHORITIES

Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. §1781 ...............................................29

W. Rubenstein, Newberg on Class Actions §4:54 (5th ed. 2012) ................................29

Plaintiff Dr. D. Joseph Kurtz ("Plaintiff" or "Dr. Kurtz") respectfully submits this Omnibus Memorandum of Law in support of his Motion for Class Certification pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

## I.     INTRODUCTION

Class certification is appropriate where, as here, "[t]here is a single, central, common issue of liability: whether the [defendants' products are] defective." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (Posner, J.); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 419 (6th Cir. 2012) (affirming certification of product defect class, where, *inter alia*, "the plaintiffs have produced evidence of alleged common design flaws").

As alleged in the operative complaint in this case, the wipes and products sold by Costco and Kimberly-Clark ("Defendants") as flushable, as safe for sewer systems and suitable for septic tanks are, in fact, not flushable. The Flushable Products (defined below) do not break down or disperse quickly enough to avoid getting caught in water district equipment or in homeowners' plumbing pipes. Defendants know this, yet continue to label such products as safe for septic and sewer systems and, in fact, include the word "flushable" in the products' actual name.

Evidence of Defendants' firsthand knowledge of the nondispersability of the products they claim are flushable stems from multiple sources. *First*, municipalities and water districts have repeatedly and directly advised Defendants of the problems they caused by convincing homeowners that the so-called flushable products can and should be flushed down toilets. Certain, more active water district representatives, performed real world testing on the dispersability of Defendants' flushable wipes and demonstrated that the products are not flushable. Defendants were fully informed of these test results. *Second*, homeowners complained directly to Defendants about pipe clogs and, worse, sewer backups and concomitant damage directly stemming from the use of Defendants' Flushable Products. *Third,*                    REDACTED

REDACTED

Indeed, because companies like the Defendants cannot be trusted to accurately label their products, several State governments have discussed implementing regulations barring the use of so-called "flushable products." *Fourth*, testing performed by or at the behest of Defendants themselves verified that the flushable products do not break down in a manner that will avoid damage to homeowner and water district piping systems.

Plaintiff purchased and used flushable wipes sold by each of the Defendants. He believed Costco when it said that its Kirkland Signature Moist Flushable Wipes were flushable and safe for his home's plumbing. He was damaged when the product's labeling proved to be untrue. He believed Kimberly-Clark when it said that its Cottonelle Fresh Flushable Cleansing Cloths were flushable and safe for his home's plumbing. He was damaged, again, when the product's labeling also proved to be untrue.

This case is ideal for class treatment. Both Costco and Kimberly-Clark consistently labeled the products used by Plaintiff as flushable.[1] Notwithstanding the four wide-ranging bases evincing the fact that Defendants' products are defective and did not work as claimed, Defendants continued to label and market their products as flushable. Plaintiff was injured through both plumbing costs resulting from the use of the product and the premium price he paid for the product based on the so-called flushability attribute of Defendants flushable wipes.

Accordingly, Plaintiff asserted claims for negligent misrepresentation, breach of express warranty, violations of New York General Business Law ("GBL") §§349 and 350, violations of the

---

[1]   Notably, according to the testimony from the depositions taken thus far and the documents produced as part of discovery, Defendants' flushability claims are based on the fact that all of the products labeled as flushable use the same base sheets. Indeed, all of Kimberly-Clark's flushable products use the same base sheet. Likewise, all of Costco's Kirkland Signature Flushable Wipes share a common base sheet.

New Jersey Consumer Fraud Act ("NJCFA") §56:8-1, and unjust enrichment. This court sustained all of those claims in the face of Defendants' motions to dismiss. Plaintiff therefore moves pursuant to Fed. R. Civ. P. 23(b)(3) and (b)(2) for certification of the following classes:

> National Kimberly-Clark Class: All persons and entities in the United States who purchased Kimberly-Clark Flushable Wipes from February 21, 2008 to the present.[2]

> New York Kimberly-Clark Class: All persons and entities in the State of New York who purchased Kimberly-Clark Flushable Wipes from February 21, 2008 to the present.

> New Jersey Kimberly-Clark Class: All persons and entities in the State of New Jersey who purchased Kimberly-Clark Flushable Wipes from February 21, 2008 to the present.

> National Kirkland Signature Class: All persons and entities in the United States who purchased Kirkland Signature Flushable Wipes from July 1, 2011 to the present.

> New York Kirkland Signature Class: All persons and entities in the State of New York who purchased Kirkland Signature Flushable Wipes from July 1, 2011 to the present.

> New Jersey Kirkland Signature Class: All persons and entities in the State of New Jersey who purchased Kirkland Signature Flushable Wipes from July 1, 2011 to the present.

The proposed classes are each entitled to both injunctive relief and damages. With respect to injunctive relief, Defendants must be enjoined from continuing to sell products falsely labeled as flushable – particularly when the products are sold at a premium. As for monetary relief, damages owed to Plaintiff and members of the class fall into three simple categories: (1) actual costs

---

[2]   "Kimberly-Clark Flushable Wipes" include Cottonelle Fresh Care Flushable Wipes & Cleansing Cloths, Cottonelle Gentle Care Flushable Cleansing Cloths with Aloe & E, Cottonelle Fresh Folded Wipes, Cottonelle Soothing Clean Flushable Moist Wipes with Aloe, Scott Naturals Flushable Moist Wipes, Scott Naturals Flushable Moist Wipes with Aloe Vera, Scott Naturals Folded Flushable Moist Wipes, Pull-Ups Big Kid Flushable Wipes, U by Kotex Refresh Wipes, Poise Intimate Cleansing Cloths, Kleenex Cottonelle Flushable Moist Wipes Refills, Scottex Pure Sensitive Wipes, Scottex Hygienic Comfort Wipes, Scottex Naturally Gentle Wipes, Scottex Junior Wipes, Scottex Fresh Wipes, Andrex Washlets Flushable Toilet Tissue Wipes, and Andrex Kids Flushable Toilet Tissue Wipes manufactured by defendant Kimberly-Clark.

associated with a pipe clog or sewer backup caused by the use of flushable products that did not properly disperse; (2) a refund of the overpayment of products labeled as flushable, which, as substantiated by Colin B. Weir's regression analysis can be viewed in two subcategories, as (i) full compensatory damages, or a full refund for consumers' purchases of the Flushable Products; or (ii) price premium damages, the difference between the purchase price of the Flushable Products versus comparable products that do not contain the flushability claim; and (3) statutory damages (e.g., $50 in damages pursuant to GBL §349).

At its most rudimentary level, this case will come down to whether or not Defendants' Flushable Products are flushable. Or, stated differently, what the word flushable actually means to a reasonable consumer. Regardless of which lens this Court views that issue, it presents the most basic of the common factual questions presented by the classes of purchasers. For these reasons, and as detailed with more precision below, Plaintiff's motion for class certification should be granted.

## II.  SUMMARY OF COMMON FACTS

Defendants sell wipes that encourage consumers to introduce the products to homeowners' and municipal water systems by labeling them as flushable. Defendant Costco began selling a flushable wipe, called Kirkland Signature Moist Flushable Wipes ("Kirkland Flushable Wipes")[3], in July 2011. The name of the product contained the word "flushable" from the date it first appeared on Costco's warehouse stores' shelves until today. Defendant Kimberly-Clark first introduced a flushable wipe in 2005, and currently sells seventeen flushable products. Ten of those products

---

[3]  The Kimberly-Clark Flushable Wipes and Kirkland Flushable Wipes are collectively referred to as the "Flushable Products."

include the word "flushable" in the actual product name.[4]  Seven other products are manufactured

and sold by Kimberly-Clark that purport to be flushable through marketing or labeling logos.[5]

The flushability claims made by Defendants on the Flushable Products are, as will be shown

at trial, demonstrably false and mislead consumers to believe that the Flushable Products are indeed

safe to flush, safe for sewer or septic systems, and safe for drain lines.

