James M. Bergin
Kayvan B. Sadeghi
Adam J. Hunt
MORRISON & FOERSTER LLP
255 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000

*Attorneys for Defendant*
*Costco Wholesale Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

D. JOSEPH KURTZ,

               Plaintiff,

      v.

KIMBERLY-CLARK CORPORATION and
COSTCO WHOLESALE CORPORATION,

           Defendants.

-----------------------------------------------------------------x

No. 1:14-cv-01142 (JBW)(RML)

**FILED UNDER SEAL**
(Leave to File Under Seal Granted February 27, 2015)

## DEFENDANT COSTCO WHOLESALE CORPORATION'S
## MOTION TO DENY CLASS CERTIFICATION

James M. Bergin
Kayvan B. Sadeghi
Adam J. Hunt
MORRISON & FOERSTER LLP
255 West 55th Street
New York, NY 10019
Telephone:  (212) 468-8000

*Attorneys for Defendant*
*Costco Wholesale Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

    A.    Costco's Kirkland Signature Moist Flushable Wipes ............................. 5

    B.    Assessing Flushability .......................................................................... 5

    C.    The Consumer Experience With Kirkland Signature Flushable Wipes ............... 6

    D.    Plaintiff's Experience With Kirkland Signature and Other Wipes ...................... 9

        1.    The Brooklyn Residence ................................................................ 10

        2.    The New Jersey Residence .............................................................. 14

        3.    Plaintiff Keeps Purchasing Wipes .................................................. 16

    E.    Variety in Home Plumbing Systems ....................................................... 17

    F.    Variety in Costco Members' Purchasing Habits ........................................ 18

    G.    No Reliable Method Of Calculating A Premium For Kirkland Signature Flushable Wipes .............................................................................. 20

PROCEDURAL HISTORY .................................................................................. 23

LEGAL STANDARD ........................................................................................... 24

ARGUMENT ........................................................................................................ 26

I.    THE COURT SHOULD DENY CERTIFICATION OF A CLASS UNDER RULE 23(B)(3) ............................................................................................ 26

    A.    The Core Elements Of Plaintiff's Claims Are Not Susceptible to Common Proof; Individual Inquiries Will Predominate ..................................... 26

        1.    The Vast Majority Of Putative Class Members Suffered No Injury. ...... 29

        2.    Establishing Causation Would Require Highly Individualized Inquiries. .................................................................................. 30

            a.    Individual Purchase Decisions ................................................. 30

            b.    Individual Plumbing Clog Evaluation ....................................... 32

        3.    There Is No Reliable Way To Model Class-Wide Damages. ................. 35

    B.    Plaintiff Cannot Satisfy Rule 23(a)'s Other Requirements ............................. 41

        1.    Plaintiff Cannot Establish Numerosity. ............................................ 41

        2.    Plaintiff Is Not Typical Of Any Viable Class. ................................... 44

        3.    Plaintiff Is Not An Adequate Class Representative. ............................ 46

**FILED UNDER SEAL**

**TABLE OF CONTENTS**
**(continued)**

Page

C.  A Class Action Is Not Superior To Costco Members' Existing Remedies. ........ 48

II.  THE PROPOSED CLASS IS NOT REASONABLY ASCERTAINABLE. .................. 49

III.  THE COURT SHOULD DENY CERTIFICATION OF AN INJUNCTIVE RELIEF CLASS UNDER RULE 23(B)(2). .................................................. 50

CONCLUSION.......................................................................................................... 52

ii

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395 (DLI)(RML), 2013 WL 7044866 (E.D.N.Y. July 18, 2013)........................48

*Andre Strishak & Assoc's., P.C. v. Hewlett Packard Co.*,
   300 A.D.2d 608, 752 N.Y.S.2d 400 (2d Dep't 2002) ..............................................27

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)................................................................44, 46

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)..............................................................26, 44

*CBS Inc. v. Ziff-Davis Publ'g Co.*,
   75 N.Y.2d 496 (1990) ..........................................................................28

*Charron v. Pinnacle Grp. N.Y. LLC*,
   269 F.R.D. 221 (S.D.N.Y. 2010) .......................................................46, 49

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)....................................................................41

*Cooper v. Samsung Elecs. Am., Inc.*,
   374 F. App'x 250 (3d Cir. 2010) ...........................................................42

*Gardner v. W. Beef Props., Inc.*,
   No. 07-CV-2345 RJD JMA, 2011 WL 6140518 (E.D.N.Y. Sept. 26, 2011) *report and
   recommendation adopted as modified sub nom. White v. W. Beef Props., Inc.*, No. 07
   CV 2345 RJD JMA, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011) ...........................51

*Gary Plastic Packaging Corp. v. Merrill Lynch*,
   903 F.2d 176 (2d Cir. 1990)................................................................44

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)..........................................................................25

*Goshen v. Mut. Life Ins. Co.*,
   98 N.Y.2d 314 (2002) ........................................................................42

*Hayes v. Wal-Mart Stores, Inc.*,
   725 F.3d 349 (3d Cir. 2013)................................................................49

*In re Canon Cameras*,
   237 F.R.D. 357 (S.D.N.Y. 2006) .................................................*passim*

*In re Initial Pub. Offering Sec. Litig. ("IPO")*,
   471 F.3d 24 (2d Cir. 2006)..............................................................25, 49

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Int'l Union of Operating Eng'rs. Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
   192 N.J. 372, 929 A.2d 1076 (2007).....................................................................................28

*J.A.O. Acquisition Corp. v. Stavitsky*,
   8 N.Y.3d 144 (N.Y. 2007) ....................................................................................................43

*Laub v. Faessel*,
   297 A.D.2d 28, 745 N.Y.S.2d 534 (1st Dep't 2002) ...........................................................28

*Leonard v. Abbott Labs., Inc.*,
   No. 10-CV-4676 (ADS)(WDW), 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) .....................48

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
   211 F.R.D. 228 (S.D.N.Y. 2002) ..........................................................................................42

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012)..................................................................................................49

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................................43

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008), *abrogated in part on other grounds by*
   *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)......................................... *passim*

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)................................................................................................29

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)..................................................................................................28

*Nationwide Life Ins. Co. v. Haddock*,
   460 F. App'x 26 (2d Cir. 2012) ............................................................................................51

*Oscar v. BMW of N. Am., LLC*,
   274 F.R.D. 498 (S.D.N.Y. 2011) ..................................................................................... *passim*

*Oscar v. BMW of N. Am., LLC*,
   No. 09 Civ. 11 (PAE), 2012 WL 2359964 (S.D.N.Y June 19, 2012)..............................32, 40

*Pagan v. Abbott Labs., Inc.*,
   287 F.R.D. 139 (E.D.N.Y. 2012) ..................................................................................... *passim*

*Pecere v. Empire Blue Cross & Blue Shield*,
   194 F.R.D. 66 (E.D.N.Y. 2000) ............................................................................................41

iv

**FILED UNDER SEAL**

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Pelman v. McDonald's Corp.,*
    272 F.R.D. 82 (S.D.N.Y. 2010) ....................................................................... *passim*

*Quinn v. Walgreen Co.,*
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)........................................................................43

*Savino v. Computer Credit Inc.,*
    173 F.R.D. 346 (E.D.N.Y. 1997) ...............................................................................46

*Spagnola v. Chubb Corp.,*
    264 F.R.D. 76 (S.D.N.Y. 2010) ...........................................................................46, 49

*Suvill v. Bogopa Serv. Corp.,*
    No. 11-cv-3372 (SLT) (RER), 2014 WL 4966029 (E.D.N.Y. Sept. 30, 2014)................28, 49

*UFCW Local 1776 v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.),*
    Nos. 04-MD-1596, 2008 WL 2696916 (E.D.N.Y. July 2, 2008) .............................................43

*Vaccariello v. XM Satellite Radio,*
    295 F.R.D. 62 (S.D.N.Y. 2013) ...................................................................................52

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ...................................................................................... *passim*

*Weiner v. Snapple Bev. Corp.,*
    No. 07 Civ. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y Aug. 5, 2010).......................... *passim*

*Wilson v. Toussie,*
    No. 01-CV-4568 (DRH)(WDW), 2008 WL 905903 (E.D.N.Y. Mar. 31, 2008)..............26, 50

STATUTES AND RULES

N.Y. Gen. Bus. Law § 349(a) (McKinney 1963)........................................................................42

Federal Rule of Civil Procedure 23 ....................................................................... *passim*

**FILED UNDER SEAL**

# INTRODUCTION

This case should never have been brought as a class action.  Plaintiff contends that he was misled by Costco's labeling of its Kirkland Signature Moist Flushable Wipes, and that as a result he suffered multiple plumbing clogs in two different residences.  In addition to asserting an individual claim, he seeks to represent a class of purportedly 'similarly situated' Costco members.  But Plaintiff's claim is riddled with inconsistencies, gaps, and misstatements that are entirely personal to him, to such an extent that makes it impossible for him to satisfy the requirements for certification under Rule 23.  Moreover, many of the flaws in Plaintiff's case raise evidentiary issues that might well arise with respect to other claimants' claims as well, but the only way that this court (or any other tribunal) could ascertain whether or to what extent this is the case would be to conduct individual inquiries into *every* putative class member's individual circumstances.

A brief sampling of the many problems with Plaintiff's case shows clearly that this claim is inappropriate for treatment as a class action:

- Plaintiff used flushable wipes for years without any plumbing problems; the first plumbing incident described in his complaint occurred within a week of moving into a new home, and Plaintiff admits that in the week prior to that clog, he and his family flushed *non-flushable baby wipes* in their new residence;

- Plaintiff contends that he and his family used *two different* kinds of flushable wipes, but he has no way of determining which (if any) wipe was responsible for any of the clogs of which he complains;

- Moreover, there is strong evidence suggesting that *Plaintiff never had any Kirkland Signature Flushable Wipes at either of his residences before the clogs occurred*;

- Plaintiff has no real evidence other than his own (flawed) recollections:  the service company he claims to have hired to clear clogs in his Brooklyn residence has no record of performing the work, and the plumber that serviced his New Jersey residence attributed the clog to baby wipes;

1

**FILED UNDER SEAL**

- Defendants' inspection of Plaintiff's plumbing shows that the plumbing systems in both residences are significantly compromised in ways that could have caused or contributed to the blockages underlying Plaintiff's claims;

- Even after Plaintiff decided not to flush any wipes, he continued to buy Kirkland Signature Flushable Wipes for months – indeed, nine of his ten purchases of Kirkland Signature Flushable Wipes were made *after* the clogs at their Brooklyn home, when he no longer believed the wipes were flushable; he and his wife even continued to purchase, but not flush, Kirkland Signature Flushable Wipes for months *after* filing this lawsuit.

This befuddling set of facts is plainly not the stuff of class certification.  Most prominently, *individual issues will predominate over common questions*, because the core elements of Plaintiff's claims – including injury, causation, and damages – are not susceptible to common proof:

- To certify a class Plaintiff will have to show common injury, which he cannot do for the overwhelming majority of satisfied consumers who flush Kirkland Signature Flushable Wipes without incident;

- Plaintiff himself also demonstrates that not all Kirkland Signature Flushable Wipes are purchased to be flushed, and that many plumbing clogs may have no link to flushable wipes, but may instead result from flushing *non-flushable products* or from compromised plumbing systems;

- Plaintiff would also be unable to establish any class-wide damages model because there is no discernible pricing premium for "flushability" and the extreme pricing variety of potential alternative products renders it impossible to know what else purported class members could have purchased or for how much.

Moreover, Plaintiff cannot meet the basic requirements of Rule 23(a).  To begin with, *Plaintiff cannot establish numerosity*:  Costco and its manufacturer have received                     REDACTED                        REDACTED                     the rate of complaints has declined substantially over time, and many of those complaints have been resolved.

Additionally, *Plaintiff is not typical of any certifiable class*:  If the perplexing facts unearthed in discovery – including that Plaintiff likely never flushed Costco wipes at either of the residences at issue and that *90%* of his purchases occurred when he believed the wipes were not flushable –

**FILED UNDER SEAL**

are typical, there is no certifiable class.  ***Nor can Plaintiff show that he is an adequate class representative.***  On top of his unusual history with Costco's wipes, Plaintiff's credibility is undermined by a shifting story and failure to preserve evidence even after this litigation began. If there were any aggrieved class members – which Plaintiff cannot demonstrate – they would certainly object to this Plaintiff standing in for their interests.

The record further shows that ***a class action would be inferior to existing remedies***, since Costco already refunds purchase costs for any or no reason pursuant to its market-leading customer satisfaction guarantee, and the manufacturer of the Kirkland Signature Flushable Wipes, Nice-Pak Products, Inc. ("Nice-Pak"),                     REDACTED

. The only beneficiary of proceeding by class action instead would be Plaintiff's counsel.  And finally, ***the membership of the proposed class is not ascertainable***:  Plaintiff can offer no way to ascertain a class of Costco members who have suffered a plumbing clog that could even potentially be linked to Kirkland Signature Flushable Wipes.

