UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

.......................................................................x

| | |
|---|---|
| D. Joseph Kurtz, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>Kimberly-Clark Corporation and Costco Wholesale Corporation,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:  No.  1:14-cv-01142<br>:<br>:<br>:<br>:<br>:<br>: |

.......................................................................x

| | |
|---|---|
| Gladys Honigman, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>Kimberly-Clark Corporation,<br><br>Defendant. | :<br>:<br>:<br>:<br>:  No.  15-cv-2910<br>:<br>:<br>: |

.......................................................................x

**KIMBERLY-CLARK CORPORATION'S MEMORANDUM OF LAW RESPECTING MOOTNESS ISSUES RAISED BY THE COURT, AND IN SUPPORT OF RENEWED MOTION TO DENY CLASS CERTIFICATION AND IN SUPPORT OF CONDITIONAL MOTION, UPON DENIAL OF CERTIFICATION, TO DENY PLAINTIFFS KURTZ'S AND HONIGMAN'S INDIVIDUAL CLAIMS FOR INJUNCTIVE RELIEF OR, IN THE ALTERNATIVE, TO DISMISS THEM AS PRUDENTIALLY MOOT**

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

Kara L. McCall (*pro hac vice*)
Daniel A. Spira (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
*Attorneys for Kimberly-Clark Corporation*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ................................................................... 1

BACKGROUND ........................................................................................ 3

    A.    The FTC Issues Final Order Against Nice-Pak Defining "Flushable." ................... 3

    B.    Counsel For Kurtz And Honigman Embraces The FTC's Definition Of "Flushable." ........................................................................................... 4

    C.    The FTC Closes Its Investigation of Kimberly-Clark Flushable Wipes. ................ 5

ARGUMENT ............................................................................................ 7

I.    THE COURT SHOULD FIRST DENY RULE 23(b)(2) CLASS CERTIFICATION, THEN, AFTER DENIAL OF CERTIFICATION, DENY OR DISMISS PLAINTIFFS' INDIVIDUAL CLAIMS FOR INJUNCTIVE RELIEF. ...................................... 7

    A.    The FTC's Actions Support Denying Plaintiffs' Injunctive Relief Claims Or Dismissing Them As Prudentially Moot, But The FTC's Actions Should First Lead To Denying Certification Of A Rule 23(b)(2) Class. ................................... 9

        1.    This Court Could Dismiss Plaintiffs' Claims For Injunctive Relief on Prudential Mootness Grounds. ...................................................... 10

        2.    The Reasoning For a Finding of Prudential Mootness Equally Requires a Finding that a Rule 23(b)(2) Class for Injunctive Relief is Not Appropriate. ............................................................................. 13

            a.    Kurtz And Honigman Cannot Show Irreparable Injury Or Injury That Lacks an Inadequate Remedy at Law. ................................. 15

            b.    The Balance Of Hardships Does Not Favor Injunctive Relief ...... 16

            c.    An Injunction Will Not Serve The Public's Interest. .................... 17

    B.    A Ruling On Mootness Alone Would Not Dispose Of The *Kurtz* Or *Honigman* Actions Because It Would Not Apply To The Damages Claims. ......................... 19

II.    THE FTC'S ACTIONS UNDERSCORE WHY CLASS CERTIFICATION MUST BE DENIED. ............................................................................................... 21

    A.    The FTC's Prospective Definition Of "Flushable," Which Also Encompasses Municipality Concerns Unrelated To Plaintiffs' Claims, Cannot Support Certification. ...................................................................................... 22

1.      The FTC's Definition Does Not Evidence Each Individual Class Member's Understanding of "Flushability" Or Performance In Each Individual Class Member's Home. ..........................................................22

2.      The FTC's Definition Does Not Solve the Fatal Flaws in Plaintiffs' Proposed Rule 23(b)(2) Class. ...................................................24

B.      Even If The FTC's Definition Of "Flushable" Were Relevant To Putative Class Members, The FTC's Actions Are Fatal To Class Certification. ..........................26

1.      Plaintiffs Cannot Show That All Class Members' Kimberly-Clark Flushable Moist Wipes Do Not Satisfy The FTC's Definition of "Flushable." ........................................................................27

2.      Plaintiffs' Expert Mr. Weir Does Not Support Plaintiffs' Classwide Injury Or Damages Theories. ................................................................30

3.      The FTC's Actions Confirm That A Rule 23(b)(3) Class Action Would Not Be A Superior Method Of Adjudication. .............................................34

4.      The FTC's Actions Provide An Ample Basis For Concluding That Plaintiff Has Not Satisfied The Requirements For A Rule 23(b)(2) Class. ....................................................................................35

CONCLUSION ....................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09-cv-395(DLI)(RML), 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ..........................32

*Ali v. Cangemi*,
  419 F.3d 722 (8th Cir. 2005) (en banc) .................................................................11

*Allende v. Shultz*,
  845 F.2d 1111 (1st Cir. 1988) ..............................................................................11

*Aurelius Capital Master, Ltd. v. Republic of Argentina*,
  644 F. App'x 98 (2d Cir. 2016) ............................................................................17

*In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Pracs. Litig.*,
  No. 13-cv-150 JPO, 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015), *appeal
  pending on other grounds*, No. 16-1879 (2d Cir.) ...........................................24, 32

*Belfiore v. P&G*,
  311 F.R.D. 29 (E.D.N.Y. 2015) ................................................................... *passim*

*Bill's Birds Inc. v. Trademarketing Res. Inc.*,
  920 F. Supp. 2d 357 (E.D.N.Y. 2013) ...................................................................15

*Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*,
  7 F. 3d 1487 (10th Cir. 1993) ..............................................................................20

*Blue-Sky v. Gomez*,
  46 F.3d 1138, 1995 WL 21399 (9th Cir. Jan. 19, 1995) ...........................................14

*Brady v. Basic Research, LLC*,
  No. 13-cv-7169(SJF), 2016 WL 1735856 (E.D.N.Y. May 2, 2016) ............................20

*In re Cablevision Consumer Litig.*,
  No. 10-cv-4992(JS), 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014) .............................9

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016) ..........................................................................................19

*Chamber of Commerce v. U.S. Dep't of Energy*,
  627 F.2d 289 (D.C. Cir. 1980) (per curiam) ..........................................................10

*Comcast Corp. v. Behrend*,
  133 S.Ct. 1426 (2013) ..........................................................................................31

*Davito v. Amtrust Bank*,
   743 F. Supp. 2d 114 (E.D.N.Y. 2010) ...............................................................7

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)......................................................................................14, 15

*Fireside Bank v. Super. Ct.*,
   40 Cal. 4th 1069 (2007) ....................................................................................9

*Fischl v. Armitage*,
   128 F.3d 50 (2d Cir. 1997)...............................................................................29

*Garris v. Gianetti*,
   160 F.R.D. 61 (E.D. Pa. 1995)..........................................................................8

*In re General Motors LLC Ignition Switch Litig.*,
   No. 14-MD-2543(JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ...........11, 20

*Hughes v. The Ester C Co.*,
   317 F.R.D. 333 (E.D.N.Y. 2016) ............................................................8, 24, 31–32

*In re IPO Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)...........................................................................28, 29

*Jackson v. Am. Bar Ass'n*,
   538 F.2d 829 (9th Cir. 1976) (per curiam)........................................................14

*Joe Hand Prods., Inc. v. Zafaranloo*,
   No. 12-cv-3828(RRM)(RER), 2014 WL 1330842 (E.D.N.Y. Apr. 1, 2014) ..........15

*Joe Hand Promotions, Inc. v. Elmore*,
   No. 11-cv-3761(KAM)(SMG), 2013 WL 2352855 (E.D.N.Y. May 29, 2013).........15

*Kaczmarek v. IBM Corp.*,
   186 F.R.D. 307 (S.D.N.Y. 1999) ........................................................................8

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
   634 F.3d 883 (7th Cir. 2011) .............................................................................8

*Knox v. Serv. Employees Int'l Union*,
   132 S. Ct. 2277 (2012)......................................................................................10

*Koch v. Greenberg*,
   14 F. Supp. 3d 247 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015)...........15, 16, 18

*Leyse v. Lifetime Enter. Servs.*,
   171 F. Supp. 3d 153 (S.D.N.Y. 2016).................................................................20

*In re: Libor-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 (NRB), 2016 WL 2851333 (S.D.N.Y. May 13, 2016)..............................7

*McLaughlin v. Am. Tobacco*,
  522 F.3d 215 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v.*
  *Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ..............................................28, 29, 33–34

*Nat'l Fed'n of Fed. Employees v. Weinberger*,
  818 F.2d 935 (D.C. Cir. 1987) (per curiam) ..........................................................................14

*In re Nice-Pak Prods., Inc.*,
  No. C-4556, File No. 132-3272, 2015 WL 7009345 (F.T.C. Oct. 30, 2015) .................. *passim*

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016).................................................................................10, 24, 25, 27

*Pagan v. Abbott Labs., Inc.*,
  287 F.R.D. 139 (E.D.N.Y. 2012) ...............................................................................21, 32, 34

*Philip Morris Inc. v. Nat'l Asbestos Workers Medical Fund*,
  214 F.3d 132 (2d Cir. 2000)......................................................................................................9

*Punnett v. Carter*,
  621 F.2d 578 (3d Cir. 1980).....................................................................................................14

*Ramirez v. Dollar Phone Corp.*,
  668 F. Supp. 2d 448 (E.D.N.Y. 2009) ....................................................................21, 34–35

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
  601 F.3d 1096 (10th Cir. 2010) .............................................................................................11

*Ritz v. Mike Rory Corp.*,
  959 F. Supp. 2d 276 (E.D.N.Y. 2013) ...................................................................................20

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010).................................................................................................15, 18

*Samms v. Abrams*,
  --- F. Supp. 3d ---, No. 15-cv-2741 (JSR), 2016 WL 4045473 (S.D.N.Y. July
  28, 2016) ...........................................................................................................................14, 15

*Schwarzschild v. Tse*,
  69 F.3d 293 (9th Cir. 1995) ......................................................................................................9

*SEC v. Citigroup Global Mkts., Inc.*,
  752 F.3d 285 (2d Cir. 2014).....................................................................................................14

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP,*
806 F.3d 71 (2d Cir. 2015)..................................................................................32, 33

*Silber v. Barbara's Bakery, Inc.,*
950 F. Supp. 2d 432 (E.D.N.Y. 2013) .................................................................16

*Stokes v. Village of Wurtsboro,*
818 F.2d 4 (2d Cir. 1987).....................................................................................19

*Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms. L.P.,*
136 A.3d 688 (Del. 2016) .....................................................................................31

*Tomasino v. Estee Lauder Cos., Inc.,*
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................25

*UFCW Local 1776 v. Eli Lilly & Co.,*
620 F.3d 121 (2d Cir. 2010)...........................................................................33, 34

*United States v. Green,*
33 F. Supp. 2d 203 (W.D.N.Y. 1998) ...................................................................7

*United States v. W.T. Grant Co.,*
345 U.S. 629 (1953)........................................................................................11, 14

*Usher v. Ercole,*
710 F. Supp. 2d 287 (E.D.N.Y. 2010) .................................................................29

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)...........................................................................................26

*Weiner v. Snapple Beverage Corp.,*
No. 07-cv-8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)..............32, 34

*Winzler v. Toyota Motor Sales U.S.A., Inc.,*
681 F.3d 1208 (10th Cir. 2012) ...................................................................1, 11, 12

*Zippo Mfg. v. Rogers Imports, Inc.,*
216 F. Supp. 670 (S.D.N.Y. 1963) ........................................................................4

