UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

........................................................................x

D. Joseph Kurtz, Individually and on      :
Behalf of All Others Similarly Situated,      :
     :
             Plaintiff,      :
     :
             vs.      :     No.  1:14-cv-01142
     :
Kimberly-Clark Corporation and      :
Costco Wholesale Corporation,      :
     :
             Defendants.      :

........................................................................x

**KIMBERLY-CLARK CORPORATION'S OBJECTIONS REGARDING TENTATIVE CLASS CERTIFICATION RULING DURING FEBRUARY 2-3, 2017 HEARINGS**

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

Kara L. McCall (*pro hac vice*)
Daniel A. Spira (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

*Attorneys for Kimberly-Clark Corporation*

## TABLE OF CONTENTS

I.     KURTZ HAS NOT PROVEN THAT RULE 23(a) AND 23(b)(3) ARE SATISFIED, AS THIS COURT'S OBSERVATIONS ON THE RECORD MAKE CLEAR. ......................2

     A.    The Hearings Confirmed That Dr. Kurtz Has Not Shown An Ability To Prove Deception On A Classwide Basis, Let Alone Satisfied Predominance. .................4

          1.    The Hearing Transcripts Confirm That Deception Cannot Be Proven Using Generalized Evidence Because There Is No Classwide Definition Of "Flushable." ................................................................................................5

          2.    Even If There Were A Classwide Definition Of Flushable, Proving Consumers Were Deceived Would Require Individualized Inquiries, Which Would Predominate. ......................................................................13

     B.    This Court Properly Recognized That Kurtz Has Not Shown An Ability To Prove Materiality Or Causation On A Classwide Basis, Much Less Satisfy The Predominance Requirement. ................................................................................17

     C.    Plaintiff Has Not Shown An Ability To Prove Damages On A Classwide Basis. 21

     D.    Consistent With This Court's Observations, Kurtz Is Not An Adequate Class Representative Or Typical Of Putative Class Members. .......................................23

II.    KIMBERLY-CLARK OBJECTS TO CERTIFICATION OF A RULE 23(b)(2) CLASS.25

CONCLUSION..................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC,*
   300 F.R.D. 444 (S.D. Cal. 2014) ...........................................................8

*Am. Italian Pasta Co. v. New World Pasta Co.,*
   371 F.3d 387 (8th Cir. 2004) ...............................................................10

*Amara v. CIGNA Corp.,*
   775 F.3d 510 (2d Cir. 2014)..................................................................26

*Belfiore v. Procter & Gamble Co.,*
   311 F.R.D. 29 (E.D.N.Y. 2015) ...................................................7, 9, 17

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,*
   178 F. Supp. 2d 198 (E.D.N.Y. 2001) ..................................................14

*Brown v. Kelly,*
   609 F.3d 467 (2d Cir. 2010).....................................................................1

*Caro v. Procter & Gamble Co.,*
   18 Cal. App. 4th 644 (Cal. App. 1993) ...................................................9

*Gaidon v. Guardian Life Ins. Co. of Am.,*
   96 N.Y.2d 201 (2001) ...........................................................................14

*Gary Plastic Pkg. Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   903 F.2d 176 (2d Cir. 1990)...................................................................24

*Goodman v. Genworth Fin. Wealth Mgmt., Inc.,*
   300 F.R.D. 90 (E.D.N.Y. 2014) ...............................................................3

*Halliburton Co. v. Erica P. John Fund, Inc.,*
   134 S. Ct. 2398 (2014).............................................................................1

*Hazelhurst v. Brita Prods. Co.,*
   295 A.D.2d 240 (1st Dep't 2002) ..........................................................16

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Pracs. Litig.,*
   No. 13-cv-150(JPO), 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015) ...................11, 15, 21, 22

*In re Clorox Consumer Litig.,*
   No. 12-00280, 2013 WL 3967334 (N.D. Cal. July 31, 2013) ..................9

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   MDL No. 1687, 2012 WL 379944 (D.N.J. Feb. 6, 2012)......................................................10

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008).................................................................................................2

*In re IPO Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)........................................................................... *passim*

*In re Nice-Pak Prods., Inc.*,
   No. C-4556, File No. 132-3272, 2015 WL 7009345 (F.T.C. Oct. 30, 2015) .................7, 8, 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016).................................................................................................26

*In re Zyprexa Prod. Liab. Litig.*,
   253 F.R.D. 69 (E.D.N.Y. 2008) ............................................................................................4

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015)..................................................................................................2

*Jones v. ConAgra Foods*,
   3:12-cv-1633(CRB), 2014 WL 2702726 (N.D. Cal. June 13, 2014)......................................9

*Levitt v. J.P. Morgan Secs., Inc.*,
   710 F.3d 454 (2d Cir. 2013)..................................................................................1, 2, 16, 17

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008)...........................................................................................4, 17

*Meta v. Target Corp.*,
   No. 4:14-cv-832, 2016 WL 5076089 (N.D. Ohio Sept. 20, 2016) ........................................17

*Nafar v. Hollywood Tanning Sys., Inc.*,
   339 F. App'x 216 (3d Cir. 2009) ..........................................................................................25

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016).................................................................................................26

*Oscar v. BMW of N. Am., LLC*,
   274 F.R.D. 498 (S.D.N.Y. 2011) ..........................................................................................16

*Palmer v. CVS Health*, No. 2:15-cv-2928(JBW), slip op. (E.D.N.Y. Feb. 17,
   2017)....................................................................................................................................19

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014)...........................................................................................8

iv

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
   293 F.R.D. 287 (E.D.N.Y. 2013) ............................................................................9

*Simmons v. Author Solutions, LLC*,
   No. 13-cv-2801(DLC), 2015 WL 4002243 (S.D.N.Y. July 1, 2015) ..................................9, 10

*Small v. Lorillard Tobacco Co., Inc.*,
   94 N.Y.2d 43 (1999) ............................................................................14

*Small v. Lorillard Tobacco Co.*,
   252 A.D.2d 1 (1st Dep't 1998) ............................................................................25

*Solomon v. Bell Atl. Corp.*,
   9 A.D.3d 49 (1st Dep't 2004) ............................................................................10, 16

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008) ............................................................................2

*Tegnazian v. Consolidated Edison, Inc.*,
   730 N.Y.S.2d 183 (Sup. Ct., N.Y. Cnty. 2000) ............................................................................25

*Thorogood v. Sears, Roebuck & Co.*,
   547 F.3d 742 (7th Cir. 2008) ............................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................ *passim*

## Rules and Statutes

New York General Business Law § 349 ............................................................................ *passim*

Federal Rule of Civil Procedure 23 ............................................................................ *passim*

## Articles

Ned Lynch, *Wipes wreak havoc on wastewater plants*, the Day (May 7, 2016)
   http://www.theday.com/local/20160507/wipes-wreak-havoc-on-wastewater-
   plants ............................................................................27

Pursuant to the Court's instruction at the February 3, 2017 hearing in *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, Kimberly-Clark Corporation ("Kimberly-Clark") hereby submits its objections to the Court's tentative class certification rulings offered on the record on February 2, 2017 in the above-captioned case, and on February 3, 2017 in the hearing set in *Belfiore* but at which the Court addressed all the flushable wipes cases pending before it.  *See* 2/3/17 Hr'g Tr. (Ex. B) at 49:16–50:11 (the Court allowing submission of objections within 10 business days).[1]  Kimberly-Clark objects to the Court's expressed intent to grant class certification of an undefined class pursuing an undefined set of Dr. Kurtz's New York law claims pursuant to Rules 23(b)(2) and 23(b)(3).  *See*, *e.g.*, 2/3/17 Hr'g Tr. (Ex. B) at 48:12–17 (expressing present intent to grant certification in *Kurtz* and *Belfiore*).[2]  Granting certification here would be improper in light of Dr. Kurtz's inability to offer any semblance of *evidentiary* proof that class members' claims will be proven by common evidence, and his failure to show by a preponderance of the evidence that common questions will predominate.  *See*, *e.g.*, *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (setting forth plaintiff's evidentiary burden); *accord Levitt v. J.P. Morgan Secs., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013).

