UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

D. JOSEPH KURTZ, Individually and on         :    Civil Action No. 1:14-cv-01142-PKC-RML
Behalf of All Others Similarly Situated,     :
                                             :    CLASS ACTION
                        Plaintiff,           :
                                             :
            vs.                              :
                                             :
KIMBERLY-CLARK CORPORATION, et al.,          :
                                             :
                        Defendants.          :
                                             :
———————————————————— x

GLADYS HONIGMAN, Individually and on         :    Civil Action No. 2:15-cv-02910-PKC-RML
Behalf of All Others Similarly Situated,     :
                                             :    CLASS ACTION
                        Plaintiff,           :
                                             :
            vs.                              :
                                             :
KIMBERLY-CLARK CORPORATION,                  :
                                             :
                        Defendant.           :
                                             :
———————————————————— x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND OF THE LITIGATION.............................................................3

I. LITIGATION HISTORY ........................................................................3

II. SETTLEMENT NEGOTIATIONS ........................................................7

III. THE SETTLEMENT ..............................................................................7

ARGUMENT .......................................................................................................9

IV. THE STANDARDS FOR PRELIMINARY APPROVAL OF A PROPOSED
CLASS ACTION SETTLEMENT ..........................................................9

V. THE SETTLEMENT SATISFIES THE RULE 23(E)(2) FACTORS.............................11

   A. Plaintiffs and Class Counsel Have Adequately Represented the Settlement
   Class ...........................................................................................11

   B. The Settlement Was Negotiated at Arm's Length .................................12

   C. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of
   Trial and Further Appeals ...........................................................12

   D. The Proposed Method for Distributing Relief Is Effective....................14

   E. Attorneys' Fees and Expenses .........................................................17

   F. The Parties Have No Additional Agreements.......................................18

   G. Settlement Class Members are Treated Equitably .................................18

VI. THE SETTLEMENT ALSO SATISFIES THE REMAINING *GRINNELL*
FACTORS...............................................................................................18

   A. The Ability to Withstand a Greater Judgment ....................................18

   B. The Range of Reasonableness of the Settlement Fund in Light of the Best
   Possible Recovery.........................................................................19

   C. The Range of Reasonableness of the Settlement to a Possible Recovery in
   Light of All the Attendant Risks of Litigation....................................20

VII. THE SETTLEMENT CLASS SHOULD BE CERTIFIED.............................21

**Page**

CONCLUSION.............................................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017), *cert. denied sub nom.*,
    *ConAgra Brands, Inc. v. Briseno*,
    138 S. Ct. 313 (2017)......................................................................................21

*Chavarria v. N.Y. Airport Serv., LLC*,
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) .........................................................12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).....................................................................2, 10

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013).........................................................................................13

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).............................................................................18

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) .........................................................22

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).......................................................................................14

*Gonzalez v. City of N.Y.*,
    396 F. Supp. 2d 411 (S.D.N.Y. 2005).........................................................16

*Hecht v. United Collection Bureau, Inc.*,
    691 F.3d 218 (2d Cir. 2012)...........................................................................16

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
    818 F.2d 145 (2d Cir. 1987)...........................................................................16

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)..........................................................12

*In re MetLife Demutualization Litig.*,
    262 F.R.D. 205 (E.D.N.Y. 2009) ..................................................................16

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) .....................................................................12

**Page**

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................9, 10

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................17

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514
    (E.D.N.Y. Oct. 23, 2012) ...................................................................18

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)..................................................................3

*Kurtz v. Costco Wholesale Corp.*,
    768 F. App'x 39 (2d Cir. 2019) .............................................................5

*Padovano v. FedEx Ground Package Sys.*,
    No. 16-CV-17-FPG, 2019 U.S. Dist. LEXIS 107092
    (W.D.N.Y. June 10, 2019) ..................................................................10

*Pettit v. Procter & Gamble Co.*,
    2017 WL 3310692
    (N.D. Cal. Aug. 3, 2017)......................................................................22

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).............................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................2, 9, 12, 14

*Zink v. First Niagara Bank, N.A.*,
    155 F. Supp. 3d 297 (W.D.N.Y. 2016) ................................................16

## STATUTES, RULES AND REGULATIONS

General Business Law
    §349...................................................................................................3, 5, 22
    §349(h)....................................................................................................21
    §350........................................................................................................3, 5

Page

Federal Rules of Civil Procedure

    Rule 23 ...............................................................................................10, 14

    Rule 23(b)(2) ...................................................................................................6

    Rule 23(b)(3) ............................................................................................3, 6

    Rule 23(c)(2)(B) .......................................................................................14, 15

    Rule 23(c)(3) .................................................................................................15

    Rule 23(e) .......................................................................................................9

    Rule 23(e)(1) .............................................................................................2, 3

    Rule 23(e)(1)(B)(i-ii) .....................................................................................9

    Rule 23(e)(1)(B)(ii) .....................................................................................21

    Rule 23(e)(2) ........................................................................................2, 9, 10

    Rule 23(e)(2)(A) ..........................................................................................11

    Rule 23(e)(2)(A)-(D) ...................................................................................10

    Rule 23(e)(2)(B) ..........................................................................................12

    Rule 23(e)(2)(C)(iii) ....................................................................................17

    Rule 23(e)(2)(C)(iv) ....................................................................................18

