UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

KIMBERLY-CLARK CORPORATION, et al.,

                Defendants.

———————————————————— x

:   Civil Action No. 1:14-cv-01142-PKC-RML
:
:   <u>CLASS ACTION</u>
:
:
:
:
:
:
:
:
:
:

GLADYS HONIGMAN, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

KIMBERLY-CLARK CORPORATION,

                Defendant.

———————————————————— x

:   Civil Action No. 2:15-cv-02910-PKC-RML
:
:   <u>CLASS ACTION</u>
:
:
:
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF: (1) PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; (2) CLASS COUNSEL'S
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES; AND
(3) CLASS REPRESENTATIVE PAYMENTS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND OF THE LITIGATION AND SETTLEMENT ......................................3

        A.      Litigation History.........................................................................................3

        B.      The Settlement Process ...............................................................................5

        C.      The Settlement .............................................................................................5

        D.      The Proposed Settlement Class....................................................................7

III.    THE NOTICE PLAN HAS SATISFIED RULE 23 AND DUE PROCESS ......................7

IV.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ........................10

        A.      The Settlement Is Procedurally Fair: Plaintiffs and Class Counsel Have
                Adequately Represented the Settlement Class and Engaged in Arm's-
                Length Negotiations with Defendant ......................................................11

        B.      The Settlement Is Substantively Fair: The Relief Provided to the
                Settlement Class Is Adequate and Equitable Under the Factors Considered
                by the Second Circuit..............................................................................13

                1.      Complexity, Expense, and Likely Duration of the Litigation...................13

                2.      Reaction of the Class ...............................................................14

                3.      Stage of Proceedings and Discovery Completed ......................................14

                4.      The Risks of Establishing Liability and Damages and Maintaining
                        the Class ..............................................................................15

                5.      Reasonableness of Settlement in Light of Best Possible Recovery
                        and Attendant Risks of Litigation ............................................16

V.      THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE
        REASONABLE ..............................................................................................18

                1.      Class Counsel's Investment of Time Favors the Request.........................21

                2.      The Magnitude and Complexity of the Case Favors the Request.............21

                3.      The Litigation Risks Favor the Request....................................................22

                4.      The Quality of Representation Favors the Request ..................................22

- i -

          5.       The Fee Is Reasonable in Relation to the Settlement ................................23

    B.      The Request for an Award of Litigation Expenses Should Be Granted ................23

VI.    THE REQUESTED CLASS REPRESENTATIVE PAYMENTS SHOULD BE GRANTED .................................................................................................................24

VII.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED...............................................25

VIII.  CONCLUSION.............................................................................................................25

**CASES**

*Berni v. Barilla G. e R. Fratelli, S.p.A.*,
   332 F.R.D. 14, 34 (E.D.N.Y. 2019), *reversed on other grounds in*
   *Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020)......................................................................................20

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ................................................................................17

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) ..............................................................13, 18

*Chen v. Select Income REIT*,
   2019 WL 6139014
   (S.D.N.Y. Oct. 11, 2019) ........................................................................................19

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)......................................................................10, 11, 18

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494
   (S.D.N.Y. May 9, 2014)...........................................................................................22

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................19, 20, 21, 22

*Hill v. State St. Corp.*,
   2015 WL 127728
   (D. Mass. Jan. 8, 2015) .............................................................................................9

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................15, 16

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   2015 WL 6971424
   (S.D.N.Y. Nov. 9, 2015) ..........................................................................................21

*In re MetLife Demutualization Litig.*,
   262 F.R.D. 205 (E.D.N.Y. 2009) ..............................................................................8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   2019 WL 6875472
   (E.D.N.Y. Dec. 16, 2019) ............................................................................10, 11, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................11

*Kurtz v. Costco Wholesale Corp.*,
768 F. App'x 39 (2d Cir. 2019) ...............................................................................4

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998)...................................................................................19

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................22

*McLaughlin v. IDT Energy*,
2018 WL 3642627
(E.D.N.Y. July 30, 2018) ...............................................................................19, 24

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012).................................................................20, 21

*Pearlman v. Cablevision Sys. Corp.*,
2019 WL 3974358
(E.D.N.Y. Aug. 20, 2019) ........................................................................19, 20, 24

*Seekamp v. It's Huge, Inc.*,
2014 WL 7272960
(N.D.N.Y. Dec. 18, 2014) ...............................................................................23

*Simerlein v. Toyota Motor Corp.*,
2019 WL 2417404
(D. Conn. June 10, 2019) .............................................................................20, 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).................................................................7, 10, 11, 19

*Willix v. Healthfirst, Inc.*,
2011 WL 754862
(E.D.N.Y. Feb. 18, 2011)...............................................................................15

*Wright v. Stern*,
553 F. Supp. 2d 337 (S.D.N.Y. 2008).................................................................14, 15

*Zink v. First Niagara Bank, N.A.*,
155 F. Supp. 3d 297 (W.D.N.Y. 2016) ...................................................................9

*Zink v. First Niagara Bank, N.A.*,
2016 WL 7473278
(W.D.N.Y. Dec. 29, 2016) ................................................................23

## STATUTES, RULES AND REGULATIONS

New York's General Business Law
§349 ............................................................................... 1, 3, 18, 23
§349(h) ............................................................................................18
§350 ..................................................................................................3

Federal Rule of Civil Procedure
Rule 23 ....................................................................................18, 25
Rule 23(b)(2) .....................................................................................4
Rule 23(b)(3) .................................................................................4, 7
Rule 23(c)(2)(B) ................................................................................7
Rule 23(e) ........................................................................................10
Rule 23(e)(1) .................................................................................1, 8
Rule 23(e)(1)(B) ................................................................................8
Rule 23(e)(2) ..............................................................................10, 11
Rule 23(e)(2)(A)-(B) .......................................................................10
Rule 23(e)(2)(C)-(D) .......................................................................10
Rule 23(e)(3) ...................................................................................18
Rule 23(f) ..........................................................................................4
Rule 23(h) ........................................................................................19

## SECONDARY AUTHORITIES

*5 Newberg and Rubenstein on Class Actions*
§16:5 (5th ed.) ................................................................................24

Representative plaintiffs Dr. D. Joseph Kurtz and Gladys Honigman ("Plaintiffs") respectfully submit this memorandum in support of their motion for: (1) final approval of a proposed class action settlement (the "Settlement") with defendant Kimberly-Clark Corporation ("Kimberly-Clark" or "Defendant"), the terms and conditions of which are set forth in the Settlement Agreement; (2) an award of attorneys' fees and litigation expenses; and (3) Class Representative Payments.[1]