Over time, each defendant made modifications to its Flushable Products labeling, either by

removing certain designations regarding the efficacy of the products or adding directions about how

the wipes should be used.  But the use of the word "flushable" remained constant.  For example, by

at least early September 2013, Costco removed the claim "breaks apart after flushing." Ex. A,

COSTCO00015240-41 at 41.[6]  In March 2012, it added the following direction for consumers: "For

Best Results, Flush Only One or Two Wipes At A Time" and then further emphasized, in July 2013,

that consumers "Never Flush More Than One Wipe At A Time" and advising them that the products

are "Not Recommended for Use in Motor Homes Or With Basement Pump Systems."  Ex. B,

COSTCO00013757-61.  Similarly, Kimberly-Clark removed the claim "break up like toilet paper

after flushing" from its packaging. Ex. C, KCC-Kurtz0019746-50 at 48; Ex. D, KCC-Kurtz0019775

---

[4]  *See, e.g.*, ¶2 (Cottonelle Fresh Care Flushable Wipes & Cleansing Cloths; Cottonelle Gentle Care Flushable Cleansing Cloths with Aloe & E; Cottonelle Soothing Clean Flushable Moist Wipes with Aloe; Scott Naturals Flushable Moist Wipes; Scott Naturals Flushable Moist Wipes with Aloe Vera; Scott Naturals Folded Flushable Moist Wipes; Pull-Ups Big Kid Flushable Wipes; Kleenex Cottonelle Flushable Moist Wipes Refills; Andrex Washlets Flushable Toilet Tissue Wipes; Andrex Kids Flushable Toilet Tissue Wipes).  "¶__" refers to paragraphs of the Complaint, filed February 21, 2014, (Dkt. No. 1) (the "Complaint").

[5]  These products do not contain the word "flushable" in the product name, but do contain labeling claims of flushability on the packaging: Cottonelle Fresh Folded Wipes; U By Kotex Refresh Wipes; Poise Intimate Cleansing Cloths; Scottex Pure Sensitive Wipes; Scottex Hygienic Comfort Wipes; Scottex Naturally Gentle Wipes; and Scottex Junior Wipes.

[6]  All references to "Ex. __" are to the Declaration of Mark S. Reich in Support of Motion for Class Certification, filed herewith.

– 83 at 77; Ex. E, COSTCO00010403-04 (email exchange between, among others, Kimberly-Clark and Costco, dated April 12, 2013, where Kimberly-Clark confirms that "K-C no longer makes any comparison to toilet paper").

The "base sheet" or "substrate" (also referred to as a "nonwoven" or "applicator"), which is the piece of material the wipe is made up of, underpins Defendants' claim that the Flushable Products can be called flushable.[7]   The substrates for the Kirkland Flushable Wipes were manufactured by Buckeye from 2011 through 2013, Ex. I, Hurley Dep. at 20:20-22, 39:15-40:4, and later by Sigma, *Id.* at 37:20-25, while Kimberly-Clark manufactured its own substrates for the Kimberly-Clark Flushable Wipes at all relevant times. Ex. G, Powling Dep. at 20:18-23.  Regardless of which substrate Kimberly-Clark utilized during any particular time period, it always utilized the same substrate for all of the products labeled and sold as flushable.  Ex. J, KCC-Kurtz0019341-42; Ex. K, KCC-Kurtz0015653 ("We produce just one grade of basesheet for all the K-C brands mentioned.").

First- and third-party discovery in this action confirms that the Flushable Products are priced and sold at a substantial premium to moist wipes not labeled or sold as flushable.  *See* July 7, 2014 Declaration of Mark S. Reich in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss, Dkt. No. 31, ¶2.[8]  The formula that comprises a flushable wipe, including the substrate, form the basis for the price premium.

---

[7]   *See* Ex. F, Babusik Dep. at 13:24-14:5; Ex. G, Powling Dep. at 20:7-17; Ex. I, Hurley Dep. at 18:22-19-5.  The substrates contribute to the higher cost of flushable wipes as compared to wipes that are not labeled or sold as flushable.  *See* Ex. H, COSTCO00003142.

[8]   Based on information provided by Defendants, and once Plaintiff obtains additional information from Defendants and other sources, Plaintiff's expert Colin Weir can further substantiate the premium for the Flushable Products with more precision.  *See generally*, Declaration of Colin Weir ("Weir Decl."), filed herewith.

A.    **Defendants' Promotion of Flushable Products as Safe for Home Plumbing**

The marketing and sales strategy for the Flushable Products extends beyond labeling. Kimberly-Clark's products webpage for Cottonelle Flushable Wipes, for example, says that these products may be flushed safely down toilets because they are made using "a patented dispersible technology, which means that when used as directed they break up after flushing and clear properly maintained toilets, drainlines, sewers, pumps, and septic and municipal treatment systems." ¶¶14, 19.[9]  Defendant Costco also created a webpage for consumers to view, assuring readers that its products are safe to flush and encouraging their use over other related products.  In the "Frequently Asked Questions on Flushability" section on defendant Costco's webage for the Kirkland Flushable Wipes product, for example, in response to the question of whether the wipes are truly flushable, defendant Costco states: "Yes, Kirkland Signature™ Moist Flushable Wipes comply with industry guidelines and are proven to pass through a home's well-maintained toilet, pump and drain line without clogging.  The wipe is very different than other wipes and made of a special material." ¶26.

Flushable clearly does not mean that a product or wipe will simply pass through a toilet.  Ex. L, KCC-Kurtz0001825-31 at 27-28 (Kimberly-Clark representative "agree[s]" with a statement made by a representative from the Proctor & Gamble Company that "[J]ust because something fits down the toilet and clears the pipe doesn't mean it's Flushable"); Ex. M, COSTCO00016582-83 at 82 (noting that until 2009, the "flushability" of wipes was determined based on the size of the wipes and whether it cleared the toilet bowl, but that, as of 2013, it was understood that the "new definition of flushability goes much further than it did previously, considering not only whether the material clears the toilet, but the passage of the nonwoven material through the household plumbing system,

---

[9]    All of Kimberly-Clark's Flushable Products have a similar webpage containing the same message regarding flushability.  ¶20.

the associated sewer and/or septic systems, and includes the ultimate impact of the material on the environment"); *see id.* ("In the simplest terms, the material must . . . [b]e compatible with existing wastewater conveyance, treatment, reuse and disposal systems").  Flushable means much more than that.

## B.    Defendants' Flushability, and Related Claims, Are Untrue

Defendants' Flushable Products do not break up, do not disperse and/or do not disintegrate in a manner that would avoid clogging homeowners' pipes.  Even when, by chance, the Flushable Products do escape homeowners' plumbing systems, they enter wastewater systems – wholly or substantially unbroken, undispersed and/or not disintegrated – to cause damage to pipes or treatment facilities.  Defendants are well aware of these real world problems caused by their customers' directed use of the Flushable Products.

Plaintiff's complaint details the widespread media coverage on the havoc and damage to homeowners' and municipalities' piping and sewer systems directly caused by flushable wipes. ¶¶31-72; *id.* at ¶53 ("'These wipes contribute to recurring problems at our pumping stations; they do not break down, and create additional work for our crews who have to repeatedly remove them on a monthly or weekly basis.'"); *id.* at ¶56 (noting that cost to the City of New York due to flushable wipes is "'about $18 million per year for extra disposal, and that doesn't include staff overtime and damaged equipment.'"); *id.* at ¶33 (detailing plumber called to "clear ''flushable wipes' stoppages in two to three dozen homes," who stated: "'They're worse than paper towels or feminine products. . . [b]ut, because they're marked 'flushable,' people think they can just go right on down.'").  In addition to public uproar over the use of so-called flushable products, Defendants received direct communications from a host of wastewater district representatives complaining about the monetary damage caused to their systems, *e.g.*, Ex. N, COSTCO00014337-38 (letter from American Public Works Association to Costco connecting the "problems encountered in [] public wastewater

- 8 -

treatment systems" to the use of "items claiming to be 'flushable'" and adding that so-called flushable products "result in costly repairs")[10], and informing Defendants that their products are, in fact, not flushable.  *E.g.*, Ex. A, COSTCO00015240-41, at 41 (Executive Director of the Plainfield Area Regional Sewerage Authority and Water Environment Federation Collection Systems Committee Chair Robert Villee stating that Kirkland Flushable Wipes were the "poster child for mis-labeled flushable wipes" and "one of the worst flushable labeled products"); Ex. O, KCC-Kurtz0012291 and Ex. P, KCC-Kurtz0015503-07 (indicating that the Toms River wastewater district informed Kimberly-Clark that a municipal study concluded that Kimberly-Clark wipes did not break up or disperse).