For the reasons set forth above, there is no basis to certify a damages class under Rule 23(b)(3).  Plaintiff's inability to meet the requirements of Rule 23(a) also precludes certification of an injunctive class under Rule 23(b)(2).  The record shows that the deficiencies of his claim will likely be endemic to the class and, at minimum, would require highly individualized proof to the extent evidence exists at all.  Accordingly, class certification should be denied.

## STATEMENT OF FACTS

Costco is a wholesale warehouse membership club that offers its members a wide selection of name-brand merchandise and also sells products under its 'Kirkland Signature' label.

**FILED UNDER SEAL**

(Walior Decl.[1]   ¶ 2.)  Costco sells four types of wipes under the 'Kirkland Signature' label: flushable wipes, baby wipes, facial wipes, and surface cleaning wipes.[2]  (*Id.* at ¶¶ 5-6; Walior Dep.[3] at 15:14-17; 16:6-10.)

Flushable wipes are moist toilet tissue designed to be flushed after use.  They are made of a nonwoven cloth-like material, referred to as a "base sheet," "substrate," or "applicator," with a liquid formula applied to that base sheet, packaged to remain moist until use.  (Babusik Dep.[4] 14:2-5.)  Many other types of wipes similarly involve a liquid applied to a base sheet, but different liquids and base sheets generate distinctly different products.  (*Id.* at ¶ 5.)[5]

Flushable wipes vary substantially by brand, as each manufacturer uses different materials and technology in their base sheets, different formulations in the liquids applied to those base sheets, and different packaging formats.  (*Id.* at ¶¶ 5, 7.)  These differences impact the performance characteristics of the wipes and consumer preferences between brands. (*Id.* at ¶ 7.)

Costco does not view or promote any category of wipes as a substitute or alternative to any other category of wipes.  (Walior Decl. ¶ 7.)  Costco's flushable wipes are marketed within the Pharmacy department, whereas baby wipes and facial wipes are in Costco's Health and Beauty department, and surface wipes are in the Sundries department.  (*Id.* at ¶ 6; Walior Dep. at 74:18-20; 16:6-10.)  The Costco buyer responsible for purchasing and pricing Costco flushable

---

[1] "Walior Decl." refers to the Declaration of Kim Walior in Support of Costco's Motion to Deny Class Certification, dated February 25, 2015, and the exhibits attached thereto.

[2] Many other types of wipes exist to meet different consumer needs and preferences, such as feminine hygiene wipes and medicated wipes for hemorrhoid use.

[3] "Walior Dep." refers to the February 13, 2015 Deposition of Kim Walior, excerpts of which have been filed as Exhibit 4 to the Declaration of Kayvan Sadeghi in Support of Costco's Motion to Deny Class Certification, dated February 27, 2015 ("Sadeghi Decl.")).

[4] "Babusik Dep." refers to the February 9, 2015 Deposition of Kim Babusik, excerpts of which have been filed as Sadeghi Decl. Ex. 3.

[5] "Babusik Decl." refers to the Declaration of Kim Babusik in Support of Costco's Motion to Deny Class Certification, dated February 27, 2015 and the exhibits attached thereto.

**FILED UNDER SEAL**

wipes does not discuss pricing with the buyers responsible for the other wipes that Costco sells.

(*Id.* at 16:11-17.)

### A.    Costco's Kirkland Signature Moist Flushable Wipes

Kirkland Signature Flushable Wipes were introduced in July 2011 and have been available for sale at Costco warehouse locations ever since.  (Babusik Decl. ¶ 12.)   They are sold in cartons containing 600 wipes, packaged as ten convenient soft packs of 60 wipes designed for ease of use and transportability, each with a  snap-shut Solo® lid that keeps the wipes moist and enables easy, pop-up dispensing.  (*Id.*)

Kirkland Signature Flushable Wipes are manufactured by Nice-Pak, which also makes Kirkland Signature Baby Wipes.  The two products involve different materials and production technology in the base sheet, different liquid formulations, and different wipe size.  (*Id.* at ¶ 22.) Baby wipes are larger and much stronger than flushable wipes, and are designed to be discarded in the trash along with the diaper after use.  (*Id.* at ¶¶ 22-23.)   Kirkland Signature Baby Wipes are also sold in a different packaging configuration, with larger cartons of 900 wipes, packaged as nine individual packs of 100 wipes each.  (*Id.* at ¶ 22.)

Nice-Pak works continually to develop next-generation technologies.  As a result, the product on Costco's shelves has been modified a few times.  The base sheet for the Kirkland Signature Flushable Wipes was modified once in early 2014, with the new version appearing on store shelves in February and March 2014.  (*Id.* at ¶ 13.)  The liquid applied to the base sheet was modified in March 2014, and again in November 2014.  (*Id.*)

### B.    Assessing Flushability

Wipes labeled as "flushable" are subject to extensive testing pursuant to guidelines promulgated by The Association of the Nonwoven Fabrics Industry (referred to as "INDA").
(Babusik Decl. ¶¶ 8-10.)  INDA is a non-profit organization that represents manufacturers,

**FILED UNDER SEAL**

suppliers, and others involved in the production of nonwoven products such as wipes.  (Babusik Dep. 65:17-19.)  Among other things, INDA works with its members to develop flushability guidelines (the "Guidelines").  (Babusik Decl. ¶¶ 8-10; Babusik Dep. 65:20-66:3.)

The Guidelines seek to provide objective criteria, in the form of a battery of standardized tests, to determine whether a product may be marketed and labeled as flushable.  (Babusik Decl. ¶ 8.)  The First Edition of the Guidelines was issued in 2008, after peer review by experts in the wastewater community.  (*Id.* at ¶ 9.)  Since then, the Guidelines have been revised twice, reflecting the view that the Guidelines should evolve to reflect advances in environmental science and nonwoven technology.  (*Id.*)  The Second Edition of the Guidelines, which was also peer reviewed, was issued in July 2009 and remained in effect when the Kirkland Signature Flushable Wipes were introduced in 2011.  (*Id.*)   The Third Edition of the Guidelines was released in August 2013, and provided an eighteen month grace period for any product that complied with the Second Edition to establish compliance with the Third Edition.  (*Id.* at ¶ 10.) INDA is currently working with the wastewater industry to develop a Fourth Edition of the Guidelines.  (*Id.* at ¶ 11.)

Testing by independent laboratories confirms that Kirkland Signature Flushable Wipes have been in compliance with the INDA Guidelines at all times since they were introduced to the market in 2011.  (*Id.* at ¶¶ 15-16.)  Nice-Pak engaged third-party labs to perform testing on multiple occasions to ensure that its test results were up to date, as well as in connection with the release of the Third Edition INDA Guidelines.  (*See id.*)

### C.    The Consumer Experience With Kirkland Signature Flushable Wipes

The Kirkland Signature Flushable Wipes proved to be a popular item with Costco members from the start, registering the sale of          REDACTED          in their first full year on the market, and sales have continued to grow ever since.  (*See* Sadeghi Decl. ¶ 10, Ex. 8.)

6

**FILED UNDER SEAL**

Consumers using flushable wipes value many aspects of the wipes other than their ability to be flushed.  For example, <span style="text-align:center">REDACTED</span>

At his deposition, Plaintiff acknowledged that he particularly liked the snap-shut Solo® lids.  (*See* Kurtz Dep.[6] 54:25-55:12.)

For the relatively few customers who are not fully satisfied with Kirkland Signature Flushable Wipes (or almost any other Costco purchase), Costco offers a well-publicized satisfaction guarantee on every product it sells, backed by a full refund.  (Walior Decl. ¶ 3; *see also* http://www.costco.com/about.html.)  Costco also provides members with numerous avenues to register any complaints, including service desks where members can make walk-in returns at warehouses, calls to a local warehouse store, a 1-800 number on each receipt that goes to a central call center, and the Costco website.  (Walior Dep. 81:2-17.)  Members also occasionally call directly to Costco's corporate headquarters.  (*Id.* at 86:12-20.)

Pursuant to its satisfaction guarantee, Costco provides a 100% refund for Kirkland Signature Flushable Wipes purchases to any member who requests it, for any reason.  If a member contacts Costco with a complaint about a plumbing clog, that is routed to Costco's risk management department, which forwards the complaint on to the manufacturer, Nice-Pak.  (*Id.* at 82:8-83:11.)  The Kirkland Signature Flushable Wipes packaging also includes a 1-800 number to contact Nice-Pak directly.  Nice-Pak retains records of every complaint that a Costco

---

[6] "Kurtz Dep." refers to the December 10, 2014 Deposition of D. Joseph Kurtz, excerpts of which have been filed as Sadeghi Decl. Ex. 5.

**FILED UNDER SEAL**

member makes regarding Kirkland Signature Flushable Wipes, including plumbing-related complaints.  (Babusik Decl. ¶ 18.)

Nice-Pak has received          REDACTED          in each of New York and New Jersey throughout the entire time from the initial launch of Kirkland Signature Flushable Wipes in 2011 through December 31, 2014, counting all complaints received through all of the channels discussed above.  (*Id.* at ¶18.)  Nationwide, the complaint ratio is even lower.  Costco has sold          REDACTED          of Kirkland Signature Flushable Wipes, containing more than          REDACTED          wipes, to more than          REDACTED          nationwide during the same period.  (*See* Sadeghi Decl. ¶ 10, Ex. 8; Martin Report[7] ¶ 15(c).)  Nice-Pak received          REDACTED

(Babusik Decl. ¶ 18.)  The volume of complaints has also dropped substantially over time, despite increasing sales.  For example, Nice-Pak received no plumbing complaints in New York at any time in 2014, other than the Complaint filed in this case.  (*Id.*)

Consistent with Costco's customer satisfaction priority, in instances where a Costco member informs Nice-Pak of a plumbing problem and documents the plumbing costs,          REDACTED

REDACTED

.  (*Id.* at ¶¶ 19-20.)          REDACTED

In one such instance, the insurer's investigation showed that the member was also flushing

---

[7] "Martin Report" refers to the Expert Report of Denise N. Martin, Ph.D., Senior Vice President at National Economic Research Associates, Inc., including exhibits attached thereto, filed as Sadeghi Decl. Ex. 1.

**FILED UNDER SEAL**

non-flushable feminine hygiene products.  (*Id.* at ¶ 21; Babusik Dep. 54:14-25.)  Similarly, one of the few members who directly contacted Costco's buyer with a complaint acknowledged that she was also flushing baby wipes and cleaning wipes.  (Walior Dep. 86:21-87:6.)

Plaintiff's story fits the same mold, as shown below, and survey evidence suggests many other purported class members will as well.  A study commissioned by Nice-Pak in 2011 found that [REDACTED] of households using baby wipes either had no children at all, or had no children in diapers.  (Babusik Decl. ¶ 23 & Ex. 3 at 7.)  A 2014 study conducted as part of a joint effort by INDA and the Maine wastewater community similarly found that more than 40% of survey respondents who used baby wipes "reported using the wipes for 'personal hygiene' or 'general cleaning,' as opposed to 47% for 'baby or toddler care.'"  (Babusik Decl. ¶ 24 & Ex. 4 at 35.) The 2011 study commissioned by Nice-Pak found that [REDACTED] of respondents with children in diapers said that they flushed baby wipes (and [REDACTED] said that they flush the diaper).  (Babusik Decl. Ex. 3 at 42.)  Importantly, the volume of baby wipes sold nationwide is approximately *six times* the volume of flushable wipes sold (*see* Martin Report at 7 n.6), so even if only a small fraction of baby wipes were being flushed, the absolute number of baby wipes flushed could still dwarf the total number of plumbing issues attributable to flushable wipes.

###   D.   Plaintiff's Experience With Kirkland Signature and Other Wipes

Plaintiff, Dr. David Joseph Kurtz, lives with his family at 409 Quentin Road in Brooklyn, New York.  (Kurtz Dep. 5:10-14; 12:11-14.)[8]  In the summers of 2012 and 2013, Plaintiff also rented a home owned by his father, located near the Jersey Shore at 185 Bethel Avenue, Elberon,

---

[8] Dr. Kurtz is married and has three children, ages eight, five, and two.  (Kurtz Dep. 10:25-11:24.)  His eight-year old daughter uses the bathroom unattended.  (*Id.*)

**FILED UNDER SEAL**

New Jersey.  (*Id.* at 68:6-18; Kurtz Decl.[9] ¶ 4.)  Plaintiff experienced plumbing clogs at both his Brooklyn home and his New Jersey summer home, which he attributes at least in part to flushable wipes.