**Constitutions, Statutes, and Federal Rules**

Fed. R. Civ. P. 23 ....................................................................................... *passim*

Fed. R. Evid. 702 .............................................................................................31

N.Y. G.B.L § 349 ........................................................................................ *passim*

N.Y. G.B.L. § 349 .........................................................................15, 16, 18, 32

U.S. Const. art. III, § 2 cl. 1 ......................................................................................10

**Other Authorities**

Ned Lynch, *Wipes wreck havoc on wastewater plants*, the Day (May 7, 2016)
    http://www.theday.com/local/20160507/wipes-wreak-havoc-on-wastewater-
    plants ..................................................................................................................18

C.A. Wright et al., 13C *Fed. Prac. & Proc. Juris.* § 3533.3 (3d ed. 2016) ...................................19

N.Y.C. Law Dep't, *Forensic Evaluation of Non-Dispersables* (Aug. 15, 2016)...........7, 29–30, 36

## PRELIMINARY STATEMENT

Kimberly Clark Corporation ("Kimberly-Clark" or, in citations, "K-C") respectfully submits this brief pursuant to this Court's direction during the December 7, 2016 conference.  At that conference, this Court concluded that "[a]n acceptable national standard [for 'flushability'] has been articulated by the Federal Trade Commission in its Consent Order with Nice-Pak." Dec. 7, 2016 Tr. 4:6–8; *see id.* at 4:8–12 (setting forth FTC standard).  The Court then stated that it "will consider a motion by each defendant to dismiss the pending suit against it on the ground that it is mooted by the FTC ruling," and "[i]f a defendant does not make a motion to dismiss for mootness, it will be deemed made by the court *ex mero motu.*"  *Id.* at 4:13–15, 4:20–21; *see also* Order of Dec. 12, 2016 (D.E. 263)[1] (scheduling hearings).

If the *Kurtz* and *Honigman* actions purely sought injunctive relief—and especially if those plaintiffs were not seeking certification of a Rule 23(b)(2) class—Kimberly-Clark would more readily endorse the Court's instinct that it should exercise its discretion to dismiss any claim for injunctive relief as prudentially moot given recent FTC activity.  *See*, *e.g.*, *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) ("[I]f events so overtake a lawsuit that the anticipated benefits of a remedial decree *no longer justify the trouble of deciding the case on the merits*, equity may demand not decision but dismissal.  When it does, we will hold the case 'prudentially moot.'") (emphasis added) (internal citation omitted).

As detailed below, however, the record more cleanly and efficiently supports, first, the denial of Plaintiff Kurtz's request for certification of a Rule 23(b)(2) class, and, upon such denial, entry of an order denying Plaintiff Kurtz's and Honigman's individual claims for injunctive relief or, alternatively, dismissing them as prudentially moot.  *See infra* § I.A.

---

[1] Unless otherwise stated herein, citations to record materials by their ECF docket entry ("D.E.") numbers correspond to those in *Kurtz v. Kimberly-Clark Corp., et al.*, No.  1:14-cv-01142.

Addressing class certification first not only is the preferred order of operations, but also would be the most efficient course here.  This is because, *inter alia*, (i) one-way intervention problems exist and are more acute than usual because counsel for Plaintiffs Kurtz and Honigman already has told this Court that he has additional plaintiffs waiting in the wings, *see* Pl.'s Letter [D.E. 52] at 3–4; (ii) Honigman's case has not yet been subject to discovery; and (iii) rulings on the individual claims prior to class certification will do little to deter counsel for Plaintiffs from restarting proceedings using another putative class representative here or in another court. Accordingly, Kimberly-Clark renews its motion for denial of Rule 23(b)(2) class certification in *Kurtz*.  *See infra* at pp. 7–9, 13–19, *infra* § II.  And then, conditioned upon the denial of certification of a (b)(2) class, Kimberly-Clark moves to deny Plaintiff Kurtz's and Honigman's claims for injunctive relief or, alternatively, to dismiss them as prudentially moot.  *Infra* § I.A.

Neither prudential mootness nor Article III mootness applies to Plaintiffs' claims for damages relief.  *See infra* § I.B.  Therefore, Kurtz's motion for Rule 23(b)(3) certification (and Defendants' motions to deny such certification) and Plaintiffs Kurtz's and Honigman's individual damage claims will remain pending before this Court regardless of how it handles the injunctive relief claims and putative Rule 23(b)(2) class.  Moreover, the same problems that inhere in addressing individual claims before a decision on class certification in the Rule 23(b)(2) context apply equally in the Rule 23(b)(3) context.  Accordingly, Kimberly-Clark similarly renews its motion for denial of certification of a Rule 23(b)(3) class.  *Infra* §§ II.A.1, B.1–3.  Subsequent events—especially the FTC's articulation of a prospective flushability standard that counsel for Plaintiffs Kurtz and Honigman wholeheartedly adopted and the FTC's determinations that Kimberly-Clark's flushable wipes satisfy that standard—confirm that Plaintiffs have no basis for proving classwide injury, showing that common issues predominate,

or demonstrating that a consumer class action applying state law is the superior method of resolving any controversy over the flushability of Kimberly-Clark's flushable wipes.

## BACKGROUND

This Court has closely presided over the proceedings to date, and therefore Kimberly-Clark will not recap the entire history of the *Kurtz* and *Honigman* actions. Because the FTC's activity that prompted this Court to order this briefing and the upcoming hearing post-dates the briefing and October 9, 2015 oral argument on class certification in *Kurtz*, Kimberly-Clark summarizes those developments.

### A.     The FTC Issues Final Order Against Nice-Pak Defining "Flushable."

Several weeks after this Court heard oral argument on class certification in *Kurtz*, the FTC issued a final order imposing injunctive relief against Nice-Pak with respect to wipes that Nice-Pak had previously marketed as flushable. *In re Nice-Pak Prods., Inc.*, No. C-4556, File No. 132-3272, 2015 WL 7009345 (F.T.C. Oct. 30, 2015) ("*Nice-Pak* Final Order"). As this Court has observed, the FTC's *Nice-Pak* Final Order included a standard for substantiating flushability claims. *See* Dec. 7, 2016 Tr. at 4:6–12 (quoting the FTC's definition of "flushable" and recognizing that "[a]n acceptable national standard has been articulated by the [FTC] in its Consent Order with Nice-Pak"); *Nice-Pak* Final Order, 2015 WL 7009345, at *4 (requiring that to call wipes "flushable" and make related representations, the wipes must "disperse[] in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment"); *id.* at *3–4 (setting forth standards for scientific evidence required to substantiate claims under the definition).

**B.    Counsel For Kurtz And Honigman Embraces The FTC's Definition Of "Flushable."**

During the oral argument on class certification, Kimberly-Clark explained that Plaintiff Kurtz failed to present any objective definition of "flushable" that would suffice to make the classwide proofs that are necessary for class certification.  Oct. 9, 2015 Tr. [D.E. 204] at 29:25–30:6 ("there may be these nascent [objective] definitions . . . but there's no definition"); *id.* at 30:19–31:15 (lack of definition and the problems with proving materiality classwide).[2]

Kimberly-Clark also explained that a definition or standard announced by the FTC would not help Plaintiff Kurtz as to class certification because "[a]ny definition FTC issues is surely going to be prospective.  It is not going to tell us what a reasonable consumer thought flushable

---

[2] Kimberly-Clark had demonstrated that Plaintiff Kurtz had made no effort to show that reasonable consumers had a common understanding of the term "flushable," much less a common experience with whether a product, in fact, was flushable for them.  K-C Opp. Mot. Class Cert. [D.E. 103, 124] at 3, 10–16; K-C Mem. Supp. Mot. Deny Class Cert. [D.E. 85, 141] at 2, 10–27.  Instead, Kimberly-Clark showed that the only evidence in the record—exemplified by the testimony of Dr. Kurtz and his Science Day witness Rob Villee—is that consumers possess an entirely subjective and individualized view of "flushable," which is based on no more than whether a product, in fact, clears that *individual* consumer's unique plumbing.  D.E. 103, 124 at 5, 12–13; Science Day Tr. (June 19, 2015) at 38:1–39:2; Science Day Tr. (July 21, 2015) at 47:13–22; Science Day (July 21, 2015) Court Ex. 4 (PARSA003196); Kurtz Dep. [D.E. 142-1] at 37:14–20.  Therefore, Kimberly-Clark submitted that Plaintiff could not demonstrate classwide deception, materiality, causation, or injury, or show that common issues predominated.  *See* D.E. 85, 141 at 15–27; D.E. 103, 124 at 9–16; K-C Br. Regarding Further Administration of the Litigation [D.E. 244] at 2–4.  Moreover, this Court repeatedly recognized that Kurtz had no survey evidence reflecting how consumers understood flushability representations or their materiality.  Oct. 9, 2015 Tr. [D.E. 204] at 30:19–24; Science Day Tr. (June 19, 2015) at 24:23–25:9; *see also Belfiore v. P&G*, 311 F.R.D. 29, 51 (E.D.N.Y. 2015).  The Court recognized that Plaintiff failed to procure such evidence despite that consumer surveys have been the centerpiece of similar litigation since Judge Feinberg sat on the district court.  Science Day (June 19, 2015) Tr. at 25:8–17, 82:2–6 (citing *Zippo Mfg. v. Rogers Imports, Inc.*, 216 F. Supp. 670 (S.D.N.Y. 1963)).  Instead, Plaintiff Kurtz's counsel *confirmed* that the case turned on individualized, subjective views of "flushable" and whether the wipe flushes without harm for a particular individual.  *Id.* at 24:23–25:8 (The Court:  "Have you made a survey of what a reasonable consumer thinks flushability means? [Kurtz's counsel]: We have not done a formal survey of that.  I can only speak to the consumers that have contacted us . . . .  The consensus view is that flushable means it's not going to clog the piping in *my house*.  It's not going to clog the pumps of *my home*.  It's not going to cause damage to *my* septic system.") (emphases added).

meant at a given point in time." *Id.* at 30:6–9; *see id.* at 30:10–12 ("THE COURT: That is true with respect to damages perhaps, but it will support an injunction, certainly, that will protect everybody to the extent protection is needed."); *see also id.* at 28:10–16 (explaining that any FTC definition also would not assist Kurtz for purposes of class certification because it would reflect the interests of municipalities, not merely consumers' understandings); *accord* K-C Mem. Opp. Mot. to Lift Stay [D.E. 212] at 4 (similar).

Despite Kimberly-Clark's unrebutted showings, upon the FTC's *Nice-Pak* Final Order announcing the agency's standard for "flushable," counsel for Plaintiffs Kurtz and Honigman fully embraced that new regulatory definition.  *See* Pl.'s Mem. Supp. Mot. Lift Stay [D.E. 206]. The FTC standard was not—and could not have been—contemplated by Dr. Kurtz or any other consumer at a time relevant to the class period, was not mentioned in Kurtz's testimony, and was not endorsed by Plaintiff's counsel in class certification briefing or oral argument.  Nevertheless, Kurtz's counsel stated:  "The FTC, through its now-final order, has approved of and adopted a universally applicable definition of 'flushable' and a related framework for substantiating representations regarding flushable wipes products."  *Id.* at 1–2.  Kurtz's counsel added that "[m]arkedly, the definition of 'flushable' adopted by the FTC provides a sufficiently detailed and workable definition" "and can and should be universally applied throughout the industry."  *Id.* at 3; *id.* at 5 (similar).