"[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) (emphasis in original); *see Wal-Mart Stores, Inc. v. Dukes*, 564

---

[1] Transcripts of these hearings have not yet been docketed.  Accordingly, Kimberly-Clark attaches the transcripts it received from the court reporter (which do not contain *errata* submitted by the parties) as Exhibits A and B to the Declaration of Eamon Joyce filed herewith.  All Exhibit citations in this Objection filing refer to Exhibits to the Joyce Declaration.

[2] Although the Court has heretofore focused on Dr. Kurtz's GBL §§ 349 and 350 claims, Plaintiff Kurtz (unlike Plaintiff Belfiore) pleaded a host of New York law claims, several of which require reliance.  *See* K-C Mem. Supp. Mot. Deny Class Cert. [D.E. 85, 141] at 22 & n.10.

U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.") (emphasis in original).  Further, courts must conduct a "rigorous analysis," *Dukes*, 564 U.S. at 351, to determine whether a plaintiff has proven "by a preponderance of the evidence that each of Rule 23's requirements have been met," *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

This Court's exchanges with Plaintiff during the hearings of February 2 and 3, 2017 confirm that Plaintiff Kurtz has not carried his evidentiary burden at the class certification stage.

## I.  KURTZ HAS NOT PROVEN THAT RULE 23(a) AND 23(b)(3) ARE SATISFIED, AS THIS COURT'S OBSERVATIONS ON THE RECORD MAKE CLEAR.

Consistent with the foregoing standards, the Second Circuit and other courts consistently have rejected "[a] party's assurance to the court that it *intends* or *plans* to meet the requirements [of Rule 23]," explaining that mere "*intention* to prove a significant portion of their case through factual evidence and legal arguments common to all class members" does not suffice.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318, 321 (3d Cir. 2008) (emphases added).  As the Second Circuit has repeatedly emphasized: "'[T]he district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, and must *resolve material factual disputes* relevant to each Rule 23 requirement.'"  *Levitt*, 710 F.3d at 464–65 (emphasis added, quoting *Brown*, 609 F.3d at 476); *see also*, *e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202–04 (2d Cir. 2008) (applying *In re IPO Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006), and rejecting plaintiff's request for further discovery to attempt to meet the evidentiary standard for certification).  Based on the required "rigorous analysis" of plaintiff's evidence, the court must be "assure[d] [of] 'actual, *not*

*presumed* conformance' with . . . all Rule 23 requirements, including those set forth in Rule 23(b)(3)." *Goodman v. Genworth Fin. Wealth Mgmt., Inc.*, 300 F.R.D. 90, 101 (E.D.N.Y. 2014) (emphasis added, quoting *IPO*, 471 F.3d at 33 & n.3).

Here, Dr. Kurtz has offered *no* evidentiary proof in support of his bare intention to establish deception, materiality, or causation (much less all three elements) on a classwide basis, and his effort to demonstrate that he could prove damages on a classwide basis falls well short of satisfying a preponderance of the evidence standard. *See* 02/02/17 Tr. (Ex. A) at 6:23–7:3, 9:3-8, 9:22–10:6, 10:14–17, 61:25, 62:10–11; 02/03/17 Tr. (Ex. B) at 10:7–19, 20:21–25, 31:21–32:14 (**classwide deception**: the Court recognizing that there are multiple definitions of flushable, none is objectively determinable, there has been no attempt to show how consumers define flushable, and consumers will have different understandings of flushable); 02/02/17 Tr. (Ex. A) at 55:1–4, 55:9–11 (**classwide materiality**: the Court recognizing a failure of proof to determine if consumers "care one way or the other whether it's flushable"); 02/02/17 Tr. (Ex. A) at 55:18–22 (**classwide causation**: the Court stating that "[t]here has to be some causal connection at the purchase point before" damages are relevant); 02/02/17 Tr. (Ex. A) at 39:14–17; 02/03/17 Tr. (Ex. B) at 7:10–8:6 (**classwide injury and damages**: the Court recognizing that flushable wipes and non-flushable baby wipes are not comparable, and requiring evidence of "what a consumer thinks of when he or she sees flushability" in order to identify injury and measure damages); 02/02/17 Tr. (Ex. A) at 51:13–15 (**adequacy and typicality**:  the Court recognizing that Dr. Kurtz may be an inadequate representative based on his purchase and use of flushable wipes for toileting use without flushing them).

While this Court suggested in the abstract that statistics can be used to prove a range of things on a classwide basis, *see* 02/02/17 Tr. (Ex. A) at 8:8–9, 42:9–43:16, 79:14–18, 85:17–

86:4, Dr. Kurtz has not come forward with *any* statistics, not even on injury and damages. *Compare Dukes*, 564 U.S. at 346 (recognizing that at the *class certification* stage, plaintiff had adduced "statistical evidence about pay and promotion disparities"); *id.* at 356–58 (discussing statistical showings); *In re Zyprexa Prod. Liab. Litig.*, 253 F.R.D. 69, 131–32, 143–53, 156–67, 188–91 (E.D.N.Y. 2008) (discussing plaintiffs' statistical showings), *rev'd sub nom. UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222–30 (2d Cir. 2008) (discussing plaintiffs' detailed statistical models, but finding they still were insufficient to show causation and injury).

Plaintiff's class certification papers do not once mention that Dr. Kurtz will use statistical models to prove deception, materiality, or causation.  *Cf.* Pl.'s Mem. Supp. Class. Cert. [D.E. 81] at 29–31 (suggesting Mr. Weir someday would perform a statistical analysis to measure "*[d]amages . . .* on a classwide basis," but no other elements) (emphasis added, bold removed). Even if "[t]rial by [f]ormula" through statistical sampling remains permissible today, *contra Dukes*, 564 U.S. at 367, Plaintiff has put forward no evidence that there is a viable method of trying the multiple elements of Plaintiff's claims through *any* classwide proof.

**A. The Hearings Confirmed That Dr. Kurtz Has Not Shown An Ability To Prove Deception On A Classwide Basis, Let Alone Satisfied Predominance**.

Dr. Kurtz has made no showing that he can demonstrate, through classwide proof, that class members were deceived by Kimberly-Clark's representations that its wipes are "flushable." *See*, *e.g.*, Mem. of Law Respecting Mootness [D.E. 268] at 4 n.2 (collecting cites); Reply Brief Respecting Mootness [D.E. 277] at 2–3, 12–13, 15–17, 20–38.  First, any possible classwide proof of deception, of course, must begin with a showing about what "flushable" means to a reasonable consumer.  Second, once a common definition is put forward, it must be shown (again, using classwide proof) that there is a "common answer[]" to the question of whether

consumers are deceived by the product's performance under that standard. *Dukes*, 131 S. Ct. at 2551. Third, the common answers must predominate over the individualized inquiries (such as how the wipes perform for a particular consumer under the many individualized factors that affect performance in one's plumbing (as well as in septic and sewer, were they relevant to Dr. Kurtz's claims)). *See*, *e.g.*, Mem. of Law Respecting Mootness [D.E. 268] at 4 n.2; Reply Brief Respecting Mootness [D.E. 277] at 2. Each of these considerations requires denial of certification.

> **1.    The Hearing Transcripts Confirm That Deception Cannot Be Proven Using Generalized Evidence Because There Is No Classwide Definition Of "Flushable."**

Plaintiff's counsel admitted during the Court's February 2, 2017 hearing—yet again—that more than three years into this litigation, Kurtz still has no common definition of "flushable" against which he can measure Kimberly-Clark's representations as to consumers classwide.

| The Court: | [W]e do not have a basic comprehensive study of how consumers view the packaging and the advertising and the other aspects of this problem. What does the consumer think he or she is getting? We do not have that yet in this case; correct? |
|---|---|
| Mr. Reich: | That's correct, Your Honor. |

2/2/17 Tr. (Ex. A) at 6:23–7:3.

| The Court: | Well, I do not have the proposed, I will call it a sociological study, which would give me some of that information. That's correct, isn't it? You have not made such a study?" |
|---|---|
| Mr. Reich: | There's been no study at this point in the case. |
| The Court: | So I do not know what . . . the consumer is thinking out there. It seems to me to be one of the critical issues. |

*Id.* at 9:22–10:6.