    Rule 23(e)(2)(D) ..........................................................................................18

    Rule 23(e)(3) ...................................................................................................9

    Rule 23(f) ..................................................................................................5, 11

## SECONDARY AUTHORITIES

Manual for Complex Litigation, Third,

    §30.42 (1995) ...............................................................................................3

Representative plaintiffs Dr. D. Joseph Kurtz and Gladys Honigman ("Plaintiffs"), on behalf of themselves and all Settlement Class Members, respectfully submit this memorandum of law in support of their motion for preliminary approval of a proposed class action settlement ("Settlement") with defendant Kimberly-Clark Corporation ("Kimberly-Clark" or "Defendant," and with Plaintiffs, the "Settling Parties"), the terms and conditions of which are set forth in the Settlement Agreement submitted herewith.[1]

## INTRODUCTION

The Settlement provides significant relief to Settlement Class Members to resolve two class action cases – the first of which was filed over eight years ago – including aggregate cash payments of up to $20 million to purchasers of Kimberly-Clark's flushable wipes Products. The total monetary relief available to each Settlement Class Member under the Settlement is greater than in any other flushable wipes-related settlement to date, including the settlement in *Belfiore v. The Procter & Gamble Company*, Case No. 2:14-cv-04090-RPK-RML (E.D.N.Y.) (the "*Belfiore* Action"), which was approved by this Court in July 2020 and in turn provided greater monetary relief than any prior flushable wipes-related settlement at the time.

Under the Settlement, Settlement Class Members who submit a Valid Claim without Proofs of Purchase can receive a payment of seventy cents ($0.70) per package for up to ten (10) packages of wipes, for a total payment of seven dollars ($7.00) (more than 11% improvement over the *Belfiore* settlement). Moreover, Settlement Class Members who have Proofs of Purchase can receive a payment of one dollar and ten cents ($1.10) for each package of wipes, up to a total of $50.60 per claimant, which is more than the total payment amount available in the *Belfiore* Action. For

---

[1]  All capitalized terms not defined in this memorandum shall have the same meanings ascribed to them in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Vincent M. Serra in support of Plaintiffs' motion (the "Serra Declaration"). Unless otherwise noted, all emphasis is added and internal quotations and citations are omitted throughout.

example, under the proposed Settlement, a Settlement Class Member who submits a Valid Claim with Proofs of Purchase for forty-six (46) packages of wipes would receive a payment of $50.60, whereas that same claimant under the *Belfiore* settlement would have received a payment of $46.20 (a nearly 10% improvement over the *Belfiore* Action).

The Settlement is noteworthy given the price premium associated with the Products' "flushable" representation, and the Products' performance during the Settlement Class Period. For example, Plaintiffs' expert in the *Kurtz* Action determined that a Kimberly-Clark wipe labeled as "flushable" carries a 6.2% price premium over a wipe without the flushability claim, whereas that same expert in the *Belfiore* Action determined that a Freshmates wipe labeled as "flushable" carries a 7.95% price premium. In other words, while the premiums associated with the "flushable" representations in the Actions (defined below) here are *less* than the premiums associated with similar representations in the *Belfiore* Action, Plaintiffs secured *more* available monetary relief per claimant under the Settlement here. And Plaintiffs obtained these results despite the fact that the Products generally performed better – *i.e.*, they dispersed faster and broke down more quickly – during the Settlement Class Period than any other flushable wipes product available on the market.

In determining whether preliminary approval is warranted, the issue before the Court is whether the Court will likely be able to approve the Settlement under Rule 23(e)(2) of the Federal Rules of Civil Procedure and certify the Settlement Class for purposes of settlement and entering a judgment. Fed. R. Civ. P. 23(e)(1). The Settlement satisfies each of the elements of Rule 23(e)(2), and thus the standard for preliminary approval because it is within "the range of reasonableness." *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). There is a presumption of fairness because the Settlement was reached after substantial discovery and arm's length negotiations. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting

the Manual for Complex Litigation, Third, §30.42 (1995)); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). Accordingly, notice of the Settlement should be given to Settlement Class Members, and a hearing should be scheduled to consider final settlement approval.

Because the Settlement meets the foregoing criteria and is well within the range of what might be approved as fair, reasonable, and adequate, Plaintiffs ask this Court to enter an Order: (1) granting preliminary approval of the Settlement; (2) certifying a Rule 23(b)(3) class for settlement purposes; (3) appointing Plaintiffs as class representatives; (4) appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Settlement Class Counsel; (5) approving the Settling Parties' proposed form and method of giving notice of pendency and settlement of the Actions to the Settlement Class under Fed. R. Civ. P. 23(e)(1); and (6) scheduling a Settlement hearing for final approval of the Settlement and Settlement Class Counsel's application for an award of attorneys' fees and expenses incurred in representing the Settlement Class.