## I.      INTRODUCTION

The Settlement with Kimberly-Clark – one of the largest, if not the largest, "flushable" wipes manufacturers in the country – provides up to $20 million in monetary relief to consumers who purchased Kimberly-Clark's "flushable" wipes Products between February 21, 2008 and May 19, 2022.  Plaintiffs' counsel ("Class Counsel") achieved the Settlement only after extensive, arm's-length negotiations between the Settling Parties, including through mediation and numerous in-person, virtual and telephonic meetings among counsel and Kimberly-Clark's business personnel and in-house attorneys over the course of several years.  The Settlement resolves the *Honigman* Action entirely and Dr. Kurtz's class action claims in the *Kurtz* Action, which has been pending since 2014, against Kimberly-Clark.  Dr. Kurtz's class action claims for statutory damages under New York's General Business Law ("GBL") were certified by the Court and, after reaching the Second Circuit Court of Appeals twice, affirmed following a comprehensive four-day evidentiary hearing.  This result is particularly impressive given the vigorous defense by Kimberly-Clark's counsel and hard-fought nature of the litigation over the course of eight years.

On May 19, 2022, the Court granted preliminary approval of the Settlement under Federal Rule of Civil Procedure 23(e)(1) (ECF No. 439, the "Preliminary Approval Order"), finding that the

---

[1]      All references to "ECF No. __" are to the docket in the *Kurtz* Action unless otherwise stated.  All capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Settlement Agreement and General Release, filed April 5, 2022, ECF No. 432-1 ("Settlement Agreement").  Kimberly-Clark, together with non-settling defendant Costco Wholesale Corporation ("Costco"), are referred to as "Defendants."  All internal quotations and citations are omitted unless otherwise indicated.

Settlement was "reached as a result of arm's-length negotiations between the Settling Parties and their counsel," who "had sufficient information to evaluate the strengths and weaknesses of the cases and to conduct informed settlement discussions." *Id*. at 2. The Court also: (i) conditionally certified the proposed Settlement Class; and (ii) found the Notice Plan to be "reasonably calculated to provide notice to the Settlement Class." *Id*. at 3.

Following implementation of the Notice Plan, to date not a *single* Settlement Class Member has filed a formal objection to *any* aspect of the Settlement. The absence of objections is particularly noteworthy here, and weighs heavily in favor of the Settlement, given that the Notice Plan was designed to reach over 70% of Settlement Class Members multiple times through publication media notice utilizing online display, search terms, social media impressions, a dedicated Settlement Website, and a toll-free number. Moreover, since the Court granted preliminary approval of the Settlement, Settlement Class Members have made a total of 119,610 claims, with only sixteen (16) requests for exclusion. Thus, the lack of objections to date and overwhelmingly positive reaction by the Settlement Class further support the reasonableness of the Settlement.

Class Counsel also request that the Court approve a fee and expense award totaling $4,100,000, consisting of attorneys' fees of $3,961,668.77, and the payment of litigation expenses and charges of $138,331.23, as compensation for their efforts, along with Class Representative Payments of $10,000 and $5,000 for Dr. Kurtz and Ms. Honigman, respectively. Class Counsel's work to date has been without compensation and fees have been wholly contingent on the results obtained. The requested fee and expense award is consistent with awards in similar actions in the Second Circuit and throughout the country, and is fully supported by Plaintiffs. Since fee awards are designed to encourage counsel to achieve the best possible result for the class, the amount requested in this case is warranted, given the significant result obtained and the obstacles and risks Class

Counsel faced in bringing and prosecuting the Actions. Indeed, the requested fee results in a **negative** lodestar multiplier of 0.93, substantially lower than multipliers routinely approved in the Second Circuit. Likewise, the requested Class Representative Payments are in line with payments in similar consumer actions in this jurisdiction and are justified given Plaintiffs' lengthy participation in the Actions and resolve to achieve the best possible result for the class.

Thus, Plaintiffs request that the Court enter an order granting final approval of the Settlement and awarding the requested attorneys' fees and expenses and Class Representative Payments.

## II.     BACKGROUND OF THE LITIGATION AND SETTLEMENT

### A.     Litigation History[2]

Dr. Kurtz filed the *Kurtz* Action against Defendants in February 2014 asserting, *inter alia*, violations of GBL §§349-350, and alleging that Defendants improperly marketed and sold wipes products labeled as "flushable" and "safe" for sewer and septic systems given that the products did not break down or disperse quickly enough to be considered "flushable" and to avoid routinely damaging or clogging home plumbing and septic systems and/or municipal sewage lines and pumps. *See* ECF No. 1. Following the Court's denial of Defendants' motions to dismiss on November 18, 2014 (ECF No. 49), the parties engaged in expedited discovery limited to class certification, including two home inspections, depositions of Dr. Kurtz and five 30(b)(6) deponents, and requests for and production of documents from parties and non-parties. Serra Decl. ¶¶7-9.

In February 2015, Dr. Kurtz and Defendants filed their motions for, and to deny, class certification, respectively, and submitted supporting expert reports. *Id.* ¶10. In May 2015,

---

[2]     Plaintiffs refer the Court to the Declaration of Vincent M. Serra in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, an Award of Attorneys' Fees and Expenses and Class Representative Payments ("Serra Decl." or "Serra Declaration"), filed herewith, for a detailed description of, *inter alia*: the history of the litigation; the nature of the claims asserted; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation; among other things. Additionally, Plaintiffs refer the Court to the "Background of the Litigation" section of their Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion"), ECF No. 431 at 3-8, for a further summary of the litigation history, settlement negotiations and the Settlement.

Ms. Honigman filed a similar class action complaint against Kimberly-Clark seeking similar relief (*Honigman*, ECF No. 1), which was later stayed pending resolution of the motion for class certification in the *Kurtz* Action. In June and July 2015, the Court held a two-day "Science Day" hearing at which the parties presented witness testimony about "flushable" wipes products and their ability to break down in home plumbing and sewer systems. ECF Nos. 299, 301.