Homeowners complained directly to Defendants about the lack of flushability of the Flushable Products.  A number of them sought reimbursement for plumbing bills and costs associated with sewer backups in their homes. Ex. Q, COSTCO00019864 – 95 (listing homeowner complaints and the reimbursements paid by Nice-Pak on behalf of Costco); Ex. R, KCC-Kurtz0019126 – 19201 (spreadsheet detailing Kimberly-Clark's plumbing payments).   The complaints were so wide-ranging and extensive that both Kimberly-Clark and Costco (and Nice-Pak[11] on behalf of Costco) established specific protocols for handling complaints relating to flushable wipes. Ex. S, O'Connor Dep. at 125:19 – 126:2; 126:9 – 126:11; 127:17-127:20 (generally describing Kimberly-Clark's complaint protocol); Ex. F, Babusik Dep. at 51:4 – 53:23 (generally describing Costco's and Nice-Pak's complaint protocols); Ex. G, Powling Dep. at 114:1 – 114:13 (confirming that Kimberly-Clark has a "standard letter" for handling consumer complaints); Ex.

REDACTED

REDACTED

---

[10]   The letter also called for Costco "to remove the term 'flushable'" from its Kirkland brand wipes.

[11]   Nice-Pak is the manufacturer of the Kirkland Flushable Wipes.

REDACTED                    They even had scripts or talking points for how to respond to

flushable wipes purchasers, and had insurance carriers on notice to handle larger claims.  *See* Ex. U,

KCC-Kurtz 0006782-85 (Kimberly-Clark customer complaint script and plumbing reimbursement

guidelines); Ex.                              REDACTED

REDACTED                                          Further, several state governments have

proposed laws addressing the flushability of wipes.  *E.g*., Ex. Y, Walior Ex. 5, COSTCO00016362-

73 at 66 (identifying legislation and negative PR for flushable wipes in 12 states).

There is no denying that Defendants knew that the Flushable Products were causing

pervasive damage to plumbing systems.  There is also no denying that Defendants knew that their

Flushable Products do not break up or disperse in a way that would avoid clogging piping system.

Costco, in fact, retained an independent lab to test the flushability of a Kirkland brand flushable

wipe.  ***The Kirkland wipe failed the flushability test***.[12]  That same lab tested Kimberly-Clark's

Kleenex brand Cottonelle flushable wipe.[13]  ***The Kimberly-Clark flushable wipe also failed the***

***flushability test.***[14]  Still, both companies continued (and continue to this day) to label these products

as flushable.

Moreover, Defendants concede that the Flushable Products are not safe for sewer or septic

systems, in that they do no break apart or disperse like toilet paper.  Kimberly-Clark, for example, in

an internally distributed claims matrix[15] expressed that it wished its Flushable Products could

support a claim of "Made to break apart like toilet paper."  Ex. LL, Powling Ex. 20, KCC-

Kurtz0006817.  And, in response to proposed claims touting that Kimberly-Clark's Flushable

Products are safest for homeowners' sewer and septic systems, the accompanying comment on the

matrix read: "toilet paper is safe."  *Id*.  Another proposed claim regarding an assurance that

---

[12]   Ex. Z, COSTCO00008616-22 at 618, 622.

[13]   Ex. Z, COSTCO00008616-22 at 18-19; Ex. AA, Walior Ex. 18, COSTCO00013604-08 at 04-05.

[14]   Ex. Z, COSTCO00008616-22 at 618, 622; Ex. AA, Walior Ex. 18, COSTCO00013604-08 at 604, 608.

[15]   The claims matrix is "a collection of ideas for product claims which are generated through marketing, with comments back from the technical community."  Ex. G, Powling, Dep. at 146:17-19.

Kimberly-Clark's Flushable Products "would not clog consumers' toilets" was met with the comment "cannot support this."  *Id*.  Plainly, not only did Kimberly-Clark know that its so-called flushable products did not break down - certainly not as well as toilet paper – but it also knew that their products were not the safest option for consumers.

### C.   Plaintiff Was Harmed Through His Purchases and Use of Defendants' Flushable Products

Plaintiff purchased Kirkland Flushable Wipes at Costco and Cottonelle Fresh Flushable Cleansing Cloths at Costco and other retailers (*e.g.*, Walgreens, Stop & Shop and ShopRite) at various times between early 2013 and mid-2014.[16]  He experienced two plumbing issues in his residence, in or around the summer of 2013, as a result of using the Kirkland Flushable Wipes and Cottonelle Fresh Flushable Cleansing Cloths.   Declaration of D. Joseph Kurtz in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss, Dkt. No. 32, ¶9.  Remarkably, the second incident occurred shortly after a plumber cleared his plumbing system of any blockages, and after he became focused on ensuring that only products labeled as flushable were flushed down any of the toilets in his home.

> Q.      After that plumbing visit, did you continue to flush wipes down the toilet?
>
> A.      I ensured that only flushable wipes were being flushed down the toilet.
>
> Q.      How did you ensure that only flushable wipes were being flushed down the toilet?
>
> A.      I took away any wipes that was not labeled flushable wipe.
>
> Q.      And what did you do with those wipes that you took away?

---

[16]   Evidence prepared and introduced by defense counsel verifies that plaintiff shopped at Costco locations in both New York and New Jersey, and further verifies that he purchased both Kirkland Signature Moist Flushable Wipes and Cottonelle Fresh Flushable Cleansing Cloths. Ex.BB, Kurtz Dep. 83:11 – 86:24; Ex. CC, Kurtz Dep. Exs. L-M.

> A.     I put them in the closet by the baby.  They were only to be used for the baby changing pampers.

Ex. BB, Kurtz Dep. at 22:5 – 22:19.  Plaintiff, separately, experienced a plumbing issue at a New Jersey rental home, in or around June 2013, as a direct result of using the Kirkland Flushable Wipes and Cottonelle Fresh Flushable Cleansing Cloths.  Describing the plumber's visit, Plaintiff testified:

> Q.     What did he remove?

> A.     Wipes.

> Q.     Do you know what kind of wipes he removed?

> A.     Flushable wipes.

> Q.     How do you know they were flushable wipes?

> A.     Those were the only wipes we had been flushing down the toilet.

Ex.BB, Kurtz Dep. at 29:11 – 29:16; 33:2 – 33:10.  He also testified that he would not flush more than one or two flushable wipes at a time, Ex. BB, Kurtz Dep. at 63:18 – 64:13, and that he read and believed the packaging claims.  Ex. BB, Kurtz Dep. at 138:4 – 138:12; 20:25 – 21:6.  In fact, Plaintiff testified that he had contacted a plumber who came and "removed piles of debris" from Plaintiff's plumbing system, "which [the plumber] told [Plaintiff] were flushable wipes."  Ex. BB, Kurtz Dep. at 19:21 – 20:3.  The plumber then warned Plaintiff not to flush any more wipes down the toilet because "no wipes are flushable."  *Id*.  The following exchange then occurred between Plaintiff and defense counsel:

> Q.     Did you believe him?

> A.     I did not.

> Q.     Why not?

> A.     Because we had products that were labeled as flushable wipes and I believe the product more than I believe the plumber. . . . but I still believed that the product must be flushable because it states flushable.

Ex. BB, Kurtz Dep. at 20:22 – 21:6 (emphasis added).

## III.     LEGAL STANDARD FOR CLASS CERTIFICATION

A class action is the primary tool available to consumers to adjudicate a case concerning small claims that are not economically practicable to pursue on an individual basis.  The Supreme Court has recognized that "[c]lass actions serve an important function in our system of civil justice. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).  In crafting Rule 23, "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  As Judge Posner recently noted in affirming class certification in *Butler v Sears, Roebuck & Co.*,

> A class action is the more efficient procedure for determining liability and damages in a case such as this involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit. . . .  The class action procedure would be efficient not only in cost, but also in efficacy, if we are right that the stakes in an individual case would be too small to justify the expense of suing, in which event denial of class certification would preclude any relief.

702 F.3d 359, 362 (2012).

To certify a class, Plaintiffs must demonstrate that the putative class action satisfies each of the four requirements of Rule 23(a), as well as at least one of the categories provided in Rule 23(b). *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001).  "The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction.'"  *Gortat v. Capala Bros., Inc*., 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (quoting *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  In fact, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification."  *Id.* at 361-62 (quoting *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).