Dr. Kurtz understands the term "flushable" to mean that a wipe "would not cause any problem to any part of my flushing system, any pipes."  (Kurtz Dep. 37:14-38:2.)  He acknowledged at his deposition that he does not intend to bring this case on behalf of any consumers who were satisfied with the product, or who experienced no plumbing issues.  (*Id.* at 154:17-22; 164:13-16.)

### 1.   The Brooklyn Residence

The Kurtz family moved to 409 Quentin Road on February 1, 2013, after living across the street at 408 Quentin Road for four years.  (*See id*. at 36:2-25.)  Before moving to 409 Quentin Road, Dr. Kurtz and his family regularly used flushable wipes throughout their years at 408 Quentin Road and for many years before that without experiencing any plumbing incidents.  (*Id*. at 133:16-25; 36:16-37:13.)  They generally used Cottonelle flushable wipes during that time, some of which they purchased at Costco.[10]  (*Id*. at 108:19-23; Kurtz Dep. Ex. N at 1.)[11]  Dr. Kurtz's wife, Susan Kurtz, purchased their first carton of Kirkland Signature Flushable Wipes in September 2012, approximately four months before they moved out of 408 Quentin

---

[9] "Kurtz Decl." refers to the Declaration of D. Joseph Kurtz in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. June 30, 2014), ECF No. 32.

[10] Plaintiff and his wife were both Costco members during the period at issue this litigation. (Declaration of Dionna Phillips, dated February 25, 2015, ¶ 4 & Exs. 1&2; Kurtz Dep. 84:24-85:21.)

[11] Kurtz Dep. Exhibit L is Costco's full record of Dr. Kurtz's purchase history.  Kurtz Dep. Exhibit M, is Costco's full record of Susan Kurtz's purchase history.  Kurtz Dep., Exhibit N is a chart prepared from Exhibits L and M reflecting Dr. and Ms. Kurtz's purchases of flushable and baby wipes at Costco.  Dr. Kurtz reviewed these records and stated that he had no reason to doubt that they were accurate reflections of his purchases at Costco.  (*See* Kurtz Dep. 86:10-87:23; Sadeghi Decl. Exs. 5.L, 5.M, and 5.N, respectively.)

**FILED UNDER SEAL**

Road.  Dr. Kurtz went back to Costco in November 2012, still two months before his move, at which point he purchased Cottonelle flushable wipes.  (Kurtz Dep. Ex. N at 1.)

When Dr. Kurtz moved to 409 Quentin Road in February 2013, he did not know whether the pipes at his new home were well maintained, and he did not have any inspection of the plumbing conducted before moving in.  (Kurtz Dep. 73:18-74:24.)  His first plumbing incident at 409 Quentin Road occurred almost immediately, "[n]ot more than a week" after he moved in. (*Id.* at 17:3-22.)[12]  Dr. Kurtz admitted that, in the week after their move, he and his family were flushing *non-flushable baby wipes* as well as flushable wipes down the toilets at their new home. (*Id.* at 109:6-19.)

Dr. Kurtz testified that he asked a company called "Bedford Sewer" to clear the clog, but he has no written record of the work performed and he does not remember the name of the person who responded.  (*Id.* at 21:12-22:4.)  Dr. Kurtz thought he remembered that wipes and toilet paper were removed from the area where the clog occurred – in the basement in the vicinity of the "house trap" that connects the interior piping to the pipe that leads to out to the sewer – but he does not know what brand of wipes were removed and he did not save any evidence that might help determine the composition of the clog.  (*Id.* at 134:12-25; 107:17-108:5; 177:21-25.)  Dr. Kurtz also does not know whether the site of the clog was fully cleared by Bedford Sewer during that visit to the house.  (*Id.* at 73:18-74:19.)

Dr. Kurtz testified that the person who cleared the clog told him not to flush any wipes of any kind, but Dr. Kurtz claims he did not believe this and continued to flush "flushable" wipes. Dr. Kurtz testified that "within 24 to 48 hours," of the first clog, he experienced another clog in

---

[12] Although Dr. Kurtz stated in a declaration attached to his opposition to Defendants' Motion to Dismiss that he experienced plumbing incidents in the summer of 2013, he acknowledged at his deposition that his Declaration is inaccurate.  (Kurtz Dep. 47:21-25; 48:2-3; 48:5-19.)

**FILED UNDER SEAL**

the same general location.  (*Id.* at 22:5-22.)  In the "24 to 48-hour period" between clogs, Dr. Kurtz estimates that he and his family flushed 20 to 30 flushable wipes.  (*Id.* at 28:19-29:2.) When the second clog occurred, he called "Bedford Sewer" again.  (*Id.* at 23:10-24.)  Dr. Kurtz does not know whether, on the second visit, Bedford Sewer cleared the house trap or did anything different than was done on the first visit, but he has not had any similar plumbing clogs since.  (*Id.* at 170:2-7; 24:14-24; 29:6-16.)  Other than those two visits in February 2013, Dr. Kurtz has not performed any maintenance on the plumbing systems at 409 Quentin Road at any time.  (*Id.* at 74:14-19.)

Dr. Kurtz contends that he paid approximately $200 to $300 dollars in plumbing expenses as a result of the two incidents at 409 Quentin Road, but he has produced no evidence of that payment.  (*Id.* at 47:21-48:19.)  Bedford Sewer has no record of performing any work at 409 Quentin Road.  (Declaration of Robert N. Hauck, dated December 18, 2014 (the "Hauck Decl."), at ¶ 4.)  The principal of the company has no recollection of the job and no way of knowing whether anyone from his company performed any work at 409 Quentin Road.  (*Id.* at ¶ 5.)

The record strongly suggests that whatever caused the clogs at 409 Quentin Road in February 2013, it was ***not*** Kirkland Signature Flushable Wipes.  First, as noted above, the Kurtz family's ***only*** prior purchase of Kirkland Signature Flushable Wipes occurred four months earlier, when they lived across the street, and that was followed by a purchase of Cottonelle flushable wipes at Costco two months later.  (*See* Kurtz Dep. Ex. N at 2.)  Second, the Kurtz family purchased other flushable wipes (but not Kirkland Signature Flushable Wipes) more frequently at local supermarkets.  (Kurtz Decl. ¶ 6.)

**FILED UNDER SEAL**

Asked specifically about the wipes present at 409 Quentin Road in February 2013, Dr. Kurtz testified that "we had gone to local supermarkets and the local Costco to stock up the house when we moved in . . . The products would have been purchased -- I believe, February 1st was a Friday, it would have been that Friday or that Sunday, from February 3, 2013." (Kurtz Dep. 36:3-13.)  Costco's records confirm that Ms. Kurtz did indeed go to Costco in February 2013, but she did not buy any wipes at that time (*see* Kurtz Dep. Ex. M at 4), indicating that the wipes at the Kurtz family's new home were purchased from local supermarkets (which do not sell Kirkland Signature Flushable Wipes).  Confronted with his Costco purchase history, Dr. Kurtz admitted that "it is possible" that the wipes flushed at 409 Quentin prior to the clogs were not Kirkland Signature Flushable Wipes, and that he does not know one way or the other.  (Kurtz Dep. 91:24-92:13.)  He has no records of any wipes purchases around that time.

Defendants' inspection of 409 Quentin Road also revealed that the plumbing system was not properly maintained, and exhibited several conditions which, singly or in combination, could have caused a clog.  Boyer Report[13] § 3.02.01.  The house trap was partially blocked with debris, which "reduces the capacity of the pipe and can lead to blockages regardless of what may be flushed."  (*Id.*)  Roots were also observed in the pipe leading from the house trap to the sewer, and pipe walls had corrosion with debris attached.  There was scaling on the piping leading from the house trap towards the vertical sanitary pipe in the house.  (*Id.*)  It is also "plausible that flushing baby wipes would cause or contribute to a clog," and the record is unclear whether the work purportedly performed by Bedford Sewer properly cleaned the house trap during the first visit.  (*Id.* at § 3.03)

---

[13] "Boyer Report" refers to the Expert Report of John T. Boyer, dated February 27, 2015, filed as Sadeghi Decl. Ex. 2.

**FILED UNDER SEAL**

It is impossible to determine the condition of the plumbing at the time of the incidents in February 2013 because in late 2014, months after filing this lawsuit, Dr. Kurtz renovated the plumbing in his house.  Upon inspection in December 2014, the house trap at the location where Dr. Kurtz asserts the clogs occurred was largely filled with construction debris, and it is impossible to determine whether that was the case at the time of the clogs (based on earlier construction), or whether that obstruction is new.[14]

Dr. Kurtz testified that, after the second clog in February 2013, he and his family stopped flushing all wipes at their Brooklyn home.  (Kurtz Dep. 38:7-18.)  However, two months later, Ms. Kurtz purchased Kirkland Signature Flushable Wipes at the Brooklyn Costco.  (*Id.* at 39:8-16; Kurtz Dep. Ex. N at 2.)  Dr. Kurtz testified that those wipes were used for the same purpose except that "they were thrown out" after use, instead of flushed.  (Kurtz Dep. 39:13-16.)

### 2.     The New Jersey Residence

Dr. Kurtz testified that he also experienced plumbing clogs at his summer rental house in Elberon, New Jersey.  (Compl.[15] ¶ 6; Kurtz Decl. at ¶ 4.)  According to Dr. Kurtz, the first such clog occurred "within a week after moving in" *in 2012* (Kurtz Dep. 66:21-67:7) – that is, the summer *before* the Brooklyn clogs and before Dr. Kurtz first purchased Kirkland Signature Flushable Wipes.  Dr. Kurtz testified that his brother-in-law called a plumber who "advised at that time to not flush anything but toilet paper down the toilet."  (*Id.* at 67:8-24.)  Dr. Kurtz was not present when the clog occurred but he was aware of that advice.  (*Id.*)  The Complaint omits any mention of this earlier incident or the plumber's advice to the Kurtzes not to flush anything but toilet paper.

---

[14] Defendants were not notified of Plaintiff's plans to modify his plumbing before doing so, even though the work occurred after discovery in this case had begun.

[15] "Compl." refers to the Class Action Complaint, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. Feb. 21, 2014), ECF No. 1.

**FILED UNDER SEAL**

The Kurtz family returned to the same Elberon residence in summer 2013, approximately four months *after* Dr. Kurtz claims that the Brooklyn clogs led them to stop flushing flushable wipes. However, at his father's house in New Jersey, Dr. Kurtz' family went back to flushing wipes and soon thereafter experienced another plumbing clog. (*Id.* at 29:11-16; 33:4-34:8.) Dr. Kurtz recalled that this occurred in late June or early July 2013; however, the plumber's invoice shows that it took place on July 20, 2013. (*See id.* at 78:21-83:3; Kurtz Dep. Ex. J.)

Once again, the record strongly suggests that no Kirkland Signature Flushable Wipes were involved in the clog. When asked where the wipes in the Elberon house were purchased, Dr. Kurtz explained that Ms. Kurtz went to the Costco warehouse in Ocean Township, New Jersey at the beginning of the summer to "fill up the [Elberon] house before moving there." (Kurtz Dep. 89:10-90:22.) Costco's records confirm that Ms. Kurtz went to the Ocean Township Costco on June 17, 2013, and she did purchase wipes on that trip – both flushable wipes and baby wipes – but she did ***not*** purchase any Kirkland Signature Flushable Wipes at that time. (Kurtz Dep. Ex. N at 2.) Confronted with this purchase history, Dr. Kurtz again admitted that "it is possible" that there were no Kirkland Signature Flushable Wipes in the house. (*Id.* at 91:11-16.) Dr. Kurtz does not know what was flushed down the toilets at the Elberon house by other renters. (Kurtz Dep. 34:13-35:3.) The plumber's invoice, dated July 20, 2013 – the only record of any plumbing work produced by Dr. Kurtz – reflects that "baby wipes," not flushable wipes, were the cause of the clog. (*See* Kurtz Dep. Ex. J.)

Defendants' inspection of the Elberon residence also identified numerous site-specific factors that might have caused or contributed to the repeated incidence of clogs at this property. The plumbing system is not properly designed or maintained. (Boyer Report § 3.02.02.) The piping was "significantly filled with water, toilet paper and other floating debris," indicating a

**FILED UNDER SEAL**

"sag" in the piping system that reduces flow through the system.  (*Id.*)  "[Tree] [r]oots and what appears to be trapped toilet paper was observed" in the piping, as well as some scale and corrosion, and water flow was "very poor."  (*Id.*)  These conditions "do not provide the proper flow characteristics for waste to pass through."  (*Id.* at § 3.03)  If baby wipes were flushed, as the plumber's invoice indicates, that "would exacerbate the faults in the existing system and likely cause a blockage" because baby wipes are not flushable.  (*Id.*)

According to Dr. Kurtz, he and his family stopped flushing wipes altogether after the July 2013 clog at the Elberon residence.  (Kurtz Dep. 66:4-13.)