**C.      The FTC Closes Its Investigation of Kimberly-Clark Flushable Wipes.**

While a newly announced regulatory definition of "flushable" has no conceivable relationship to consumers' past claims for damages or any claim Dr. Kurtz has standing to assert, it quickly became apparent that the FTC would apply its new definition "throughout the industry" to protect consumers, municipalities and the general public going forward.  After the *Nice-Pak* Final Order was issued, the FTC requested from Kimberly-Clark a submission

substantiating how its flushable wipes satisfied the standards set forth in the *Nice-Pak* Final

Order. *See* Declaration of Christopher Cole ("Cole Decl.") ¶ 6 (filed herewith).

Accordingly, on February 8, 2016, Kimberly-Clark made a submission to the FTC

substantiating, with competent and reliable scientific evidence, how its current and previous

versions of flushable wipes met the standards set forth in the *Nice-Pak* Final Order. *See id.* ¶ 7.

Kimberly-Clark's submission, which supplemented its previous pre-*Nice-Pak* Final Order

substantiation submissions to the FTC, contained a range of testing data. *See id.* ¶¶ 3, 8. Among

other things, it reported on tests conducted on Kimberly-Clark's wipes pursuant to the INDA

guidelines, as well as tests outside the INDA guidelines conducted under "real world"

conditions, including tests of drainlines (such as found in residences), using municipal pumps at

Kimberly-Clark's Wisconsin campus, and in a family septic tank in Wisconsin. *Id.* ¶ 8.

After receiving Kimberly-Clark's submission, the FTC did not request any further

submissions from the company. *Id.* ¶ 9. On July 6, 2016, Kimberly-Clark received the FTC's

June 30, 2016 letter stating that the FTC had closed its investigation of Kimberly-Clark. *Id.*

¶ 10; *see* FTC Closure Letter [D.E. 228-1]. Kimberly-Clark has not had any substantive

interactions with the FTC about its flushable wipes since the closure letter. *See* Cole Decl. ¶ 11.

Soon after Kimberly-Clark received the FTC's Closure Letter, Kimberly-Clark learned

that the FTC was in the process of subjecting other manufacturers' wipes to the Nice-Pak

standard on a case-by-case basis.[3] *See Belfiore*, Case No. 2:14-cv-04090 [D.E. 184-2] at 2 (FTC

letter to Plaintiff Belfiore's counsel: "The Nice-Pak Consent Order . . . provides guidance on the

---

[3] Case-by-case treatment is required, given that each manufacturer's flushable wipe is based on its own unique technology and has different performance characteristics. *See, e.g.*, Science Day (June 19, 2015) Tr. at 94:18–97:12 (describing Kimberly-Clark's unique, patented technology and the mechanism of action by which its flushable wipes weaken and disperse).

Commission's views regarding the substantiation required under Section 5 of the FTC Act when making a representation that a wipe is 'flushable,' 'septic safe,' or 'safe for sewer and septic systems' — or other similar representations. . . .  The Commission continues to monitor advertising and marketing practices in this market and . . . plans to proceed as it typically does, on a case-by-case basis through individual law enforcement actions."); *see also Nice-Pak* Final Order, 2015 WL 7009345, at *15 ("We believe that the [*Nice-Pak*] final order will put manufacturers and marketers on notice of that the required substantiation for flushable claims implicates 'real world' conditions").

Subsequent to the FTC's closure letter regarding Kimberly-Clark's wipes, more real world testing has emerged to further confirm that Kimberly-Clark's wipes are, in fact, flushable not only for consumers (as is at issue here), but also for municipalities.  *See*, *e.g.*, K-C Nov. 7, 2016 Ltr. [D.E. 254] at 4 (describing and attaching [D.E. 254-4] New York City-commissioned study finding *no* Kimberly-Clark flushable wipes in New York City's sewers).

## ARGUMENT

## I.   THE COURT SHOULD FIRST DENY RULE 23(b)(2) CLASS CERTIFICATION, THEN, AFTER DENIAL OF CERTIFICATION, DENY OR DISMISS PLAINTIFFS' INDIVIDUAL CLAIMS FOR INJUNCTIVE RELIEF.

Kimberly-Clark submits that denial of Rule 23(b)(2) class certification in *Kurtz* followed by denial or dismissal of Plaintiffs Kurtz and Honigman's individual claims for injunctive relief would provide the most complete and efficient resolutions in the *Kurtz* and *Honigman* actions.[4]

---

[4] Upon denial of class certification in *Kurtz*, the Court could then strike Plaintiff Honigman's indistinguishable class allegations.  *See*, *e.g.*, *In re: Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 WL 2851333, at *1, 3 (S.D.N.Y. May 13, 2016) (striking plaintiffs' nationwide class allegation where it was apparent "'from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery'") (alterations in original and citation omitted); *Davito v. Amtrust Bank*, 743 F. Supp. 2d 114, 115 (E.D.N.Y. 2010); *see also United States v. Green*, 33 F. Supp. 2d

Moreover, the same equitable reasons that incline this Court to find plaintiffs' injunctive relief claims prudentially moot also compel denying certification of any Rule 23(b)(2) class.  As Judge Pollak once summarized in denying certification of a Rule 23(b)(2) class: "A prerequisite to Rule 23(b)(2) certification is that it be 'appropriate' to make 'final injunctive relief' should the plaintiffs prevail." *Garris v. Gianetti*, 160 F.R.D. 61, 64 (E.D. Pa. 1995).  Particularly in light of the FTC's actions, there would be no basis for granting final injunctive relief for Plaintiff Kurtz or Honigman (even if either prevailed on one of his or her underlying causes of action). Accordingly, Rule 23(b)(2) certification should be denied.  *See id.* at 64–65 (denying certification of a Rule 23(b)(2) class because the court would not grant injunctive relief if plaintiffs prevailed; explaining that because another court was presiding over the same claims and had entered a consent decree, "there would be a duplication of effort and a risk of inconsistent adjudications if this court were to address the same claims").[5]

Moreover, addressing and denying certification of any Rule 23(b)(2) class is the optimal way to proceed.  This is because, *inter alia*, Plaintiffs Kurtz and Honigman will still have live damages claims before this Court even if it dismisses their injunctive relief claims as moot, *see infra* § I.B; the Federal Rules favor addressing class certification at an "early practicable time," Fed. R. Civ. P. 23(c)(1)(A); and reaching the merits of the individual injunctive relief claims

---

203, 216 (W.D.N.Y. 1998) (granting motion to strike where defenses were "precluded by collateral estoppel").

[5] *See, e.g.*, *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 886 (7th Cir. 2011) (denying certification of Rule 23(b)(2) class where, *inter alia*, "the requested injunction is n[ot] 'appropriate'"); *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 357 (E.D.N.Y. 2016) ("Plaintiffs' 23(b)(2) injunctive class cannot be certified because 'Plaintiff has not demonstrated that such [injunctive] relief is necessary.'"); *Kaczmarek v. IBM Corp.*, 186 F.R.D. 307, 313 (S.D.N.Y. 1999) (denying certification of Rule 23(b)(2) class because "[m]oney damages … are an adequate remedy at law, making injunctive relief inappropriate"); *see also* K-C Opp. Mot. Class Cert. [D.E. 103, 124] at 33–41 (bases for denying Rule 23(b)(2) certification); K-C Mem. Supp. Mot. Deny Class Cert. [D.E. 85, 141] at 38–40 (same); *infra* at pp. 13–19 & § II.A–B (similar).

without first denying certification of the Rule 23(b)(2) class will leave Kimberly-Clark

susceptible to one-way intervention and additional putative class claims for injunctive relief, thus

potentially needlessly burdening Kimberly-Clark and this Court or other courts.[6]

Kimberly-Clark therefore renews its request that this Court grant its Motion to Deny

Class Certification in *Kurtz*.  Additionally, Kimberly-Clark *conditionally* moves, predicated on

the entry of an order denying certification of a Rule 23(b)(2),[7] to deny any claim for injunctive

relief by individual Plaintiffs Kurtz and Honigman, or, in the alternative, to dismiss their

individual claims for injunctive relief on the basis of prudential mootness.

### A. The FTC's Actions Support Denying Plaintiffs' Injunctive Relief Claims Or Dismissing Them As Prudentially Moot, But The FTC's Actions Should First Lead To Denying Certification Of A Rule 23(b)(2) Class.

This Court recognized that the FTC has issued "[a]n acceptable national standard" for

defining "flushability" in the *Nice-Pak* Final Order.  Dec. 7, 2016 Tr. 4:6–12; *see supra* at p. 5

(counsel for Plaintiffs Kurtz and Honigman agreed).  The Court further suggested that the FTC's

guidance as to the meaning of flushability in its *Nice-Pak* Final Order "moot[s]" the requests for

---

[6] *See*, *e.g. Philip Morris Inc. v. Nat'l Asbestos Workers Medical Fund*, 214 F.3d 132, 135 (2d Cir. 2000) (deciding class certification to "abate the . . . specter of a risk-free intervention decision by thousands of putative plaintiffs"); *Fireside Bank v. Super. Ct.*, 40 Cal. 4th 1069, 1074, 1078 (2007) (the sequence of deciding class certification first is appropriate because otherwise "one plaintiff could sue and lose; another could sue and lose; and another and another until one finally prevailed; then everyone would ride on that single success"); *infra* note 7.

[7] Given the dangers of one-way intervention and additional putative consumer class suits being filed, Kimberly-Clark presently has no desire for merits relief absent denial of certification.  *See*, *e.g.*, *Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995) ("When the defendant himself moves for summary judgment before a decision on class certification. . . '[it] assume[s] the risk that a judgment in [its] favor will not protect [it] from subsequent suits by other potential class members, for only the slender reed of *stare decisis* stands between [it] and the prospective onrush of litigants.'") (internal citation omitted); *In re Cablevision Consumer Litig.*, No. 10-cv-4992(JS), 2014 WL 1330546, at *15 (E.D.N.Y. Mar. 31, 2014) ("[A] Court's decision on the merits . . . should not ordinarily occur before or simultaneous with a decision on class certification.") (internal quotation marks omitted, collecting cases).

injunctive relief that Plaintiffs Kurtz and Honigman (and other plaintiffs) made.  Dec. 7, 2016 Tr.

3:16–4:21.  Invoking a host of equitable concerns, this Court reasoned:

> [A] single standard of what is acceptable with respect to clearance of residential toilet facilities, at least, is required.  Fifty different state standards are not acceptable technologically, conceptually; as a basis for protecting this country's one national market constitutional policy; or as a procedural guide for the administration of a complex multiple party litigation such as this one.

*Id.* at 3:23–4:5; *see also Belfiore*, 311 F.R.D. at 79 ("There may be substantial danger of

inconsistent rulings among various courts and the FTC. . . .  Whether wipes should be labeled

'flushable' is a national issue that requires a single national resolution.").

### 1.   This Court Could Dismiss Plaintiffs' Claims For Injunctive Relief on Prudential Mootness Grounds.

Because Plaintiffs Kurtz's and Honigman's requests for injunctive relief seek something

that the FTC chose not to do (let alone seek)—namely, removing Kimberly-Clark's flushable

wipes from the market or prohibiting such wipes from being labeled as flushable—Kimberly-

Clark does not understand their injunctive relief claims to be moot for Article III purposes.[8]  *See*

*generally* U.S. Const. art. III, § 2 cl. 1 (case or controversy requirement); *Knox v. Serv.*

*Employees Int'l Union*, 132 S. Ct. 2277, 2287 (2012) ("A case becomes moot only when it is

impossible for a court to grant any effectual relief whatever to the prevailing party.") (internal

quotation marks omitted).