Instead, Plaintiff's counsel suggested that at some point in the future "[w]e believe . . . there's going to be a consensus among consumers and among class members." *Id.* at 62:7–9.

When directly asked by the Court, "[h]ow are you going to prove that?," *id*. at 62:10, Plaintiff's counsel declined to identify *any* classwide proof through which he intended to identify this presupposed "consensus," *id*. at 62:12–17 (only committing that Plaintiff has "considered" a survey, but does not know whether it is "absolutely necessary").

Moreover, not only did Dr. Kurtz's counsel make these claims without any evidence, he ignored that the *only* evidence in the record about what consumers understand—exemplified by his own prior admission about the existing "consensus view" among consumers—shows they understand flushable in a manner that requires an individualized inquiry to determine whether the representation is satisfied. Science Day (06/19/15) Tr. at 24:23–25:8 (Mr. Reich: "I can only speak to the consumers that have contacted us . . . . *The consensus view* is that flushable means it's not going to clog the piping in *my house*.  It's not going to clog the pumps of *my home*.  It's not going to cause damage to *my* septic system.") (emphases added).

Indeed, Kimberly-Clark repeatedly has pointed out the absence of a common understanding of "flushable" among consumers, except the just-quoted potential common understanding that whether a wipe is flushable must be determined through an individualized inquiry into a particular consumer's own experience flushing the wipe and whether it harms his or her plumbing.  *See*, *e.g.*, K-C Reply Brief Respecting Mootness [D.E. 277] at 11.  Kurtz has had no response, aside from analogizing the situation here to one in which "a company sells sugar-free gum and there is sugar in it," 02/02/17 Tr. (Ex. A) at 55:13–14, which this Court recognized is "not . . . persuasive," *id.* at 75:6, and to scenarios where a product did not conform to an objectively measurable representation (*e.g.*, "100% Pure Olive Oil," "grow[s] 50% Thicker [grass] With Half the Water," D.E. 277 at 35–36 & n.23), which plainly is absent here.

The absence of common—and *predominating* common—issues is confirmed by the fact that Plaintiff's counsel, by Kimberly-Clark's count, has advanced at least four different

definitions of flushable that might be used to assess whether Kimberly-Clark's representations

were, in fact, deceptive:

(1)     Kurtz's, Villee's, and Plaintiff's counsel's repeated acknowledgments that, to a consumer, flushable means "it's not going to clog the piping in my house.  It's not going to clog the pumps of my home.  It's not going to cause damage to my septic system."  Science Day (06/19/15) Tr. at 24:23–25:8 (Mr. Reich); *accord* Science Day (07/21/15) Tr. at 47:13–20 (Villee: "goes away and doesn't cause [consumers] problems"); Kurtz Dep. [D.E. 142-1] at 37:14–20 ("would not cause any problem to any part of my flushing system, my pipes");

(2)     Villee's July 2015 testimony that, in order to be flushable, "a product should clear the homeowner's toilet and piping without causing problems and quickly begin to lose strength and/*or* disperse so it doesn't cause problems for either the homeowner [or] for the municipal sewer system," Science Day (07/21/15) at 46:3–8 (emphasis added); *id.* at 50:12–23 ("losing strength");

(3)     FTC's October 2015 definition in the *Nice-Pak* Final Order, 2015 WL 7009345, at *4 ("disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment");

(4)     Villee's January 2017 definition that it "must break apart in a reasonable period of time" and "break down in consumers' drain lines."  D.E. 273 ¶¶ 4, 15.[3]

Indeed, this Court was quite correct to observe that consumers almost certainly

understand "flushable" in different ways based on their individual outlooks, and have different

understandings about whether the representation was satisfied (*i.e.*, was not deceptive):

I look out my window in the chambers and I'm sure – relatively sure, that the tenant in 14 E that I observe across the East River doesn't very much care whether the toilet wipe gets out of the apartment house and into the New York City sewage system, as long as it gets out of her or his apartment.  Whereas, the house owner has a slightly different view.  So we are dealing with different types of consumers.

2/3/17 Tr. (Ex. B) at 10:12–19.

---

[3] Furthermore, this Court has recognized that there are "myriad" definitions of flushable that have been used in the litigation before it.  *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 48 (E.D.N.Y. 2015).  In addition to those definitions, Kimberly-Clark has referred to the dictionary definitions of "flushable," Opp. Class Cert. at 3 n.3, pointing out, *inter alia*, that it is distinct from the dictionary definition of "dispersable," *id.*; *accord* Ex. D at PARSA002153 (Villee: "Flushable does not = dispersible").

And it is not a single consumer. We have a wide variation in consumers. As I said, the person with the house, owning a house is interested in flushability. The tenant on the fourth floor is not, as long as it clear his own toilet.

*Id.* at 20:21–25; *see also id.* at 47:11–14 (consumers' views "may be quite different" by region).

Plaintiff's inability to settle on any one definition, or to show any other common consumer understanding of the "flushable" representation, is sufficient to show that this case lacks the common questions, common answers, and predominating common issues required for certification. Courts consistently hold that where a common understanding of the purported misrepresentation does not exist, a class cannot be certified. *See, e.g.*, *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747 (7th Cir. 2008) ("The evaluation of the class members' claims will require individual hearings. Each class member who wants to pursue relief against Sears will have to testify to what he understands to be the meaning of a label or advertisement that identifies a clothes dryer as containing a stainless steel drum. Does he think it means that the drum is 100 percent stainless steel because otherwise his clothes might have rust stains, or does he choose such a dryer because he likes stainless steel for reasons unrelated to rust stains and is indifferent to whether a part of the drum not easily seen is made of a different material?").[4] As Judge Breyer has explained, class certification is improper where there is "no

---

[4] *Accord Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 695–96 (S.D. Fla. 2014) (denying certification on predominance grounds and recognizing "the lack of consensus surrounding the definition of 'natural' . . . makes it difficult to determine whether the label of 'All Natural' would be deceptive to the reasonable consumer on an objective, non-individualized basis"); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014) (commonality requirement was not met because purchasers had a "variety of duration expectations" for "24 hour staying power" claim for lipstick); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667–69 (Cal. App. 1993) (denying certification on predominance grounds where record did not show that consumers had same understanding of "fresh" or that such an understanding was material to purchase decision); *see also In re Clorox Consumer Litig.*, No. 12-00280, 2013 WL 3967334, at *4 n.4 (N.D. Cal. July 31, 2013) (where assessing a representation "is a subjective exercise . . . it is hard to see how Plaintiffs' complaints could be common to or representative of the alleged class").

fixed meaning for the word" allegedly misrepresented, and therefore "consumers' understanding of th[e] representations would not be [sufficiently common to establish predominance]." *Jones v. ConAgra Foods*, 3:12-cv-1633(CRB), 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014).

Indeed, for all the talk about the Supreme Court's *Shady Grove* decision over the course of this litigation, *see Belfiore*, 311 F.R.D. at 51, 54–59; 02/02/17 Tr. at 48:9–49:11, it should not escape this Court's attention that upon remand from the Supreme Court, Judge Gershon *denied* certification of plaintiff's GBL § 349 claim for lack of predominance. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 308 (E.D.N.Y. 2013). The court did so because plaintiff, similar to the situation here, failed to prove that the implied representation alleged to be deceptive could be proven "using common evidence or by reference to mechanical calculations"; rather, because deception turned on class members' varying understandings of the implied representation at issue, "there [was] no proof available to Shady Grove that would demonstrate, on a class-wide basis, that *each individual* claimant . . . was deceived by Allstate's implied promise." *Id.* (emphasis in original); *see also*, *e.g.*, *Simmons v. Author Solutions, LLC*, No. 13-cv-2801(DLC), 2015 WL 4002243, at *9 (S.D.N.Y. July 1, 2015) (denying Rule 23(b)(3) certification of consumer claims because, *inter alia*, "[t]he representations about which plaintiffs complain . . . are by any measure soft. [Defendant's] statements about its marketing services straddle the line between representation and puffery, making it all the more difficult to conclude that generalized proof could demonstrate that these statements would likely deceive a member of the public.").