## BACKGROUND OF THE LITIGATION

## I.    LITIGATION HISTORY

On February 21, 2014, Dr. Kurtz filed a class action lawsuit, currently pending as *Kurtz v. Kimberly-Clark Corp., et al.*, 1:14-cv-01142-PKC-RML (the "*Kurtz* Action"), against Kimberly-Clark and Costco Wholesale Corporation ("Costco," and collectively, "Defendants") in the United States District Court for the Eastern District of New York, seeking damages and injunctive relief, and asserting claims on behalf of himself and other similarly situated consumers for, *inter alia*, violations of General Business Law ("GBL") §§349-350. *See* ECF No. 1.[2] The *Kurtz* Action alleges that the wipes products sold by Defendants as "flushable" and "safe" for sewer and septic systems are not suitable for disposal by flushing down a toilet, are not regarded as flushable

---

[2]   All references to "ECF No. ___" are to the docket in the *Kurtz* Action.

by municipal sewage system operators, do not disperse upon flushing, and routinely damage or clog plumbing pipes, septic systems, and sewage lines and pumps.

On November 18, 2014, the District Court granted expedited discovery for purposes of class certification.  The following month, Defendants inspected Dr. Kurtz's home plumbing system and took his deposition.   Dr. Kurtz's counsel took the depositions of Kimberly-Clark's 30(b)(6) deponents on February 3, 2015 (Amanda O'Connor) and February 5, 2015 (David Powling). Dr. Kurtz's counsel also took 30(b)(6) depositions of third party Nice-Pak on January 29, 2015 (Jeffrey Hurley) and February 9, 2015 (Kim Babusik) and defendant Costco on February 13, 2015 (Kim Walior).  In September 2014, Kimberly-Clark began its rolling production of documents in connection with class certification, and continued producing documents through late January 2015. The productions included, among other things, documents pertaining to labeling, market and consumer research, trade organizations, communications with municipalities, and customer complaints.  In response to Defendants' discovery requests, Dr. Kurtz completed his production of documents on December 9, 2014.

Between February and May 2015, the parties submitted numerous briefs on their motions for and against certification, along with supporting expert reports.  Dr. Kurtz submitted expert reports from Colin B. Weir on the issues of damages (and relatedly, injury) while Kimberly-Clark submitted rebuttal expert reports from Dr. Keith R. Ugone, and a report from John T. Boyer, Sr., who opined as to the condition of Dr. Kurtz's plumbing system.  In June and July 2015, the Court held a two-day "Science Day" tutorial hearing so that it could better understand how flushable wipes work and perform.  At the Science Day hearing, Dr. Kurtz presented the testimony of Robert A. Villée, the former Executive Director of the Plainfield Area Regional Sewerage Authority ("PARSA") and Water Environment Federation ("WEF") Collection Systems Committee Chair, and environmental

- 4 -

engineer Daniel H. Zitomer.  Kimberly-Clark, in turn, presented the testimony from its witness, Mr. Powling, a Technical Leader for Kimberly-Clark's "flushable" wipes products.

On May 20, 2015, Ms. Honigman filed a similar class action, currently pending as *Honigman v. Kimberly-Clark Corp.*, 2:15-cv-02910-PKC-RML (the "*Honigman* Action" and, together with the *Kurtz* Action, the "Actions"), against Kimberly-Clark seeking damages and injunctive relief, asserting claims on behalf of herself and other similarly situated consumers for, *inter alia*, violations of GBL §§349-350.  *See Honigman*, ECF No. 1.  The Court stayed the *Honigman* Action on February 27, 2017, pending resolution of the motion for class certification in the *Kurtz* Action, as discovery had not yet started in the *Honigman* Action and the Court found the issues in the cases were "largely the same[.]"  ECF No. 292 at 6.

On March 27, 2017, the Court issued a 131-page order certifying a class as to Kimberly-Clark consisting of "[a]ll persons and entities who purchased Kimberly-Clark Flushable Products in the State of New York between February 21, 2008 and March 1, 2017[.]"  ECF No. 296 ("Certification Order") at 130.  Following the Certification Order, the Second Circuit Court of Appeals granted Defendants' petition for appellate review of the order under Rule 23(f).  After oral argument, heard on April 10, 2019, the Court of Appeals issued a Summary Order concluding "that further development of the record is appropriate" to decide whether Defendants' predominance argument has any merit, and remanding the action.  *Kurtz v. Costco Wholesale Corp.*, 768 F. App'x 39, 40 (2d Cir. 2019).  Between August 6 and 12, 2019, the District Court held four days of evidentiary hearings in the *Kurtz* and *Belfiore* matters.  At the conclusion of the hearings, the parties exchanged extensive supplemental post-hearing briefing between September 11, 2019 and September 23, 2019 on the issues of causation and injury, and on striking expert testimony.  On October 8, 2019, the District Court held another hearing to consider the parties' arguments in

connection with the evidentiary hearing and issues remanded by the Court of Appeals.  On October 25, 2019, the District Court issued an order denying the parties' motions to exclude expert testimony and reasserting the Certification Order.  ECF No. 382.

Following Judge Jack B. Weinstein's recusal, the *Kurtz* and *Honigman* Actions were reassigned to Judge Pamela K. Chen on February 12, 2020 and March 4, 2020, respectively.  On June 26, 2020, the Court of Appeals affirmed the Certification Order as to the damages class under Rule 23(b)(3), reversed the Certification Order as to the injunctive relief class under Rule 23(b)(2), and remanded to the District Court for further proceedings.  *See Kurtz v. Kimberly-Clark Corp., et al.*, No. 17-1856 (2d Cir. June 26, 2020), ECF No. 293-1 (the "Second Circuit Order").  On August 14, 2020, the Court in the *Honigman* Action held a conference where Magistrate Judge Levy approved the parties' proposed case management order.  On September 8, 2020, Defendants filed requests for a pre-motion conference in the *Kurtz* Action in connection with their intended motions for summary judgment. ECF Nos. 403-4.  Following Dr. Kurtz's response to Defendants' request and the pre-motion conference held on October 22, 2020, Defendants decided to delay filing their motions for summary judgment until following fact and expert discovery.