On March 27, 2017, the Court issued an order certifying a class of "[a]ll persons and entities who purchased Kimberly-Clark Flushable Products in the State of New York between February 21, 2008 and March 1, 2017[.]" ECF No. 296 ("Certification Order") at 130.[3] The Second Circuit Court of Appeals then granted Defendants' Rule 23(f) petition for appellate review and, after briefing and oral argument, issued a Summary Order remanding the case for further development of the record as to Defendants' predominance arguments. *Kurtz v. Costco Wholesale Corp.*, 768 F. App'x 39, 40 (2d Cir. 2019). In August 2019, on remand, the District Court held four days of evidentiary hearings in the *Kurtz* and *Belfiore* matters,[4] after which the parties exchanged extensive briefing on the issues of causation and injury, and on striking expert testimony. Serra Decl. ¶22. Following a further hearing to consider the parties' arguments, on October 25, 2019, the District Court issued an order denying the parties' motions to exclude expert testimony and reasserting the Certification Order. ECF No. 382.

On June 26, 2020, the Court of Appeals affirmed the Certification Order as to the damages classes under Rule 23(b)(3), reversed the Certification Order as to the injunctive relief classes under Rule 23(b)(2), and remanded to the District Court for further proceedings. ECF No. 398 (the

---

[3]    The Court also certified a New York class of Costco "flushable" wipe purchasers. *Id*.

[4]    *Belfiore v. The Procter & Gamble Company*, Case No. 2:14-cv-04090-PKC-RML (E.D.N.Y.) was originally filed in state court and removed to this Court in 2014, involved similar claims against The Procter & Gamble Company before the Court approved a class action settlement resolving the matter in 2020, and was coordinated with and proceeded alongside the Actions.

"Second Circuit Order"). On September 8, 2020, Defendants filed requests for a pre-motion conference in the *Kurtz* Action in connection with their intended summary judgment motions. ECF Nos. 403, 404. Following the October 22, 2020 pre-motion conference at which Judge Chen stated that Defendants' proposed summary judgement arguments at that time "would largely be futile," ECF No. 416 at 28:21, Defendants delayed filing their motions until following discovery. Serra Decl. ¶25. Throughout 2021, the parties amended their initial disclosures, served and/or responded to document requests, interrogatories, and a request to inspect Ms. Honigman's property, and Kimberly-Clark produced tens of thousands of additional pages of documents. *Id*. ¶26. On April 5, 2022, Plaintiffs filed their Preliminary Approval Motion, along with the proposed Settlement Agreement (ECF Nos. 430-432), which the Court granted on May 19, 2022. ECF No. 439.

### B. The Settlement Process

Plaintiffs and Kimberly-Clark first initiated settlement negotiations in 2018. Serra Decl. ¶27. Since then, the parties engaged in separate multi-day settlement sessions at and nearby Kimberly-Clark's offices in Neenah, Wisconsin, and a follow-up videoconference with Kimberly-Clark's in-house counsel and "flushable" wipes technical personnel, exchanged numerous settlement proposals, participated in several teleconferences to discuss settlement, and participated in a mediation with the Honorable Wayne R. Andersen (Ret.) on July 22, 2020. *Id*. ¶¶27-29. While the mediation did not result in a settlement, the parties resumed discussions in late August and September 2021, with Plaintiffs' counsel providing Kimberly-Clark a formal settlement proposal on September 22, 2021. *Id*. ¶29. The parties continued to negotiate the contours of a potential settlement during the following months and ultimately executed a memorandum of understanding on December 29, 2021 and filed the Settlement Agreement with the Court on April 5, 2022. *Id*.

### C. The Settlement

As outlined in the Settlement Agreement ¶2.4, each Settlement Class Member who submits a

Valid Claim corroborated by Proof of Purchase will receive a refund of one dollar and ten cents ($1.10) for each Product package purchased during the Settlement Class Period, regardless of the price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to the following limitation: a maximum of fifty dollars and sixty cents ($50.60) (*i.e.*, maximum of 46 packages) will be paid on any claim submitted by any Household for claimed purchases that are corroborated by Proof of Purchase, and only one claim may be submitted per Household.

Alternatively, each Settlement Class Member who submits a Valid Claim without Proof of Purchase will receive a payment of seventy cents ($0.70) for each package of wipes purchased during the Settlement Class Period, regardless of the price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to the following limitations: a maximum of seven dollars ($7.00) (*i.e.*, a maximum of 10 packages) will be paid on any claim submitted by any Household for claimed purchases that are not corroborated by Proof of Purchase, and only one claim may be submitted per Household (either with or without proof of purchase, but not both). Settlement Agreement ¶2.4.

In addition, a $20 million cap on all claims made shall apply. *Id*. ¶2.5. If the Valid Claims exceed the cap, the Claims Administrator will fulfill all Valid Claims on a *pro rata* basis so that the total amount of payments does not exceed the cap. *Id.* The Claims Administrator has been and will continue to be responsible for processing claims and administering the Settlement Website, opt-out process, and Settlement claims process described herein. *Id.* ¶2.6. The proposed method for distributing relief and providing notice to Settlement Class Members is discussed below, *infra* §III.

The Settlement resolves Plaintiffs' claims against Kimberly-Clark in both the *Kurtz* and

*Honigman* actions.[5]

### D. The Proposed Settlement Class

The Settlement Agreement calls for certification for settlement purposes of a Settlement Class consisting of "[a]ll individuals over the age of 18 who purchased the Products not for the purpose of resale, during the Settlement Class Period." Settlement Agreement ¶1.32. The "Products" refer to Kimberly-Clark's "flushable" wipes sold in the United States during the Settlement Class Period under the Cottonelle, Scott, Huggies Pull-Ups, Poise, or Kotex brands. *Id.* ¶1.26. The Settlement Class Period runs from February 21, 2008 through the date of preliminary approval, or May 19, 2022. *Id.* ¶1.35. The Court conditionally certified the Settlement Class in its Preliminary Approval Order. ECF No. 439 at 2.