## IV.     THE REQUIREMENTS OF RULE 23(a) ARE READILY MET

Rule 23(a) sets forth four threshold requirements for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  Fed. R. Civ. P. 23(a).

### A.     The Classes Satisfy the Numerosity Requirement

Generally, a presumption of numerosity attaches to classes of more than 40 in the Second Circuit.  *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  This case satisfies the numerosity requirement.                         REDACTED



As numerosity is self-evident, Plaintiff does not expect that Defendants will challenge the numerosity element of Rule 23.

### B.     Commonality Is Satisfied

Commonality is met when "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality does not mandate that all class members make identical claims and arguments."  *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996).  The commonality requirement may be met where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system."  *Marisol*, 126 F.3d 372, 377.  In fact, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2562 (2011).

Rule 23(a)(2) is satisfied here by abundant factual and legal questions common to the classes, including, for example:

- 15 -

1.      whether the claim "flushable" that appears on every package of Flushable Products is false or misleading;

2.      whether the claim "safe for sewer and septic systems" is false or misleading;

3.      whether the claim "break apart" or "break up" after flushing are false or misleading;

4.      what the word flushable means to a reasonable consumer;

5.      whether Defendants' respective base sheets or substrates used in each Flushable Product were the same for all products that Defendants label as "flushable";

6.      whether Defendants' representations or labeling claims constitute negligent misrepresentation;

7.      whether Defendants' representations or labeling claims created express warranties and whether Defendants' breached those warranties;

8.      whether Defendants' conduct violated New York's General Business Law §§349 and 350; and

9.      whether Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. §§56:8-1, et seq.

The answers to these questions are common to all class members. *See In re Scotts EZ Seed Litig.*, 12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 9116, at*9 (S.D.N.Y. Jan. 26, 2015) (finding questions that are common to all class members – *e.g.*, the answer as to whether representations or labeling claims that Scotts Turf Builder EZ Seed is "50% thicker With Half the Water" – and were "apt to drive the resolution" of the litigation); *see also Whirlpool*, 678 F.3d at 419 ("Because the plaintiffs have produced evidence of alleged common design flaws" commonality is satisfied).

### C.    Plaintiff's Claims Are Typical

Rule 23(a)(3) calls for Plaintiffs' claims to be "typical" of the class. Fed. R. Civ. P. 23(a)(3), but "[t]he typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (internal quotations omitted). When "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the

defendant's liability" then typicality is satisfied.  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  Minor discrepancies in the facts or circumstances that triggered the individual claims do not negatively impact a typicality argument.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Id.* at 936-37; *see also Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) ("[t]ypicality refers to the nature of the claim of the class representatives and not to the specific facts from which the claims arose") (internal citations omitted).

Here, Plaintiff's and other class members' claims arise out of the same course of conduct by Defendants.  They are further based on identical legal theories.  Every package of Defendants' Flushable Products was labeled as being "flushable" – it was, in fact, the name of the products.  The products were sold as safe for use in sewer and septic systems when, based on the allegations of the Complaint and substantiated by the limited record in this case, they were not.  Plaintiff has, therefore, been injured in the same manner as other class members; meaning, through the purchase of Defendants' Flushable Products that did not conform to the representations on their packaging.  Plaintiff and class members seek redress through common legal claims and common remedies based on statutorily mandated minimum damage awards, the difference in value between the product for which Plaintiff paid a premium (flushable wipes) and the product for which Plaintiff actually received (non-flushable wipes), and actual damages based on the entire purchase price of the Flushable Products.  *See* Weir. Decl., ¶¶15-61.  Plaintiff and certain class members were further injured in the form of plumbing and related costs stemming from sewer backups or pipe clogs.  These class members seek out-of-pocket expenses for plumbing costs incurred by class members as a result using the Flushable Products in their homes.

### D.      Plaintiff Will Adequately Represent the Classes

Adequacy calls for a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). The factors are satisfied here.

### 1.      Plaintiff's Interests Do Not Conflict with the Classes

Plaintiff and his counsel have interests that are aligned to absent class members; not antagonistic. Plaintiff, like each absent class member he seeks to represent, has an interest in establishing and proving Defendants' common course of conduct, confirming its unlawfulness, identifying and demonstrating the impact of the unlawful conduct and, finally, obtaining redress.

Plaintiff also demonstrated his commitment to pursue these claims on behalf of absent class members. He facilitated and coordinated the inspections of the plumbing systems in both of his homes, responded to extensive written discovery requests and sat for a deposition. He attended the hearing before Judge Weinstein on November 14, 2015. In the face of tough questioning at a deposition that ended after 8pm, Dr. Kurtz testified that he had reviewed the complaint in full and commented on it before it was filed, Ex. BB, Kurtz Dep. at 42:22-44:2, that he reviewed and verified detailed responses to interrogatories and requests for documents, *Id.* at 46:16-46:25, 68:6-70:13, that he has knowledge of the factual allegations and other issued raised in the lawsuit, *Id.* at 153:8-154:16, 161:23-163:7, 164:17-165:5, and that he maintains regular contact with legal counsel and remains aware of the status of the case. *Id.* at 176:24-177:5. For example, Plaintiff explained that this action sought "damages that are incurred to people for plumbing issues[,] for prices that are overpaid for products that don't work as they're supposed to and to either stop the selling of such

- 18 -

products or that labelling should be changed or something should be done." Ex. BB, Kurtz Dep. at

154:4-16.[17]

Plaintiff testified about the search he performed for documents responsive to defendants'

request:

> Q.   What did you do to look for documents related to the use of your wipes and the affect they've had on your sewer system?
>
> A.   I searched my house from basement until attic -- I searched. I tried to get cancelled checks from my bank. And I searched for information on the plumbers and tried to attain, you know, information from them on the visits they had made.

Ex. BB, Kurtz Dep. at 97:10-20.

What is more, he directed the communication with third parties, steps beyond his obligation, in order

to be responsive to those requests:

> Q.   Did you contact any of the plumbers?
>
> A.   My attorneys had contacted Gorcey's after I supplied them with the information.

*Id*. at 97:21-25. Mr. Kurtz has demonstrated a genuine commitment to his representative role for

absent class members.

### 2.   Plaintiff's Counsel Are More Than Qualified

Plaintiff's counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), are class

action attorneys with significant experience litigating class action and consumer claims, including

claims for false advertising. *See* Firm Resume, Ex. EE. For example, in *Gemelas v. Dannon Co.,*

---

[17]   S*ee also id*. at 109:22-110:5 ( "I want to be reimbursed for the damages that I incurred. I also think that I overpaid for a product, which is marketed as flushable which is not flushable. And I also would like the product to either be stop being sold, relabeled, something being done with the product itself to stop further damage."). Plaintiff even exhibited his familiarity with one of the damages methodologies explained further in the Declaration of Colin Weir – difference in value damages – when he explained that he overpaid for the product because "buying a baby wipe would be less expensive than buying the Cottonelle wipe." *Id*. at 110:24-111:6.

*Inc.*, No. 1:08-cv-00236 (N.D. Ohio), Robbins Geller attorneys served as class counsel and secured the largest ever settlement for a false advertising case involving a food product. The action alleged that Dannon's advertising for its Activia® and DanActive® branded yogurt products, including the purported benefits of consuming "probiotic" bacteria, were overstated. As part of the nationwide settlement, Dannon agreed to modify its advertising and established a fund of up to $45 million to compensate consumers.

Robbins Geller has been appointed class counsel or co-lead class counsel in dozens of consumer cases in both federal and state courts, and has significant resources with 200 attorneys in 10 offices nationwide. Ex. EE at 1. Some of Robbins Geller's noteworthy consumer class actions include: *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, No. 2:07-ml-01897-DSF-AJW (C.D. Cal.) (secured settlement for up to $50 million in full cash refunds and lead testing reimbursements, as well as important quality assurance measures going forward to ensure that Mattel's toys are safe for consumers in the future); *In re Pet Food Prods. Liability Litig.*, No. 09-1580 (D.N.J.) (obtained $24 million settlement in New Jersey MDL serving as co-lead counsel); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, MDL No. 1061 (D.N.J.) (reached $4 billion settlement for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-01720 (E.D.N.Y.) (recently secured final approval of $7.25 billion settlement as co-lead counsel – believed to be the largest antitrust settlement ever — over Visa and MasterCard's alleged conspiracy to fix prices for credit card swipe fees, resolving claims brought by a putative class of about 12 million merchants).