### 3.   Plaintiff Keeps Purchasing Wipes

Dr. Kurtz never notified Costco of his plumbing problems, nor did he seek a refund from Costco for any flushable wipes, even though he was well aware of Costco's return policy and has returned other items in the past.  (Kurtz Dep. 105:6-17; 107:6-12.)  Dr. Kurtz also never complained or otherwise notified Costco or Nice-Pak of his plumbing clogs prior to filing this case.  (*Id.* at 93:14-18; 93:20-94:2.)  Quite the opposite, *one week* after the New Jersey clog, in July 2013, Dr. Kurtz purchased more Kirkland Signature Flushable Wipes.  (Kurtz Dep. Ex. N at 1.)  In fact, Dr. Kurtz and his wife proceeded to purchase a total of eight more 600-wipe cartons of Kirkland Signature Flushable Wipes after the New Jersey plumbing clog, including three cartons after the filing of this lawsuit in February 2014: two cartons in April 2014 and one in June 2014.  (*Id.* at 1-2; *see also* Kurtz Dep. 57:10-25 (acknowledging continued use of flushable wipes through at least June 2014).)

Dr. Kurtz explained that he and his family continued to use flushable wipes in many different situations beyond just using them in the bathroom and throwing them out.   For example, flushable wipes were also used "in the car, to clean up messes, [and] to clean the

**FILED UNDER SEAL**

children." (Kurtz Dep. 58:9-24; *see also* 59:17-60:3 ("We still use[d] them for the children and myself and my wife use[d] them as well as around the house and on road trips and in the car.").)

Throughout this entire time period, Dr. and Ms. Kurtz were also frequent purchasers of baby wipes.  (*See* Kurtz Dep. Ex. N.)  In fact, on ten of the 16 occasions that the Kurtz family purchased either flushable wipes *or* baby wipes at Costco, they purchased *both*.  (*Id.*)  They did so because Dr. Kurtz did not consider baby wipes to be an alternative to flushable wipes, even after he had stopped flushing the flushable wipes.  (Kurtz Dep. 55:13-56:11.)  He also did not compare the prices of baby wipes to flushable wipes at that time.  (*Id.*)

Moreover, Plaintiff's Costco purchases tell only part of the story.  Dr. Kurtz acknowledged in his pleading and at his deposition that he frequently purchased flushable wipes (other than Kirkland Signature Flushable Wipes) from various stores, including Walgreen's, other drugstores, and supermarkets like Shop Rite.  (*Id.* at 143:3-22.)  However, he was able to locate only one receipt of a wipes purchase, and that was from Costco.  (*Id.* at 83:11- 84:14.)[16] Other than at Costco, Dr. Kurtz does not know and cannot determine what wipes the family purchased, when or where they purchased them, much less how much they paid.  (*Id.* at 143:3-22.)

E.      **Variety in Home Plumbing Systems**

Home plumbing systems, and the conditions in which they are kept, vary widely and numerous factors can contribute to any given plumbing clog.  "How a sanitary system performs will vary considerably from one property to the next based on which conditions are present and the severity of those conditions."  (Boyer Report § 3.01.02.)

---

[16] That single receipt is the only document that Dr. Kurtz set aside and preserved as a part of this litigation.  (Kurtz Dep. 95:8-97:9.)  Dr. Kurtz's attorneys did not instruct him to keep receipts of flushable wipes purchases or any other wipes purchases.  (*Id.* at 96:21-97:9; 156:18-22.)

**FILED UNDER SEAL**

For example, fixtures may be poorly designed or installed, or there may be insufficient water pressure.  (*Id.*) "Poorly installed or settled pipe may not have proper pitch (i.e. slope of the pipe required for adequate flow in gravity drainage)" causing material to build up and leading to a blockage.  (*Id.*) "Traps and turns/elbows are especially susceptible to clogs as the changes in direction decrease the velocity of the flow, leaving behind solid wastes."  (*Id.*)

Corroded pipes and pipes with mineral deposits, "which result from regular use without adequate maintenance," also cause pipes to not have smooth surfaces.  (*Id.*)  Piping may also be broken and "debris can attach to irregular pipe wall edges."  (*Id.*) As a result, hair, toilet paper, spider webs or other solid waste can become attached to the pipe walls and cause a blockage. (*Id.*)  "Fats, oils, and grease can also stick to pipe walls and reduce the effective area of the pipe," causing objects to become lodged in the piping.  (*Id.*) Root intrusion into a compromised piping system can also trap material in the pipe and cause blockage. Any of the above conditions, alone or in combination, will increase the risk of blockages.

Of course, "flushing non-flushable wastes such as baby wipes or overloading the system with too much waste, such as toilet paper," can also lead to blockages.  (*Id.*)

## F.   Variety in Costco Members' Purchasing Habits

Costco sales data demonstrates that the complexities raised by Dr. Kurtz' purchasing habits are likely to be endemic to the purported class.  Dr. Kurtz purchased Kirkland Signature Flushable Wipes and other wipes at Costco over many years, spanning periods when he admits to having flushed multiple types of flushable wipes and even non-flushable wipes, and other times when he claims not to have been flushing any wipes at all.  (*See supra* at 9-17.)

Dr. Kurtz is not an outlier, but conversely there is no "typical" purchaser of Kirkland Signature Flushable Wipes when it comes to purchasing behavior.  (Martin Report ¶ 2(a).) Purchasers are "highly variable" in terms of the number of purchases of Kirkland Signature

**FILED UNDER SEAL**

Flushable wipes, the frequency of purchase, and whether they purchased other moist wipes at Costco.  (*Id.* at ¶¶ 2(a), 14-24.)  The majority of Kirkland Signature Flushable Wipes purchasers (more than 60%) also purchased other moist wipes products sold by Costco, in varying combinations (*see id.* at ¶¶ 2(a), 21 & Fig. 6):

REDACTED

19
**FILED UNDER SEAL**

There is no typical amount purchased, or length of time since consumers last purchased Kirkland Signature Flushable Wipes.     REDACTED     purchased Kirkland Signature Flushable Wipes only one time, while others purchase very regularly.  (*Id.* at ¶ 16 & Fig. 1.)  For the one-time customers, there is a wide distribution in the time since their purchase, from less than one month to over 40 months.  (*Id.* at ¶ 18 & Fig. 3.)  And for repeat customers, the time between purchases varies substantially (*see id.* at ¶ 19 & Fig. 4), suggesting widely varying usage habits.

The price at which consumers purchased Kirkland Signature Flushable Wipes also varied. While the base price of Kirkland Signature Flushable Wipes has remained constant over time, there have been six promotional periods during which the product was substantially discounted (from $14.99 to $11.99).  (*Id.* at ¶ 20 & Fig. 5.)  More than a third of New York purchasers took advantage of the sales, accounting for [REDACTED] of total sales volume in New York.  (*Id.*)

Costco's data also understates the extent of the variation in purchasing habits because— as we know from Dr. Kurtz—the data does not reveal the extent of moist wipe purchases at the many other locations outside of Costco where moist wipes are available.

### G.    No Reliable Method Of Calculating A Premium For Kirkland Signature Flushable Wipes

Pricing data available from Costco and other retailers also refutes the premise that Kirkland Signature Flushable Wipes are sold at any premium based on the claim of flushability, much less one that can be measured reliably on a class-wide basis.

First, there is no objective method to select a "comparable, but non-flushable" product, as the Complaint suggests would be necessary.  (*See* Compl. ¶¶ 77, 89.)  Nor is there any uniform method to determine what attributes of the Kirkland Signature Flushable Wipes individual consumers value in addition to flushability, such as packaging configuration, the pop-up lid,

**FILED UNDER SEAL**

appearance of the package, promotional savings, or other characteristics.  (Martin Report ¶¶ 2(b), 27.)  Second, the retail stores frequented by each class member may vary and potential alternative wipe products vary "across different geographies, from a range of different vendor types."  (*Id.* at ¶ 2(c)(ii).)  There is also "significant variation" in average prices "both within any given week and across weeks."  (*Id.* at ¶ 2(c)(iii).)

The comparison suggested by the Complaint is to baby wipes.  A direct comparison to the two baby wipe products available at Costco reveals that the price variation is fully explainable based on the size of the package.  Kirkland Signature Flushable Wipes are sold in cartons of 600 wipes (packages of 60 wipes each), whereas Kirkland Signature Baby Wipes are sold in larger packages of 900 wipes (packages of 100 wipes each), and Huggies Baby Wipes are sold in even larger packages of 1,160 wipes (packages of 232 wipes each).  (*Id.* at ¶ 2(c)(i).)

The difference in pricing between Kirkland Signature Flushable Wipes and the baby wipes sold at Costco is fully explainable based on the different packaging sizes.  The base price per wipe of the Kirkland Signature Flushable Wipes is $0.025 ($14.99 / 600 wipes), which is slightly higher than the base price per wipe of the Kirkland Signature Baby Wipes and Huggies Baby Wipes, at $0.022.  However, this disparity "is consistent with the volume discounting observed for baby wipes sold in similarly-sized packages," which alone "would be sufficient to explain the difference in the average price per wipe between" Kirkland Signature Flushable Wipes and Kirkland Signature Baby Wipes.  (*Id.* at ¶¶ 33, 35.)  For example, Pampers Sensitive Baby Wipe refill packs are sold in multiple size configurations, with pricing that declines notably as the package size increases even though all other product attributes are identical.  (*Id.* at ¶ 34 & Fig. 7.)

**FILED UNDER SEAL**

Outside of Costco, there is a vast array of potential alternative products available at widely varying prices.  For example, in one week in April 2013 (the mid-point of the data analyzed), "many dozens of distinct baby wipe products with a variety of features" were sold at a range of average prices.  The per-wipe prices are highest in smaller packages, but even looking just at the wipes sold in larger packages of 100 wipes or more, it is clear both that prices vary substantially and that prices generally decline with volume, both in the nationwide data (*see id.* at ¶¶ 40, 42 & Fig. 12) and in New York (*see id.* at ¶ 39 & Fig. 10):

REDACTED

The price per wipe for Kirkland Signature Flushable Wipes is well within the range of baby wipe products, and "for the large majority of potential comparable products, the price [per wipe] would have exceeded the price for [Kirkland Signature Flushable Wipes]."  (*Id.* at ¶ 3.)  In

fact, the base price per wipe of Kirkland Signature Flushable Wipes is "below the average price per wipe for <sup>REDACTED</sup> of the baby wipe units that were sold in New York, NY during the week ending April 7, 2013, and below the average price of <sup>REDACTED</sup> of the baby wipe units sold" nationwide. (*Id.* at ¶ 43.)[17] The range of sale prices at Drugstore.com and Amazon.com was even greater than is reflected in the averaged retail sales data provided by <sup>REDACTE</sup> and the per-wipe price of Kirkland Signature Flushable Wipes is below the average price per wipe for 91% of baby wipes sold on Amazon.com and 100% of baby wipes sold on Drugstore.com. (*Id.* at ¶ 3.)

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on February 21, 2014, alleging that he purchased both Kirkland Signature Flushable Wipes and Cottonelle flushable wipes in Brooklyn and in New Jersey "[i]n or about February 2013" and "flushed the products down toilets in both his Brooklyn and New Jersey residence[s]." (Compl. ¶ 73.) He further alleged that, after experiencing clogs in both locations, "[p]lumbers who visited … agreed that the problem was caused by flushing flushable wipes down home toilets." (*Id.* at ¶ 74.) On that basis, Plaintiff asserted six causes of action against Costco, purportedly on behalf of New York, New Jersey, and nationwide classes.

Costco sought to narrow the case to a single cause of action under GBL § 349, moving to dismiss the other five causes of action for failure to state a claim for relief, as set forth in Costco's motion to dismiss. (Mem. of Law in Supp. of Def. Costco Wholesale Corp.'s Mot. to Dismiss Counts I, II, V, and VI and Certain Class Allegation of the Compl. at 9-16, No. 14-cv-1142 (JBW)(RML) (E.D.N.Y. May 5, 2014), ECF No. 21) ("Costco MTD"). In opposition to that motion, Dr. Kurtz submitted a declaration reiterating his allegations and asserting that he purchased Kirkland Signature Flushable Wipes every three months "[b]eginning in or around

---

[17] These figures are based on the multi-outlet data provided by third-party <sup>REDACTED</sup> . (*See id.* at ¶¶ 11, 43.)