Given both the inapplicability of Article III mootness and this Court's focus on equity,

Kimberly-Clark understands the second "distinct branch[]" of the "doctrine of mootness" to be

---

[8] Because Plaintiffs are at no risk of relying on the alleged misrepresentations in the future, Plaintiffs do lack Article III standing to pursue injunctive relief, as Kimberly-Clark has pointed out, *see*, *e.g.*, Br. Regarding Further Administration [D.E. 244] at 7–8 (discussing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)), and this Court endorsed at the September 26, 2016 hearing, *see* Sept. 26, 2016 Tr. [D.E. 251] at 6:23–7:2; *see also infra* at pp. 24–25, 27.

potentially implicated:  prudential mootness.  *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980) (per curiam) (this "cousin of [constitutional] mootness" permits dismissal based on "considerations of prudence and comity for coordinate branches of government" even if the claims are not constitutionally moot).[9]  The Tenth Circuit has detailed the equitable underpinnings of prudential mootness as follows:

> [C]laims for equitable relief, like the injunction [plaintiff] seeks in this lawsuit, appeal to the "remedial discretion" of the courts.  This remedial discretion necessarily includes the power to "mould each decree to the necessities of the particular case."  And inhering in that power is the concomitant power to deny relief altogether unless "the moving party [can] satisfy the court that relief is needed."

*Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (omitting internal citations to, *inter alia*, *W.T. Grant*, 345 U.S. at 633).  Based on these principles, prudential mootness is applicable, *inter alia*, "if events so overtake a lawsuit that the anticipated benefits of a remedial decree *no longer justify the trouble of deciding the case on the merits*," in which case, "equity may demand not decision but dismissal."  *Id.* (emphasis added) ("When it does, we will hold the case 'prudentially moot.'").

In *Winzler*, for example, upon review of a district court's Rule 12(b)(6) dismissal of plaintiff's injunctive relief action that sought to compel Toyota to notify owners of an alleged defect and coordinate an equitable fund to pay for repairs, *see id.* at 1209, the Tenth Circuit vacated the judgment and remanded with instructions to instead dismiss the injunctive relief

---

[9] *See*, *e.g.*, *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121–25 (10th Cir. 2010) (discussing prudential mootness and collecting numerous authorities); *id.* at 1125 (calling *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–34 (1953), "'the most important single illustration'" of prudential mootness); *Ali v. Cangemi*, 419 F.3d 722, 723–25 (8th Cir. 2005) (en banc) (discussing prudential mootness); *Allende v. Shultz*, 845 F.2d 1111, 1121–22 (1st Cir. 1988) (Breyer, J., concurring); *In re General Motors LLC Ignition Switch Litig.*, No. 14-MD-2543(JMF), 2016 WL 3920353, at *40–41 (S.D.N.Y. July 15, 2016) (Furman, J.).

claims as prudentially moot, *id.* at 1215.  It did so because Toyota had already announced a recall pursuant to the National Traffic and Motor Vehicle Safety Act, which obligated Toyota to notify owners of the defect and repair or replace parts without cost, and the Department of Transportation was overseeing the recall.  *Id.* at 1209 (noting the agency's power to issue "stiff fines"); *see also id.* at 1211.  The court reasoned that there was "not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits." *Id.* at 1211 (observing that, *inter alia*, plaintiff received the relief she sought; "we might invite inter-branch confusion and turf battles;" and court intervention would increase transaction costs and diminish the incentive to manufacturers to initiate recalls).

Here, on the one hand, this is not a classic case for prudential mootness insofar as other branches of government have not secured for Plaintiffs Kurtz or Honigman the injunctive relief they seek (and Kimberly-Clark has no intention of taking its flushable wipes off the market or removing their "flushable" representation).  On the other hand, many of the equities that support prudential mootness apply here.  This is a situation in which regulatory events (all of which occurred well after the filing of the complaint and the majority of which occurred after oral argument on class certification) have "overtake[n] [this] lawsuit." *Id.* at 1210.  As this Court has recognized, the FTC is acting in the arena implicated by Dr. Kurtz's and Ms. Honigman's suits and more broadly across the industry.  The agency has promulgated a standard for flushability, which counsel for Kurtz and Honigman has recognized should govern the industry going forward, and manufacturers must comply with that definition or risk significant injunctive relief and other penalties being imposed by the FTC.  *See Nice-Pak* Final Order, 2015 WL 7009345, at *15; FTC Ltr. to L. Levy [*Belfiore*, D.E. 184-2] at 2.

Moreover, after assessing the performance of Kimberly-Clark's flushable wipes pursuant to that new definition, the FTC found that Kimberly-Clark's labeling and advertising for its past and current wipes required no relief.  *See* D.E. 228-1.  Thus, this is a situation in which allowing claims for injunctive relief would instigate turf battles between different branches of the federal government over the proper regulation of this industry—and more specifically the regulation of particular manufacturers within it—and essentially nullify the case-by-case determinations the FTC already has made (as to Kimberly-Clark and Nice-Pak) and is continuing to make regarding other manufacturers.[10]  While this Court therefore could exercise its equitable discretion to dismiss Kurtz and Honigman's individual injunctive relief claims as prudentially moot—and were these cases in a different posture, Kimberly-Clark might affirmatively advocate for that relief—Kimberly-Clark believes there are doctrinally cleaner and more efficient avenues for advancing these two cases toward resolution.

> **2.    The Reasoning For a Finding of Prudential Mootness Equally Requires a Finding that a Rule 23(b)(2) Class for Injunctive Relief is Not Appropriate.**

While this may be an unusual case in which to find prudential mootness (which is itself an unusual and infrequently applied doctrine), the same regulatory events and equitable considerations this Court already has identified as a potential basis for mootness—especially when considered in combination with the rest of the facts relevant to injunctive relief, *see supra*

---

[10] Plaintiff Kurtz would apparently have this Court override the determination of the FTC regarding Kimberly-Clark's flushable wipes.  Kurtz would have this Court regulate Kimberly-Clark's flushable wipes in the same manner as the FTC regulated the former Nice-Pak products against which the agency obtained injunctive relief (despite that the FTC chose not to even seek relief against Kimberly-Clark).  Even if Kurtz and Honigman were advocating for removal of the "flushable" label alone, this perversely would effectively would put Kimberly-Clark's flushable wipes on the same plane as non-flushable wipes such as baby wipes that Plaintiff's own witness recognized are "indestructible" and which the recently published New York City collection study (like others) found in the sewers in exponentially greater numbers than flushable wipes—indeed, infinitely greater numbers than Kimberly-Clark's flushable wipes.

at p. 10 n.8 (Kurtz's lack of Article III standing); *infra* at pp. 24–25—easily demonstrate that this is an improper case for Rule 23(b)(2) certification.[11]  Once class certification is denied, the equitable considerations that this Court already has acknowledged make this a straightforward situation in which to deny injunctive relief on Kurtz and Honigman's individual claims.[12]

Put simply, certification of a Rule 23(b)(2) class should be denied and *then* the individual claims for injunctive relief should be denied because this is a case in which permanent injunctive relief never will satisfy the demands of equity—even if Plaintiff Kurtz or Honigman were to prevail on one of his or her underlying causes of action.  *See supra* at p. 8 & n.5 (collecting cases); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–93 (2006) (movant must show that an injunction accords with equity because it does not follow automatically from prevailing on the underlying cause of action); *W.T. Grant*, 345 U.S. at 633 (movant must "satisfy the court that relief is needed" in equity); *Samms v. Abrams*, --- F. Supp. 3d ---, No. 15-cv-2741 (JSR), 2016 WL 4045473, at *1–3 (S.D.N.Y. July 28, 2016) (denying permanent injunction where plaintiff was adequately compensated with money damages) (citing *eBay*, 547 U.S. at 391).

---

[11] What is more, addressing and denying class certification is far more likely to head-off turf battles between courts and the FTC (including the possibilities that a court will override the FTC's regulatory determinations through what is effectively a one-off state standard for flushability rather than a national system of regulation) than a dismissal of the injunctive relief claims prior to deciding certification.  *See supra* at p.9 & nn.6–7.

[12] Unlike a motion to dismiss or for summary judgment, a motion to deny injunctive relief is not expressly based in the Federal Rules.  Rather, courts hear and grant such motions at whatever stage of proceedings it becomes apparent that, as here, equity would not support an injunction. *See, e.g.*, *Blue-Sky v. Gomez*, 46 F.3d 1138 (table), 1995 WL 21399, at *1 (9th Cir. Jan. 19, 1995) (recognizing that defendants filed a "motion to deny [plaintiff's] request for injunctive relief" and holding that the district court "properly denied [plaintiff's] request for injunctive relief."); *Nat'l Fed'n of Fed. Employees v. Weinberger*, 818 F.2d 935, 939 (D.C. Cir. 1987) (discussing defendants' motion to deny a preliminary injunction); *Punnett v. Carter*, 621 F.2d 578, 580-81 (3d Cir. 1980) ("The district court granted the motion to deny the preliminary injunction . . . . The plaintiffs appeal."); *Jackson v. Am. Bar Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976) (per curiam, Kennedy, J. on panel) (discussing plaintiffs' appeal from "the motion to deny the injunction [which] was granted").

Plaintiffs Kurtz and Honigman cannot satisfy the four-factor test courts of equity require even prevailing parties to meet in order to obtain injunctive relief:  (1) irreparable injury; (2) inadequate remedy at law; (3) a balance of hardship that tips in his favor; and (4) that an injunction would serve the public's interest.  *See*, *e.g.*, *eBay, Inc.*, 547 U.S. at 389; *SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 296 (2d Cir. 2014); *Salinger v. Colting*, 607 F.3d 68, 77 & n.7 (2d Cir. 2010).

### a.  Kurtz And Honigman Cannot Show Irreparable Injury Or Injury That Lacks an Inadequate Remedy at Law.

Plaintiffs Kurtz and Honigman have not suffered an irreparable injury *or* injury that lacks a remedy at law.  On the contrary, Kurtz's plumbing has already been repaired and Kimberly-Clark can, and has offered to, make either Plaintiff whole by paying their requests for damages. This is the antithesis of irreparable injury lacking a remedy at law.  *See*, *e.g.*, *Samms*, 2016 WL 4045473, at *2 (rejecting the plaintiff's argument that he was entitled to a "consumer-oriented" injunction after a jury verdict for damages that "adequately remedied" defendant's alleged harm to the plaintiff); *Koch v. Greenberg*, 14 F. Supp. 3d 247, 284 (S.D.N.Y. 2014) (denying permanent injunction notwithstanding that plaintiff prevailed on his GBL §§ 349, 350 claims, because plaintiff had been made whole by monetary damages), *aff'd*, 626 F. App'x 335 (2d Cir. 2015); *Joe Hand Prods., Inc. v. Zafaranloo*, No. 12-cv-3828(RRM)(RER), 2014 WL 1330842, at *1, *6–7 (E.D.N.Y. Apr. 1, 2014) (denying plaintiff's request for a permanent injunction based on, *inter alia*, its failure to show irreparable harm); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-cv-3761(KAM)(SMG), 2013 WL 2352855, at *9 (E.D.N.Y. May 29, 2013) (similar); *Bill's Birds Inc. v. Trademarketing Res. Inc.*, 920 F. Supp. 2d 357, 364 (E.D.N.Y. 2013) (applying *eBay* and dismissing plaintiffs' claim for injunctive relief where they failed to articulate how

their alleged antitrust "injury is irreparable, that a remedy at law would not be adequate, or that the balance of hardship tips in their favor").[13]

### b.  The Balance Of Hardships Does Not Favor Injunctive Relief

Dr. Kurtz will not suffer *any* harm if this Court denies an injunction (even without discovery as to her claims, it seems inconceivable that Honigman is differently situated).  *See*, *e.g.*, *Koch*, 14 F. Supp. 3d at 284 (denying permanent injunction on plaintiff's GBL §§ 349, 350 claims upon which he prevailed at trial, reasoning he will not "continuously suffer as a result of [defendant's] violations, as he has been paid in full").  He can continue to refrain from buying Kimberly-Clark's flushable wipes, or if he chooses to buy Kimberly-Clark flushable wipes again, he will be purchasing a product that the FTC has evaluated under a standard Plaintiff has adopted as his own.  Whatever Kurtz believed about flushable wipes in the past, he now believes that the FTC's definition of flushability is the appropriate definition to apply going forward.  The FTC is actively applying that definition to flushable wipes products and already has determined that Kimberly-Clark's wipes meet its standard.