Stated differently, where a common understanding of the complained-of representation is lacking, it is logically no different from the situation in which different consumers saw different representations, which is the quintessential situation in which a class cannot be certified. *See*,

*e.g.*, *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 53 (1st Dep't 2004) (reversing certification of GBL § 349 claim, and explaining that "class certification is not appropriate where 'the plaintiffs do not point to any specific advertisement or public pronouncement by the defendant which was undoubtedly seen by all class members") (citing decisions of the New York Court of Appeals); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, MDL No. 1687, 2012 WL 379944, at *13–14 (D.N.J. Feb. 6, 2012) (denying certification of § 349 class for the same reason).[5]

The lack of a common understanding should itself be fatal to certification in any type of case.  As discussed below, it is worse yet where the understanding concerns the product's performance.  *See*, *e.g.*, *Solomon*, 9 A.D.3d at 54–56 (denying certification of class involving representations about performance speed of internet service offered by defendant, because "speed is dependent on a number of factors, including the subscriber's own computer and network elements that are unrelated to the service itself").  This is especially so where, as here, the performance attribute (*e.g.*, whether a product is flushable, fast, *etc.*), is not subject to any objective benchmark and instead depends solely on an assessment of individualized performance.  *See*, *e.g.*, *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Pracs. Litig.*, No. 13-cv-150(JPO), 2015 WL 5730022, at *3–4 (S.D.N.Y. Sept. 30, 2015) (recognizing that representations about "whether a product improved a consumer's 'appearance'" "would call for subjective, individual inquiries" that would defeat certification); *id.* at *4 (denying

---

[5] Indeed, consistent with Judge Cote's observations in *Simmons*, 2015 WL 4002243, at *9, where different understandings lead to the lack of an objective benchmark, the situation is more akin to a case involving puffery (which is not actionable) than one befitting class certification.  *See*, *e.g.*, *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004) (recognizing that "if the statement is not specific and measurable, and cannot be reasonably interpreted as providing a benchmark by which the veracity of the statement can be ascertained, the statement constitutes puffery"); *id.* (distinguishing puffery from representations that "convey a quantifiable threshold in sheer number, percentage, or place in a series"); *id.* at 393–94 (rejecting the argument that a "consumer survey [is able] to determine a claim's benchmark").

certification on predominance grounds in light of claims that were "about the product's effect on the customer's appearance").

Furthermore, Plaintiffs' evidentiary shortcomings at the certification stage extend far beyond mere competing views among consumers about potential definitions of flushable. Specifically, of the four definitions Kurtz's counsel has advanced (*supra* at p.7), the record contains evidence that only the first has *any* link to what Dr. Kurtz or *any* other consumer actually understood (and that definition inherently requires an individualized inquiry into whether it has been met). That is, Plaintiff has made no attempt to show that the other three definitions have any relationship whatsoever to Dr. Kurtz's or class members' understandings at the relevant time (let alone today). On the contrary, Plaintiff recently admitted that the FTC definition (which Plaintiff previously endorsed) cannot be used in this case because it was not applicable to consumers at the time of Dr. Kurtz's purchase. Pls.' Mootness Opp. [D.E. 272] at 19. The same is undeniably true of the definition that Villee proposed in this Court months before the FTC announced its standard, and the definition that Villee newly adopted a year-and-a-half later in his January 2017 affidavit [D.E. 273]. Indeed, not only do "flushable" and "dispersable" mean two different things (as Mr. Villee *admits*), *see* K-C Opp. Class Cert. [D.E. 103] at 3 n.1; Ex. D at PARSA002153 (Villee), but, as described further *infra* at pp. 17–18, Kimberly-Clark conducted consumer studies on whether to market its flushable wipes as dispersable, and chose not to market the wipes as dispersable because *consumers do not care about dispersion*.

Finally, even if Plaintiff had shown that consumers had adopted either of Villee's definitions or the FTC definition at the time of Dr. Kurtz's purchase, it would not save certification because *none* of them are objectively measurable. For instance, even if reasonable

consumers believed that to be deemed "flushable," a wipe should (i) "*quickly* begin to lose *strength and/or disperse*" (Villee on Science Day (07/21/15) Tr. at 46:5–8), (ii) "dispers[e] in a *sufficiently* short amount of time to avoid clogging" (*Nice-Pak* Final Order, 2015 WL 7009345, at *4), or (iii) "break apart in a *reasonable period* of time" and "break down in consumers' drain lines" (Villee January 2017 Decl. [D.E. 273] ¶¶ 4, 15), neither any of the time periods nor the end points (*e.g.*, amount of strength loss, amount of dispersion, amount of breakage, time period, *etc.*) are defined.  There is no evidence in the record to suggest that consumers have a common understanding of these considerations, let alone that consumer understanding could be extracted without substantial individual inquiries.  Indeed, it is notable that Mr. Villee has not articulated his own measurable parameters for either of the definitions he has advanced, the FTC also has not done so for its definition, and municipality legislation on which Plaintiff recently relied also fails to do so.  *See* Pls.' Mootness Opp. [D.E. 272] at 12 n.19 (noting D.C. legislation, which defines flushable in terms of "dispers[ion] in a *short period of time* after flushing in the low-force conditions of a sewer system," D.C. Act 21-604 § 2(1) (emphasis added)).[6]

---

[6] Although Plaintiff's counsel disingenuously now suggests that all of these definitions—and the INDA definition—essentially are the same, such suggestion is baseless.  *See* 2/2/17 Tr. (Ex. A) at 61:17–18 (asserting that all flushable definitions, including INDA's, "have a common theme," which supposedly is "break[ing] apart in a reasonable period of time").  Indeed, knowing full well that Kimberly-Clark flushable wipes have always met the INDA Guidelines, *see*, *e.g.,* K-C Mem. of Law in Opp. to Class Cert. [D.E. 103]  at 5–6, Plaintiff's counsel had consistently argued that the INDA guidelines are unique from other "flushable" definitions and should *not* be applied.  *See, e.g.,* 10/09/15 Tr. at 16:15–19 (Mr. Reich:  "[W]hile defendants would like this Court, the FTC, consumers and everyone else to accept that INDA has some sort of protection or interest of the consumers in mind, it's absolutely untrue.  These guidelines were created for themselves, they were not created for the consumers' benefit."); *id.* at 17:25–18:1 ("INDA is essentially a farce.  There's nothing to it."); Pl.'s Mem. of Law in Opp. to Mot. to Deny Class Cert. [D.E. 100] at 68 n.69 ("Plaintiff does not agree that the INDA guidelines or testing forms a valid basis for claiming a product is flushable.").

Mr. Villee likewise has contrasted his own definitions of flushable with those used by INDA.  *See* D.E. 273 ¶ 4.  Similarly, he has contrasted the consumer's understanding of flushable, with the strength loss-based definition, dispersability-based definitions, and the definitions employed

**2. Even If There Were A Classwide Definition Of Flushable, Proving Consumers Were Deceived Would Require Individualized Inquiries, Which Would Predominate.**

Even if it had been shown that reasonable consumers understood "flushable" at the relevant time period to correspond to any one of the four definitions floated by Dr. Kurtz's counsel, determining whether *any* of them had been met would require solely individualized— not common—inquiries based on plaintiff-specific evidence not generalized proof.