On November 25, 2020, the Court entered an order setting forth dates for, *inter alia*, discovery and dispositive motions governing the Actions, which have since been extended.  Throughout 2021, the parties amended their initial disclosures, served and/or responded to document requests, interrogatories, and a request to inspect Ms. Honigman's property, and Kimberly-Clark produced tens of thousands of additional pages of documents.  On December 31, 2021, after reaching an agreement in principle to settle Plaintiffs' claims against Kimberly-Clark in the Actions, the Court stayed all case deadlines as they pertain to Kimberly-Clark to allow the parties time to document the Settlement.

## II.      SETTLEMENT NEGOTIATIONS

Plaintiffs and Kimberly-Clark have been engaged in settlement negotiations since at least mid-to-late 2018.  These discussions have not only encompassed dozens of telephone calls between counsel, but also two separate multi-day settlement sessions at and nearby Kimberly-Clark's offices in Neenah, Wisconsin, and a follow-up videoconference with Kimberly-Clark's in-house counsel and flushable wipes technical personnel.  The first multi-day in-person settlement session took place in December 2018, and included meetings, discussions and testing of Kimberly-Clark's flushable wipes.  Following the December 2018 session, the parties continued negotiations, including discussing the possibility of mediation, and Plaintiffs' counsel sent Kimberly-Clark's counsel settlement proposals in March 2019.  The second multi-day settlement session took place in July 2019, and consisted of further discussions and testing of flushable products at Kimberly-Clark's offices and testing facility.

While the parties' early discussions did not result in a settlement, they continued to pursue resolution of the Actions and participated in a mediation with the Honorable Wayne R. Andersen (Ret.) on July 22, 2020.  That mediation also did not result in a settlement, however, the parties resumed discussions in late August and September 2021, with Plaintiffs' counsel providing Kimberly-Clark a formal settlement proposal on September 22, 2021.  The parties continued to negotiate the contours of a potential settlement during the following months and began working on a memorandum of understanding (the "MOU") in December 2021.  On December 29, 2001, the parties executed the MOU.  Over the following several months the parties negotiated the terms of the Settlement Agreement, which was fully executed on April 5, 2022.

## III.     THE SETTLEMENT

As outlined in the Settlement Agreement, ¶2.4, each Settlement Class Member who submits a Valid Claim without Proof of Purchase will receive a payment of seventy cents ($0.70) for each

- 7 -

package of wipes purchased during the Settlement Class Period, regardless of the price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to the following limitations: a maximum of seven dollars ($7.00) (*i.e.*, a maximum of 10 packages) will be paid on any claim submitted by any Household for claimed purchases that are not corroborated by Proof of Purchase, and only one claim may be submitted per Household (either with or without proof of purchase, but not both).

Alternatively, each Settlement Class Member who submits a Valid Claim corroborated by Proof of Purchase will receive a refund of one dollar and ten cents ($1.10) for each Product package purchased during the Settlement Class Period, regardless of the price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to the following limitation: a maximum of fifty dollars and sixty cents ($50.60) (*i.e.*, maximum of 46 packages) will be paid on any claim submitted by any Household for claimed purchases that are corroborated by Proof of Purchase, and only one claim may be submitted per Household (either with or without Proof of Purchase, but not both). *Id.*

In addition, a $20 million cap on all claims made shall apply. Settlement Agreement, ¶2.5. If the Valid Claims exceed the cap, the Claims Administrator will fulfill all Valid Claims on a *pro rata* basis so that the total amount of payments does not exceed the cap. *Id.* The Claims Administrator will be responsible for processing Claim Forms and administering the Settlement Website, opt-out process, and Settlement claims process described herein. *Id.* at ¶2.6. Plaintiffs' proposed method for distributing relief and providing notice to Settlement Class Members is discussed below in §IV(D).

The Settlement would resolve Plaintiffs' claims against Kimberly-Clark in both the *Kurtz* and *Honigman* actions.[3]

## ARGUMENT

## IV. THE STANDARDS FOR PRELIMINARY APPROVAL OF A PROPOSED CLASS ACTION SETTLEMENT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *See Wal-Mart Stores*, 396 F.3d at 116. Pursuant to Rule 23(e), in weighing requests for preliminary settlement approval, district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i-ii); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).

Rule 23(e)(2) requires that the Settlement be fair, reasonable, and adequate, and directs courts to consider whether:

    A. the class representatives and class counsel have adequately represented the class;

    B. the proposal was negotiated at arm's length;

    C. the relief provided for the class is adequate, taking into account:

        i. the costs, risks, and delay of trial and appeal;

        ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        iii. the terms of any proposed award of attorney's fees, including timing of payment; and

        iv. any agreement required to be identified under Rule 23(e)(3); and

---

[3] While Dr. Kurtz's injunctive claims were dismissed by the Second Circuit Court of Appeals, his counsel obtained a commitment by Kimberly-Clark that its flushable wipes products will fully comply with the International Water Services Flushability Group ("IWSFG") Publicly Available Standards ("PAS") – the wastewater industry's gold standard for flushability – by May 1, 2022 through a court-approved class action settlement on behalf of wastewater entities in *Commissioners of Public Works of the City of Charleston v. Costco Wholesale Corporation, et al.*, No. 2:21-cv-00042-RMG (D.S.C.). Plaintiffs' counsel are confident that Kimberly-Clark is on track to meet that commitment.