## III. THE NOTICE PLAN HAS SATISFIED RULE 23 AND DUE PROCESS

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3), Plaintiffs were required to provide notice to Settlement Class Members under Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). The mechanics of the notice process are left to the discretion of the court, subject only to the broad reasonableness standards of due process. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005) ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."). "[N]otice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in

---

[5] While Dr. Kurtz's injunctive claims were dismissed by the Second Circuit Court of Appeals, his counsel obtained a commitment by Kimberly-Clark that its flushable wipes products will fully comply with the International Water Services Flushability Group ("IWSFG") Publicly Available Standards ("PAS") – the wastewater industry's gold standard for flushability – by May 1, 2022 through a court-approved class action settlement on behalf of wastewater entities in *Commissioners of Public Works of the City of Charleston v. Costco Wholesale Corp., et al.*, No. 2:21-cv-00042-RMG (D.S.C.). Multiple rounds of confirmatory testing in *Charleston* have confirmed that Kimberly-Clark has met that commitment. Serra Decl. ¶28.

connection with the proceeding." *Id.* at 114

The Notice Plan is reasonable and satisfies due process and Rule 23(e)(1), which requires that notice be directed "in a reasonable manner to all class members who would be bound." Rule 23(e)(1)(B). In accordance with the Settlement Agreement and Preliminary Approval Order, the Claims Administrator, which has designed and implemented similar programs in other "flushable" wipes litigation, has implemented the Notice Plan. *See generally* ECF No. 432-2 ("Finegan Declaration"). The Claims Administrator provided Notice to Settlement Class Members beginning on June 17, 2022 via the online advertising plan, including: (1) online display banner advertising targeting Cottonelle, Kotex, Huggies Pull-Ups, Scott and Poise brand purchasers; (2) keyword search online advertising showing advertisements to users in their Google search results; and (3) social media through Facebook and Instagram targeting, *e.g.*, followers of Kimberly-Clark pages, and through YouTube and Pinterest targeting, including content related to flushable wipes or related search terms. Serra Decl. ¶31. As instructed by this Court in its Preliminary Approval Order, the Claims Administrator has also established a Settlement Website, which contains all of the required information. *Id.*; Preliminary Approval Order ¶6(a); https://www.flushablewipessettlement.com/.[6]

The Notice, published in several places, refers Settlement Class Members to the Settlement Website, where Settlement Class Members who seek benefits under the Settlement need to fill out a simple Claim Form online unless they are submitting the actual label or bar code portion of the Product as Proof of Purchase. *See* Ex. 1 to the [Proposed] Order granting the Settlement Agreement,

---

[6] Direct notice to the Settlement Class is not a reasonable method of notice, as the Products are sold through third-party retailers, and Kimberly-Clark does not have records of purchaser identities. *See In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009).

Ex C.[7]  As described in the Finegan Declaration (¶3), the Notice Plan was designed to reach an

estimated 72% of Settlement Class Members, on average three times.  The Claims Administrator has

also been operating a toll-free information line to provide information about the case and Settlement.

Serra Decl. ¶31; Preliminary Approval Order ¶6(c).  The Notice apprises Settlement Class Members

of their right to, and the deadline by which they must, object to the Settlement and Class Counsel's

application for the requested attorneys' fees and expenses.  ECF No. 437 at Ex. B1.  The Notice also

states that Settlement Class Members can request to speak about their opinion of the Settlement

and/or the request for an award of attorneys' fees and expenses at the Final Approval Hearing,

details information about the Settlement and its benefits, and provides further explanation about the

various ways to receive additional information about the Settlement.  *Id*.  Additionally, the Notice

includes, *inter alia*: (i) a statement indicating the attorneys' fees and expenses that will be sought;

(ii) the Settlement Class definition; and (iii) the time and place of the Fairness Hearing.  *Id*.

Overall, the Notice's content and distribution "fairly apprise[d] the prospective members of

the class of the terms of the proposed settlement and of the options that are open to them."  *See Hill

v. State St. Corp.*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015); Finegan Decl. ¶4; *see* Rule 23

2018 Advisory Comm. Note, Amended Rules, at 16 ("courts and counsel have begun to employ new

technology to make notice more effective"); *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297,

314 (W.D.N.Y. 2016) ("To the extent . . . that individual members cannot be identified, notice by

publication is sufficient.").  In fact, the online advertising ran for forty-five (45) days – *50% longer*

than the advertising campaign implemented in the *Belfiore* settlement – which has and will continue

to facilitate maximizing Settlement Class Member participation in the Settlement.  *Compare*

---

[7]    Settlement Class Members also have the option to print copies and mail the Claim Form – which can be
completed in a few minutes – to the Claims Administrator.  The fact that nearly 119,610 Claim Forms have
already been submitted with approximately two weeks left before the claims deadline, demonstrates that the
Notice Program has been effective.  Serra Decl. ¶32.

Settlement Agreement, Ex. A at 1 *with Belifore*, ECF No. 351-3, Ex. A at 1.

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and should be approved if the court finds it "fair, reasonable, and adequate." Rule 23(e)(2). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *See Wal-Mart Stores,* 396 F.3d at 116.

Rule 23(e)(2) articulates specific factors for courts to consider when evaluating a settlement for final approval. Specifically, courts are called upon to assess whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

*Id.* Subsections 23(e)(2)(A)-(B) focus on the "procedural" fairness of the settlement, while subsections 23(e)(2)(C)-(D) concern the settlement's "substantive" fairness. Advisory Committee Notes to 2018 Amendment to Rule 23(e)(2); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *13 (E.D.N.Y. Dec. 16, 2019) ("*Payment Card II*"). The Court also concurrently considers the factors listed in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448

(2d Cir. 1974) ("*Grinnell*"),[8] which "significant[ly] overlap" with Rule 23(e)(2) (*Payment Card II*, 2019 WL 6875472, at \*14). Only three are unique: "the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 n.22 (E.D.N.Y. 2019) ("*Payment Card I*").

The Court may "refer[] to its reasoning as set forth in the Preliminary Approval Order where it finds that the reasoning still stands after having considered the motions papers and objections." *Payment Card II*, 2019 WL 6875472, at \*15. The Court has already initially considered the relevant factors in deciding to grant preliminary approval (with the exception of the reaction of Settlement Class Members, which could not have been analyzed at the time) and found that the Settlement falls within the range of reasonableness meriting possible final approval. As argued in Plaintiffs' Preliminary Approval Motion, and as further detailed below, each factor weighs in favor of approval.

### A. The Settlement Is Procedurally Fair: Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class and Engaged in Arm's-Length Negotiations with Defendant

Plaintiffs and Class Counsel have more than adequately represented the Settlement Class through years of hard fought litigation against Defendant, which has culminated in a Settlement that was negotiated at arm's length. Serra Decl. ¶¶27-29, 33-37; *see Wal-Mart Stores*, 396 F.3d at 116 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

---

[8] Those factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *See Payment Card II*, 2019 WL 6875472, at \*13-\*14 (citing, *e.g.*, *Grinnell*, 495 F.2d at 463).