Robbins Geller is eminently qualified to represent the classes.

## V.      REQUIREMENTS FOR CERTIFICATION UNDER RULE 23(b) ARE SATISFIED

A plaintiff seeking monetary relief can satisfy the prerequisites of Rule 23(b)(3) by demonstrating that questions of law or fact common to the members of the proposed class "predominate over any questions affecting only individual members," and that a class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Amchem Prods*, 521 U.S. at 615; *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006).  A plaintiff seeking certification of claims for injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) can also demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Whether seeking certification under Rule 23(b)(2) or 23(b)(3), a plaintiff might bear the initial burden of advancing reasons why a putative class action meets Rule 23 requirements.  Once a plaintiff has made a preliminary legal showing that the requirements of Rule 23 have been met, however, the burden of proof is shifted to defendants to demonstrate otherwise.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citing *Amchem Prods.*, 521 U.S. at 614); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008).

### A.      The Requirements for Certification Under Rule 23(b)(3) Are Readily Met

#### 1.      Common Questions of Law or Fact Predominate

Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *United States v. City of New York*, 276 F.R.D. 22, 30 (E.D.N.Y. 2011), and "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly

situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23(b)(3).  In determining whether the class is a "sufficiently cohesive" unit, all factual or legal issues that are common to the class inform the court's analysis.  *Amchem Prods., Inc.*, 521 U.S. at 621.  An issue that is common to the class is one that is susceptible to generalized, classwide proof.  *City of New York*, 276 F.R.D. at 28.

Plaintiff meets this standard, and can establish his claims with classwide proofs.

### a.   The Elements of the New York and New Jersey Consumer Protection Claims Can Be Established Through Common Proof

Dr. Kurtz's third, fourth and fifth causes of action assert violations of GBL §349 and §350 and NJCFA §56:8-1.

### (i)   The New York Consumer Protection Claim

To establish "a violation of GBL §349, relating to deceptive business practices, or §350, relating to false advertising, a plaintiff must show: (1) that the act, practice, or advertisement was consumer- oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was thereby injured."  *Ackerman v. The Coca-Cola Co.*, CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *86 (E.D.N.Y. July 21, 2010) (citing cases).  As explained recently by Judge Vincent L. Briccetti in the *In re Scotts EZ Seed Litig*. opinion:

> Materiality under Section 349 of the GBL is an objective inquiry; a deceptive act is defined as one "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Id*.  The same analysis applies to false advertising claims brought under Section 350.  *Id*.; *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002).  Additionally, neither Section 349 nor 350 require proof of reliance, *see Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 967 N.E.2d 675, 944 N.Y.S.2d 452 (2012), nor proof that defendants intended to mislead consumers.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995).

12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 9116, at *21.  Moreover, injury is proven by demonstrating that a plaintiff paid a premium for a product.  *Ackerman*, 2010 U.S. Dist. LEXIS 73156, at *88.

Here, there can be no dispute that the first element of Plaintiff's GBL claims – that Defendants' labeling of the Flushable Products was consumer-oriented – is a common question subject to common proof.  Likewise, because this is judged by an objective standard, no individual inquiry is required to determine whether the Flushable Products' labeling was misleading in a material respect.  New York courts agree with the simplicity of this analysis and have routinely certified claims under New York's consumer protection and false advertising laws where, as here, all class members were exposed to the same representations.  *See, e.g., Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 435-36 (S.D.N.Y. 2009) (certifying GBL §§349 and 350 claims where "[t]he predominant issue before the Court is whether Best Buy's advertisements about its price match guarantee were false and misleading because the company had a secret Anti-Price Matching Policy."); *In re Scotts EZ Seed Litig.*, 2015 U.S. Dist. LEXIS 9116, at *21 (certifying GBL §§349 and 350 claims where "[c]lasswide evidence will be used to establish whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances."); *Ebin*, 297 F.R.D. at 568 (certifying GBL §349 claim where class members "saw the same representation that Capatriti was '100% Pure Olive Oil'"); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 480-83 (C.D. Cal. 2012) (certifying class under GBL §§349 and 350 where all purchasers of hair product were subject "to the same deceptive marketing and advertising").[18]

---

[18]   *See also Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 216, (3d Dep't 2010) (certifying GBL §349 claim and holding that the predominant common issue presented was whether the location and typeface of spending limit fee increase disclosure received by all class members was

Here, Dr. Kurtz's claims are based on the content of the label seen by each class member when they purchased the product. What's more, the misrepresentation of the claim flushable is in the name of the product itself (*e.g.*, "Kirkland Signature Moist Flushable Wipes" and "Cottonelle Fresh Care Flushable Moist Wipes").[19] Class members had to rely on it. *See*, Ebin, 297 F.R.D. at 569 (finding "class members necessarily had to rely" on label where "100% Pure Olive Oil is the name of the product itself (and appears on all five sides of the tin)"). Finally, individualized issues with respect to injury and damages do not predominate over common issues as the central issue presented is whether Defendants' labeling and marketing of the Flushable Products violated the GBL and damages can be assessed on the basis of common proof given that they are capped at a statutory amount. *Sykes v. Mel S. Harris & Assocs. LLC*, No. 13-2742-cv, 2015 U.S. App. LEXIS 2057, at *37-38 (2d Cir. Feb. 10, 2015); *Jermyn*, 256 F.R.D. at 435-36; *see also Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 701 (S.D. Fla. 2010), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011).[20]

---

deceptive); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, (1st Dep't N.Y. 2001) (granting motion for class certification with respect to GBL §349 claims based on identical written solicitations); *Taylor v. American Bankers Ins. Group*, 267 A.D.2d 178, (1st Dep't N.Y. 1999) (certifying claims under GBL §§349 and 350 "since the predominant focus of this litigation is defendants' general practice of offering, in prominent print, ostensibly easily available credit insurance coverage, while, at the same time, relegating to small, inconspicuous print the precise terms of the coverage being extended, and then rejecting insurance claims on the ground that the customer had not been paying for the appropriate type of insurance.").

[19]   *See, e.g.,* Ex. FF, COSTCO00003400-08 at 400; Ex. GG, COSTCO00014004-06 at 005; Ex. HH, KCC-Kurtz0003215; Complaint at ¶¶16, 19, 25.

[20]   Plaintiff's claims under GBL §§349 and 350 can be brought or certified on a nationwide basis. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 236 (E.D.N.Y. 2010). It is entirely appropriate for Plaintiff, a New York resident who purchased and used the Flushable Products, to represent a putative nationwide class. *See In re Grand Theft Auto Video Game Consumer Litig.*, 06 MD 1739 (SWK) (MHD), 2006 U.S. Dist. LEXIS 78064, at *10 (S.D.N.Y. Oct. 25, 2006) (noting that "this is not a case where the Named Plaintiffs are attempting 'to piggy-back on the injuries of the unnamed class members'"). Unless Defendants present a conflict or material difference between the consumer fraud statutes of either New York (or New Jersey for that matter) and any other state

(ii)        The New Jersey Consumer Fraud Claim

Next, under NJCFA §56:8-1, a plaintiff must establish "1) unlawful conduct by defendant[s];

2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and

the ascertainable loss." *Bosland v. Warnock Dodge, Inc*., 197 N.J. 543, 557 (2009).  An unlawful

practice, as defined under the CFA, is "any unconscionable commercial practice, deception, fraud,

false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement

of any merchandise. . . ."   N.J.S.A. 56:8-2.  Flushable wipes, including Defendants' Flushable

Products, are merchandise under the NJCFA.  N.J.S.A. 56:8-1 (defining merchandise as including

"any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the

public for sale").  "An ascertainable loss is a loss that is 'quantifiable or measurable,'" *Thiedemann*

*v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248, (2005), which can include an out-of-pocket loss or

the replacement cost of a defective product.  *Lee v. Carter-Reed Co., L.L.C*., 203 N.J. 496, 522

(2010).[21]

Akin to Plaintiff's GBL claims, the NJCFA claim is subject to common proof.  *See Carter-*

*Reed Co*., 203 N.J. at 527-28 ("When all the representations about the product are baseless, a trier of

fact may infer the causal relationship—the multiple deceptions—and the ascertainable losses, the

purchases of the worthless product."); *Elias v. Unger Food Products, Inc*., 252 F.R.D. 233, 249

---

that would have a "significant possible effect on the outcome" of the action, Plaintiff is not
precluded from bringing claims on behalf of a nationwide class for violations of the New York
statutes.  *See Phillips Petroleum v. Shutts*, 472 U.S. 797, 816 (1985) ("no injury" in applying single
state's law unless that state's law conflicts with other jurisdictions implicated in suit).  Indeed, where
New York is the forum court, a court is free to bypass the choice of law analysis and apply New
York law in the absence of a material conflict.  *See Curley v. AMR Corp*., 153 F.3d 5, 12 (2d Cir.
1998) ("It is only when it can be said that there is no actual conflict that New York will dispense
with a choice of law analysis.").