**FILED UNDER SEAL**

early February 2013," and "[i]n the summer of 2013, I incurred a total of approximately $200-
$300 in costs to repair" the Brooklyn home and "$250 in costs to repair" plumbing systems at the
Elberon residence.  (*See* Kurtz Decl. at ¶¶ 5, 10, 11.)

      After argument on Defendants' motion to dismiss, the Court directed the parties to attend
a hearing scheduled in *Belfiore v. The Proctor & Gamble Company*, (a case alleging that Proctor
& Gamble's flushable wipes are not flushable, proceeding only on a cause of action under GBL
§ 349).  At the hearing, the Court pressed Plaintiff on the complications raised by his use of two
distinct wipes products: Kirkland Signature Flushable Wipes and Cottonelle flushable wipes.
(*See* Hearing Transcript at 16:22 – 17:1, *Belfiore v. The Proctor & Gamble Company*, No. 14-cv-
4090 (JBW)(RML) (E.D.N.Y. Nov. 14, 2014), ECF No. 33.) ("He's not in a position to know
what was clogging his pipes.  Whether it was one product or the other product or the two in
combination."); 18:1-3 ("He doesn't know what caused any problem whether it was product A,
product B, or product A in combination with B.").)

      The Court then directed Defendants to move to deny class certification after allowing for
limited, expedited discovery.  (*Id.* at 48:13-18.)  In doing so, the Court denied Defendants'
motions to dismiss, recognizing that "[s]ome of [Dr. Kurtz's claims] are … rather farfetched" but
"[w]e can fine tune the case later on when discovery on everything is concluded and we can get
down to a narrow compass." (*Id.* at 49:16-22.)[18]

## LEGAL STANDARD

      A class cannot be certified unless Plaintiff satisfies his burden to "affirmatively
demonstrate" that all of the requirements necessary to certify a class have been met.  *Wal-Mart*

---

[18] In discovery, Plaintiff provided responses to Costco's interrogatories, which reiterated the
story told in the Complaint and his June 30, 2014 Declaration.  (*See* Plaintiff D. Joseph Kurtz's
Answer and Objections to Defendant Costco's Interrogatories, dated Dec. 8, 2014, at 6-23,
Sadeghi Decl. Ex.7).

**FILED UNDER SEAL**

*Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (making clear that "Rule 23 does not set forth a mere pleading standard"). The district court must conduct a "rigorous analysis" to determine that every Rule 23 requirement is met with evidence, such as "affidavits, documents, or testimony." *In re Initial Pub. Offering Sec. Litig. ("IPO")*, 471 F.3d 24, 33, 41 & n.3 (2d Cir. 2006) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). A district court's obligation is in no way lessened "just because of some or even full overlap of that requirement with a merits issue." *Id.* at 41.

First, Plaintiff must demonstrate that all of the requirements of Rule 23(a) are satisfied. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Falcon*, 457 U.S. at 161. Rule 23(a) sets forth four prerequisites for certifying a class: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4).

Second, Plaintiff must show that the putative class falls within one or more of the three categories set forth in Rule 23(b). *McLaughlin*, 522 F.3d at 222. Plaintiff seeks certification of a class under Rule 23(b)(3), or alternatively under Rule 23(b)(2). Under Rule 23(b)(3), Plaintiff must demonstrate that common "questions of law or fact predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(2), plaintiff must show that defendants have acted on grounds that apply generally to the class such that injunctive or declaratory relief is appropriate for the class as a whole. Fed. R.

**FILED UNDER SEAL**

Civ. P. 23(b)(2).

Finally, plaintiff must satisfy the implied requirement of ascertainability.  To do so, plaintiff must demonstrate that class membership is readily identifiable by objective criteria such that a court can determine who is in the class and will bound by its ruling without having to engage in numerous fact-intensive inquiries.  *See, e.g., Wilson v. Toussie*, No. 01-CV-4568 (DRH)(WDW), 2008 WL 905903, at *5 (E.D.N.Y. Mar. 31, 2008) (finding class not ascertainable).

For the reasons set forth below, Plaintiff cannot meet any of these requirements and accordingly class certification should be denied.

## ARGUMENT

### I.   THE COURT SHOULD DENY CERTIFICATION OF A CLASS UNDER RULE 23(B)(3)

#### A.   The Core Elements Of Plaintiff's Claims Are Not Susceptible to Common Proof; Individual Inquiries Will Predominate.

Plaintiff cannot meet the commonality or predominance requirements for class certification because individual inquiries regarding injury, causation, and damages, will overwhelm any common issues.  Plaintiff's purported Costco classes have nothing in common except that they purchased Kirkland Signature Flushable Wipes.  That is simply not enough.

In *Dukes*, the Supreme Court clarified that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 131 S. Ct. at 2551 (citations omitted).  Rule 23(b)(3)'s predominance requirement is even more stringent, requiring that plaintiff not only demonstrate the presence of common injury, but also "establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole … predominate over those issues that are subject only to individualized proof."  *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (citation omitted); *Oscar v. BMW of N. Am., LLC*, 274

**FILED UNDER SEAL**

F.R.D. 498, 509 (S.D.N.Y. 2011) ("Oscar I") (plaintiff must show "that 'those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof.'") (quoting *Heerwagen v. Clear Channel Commc'ns.*, 435 F.3d 219, 226 (2d Cir. 2006)).

To certify a class, a plaintiff must therefore provide a methodology for establishing causation and injury – and, for some claims, reliance – on a class-wide basis. *Weiner v. Snapple Bev. Corp.*, No. 07 Civ. 8742 (DLC), 2010 WL 3119452, at *6 (S.D.N.Y Aug. 5, 2010). When a plaintiff attempts such a showing, he or she must demonstrate that the proposed methodology can be applied class-wide and "that they could, at trial, marshal facts sufficient to permit them to rely upon" the proposed methodology. *McLaughlin,* 522 F.3d at 229; *see also id.* at 227 (noting that proof of actual injury "is bound up in proof of damages, or by how much plaintiffs have been harmed").

"Clearly, if proof of the essential elements of the cause of action require[s] individual treatment, then there cannot be a predominance of questions of law and fact common to the members of the class." *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 92 (S.D.N.Y. 2010) (quoting *In re Currency Conversion Fee Antitrust Litig.,* 230 F.R.D. 303, 310 (S.D.N.Y.2004); *In re Linerboard Antitrust Litig.,* 305 F.3d 145, 156 (3d Cir. 2002) (internal quotation marks omitted) (GBL § 349 class action lacked predominance despite common question of the wrongfulness of defendant's conduct because "this is only half the question" and individual inquiries were needed to determine whether each plaintiff suffered an injury as a result)). *Id.* at 94.[19]

---

[19] A showing of injury or harm is required in order for Plaintiff to prove his causes of action. *See, e.g.*, *Andre Strishak & Assoc's., P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608, 609, 752 N.Y.S.2d 400 (2d Dep't 2002) (required to show injury for both N.Y. G.B.L. § 349 and § 350

(Footnote continues on next page.)

**FILED UNDER SEAL**

It does not matter whether the individualized issues are characterized as an element of the case-in-chief or as a defense, because in order to certify a class the aspects of the case subject to common proof must also predominate over defenses that will require individualized inquiry.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) (noting that it is "well established that courts must consider potential defenses in assessing the predominance requirement," and thus affirming denial of class certification because even though defendants would bear the burden to prove their defense, plaintiffs failed to established that more "substantial" aspects of the litigation would be susceptible to generalized proof).  *See also Suvill v. Bogopa Serv. Corp.*, No. 11-cv-3372 (SLT) (RER), 2014 WL 4966029, at *11 (E.D.N.Y. Sept. 30, 2014) (commonality requirement not met because defendants' so-called "common defense" would "require an individualized inquiry into the circumstances of each plaintiff's work and his or her relationship" with the defendant).

Plaintiff cannot offer any class-wide methodology to establish the core elements of injury, causation, or damages.  This is not surprising given that:

- The vast majority of purchasers suffered no injury, as evidenced by the overwhelmingly positive consumer response to Kirkland Signature Flushable Wipes with ⟨REDACTED⟩ (Babusik Decl. ¶ 18.);

- Causation of any actual injuries to customers' plumbing is inherently individualized in light of the myriad factors that can cause or contribute to plumbing clogs, including

---

(Footnote continued from previous page.)

claims); *Int'l Union of Operating Eng'rs. Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389, 929 A.2d 1076, 1086 (2007) (New Jersey Consumer Fraud Claim must allege "ascertainable loss"); *In re Canon Cameras*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (to prevail on a theory of unjust enrichment, plaintiff must show that the benefits received were less than what they bargained for); *Laub v. Faessel*, 297 A.D.2d 28, 31, 745 N.Y.S.2d 534 (1st Dep't 2002) (plaintiff must show defendant's negligent misrepresentation caused his or her injuries).  The one exception is breach of express warranty, which does not require injury but does require reliance, i.e. Dr. Kurtz must have purchased and flushed KS Flushable Wipes in reliance of the flushability label. *CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 503 (1990).

**FILED UNDER SEAL**

variations in plumbing systems, maintenance, and what the purchaser (or anyone else who uses the purchaser's bathroom) actually flushes down the toilet.  (*See generally* Boyer Report.); and

- Plaintiff cannot hope to reliably model class-wide damages given the variability of potential class members' purchasing history at Costco and elsewhere, the potential presence of other causative factors (such as compromised plumbing systems or flushing other, admittedly non-flushable products, the plumbing expenses actually incurred, and the impossibility of identifying alternative products that any particular class member might hypothetically have purchased, much less at what price.  (*See generally* Martin Report.)

Any one of these shortcomings is sufficient to deny class certification; but since *all* of these factors are present in this case, Plaintiff's class claims cannot possibly survive. *See, e.g., Weiner*, 2010 WL 3119452, at *10 (predominance requirement not met where "plaintiffs offer no evidence that a suitable methodology is available to prove the elements of causation and actual injury on a class-wide basis").

### 1.    The Vast Majority Of Putative Class Members Suffered No Injury.

Courts routinely deny class certification where, as here, plaintiffs focus on defendants' conduct without showing that the purported misrepresentation caused actual injuries common to the purported class.  *See, e.g., Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 149 (E.D.N.Y. 2012) (commonality lacking where plaintiff failed to show "how the Defendant's alleged deceptive practices caused any injury, let alone the same injury, to the majority of the class members"); *Pelman*, 272 F.R.D. at 92-94.  A "common course of conduct" does not constitute predominance because it "is not sufficient to establish liability of the defendant to any particular plaintiff." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1255 (2d Cir. 2002).

Plaintiff cannot circumvent the common injury requirement by arguing that every purchase of Kirkland Signature Flushable Wipes is an injury.  Rather, a purchaser is injured only where the purportedly concealed defect manifests to cause them actual injury.  Thus, in *In re*

**FILED UNDER SEAL**

*Canon Cameras*, Judge Rakoff rejected plaintiffs' attempt to certify a class of "all camera owners" who purchased allegedly defective cameras, where plaintiffs "[did] not show[] that more than a tiny fraction of the cameras at issue malfunctioned *for any reason.*"  237 F.R.D. at 359-60 (noting that "fewer than two-tenths of one percent of the cameras here in issue have been reported as having even arguably malfunctioned").  Plaintiff alleged that all cameras contained defective parts, yet the court denied class certification because "proof of malfunction is a prerequisite to any of plaintiffs' claims," whereas the purported class "likely consists in overwhelming measure of owners of cameras that did not malfunction at all."  *Id.* at 360.

Similarly, in *Pagan*, the court denied class certification where plaintiff sought to represent a class of all purchasers of a recalled baby formula based on allegations that defendant misrepresented its safety, because only a small fraction of the baby formula containers were contaminated.  287 F.R.D. at 148-49 ("Plaintiffs have not satisfied the commonality requirement … because they have not adequately demonstrated how [d]efendant's alleged deceptive practices caused any injury, let alone the same injury, to the majority of the class members.").

The evidence here strongly suggests that the overwhelming majority of purchasers of Kirkland Signature Flushable Wipes used the wipes for whatever purpose they intended without experiencing any complications, and were fully satisfied that they got exactly what they paid for. (*See infra* at 8 (reciting customer complaint statistics).)  Because Dr. Kurtz's proposed class consists of an overwhelming majority of consumers who have not been injured, class certification should be denied.  *See, e.g., In re Canon Cameras*, 237 F.R.D. at 359.

### 2.   Establishing Causation Would Require Highly Individualized Inquiries.

#### a.   Individual Purchase Decisions

Putting aside that the purported class has not suffered any common injury, it would be

**FILED UNDER SEAL**

impossible to offer common proof to establish the cause of any injuries that might exist.  To show a causal connection between defendants' purportedly inaccurate "flushable" representations and any individual injury, Plaintiff would have to show that each individual: (i) purchased the wipes in reliance on the flushability representation, (ii) flushed the wipes, and (iii) suffered some negative consequence as a result of flushing the wipes.  Each of these factors would require highly individualized proof.