In contrast, Kimberly-Clark would suffer significant hardship if an injunction issues that requires it to change any aspect of the labeling or formulation that FTC has already considered. *See*, *e.g.*, *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 445–446 (E.D.N.Y. 2013) (denying request to enjoin allegedly false and misleading marketing statements, noting "Defendants would be forced to execute product alteration on a national scale," a burden that

---

[13]Also, for the same reason Plaintiff Kurtz lacks Article III standing to obtain an injunction, he cannot satisfy any of the first three *eBay* factors.  His awareness about the labeling of Kimberly-Clark's flushable wipes and his lack of intent to purchase and flush the products going forward means that he is not in danger of suffering a future irreparable injury; he only has a past alleged injury remediable by damages; and he personally will not suffer any hardship (in contrast to the hardship Kimberly-Clark would experience if an injunction issued).  *See* Br. Regarding Further Administration [D.E. 244] at 7–8; *see also supra* at p. 10 n.8, *infra* at pp. 24–25.

"clearly outweighs that of Plaintiffs in continuing to pay a possibly premium price for Defendant's products"). An injunction would also cause Kimberly-Clark severe competitive harm. Kimberly-Clark's wipe has not only been recognized as flushable,[14] but it also has been widely recognized, including by Kurtz's Science Day witness Rob Villee, as the best performing flushable wipe on the U.S. market. *See* Villee Ltr. [D.E. 254-1]; Class Cert. Hearing Exs., Tabs B–J. If an injunction issues, even if Kimberly-Clark's flushable wipes are not ordered withdrawn from the market, the very Kimberly-Clark wipes that the FTC considers flushable would suddenly appear to consumers to be no different from (i) the former Nice-Pak wipes against which the FTC took action, and (ii) non-flushable baby wipes.

### c.   An Injunction Will Not Serve The Public's Interest.

The Court reiterated during the December 7, 2016 hearing that the FTC's activity in regulating flushable claims better "protect[s] this country's one national market constitutional policy" and better serves as a "guide for the administration" of justice than would state-by-state standards, as would occur if Kurtz obtained an injunction here. Dec. 7, 2016 Tr. at 3:23–4:5. Those findings are consistent with the Court's recognition that the FTC "probably can protect consumers more effectively than this court," *Belfiore*, 311 F.R.D. at 38, and its concern about the "substantial danger of inconsistent rulings among various courts and the FTC," *id.* at 79.

Now that the FTC has articulated a standard for "flushable," considered Kimberly-Clark wipes, and determined no action is necessary against Kimberly-Clark, *any* injunction against

---

[14] As previously discussed, the FTC has recognized that Kimberly-Clark's flushable wipes have always been distinguishable from the former Nice-Pak wipes that were the subject of the FTC's enforcement action and consent decree. And consistent with the evidence adduced throughout this action, there is no suggestion whatsoever that Kimberly-Clark's flushable wipes are remotely analogous to the numerous wipes on the market that are not advertised or labeled as "flushable" (*e.g.*, baby wipes). *See, e.g.*, K-C Demonstrative Exhibits for Hearing on Motions to Grant and Deny Class Certification, Tab D (Oct. 9, 2015) ("Class Cert. Hearing Exs.").

Kimberly-Clark would be the kind of inconsistent ruling about which this Court expressed

concern.  This is particularly so because banning Kimberly-Clark's flushable wipes or removing

the word "flushable" from labels could make matters far worse for consumers and municipalities.

*Cf. Aurelius Capital Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98, 108 (2d Cir. 2016)

(affirming decision to lift injunction, and explaining that, under the public interest factor, it was

appropriate to consider parties not before the court, including "bondholders . . . and the

Argentine people," and stating "[t]he district court's consideration of the economic welfare of

Argentina and its citizens was also proper").  As Plaintiff's witness Mr. Villee has stated, for

example, "[i]f flushable wipes . . . leave the marketplace the consumer will seek out alternatives,

namely baby wipes. . . . Regulating flushable wipes instead of personal hygiene wipes could

actually cause the problems in our sewers to become worse."  Class Cert. Hearing Exs., Tab F at

PARSA00005 ¶ 8; *see also*, *e.g.*, Ned Lynch, *Wipes wreak havoc on wastewater plants*, the Day

(May 7, 2016) http://www.theday.com/local/20160507/wipes-wreak-havoc-on-wastewater-plants

("'What we don't want is a ban on wipes being called flushable,' said [Cynthia] Finley, [director

of regulatory affairs at the National Association of Clean Water Agencies], because research has

shown people instead will buy baby wipes — a plastic product that will cause just as much, if not

more, damage."); *see infra* § II; *see also* K-C Opp. Class Cert. [D.E. 103, 124] at 38–39; *cf.*

*Koch*, 14 F. Supp. 3d at 284 (rejecting GBL §§ 349, 350 claims for injunctive relief as contrary

to the public interest:  "[a]n injunction permanently compelling [defendant] to speak about

'questions, doubts, or concerns' regarding his [product] . . . is beyond the pale"); *Salinger*, 607

F.3d at 82–83 (noting public interest in free expression and that the First Amendment may be

impinged by injunctions regulating speech).  Therefore, Kurtz and Honigman cannot sustain

claims for injunctive relief, and this Court should invoke its equitable discretion to deny certification of a class pursuant to Rule 23(b)(2).

Accordingly, for these reasons, those stated below and those previously stated, the Court should (i) deny certification of the (b)(2) class, and (ii) after denying certification, deny Kurtz's and Honigman's claims for injunctive relief or, in the alternative, dismiss them as prudentially moot.[15]

### B.  A Ruling On Mootness Alone Would Not Dispose Of The *Kurtz* Or *Honigman* Actions Because It Would Not Apply To The Damages Claims.

Although this Court suggested during the December 7, 2016 hearing that the present cases may be completely moot in light of the FTC's actions, Kimberly-Clark has not been able to find support for the proposition that mootness—whether Article III or prudential—would presently apply to Plaintiffs Kurtz and Honigman's *damages* claims.

First, because both Plaintiffs Kurtz and Honigman have live damages claims, their cases are not moot under Article III of the Constitution.  As the Second Circuit has summarized: "'Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable.'"  *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987) (quoting 13A C. Wright et al., *Fed. Prac. & Pro.* § 3533.3 at 262 (1984 ed.)); *id.* (collecting authority).[16]

---

[15] Kimberly-Clark fully incorporates its Memorandum in Support of its Motion to Deny Class Certification, its Opposition to Class Certification, and all documents filed in connection with those briefs, *see* D.E. 81–82, 103–05, 124–26, 141–42, as well as Kimberly-Clark's submissions after class certification briefing closed, *see* D.E. 212, 228, 244, 254; *see also* Dec. 7, 2016 Tr. at 5:2–3 (the parties "can rely upon any papers already before the [C]ourt").

[16] *See*, *e.g.*, C.A. Wright et al., 13C *Fed. Prac. & Proc. Juris.* § 3533.3 (3d ed. 2016) ("Damages should be denied on the merits, not on grounds of mootness. . . . Untold numbers of cases illustrate the rule that a claim for money damages is not moot . . ."). As flimsy as Dr. Kurtz's claim is on the merits, Kimberly-Clark does not understand it to present a lack of "viability" as this concept is understood in the context of constitutional mootness.  And Ms. Honigman's claim has not been subject to discovery.

Moreover, as the Supreme Court has recently held (and as this Court recognized years before), a defendant has limited ability to unilaterally moot a putative class representative's claim prior to a decision on class certification. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670–71 (2016) (unaccepted settlement offer does not moot named plaintiff's claim); *id.* at 672 ("While a class lacks independent status until certified, a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted.") (internal citation omitted).[17]

Second, Kimberly-Clark has found no authority supporting the use of the prudential mootness doctrine to dismiss a damages claim or action. On the contrary: "All the cases in which the prudential mootness concept has been applied have involved a request for prospective equitable relief by declaratory judgment or injunction." *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F. 3d 1487, 1492 (10th Cir. 1993) (citing cases) ("[This case] is essentially a suit for damages against private defendants as a remedy for past misconduct. Thus, the doctrine of prudential mootness does not apply."). Consistent with this, several months ago, Judge Furman rejected GM's argument that the recall of its vehicles rendered the plaintiffs' claims prudentially

---

[17] *See also*, *e.g.*, *Ritz v. Mike Rory Corp.*, 959 F. Supp. 2d 276, 280–81 (E.D.N.Y. 2013) (Weinstein, J.) (holding in the FLSA context that an offer of judgment does not moot a case "if there is a *pending* motion for conditional certification and additional individuals have opted in the litigation") (emphasis in original); *Brady v. Basic Research, LLC*, No. 13-cv-7169(SJF), 2016 WL 1735856, at *2 (E.D.N.Y. May 2, 2016) ("Other courts — within and without the Second Circuit — are in agreement that a defendant is no longer able to moot a putative class action by tendering payment to a named plaintiff and asking the court to enter judgment against it over the plaintiff's objection."). As Kimberly-Clark repeatedly has stated, it is willing to make Plaintiffs Kurtz and Honigman whole pursuant to its usual customer reimbursement policies. D.E. 254 at 2 & n.2 (citing Oct. 9, 2015 Tr. [D.E. 204] at 40:19–41:6, 77:10–25). Neither Kurtz nor Honigman—unlike the former Sweeney plaintiffs in Florida, *see id.* at 2 & D.E. 254-2—has accepted Kimberly-Clark's offer.

moot, reasoning that the plaintiffs "seek to recover damages[,] not to obtain declaratory and injunctive relief."  *General Motors*, 2016 WL 3920353, at *40.

Because (i) prudential mootness will not dispose of Plaintiffs Kurtz's and Honigman's damages claims, and (ii) Article III mootness is difficult to achieve until after a class certification denial, *see Leyse v. Lifetime Enter. Servs.*, 171 F. Supp. 3d 153, 154-55 (S.D.N.Y. 2016) (allowing defendant to moot plaintiff's damages claim after the denial of class certification where defendant deposited a full settlement with the court),[18] Kimberly-Clark respectfully submits that this Court should proceed by first resolving Kimberly-Clark's pending motion to deny certification.  *See infra* § II.  Of course, once class certification is denied (and after any appeal is decided), it is extremely likely that the *Kurtz* and *Honigman* actions will amicably resolve pursuant to Kimberly-Clark's customer reimbursement policy.  *Cf. Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 151 (E.D.N.Y. 2012) ("'[R]ational class members would not choose to litigate a multiyear class action just to procure refunds that are readily available here and now.'").