To begin, such individualized inquiries are required because, as just noted, not one of the four definitions Plaintiff has advanced (unlike INDA's) sets forth an objectively measurable performance standard. Again, neither Villee nor FTC have placed any fixed parameters (*e.g.*, "50% strength loss," "20% dispersion," "30 minutes") within their definitions. Thus, the definitions are *impossible* to test using generalized proof.

Instead, whether the wipes satisfy any of the four proffered definitions of flushable—*i.e.*, and therefore the representations are not deceptive—will depend on how the product performs for a particular consumer.[7] Take, for instance, Mr. Villee's January 2017 must "break down in

---

by regulators. Ex. C at PARSA003196 (*introduced, discussed, and ordered marked as an exhibit by the Court at* 06/19/15 Tr. at 37:21–39:8); Ex. D at PARSA002153. In addition to the patent difference between INDA's objectively measurable standards and the "reasonable" and "short time" definitions used by the FTC and Villee, or the "won't harm me" definition advanced by Dr. Kurtz and then seconded by Villee and Plaintiff's counsel in the consumer context, it is not correct to say that a particular brand of flushable wipes will pass or fail all of these five definitions (the FTC's treatment of the former Nice-Pak wipe bears this out).

[7] Plaintiff is simply wrong in suggesting that class members "were damaged" or "harmed" at the time they purchased Kimberly-Clark wipes. *See* 2/2/17 Tr. (Ex. A) at 55:12–17. *Deception* is antecedent to any price premium injury. *See, e.g.*, *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 55 (1999) (rejecting proposition that deception and injury are one and the same); *accord Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 178 F. Supp. 2d 198, 262 (E.D.N.Y. 2001) (Weinstein, J.) ("[o]n the *Small* appeal, the New York Court of Appeals confirmed that 'deception' and 'actual injury' must be proven separately under a section 349 claim"), *rev'd on other grounds sub. nom.*, 393 F.3d 312 (2d Cir. 2004). This is why Plaintiff tried to analogize this case to "sugar-free gum [with] sugar in it," an instance where deception is plain. 2/2/17 Tr. (Ex. A) at 55:12–17. But if class members received flushable wipes that

consumer's drain lines" standard.  D.E. 273 ¶ 15.  It is undisputed that a wipe may spend many

minutes or even days in a consumer's home drain line.  *See* Science Day (06/19/2015) Tr. at

102:20–103:25 (Powling).  As Mr. Villee acknowledged, for example, new "low flush toilet[s]"

may lead to a wipe "sitting in your lateral" through multiple flushes.  D.E. 278-1 at 34 (of 59).

Thus, whether or not the wipe conformed to this consumer understanding of "flushable" will

depend on individualized inquiries into how long the wipe sat in the drain line, which is subject

to "many variables," and what kind of forces it was subjected to while in the drain line (*e.g.*,

agitation, striking corners of pipes, *etc*.).  Science Day (06/19/2015) Tr. at 103:11–17 (Powling).

This is significant because, as Mr. Villee admits, even without agitation (which wipes may

experience as a result of subsequent flushes or water rushing down the drain), the 2013 version

of Kimberly-Clark flushable wipes "tears" "after 90-120 minutes just sitting in water."  D.E.

278-1 at 32, 52 (of 59).  The 2014 version of the flushable wipe, which Villee called "even

better" in terms of its "rapid los[s of] strength," *id.* at 33, 42, would perform differently still as

Villee's own presentations have acknowledged.  *See* Ex. C at PARSA003212 (Villee's slide

showing improved drainline strength loss performance of Kimberly-Clark's 2014 wipe

formulation over 2013 formulation, and far better strength loss performance for both

formulations of Kimberly-Clark flushable wipes than baby wipes and other flushable wipes); *see*

*also* D.E. 278-1 at 31 (Kimberly-Clark's showings).  Indeed, Kimberly-Clark showed on Science

Day that after just 45 minutes of sitting in water in court, the 2014 version of its product tore

---

satisfied the inherently performance-based representation "flushable," then there has been *no*
*deception* and therefore any "premium" charged for the flushable representation is irrelevant.
*See, e.g., Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 211–12 (2001) ("Because the
gravamen of the complaints of General Business Law § 349 violations was not false guarantees
of policy terms, but deceptive practices inducing unrealistic expectations of . . . performance . . .,
plaintiffs suffered no measurable damage until the point in time *when those expectations were*
*actually not met*") (emphasis added).

when lifted (meaning it may well also have dispersed had it been subjected to agitation or force in a consumer's drain line).  Science Day (06/19/15) Tr. at 122:19–25, 86:8–13.

Or consider Dr. Kurtz's "would not cause any problem to any part of my flushing system" definition of flushable.  Beyond being inherently individualized on its face, because the backdrop of consumer experience with flushing demonstrates that the representation is not a guarantee of failproof performance (*e.g.*, human waste and toilet paper alone have caused problems since flushing was invented, plungers continue to be sold, and plumbers continue to be hired), a reasonable consumer may well believe that an individual flushing experience like Dr. Kurtz's met the "would not cause any problem" definition.  Dr. Kurtz admits to buying and successfully using flushable moist wipes for approximately a decade before eventually experiencing a clog (while using flushable wipes simultaneously with baby wipes).  *See* Kurtz Dep. [D.E. 142-1] at 133:16–25, 36:16–37:10.  Indeed, assuming Kurtz flushed only one flushable wipe per day, his clog was an extreme outlier—approximately .00027% of his flushes over the course of a decade resulted in a plumbing incident.  Thus, particularly for a consumer whose toilets clog more frequently from toilet paper and human waste alone, Dr. Kurtz's experience may well define what it means to have used a flushable product.

Because "flushability" is necessarily performance-based and will require extensive multi-variable individualized proof to determine which consumers, if any, were deceived by the "flushable" representation based on a wipe's performance, Dr. Kurtz cannot prove deception through common evidence and without the predominance of individual inquiries.  *See*, *e.g.*, *In re Avon Anti-Aging*, 2015 WL 5730022, at *3–5 & n.2 (improvement to appearance representations); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 512–13 (S.D.N.Y. 2011) (denying class certification of § 349 claim on predominance grounds where performance-based

claim about "run flat tires" was the alleged deception, because "determining whether each tire failed as a result of the allegedly concealed defect or as a result of unrelated issues, *e.g.*, potholes or reckless driving habits, will devolve into numerous mini-trials"); *Solomon*, 9 A.D.3d at 56 (denying certification of § 349 claim on predominance grounds because of individualized issues that would affect whether defendant's internet service met the promised speed representation); *Hazelhurst v. Brita Prods. Co.*, 295 A.D.2d 240, 242 (1st Dep't 2002) (denying certification of § 349 claim on predominance grounds because it "will be necessary to determine whether the class member received 35 to 40 gallons of purified water per filter" as defendant represented).

These inherently individualized inquiries are further complicated by the undisputed facts regarding the performance of Kimberly-Clark's products within the considerations relevant to the Villee and FTC definitions. *See generally Levitt*, 710 F.3d at 464–65 (recognizing that a plaintiff must prove every requirement of Rule 23 by a preponderance of the evidence, even where the Rule 23 requirement overlaps with a merits issue). For instance, Villee has admitted that a Kimberly-Clark flushable wipe (i) "start[s] losing strength as soon as it gets wet," D.E. 278-1 at 34 (of 59), (ii) "rapidly loses strength when wet," *id.* at 42 ¶ 2(b), and (iii) can disperse into pieces within 30 minutes, *id.* at 24; *see also id.* at 46 ("the [Kimberly-Clark] Scott Natural was completely dispersed"), and the undisputed evidence shows that Kimberly-Clark flushable wipes manufactured during the relevant period lost more than 50 percent of their strength (and up to nearly 80 percent of their strength) within 30 minutes in a home drainline, *id.* at 31; Ex. C at PARSA003212. This fatally compromises any ability Plaintiff would have to establish, through generalized evidence, that the entire class of consumers was deceived about the "flushable" performance of Kimberly-Clark's flushable wipes, even if the definitions of flushable advanced by Dr. Kurtz could be employed. *See*, *e.g.*, *Levitt*, 710 F.3d at 467–70

16

(plaintiff could not establish predominance where Plaintiffs had "not adduced any evidence at the class certification stage that indicates that [plaintiffs could] establish that [defendant] owed . . . a duty of disclosure"); *McLaughlin*, 522 F.3d at 230 (denying class certification because "[u]nder *In re IPO,* plaintiffs must produce persuasive facts at trial that will enable them to prove [their theory]. . . . They have failed to persuade us that they can do so.").[8]

In light of Dr. Kurtz's failure to offer any definition of "flushable" applicable to class members, and inability to prove using classwide proof that Kimberly-Clark's flushable wipes fail to meet any of the proffered definitions of "flushable," individualized questions regarding deception would overwhelm questions common to putative class members, and Kimberly-Clark objects to certification of any class on Rule 23(a) and Rule 23(b)(3) grounds.