D.  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).  The Advisory Committee Notes recognize that the first two requirements (paragraphs A and B) constitute the procedural aspects of the proposed settlement while the last two (paragraphs C and D) constitute the substantive aspects of the proposed settlement.  Fed. R. Civ. P. 23, Advisory Committee Notes to 2018 Amendment ("Committee Notes").

After considering the Rule 23(e)(2) factors, courts then consider the "additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors."  *Payment Card*, 330 F.R.D. at 29 (citing *Grinnell*, 495 F.2d 448).  As the Committee Notes explain, the factors listed in the new Rule 23(e)(2) are intended to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Committee Notes, Subdivision (e)(2).  There is substantial overlap between the new factors and the nine *Grinnell* factors, and only three *Grinnell* factors remain unique: "the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Payment Card*, 330 F.R.D. at 29 n.22.  *But see Padovano v. FedEx Ground Package Sys.*, No. 16-CV-17-FPG, 2019 U.S. Dist. LEXIS 107092, at *7 n.2 (W.D.N.Y. June 10, 2019) (recognizing the new Rule 23(e)(2) factors are so similar to the *Grinnell* factors that no separate analysis is necessary).

In sum, "[c]ourts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval."  *See Payment Card*, 330 F.R.D. at 28.  As shown below, Plaintiffs easily meet this standard.

## V.      THE SETTLEMENT SATISFIES THE RULE 23(E)(2) FACTORS

### A.      Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

Plaintiffs and Settlement Class Counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently prosecuting the Actions.  Plaintiffs have vigorously litigated the *Kurtz* and *Honigman* Actions since 2014 and 2015, respectively.  In that time, counsel have had more than thirty appearances before Judges Weinstein and Chen, Magistrate Judge Levy and the Second Circuit Court of Appeals, including oral arguments, evidentiary hearings, settlement conferences, and status conferences.   Settlement Class Counsel have vigorously opposed Defendant's plethora of substantive motions, including its motion to dismiss (ECF No. 18), and motion to deny class certification (ECF No. 82).  Settlement Class Counsel have also litigated its own motions, including extensive briefing in connection with Dr. Kurtz's class certification motion (*see, e.g.*, ECF Nos. 81, 290, 359) and the related interlocutory appeal to the Court of Appeals under Rule 23(f).  Plaintiffs have been successful prosecuting the Actions and achieved certification of heavily-litigated classes which the Court sustained as to the damages classes on remand from the Court of Appeals.

Settlement Class Counsel have also conducted discovery of both Kimberly-Clark and third parties, and defended the deposition of Dr. Kurtz.  Meanwhile, Settlement Class Counsel deposed Kimberly-Clark's 30(b)(6) representatives and examined its expert and marketing witnesses in Court.  Settlement Class Counsel also reviewed thousands of pages of documents produced by Kimberly-Clark and presented witness testimony over multiple days of hearings.  The record makes clear that Settlement Class Counsel were fully informed as to the viability of the claims and risks to both sides absent the Settlement.

- 11 -

### B.     The Settlement Was Negotiated at Arm's Length

Plaintiffs and Settlement Class Counsel negotiated the Settlement at arm's length with Kimberly-Clark over a significant period of time and after meaningful discovery.  *See Wal-Mart Stores*, 396 F.3d at 116 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").  Indeed, Plaintiffs and Kimberly-Clark have been engaged in settlement negotiations since 2018.  These discussions have not only encompassed dozens of telephone calls between counsel, but also two separate multi-day settlement sessions at and nearby Kimberly-Clark's offices in Wisconsin, a follow-up videoconference with Kimberly-Clark's in-house counsel and "flushable" wipes technical personnel, and a mediation on July 22, 2020. Counsel for both sides are experienced class action attorneys and have fully evaluated the strengths, weaknesses, and equities of their positions.  Settlement Class Counsel believe that the Settlement is in the best interests of the Settlement Class, considering the costs and risks of continued litigation. The opinion of experienced counsel supporting the Settlement is entitled to considerable weight. *See, e.g.*, *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 172 (E.D.N.Y. 2012); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

### C.     The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Further Appeals

Consistent with the instructions of Rule 23(e)(2)(B), Courts have long recognized that "[e]ssential to analyzing a settlement's fairness is 'the need to compare the terms of the compromise with the likely rewards of litigation.'"  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013).  The question for the Court is not whether the Settlement represents the highest recovery possible, but whether it represents a reasonable one in light of the many uncertainties the class faces.  *Id.*  Here, Kimberly-Clark argued vigorously to this Court and on appeal that Dr. Kurtz

- 12 -

failed to establish injury and causation with common proof at the class certification stage, and relatedly that the hedonic regression analysis set forth by Plaintiff's expert, Colin B. Weir, failed to comply with the rules articulated in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).  While the Court ultimately accepted Mr. Weir's analysis at the class certification stage, there is no guarantee that the Court or a jury would reach a similar conclusion at summary judgment or trial when weighing the evidence about Mr. Weir's judgments in developing and performing his model, as well as the extrapolation of the results of his model to certain time periods or products.  *See, e.g.*, Second Circuit Order at 8-9 (noting that "[a] factfinder may ultimately agree" with "Defendants' central contention [] that Weir's analysis either does not or cannot establish a price premium because of issues such as an incomplete dataset, flawed parameters of the regression, or business considerations not captured by the model").  Even if successful, continued litigation presents considerable expenses.