Plaintiffs and Class Counsel have vigorously litigated the *Kurtz* and *Honigman* Actions since 2014 and 2015, respectively. In that time, counsel have had more than two dozen appearances before Judges Weinstein and Chen, Magistrate Judge Levy and the Second Circuit Court of Appeals, including oral arguments, evidentiary and scientific hearings, settlement-related conferences, and status conferences. *See* Serra Decl. ¶¶6-25. Class Counsel have opposed Defendant's numerous substantive motions, including its motion to dismiss (ECF No. 18), motion to quash (ECF No. 68), motion to deny class certification (ECF No. 82), renewed motion to deny class certification or, alternatively, to dismiss Plaintiffs' individual claims (ECF No. 267), appeal of the Certification Order (No. 17-1856, ECF No. 61), post-evidentiary hearing briefing on predominance (ECF No. 362), motion to exclude testimony of Colin Weir (ECF No. 362) and motion for a pre-motion conference in connection with summary judgment (ECF No. 403). Class Counsel have also litigated their own motions, including extensive briefing in connection with Dr. Kurtz's class certification motion (*see, e.g.*, ECF Nos. 81, 290, 359) and a motion to lift the stay of the Actions (ECF No. 205).

Plaintiffs have been largely successful prosecuting the Actions and achieved certification of heavily-litigated classes which this Court sustained as to damages after appeals. On balance, Plaintiffs have been very successful, including by maintaining the Actions for more than seven years (eight with respect to the *Kurtz* Action), obtaining certification of New York classes despite vigorous opposition, and sustaining that decision after four days of expert testimony on remand from the Second Circuit. Serra Decl. ¶¶6-25. Class Counsel have also conducted discovery of Defendants and numerous third parties and defended the deposition of Dr. Kurtz. *Id*. ¶¶7-9. Class Counsel deposed Defendants' 30(b)(6) representatives and reviewed thousands of pages of documents produced by Defendants. *Id*. Class Counsel have also examined and cross-examined fact and expert witnesses over multiple days of hearings following an appeal to, and remand by, the Second Circuit.

*Id*. ¶¶10, 22. Class Counsel were fully informed as to the viability of the claims and attendant risks absent the Settlement.

Furthermore, the Settling Parties negotiated the Settlement at arm's length with Kimberly-Clark over the course of several years. Serra Decl. ¶¶27-29. These discussions have not only encompassed dozens of telephone calls between counsel, but also two separate multi-day settlement meetings at and nearby Kimberly-Clark's offices in Wisconsin, a follow-up videoconference with Kimberly-Clark's in-house counsel and "flushable" wipes technical personnel, and a mediation on July 22, 2020 with the Honorable Wayne R. Andersen (Ret.). *Id*. Counsel for the Settling Parties are experienced class action attorneys and have fully evaluated the strengths, weaknesses, and equities of their positions. *Id*. ¶¶33-37. Class Counsel believe that the Settlement is in the best interests of the Settlement Class, considering the costs and risks of continued litigation. The opinion of experienced counsel supporting the Settlement is entitled to considerable weight. *See, e.g.*, *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 172 (E.D.N.Y. 2012). For these reasons, the Court should find that the Settlement is the result of a fair, reasonable, and adequate process.

## B. The Settlement Is Substantively Fair: The Relief Provided to the Settlement Class Is Adequate and Equitable Under the Factors Considered by the Second Circuit

### 1. Complexity, Expense, and Likely Duration of the Litigation

Plaintiffs' claims in the Actions present difficult and complex legal and factual questions, including the viability of Plaintiffs' price premium theory of injury supported by Mr. Weir's analysis, which was attacked by Defendants at every opportunity. The Actions have generated a massive body of evidence, including hundreds of thousands of documents produced, depositions, multiple rounds of expert reports, a four-day evidentiary hearing with expert and fact witness testimony (including direct and cross-examination) and a two-day "Science Day" proceeding. Completing discovery, briefing summary judgment and conducting a trial would entail considerable

time, effort and expense were the Actions to proceed. Moreover the benefits of reverting to litigation would be uncertain. The Settlement will instead guarantee a substantial, certain and immediate benefit to Settlement Class Members, avoiding years of continued litigation, expense and uncertainty. Indeed, the Court made clear over the years that it believed that the classes are best served by meaningful settlements instead of continued litigation. *See, e.g.*, ECF No. 216 at 7-8 (reviewing continued efforts by the Court to encourage settlement).

### 2. Reaction of the Class

"[P]erhaps the most significant factor to be weighed in considering [the] adequacy" of a settlement is the "reaction of the class"; "[a] favorable reception by the class constitutes strong evidence that a proposed settlement is fair." *Payment Card II*, 2019 WL 6875472, at *16. While "a certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members . . . [,] [i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Id.* The deadline to submit objections or opt outs is August 17, 2022, however, to date, with nearly 119,610 claims already made, there have been only sixteen (16) requests for exclusion and ***no objections*** to the Settlement, which weighs in the strongest terms in favor of final approval. Serra Decl. ¶32; *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (concluding that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate," despite thirteen objections and three opt-outs).

### 3. Stage of Proceedings and Discovery Completed

The *Kurtz* Action was filed over eight years ago and the *Honigman* Action over seven years ago. As noted above, *supra* §II.A, the Settling Parties have briefed key substantive issues exhaustively throughout the course of the litigation, including expert issues and arguments related to price premium injury and causation that the Settling Parties would likely face again at summary

judgment and trial. Substantial discovery has been taken and was nearing completion at the time the Settling Parties executed their MOU. Serra Decl. ¶¶7-9, 21, 26. Thus, "both the Court and the parties have a substantial basis for evaluating the strengths and weaknesses of plaintiffs' claims and defendants' defenses. [F]ew unknowns remained." *Wright*, 553 F. Supp. 2d 3 at 345-46.

### 4. The Risks of Establishing Liability and Damages and Maintaining the Class

Every class action involves uncertainty on the merits. Settlement resolves that inherent uncertainty; for this reason, settlements are strongly favored by the courts, particularly in class actions such as this one. *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) ("The settlement eliminates th[e] uncertainty" of the risk presented by "the fact-intensive nature of Plaintiffs' claims and Defendants' affirmative defenses"); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 380 (S.D.N.Y. 2013) (referencing "general judicial policy favoring settlement"). While Plaintiffs have amassed compelling evidence to prove their claims, establishing liability is by no means certain, even if the Court were to deny summary judgment in favor of Defendant and the case was to proceed to trial.

As noted above, Kimberly-Clark has lodged relentless criticisms about Mr. Weir's expert analysis and testimony on price premium analysis, damages, injury and causation. For example, following the Court's four-day post-remand evidentiary hearings, Defendant submitted a 54-page brief dedicated entirely to attacking and delegitimizing Mr. Weir's analyses. ECF No. 362 at 14-40. While those analyses survived scrutiny at the class certification stage, there is no guarantee that they would hold up to similar – and likely even more severe scrutiny – at trial. *See Citigroup*, 965 F. Supp. 2d at 382-83 ("[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome").