[21]   Notably, "causation under the [NJ]CFA is not the equivalent of reliance."  *Lee v. Carter-Reed*
*Co., L.L.C*., 203 N.J. 496, 577 (N.J. 2010); *see also Gennari v. Weichert Cop. Realtors*, 148 N.J.
582, 590 (1997) (the NJCFA "does not require proof of reliance.").

(D.N.J. 2008) ("Where representations are in written and uniform materials presented to each prospective plaintiff, there is a presumption of causation in NJCFA cases.").[22] Class members saw the same material representations; *e.g.*, that the Flushable Products were indeed "flushable." As a result, class members expected that the Flushable Products were in fact flushable. *See, e.g.*, Ex. JJ, KCC-Kurtz0011272-74 at 72 ("Flushability is critical to Kimberly-Clark and it's [sic] line of flushable products . . . it is important that consumers feel confident that our products won't impact their plumbing or the environment.") Whether that representation was true or false hinges on common evidence as to whether the Flushable Products were, in fact, flushable. Whether that representation was true or false can further depend on common evidence as to what flushable means to a reasonable consumer. If, as alleged and to be proven, the Flushable Products were not flushable, then Defendants' labels were false. The same generalized evidence will establish that Defendants' false labels were likely to mislead a reasonable consumer acting reasonable under the circumstances. *See supra* at §II. And the same generalized evidence will establish that all purchasers were deceived into purchasing an economically inferior product that did not meet their expectations. *See id*.

Accordingly, Plaintiff's motion for class certification with respect to the New York and New Jersey consumer fraud act claims should be granted.

---

[22]   The NJCFA claim can be certified on a nationwide basis. *See Elias*, 252 F.R.D. at 240 (certifying a nationwide class asserting claims under the NJCFA and breach of warranty); *see also In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46, 55-69 (applying New Jersey law, including the NJCFA, to a nationwide class of automobile purchasers), *mot. to decertify class denied*, 267 F.R.D. 113 (D.N.J. 2010); *Kalow & Springut, LLP v. Commence Corp.*, No. 07-3442 (JEI/AMD), 2012 U.S. Dist. LEXIS 173785 (D.N.J. Dec. 7, 2012) (applying NJCFA to nationwide class of purchasers of defective software); *Dal Ponte v. Am. Mortg. Express Corp*., No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675 (D.N.J. Aug. 17, 2006) (applying NJCFA to nationwide class involving mass cancellation of mortgages); *Int'l Union of Operating Eng'rs Local 68 Welfare Fund v. Merck & Co.*, 894 A.2d 1136, 1153 (N.J. App. Div. 2006) (applying NJCFA to nationwide class of third-party payers who overpaid for falsely marketed drugs), *overruled on other grounds*, 192 N.J. 372 (2007).

**b.      The Elements of Negligent Misrepresentation Can Be Established Through Common Proof**

Dr. Kurtz's first cause of action asserts a claim for negligent misrepresentation. Predominance is met for the New York, New Jersey and nationwide classes under Plaintiff's claim for negligent misrepresentation.  Because Defendants uniformly misrepresented their respective Flushable Products as "flushable" to all class members on the front of every package, this action is an "appropriate subject[] for class certification because the standardized misrepresentations may be established by generalized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. N.Y. 2002).  It would be impossible for class members not to rely on Defendants' misrepresentation when it constituted the most important attribute of the product and, at least with respect to the use of "flushable" as a claim, it was put right in the product name.  *E.g.*, Ex. BB, Kurtz Dep. at 20:25-21:6 ("I still believed that the product must be flushable because it states flushable.").  Indeed, Judge Rakoff recently found that common issues predominated on negligent misrepresentation and fraud claims where "defendant uniformly misrepresented its pomace oil to be 100% Pure Olive Oil to all class members. . ." *Ebin*, 297 F.R.D. at 569.

**c.      The Elements of the Express Warranty Claim Can Be Established Through Common Proof**

Dr. Kurtz's second cause of action asserts a claim for breach of express warranty.  Dr. Kurtz's breach of express warranty claim is brought on behalf of all class members who purchased the Flushable Products in New York, New Jersey and nationwide.  These allegations involve common questions that predominate over any individual issues that may arise.  *See Ebin*, 297 F.R.D. at 569 (finding predominance of common issues for express warranty claims where each tin sold to class members had a material, express promise in large letters on multiple sides of the tin that the contents inside were 100% Pure Olive Oil" and "[t]he same evidence will determine whether the substance inside conforms to the express warranty.").  "An express warranty is created when a seller

- 27 -

makes a promise to a buyer related to a good or promises that a good will conform to a specific description." *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 250 (D.N.J. 2008) (finding that predominance exists over claim for breach of express warranty because an "expressed promise" on the packaging "had been breached" and therefore "no individual inquiry [wa]s needed to resolve plaintiffs' claim").[23] "To establish a breach of an express warranty . . . the plaintiff need not prove privity or traditional reliance." *Id.*; *see also Bregman Screen & Lumbar Co. v. Bechefsky*, 16 N.J. Super. 35, 41 (App. Div. 1951) (stating that "as a rule, no proof of the buyer's reliance on the warranty is necessary other than that the seller's statements were of a kind which naturally would induce the purchase").

Every package of the Flushable Products sold to class members had a material, express promise in large letters on the front of the package that the contents inside were "flushable." *See, e.g.,* Ex. FF, COSTCO00003400-08 at 400; Ex. GG, COSTCO00014004-06 at 005; Ex. HH, KCC-Kurtz0003215; Ex. II, KCC-Kurtz0003245. Reliance will be demonstrated through classwide evidence because "as practical matter, proof of reliance [under New York law] amounts to proof of the existence of an express warranty." *See NSA Invs. II L.L.C. v. SeraNova, Inc.*, 227 F. Supp. 2d 200, 203-04 (D. Mass. 2002) (applying New York law); *see also Metromedia Co. v. Fugazy*, 983 F.2d 350, 360 (2d Cir. 1992). The remaining elements of this cause of action also can be established through common evidence, including that the express warranties were on every package of the Flushable Products, the misrepresentations were material and literally false, and the Flushable Products did not perform as warranted. *See, e.g.*, *Seekamp v. It's Huge, Inc.*, No. 09-CV-00018

---

[23]   "In order to demonstrate that an express warranty was created under New York law, a plaintiff must prove that the statement falls within the definition of warranty, that she relied on it, and that it became part of the basis for the bargain." *Kraft v. Staten Island Boat Sales, Inc*., 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (internal quotations omitted).

(LEK/DRH), 2012 U.S. Dist. LEXIS 33295, at *11 (N.D.N.Y. Mar. 13, 2012) (finding common issues predominated plaintiffs' common law breach of contract claim under New York law).

### d.    Damages Are Measureable on a Classwide Basis

Under *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), "a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, No. 13-3070-cv, 2015 U.S. App. LEXIS 2054, at *14 (2d Cir. Feb. 10, 2015) (clarifying that the *Comcast* "Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance."); *see also Butler*, 727 F. 3d at 799 ("a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory."). In other words, "at the class certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case.'" *Comcast*, 133 S. Ct. at 1433. But, "[p]laintiffs are not required to set forth their final suggested protocol for how damages should be calculated. Instead, they need only show that the methodologies that they propose are not so insubstantial as to amount to no method at all." *Leider v. Ralfe*, 01 Civ. 3137 (HB)(FM), 2004 U.S. Dist. LEXIS 15345, at *43-44 (S.D.N.Y. July 30, 2004) (internal quotations and citations omitted).[24]

The Second Circuit recently affirmed that *Comcast* "left undisturbed" the law of the Circuit "that individuated damages determinations alone cannot preclude certification under Rule 23(b)(3)." *Roach*, No. 13-3070-cv, 2015 U.S. App. LEXIS 2054, at *18; *see also Sykes v. Mel S. Harris &*

---

[24]   When issues of liability can be determined with common classwide evidence, the predominance standard can be satisfied even if damages are not provable in the aggregate. *See* Advisory Committee's 1966 Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C. App. at 141 ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by the individuals within the class."); Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. §1781, at 235-37; W. Rubenstein, Newberg on Class Actions §4:54 at 205 (5th ed. 2012) ("individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)").