Weiner v. Snapple Bev. Corp. is directly on point.  There, the court denied class certification on plaintiff's claim that Snapple beverages were deceptively marketed as "All Natural."  2010 WL 3119452, at *6.  The court found that "[i]ndividualized inquiries" would have been necessary to determine … "whether [class members] continued to purchase Snapple despite their beliefs concerning [the alleged misrepresentations]."  Id. at *11.  Moreover, the evidence in that case, including the plaintiff's own testimony, showed that "consumers may have purchased Snapple beverages for many reasons other than the 'All Natural' label," thereby precluding a finding of predominance.  Id.

The same is true here.  Ninety percent of Plaintiff's purchases of Kirkland Signature Flushable Wipes occurred after he was no longer flushing the wipes because multiple plumbers told him not to flush any kind of wipe.  (Kurtz Dep. 67:8-24; Kurtz Dep. Ex. N.)  In other words, Plaintiff's decision to make nine of his ten purchases of Kirkland Signature Flushable Wipes, and the way he chose to use all those wipes, cannot be causally linked to Costco's "flushable" representation.  The record indicates that the only Kirkland Signature Flushable Wipes Plaintiff ever flushed were from the one carton he purchased before his Brooklyn clogs.  He bought those wipes while living at his prior residence at 408 Quentin, where he regularly flushed flushable wipes without incident and thus got exactly what he paid for, suffering no injury.  (Kurtz Dep.

**FILED UNDER SEAL**

133:16-25; 26:17-37:13; Kurtz Dep. Ex. N.)

Plaintiff's evidence also shows the many other uses to which consumers put the Kirkland Signature Flushable Wipes – including taking them in the car, using them to clean children, and to clean around the house (*id.* at 58:2-24) – thus severing any connection between the purchase of the wipe and injury related to the "flushable" representation. This evidence strongly undercuts Plaintiff's own claim, and it is so highly personal in nature that it could not conceivably substitute for any other class member's evidence. Without individualized proof, it is impossible to know how any other purchasers used the Kirkland Signature Flushable Wipes, or how many other purchasers formed a view of the product's flushability based on their own experience – apart from the label – while continuing to purchase. As the court explained in *Oscar*:

> it is impossible to conclude, on a global basis, whether the disclosure of the downsides of RFTs would have affected purchasers' decisions to buy the MINI S, or the price at which they would have made that purchase. This is so for two independent reasons: (1) the inherently individualized nature of the purchase decision, and (2) the conjectural nature of the *post hoc* inquiry into how a consumer's purchase decision might have been affected. In so holding, the Court does not find that no reasonable consumer would have found the undisclosed deficiencies of RFTs, as identified by Oscar, germane. But there are simply too many other variables in play to permit that conclusion as to the entire class of consumers; and Oscar supplies no viable reason to regard each consumer's assessment of the importance of this single variable as other than personal.

*Oscar v. BMW of N. Am., LLC*, No. 09 Civ. 11 (PAE), 2012 WL 2359964, at * 5 (S.D.N.Y June 19, 2012) ("*Oscar II*").

### b.      **Individual Plumbing Clog Evaluation**

The causal link between Kirkland Signature Flushable Wipes and plumbing clogs is even less susceptible to common proof. As in *Pelman*, where plaintiff attempted to link McDonald's food to childhood obesity, "the presence of such causal connection [to the alleged injury], if any,

**FILED UNDER SEAL**

depends heavily on a range of factors unique to each individual." 272 F.R.D. at 93. (*See also* Boyer Report § 3.01.02 (identifying a host of conditions that impact the performance of individual plumbing systems and explaining that performance will therefore "vary considerably from one property to the next based on which conditions are present and the severity of those conditions.").)

The evidence in this case shows that each individual's personal circumstances and flushing habits are highly likely to determine whether they experience plumbing clogs, and if so, why. (*See* Boyer Report at § 3.01.02 (discussing "user error" in flushing non-flushable materials or too much of any material at a time).) Plaintiff is a perfect example, as he acknowledged that he flushed flushable wipes at a prior residence for years without incident; then, after one week of flushing baby wipes, he and his family suffered back-to-back plumbing clogs at his Brooklyn home in February 2013. (*See supra* at 10-14; Kurtz Dep. 109:6-19.) Similarly, in a number of consumer complaints where Costco or Nice-Pak looked closely at the facts, purchasers had been flushing products that were never intended to be flushed, including feminine hygiene products, baby wipes, and household cleaning wipes. (Babusik Dep. 54:15-25; Walior Dep. 86:21-87:6.) This anecdotal evidence is consistent with reported results of studies conducted by INDA and the wastewater community. For example, one such study found that the products caught in pump station inlet screens included non-flushable paper such as paper towels (the single largest contributor, at 47%), and various non-flushable wipes products including feminine hygiene products (13%), baby wipes (18%), and household wipes (14%); flushable wipes were a minor contributor. (Babusik Decl. ¶ 25 & Ex. 4 at 15.) Other studies reached similar results. (*Id.*)

Plaintiff also seeks to blame his clogs on two different brands of flushable products, but he admits that he has no way of knowing what brand of wipes was pulled from his clogged pipes,

**FILED UNDER SEAL**

and also admits that it is possible that he had not used *any* Kirkland Signature Flushable Wipes at either residence before experiencing a clog.  (Kurtz Dep. 91:11-16; 91:24-25; 92:2-13; 134:12-25.)  The limited view that Costco has into its members' purchase habits indicates that there will be similar variability in consumer use patterns throughout the proposed class.  Because the majority of Kirkland Signature Flushable Wipes purchasers    REDACTED    also purchased other moist wipes products sold by Costco (Martin Report at ¶¶ 2(a), 21, 46), it would require individualized inquiry for the majority of the purported class to determine which of these people – like Dr. Kurtz – were flushing some of the other wipes that they purchased.

The inquiry into whether any given purchase of Kirkland Signature Flushable Wipes did or could lead to a clog also varies substantially across the class.  One-time purchasers make up <sup>REDACTED</sup> of all purchasers, and those purchases are spread throughout the time period since Kirkland Signature Flushable Wipes were launched.  (Martin Report ¶ 16 & Fig. 1.)  The likelihood that Kirkland Signature Flushable Wipes have contributed to or will in the future contribute to any clog may be substantially different for someone whose only purchase of Kirkland Signature Flushable Wipes occurred one month ago than for someone whose only purchase occurred three years ago.  And for repeat customers, the time between purchases varies substantially – "only a month separates the purchases of some households, while several years separate the purchases for others" (*id.* at ¶ 19) – suggesting widely varying usage habits that may also complicate any class-wide inquiry into causation.  Purchasing habits even vary within households over time; with some purchases separated by only a few months, and then not again for a year or more.  (*Id.* at ¶ 23.)  Without knowing what each purported class member was flushing other than Kirkland Signature Flushable Wipes, when, and in what amounts, it is impossible to determine whether

**FILED UNDER SEAL**

Kirkland Signature Flushable Wipes were a primary or even contributing factor to any given clog.

Courts frequently deny class certification in cases like these, where complicated issues of individual causation will predominate over any common theory of injury.  *See, e.g., Pelman*, 272 F.R.D. at 94 (denying class certification of GBL § 349 claim because factual questions about the food "consumed by each plaintiff from sources other than [McDonald's] facilities, as well as the level of regular physical activity engaged in by each plaintiff, predominate"); *see also Oscar I,* 274 F.R.D. at 510-11; *In re Canon Cameras,* 237 F.R.D. at 360.

In *Oscar I*, the court denied class certification of a claim alleging that "run-flat" tires were defective, recognizing that "complicated issues of individual causation predominate[d] over common questions regarding the existence of a defect … because tires deteriorate at different rates depending on where and how they are driven."  274 F.R.D. at 510-11(citation and internal quotation marks omitted).  Individual inquiries predominated because the plaintiff would have to have shown that each tire "failed because of a common defect, rather than because of circumstances that would cause any tire to fail."  *Id.* at 511.

Similarly, in *In re Canon Cameras*, Judge Rakoff noted that even where a camera did malfunction:

> it is undisputed that the [camera] malfunctions may have been caused by any of a variety of factors – many of which, such as customer misuse of the camera, would not result in manufacturer liability under any theory – and that determination of the actual cause of a particular malfunction would require highly individualized fact-finding.

237 F.R.D. at 360.  The same is plainly true in this case.

### 3. There Is No Reliable Way To Model Class-Wide Damages.

As a preliminary matter, even if there were a sufficiently numerous group of customers who had incurred plumbing costs but had not yet resolved their claims, such plumbing costs

FILED UNDER SEAL

would not be susceptible to class-wide proof but would instead require individual claim investigations and the attendant causation inquiries discussed above – with results that could not conceivably be determined from Plaintiff's own proof, but would necessarily depend on each putative class member's individual circumstances.

As to Plaintiff's purchase price premium theory, it is impossible to construct a reliable classwide damages model based on Plaintiff's claims.  Most fundamentally, plaintiff's price premium theory rests on the false assumption that Costco seeks to extract a price premium for its Kirkland Signature Flushable Wipes as compared to some purportedly "comparable" but non-flushable wipes.  In fact, Costco does not place any particular pricing value on the "flushable" representation, nor does it determine pricing based on that representation.  (Walior Decl. ¶ 8.) Rather, Costco's pricing of the Kirkland Signature Flushable Wipes is based on a uniform approach that it applies to *all* of the products it sells:  namely, applying a very low markup to Costco's own costs of acquiring the product from the manufacturer and distributing the product to its warehouse locations.  (Walior Dep. at 16:18-19:15)[20]  Moreover, the base price that Costco charges for Kirkland Signature Flushable Wipes has never changed since launch, REDACTED

REDACTED

(Walior Decl. ¶ 8.)

While Costco does not view baby wipes as a 'comparable' substitute for Kirkland Signature Flushable Wipes (and neither did Dr. Kurtz), Plaintiff's pleading suggests that defendants' products are overpriced compared to baby wipes.  (*See* Compl. ¶ 89.)  However, *there is no observable premium attributable to the "flushable" representation on Kirkland*

---

[20] Even Plaintiff's counsel acknowledged how modest Costco's markup is.  (Walior Dep. 19:13 ("Sounds like a really low percentage.").)

**FILED UNDER SEAL**

*Signature Flushable Wipes when compared to Kirkland Signature Baby Wipes*.  The small difference in price-per-wipe between Kirkland Signature Flushable Wipes and Kirkland Signature Baby Wipes is explainable by volume discounting.  Wipes are sold in varying quantities and there is a clearly observable trend that higher quantities are sold at lower per-wipe cost.  On a per-wipe cost basis, there is a slight difference in the ordinary cost of Kirkland Signature Flushable Wipes ($0.025 per wipe) as compared to Kirkland Signature Baby Wipes ($0.022 per wipe).  That slight difference is explained by the greater volume discount associated with the fact that Kirkland Signature Baby Wipes are sold in units of 900 wipes as compared to Kirkland Signature Flushable Wipes, which are sold in units of 600 wipes. (*See* Martin Report ¶¶ 32-35 (finding the volume discounting observed in baby wipe pricing "sufficient to explain the difference in the average price per wipe" between Kirkland Signature Flushable Wipes and baby wipes available at Costco).

The average price paid for the Kirkland Signature Flushable Wipes will vary by customer, as will the analysis of what potential alternative products would have been available at comparable prices.   More than a third of New York purchasers took advantage of sales (Martin Report ¶ 20 at Fig. 5), impacting not only their average price per wipe but also the potential alternative products available at comparable prices for any given purchase.  Moreover, purchasers are spread throughout the time Kirkland Signature Flushable Wipes were on the market, while the universe of available wipes products that one might consider as an alternative is not consistent over time.  (*See* Martin Report ¶¶  2(c)(ii)-(iii) (finding that different subsets of products were available across geographies, at different vendors, and over time, and that pricing "exhibits significant variation both within any given week and across weeks").)

Absent a price premium based on a "flushability" claim, Plaintiff's class-wide damages

**FILED UNDER SEAL**

theory fails.  *See McLaughlin*, 522 F.3d at 228 (noting that consumers who would simply have switched from light cigarettes to full flavor "would have suffered no injury because Lights have always been priced the same as full-flavored cigarettes."); *Weiner*, 2010 WL 3119452, at *6 ("Only by showing that plaintiffs in fact paid more for Snapple beverages *as a result* of Snapple's 'All Natural' labeling" could plaintiffs have established "the requisite elements of causation and actual injury" under GBL § 349.).