## II.   THE FTC'S ACTIONS UNDERSCORE WHY CLASS CERTIFICATION MUST BE DENIED.

The FTC's newly announced definition of "flushable" in its the *Nice-Pak* Final Order, 2015 WL 7009345, at *3-4, its closure of its investigation regarding Kimberly-Clark after applying that standard to Kimberly-Clark's flushable wipes, *see* D.E. 227 & 228-1, and the

---

[18] Even if Kimberly-Clark now could moot Plaintiffs Kurtz's and Honigman's claims by making them whole, it would do nothing to head-off the possibility that their counsel would bring suits by other individual plaintiffs seeking class certification.  Indeed, as this Court may recall, Plaintiffs' counsel previously represented that he had at least two clients with potential claims against Kimberly-Clark, and sought to have them participate in class certification-related discovery without making them parties to the *Kurtz* action.  *See* Pl.'s Ltr. [D.E. 52] at 3–4.  This Court did not allow those additional individuals to be added to proceedings, but, assuming these individuals' claims are timely, there would be nothing to preclude Plaintiffs' counsel from filing new putative class actions in this or other courts with those individuals as class representatives.

agency's continued policing of the industry confirm that this Court should deny certification of the Rule 23(b)(3) and 23(b)(2) classes. *See generally Ramirez v. Dollar Phone Corp.*, 668 F. Supp. 2d 448, 467 (E.D.N.Y. 2009) (Weinstein, J.) (denying certification of a Rule 23(b)(2) class where "injunctive relief . . . would engage the court in inappropriate detailed continuing supervision of the industry"); *id.* at 468 (denying certification of Rule 23(b)(3) class because to do otherwise "would be unfaithful to the premise and reason for the class action—considerations of equity and good judgment").

### A. The FTC's Prospective Definition Of "Flushable," Which Also Encompasses Municipality Concerns Unrelated To Plaintiffs' Claims, Cannot Support Certification.

#### 1. The FTC's Definition Does Not Evidence Each Individual Class Member's Understanding of "Flushability" Or Performance In Each Individual Class Member's Home.

As discussed *supra* at pp. 3–5, the FTC's definition is prospective, and it also encompasses municipality—not merely consumer-specific—considerations. Therefore, it has no bearing on Plaintiff Kurtz's interpretations (or those of the putative *consumers* he seeks to represent) of Kimberly-Clark's representations (let alone their materiality), and whether its wipes met those representations, years earlier. *See, e.g.*, K-C Br. Regarding Further Administration [D.E. 244] at 2-4; Oct. 9, 2015 Tr. [D.E. 204] at 30:6–9. This problem is especially acute with respect to Plaintiff Kurtz's damages claims and request for a Rule 23(b)(3) class, which are solely retrospective. *See supra* at pp. 3–5.

As shown *supra* at p. 5 (discussing D.E. 206), counsel for Plaintiffs Kurtz and Honigman has now wholeheartedly adopted the FTC standard set forth in the *Nice-Pak* Final Order. But that decision has significant consequences for the putative Rule 23(b)(3) class. There is *no* evidence in the record—whether through consumer surveys or otherwise—that *any* consumer, including Dr. Kurtz, understood "flushable" in the way the FTC defined the term *eight years*

after the class period commenced and several years after the events giving rise to Kurtz's own claims.

On the contrary, during class certification briefing, Science Day proceedings, and oral argument on class certification, Plaintiff Kurtz, his Science Day witness, and his counsel did not—and could not—suggest that reasonable consumers then had this understanding of flushable.[19]  Instead, as discussed *supra* at pp. 4 & n.2, Dr. Kurtz himself, his Science Day witness Mr. Villee, and Kurtz's counsel all advocated a definition of flushable that was in the eye of the beholder, and which to determine whether it was satisfied depended on whether a wipe performed without incident in a particular individual's plumbing.[20]  They also made no showing that reasonable consumers at the time relevant here considered the municipality-focused concerns embedded in the FTC's definition when consumer purchasers assessed flushability.[21]

---

[19] As this Court recognized, "myriad" competing definitions of flushable were introduced, *Belfiore*, 311 F.R.D. at 48, but Plaintiffs did not link any definitions to what reasonable consumers actually believed.  *See supra* at p. 4 n.2.

[20] Indeed, Plaintiff Kurtz testified that he understood "flushable" to have a meaning much narrower than that adopted by the FTC:  "[F]lushable would mean that I take a product, flush it down the toilet, and it would not cause any problem to any part of my flushing system, any pipes."  Kurtz Dep. [D.E. 86] at 37:14–20.  Plaintiff's Science Day witness Mr. Villee explained that unlike municipalities (and unlike the FTC), consumers do not consider "flushable" to encompass concerns regarding municipal wastewater equipment: "[T]here's probably multiple definitions [of "flushable"] . . . .  For the consumer, they just want it to go away when they push the little silver handle on the big white thing in the bathroom.  As long as it goes away and doesn't cause them problems they consider the product to be flushable . . ."  Science Day Tr. (July 21, 2015) at 47:13–20.  Indeed, Villee's documents reinforced his view that, at the time relevant to Plaintiff Kurtz's and the absent class members' claims, for the government "there is no definition" of "flushable," whereas for consumers the definition was "it goes down the toilet and doesn't cause problems in the house sewer lines."  Science Day (July 21, 2015) Court Ex. 4 (PARSA003196).  Similarly, as quoted *supra* at p. 4 n.2, at the class certification hearing, Kurtz's counsel acknowledged that a consumer's definition was individualized, based on the wipe's performance in "*my house*," "*my home*," and, where applicable, "*my septic system*."

[21] In fact, the only evidence was to the contrary.  *See, e.g.*, Science Day (July 21, 2015) Tr. 47:10–16 (Villee direct examination:  "Q. Now, do you see a difference in the definition of flushability between the per[spective] of a . . . homeowner and the municipalities?  A. Yeah, there's probably multiple definitions[:] there's one for the consumer, there's one for the waste

In sum, the FTC's definition of "flushable" does nothing to eliminate the individualized inquiries that would be required to determine, *inter alia*, consumer class members' interpretations of Kimberly-Clark's representations and whether Kimberly-Clark's wipes performed in a manner for those individual class members at their individual homes that demonstrates the representations were accurate.  *See*, *e.g.*, K-C Br. Regarding Further Administration [D.E. 244] at 2.  Therefore, this Court should deny certification of a Rule 23(b)(3) class.

### 2.   The FTC's Definition Does Not Solve the Fatal Flaws in Plaintiffs' Proposed Rule 23(b)(2) Class.

Additionally, the FTC's forward-looking and municipality-implicating definition of "flushable" cannot support Kurtz's effort to certify a Rule 23(b)(2) class seeking injunctive relief.  At the threshold, Plaintiff Kurtz's effort to obtain certification of a Rule 23(b)(2) class is defeated by his Article III standing problem.  *See*, *e.g.*, K-C Br. Regarding Further Administration [D.E. 244] at 7–8 (discussing *Nicosia*, 834 F.3d at 239).  As this Court acknowledged, "'[a]lthough past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.'"  Sept. 26, 2016 Tr. [D.E. 251] at 6:23–7:2 (quoting *Nicosia*, 834 F.3d at 239).  Plaintiffs in these cases, who are "not satisfied with the product" and "are not going to buy it again" in the future, therefore lack

---

water municipalities and there's probably a third for the manufacturers."); *id.* at 74:23–75:3 (agreeing on cross-examination that "consumers generally don't have any understanding of what their particular municipal water system is or is not capable of handling"); D.E. 116-12 at PARSA243 ("Consumers generally do not think beyond their home system when determining what to flush."); *see also* March 31, 2015 Tr. 7:3-4 (The Court: "Municipality is out of the case, never been in it.").

the requisite Article III standing to seek an injunction.  *Id*. at 7:4–5.[22]  Certification of an

injunctive relief class can and should be denied on that basis alone.  *See*, *e.g.*, *Hughes*, 317

F.R.D. at 356 (denying certification of a Rule 23(b)(2) class given, *inter alia*, consumer class

plaintiff's lack of standing to seek injunctive relief); *In re Avon Anti-Aging Skincare Creams &*

*Prod. Mktg. & Sales Pracs. Litig.*, No. 13-cv-150 JPO, 2015 WL 5730022, at *8 (S.D.N.Y. Sept.

30, 2015) (same), *appeal pending on other grounds*, No. 16-1879 (2d Cir.).

The FTC's prospective definition of flushable, which has no application to Dr. Kurtz or

the absent members of the class he defined, bolsters the conclusion that a (b)(2) class should be

denied for lack of standing.  Indeed, it would be nonsensical—and would run afoul of *Nicosia*—

for Plaintiff Kurtz or other putative class members who had no knowledge of the FTC definition

to be deemed to have standing to seek injunctive relief to ensure that flushable wipes sold in the

future to individuals not encompassed by his class definition adhere to the new FTC standard.

Such an injunction would do nothing to "redress[]" Plaintiff Kurtz's alleged injuries or those of

members of his putative class.  *Nicosia*, 834 F.3d at 239; *see also*, *e.g.*, *Tomasino v. Estee*

*Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014).  Accordingly, class certification

under Rule 23(b)(2) must be denied.

Further, on a going forward basis, the FTC has defined flushable and applied that

definition to Kimberly-Clark (and other manufacturers), and consumers therefore know precisely

what it means for a wipe to be marketed as flushable.  These circumstances both obviate the need

for the injunctive relief Plaintiff Kurtz has requested, and would be contrary to public policy

---

[22] *See also* D.E. 244 at 7–8; K-C Opp. Mot. Class Cert. [D.E. 103, 124] at 39–41 (collecting
additional authority supporting Plaintiffs' lack of standing to seek an injunction); K-C Mem
Supp. Mot. Deny Class Cert [D.E. 85, 141] at 39–40 (same).

insofar as the injunctive relief Kurtz sought would override the FTC's determinations. *See supra* at pp. 16–19.

**B.  Even If The FTC's Definition Of "Flushable" Were Relevant To Putative Class Members, The FTC's Actions Are Fatal To Class Certification.**

Even if the FTC's definition of "flushable" applied to Plaintiff Kurtz and absent members of his putative class—which it does not—the FTC's closure of its investigation regarding Kimberly-Clark wipes without any finding or allegation of a violation, along with all evidence adduced in this case through class certification, the Science Day hearings, and additional party submissions, demonstrate that Plaintiff Kurtz's attempt to certify classes pursuant to Rules 23(b)(3) and (b)(2) fail for multiple, independent reasons.

For example, Plaintiff Kurtz has not demonstrated by a preponderance of evidence how he possibly could show—indeed, he cannot—that all (or even most) Kimberly-Clark flushable wipes purchased and used by class members are not "flushable" within the FTC's definition. This therefore means, at a minimum, that Plaintiff Kurtz cannot establish classwide injury (let alone *any* injury for the vast majority of proposed class members) based simply on their purchase of Kimberly-Clark flushable wipes.  Consumers, if any, are injured because the wipe did not perform in their individual plumbing, and any such injury (whether in the form of plumbing damage or supposed overpayment for a product that underperformed) is necessarily individualized.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011) ("[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury") (internal quotations omitted); K-C Mem. Supp. Deny Class Cert. [D.E. 85, 141] at 10, 13–14 (Kurtz successfully used Kimberly-Clark's wipes for approximately a decade, and continued to purchase them after he stopped flushing them); *cf.* Science Day Tr. (July 21, 2015) at 72:25–73:5 (Villee: "PARSA doesn't experience any sort of clogging from wipes.").