### B. This Court Properly Recognized That Kurtz Has Not Shown An Ability To Prove Materiality Or Causation On A Classwide Basis, Much Less Satisfy The Predominance Requirement.

Even if Dr. Kurtz could prove deception through generalized proof, class certification would remain inappropriate because there is no classwide evidence through which to prove the materiality and causation elements of his claims, and individualized inquiries will instead predominate.

---

[8] Based on these and other facts in the record, Dr. Kurtz's case against Kimberly-Clark simply bears no parallel to *Meta v. Target Corp.*, No. 4:14-cv-832, 2016 WL 5076089 (N.D. Ohio Sept. 20, 2016), in which the court reasoned "either 0% or 100% of the proposed class members have used mislabeled products." *Id.* at \*4. If Dr. Kurtz, for instance, had stopped flushing Kimberly-Clark flushable wipes before he moved to his new home, he would be wholly unable to contend that he used a mislabeled product. The many Kimberly-Clark consumers for whom the wipes have always performed as represented remain unable to make such a claim. *See* D.E. 142-17 at KCC-Kurtz0004113 (Kimberly-Clark consumer data showing 82% of its flushable moist wipe users never had a sewer backup). These consumers stand in contrast to one like Mr. Belfiore, whom Kimberly-Clark understands to have used a flushable wipe (manufactured by a different company) just once and alleges it caused plumbing injury and therefore was not flushable upon that first use. *See* Belfiore's Mem. Supp. Class Cert., D.E. 58-1 at 5 in *Belfiore v. P&G*, No. 2:14-cv-4090 (E.D.N.Y.). In all events, these different outcomes show that the 0% or 100% proposition does not hold true based on the evidence in *Kurtz.*

*First*, undisputed evidence in this case shows that many putative class members do not buy flushable wipes based on claims of "flushability."  *See*, *e.g.*, K-C Mem. of Law in Support of Mot. to Deny Class Cert. [D.E. 85, 141] at 6–8, 23–24 (consumer study data showing that "flushability" is typically not a reason that consumers purchase flushable moist wipes, and many consumers choose not to flush flushable wipes); O'Connor Dep. [D.E. 142-4] at 40:21–41:1 (testifying that Kimberly-Clark conducted market research of the flushability claims and "didn't find interest from our consumers as a primary benefit"); *id.* at 112:5–13 (noting that "media" related to Cottonelle flushable wipes typically does not discuss dispersability because customers are much more interested in "clean and fresh" attributes).  Indeed, Plaintiff Kurtz himself first decided to buy Kimberly-Clark's flushable wipes because of the "hygiene" they provide (Kurtz Dep. [D.E. 142-1] at 135:12–15), continued to purchase Kimberly-Clark wipes after he no longer intended to flush them, *id*. at 39:8–16, 55:13–24, 66:7–13, and continued to purchase other brands of flushable wipes even after commencing this litigation, *id.* at 87:16–23, 92:25–93:9; D.E. 142-10 at 3.

Consistent with this evidence, the Court recognized that Dr. Kurtz has offered no evidence to suggest that Kimberly-Clark's "flushable" representation is material to consumers classwide or caused their purchases of flushable wipes.  *See* 2/2/17 Tr. (Ex. A) at 55:1–4 (The Court:  "I think it's rather weak without going forward with some assumption about what consumers think.  If consumers do not care one way or the other whether it's flushable, then [Plaintiff's damages expert's] testimony is useless."); *id.* at 55:9–11 (The Court: "There's no damages at all if a consumer bought this and didn't care whether they were flushable or not."); *id*. at 55:18–22 (The Court:  "If the label was not relevant to the reason for purchasing, then the purchase price was not predicated on flushability.  There has to be some causal connection at the

purchase point before price differential comes into being."); *see also Palmer v. CVS Health*, No. 2:15-cv-2928(JBW), slip op. at 5–6 (E.D.N.Y. Feb. 17, 2017).

And, if anything, the Court understated the case against certification. For example, consumer plaintiffs in prior litigation against Kimberly-Clark (*Sweeney v. Kimberly-Clark, et al.*, No. 8:14-cv-3201 (M.D. Fla.)), like Dr. Kurtz, continued buying flushable wipes after reaching the conclusion that they were not "flushable," and disposed of them in the trash after use instead of the toilet. D. Sweeney Dep. (Ex. E) at 20:7–24; 46:14–47:10; H. Sweeney Dep. (Ex. F) at 73:19–74:8; 235:4–9. These plaintiffs did so despite testifying that they found Kimberly-Clark's flushable wipes and other flushable wipes were more expensive than wipes not marketed as flushable. *See* D. Sweeney Dep. (Ex. E) at 47:11–49:2; H. Sweeney Dep. (Ex. F) at 75:17-25; 198:20-199:1. They explained that they continued purchasing flushable wipes for reasons wholly unrelated to "flushable" representations. *See* H. Sweeney Dep. (Ex. F) at 76:6–12, 287:7–12; D. Sweeney Dep. (Ex. E) at 48:25–50:4 (citing preference for "smaller and more [a]esthetically pleasing" products that "come in a smaller container which is more appropriate for the bathroom environment. Also the flushable wipes [unlike baby wipes] don't have cartoon characters on them and other things. They fit a lot easier in the cabinet or on the shelf behind the toilet."). Again, the Sweeneys' reasons for purchasing Kimberly-Clark's flushable wipes are consistent with Kimberly-Clark's own consumer research. Kimberly-Clark, *FCC [Flushable Cleaning Cloths] Preference Drivers Stated by Consumers* [D.E. 86-9] at KCC-Kurtz0000687. In light of such evidence, Dr. Kurtz plainly cannot show materiality or causation on a classwide basis.

*Second*, Dr. Kurtz has offered no proof that he will be able to demonstrate, assessed under any of the four standards for "flushable" set forth above (*supra* at p.7), that Kimberly-

Clark's challenged representation is material to absent class members or caused their purchases. For example, utilizing the amorphous "break[s] apart in a reasonable time" standard for flushability, 2/2/17 Tr. (Ex. A) at 61:17–18, there is no evidence whatsoever to suggest that consumers will find it material if, for instance, a given flushable wipe were to "break apart" in 20 minutes rather than 30 minutes (or in whatever other amount of time Plaintiff eventually determines to be "reasonable"). Indeed, Dr. Kurtz now ignores the only existing evidence in the record about whether dispersability is material to consumers—elicited in Kurtz's counsel's questioning of Kimberly-Clark's Rule 30(b)(6) witness on marketing—which shows unequivocally that dispersability is *not*. Ms. O'Conner testified: "Within our media, we typically don't talk about dispersability within our media platform. Q. Why not? A. *It wasn't something consumers were interested in hearing versus other benefits we could speak to.* Q. What other benefits? A. Essentially clean, clean and fresh, the purpose." D.E. 190-19 at 111:10–112:13; *see also id.* at 113:3–13 ("we have done a lot of qualitative testing around dispersability").