The Court has emphasized its belief that class members would be best served by a meaningful settlement instead of continued litigation, and has repeatedly encouraged the parties in the Actions to pursue that aim.  *See, e.g*., ECF No. 216 at 7-8 (reviewing continued efforts by the Court to encourage settlement).  The Settlement here provides significant economic relief in the form of cash payments associated with class members' purchases of Defendants' Products, but continued litigation would not guarantee greater relief or even any relief at all.  Rather, without the Settlement, there is a very real risk that the Settlement Class will receive lesser relief or nothing at all (*e.g*., the factfinder may ultimately agree that Plaintiffs' expert analysis will fail to establish a price premium).  The immediate benefits presented by the Settlement, particularly when viewed in the context of the risks, costs, delay and uncertainties of further proceedings, weigh heavily in favor of preliminary approval.

Thus, the Settlement is in line with the Court's long-standing preference for negotiated resolution, is adequate in light of the expenses and uncertainties of continued litigation, and it materially improves on the relief provided in previous flushable wipes-related settlements in several ways, as described herein.

### D.     The Proposed Method for Distributing Relief Is Effective

The proposed Notice Plan and Claim Form comport with the procedural and substantive requirements of Rule 23.  Indeed, similar notice plans and claim forms were approved by this court in the *Belfiore* Action and by the court in *Pettit v. The Procter & Gamble Company*, No. 3:15-cv-2150-RS (N.D. Cal.) (the "*Pettit* Action").  Under Rule 23, due process requires that class members receive notice of the settlement and have an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort").  The Federal Rules require that this Court "direct to class members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  The mechanics of the notice process are left to the discretion of the court, subject only to the broad reasonableness standards imposed by due process.  *Wal-Mart Stores*, 396 F.3d at 113 ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.").  "[N]otice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding."  *Id.* at 114.  The recent amendments to Rule 23 clarify that electronic means may be used.

The Class Notice provided for in the Settlement contains all the requisite information required by the Federal Rules: it informs Settlement Class Members about the proposed Settlement; their right to opt out or object; the right to file a claim; a summary of settlement benefits; the

- 14 -

prospective request for attorneys' fees and expenses, and awards to the Plaintiffs; and the fact that Settlement Class Members will be bound by the judgment if they do not opt out.[4]  Notice will consist of the following:

> (1) a Settlement Website containing the Long Form Notice, the Summary Notice, answers to frequently asked questions, contact information for the Claims Administrator and Settlement Class Counsel, this Settlement Agreement, the signed order of Preliminary Approval, a downloadable and online version of the Claim Form, a downloadable and online version of the form by which Settlement Class Members may opt out of the Settlement Class, and other settlement-related materials filed by the Settling Parties or the Court;

> (2) an online advertising plan designed to reach 72% of Settlement Class Members, on average three times, including:

>> (a) online display banner advertising targeting Cottonelle, Kotex, Pull-Ups, Scott and Poise brand purchasers,

>> (b) keyword search online advertising showing advertisements to users in their Google search results, and

>> (c) social media through Facebook and Instagram targeting, *e.g.*, followers of Kimberly-Clark pages, and through YouTube and Pintrest targeting, *e.g.*, content related to flushable wipes or related search terms; and

> (3) a toll free information line that Settlement Class Members can call 24 hours a day to obtain information about the Settlement.

*See* Declaration of Jeanne C. Finegan, APR Concerning Proposed Settlement Class Member Notification (the "Finegan Declaration," attached as Exhibit 2 to the Serra Declaration), submitted herewith; Settlement Agreement, Ex. A at 1-2.  The online advertising will refer Settlement Class Members to the Settlement Website containing the Long Form Notice, Summary Notice, Claim Form and other case-related documents.

---

[4]  Pursuant to Rule 23(c)(2)(B), a notice must concisely and clearly state in plain, easily understood language the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed Notice Plan is reasonable and comports with due process.  As explained in the Finegan Declaration, this method is the best notice practicable and is reasonably designed to reach a significant portion of Settlement Class Members nationwide.  *See* Finegan Decl. at ¶¶4, 29; *see also* 2018 Advisory Comm. Note, Amended Rules, p. 16 ("courts and counsel have begun to employ new technology to make notice more effective"); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) ("Constructive notice by publication may be sufficient to satisfy due process 'as to persons whose whereabouts or interests c[an] not be determined through due diligence'" (citing *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 168 (2d Cir. 1987)); *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 314 (W.D.N.Y. 2016) ("To the extent . . . that individual members cannot be identified, notice by publication is sufficient.").  In fact, the online advertising will run for a period of forty-five (45) days – *50% longer* than the advertising campaign implemented in the *Belfiore* settlement – which will facilitate maximizing Settlement Class Member participation in the Settlement.  *Compare* Settlement Agreement, Ex. A at 1 *with Belfiore*, ECF No. 351-3, Ex. A at 1.