The availability of statutory damages is another risk that has been heavily litigated in this

case and further supports the reasonableness of the Settlement. Judge Weinstein indicated that statutory damages "presents serious substantive legal questions," (ECF No. 382 at 30) indicating that statutory damages in their full amount are far from certain. Ultimately, any judgement in the Actions would likely present significant legal questions, which the losing parties would likely appeal, adding further cost, risk and delay to these proceedings.

In light of these many litigation risks, the proposed Settlement provides an exceptional benefit to Settlement Class Members.

### 5. Reasonableness of Settlement in Light of Best Possible Recovery and Attendant Risks of Litigation

Courts have long recognized that "[e]ssential to analyzing a settlement's fairness is 'the need to compare the terms of the compromise with the likely rewards of litigation.'" *See Citigroup*, 965 F. Supp. 2d at 384. The question for the Court is not whether the Settlement represents the highest recovery possible, but whether it represents a reasonable one in light of the many uncertainties the class faces. *Id.* The relief provided by the Settlement is reasonable considering the potential recovery at trial and prior relief obtained in similar "flushable" wipes-related class actions. The Settlement provides significant monetary relief[9] to Settlement Class Members – up to $20 million in the aggregate – *in addition to* payment of attorneys' fees and expenses, settlement administration costs and awards to Plaintiffs. Settlement Class Members who submit a Valid Claim without Proofs of Purchase can receive a payment of seventy cents ($0.70) per package for up to ten (10) packages of wipes, for a total payment of seven dollars ($7.00). Settlement Class Members who have Proofs of Purchase can receive a payment of one dollar and ten cents ($1.10) for each package of wipes, up

---

[9]    In light of the Second Circuit Order holding that "Kurtz lacks standing to seek an injunction because there is no indication that Kurtz will buy Defendants' flushable wipes products in the future and, therefore, there is no likelihood of future injury[,]" (Second Circuit Order at 5) coupled with Class Counsel's ability to achieve Plaintiffs' desired injunctive relief (and more) through the settlement secured in the *Charleston* Action (*see supra* n.5), the Settlement focuses on monetary relief.

to a total of $50.60 per claimant.

Compared to the *Pettit*[10] and *Belfiore* settlements, the available monetary relief provided by the Settlement is more favorable to Settlement Class Members. For example, the *Pettit* settlement awarded $0.60 per package for a maximum recovery of $4.20 (for seven packages), and the *Belfiore* settlement provided payments of $0.70 per package for a maximum recovery of $6.30 (for nine packages), without a Proof of Purchase. *See Pettit*, ECF No. 117-4, Ex. 1 ¶4.4; *Belfiore*, ECF No. 351-3, Ex. 1 ¶4.4. The $0.70 per package (for ten packages) provided to Settlement Class Members without Proofs of Purchase in the Settlement here represents an increase of 16% per package over the *Pettit* settlement, while the $7.00 potential recovery here represents an increase of 66% and 11% over the *Pettit* and *Belfiore* settlements, respectively.[11] Settlement Agreement ¶2.4. Settlement Class Members with Proofs of Purchase can receive greater amounts than in both the *Pettit* and *Belfiore* settlements. For example, instead of only $0.60 per package with a maximum recovery of $30.00 in *Pettit* or $1.20 for the first package and $1.00 per package thereafter with a maximum recovery of $50.20 in *Belfiore*, purchasers here will receive $1.10 per package with a maximum recovery of $50.60 (*i.e.*, for a maximum of 46 packages).

The reasonableness of the Settlement is also highlighted by Mr. Weir's determination that a Kimberly-Clark wipe labeled as "flushable" carries a 6.2% price premium over a wipe without the flushability claim but a Freshmates wipe (the "flushable" wipe at issue in *Belfiore*) labeled as "flushable" carries a 7.95% price premium. *See* ECF No. 382 at 12. In other words, Plaintiffs' Settlement secured greater potential monetary relief than in the *Belfiore* settlement despite a ***smaller***

---

[10] *Pettit v. The Procter & Gamble Co.*, No. 3:15-cv-2150-RS (N.D. Cal.), is another "flushable" wipes-related action that resulted in a 49-state settlement with The Procter & Gamble Company.

[11] In a contested proceeding, Settlement Class Members who lacked proof of purchase—which may be the majority of Settlement Class Members—might get nothing at all. *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) (discussing post-trial claims process by which each consumers' affidavits would "force a liability determination" as to each consumer).

premium associated with the "flushable" label. This achievement is noteworthy, as is the fact that Plaintiffs obtained these results despite the fact that the Products generally performed **better** during the Settlement Class Period than any other "flushable" wipes product available on the market. *See, e.g.*, ECF No. 273 at 4 (Dr. Kurtz's flushability expert acknowledging superior performance of Kimberly-Clark's "flushable" based on first-hand testing).

Further, given that the language of GBL §349(h) provides that "any person . . . may bring an action in his own name . . . to recover his actual damages or fifty dollars, whichever is greater," should the maximum statutory recovery be limited to $50 per Settlement Class Member and require proof of purchase, the maximum recovery of $50.60 for Settlement Class Members with Proofs of Purchase exceeds their maximum recovery for a violation of GBL §349 after years of additional litigation. The Settlement is thus well within the range of reasonableness, "given the risks and delay of continued litigation measured against the value of obtaining certain compensation more quickly." *See Chavarria*, 875 F. Supp. 2d at 175.

For all of the foregoing reasons, and for each of the reasons set forth in the Court's Preliminary Approval Order, the Court should find that the Settlement is fair, adequate and reasonable, and in Settlement Class Members' best interests.[12]

## V. THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

Class Counsel request that the Court approve an award of attorneys' fees and expenses of

---

[12] The remaining Rule 23 and *Grinell* factors also favor approval of the Settlement. There are no side agreements pertaining to the Settlement Agreement that are required to be identified under Rule 23(e)(3). The terms of Class Counsel's requested award of attorneys' fees are discussed below, *infra* §V, while the effectiveness of the proposed method of distributing relief to the Settlement Class is discussed above, *supra* §III. The ability of the Defendant to withstand a greater judgment does not play a large role here where there is a substantial recovery that is fair to Settlement Class Members and provides individual Settlement Class Members with greater potential relief than other recent similar settlements. Finally, the relief benefits all Settlement Class Members – purchases of the Products nationwide – equitably by providing identical available payments to all similarly situated purchasers (*e.g.*, depending on whether they have Proofs of Purchase and how many Products were purchased), and there are no sub-classes.