*Assocs. LLC*, 13-2742-cv, 2015 U.S. App. LEXIS 2057, at *40 (2d Cir. Feb. 10, 2015) ("it is still

'clear that individualized monetary claims belong in Rule 23(b)(3).'") (citing *Dukes*, 131 S. Ct. at

2558).

Beginning with Plaintiff's New York statutory claims, proof of damages will be simple and

straightforward. New York's GBL §349(h) provides for the recovery of "actual damages or fifty

dollars, whichever is greater."[25] GBL §350, likewise, provides for the recovery of "actual damages

or $500, whichever is greater." Therefore, the classwide damage calculation under GBL §§349 and

350 is simply the number of units sold in New York (for the New York classes) and nationwide (for

the nationwide classes) multiplied by the $50 or $500 statutory minimum, depending on the claim.

*E.g.*, Weir Decl. at ¶61.[26]

Actual damages for the GBL claims, as well as for Plaintiff's common law claims[27] and

claim under the NJCFA, can also be calculated by utlizing a full refund approach, *see* Weir Decl.

---

[25]   Although under New York's CPLR §901(b) a state court class action to recover statutory damages under §349(h) cannot be maintained, New York's procedural rules do not apply to a class action in federal court. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 130 S. Ct. 1431, 1448 (2010) (holding that CPLR §901(b) does not apply to class actions in federal court); *Bristol Village, Inc. v. Louisiana–Pacific Corp*., 916 F. Supp. 2d 357 (W.D.N.Y. 2013) ("Although N.Y. C.P.L.R. 901(b) prohibits class action relief for a statutorily-imposed penalty or minimum damages, the Supreme Court held in [*Shady Grove*] that the certification requirements of Rule 23 preempted this state law 'procedural' limitation in federal actions."); *Guido v. L'Oreal, USA, Inc*., CV 11-1067 CAS (JCx), 2013 U.S. Dist. LEXIS 94031, *46 (C.D. Cal. July 1, 2013) (granting class certification on a claim under GBL §349(h) "to pursue these statutory damages on behalf of the New York class").

[26]   As explained by the Court in *Guido*, "because awarding classwide relief only requires that a fixed amount of statutory damages be granted to each class member, no individualized damages inquiries are necessary for the New York class." 2013 U.S. Dist. LEXIS 94031 at *46.

[27]   Like Plaintiff's New York and New Jersey consumer fraud claims, the common law claims asserted by Plaintiff have routinely been certified on a nationwide basis. *See, e.g.*, *Ebin*, 297 F.R.D. at 570 (S.D.N.Y. 2014), *mot. to reconsider denied*, 13 Civ. 2311 (JSR), 2014 U.S. Dist. LEXIS 44780, at *4 (S.D.N.Y. Mar. 19, 2014) (certifying a nationwide class asserting claims for negligent misrepresentation under New York and New Jersey law and breach of express warranty under New

¶18, a price premium calculation, *see id.* ¶¶19-60, or a calculation of reasonably quantified out-of-pocket plumbing expenses.  All of these methodologies for calculating actual damages have been recognized by New York and New Jersey courts.  *See, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2014 U.S. Dist. LEXIS 26439, at *4, n. 1 (S.D.N.Y. Feb. 24, 2014); *In re Scotts EZ Seed Litig.*, 2015 U.S. Dist. LEXIS 9116, at *29-37; N.Y. U.C.C. §§ 2-714 and 2-715; *Shuldman v. DaimlerChrysler Corp.*, 1 A.D.3d 343, 345-46 (2d Dep't Nov. 3, 2003); *Smith v. Nikolayevskiy*, 23 Misc.3d 1133(A), *3 (N.Y. Civ. Ct. May 12, 2009); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011); *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248-49 (N.J. 2005).[28]

"Unlike the situation in *Comcast*, there is no possibility in this case that damages could be attributed to acts of the defendants that are not challenged on a classwide basis." *Butler* 727 F.3d at 800.  All class members, here, attribute their damages to Defendants' flushable claims.

### 2. Class Litigation Is Superior to Other Methods of Adjudication

In addition to predominance of common questions, Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) provides four factors pertinent to a finding of superiority:

---

Jersey law); *Elias*, 252 F.R.D. at 240 (certifying a nationwide class asserting claims under the NJCFA and breach of warranty).

[28]  Should the Defendants argue that individualized damages issues create manageability issues for the classes, the Second Circuit has instructed:

> There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

*In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d at 141 (citing authority).

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

*City of New York*, 276 F.R.D. at 29-30 (citing *Amchem*, 521 U.S. at 615-16); Fed. R. Civ. P. 23(b)(3).  Significantly, however, "the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004).  Thus, "where a court has already made a finding that common issues predominate over individualized issues, [a court is] hard pressed to conclude that a class action is less manageable than individual actions."  *Id.* at 1273.

As demonstrated above, *see supra* at §V.A.1.a. common issues overwhelmingly predominate on the claims of the New York, New Jersey and nationwide classes.  With classes consisting of tens if not hundreds of thousands of consumers in New York, New Jersey and nationwide, the prospect of having each consumer separately prove the existence of Defendants' deceptive conduct is irrational and inefficient and weighs heavily in favor of a finding of superiority.  *Klay*, 382 F.3d at 1260 (requiring hundreds of thousands of plaintiffs to repeatedly prove the deceptive scheme "is ridiculous").

A class action is superior here because "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions."  *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).  Where "proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions.  *Seijas v. Republic of*

- 32 -

*Arg.*, 606 F.3d 53, 58 (2d Cir. N.Y. 2010); *see also Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 103 (S.D.N.Y. 1981) ("A Rule 23(b)(3) action clearly is superior where large numbers of persons, who may be unaware of the existence of a cause of action, are involved and where most of their claims are too small to warrant individual suits."); *Whirlpool*, 678 F. 3d at 421 ("no difficulty affirming . . . finding that common questions predominate and class action mechanism is the superior method to resolve these claims . . . especially . . . since class members are not likely to file individual actions because the cost of litigation would dwarf any potential recovery."). Here, the prices for Defendants' Flushable Products typically range from $.98 for a 10 count package of Kleenex branded Cottonelle flushable wipes to $14.99 for a 600 count box of Kirkland branded flushable wipes or more. *See* Ex. KK, O'Connor Ex. 18A, KCC-Kurtz0019343; Ex. W, Walior Dep. at 69:11-71:4. Such a small amount at issue for each class member renders individual litigation infeasible, while a class action allows the potential for meaningful redress. *See Amchem Prods.*, 521 U.S. at 617 (holding that facilitating small claims is "[t]he policy at the very core of the class action mechanism").

There is a clear preference to concentrating litigation on behalf of all class members in one forum, since this will prevent inconsistent adjudications and will promote fair and efficient use of the judicial system. *See Cromer*, 205 F.R.D. at 133. And, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140; *Ebin*, 297 F.R.D. at 567 (quoting same); *In re Scotts EZ Seed Litig.*, 2015 U.S. Dist. LEXIS 9116, at *16-17 (quoting same). Manageability concerns rely almost entirely on the premise of whether "individualized inquiries will swallow common ones," *Id.* at *38 (internal quotations omitted), and therefore will not defeat class certification where, as here, common issues predominate over

- 33 -

individual ones.  As the claims at issue here focus on Defendants' conduct, a trial will be manageable as it will involve examining evidence of Defendants' common practices rather than any issues regarding class members or their conduct.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) ("From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery.").  Class treatment of these claims is, quite simply, the most efficient and just way to proceed.