Putting aside any flawed attempt to base a price premium argument on Kirkland Signature Baby Wipes, Plaintiff's "theory" fares no better by looking to products sold outside Costco, because Kirkland Signature Flushable Wipes are priced at or below the per-wipe cost of most other baby wipes available in the marketplace, so a comparison with most such products would quickly lead to the conclusion that class members had suffered no damages.  (*See* Martin Report ¶ 43 (The base price per wipe of Kirkland Signature Flushable Wipes is "below the average price of [REDACTED] of the baby wipe units that were sold in New York, NY during the week ending April 7, 2013, and below the average price of [REDACTED] of the baby wipe units" sold nationwide that week).)

Plaintiff's price premium argument fails for another, independent reason:  he cannot possibly offer a common formula for calculating class members' damages, due to (i) the broad diversity of potential claimants' personal experiences with flushed products, (ii) the lack of any rational standard for definitively identifying supposedly 'comparable' product offerings and prices, (iii) the near-impossibility – even if a pool of 'comparable' products could be identified – of determining which of those products were available to any given class member at any given time or locale, and (iv) most confounding of all, the fact that individual claimants' wipes preferences would inevitably vary – one could not genuinely know what product any putative

class member might view as 'comparable' without *asking* them – each and every one of them.

Plaintiff's own experience shows that consumers value different aspects of wipes products, defeating any class-wide attempt to define an alternative product for purposes of comparing prices.  For example, Plaintiff valued Kirkland Signature Flushable Wipes because of the closeable lid packaging.  (Kurtz Dep. 54:25-55:12.)  A study commissioned by Nice-Pak determined that                                                  REDACTED

(Babusik Decl. ¶ 6 & Ex. 1 at 10-11.)  Thus, apart from price comparability, any valid comparison would have to consider whether any cheaper products offered the features of the Kirkland Signature Flushable Wipes that appeal to individual customers – such as                  REDACTED


Without individual inquiry, it is also impossible to know what potential alternative products were actually available to any purported class member at the times they purchased Kirkland Signature Flushable Wipes.  Aggregated sales data drawn from a large number of retailers other than Costco shows a wide range of product offerings and prices for non-flushable wipes.  (*See* Martin Report at ¶¶ 38-44 & Figs. 8-12.)  The product offerings and prices vary by retailer, by geography, and over time.  Occasionally, some packaging configurations of some wipes have been offered at lower prices than Kirkland Signature Flushable Wipes, but only at certain retailers and at certain times; such ephemeral prices could not possibly serve as a basis for class damages.  (*See id.*)

Any attempt to avoid this complexity by creating a 'one size fits all' formula for damages would necessarily overcompensate some claimants – the vast majority, in Costco's view – while

**FILED UNDER SEAL**

potentially undercompensating some small set of claimants.  Any such formula plainly does not

satisfy the requirement of a common scheme for calculating classwide damages.  *See, e.g.,*

*McLaughlin*, 522. F.3d at 227-28 (losses could not "be shown by common evidence" and

required an "inherently individual inquiry" where purported class members "would have

incurred different losses depending on what they would have opted to do, but for defendants'

misrepresentation").  In *McLaughlin*, the Court of Appeals noted that while some smokers of

light cigarettes might have switched to full flavor cigarettes, others might have quit altogether,

and others might have smoked less.  *See id*.  This case would require a similar individualized

inquiry into what each class member would have done if advised that "flushable" wipes were not

flushable:  cease using moist wipes altogether, moderate their use (i.e. by continuing to use them

for other purposes), or switch to a purportedly "comparable" wipe (and, if so, which product).

Where myriad factors such as these influence consumer preferences and price sensitivity,

class certification should be denied.  *See id.* at 226-27 (holding that plaintiffs could not satisfy

Rule 23(b)(3) because factors besides the defendants' alleged misrepresentations regarding light

cigarettes may have intervened and affected the demand and price of the cigarettes, thus

requiring individualized inquiries).  Similarly, in *Oscar II*, the court found that plaintiffs' price

inflation theory could not be resolved on a class-wide basis because "there [were], simply, too

many confounding factors" regarding why consumers may have purchased cars with allegedly

defective tires and that "[t]he customer's purchase decision and the negotiated purchase price

cannot be assumed to rest entirely, or even partially, on disclosures to the customer about the

vehicle's tires."  2012 WL 2359964 at ** 4, 6.  Accordingly, the court denied class certification.

*Id.* at *10.

As is likely to be true of many or even most purported class members, Plaintiff here did

**FILED UNDER SEAL**

not view non-flushable wipes as an alternative to Kirkland Signature Flushable Wipes even after he stopped flushing wipes altogether.  (Kurtz Dep. 55:13-56:11.)  He has no records of wipes purchases outside Costco and he could not specify when, where, in what quantities, or at what prices he purchased wipes outside of Costco, other than to note that his family did purchase outside of Costco frequently at numerous local stores.  (*Id.* at 143:3-22.)  With so many variables unknowable, reliably modeling damages for even one plaintiff, much less a class, is fantasy.

### B.    Plaintiff Cannot Satisfy Rule 23(a)'s Other Requirements.

### 1.    Plaintiff Cannot Establish Numerosity.

Stripped of the argument that all purchasers of Kirkland Signature Flushable Wipes have been injured, Plaintiff has no basis to satisfy the numerosity requirement.  *Pelman* is illustrative: in that case, plaintiffs failed to establish numerosity even though they argued that "hundreds of thousands" of people ate at McDonald's.  272 F.R.D. at 99.  Large numbers of customers were insufficient because plaintiffs had "not presented the court with any specific evidence that there are any other persons" in the proposed class who ate at McDonald's "*and subsequently developed the same medical conditions as Plaintiffs.*" *Id.* (emphasis in original).  Here, based on the facts revealed about his own claim, Plaintiff has failed to offer evidence that there is even *one* class member, including him, who suffered any plumbing clog after flushing Kirkland Signature Flushable Wipes.

Numerosity is only presumed if the putative class contains more than forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  A plaintiff is required to provide evidence to meet this requirement.  *See Pagan*, 287 F.R.D. at 147 ("Plaintiffs argue [in their motion papers ] that that they 'easily surpass the numerosity hurdle,'" but "point to no evidence for this claim nor explain to the Court why this is a reasonable estimate.") (citations omitted); *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y.

**FILED UNDER SEAL**

2000) ("No information is provided as to the methodology used to reach this conclusion, and therefore, it will not suffice to establish a reasonable estimate of the number of persons who fit within the proposed class.").  Further, although courts have relied upon back-of-the-envelope calculations to assess the size of a putative class, courts must not make unsupported inferences to find that the numerosity requirement has been satisfied.  *See Oscar I*, 274 F.R.D. at 505-06.

Plaintiff cannot establish numerosity for his GBL § 349 claim because that statute is limited to a New York class.  N.Y. Gen. Bus. Law § 349(a) (McKinney 1963); *id.* § 350. *See also Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324-25 (2002) (noting that the statutory text "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York").  There have been only                 REDACTED                 about the Kirkland Signature Flushable Wipes from New York Costco members throughout the entire three and a half years that they have been on the market (through December 31, 2014), and many of those claims have been resolved.  (Babusik Decl. ¶¶ 18, 20.)  Moreover, complaints have declined over time and Nice-Pak and Costco received no New York plumbing-related complaints in 2014 (*id.* ¶ 18), thus providing no basis to conclude that more complaints are likely to follow.

Similarly, Plaintiff's New Jersey Consumer Fraud Act claim is limited to a New Jersey class.  *See, e.g.*, *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (applying choice of law analysis to bar a non-New Jersey purchaser from pursuing claims under the NJCFA); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 233 (S.D.N.Y. 2002) (denying certification of a national class based on the NJCFA because it would not "result in the application of a common legal rule to claims of class members").  And as in New York, there have been only         REDACTED         about the Kirkland Signature Flushable Wipes from New Jersey Costco members throughout the entire three and a half years that they

**FILED UNDER SEAL**

have been on the market (through December 31, 2014), many of which have been resolved. (Babusik Decl. ¶¶ 18, 20.)  Plaintiff has provided no evidence to support such a presumption, nor can he do so.

In order to certify a state-wide class, the Court would have to presume an injury rate substantially at odds with the observed complaint rate of approximately          REDACTED

(*See* Babusik Decl. ¶ 18; Martin Report ¶ 15(c).)  *See Oscar I*, 274 F.R.D. at 506 (finding that plaintiff failed to satisfy the numerosity requirement and declining to make "unsupported inferences" regarding the putative class size).

The remainder of Plaintiff's claims cannot support a class action because, as shown in Costco's motion to dismiss, each of the remaining claims is deficient as a matter of law; [21] moreover, the deficiencies in Plaintiff's claims are particular to him, and cannot fairly be imputed to an entire putative class.  For example, Plaintiff's breach of warranty claim fails due to his failure to notify Costco of the breach, where such notice is an essential precondition to bringing a lawsuit; as another example, Plaintiff's negligent misrepresentation claim fails because he cannot show that he relied on Costco's "flushable" labeling as he continued to purchase Kirkland Signature Flushable Wipes after he experienced *three* clog incidents and

---

[21] *See* Costco MTD at 4-11.  The state law causes of action also fail to support a nationwide cause of action because variation in state laws would defeat predominance and superiority.  *See, e.g., UFCW Local 1776 v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, Nos. 04-MD-1596, 2008 WL 2696916, at *138 (E.D.N.Y. July 2, 2008) ("The application of various state laws to a class, which would be required here, presents both predominance and manageability issues."); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) ("variances in state law overwhelm common issues and preclude predominance for a single nationwide class")

**FILED UNDER SEAL**

discontinued flushing any kind of wipes.[22]

Even if any of his causes of action could support a national class, there is no evidence in the record to support numerosity on a nationwide basis. The pool of nationwide complaints do not support such a finding because (i) very few of those claims have been investigated to determine whether there is any valid basis for the complaint, and (ii) the few investigations that have been performed, including of Plaintiff, strongly suggest that many such complaints are illegitimate.

### 2.     Plaintiff Is Not Typical Of Any Viable Class.

"Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members." *Brown v. Kelly*, 609 F.3d at 475.  When a representative of a putative class "is subject to unique defenses which threaten to become the focus of the litigation," certification of a class is improper because he or she can no longer act in the best interests of the class.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).  The reasoning behind this requirement is to mitigate the risk "that absent class members will suffer if their representative is preoccupied with defenses unique to it."  *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir. 1990).

While some of the striking weaknesses in Dr. Kurtz's claims may be shared by some other putative class members, he is plainly not a typical class representative of any *certifiable* class because he is subject to unique defenses based on an entirely personal combination of evidentiary problems that would necessarily cause individual issues to predominate at trial. Among others, Dr. Kurtz:

---

[22] *See J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (N.Y. 2007) (reliance is an element of a negligent misrepresentation cause of action); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (notice required for breach of express warranty claim).

**FILED UNDER SEAL**

- Was expressly told by a plumber not to flush any wipes before he *ever* purchased Kirkland Signature Flushable Wipes, but nevertheless proceeded to purchase and flush both flushable and non-flushable wipes.  (Kurtz Dep. 67:8-24.)

- Flushed non-flushable baby wipes immediately preceding his plumbing issues at 409 Quentin Road in February 2013.  (*Id.* at 109:6-19.)

- Stopped flushing flushable wipes in one house but then resumed flushing them in another residence, where he had already been warned not to flush any wipes. (*Id.* at 29:11-16; 33:4-34:8; 38:7-18; 67:8-24.)

- Purchased flushable wipes from at least two different manufacturers intermittently and cannot tell when he flushed either brand or which contributed to his clogs, if either did. (*Id.* at 143:3-22; 134:12-25; 107:17-108:5; 177:21-25.)

- Has no evidence that Kirkland Signature Flushable Wipes were present at either of his residences before he experienced plumbing problems at each residence, coupled with a purchase history strongly suggesting that Kirkland Signature Flushable Wipes were not used in either house before the plumbing clogs occurred.  (*See id.* at 91:24-92:13; 89:10- 91:16; Kurtz Dep. Ex. N.)

- Did not recall or retain any record of who, exactly, serviced his residence at 409 Quentin Road in February 2013, or how much he paid for those services.  (*See id.* at 21:12-22:4; 40:11-24.)

- Purportedly used a contractor that has no records or knowledge of ever having performed work at his residence.  (*See* Hauck Decl. ¶ 4.)

- Bases his claim in part on a rental property without knowing what other renters at that property may have flushed down the toilet.  (Kurtz Dep. 34:13-35:3.)

- Did not notify Costco or Nice-Pak of any problems with Kirkland Signature Flushable Wipes, even though he knew that Costco would refund the entire purchase price. (Kurtz Dep. 93:14-18; 93:20-94:2; 105:6-17.)