In all events, individualized questions regarding any injury (and cause thereof) or damages that class members did allegedly suffer would predominate over classwide inquiries, and class litigation would not be a superior means of adjudicating Plaintiffs' claims.  Finally, consistent with the showings *supra* § I, there is no basis for Rule 23(b)(2) certification, because, even setting aside Kurtz's lack of standing, certification would simply put the case on a path whereby Plaintiff sought to overrule the reasoned conclusions reached by the FTC as to Kimberly-Clark's flushable wipes.

As underscored by the FTC's prospective definition of "flushable" and the closure of its investigation regarding Kimberly-Clark flushable wipes, and as this Court has already previewed, class certification of Plaintiffs' claims should be denied.  *See* Sept. 26, 2016 Tr. [D.E. 251] at 6 ("It is clear to me based on what we have heard to date that this cannot be certified as a damage case," and "there is no standing [to seek injunctive relief] because the only problem we are now dealing with since [a] damage class action won't fly in this case is a prospective order injunction, just as in this case from the . . . Second Circuit," such that "it seems to me there is very little we can do with this case") (citing *Nicosia*, 834 F.3d 220).

## 1.   Plaintiffs Cannot Show That All Class Members' Kimberly-Clark Flushable Moist Wipes Do Not Satisfy The FTC's Definition of "Flushable."

After this Court referred this litigation to the FTC for "an appropriate definition of 'flushable,'" D.E. 183 at 2, and after the FTC issued that definition and ordered Nice-Pak's compliance, *Nice-Pak* Final Order, 2015 WL 7009345, the FTC requested substantiation from Kimberly-Clark to demonstrate its compliance with that definition.  *Supra* at pp. 5–6.  After receiving such substantiation, the FTC closed its investigation of Kimberly-Clark's advertising for its flushable moist wipes without finding or alleging any violation of the flushability standards.  *See* FTC Closing Letter [D.E. 228-1]; Cole Decl. ¶¶ 6–11; K-C Ltr. [D.E. 228]

(providing further context regarding the issuance of FTC's Closing Letter); Oct. 9, 2015 Tr.
[D.E. 204] at 37:1–38:11 (describing Kimberly-Clark's interaction with, and productions to, the
FTC).[23]  In light of this sequence of events, Kimberly-Clark reasonably interprets FTC's lack of
finding of any federal violation, closure of its investigation, and decision not to seek any restraint
of Kimberly-Clark's marketing of its flushable wipes (whereas the agency did the opposite as to
Nice-Pak's former wipes) to mean that Kimberly-Clark flushable wipes meet the definition of
"flushable" against which they were measured by the FTC.  But even if not dispositive of
Dr. Kurtz's or every individual's claim for damages against Kimberly-Clark, *cf.* GBL § 349(d),
FTC's actions show, at minimum, that Kurtz cannot prove that *all* (or even most) class members'
flushable wipes are not "flushable" as defined by the FTC.  Indeed, having pursued and obtained
injunctive relief against Nice-Pak based on an alleged failure to comply with FTC's definition of
"flushable," and having assured the public that it would be policing unlawful representations
regarding flushability, it would be inconceivable—if all Kimberly-Clark flushable wipes
likewise fell short of the same definition—that FTC would close its investigation of Kimberly-
Clark without alleging any violation of law.

    While these deficiencies in Dr. Kurtz's ability to show common, classwide injury (as well
as causation and the like), or that common issues will predominate, also implicates the merits of
his claims, the court's "obligation to make such determinations [regarding each Rule 23
requirement] is not lessened by overlap between a Rule 23 requirement and a merits issue, even a
merits issues that is identical with a Rule 23 requirement."  *In re IPO Sec. Litig.*, 471 F.3d 24, 41
(2d Cir. 2006).  On the contrary, the Second Circuit has specifically found as a basis for denying

---

[23] Notably, Plaintiff Kurtz previously attempted to rely on the pendency of FTC's investigation
to suggest that Kimberly-Clark products were *not* flushable.  *See* Pl.'s Mem. Supp. Mot. Class
Cert. [D.E. 81, 189] at 10; K-C Opp. Mot. Class Cert. [D.E. 103, 124] at 5-6.

class certification that plaintiffs, *inter alia*, failed to "ma[k]e the requisite showing under *In re IPO* that they could, at trial, marshal facts sufficient to permit them to rely upon [their legal theory]." *McLaughlin v. Am. Tobacco*, 522 F.3d 215, 229 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *id.* at 230 ("Under *In re IPO,* plaintiffs must produce persuasive facts at trial that will enable them to prove [their theory]. . . . They have failed to persuade us that they can do so.").

Put differently, Dr. Kurtz faces a formidable burden.  He has to prove by a preponderance of the evidence that classwide inquiries exist and predominate, and he also has to give this Court reason to believe that he can marshal evidence to prove the elements of his and the putative class's substantive claims by a preponderance of the evidence.  These hurdles are insurmountable here.  The FTC's closure of its investigation regarding Kimberly-Clark is merely one illustration of the problem.  The FTC's actions are entirely consistent with the body of evidence introduced in this litigation.  As another example, Plaintiff's witness Rob Villee explained that Kimberly-Clark wipes "break apart" within 30 minutes, Class Cert. Hearing Exs., Tab C (PARSA002159, 2161), "rapidly lose[] strength when wet," *id.*, Tab F ¶ 2b (PARSA00005), and break into "unrecognizable pieces in about 20 minutes," *id.*, Tab H (PARSA000002); *see also* Villee Ltr. [D.E. 254-1] (stating he was "impressed by the amount of dispersability, or how quickly the Kimberly Clark products break apart"); *compare Nice-Pak* Final Order, 2015 WL 7009345, at *4 (requiring that a wipe labeled flushable "disperse[] in a sufficiently short amount of time after flushing").[24]

---

[24] Although Plaintiff Kurtz's counsel and Mr. Villee himself have tried to rewrite Villee's previous statements and testimony on the fly after seemingly having been caught unaware of the dangers of making Villee the spokesman for Plaintiffs' cause against Kimberly-Clark, *see* D.E. 217 & 217-1, they cannot show that this is an appropriate case for Rule 23(b)(3) certification under the foregoing standards from *IPO* and *McLaughlin*.  Mr. Villee, for instance, recently

Finally, the FTC's and Mr. Villee's findings are also consistent with the recent collection study conducted by New York City.  As Kimberly-Clark previously brought to this Court's attention, not a single Kimberly-Clark flushable moist wipe was found in the New York City sewer systems, and only 1.2%–1.88% of material found in the sewer system were flushable wipes of any brand.  N.Y.C. Law Dep't, *Forensic Evaluation of Non-Dispersables* (Aug. 15, 2016) [D.E. 254-4] § 7, Tables 2 & 4; Appendix A-B; *see also* K-C Nov. 7, 2016 Ltr. [D.E. 254] at 4 (describing the New York City study).  The disappearance of the Kimberly-Clark wipes is stark evidence that they do precisely what Mr. Villee acknowledged years ago ("break apart" within 30 minutes and break into "unrecognizable pieces"), and what the FTC required in the *Nice-Pak* Final Order.  *See*, *e.g.*, *Nice-Pak* Final Order, 2015 WL 7009345, at *4 (standard); *id.* at *15 (stating: "We believe that the final order will put manufacturers and marketers on notice of that the required substantiation for flushable claims implicates 'real world' conditions").

### 2. Plaintiffs' Expert Mr. Weir Does Not Support Plaintiffs' Classwide Injury Or Damages Theories.

Plaintiff's putative expert, Mr. Weir, has done nothing to overcome—but has instead compounded—these commonality deficiencies and individualized issues that would predominate.  *See generally* K-C Br. Regarding Further Administration [D.E. 244] at 5–7

---

attempted to clarify that, in 2013 he did not "describe [Kimberly-Clark's] wipes as 'flushable,'" but rather said "I could '*probably*' classify the particular [Kimberly-Clark] wipes I tested as 'flushable.'"  D.E. 217-1 ¶ 3; *see generally* Class Cert. Hearing Exs., Tab E.  Regardless of Villee's purported belief this is a "[s]ignificant qualification[]," D.E. 217-1 ¶ 3, a statement by Plaintiff's witness that Kimberly-Clark's products "probably" are "flushable" in this setting should leave the Court with  no confidence that plaintiff can "produce persuasive facts at trial that will enable [him] to prove" by a preponderance of the evidence that all Kimberly-Clark wipes are not flushable for the entire class.  *McLaughlin*, 522 F.3d at 230; *see*, *e.g.*, *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.") (internal quotation omitted); *Usher v. Ercole*, 710 F. Supp. 2d 287, 302 (E.D.N.Y. 2010) (using "probable" and "more likely than not" interchangeably).

(discussing Weir's opinion in context of the FTC's *Nice-Pak* Final Order); K-C Opp. Mot. Class Cert. [D.E. 103, 124] at 19–25 (discussing Weir's shortcomings more broadly).  As Kimberly-Clark recently explained, *see* D.E. 244 at 5–7 & nn.3–4, Mr. Weir's opinion is directly contrary to (i) the FTC's own recognitions that products that have marketed as flushable perform in markedly different ways, and (ii) the undisputed fact that Kimberly-Clark's flushable wipes (and other companies' flushable wipes) far outperform baby wipes and other wipes not labeled as flushable on the benchmarks set forth by the FTC.  More particularly, Mr. Weir's price premium model simply assumes—erroneously—that (i) *all* flushable wipes are not, in fact, flushable, Weir Decl. [D.E. 191] ¶¶ 2, 5–6, 19, and (ii) *all* flushable wipes perform in the same manner as wipes not labeled "flushable" *e.g.*, baby wipes, *see id.* ¶ 7, so therefore the "value" that "consumers pay for . . . the 'flushable' claim" can purportedly simply be deducted to find injury and determine damage.  *Id.* ¶ 27; *see id.* ¶¶ 19, 29–30.  This makes no sense.  Given the FTC's actions (*compare Nice-Pak* Final Order, 2015 WL 7009345, *with* FTC Closing Letter as to Kimberly-Clark [D.E. 228-1]) and the rest of the record here, Weir's surmise plainly is not based on sufficient facts and data, let alone a scientifically reliable application of that data.  *See generally* Fed. R. Evid. 702.  If Mr. Weir's opinions are admissible, they do not carry Plaintiff Kurtz's burden of showing, by a preponderance of the evidence, commonality and predominance.

Moreover, Mr. Weir's assumptions dispelled by the FTC's actions and other evidence here pile onto his existing counterfactual conjecture that is inherent in any opinion he might offer about classwide injury or damages, *e.g.*, that every purchase of wipes marketed as flushable is caused by the "flushable" representation and that "flushable" representations are material to all consumers.  *See* Weir Decl. ¶ 8.  In fact, the only record evidence on this subject shows that consumers purchase wipes marketed as flushable for myriad individual reasons, including doing

so without any intention of flushing them.[25]   For instance, Kurtz continued buying Kimberly-Clark's flushable wipes for some time after he had concluded that they were not flushable (the plaintiffs in the recently dismissed *Sweeney* action did the same thing).  *See* D.E. 85, 141 at 13-14, 24; D.E. 103, 124 at 1, 18-19, 21-22.  This, however, is the very circumstance that the Delaware Supreme Court recently held defeats causation pursuant to GBL § 349 as a matter of law.  *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms. L.P.*, 136 A.3d 688, 696 (Del. 2016) (affirming dismissal of GBL § 349 claim, explaining plaintiffs "who continue to pay or reimburse for [the product in question], while claiming they were harmed by allegedly false advertising, are neither 'victims' of the allegedly false advertising nor were they injured by reason of or as a result of it.  They were injured by their own conduct."); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) ("[I]f the person who was allegedly deceived by the misrepresentation (plaintiff or not) would have acted in the same way regardless of the misrepresentation, then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiffs' injury").  At a minimum, it is evidence of the individualized causation issues fatal to certification here, just as they have been in many other GBL §§ 349, 350 cases.[26]

---

[25] *See* K-C Mem. Supp. Mot. Deny Class Cert. [D.E. 85, 141] at 6-7, 23-25; K-C Opp. Mot. Class Cert. [D.E. 103, 124] at 6-7, 12-16; *compare* Weir Decl. [D.E. 191] ¶¶ 39-40 (listing only five relevant attributes of flushable wipes), *with* Ex. I to Joyce Decl. [D.E. 86] at KCC-Kurtz0000687 (consumer survey showing *15* "preference drivers" relevant to purchasers of Kimberly-Clark's flushable wipes, and that "won't cause clogs" and "right balance of price and quality" are in the bottom four).