Similarly, there is *no* evidence that any consumer believes the speed or amount of strength loss to be material (although Kimberly-Clark's wipes unquestionably, by Mr. Villee's own admission, rapidly lose strength immediately upon flushing). And Plaintiff continues to ignore the only consumer survey evidence in the record, which shows that *contemporaneous with Dr. Kurtz's own purchase*, whether a wipe would flush successfully without damaging plumbing was 12th of 15 considerations driving Kimberly-Clark consumers' purchases of the wipes at issue here. Kimberly-Clark, *FCC [Flushable Cleaning Cloths] Preference Drivers Stated by Consumers* [D.E. 86-9] at KCC-Kurtz0000687.

Dr. Kurtz himself bears this out.  He made no mention of dispersability and strength loss being relevant to him during his deposition.  He also testified that he bought Kimberly-Clark (and Costco) wipes for their cleaning ability, and secondarily because they were flushable, and indeed even after commencing this litigation continued to buy those wipes and use them for other purposes.  This is consistent with (i) Kimberly-Clark's consumer surveys, which show that over 41% of consumers buy the wipes without determining whether they can be flushed, D.E. 86-15 at KCC-Kurtz0011211, and that over 30% of flushable wipe purchasers dispose of them in the trash, D.E. 142-16 at KCC-KURTZ0019465, and (ii) the Sweeney plaintiffs' testimony.  D. Sweeney Dep. (Ex. E) at 20:7–24; 46:14–47:10; H. Sweeney Dep. (Ex. F) at 73:19–74:8; 235:4–9.

Under such circumstances, class certification should be denied, and for this additional reason, Kimberly-Clark objects to the Court's contrary determination that it is likely to grant class certification.  *See*, *e.g.*, *In re Avon Anti-Aging*, 2015 WL 5730022, at *7 (denying certification for lack of predominance because of individualized causation inquiries required for GBL §§ 349, 350 claims based on product performance representations).[9]

### C.  Plaintiff Has Not Shown An Ability To Prove Damages On A Classwide Basis.

The Court also correctly recognized that no parallel can be drawn between flushable wipes and baby wipes to support a determination regarding the value of the "flushable" claim on defendants' products.  *See* 2/2/17 Tr. (Ex. A) at 39:4-16 ("I do not understand what the baby wipes have to do with the price differential with respect to flushable wipes. . . .  I do not see that the baby wipes and the flushable wipes are at all comparable.  They serve different purposes.

---

[9] Several of the causes of action for which Plaintiff seeks class certification also require reliance. *See* Kimberly-Clark Mem. Supp. Mot. to Deny Class Cert. [D.E. 85] at 22 & n.10.  Dr. Kurtz also has no classwide evidence to show reliance.

They have different problems in the sewage system. . . .  I really do not see how anyone would use baby wipes as a comparison.").

But Plaintiff's damages expert, Colin Weir, predicates his opinion that he may be able to show that consumers pay a premium for the "flushable" representation on the unfounded assumption that flushable wipes perform no different than those wipes *not* labeled "flushable." *See* Reply Brief Respecting Mootness [D.E. 277] at 32–33.  It is only on the basis of this assumption that Weir can suggest that class members are not receiving the value of the alleged "premium" paid for "flushable" wipes.  *Id.*   The only such *non*-flushable-labeled moist wipes that exist on the market, however, are baby wipes and other wipes that do not have the performance characteristics of flushable wipes.  *See* [D.E. 277] at 32–33 (collecting evidence demonstrating the difference in performance between flushable wipes and baby wipes).  Indeed, in discussing Mr. Weir's theory upon which Dr. Kurtz also relies, counsel for Mr. Belfiore expounded on Mr. Weir's baby wipes-derived premium at length:

> [Procter & Gamble's wipes labeled as flushable] are very similar to their baby wipes that they put out which they label non-flushable and charge a lot less than they charge for a product they label flushable, *but they basically operate the same, the baby wipes and the [flushable wipes]*.
>
> *                *                *
>
> One tank is labeled regular gas. One tank is labeled premium gas. The gas turns out to be the same. Okay? The person who purchased the premium is basically cheated out of the extra premium price at the tank. . . . That is the same thing that this class is saying.  They're saying the flushable label is bogus.  *It operates just like the baby wipes which is non-flushable and they charge a lot less for it*.

08/12/15 Tr. [*Belfiore*, 14-cv-4090, D.E. 127] at 5:15–20, 17:19–18:5 (emphases added); *id.* at 18:12–14 (explaining that Mr. Weir's premium theory would be based on the proposition that the wipes labeled flushable and the baby wipes labeled unflushable are "the same, basically.  They operate the same."); *id.* at 26:9–13, 26:23–27:14 (relying on baby wipes-based premium); *see*

*also* Weir Decl. [D.E. 84] ¶ 7 ("[T]he false 'flushable' claims have resulted in consumers paying a premium for the Products, i.e., that the Products were sold to all consumers at prices higher than if the Products did not make the claim."); *id.* ¶ 20 (stating that regression analysis would be based on comparison to packages of wipes not labeled as flushable); *id.* ¶ 39 (similar); *id.* ¶ 49 ("At my direction, Counsel for Plaintiff has obtained sales data . . . of flushable wipes, *other* wipes, and toilet tissue.") (emphasis added).

In light of the Court's correct determination that these products "are [not] at all comparable," 2/2/17 Tr. (Ex. A) at 39:15, Weir's assumptions that these products nevertheless perform equivalently are unfounded, and cannot support a finding of classwide damages or injury. For this additional reason, Kimberly-Clark objects to class certification being granted in this case under Rule 23(b)(3).

### D. Consistent With This Court's Observations, Kurtz Is Not An Adequate Class Representative Or Typical Of Putative Class Members.

The Court has rightly raised concerns over Dr. Kurtz's adequacy to serve as a class representative, stating: "I'm a little disturbed by your plaintiff. Is he a good representative if he's using these products to wipe down his car rather than wipe himself down?" 2/2/17 Tr. (Ex. A) at 51:13-15. The answer to this Court's question is that Dr. Kurtz would not be an adequate or typical representative for many reasons, including those the Court acknowledged. Any class trial upon Dr. Kurtz's claims will involve arguments and evidence directed at his many infirmities as a representative, including that he received wipes that performed as represented for a decade, such that he was not deceived or injured; that the initial clog in his New York home was caused by his wife's use of baby wipes (and his extremely poorly maintained plumbing); and that given Dr. Kurtz's continued use of flushable wipes after he believed they were not

flushable, defendants' "flushable" representations were clearly not material to, or the cause of, his purchases.

To recap, Dr. Kurtz first purchased Kimberly-Clark flushable wipes because of the "hygiene" they provide, Kurtz Dep. [D.E. 142-1] at 135:12–15, and he used Kimberly-Clark flushable wipes for approximately ten years without any clog. *Id*. at 133:16–25, 36:16–37:10. Within one week of moving into a different (older) home, and after his wife allegedly had been flushing non-flushable baby wipes down their toilets, Dr. Kurtz first experienced a clog. *Id*. at 17:10–20:21, 35:12–23, 61:17–62:20, 89:2–12, 109:6–19. After experiencing clogs, Kurtz continued to use and flush defendants' flushable wipes in his office building without incident. *Id*. at 130:22–132:11. He also continued to purchase and use flushable wipes for use at home, but disposed of them in the garbage instead of the toilet. *Id*. at 39:8–16, 55:13–24, 66:7–13. Moreover, after *filing this suit*, Kurtz continued to purchase and use Defendants' flushable wipes for use outside of the bathroom, "as a substitute for tissues, to clean a spill or a mess." *Id*. at 58:5–24, 59:17–60:3.