Direct notice to the Settlement Class is not a reasonable method of notice, as the Products are sold through third-party retailers, and, unlike private label retailers such as defendant Costco, Kimberly-Clark does not have records of purchaser identities.  *See In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009).  In view of the millions of members of the class, notice to class members by individual postal mail, email, or radio or television advertisements, is neither necessary nor appropriate.  The publication notice ordered is appropriate and sufficient in the circumstances."); *Gonzalez v. City of N.Y.*, 396 F. Supp. 2d 411, 416 (S.D.N.Y. 2005) (Though publication notice is not sufficient when the names and addresses of potential class members can be ascertained . . . "[i]t is not necessary that every class member receive actual notice, so long as class

counsel acted reasonably in selecting means likely to inform persons affected"); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("Because defendants do not have a list of potential class members, the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action[.]"). In counsel's judgment, notice resources are better spent on online publications than in traditional print publications in this particular case.

Settlement Class Members who seek benefits under the Settlement will need to fill out a simple Claim Form online unless they are submitting the actual label or bar code portion of the Products as Proof of Purchase. They also have the option to print copies and mail the Claim Form to the Claims Administrator. The Claim Form requires Settlement Class Members to certify under the penalty of perjury: (1) their name and address; and (2) basic information about the Products purchased for which they are claiming a payment, including the quantity, where the Product was purchased, and that the purchases were not made for purposes of resale. Settlement Agreement, ¶2.3. The Claim Form can be completed in a few minutes.

### E.   Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses the terms of any proposed award of attorneys' fees. As stated in the Long Form Notice, Summary Notice and the Settlement Agreement, Settlement Class Counsel intends to apply to the Court for separate awards of attorneys' fees and expenses (including the court costs) not to exceed $4,100,000. *E.g.*, Settlement Agreement, ¶6.1. If approved by the Court, Kimberly-Clark will pay Class Counsel up to $4,100,000 in attorneys' fees and expenses, as the fee and expense award. *Id.* at ¶6.1. This provision does not impact the Settlement Class Members' relief. The Court need not consider the forthcoming application for fees and expenses at present; rather it is appropriate to defer any ruling on such application until after Plaintiffs submit their application and the Court holds the Final Approval hearing.

### F. The Parties Have No Additional Agreements

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement. The Settling Parties have not entered into any other agreements here.

### G. Settlement Class Members are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether class members are treated equitably. As reflected in the Settlement Agreement, the Settlement Class Members will be treated equitably relative to each other, based on the amount of packages purchased during the Settlement Class Period, regardless of the price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to certain limitations setting maximum amounts to be paid. Settlement Agreement, ¶2.4.

## VI. THE SETTLEMENT ALSO SATISFIES THE REMAINING *GRINNELL* FACTORS

### A. The Ability to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). While Kimberly-Clark may be able to withstand a judgment in excess of the monetary relief provided by the Settlement, courts generally do not find this to be an impediment to settlement when the other factors favor the settlement. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement"). Indeed, potential exposure of up to $20 million in Settlement Class Member payments alone (apart from attorneys' fees and expenses,

- 18 -

administration costs and awards to Plaintiffs) is not an insignificant sum even for a company the size of Kimberly-Clark.

### B. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery

The relief provided by the Settlement is reasonable considering the potential recovery at trial and prior relief obtained in similar flushable wipes-related class actions.  In light of the Second Circuit Order holding that "Kurtz lacks standing to seek an injunction because there is no indication that Kurtz will buy Defendants' flushable wipes products in the future and, therefore, there is no likelihood of future injury[,]" (Second Circuit Order at 5) and Settlement Class Counsel's ability to achieve Plaintiffs' desired injunctive relief (and more) through the settlement secured in the *Charleston* action (*see supra* n.3), the Settlement focuses on monetary relief.  While there is no settlement "fund" per se, the Settlement provides significant monetary relief to Settlement Class Members – up to $20 million in the aggregate – in addition to payment of attorneys' fees and expenses, administration costs and awards to Plaintiffs.

Compared to the *Pettit* and *Belfiore* settlements, the monetary relief provided by the Settlement is significantly more favorable to Settlement Class Members.  For example, the *Pettit* settlement awarded $0.60 per package for a maximum recovery of $4.20 (for seven packages), and the *Belfiore* settlement provided payments of $0.70 per package for a maximum recovery of $6.30 (for nine packages), without a Proof of Purchase.  The $0.70 per package (for ten packages) provided to Settlement Class Members without Proofs of Purchase in the Settlement here represents an increase of 16% per package over the *Pettit* settlement, while the $7.00 potential recovery here represents an increase of 66% and 11% over the *Pettit* and *Belfiore* settlements, respectively.