$4,100,000 – consisting of $3,961,668.77 in attorneys fees' and $138,331.23 in actual expenses (including Court costs). Class Counsel's efforts thus far have been uncompensated and the fees have been entirely contingent upon the result achieved. The amount requested is warranted given the significant relief obtained and risks Class Counsel faced in bringing and prosecuting these cases.

In class actions, courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Rule 23(h). Courts in this Circuit employ two methods in assessing the reasonableness of a fee request: the lodestar or the percentage method. *Pearlman v. Cablevision Sys. Corp.*, 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019). "Under the lodestar method, the court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.*[13] "'Courts in their discretion may increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys.'" *Id.* (quoting *Wal-Mart Stores*, 396 F.3d at 121). "Under the percentage method, courts set the fee at a percentage of the common fund established under the settlement agreement." *Id.*

Courts in this District have concluded recently that the "wiser course of action" in settlements that do not involve common funds such as this one is to use the lodestar method for calculating attorneys' fees. *See, e.g.*, *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018); *Chen v. Select Income REIT*, 2019 WL 6139014, at *15 (S.D.N.Y. Oct. 11, 2019) ("This is not a common fund case, since no common fund exists from which attorneys' fees are sought; thus, the percentage method for calculating reasonable attorneys' fees does not apply."). Furthermore, in a case such as this "where the attorneys' fees are to be paid

---

[13] "[M]arket rates, where available, are the ideal proxy" for an attorney's compensation. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000). Courts use attorneys' current rates to calculate the lodestar figure to account for the delayed payment and inflation. *See, e.g.*, *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (noting current rates should be applied to compensate for delay in payment).

directly by defendant and, thus, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *Pearlman*, 2019 WL 3974358, at *3; *Belfiore*, ECF No. 363, Transcript of Final Approval Hearing, at 14 (quoting same).

"Irrespective of which method is used," however, "the '*Goldberger* factors' ultimately determine the reasonableness" of an attorney's fee award in a class action settlement. *Simerlein v. Toyota Motor Corp.*, 2019 WL 2417404, at *24 (D. Conn. June 10, 2019); *see also Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 34 (E.D.N.Y. 2019), *reversed on other grounds in Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) ("Given that the settlement establishes no common fund, the Court will utilize the lodestar method. . . . [but e]ven when relying on the lodestar method in a class action settlement, the Court is guided by the traditional criteria in determining a reasonable common fund fee . . . .'"). Those factors include: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50. Each confirms the requested fee is reasonable.

Class Counsel's requested fee of $3,961,668.77 is less than Class Counsel's lodestar. Specifically, as of July 15, 2022, Plaintiffs' counsel have spent in excess of 5,662 hours working on this litigation with respect to Kimberly-Clark, and its corresponding lodestar is $4,269,331.50. *See* Declaration of Vincent M. Serra Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), ¶4 and Ex. A. Additionally, Class Counsel has incurred $138,331.23 in expenses. Robbins Geller Decl. ¶¶5-7 and Ex. B. Class Counsel's fee request of $3,961,668.77 – a reduction to their lodestar of over $300,000 – represents a ***negative*** lodestar of 0.93. *Cf. Morris v. Affinity Health Plan, Inc.*, 859 F.

Supp. 2d 611, 623-24 (S.D.N.Y. 2012) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."). These requests are reasonable, unopposed, and should be approved by the Court.

Application of the *Goldberger* factors further demonstrate that Plaintiffs' attorneys' fee and expense request, representing a discount to their reasonable lodestar figure, is appropriate.

### 1. Class Counsel's Investment of Time Favors the Request

As noted above, Class Counsel have devoted 5,662 hours prosecuting the Actions (Robbins Geller Decl. ¶4 and Ex. A.) and the requested fee is *less* than the usual market value of their time. The work performed by Class Counsel in this case is described above and in the accompanying Serra Declaration. This investment of time spanned *eight years* of vigorous litigation through various procedural phases. Serra Decl. ¶¶6-26. This enormous amount of time was necessary due to the size and complexity of the Actions and the many motions and appeals they involved, justifying the requested fee award. Class Counsel will continue to devote many hours to administering the Settlement but do not seek fees for any additional hours. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (considering counsel's future efforts to oversee the claims process in awarding fee).

### 2. The Magnitude and Complexity of the Case Favors the Request

In cases that require more expertise, a larger award is warranted to the lawyers who can competently bring and prosecute the case. *Goldberger*, 209 F.3d at 55. The Actions were of considerable magnitude and complexity. *See generally* Serra Decl. They involved the production of hundreds of thousands of pages of documents, third party subpoenas, litigation of class certification, an appeal to the Second Circuit, numerous oral arguments, and a half-dozen days of evidentiary and scientific hearings with testimony of several expert and fact witnesses, among other complicating factors. *See id.* ¶¶7-26. Thus, settlement is preferred in order to avoid the continued expenditure of significant expenses and resources.

### 3. The Litigation Risks Favor the Request

"The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014). The "litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. Indeed, while a plethora of "flushable" wipes-related cases followed, the *Kurtz* Action is believed to be the first of its kind, and thus carried considerable risk. As discussed above, *supra* §IV.B.4, Class Counsel faced significant risks in proving liability, class-wide impact and damages, and actually litigated each of these issues, none of which had a guaranteed outcome. *See* Serra Decl. ¶6 (motion to dismiss); ¶¶10, 12-13, 16-17 (class certification); ¶¶19-20 (appeal); ¶¶21-22 (remand); *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated."); *Goldberger*, 209 F.3d at 54 (the risk of the litigation is "perhaps the foremost factor to be considered in determining whether to award an enhancement"). Yet Class Counsel's requested fee award does not seek any enhancement; rather, the requested award represents a discount to their lodestar.