### 3.     The Six Proposed Classes Are Ascertainable

Courts in the Second Circuit, in the context of determining whether to certify a class, recognize an "'implied requirement of ascertainability.'"  *See, e.g., Ebin*, 297 F.R.D. at 567 (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)).  "The standard for ascertainability is 'not demanding' and is 'designed only to prevent the certification of a class whose membership is truly indeterminable.'  *Ebin*, 297 F.R.D. at 567 (quoting *Gorat v. Capala Bros., Inc.*, 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010)); *In re Methyl Tertiary Buyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (the class must be "identifiable" such that "its members can be ascertained by reference to objective criteria."); *Enzo Forcellati v. Hyland's Inc*., No. CV 12-1983-GHK (MRWx), 2014 U.S. Dist. LEXIS 50600, at *22-24 (C.D. Cal. 2014) (quoting same).  So, the mere fact that class members might not have retained proof of their purchases of Flushable Products will not render the classes unascertainable. *See In re Scotts EZ Seed Litig.*, 2015 U.S. Dist. LEXIS 9116, at *15-16 ("Declining to certify classes when consumers are likely to lack proof of purchase 'would render class actions against producers almost impossible to bring.'") *Ebin*, 297 F.R.D. at 567 (finding nationwide class of olive oil purchasers ascertainable even though they were unlikely to have proof of purchase).  Moreover, although an effort to identify class members must be made "at some point in the case," there is no

- 34 -

requirement that any class members, other than the named class representatives, be identified prior to class certification.  *See, e.g.*, *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 341-42 (S.D.N.Y. 2004) (internal quotations and citations omitted).

Here, the classes consist of New York, New Jersey and nationwide purchasers of either Kimberly-Clark Flushable Wipes or Kirkland Signature Flushable wipes containing the "flushable" claim.  This is sufficient to satisfy the ascertainability requirement. *See In re Scotts EZ Seed Litig.*, 2015 U.S. Dist. LEXIS 9116, at *16 (citing cases).  There is nothing subjective about the class definitions as individuals either purchased the product or not.  The location of the purchase, whether New York, New Jersey or elsewhere, is an objective fact.  It is administratively feasible to identify class members by reference to these criteria.  *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. at 337.  Additionally, Plaintiff's counsel have already uncovered several methods to identify class members.                      REDACTED

                                                                        That means that one hundred percent of class members who purchased Flushable Products at Costco will be ascertainable.  For Kimberly-Clark, class member identifying information can be obtained from information subpoenaed from retailers' loyalty card programs or other records (Plaintiffs have already obtained this information from certain third parties, including Amazon and Drugstore.com, Weir Decl. at ¶¶47-57), through sworn affidavits identifying the particulars of the purchase and/or through records of class members' purchase.  *See Ebin*, 297 F.R.D. at 567; *Enzo Forcellati*, 2014 U.S. Dist. 50600 at *13-15, 21-25.[29]

---

[29]   Although this process will not produce a complete list of the classes, it will identify a substantial number of class members "who can be identified with reasonable effort" and provided individual notice. Fed. R. Civ. P. 23(c)(2)(B).  This is more than enough as Rule 23 does not require a roll call.

The "class action device is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit." *Ebin*, 297 F.R.D at 567.   It would be particularly unjust for theoretical manageability concerns to pose an obstacle to class certification here.   The evidence in this case leaves little doubt that Defendants committed a massive fraud on millions of purchasers of Flushable Products.   Without class certification, Defendants will retain the profits of that fraud and be incentivized to repeat their illegal conduct.   This is precisely the type of case that requires class treatment if there is to be any possibility of redress.   As Judge Posner reasoned in *Carnegie v. Household Intern., Inc*., 376 F.3d 656 (7th Cir. 2004):

> The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.   But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative – no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no litigation at all.

*Id*. at 661.   Hypothetical concerns about the manageability of this action pale by comparison to concerns about the actual fraud that Defendants have already committed.

### B.      The Requirements for Certification Under Rule 23(b)(2) Are Satisfied

The action qualifies as a class action under Rule 23(b)(2) because Defendants' deceptive marketing of the Flushable Products is an action of general applicability to all members of the classes "so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[es] as a whole."   Fed. R. Civ. P. 23(b)(2); *see also* NY GBL §§349(h) and 350-e (authorizing

---

The text of the rule contemplates that certified classes will contain members who are not easily identifiable: it requires that absent class members must be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and published notice to those who cannot be. Fed. R. Civ. P. 23(c)(2)(B); *see also* Manual For Complex Litigation, Fourth §21.311, at 292 (Federal Judicial Center 2004) ("[I]f no records were kept of sales of an allegedly defective product from retailers to consumers, publication notice may be necessary.").

injunctive relief); *Laufer v. U. S. Life Ins. Co. in City of New York*, 385 N.J. Super. 172, 183-84, 186,

188 (App. Div. 2006) (certifying a class seeking injunctive relief under the NJCFA).  In *Jermyn*,

Judge McMahon certified a similar class seeking injunctive relief under New York General Business

Law (GBL) §349 reasoning that:

> If plaintiff's allegations are true, there is overwhelming positive value to the injunctive relief that the class seeks.  Such an injunction would prevent Best Buy from continuing to perpetrate its alleged deceptive Anti-Price Matching Policy on all New York consumers in violation of New York law. The state of New York placed a high value on this type of injunctive relief; indeed, section 349 expressly provides for it: "Any person who has been injured by reason of any violation of this section may bring an action in his own name *to enjoin such unlawful act or practice. . . .*" N.Y. Gen. Bus. Law §349(b) (emphasis added).
>
> In addition, the availability of injunctive relief in this case gives a plaintiff the type of incentive needed to bring this action.  Here, Jermyn complains that he lost $180.00 based on Best Buy's application of its secret Anti-Price Matching Policy.  Such damages are insufficient to incent a plaintiff to bring suit; they are exceeded by the filing fee.  However, a reasonable plaintiff aggrieved by Best Buy's policy would want to prevent Best Buy from committing wrongful acts in the future.  Accordingly, the class meets the requirements of Rule 23(b)(2).60

256 F.R.D. at 434.  Judge McMahon's reasoning in *Jermyn* is equally applicable here and supports

certification of the New Jersey and New York classes under Fed. R. Civ. P. 23(b)(2).

When a district court engages in the analysis required under Rule 23(b)(2) and Rule 23(b)

(3), a class can be certified seeking both declaratory and injunctive relief as well as money damages.

*See, e.g.*, *Stinson v. City of New York*, 282 F.R.D. 360, 363-364 (S.D.N.Y. 2012); *Jermyn*, 276

F.R.D. at 173-74; *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012) ("That

plaintiffs are seeking substantial monetary damages is of no concern given [that Plaintiffs seek]

certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages,

respectively.").  Injunctive relief is particularly appropriate here, where Plaintiff repeatedly testified

that one of the goals of the litigation is to prevent Defendants from continuing to assert false and

misleading claims as to the flushability and dispersibility of their products, Ex. BB, Kurtz Dep. at

- 37 -

109:20 – 110:5, 154:4 – 154:16, Plaintiff desires to purchase Defendants' Flushable Products in the future if they performed as advertised, *id*. at 57:20 – 57:25, but the "flushable" claim has not been removed from Defendants' packaging, and Defendants' Flushable Products continue to wreak havoc on class members' plumbing and septic systems and on municipality sewer systems. *See Ackerman*, 2013 U.S. Dist. LEXIS 184232, at*71 (July 18, 2013) (recommending Rule 23(b)(2) injunctive relief classes be certified and finding that "[i]f, as plaintiffs allege, the name 'vitaminwater' is misleading to a reasonable consumer, then equitable relief in the form of an injunction would be an appropriate remedy).

In this case, the GBL and NJCFA afford both injunctive and monetary relief.  Accordingly, *Dukes* is no bar to class certification under Fed. R. Civ. P. 23(b)(2) in this case.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court grant his motion to certify the New York, New Jersey and nationwide classes.

DATED:  February 27, 2015                ROBBINS GELLER RUDMAN
                                                                  & DOWD LLP
                                                       SAMUEL H. RUDMAN
                                                       ROBERT M. ROTHMAN
                                                       MARK S. REICH


                                                       _____
                                                       MARK S. REICH

                                                       58 South Service Road, Suite 200
                                                       Melville, NY  11747
                                                       Telephone:  631/367-7100
                                                       631/367-1173 (fax)
                                                       srudman@rgrdlaw.com
                                                       rrothman@rgrdlaw.com
                                                       mreich@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, Mark S. Reich, hereby certify that on February 27, 2015, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.


                                        /s/ Mark S. Reich
                              _____
                                        MARK S. REICH