- Continued purchasing Kirkland Signature Flushable Wipes long after his alleged plumbing problems, including for months after filing this case. (Kurtz Dep. Ex. N.; Kurtz Dep. 57:10-58:24.)

Such an array of unique factual weaknesses necessarily precludes a finding of typicality.

Indeed, courts have refused to find typicality for far less pronounced idiosyncrasy than this.  For

example, in *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, the court found that the plaintiff was not a

typical representative because, although he asserted that he paid a premium for an alcoholic

**FILED UNDER SEAL**

beverage marketed as being low-calorie, he conceded that he would have purchased the beverage whatever the price, given his desire to please his wife.  No. 11 Civ. 6546 (JPO), 2013 WL 93636, at *9 (S.D.N.Y. Jan. 9, 2013).  The court determined that "his injury – namely whatever premium he may have paid or unnatural substance he may have imbibed – suffer[ed] from a causal break that will focus the litigation on the particularities and factual circumstances of [plaintiff's] own purchase."  *Id.*  The many weaknesses in Dr. Kurtz's claim – while they may, in fact, be present to some degree in some other class members' claims – are far greater than the circumstances that barred a finding of typicality in *Rapcinsky*.

Similarly, in *Newman v. RCN Telecom Servs., Inc.*, the court found that the plaintiff was atypical of the class because he did not base his purchase on the alleged misrepresentation regarding broadband speed.  238 F.R.D. 57, 64 (S.D.N.Y. 2006).  As a result, the court found that he was not harmed by any statements that defendant made about its broadband speed.  *Id.*  Here, because Dr. Kurtz bought Kirkland Signature Flushable Wipes for reasons entirely unrelated to the flushability long after he stopped flushing them, he cannot claim to be a typical representative of the class his purports to represent – indeed, he may not qualify as a class member at all.

### 3.      Plaintiff Is Not An Adequate Class Representative.

Rule 23(a)(4) requires that the proposed class representative "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequacy of representation is evaluated in two ways:  by looking to the qualifications of plaintiffs' counsel and by examining the interests of the named plaintiffs."  *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 234 (S.D.N.Y. 2010) (citing *Baffa*, 222 F.3d at 60).  In addition, in determining whether plaintiff can adequately represent the interests of the class, courts should also consider the honesty and trustworthiness of the class representative.  *See Savino v. Computer Credit Inc.*, 173 F.R.D. 346,

**FILED UNDER SEAL**

353 (E.D.N.Y. 1997); *see also Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010) ("the Court has serious concerns relating to [putative class representative's] … constantly changing interpretation of the contract and his abjuration of the very allegations of his Complaint.").

Plaintiff has proven incapable of adequately representing the class. At his deposition, it became clear that virtually everything presented to Defendants up to that point – in both Dr. Kurtz's pleading and a declaration given under penalty of perjury – was substantively inaccurate and that Plaintiff had abjectly failed to abide by even basic standards of preserving evidence. For example:

- Plaintiff had no basis to believe that Kirkland Signature Flushable Wipes were even present prior to the alleged clogs. (Kurtz Dep. 89:10-91:16; 91:24-92:13.)

- Plaintiff's story changed in fundamental ways from that presented in his Complaint and other written filings.

  - For example, Defendants learned for the first time at Plaintiff's deposition that the Brooklyn clog about which he is suing was two separate clogs, that they occurred immediately after his move in February 2013, not after months of flushing both of Defendants' wipes, and that they were immediately preceded by flushing baby wipes. (Kurtz Dep. 17:3-22; 109:6-19) All of these facts are inconsistent with the version of the story in the Complaint, Plaintiff's declaration filed in opposition to Defendants' motions to dismiss, and Plaintiff's Answers to Interrogatories. (*See supra* at 23.)

- Plaintiff failed to preserve any evidence except one single receipt, and was not instructed to do so, even *after* filing the complaint, including:

  - Records of his numerous purchases of flushable and non-flushable wipes even after filing the complaint; and

  - Modifying his plumbing in October 2014, after initial discovery had been exchanged in this case, without in any way documenting the condition of his plumbing before the modification or notifying defendants of the impending modification so that they could preserve evidence.

(Kurtz Dep. 84:12-14; 96:21-97:2; 156:18-22.) The unique defenses referenced above (*see*

**FILED UNDER SEAL**

Section I.B.2, *supra*) will also distract substantially from his adequate representation of the class. *See Pagan*, 287 F.R.D. at 150.

### C.    A Class Action Is Not Superior To Costco Members' Existing Remedies.

Rule 23(b)(3)'s superiority requirement instructs courts to consider "the likely difficulties in managing a class action" and asks whether a class action is superior to other methods of fairly and efficiently adjudicating the controversy.  *See* Fed. R. Civ. P. 23(b)(3)(D).  Courts have held that putative class actions are not a superior method for adjudicating claims "[w]here available refunds afford class members a comparable or even better remedy than they could hope to achieve in court [because] a class action would merely divert a substantial percentage of the refunds' aggregate value to the class lawyers."  *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 (ADS)(WDW), 2012 WL 764199, at *27 (E.D.N.Y. Mar. 5, 2012) (quoting *In re Aqua Dots Prod. Liab. Litig.*, 270 F.R.D. 377, 383 (N.D. Ill. 2010)).  Stated differently, "rational class members would not choose to litigate a multiyear class action just to procure refunds that are readily available here and now."  *Id.*

Here, a class action is not a superior method of resolving complaints about Kirkland Signature Flushable Wipes.  First, as shown above, there is no evidence to show that the number of claimants who can show actual injury even passes the threshold to show numerosity – thus proceeding as a class action would constitute an extraordinary waste of judicial and party resources.  Second, Costco already refunds the entire purchase price upon request – with no questions asked – and

REDACTED

The availability of these low-commitment remedies obviates the need to pay for lawyers, preserve evidence (which Dr. Kurtz has not done), and fight a protracted legal battle.   Accordingly, a class action is

**FILED UNDER SEAL**

not a superior vehicle to resolve Dr. Kurtz's – or any other putative class member's – claims related to Kirkland Signature Flushable Wipes. *Pagan*, 287 F.R.D. at 151 (finding that class action was not superior where defendant had a program in place to offer refunds) (citing *Leonard*, 2012 WL 764199, at *27).

Further, for the reasons stated above, Dr. Kurtz cannot satisfy the Rule 23(b)(3)'s superiority requirement because there is no way to assess injury or damages on a class-wide basis. *See Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI)(RML), 2013 WL 7044866, at *21 (E.D.N.Y. July 18, 2013) (finding that plaintiffs failed to sustain their burden of establishing the manageability of the class because they did not present a class-wide damages model that can be used based on common proof, or a reliable method of distributing damages to members). The need for mini-trials to resolve each class member's claims and determine the applicability of affirmative defenses destroys the superiority of the class action mechanism. *See Suvill*, 2014 WL 4966029, at *11; *Spagnola*, 264 F.R.D. at 99.

## II.     THE PROPOSED CLASS IS NOT REASONABLY ASCERTAINABLE.

Class certification should also be denied here because there is no way to objectively determine who is a member of the putative class. Although not included within the text of Rule 23, courts in the Second Circuit assess the "implied requirement of ascertainability" when considering the viability of a class action. *See In re IPO*, 471 F.3d at 30. "To be ascertainable, the class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (quoting *McBean v. City of N.Y.,* 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009)). A class is ascertainable when it can be "defined by objective criteria that are administratively feasible, and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* (citation and internal quotation marks omitted). Ascertainability consists of "two

**FILED UNDER SEAL**

important elements":  (1) "the class must be defined with reference to objective criteria[;]" and (2) "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012)).  Where "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."  *Marcus*, 687 F.3d at 593.

Here the class is not ascertainable without conducting a host of individual mini-trials on the merits to identify the members of the class.  To determine whether any particular person is a member of the class, there would need to be a showing that, among other things:  1) the person purchased Kirkland Signature Flushable Wipes because they are marketed as flushable; 2) flushed them; and 3) experienced plumbing problems; 4) that were caused by flushing the Kirkland Signature Flushable Wipes.  There is simply no basis to *presume* that these requirements have been met; and actually conducting such an inquiry on a classwide basis is patently impossible.  Accordingly, Dr. Kurtz cannot satisfy the Second Circuit's ascertainability requirement.  *See, e.g., Wilson*, 2008 WL 905903, at *5 (finding that putative class of home purchaser who "because of Defendants' standard deceptive conduct purchased homes that were over-appraised" was not ascertainable because this "injected a fact-intensive determination as to class membership whereby determining membership would essentially require a mini-hearing on the merits of each class member's case, including their individual injury") (internal quotation marks omitted); *Weiner*, 2010 WL 3119452, at *13 (finding that the putative class was not ascertainable).

### III.   THE COURT SHOULD DENY CERTIFICATION OF AN INJUNCTIVE RELIEF CLASS UNDER RULE 23(B)(2).

**FILED UNDER SEAL**

First, Dr. Kurtz cannot support certification of a Rule 23(b)(2) class because he cannot meet any of Rule 23(a)'s requirements for the many reasons discussed above.  *See* Fed. R. Civ. P. 23.   High on the list of Plaintiff's deficiencies, he has failed to establish any common injury, as is required under Rule 23(a)'s commonality requirement.  (*See* Section I.A., *supra*.)  Rule 23(b)(2) only applies "when a single injunction or declaratory judgment would provide relief to each member of the class;" it "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Dukes*, 131 S. Ct. at 2557.

Second, a Rule 23(b)(2) class is inappropriate here because the relief sought is inherently individualized.  *See Dukes*, 131 S. Ct. at 2557 ("claims for *individualized* relief … do not satisfy the Rule.").  Dr. Kurtz requests injunctive relief ordering Defendants "to inform the public of the true nature regarding the effect on plumbing when flushable wipes are flushed."  (Compl. Prayer for Relief, D.)  But Plaintiff cannot demonstrate that Kirkland Signature Flushable Wipes have any common "effect on plumbing systems" of Costco members other than passing through them without incident the overwhelming majority of the time – indeed virtually always.

Third, the remainder of Dr. Kurtz's request for injunctive relief makes clear that this is simply an impermissible back-door effort to certify a damages class.  (*See* Compl. Prayer for Relief, D (asking for an order requiring Defendants "to waive or reimburse any fees to be incurred by consumers in connection with plumbing services needed to repair plumbing systems").)  That is exactly the kind of individualized damages request masquerading as a Rule 23(b)(2) class that the Supreme Court forbade.  *See Dukes*, 131 S.Ct. at 2557–60 ("unless merely 'incidental' to the requested declaratory or injunctive relief, claims for individualized monetary damages preclude class certification under Rule 23(b)(2)"); *see also Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012) (citing *Dukes*, 131 S. Ct. at 2557-60.)  Kurtz's

**FILED UNDER SEAL**

primary request for a Rule 23(b)(3) class coupled with his request that, even under Rule 23(b)(2), the court order Defendants to "reimburse any fees to be incurred by consumers" (Compl. Prayer for Relief, D.), leaves no doubt that money damages is anything but incidental here. *See Gardner v. W. Beef Props., Inc.*, No. 07-CV-2345 RJD JMA, 2011 WL 6140518, at *6 (E.D.N.Y. Sept. 26, 2011) ("To the extent plaintiffs seek to certify the monetary and injunctive claims together, they fail."), *report and recommendation adopted as modified sub nom. White v. W. Beef Props., Inc.*, No. 07 CV 2345 RJD JMA, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011).

Fourth, even if Plaintiff had been injured by Kirkland Signature Flushable Wipes in the past—which he has not shown—he cannot demonstrate that he is at risk of any future injury. *See, e.g., Vaccariello v. XM Satellite Radio*, 295 F.R.D. 62, 72 (S.D.N.Y. 2013) (certification of Rule 23(b)(2) class denied where plaintiff could not "demonstrate that he faced a likelihood of future harm"). Accordingly, the court should deny Dr. Kurtz's request to certify a Rule 23(b)(2) class.

## CONCLUSION

For the foregoing reasons, Costco respectfully requests that the Court grant Costco's motion to deny class certification and deny Plaintiff's motion to certify a class of purchasers of Kirkland Signature Moist Flushable Wipes.

**FILED UNDER SEAL**

Dated:  New York, NY
        February 27, 2015

MORRISON & FOERSTER LLP

By:      /s/ James M. Bergin
        _____
        James M. Bergin
        Kayvan B. Sadeghi
        Adam J. Hunt
        250 West 55th Street
        New York, NY  10019
        Telephone:  (212) 468-8000
        Facsimile:   (212) 468-7900
        jbergin@mofo.com
        ksadeghi@mofo.com
        ahunt@mofo.com

        *Attorneys for Defendant*
        *Costco Wholesale Corporation*

**FILED UNDER SEAL**