[26] *See*, *e.g.*, *Avon*, 2015 WL 5730022, at *7 (finding predominance lacking due to individualized causation inquiries related to GBL claims based on representations about product performance, noting that noting that the "[p]urchasing decisions like this one are 'inherently individualized'"); *Ackerman v. Coca-Cola Co.*, No. 09-cv-395(DLI)(RML), 2013 WL 7044866, at *19–20 (E.D.N.Y. July 18, 2013) (recommending denial of a Rule 23(b)(3) class, stating "while there are common questions concerning the reasonable consumer's response to vitaminwater's labeling and marketing, . . . individual questions regarding loss causation would overwhelm them");

Even if some limited set of class members had sustained some sort of injury caused by their purchase of Kimberly-Clark flushable wipes and some sort of damages from their purchase or use of those wipes, most have not, and assigning a static value to the "flushable" representation on product packaging cannot represent classwide damages.  Accordingly, Weir's price premium damages "model falls far short of establishing that damages are capable of measurement on a classwide basis."  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013); *see Hughes*, 317 F.R.D. at 355–56 (denying class certification on predominance grounds where plaintiffs relied on Mr. Weir's opinion regarding a price premium, and explaining that under Weir's supposed methodology—the exact same methodology listed in his report here—he purportedly could "determine the alleged premium of the Products as a whole, [but] none can isolate the premium attribute to Plaintiffs' theory of the case, namely that consumers paid more for the Products due to the [mis]representation" where, like the "flushable" representation during the class period here, the representation "is not an objective term that carries a single definition").  This Court has likewise recognized the shortcomings in Weir's analysis in this case:  "I'm not going to adopt the price premium theory," because "the Second Circuit squashed that" in a case where "we had better statistical and better proof on a price differential theory."  Sept. 26, 2016 Tr. [D.E. 251] at 16:22–17:2 (citing *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010) ("*Zyprexa*")).

---

*Pagan*, 287 F.R.D. at 149, 150–51 (price premium theory did not satisfy commonality or predominance given the individualized causation issues); *Weiner v. Snapple Beverage Corp.*, No. 07-cv-8742(DLC), 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) (denying Rule 23(b)(3) certification of a GBL § 349 class where "[i]ndividualized inquiries would be required to determine, for instance, whether class members were fully informed about the inclusion of HFCS in Snapple beverages, whether they believed HFCS to be natural, and whether they continued to purchase Snapple despite their beliefs concerning HFCS"); *id.* at *6.

Finally, the passage of time has magnified the existing deficiencies in any opinion by Mr. Weir regarding classwide injury or damages.  This litigation has been pending for years. During its pendency and for much of the class period well before the action was filed, the supposed failings of flushable wipes have been exceedingly well-publicized, thus providing additional sources of information for consumers.  As a result, myriad individualized determinations that always have underpinned consumers' purchases of wipes marketed as flushable (*supra* pp. 31–32 & nn.25–26) and their understandings of the flushability representations have surely only multiplied.  This therefore is a worse case yet for claiming that classwide injury and damages exist.  *See*, *e.g.*, *Zyprexa*, 620 F.3d at 134 (denying class certification where "[e]ven after the [deficiencies] of [the product] became publicly known, however, most [plaintiffs] continued to pay the full price"); *id.* at 135 (rejecting argument that class certification was appropriate because causation supposedly could be proven on a common basis through defendant's "'consistent, pervasive marketing plan,'" explaining "[defendant was not, however, the *only* source of information on which . . . decisions [that led to purchase were based]"); *id.* (rejecting argument—not available here—that downturn in defendant's sales post-disclosure was a basis for finding classwide injury and damages).[27]

### 3. The FTC's Actions Confirm That A Rule 23(b)(3) Class Action Would Not Be A Superior Method Of Adjudication.

The FTC's standard-setting and continued oversight of the flushable wipes industry, including its determination that Kimberly-Clark's wipes do not fail the flushability standard, confirms that Plaintiffs cannot demonstrate that "a class action is superior to other available

---

[27] *See also Sergeants Benevolent Ass'n*, 806 F.3d at 87–88, 91–96 (affirming denial of class certification given individualized causation issues even where, unlike here, plaintiff showed that sales of product fell after its alleged misrepresentations were uncovered); *McLaughlin*, 522 F.3d at 224 (denying class certification and explaining that the market for consumer goods "is anything but efficient"); *Weiner*, 2010 WL 3119452, at *6, *11.

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Rather, this Court referred these cases to the FTC precisely because it saw that agency as

offering a superior method of resolution than class litigation:

> The FTC is better suited to protect consumers nationally as well as those in New
> York.  Not only does the FTC's mandate encompass investigating deceptive
> practices in the labeling of consumer goods, the agency is *already* considering
> 'flushable' claims made by this defendant, and those of at least one other
> manufacturer.  In the interest of uniform protection of consumers, the FTC should
> address the instant case and related cases, lest inconsistent judgments and labeling
> abound. . . .  A finding that administrative remedies are superior to judicial
> intervention is also buttressed by a consideration of the public policy of New
> York, and its possible frustration by certification of a federal damages class.

*Belfiore*, 311 F.R.D. at 73 (internal citations and italics omitted).  Now that the FTC has directly

considered Kimberly-Clark's "'flushable' claims" and closed its investigation without finding

any violation, it would not be a superior method of resolution to second-guess FTC's actions and

effectively render them meaningless.  *See id.*; *Ramirez*, 668 F. Supp. 2d at 450 (denying

certification based on lack of superiority, concluding "[t]he superior and sensible way to deal

with this controversy, involving as it does a . . . national and international . . . industry . . . is for

the [FTC] or another federal agency with authority in this area to issue appropriate regulations");

*id.* at 468; *Pagan*, 287 F.R.D. at 151; *see also* K-C Br. Regarding Further Administration [D.E.

244] at 4–5 (explaining why class litigation is not a superior method for resolving this litigation);

K-C Opp. Mot. Class Cert. [D.E. 103, 124] at 12, 28 (original showings on superiority); K-C

Mem. Supp. Mot. Deny Class Cert. [D.E. 85, 141] at 27 n.14, 33 (same).

### 4.  The FTC's Actions Provide An Ample Basis For Concluding That Plaintiff Has Not Satisfied The Requirements For A Rule 23(b)(2) Class.

Finally, consistent with the extensive discussion *supra* §§ I, II.A, the FTC's actions

support denying certification of a Rule 23(b)(2) class.  Armed with this Court's referral of

questions presented in this litigation and having promulgated its own standard of "flushable"—

which counsel for Plaintiff Kurtz accepts, *see supra* at p. 5—the FTC closed its investigation into Kimberly-Clark's "flushable" claims without any finding or allegation of a violation of federal law.  *See* FTC Closure Letter [D.E. 228-1].  In short, the FTC declined to place the same restrictions on Kimberly-Clark as were adopted in the *Nice-Pak* Final Order, which mirror what Dr. Kurtz seeks through an injunctive relief class.  *Compare Nice-Pak* Final Order, 2015 WL 7009345, at *3 (providing that any Nice-Pak "flushable" representations must be "non-misleading") *with* Pl. Mem. of Law in Support of Motion for Class Cert. [D.E. 81, 189] at 37 (seeking to impose injunctive relief "to prevent Defendants from continuing to assert false and misleading claims as to the flushability and dispersibility of their products"); *see also Belfiore*, 311 F.R.D. at 77 ("the FTC Act authorizes the FTC to seek preliminary and permanent injunctions").

The Court should decline to continue with proceedings that would be focused on Kurtz's attempt to overrule the FTC's decision not to impose—let alone seek—injunctive relief against Kimberly-Clark, and therefore should decline to certify a  Rule 23(b)(2) class.  *Cf. Belfiore*, 311 F.R.D. at 73, 79 ("[T]he FTC should address the instant case and related cases. . . .  The FTC inquiry could effectively end the alleged need for injunctive relief.").

Denying certification of a Rule 23(b)(2) class is especially appropriate because, as Kimberly-Clark showed long before the FTC had acted, putative class members would be negatively impacted by the sort of injunction Dr. Kurtz seeks.  K-C Opp. Class Cert. [D.E. 103, 124] at 38–39.  As the FTC's actions and the other evidence set forth above demonstrates, Kimberly-Clark flushable wipes are in fact "flushable," whereas baby wipes and other non-flushable products unquestionably are not.  *See* NYC Study [D.E. 254-4] § 7; Class Cert. Hearing Exs., Tab F at PARSA00005 ¶ 8 (Villee: discussing problems with baby wipes); *id.*, Tab

C at PARSA002125 (Villee: "Maybe Flushable Wipes aren't the main issue . . . Baby wipes are *indestructible* squares of plastic") (emphasis added); *id.*, Tab G at COV010079 ("1[.] Baby Wipes — the main problem[.] 2[.] Flushable Wipes — not as big a problem and becoming less so with the more dispersible substrates we are seeing[.]"); Science Day Tr. (July 21, 2015) at 52:11–15 (Villee: Baby wipes have "permanent wet strength").  "Remov[ing]" "the 'flushable' claim . . . from [Kimberly-Clark's] packaging," as Kurtz suggests, Mem. Supp. Mot. Class Cert. [D.E. 81, 189] at 38, would only create confusion, and force consumers to guess which products could be safely flushed down their toilets.  *See supra* § I.  The injunctive relief sought would not benefit all (or even many) class members, and therefore Rule 23(b)(2) certification should be denied.  *Id.*; *see* K-C Opp. Mot. Class Cert. [D.E. 103, 124] at 33–41 (bases for denying Rule 23(b)(2) certification); K-C Mem. Supp. Mot. Deny Class Cert. [D.E. 85, 141] at 38–40 (same).

## CONCLUSION

For the foregoing reasons and those stated in its previous submissions, Kimberly-Clark respectfully requests that this Court deny certification of any class pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.  Only then does Kimberly-Clark request that the Court turn to the merits of Plaintiffs Kurtz's and Honigman's individual claims, and, conditioned upon the denial of a Rule 23(b)(2) class action in the *Kurtz* case, Kimberly-Clark respectfully requests that this Court exercise its discretion to deny any request by Kurtz or Honigman for injunctive relief or, alternatively, to dismiss their injunctive relief claims as prudentially moot.

Dated:  December 30, 2016

Respectfully submitted,

 */s/ Eamon P. Joyce*

Eamon P. Joyce
ejoyce@sidley.com

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

Kara L. McCall (*pro hac vice*)
kmccall@sidley.com
Daniel A. Spira (*pro hac vice*)
dspira@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

*Attorneys for Kimberly-Clark Corporation*