These facts and the inquiries they would trigger at trial render Dr. Kurtz atypical of the classes he purports to represent, and an inadequate class representative. *See*, *e.g. Gary Plastic Pkg. Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990) (denying certification based on lack of adequacy where plaintiff's "claim is subject to several unique defenses including its continued purchases of CDs through [defendant] despite having notice of, and having investigated, the alleged fraud"). And this is to say nothing of how Kurtz could be deemed adequate or typical (let alone within the putative class) if Plaintiff's counsel tries to prove deception through a definition of "flushable" other than the one that Kurtz understood.

Furthermore, with respect to evidence that Dr. Kurtz's clog was caused by non-flushable baby wipes and plumbing in disrepair, Plaintiff cannot get around this issue by simply dropping his claims for property damage.  How the product performed for him is the basis for any claim of deception here for the reasons shown above, and, moreover, forgoing an avenue of relief pleaded in the complaint—and indeed, the far more significant remedy in monetary terms—would subject the class to *res judicata* under New York law, thus making him an inadequate representative.  As the First Department has explained in holding that plaintiffs who disclaimed personal injury claims were inadequate representatives for an all purchaser class seeking relief under GBL § 349, "[u]nder New York's transactional approach to res judicata, once a claim is brought to final conclusion, all other claims arising out of the same transactions are barred, even if based on a different theory or seeking a different remedy.  Should these plaintiffs prevail, they will preclude all New York smokers' chances of bringing potentially more lucrative damages claims."  *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 11 (1st Dep't 1998), *aff'd*, 94 N.Y.2d 43 (1999).[10]

For these additional reasons, the Court should deny class certification.

## II.      KIMBERLY-CLARK OBJECTS TO CERTIFICATION OF A RULE 23(b)(2) CLASS.

Kimberly-Clark also objects to certification of any Rule 23(b)(2) class in this case.  In addition to the reasons set forth above that apply equally to a (b)(2) class, and because of Dr.

---

[10] *See, e.g.*, *Tegnazian v. Consolidated Edison, Inc.*, 730 N.Y.S.2d 183, 187–88 (Sup. Ct., N.Y. Cnty. 2000) (denying § 349 claim on adequacy grounds because representatives were willing to forgo personal injury claims, which "could inadvertently . . . preclude[] [absent class members] from seeking recovery on their claims under the doctrine of res judicata"); *id.* at 187 (denying certification on typicality grounds where representatives failed to seek certain categories of damages or reimbursement above a $2,000 cap); *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224 (3d Cir. 2009) ("[b]y seeking only partial relief, [plaintiff] may be engaging in claim splitting, which is generally prohibited by the doctrine of res judicata," and holding that district court abused discretion in certifying class without considering whether assertion of only consumer claims for economic loss would preclude personal injury claims).

Kurtz's lack of Article III standing to seek injunctive relief, [11] the injunctive relief sought would not benefit all putative class members but would instead potentially harm class members and profoundly disserve the public interest.  *Contra In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 827 F.3d 223, 238 (2d Cir. 2016) ((b)(2) certification is inappropriate where it found some members of the class "gain no appreciable benefit" and others "gain no benefit at all"), *cert. petition pending sub. nom.*, No. 16-710 (U.S.); *Amara v. CIGNA Corp.,* 775 F.3d 510, 520–21 (2d Cir. 2014) (suggesting Rule 23(b)(2) relief is inappropriate where there is evidence that putative classmembers will be "harmed by the . . . remedy").

As Plaintiff's counsel has represented to the Court, Dr. Kurtz seeks an injunction removing "flushable" claims from Kimberly-Clark's labeling or removing the product from the market.  *See* 2/2/17 Tr. (Ex. A) at 68:10–24; D.E. 282 at 3.  Despite this Court's suggestion, Plaintiff does not merely seek, for example, larger print on the product packaging, or an enhanced warning on the labeling.  *See* 2/3/17 Tr. (Ex. B) at 53:18–54:16.  Rather, Dr. Kurtz pursues the same injunctive relief that the FTC sought and obtained against Nice-Pak, but chose not to seek against Kimberly-Clark.  Thus, as previously set forth, an injunction here would be

---

[11] *See* Sept. 26, 2016 Tr. [D.E. 251] at 6:23–7:2 (The Court:  recognizing that plaintiffs in these cases "are not going to buy it again," which defeats standing under *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)).  Dr. Kurtz's counsel's comments at the hearing show why this is an even less appropriate case for injunctive relief, as he sought to sweep into his class definition Kimberly-Clark products involving technology that was not even on the market at the time of Dr. Kurtz's purchase.  *See* 02/02/17 Tr. (Ex. A) at 69:11–70:15, 71:13–16.  Contrary to Plaintiff's counsel's suggestion, as even Mr. Villee admits, the Kimberly-Clark substrates that have emerged over time are subject to different performance characteristics.  *See* D.E. 273 ¶ 17; Ex. C at PARSA003212; *see also* 2/2/17 Tr. (Ex. A) at 13:17–21 (explaining that Kimberly-Clark's flushable wipe has improved with every iteration and has evolved over time); Kimberly-Clark Mem. of Law in Opp. to Mot. for Class Cert. [D.E. 103] at 4-5 (outlining changes in product technology).  Particularly given that Plaintiff's definition of "flushable" is currently unknown, and the possibility that it may depend on the specific level of "dispersability" or "strength loss" these product changes are significant, and it is not accurate to merely conclude that "it's essentially the same product."  2/2/17 Tr. (Ex. A) at 13:22.

entirely inconsistent with FTC's actions regarding Kimberly-Clark wipes.  Plaintiff's assertion

that Kimberly-Clark flushable wipes fail to meet an undefined measure of "flushability" should

not be used to supplant FTC's determinations.[12]

Indeed, to do otherwise would cause considerable harm to consumers and the public.

Whether "flushability" is assessed by the likelihood of causing clogs in consumer homes, or the

ability to lose strength or disperse, non-flushable products are indisputably more problematic for

consumers' plumbing systems than "flushable" wipes.  D.E. 278-1 at 42 (of 59) (PARSA000005)

(Villee: "[i]f flushable wipes . . . leave the marketplace the consumer will seek out alternatives,

namely baby wipes. . . . Regulating flushable wipes instead of personal hygiene wipes could

actually cause the problems in our sewers to become worse."); Ned Lynch, *Wipes wreak havoc

on wastewater plants*, the Day (May 7, 2016) http://www.theday.com/local/20160507/wipes-

wreak-havoc-on-wastewater-plants ("'What we don't want is a ban on wipes being called

flushable,' said [Cynthia] Finley, [director of regulatory affairs at the National Association of

Clean Water Agencies], because research has shown people instead will buy baby wipes — a

plastic product that will cause just as much, if not more, damage.").  Accordingly, granting an

injunction in this case will only remove important labeling information and create consumer

confusion between products that the Court has already recognized have drastic performance

differences.  *See*, *e.g.*, 2/2/17 Tr. (Ex. A) at 34:21–24, 39:14–16, 40:4–5; *see also* Ex. C at

PARSA003212, 3214–15 (Villee's recognition of such differences).  This is not a proper role for

a 23(b)(2) class action.

---

[12] Contrary to the Court's fear, the FTC's decision-making process is not a "black box."  2/2/17
Tr. (Ex. A) at 67:13-17.  Rather, Kimberly-Clark submitted a Declaration to the Court
articulating the specific information submitted to and considered by the FTC before closing its
investigation of Kimberly-Clark.  *See* Cole Declaration [D.E. 269].  None of this information has
been either lost or destroyed.  Kimberly-Clark has retained its FTC submissions.

## CONCLUSION

For the foregoing reasons, Kimberly-Clark objects to this Court's expressed intention to grant certification of Dr. Kurtz's claims against Kimberly-Clark under either Rule 23(b)(2) or (b)(3).

Dated: February 17, 2017

Respectfully submitted,

/s/ Eamon P. Joyce

Eamon P. Joyce
ejoyce@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

Kara L. McCall (*pro hac vice*)
kmccall@sidley.com
Daniel A. Spira (*pro hac vice*)
dspira@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

*Attorneys for Kimberly-Clark Corporation*