Additionally, Settlement Class Members with Proofs of Purchase are receiving greater amounts than in the *Pettit* and *Belfiore* settlements.  For example, instead of only $0.60 per package

with a maximum recovery of $30.00 in *Pettit*, purchasers here will receive $1.10 per package with a maximum recovery of $50.60 (*i.e.*, maximum of 46 packages). This is an increase of up to over $20 per Household and more than 80% per package over the *Pettit* Settlement, is a greater potential total recovery per Household than the *Belfiore* settlement, and for the vast majority of packages, is a greater recovery per package than the *Belfiore* settlement ($1.10 per package v. $1.00 per package).[5]

The reasonableness of the Settlement is also highlighted by Mr. Weir's determination that a Kimberly-Clark wipe labeled as "flushable" carries a 6.2% price premium over a wipe without the flushability claim but a Freshmates wipe labeled as "flushable" carriers a 7.95% price premium. *See* ECF No. 382 at 12. Plaintiffs' achievement of securing greater monetary relief per package than in the *Belfiore* settlement despite these circumstances is noteworthy, as is the fact that Plaintiffs obtained these results despite the fact that the Products generally performed better during the Settlement Class Period than any other flushable wipes product available on the market. *See, e.g.*, ECF No. 273 at 4 (Dr. Kurtz's "flushability" expert acknowledging statement in 2013 that Kimberly-Clark flushable wipes he tested "probably" could be classified as "flushable").

C.    **The Range of Reasonableness of the Settlement to a Possible Recovery in Light of All the Attendant Risks of Litigation**

Even considered independently, the monetary recovery provided in the Settlement is still substantial considering the likely recovery in the Actions. Plaintiffs face significant risks in proving liability and damages were the case to continue, and neither issue has a guaranteed outcome, particularly in light of the fiercely litigated dispute over the viability of Plaintiffs' expert's hedonic regression analysis for establishing price premium injury. Further, in a contested proceeding, Settlement Class Members who lack Proof of Purchase – which may be the majority of Settlement

---

[5] The *Belfiore* settlement provided New York class members $1.20 for the first package and $1.00 for each additional package, for a maximum recovery of $50.20 (or 50 packages).

Class Members – might get nothing at all.  *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017), *cert. denied sub nom.*, *ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017) (explaining that the post-trial claims process by which each consumers' affidavits would "force a liability determination" as to that consumer).

The availability of statutory damages is also a risk that has been heavily litigated in this case. Judge Weinstein indicated that statutory damages "presents serious substantive legal questions," (ECF No. 382 at 30) indicating that statutory damages in their full amount are far from certain. However, given that the language of GBL §349(h) provides that "any person . . . may bring an action in his own name . . . to recover his actual damages or fifty dollars, whichever is greater," another possible outcome is that the maximum statutory recovery could be limited to $50 per Settlement Class Member and may require proof of purchase.  In that scenario, the maximum recovery of $50.60 for Settlement Class Members with Proofs of Purchase exceeds their maximum recovery after years of additional litigation. The Settlement is thus well within the range of reasonableness, given the risks and delay of continued litigation measured against any potential recovery here.

## VII.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The requirement of Rule 23(e)(1)(B)(ii) is easily met here because the Court has already certified classes in the *Kurtz* Action after years of motion practice, evidentiary hearings, and Court orders consisting of over 160 pages of legal opinion on class certification issues alone.  *See* Committee Notes, Subdivision (e) ("[The] procedural requirements apply in instances in which the court has not certified a class at the time that a proposed settlement is presented to the court."). Because of this, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." *Id.* at Subdivision (e)(1).

The Settlement Class is similar to the certified class as to Kimberly-Clark, except for the following differences. *First*, the "Settlement Class Period" has been extended so that it covers purchases from May 23, 2011 through the date of Preliminary Approval, instead of the Court's prior order that ended the class period on March 1, 2017. This extension is reasonable and beneficial for Settlement Class Members. *Second*, the scope of the Settlement Class is nationwide whereas the certified class was limited to New York. This expansion of the geographic scope of the Settlement Class for settlement purposes is likewise appropriate. *See Dupler v. Costco Wholesale Corp*., 705 F. Supp. 2d 231, 236 (E.D.N.Y. 2010) (approving settlement of nationwide class after the court had certified a New York-only class for purposes of class certification and a nationwide class in connection with preliminary settlement approval); *cf*. ECF No. 333-4 (certification of 49-state settlement class in the *Pettit* Action) *with Pettit v. Procter & Gamble Co*., 2017 WL 3310692, at *2, *5 (N.D. Cal. Aug. 3, 2017) (certification of California-only class in the *Pettit* Action).[6]

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully ask that the Court grant Preliminary Approval of the proposed Settlement and enter the proposed Order Granting Motion for Preliminary Approval of Class Action Settlement, submitted as Exhibit C to the Settlement Agreement.

---

[6] Additionally, certain individuals and entities are excluded from and are not members of the Settlement Class. *See* Settlement Agreement, ¶1.32 (excluding individuals who purchased the Products for resale, the Court, Kimberly-Clark's officers, directors, employees or legal representatives and anyone who timely opts out). These exclusions are reasonable because each category either will be fully aware of (or even a party to) the Settlement or does not meet the requirements of GBL §349 and should not be a member of the Settlement Class.

DATED:  April 5, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA
FRANCIS P. KARAM
SARAH E. DELANEY


                    */s/ Vincent M. Serra*
                  VINCENT M. SERRA

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com
fkaram@rgrdlaw.com
sdelaney@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
MARK J. DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Vincent M. Serra, hereby certify that on April 5, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.



*/s/ Vincent M. Serra*
VINCENT M. SERRA