### 4. The Quality of Representation Favors the Request

"[T]he quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55; *see also Maley*, 186 F. Supp. 2d at 373 ("'The critical element . . . is the result obtained.'"). The exceptional results here reflect the quality of the lawyering, and both the Plaintiffs and the Settlement Class have indicated their agreement. *E.g.*, Ex. A to the Serra Decl., Declaration of Dr. D. Joseph Kurtz ("Kurtz Decl."), ¶¶4-6 ("I consider the Settlement to be a very good result for the Settlement Class that would not have been possible without Settlement Class Counsel's diligent efforts."); Ex. B to the Serra Decl., Declaration of Gladys Honigman ("Honigman Decl."), ¶¶4-6

(same); Serra Decl. ¶32 (discussing lack of objections to the fee and expense application). Again, the available Settlement relief is more favorable than similar "flushable" wipes-related settlements despite Kimberly-Clark producing a superior wipe than other manufacturers, and provides a greater potential monetary benefit than may be achieved at trial if Settlement Class Members with Proofs of Purchase were limited to the $50 statutory damages award under GBL §349 – an exceptional result warranting a commensurate fee.

### 5. The Fee Is Reasonable in Relation to the Settlement

While many courts in the Second Circuit apply the lodestar method in class action settlements without common funds, some have applied the percentage of recovery method in assessing attorneys' fees in such cases. For example, in *Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, at *6-*8 (W.D.N.Y. Dec. 29, 2016), the court analyzed the requested attorneys' fees and expense award in a claims-made settlement utilizing the percentage method based on the total benefit to the class, including the total monetary amount ***available*** to the class – not the amount of claims actually paid out – ***plus*** attorneys' fees. *Id*. (discussing case law). Under that analysis, Class Counsel's requested fee and expense award here of $4.1 million is approximately 17% of the total benefit to the Settlement Class. Even without including the attorneys' fee and expense award in that calculation, the requested award is 20.5% of the available settlement benefit, which is still notably lower than the "benchmark" fee request of 25%. *See id*. at *8 (citing cases). Class Counsel's request for attorneys' fees is thus reasonable and consistent with approved percentage awards by courts in the Second Circuit and elsewhere in similar cases.[14]

### B. The Request for an Award of Litigation Expenses Should Be Granted

"Just as attorneys may recover reasonable attorneys' fees in a certified class action, they may

---

[14]  Additionally, "public policy militates in favor of the fee in light of the role that consumer protection class actions play in regulating the marketplace." *Seekamp v. It's Huge, Inc*., 2014 WL 7272960, at *2 (N.D.N.Y. Dec. 18, 2014).

also recover 'nontaxable costs.' . . . Costs may include items such as 'photocopying, travel, telephone costs, witness fees, long distance faxes, transcript requests necessary for post-trial motions and costs of necessary depositions.'" *Pearlman*, 2019 WL 3974358, at \*7 (collecting cases). Compensable expenses broadly include "reasonable expenses normally charged to a fee paying client." *See generally 5 Newberg and Rubenstein on Class Actions* §16:5 (5th ed.) (collecting cases). Through July 15, 2022, Class Counsel have incurred $138,331.23 in litigation expenses and charges with respect to Kimberly-Clark alone in prosecuting the Actions. Robbins Geller Decl. ¶¶5-7, Exs. B (description of expenses by category), C-F (further break-down and details of expenses). This amount primarily includes expert fees, on-line research costs, travel expenses, mediator fees and other expenses necessary to prosecute the Actions. *Id.* Such expenses are regularly awarded by courts. *See Pearlman*, 2019 WL 3974358, at \*7 (approving request for expenses of over $264,000 in eight-year litigation). Notably, the expenses are being paid directly by Defendant, and not coming from the monetary relief obtained for Settlement Class Members.

## VI. THE REQUESTED CLASS REPRESENTATIVE PAYMENTS SHOULD BE GRANTED

"Courts in this circuit regularly approve service awards, ranging from as low as $1,000 to as high as $25,000, in consumer class action settlements; generally, however, awards between $1,000 and $10,000 are more typical." *McLaughlin*, 2018 WL 3642627, at \*6. Service awards in class actions "compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit. These awards are designed to reimburse representative plaintiffs, who take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." *Simerlein*, 2019 WL 2417404, at \*26; *see also McLaughlin*, 2018 WL 3642627, at \*14-\*15 (awarding $6,000 incentive fee even where lead plaintiff assumed no risk and

brought no special expertise).  The amounts of $10,000 and $5,000 for Dr. Kurtz and Ms. Honigman, respectively, is well within the "typical" range of awards to plaintiffs cited above.

Here, Plaintiffs Dr. Kurtz and Ms. Honigman aided their counsel in successfully prosecuting this litigation and reaching a settlement, including locating and forwarding responsive documents and information, reviewing and responding to discovery, communicating with counsel, monitoring and keeping abreast of significant developments in the litigation, and in Dr. Kurtz's case, preparing and sitting for a deposition and providing access to his homes for inspections.  Kurtz Decl. ¶3; Honigman Decl. ¶3.  Thus, the requested Class Representative Payments should be approved.  *See Belfiore*, ECF No. 361 at 9 (awarding $10,000 to class representative in "flushable" wipes case).

## VII.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED

"The ultimate decision to certify the class for purposes of settlement" is easy here because Judge Weinstein already certified the Class after years of motion practice, evidentiary hearings, and multiple opinions.  *See* Rule 23; *id.*, Committee Notes ("[The] procedural requirements apply in instances in which the court has not certified a class at the time that a proposed settlement is presented to the court.").  Indeed, the Court in its Preliminary Approval Order certified a Settlement Class consisting of "all individuals over the age of 18 who purchased the Products in the United States between February 21, 2008 and the date of this Order, excluding purchases made for purposes of resale," and appropriately excluding certain persons.  Preliminary Approval Order ¶3.  Because nothing has changed since the Court preliminarily found that the Settlement Class should be certified (*id.* ¶2) which would undermine certification, the Settlement Class should be finally certified.

## VIII.  CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court: (1) certify the Settlement Class for settlement purposes; (2) grant final approval of the proposed Settlement; and (3) approve the request for attorneys' fees and expenses, and the Class Representative Payments.

DATED:  August 3, 2022                    Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          VINCENT M. SERRA
                                          FRANCIS P. KARAM
                                          WILLIAM A. MASSA


                                                  /s/ Vincent M. Serra
                                          VINCENT M. SERRA

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          vserra@rgrdlaw.com
                                          fkaram@rgrdlaw.com
                                          wmassa@rgrdlaw.com

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          STUART A. DAVIDSON
                                          MARK DEARMAN
                                          120 East Palmetto Park Road, Suite 500
                                          Boca Raton, FL  33432
                                          Telephone:  561/750-3000
                                          561/750-3364 (fax)
                                          sdavidson@rgrdlaw.com
                                          mdearman@rgrdlaw.com

                                          *Attorneys for Plaintiffs*