UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————— x

D. JOSEPH KURTZ, Individually and on    :    Civil Action No. 1:14-cv-01142-PKC-RML
Behalf of All Others Similarly Situated,    :
   :    <u>CLASS ACTION</u>
              Plaintiff,    :
   :
      vs.    :
   :
KIMBERLY-CLARK CORPORATION, et al.,    :
   :
            Defendants.    :
   :

——————————————————————— x

GLADYS HONIGMAN, Individually and on    :    Civil Action No. 2:15-cv-02910-PKC-RML
Behalf of All Others Similarly Situated,    :
   :    <u>CLASS ACTION</u>
              Plaintiff,    :
   :
      vs.    :
   :
KIMBERLY-CLARK CORPORATION,    :
   :
            Defendant.    :
   :

——————————————————————— x

**DECLARATION OF VINCENT M. SERRA IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS COUNSEL'S
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
CLASS REPRESENTATIVE PAYMENTS**

I, VINCENT M. SERRA, declare as follows:

1.     I, Vincent M. Serra, am an attorney duly licensed to practice in the States of New York and California, and in the District of Columbia, a partner of the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Class Counsel"), and I represent plaintiffs, Dr. D. Joseph Kurtz and Gladys Honigman ("Plaintiffs"), in these actions (the "Litigation").[1] I have been actively involved in the prosecution and resolution of the Litigation, am familiar with its proceedings, and have knowledge of the matters set forth herein based upon my involvement in this Litigation and supervision of or communications with other lawyers and staff assigned to this Litigation.

2.     Attached are true and correct copies of the following exhibits:

Exhibit A     Declaration of Dr. D. Joseph Kurtz

Exhibit B     Declaration of Gladys Honigman

3.     I respectfully submit this Declaration in support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement; (2) Class Counsel's Application for an Award of Attorneys' Fees and Expenses; and (3) Class Representative Payments. This Declaration demonstrates why the proposed Settlement is fair, reasonable, adequate, in the best interests of the Settlement Class (defined below), and warrants final approval by the Court. This Declaration also demonstrates the basis for Class Counsel's request for an award of attorneys' fees of $3,961,668.77 and expenses of $138,331.23.

---

[1]     All capitalized terms that are not otherwise defined herein have the same meanings ascribed to them in the Settlement Agreement and General Release, ECF No. 432-1 ("Settlement Agreement").

## I. THE NATURE AND PROCEDURAL HISTORY OF THE LITIGATION

### A. Summary of the Allegations

4. These are putative class actions brought against settling defendant Kimberly-Clark Corporation ("Kimberly-Clark" or "Defendant") – a leading, if not the leading, manufacturer of "flushable" wipes in the country – and non-settling defendant Costco Wholesale Corporation ("Costco," together with Kimberly-Clark, "Defendants") – alleging that Defendants falsely labeled and advertised their moist toilet wipe products as "flushable." The Actions (defined below) seek damages under New York's General Business Law ("GBL") §§349 and 350 on behalf of a proposed settlement class ("Settlement Class") consisting of individuals who purchased Kimberly-Clark "flushable" wipes in the United States between February 21, 2008 and May 19, 2022 (the "Settlement Class Period"), the date of entry of the Preliminary Approval Order (defined below).

5. As described in the Class Action Complaints, Plaintiffs allege that Defendant's "flushable" wipes products (the "Products")[2] were unsuitable for flushing, making them improperly labeled as "flushable" or "safe for sewer and septic systems." ¶¶29, 30, 86.[3] Plaintiffs allege that Defendant sold the Products under numerous brands, most of which include the word "flushable" in the name of the product itself. ¶¶2, 14-16, 19-20. Many of Kimberly-Clark's "flushable" wipes, including its Cottonelle-branded "flushable" wipes, also included on the label the assurance that they are "sewer and septic safe" and "break up after flushing." ¶¶15, 20, 29, 107. Since Kimberly-Clark's "flushable" wipes did not perform as represented on their packaging, Plaintiffs alleged that

---

[2] The Products are defined by the Settling Parties as "Kimberly-Clark's flushable wipes sold in the United States during the Settlement Class Period under the Cottonelle, Scott, Huggies Pull-Ups, Poise, or Kotex brands." Settlement Agreement ¶1.26.

[3] References to "¶__" and "¶¶__" refer to the Class Action Complaint in the *Kurtz* Action, filed on February 21, 2014. ECF No. 1. All references to "ECF No(s). __" are to the *Kurtz* Action, unless otherwise noted.

they and members of the putative Classes suffered economic injury when they purchased Kimberly-Clark's "flushable" wipes. ¶¶89, 94, 116, 122. Specifically, Kimberly-Clark's false and deceptive marketing and labeling of its wipes as "flushable" caused Plaintiffs and members of the Classes to pay a premium for the products attributable to the "flushable" representations. ¶¶78-82.

**B.    Procedural History of the Litigation and Settlement**

**1.    The District Court Proceedings**

6.    On February 21, 2014, Dr. Kurtz filed a consumer action seeking damages and injunctive relief, asserting claims on behalf of himself and other similarly situated consumers for, *inter alia*, violations of GBL §§349-350. ECF No. 1. The case was assigned to Senior Judge Jack B. Weinstein and Magistrate Judge Robert M. Levy. On May 5, 2014, Kimberly-Clark filed its motion to dismiss, to which Dr. Kurtz responded on July 1, 2014, and Defendant filed its reply on August 1, 2014. ECF Nos. 18-19, 30, 34. The Court held an initial conference on July 18, 2014, a hearing on the motion to dismiss on August 18, 2014 and a status conference in both the *Kurtz* Action and a related action, *Belfiore v. Procter & Gamble Co.*, No. 2:14-cv-04090 (E.D.N.Y.) (the "*Belfiore* Action"), on November 14, 2014, at which expedited discovery and briefing schedules were established.[4] ECF No. 51. On November 18, 2014, the Court denied Defendant's motion, and referred the case to Magistrate Judge Levy for expedited discovery limited to class certification issues. ECF No. 49. Defendants filed their answers to Dr. Kurtz's complaint on December 15, 2014. ECF Nos. 58-59.

---

[4]    The *Belfiore* Action was originally filed in the Supreme Court of the State of New York, County of Nassau, on May 23, 2014, and was subsequently removed to the Eastern District of New York on July 1, 2014, where it was coordinated with, and has proceeded along a parallel track with, the *Kurtz* Action. On July 27, 2020, the Court issued an order in the *Belfiore* Action finally approving a class action settlement resolving plaintiff's claim under GBL §349.

7.      Following the Court's order granting expedited class certification discovery, the parties moved quickly into the discovery phase of the litigation.  The parties submitted a proposed protective order on August 15, 2014 (ECF No. 36-1) and exchanged initial disclosures, document requests and interrogatories on November 24, 2014.  Dr. Kurtz issued or coordinated the issuance of more than a dozen subpoenas containing requests for the production of documents on various non-parties – including wastewater districts (*e.g.*, Orange County Sanitation, Plainfield Area Regional Sewerage Authority), municipalities (*e.g.*, City of Vancouver), industry groups (*e.g.*, INDA, NACWA), market data providers (IRI) and retailers (*e.g.*, Amazon.com, Inc. ("Amazon"), Drugstore.com, Inc. ("Drugstore.com")) – between late November 2014 and early January 2015.  On January 14, 2015, Kimberly-Clark moved to quash the subpoenas of non-parties Wal-Mart Stores, Inc., Amazon, Quidsi, Inc., Drugstore.com and Nielsen N.V.  ECF No. 68.  Dr. Kurtz responded to Defendant's motion on January 17, 2015 (ECF No. 70), and following a hearing on the motion on February 6, 2015, the Court issued an order denying the motion on March 20, 2015.

8.      Class Counsel reviewed and reproduced to Defendants over 12,000 documents (over 52,000 pages) that they obtained from these third parties.  Defendants inspected Dr. Kurtz's home plumbing systems on December 8 and 9, 2014.  On December 10, 2014, the parties conducted Dr. Kurtz's deposition.  Class Counsel took the depositions of Kimberly-Clark's 30(b)(6) witnesses Amanda O'Connor and David Powling on February 3 and 5, 2015, respectively, and took 30(b)(6) depositions of third party Nice-Pak on January 29, 2015 (Jeffrey Hurley) and February 9, 2015 (Kim Babusik) and Costco on February 13, 2015 (Kim Walior).

9.      In September 2014, Kimberly-Clark began its rolling production of documents in connection with class certification, and continued producing documents through February 2015.  The productions included, among other things, documents pertaining to labeling, market and consumer

research, trade organizations, communications with municipalities, and customer complaints. During this initial wave of discovery, in addition to the documents produced by the third parties discussed above and those produced by or on behalf of defendant Costco, Kimberly-Clark produced over 5,000 documents (over 20,000 pages) that Class Counsel reviewed. In response to Defendants' discovery requests, Dr. Kurtz completed his production of documents on December 9, 2014.

10.     Between February and May 2015, Dr. Kurtz and Kimberly-Clark submitted numerous briefs in connection with their motions for and to deny class certification, along with supporting expert reports. ECF Nos. 81, 100, 103, 124, 127. Dr. Kurtz submitted an expert report from Colin B. Weir, Vice President of Economics and Technology, Inc., on the issue of damages (and relatedly, injury) while Kimberly-Clark submitted a rebuttal expert report from Dr. Keith R. Ugone, along with a report from John T. Boyer, Sr., who opined as to the condition of Dr. Kurtz's plumbing system. In June and July 2015, the Court held a two-day "Science Day" evidentiary hearing so that it could better understand how "flushable" wipes work and perform. ECF Nos. 299, 301. At the Science Day hearing, Class Counsel presented the testimony of Robert A. Villée, the former Executive Director of the Plainfield Area Regional Sewerage Authority ("PARSA") and Water Environment Federation ("WEF") Collection Systems Committee Chair, and environmental engineer Daniel H. Zitomer. Kimberly-Clark, in turn, presented the testimony from its witness, David Powling, a Technical Leader for Kimberly-Clark's "flushable" wipes products.

11.     On May 20, 2015, Ms. Honigman filed a similar class action, currently pending as *Honigman v. Kimberly-Clark Corp.*, No. 2:15-cv-02910-PKC-RML (the "*Honigman* Action" and, together with the *Kurtz* Action, the "Actions"), against Kimberly-Clark seeking damages and injunctive relief, asserting claims on behalf of herself and other similarly situated consumers for, *inter alia*, violations of GBL §§349-350. *See Honigman*, ECF No. 1.

12.    On October 5, 2015, the Court issued a preliminary ruling on class certification in the related *Belfiore* Action.  *Belfiore*, ECF No. 149.  Judge Weinstein concluded that the plaintiff satisfied all Rule 23 prerequisites, except for Rule 23(b)(3)'s superiority requirement because the Federal Trade Commission ("FTC") was "better suited to protect consumers nationally as well as those in New York.  Not only does the FTC's mandate encompass investigating deceptive practices in the labeling of consumer goods, the agency is *already* considering 'flushable' claims made by this defendant, and those of at least one other manufacturer."  *Id*. at 77 (emphasis in original).  Consequently, the Court stayed the *Belfiore* Action and referred the flushability issue to the FTC.

13.    Shortly thereafter, on October 9, 2015, the Court heard argument on the class certification-related motions in the *Kurtz* Action and also regarding the Court's order to show cause "why the court should not similarly stay [the *Kurtz* Action] and refer it to the Federal Trade Commission."  ECF No. 181.  Then, however, on October 13, 2015, the Court stayed the Actions, along with three other related actions,[5] pending any action by, or resolution with, the FTC.  ECF No. 183.  On October 21, 2015, the Court held a hearing on an oral motion in the *Belfiore* Action for reconsideration of the Court's order staying the action and regarding management of the related actions.  The Court issued an order denying the motion for reconsideration the following day.  ECF No. 202.

14.    On November 10, 2015, Dr. Kurtz moved to lift the stay of the Actions, arguing that the FTC's recently finalized consent order with Nice-Pak, Inc. provided an appropriate definition of "flushability" and framework for substantiating manufacturers' and marketers' "flushable" claims.  ECF Nos. 205-206.  After holding a hearing on the motion on December 7, 2015, the Court denied

---

[5]    Those actions include: *Armstrong v. Costco Wholesale Corp. & Nice-Pak Products, Inc.*, No. 2:15-cv-2909 (E.D.N.Y. filed May 19, 2015); *Palmer v. CVS Health & Nice-Pak Products, Inc.*, No. 2:15-cv-2928 (E.D.N.Y. filed May 20, 2015); and *Richard v. Wal-Mart Stores, Inc. & Rockline Indus.*, No. 1:15-cv-4579 (E.D.N.Y. filed Aug. 5, 2015).  These cases are no longer pending.

Dr. Kurtz's motion to lift the stay, noting that the FTC was continuing to investigate additional "flushable" wipes manufacturers, including two defendants in the actions over which the Court was then-presiding, and that it was possible that the FTC would take further action with respect to Plaintiffs' claims. ECF No. 216.

15. In August 2016, the Court directed the parties to submit briefing on the further administration of the litigation. ECF No. 233. In his brief, Dr. Kurtz argued that recent developments supported lifting the stay in the parallel actions, including that the FTC stated in a letter to counsel in the *Belfiore* Action that: (1) it would not respond further to the Court's referral; (2) the final Consent Order with Nice-Pak can provide guidance to private cases such as these; and (3) by virtue of the agency's administrative design, it is unable to conduct an aggregate adjudication of the related actions as the Court suggested. ECF No. 242. Kimberly-Clark submitted a brief that included additional argument on class certification. ECF No. 244. Thereafter, the Court held various status and/or settlement-related conferences in September, October and December 2016, and invited further briefing on how the cases should proceed.

16. At a December 7, 2016 hearing, the Court lifted the stay to allow the parties to submit additional briefing on various issues. ECF No. 263 (referring to motions to terminate or transfer the instant cases). On December 30, 2016, Kimberly-Clark submitted briefing renewing its motion to deny Dr. Kurtz's motion for class certification, and upon denial of certification, to deny or hold as moot Plaintiffs' individual claims for injunctive relief or, in the alternative, to dismiss them as prudentially moot. ECF No. 268. Plaintiffs' responded to Defendant's brief on January 13, 2017, including by submitting a declaration of Mr. Villée further evidencing that Defendant's "flushable" wipes did not break down so that they can be labeled as flushable under any definitions considered

by the Court. ECF Nos. 272-273. Kimberly-Clark submitted a reply brief to its renewed motion to deny class certification on January 20, 2017. ECF Nos. 277-279.

17. The Court held further class certification-related hearings in the *Kurtz* and *Belfiore* matters on February 2 and 3, 2017, at which the Court asked plaintiffs to submit letters defining the classes on whose behalves they sought to certify, and expressed its intent to grant class certification. On February 17, 2017, Kimberly-Clark submitted a memorandum in support of its objections regarding the Court's tentative class certification ruling during the February 2-3 hearings. ECF No. 287. On February 24, 2017, Dr. Kurtz moved to strike evidence submitted by Kimberly-Clark in its submission, ECF Nos. 290-291, which the Court denied. The Court then stayed the *Honigman* Action for a second time on February 27, 2017, pending resolution of the motion for class certification in the *Kurtz* Action, as discovery had not yet started in the *Honigman* Action and Judge Weinstein found the issues in the cases were "largely the same[.]" ECF No. 292 at 6.

18. On March 27, 2017, the Court issued a 131-page order certifying a class as to Kimberly-Clark consisting of "[a]ll persons and entities who purchased Kimberly-Clark Flushable Products in the State of New York between February 21, 2008 and March 1, 2017." ECF No. 296 at 130 (the "Certification Order"). The Court further certified a class as to Costco consisting of "all persons and entities who purchased Kirkland Signature Flushable Wipes in the State of New York between July 1, 2011 and March 1, 2017."[6] *Id.*

### 2. The Appellate and Remand Proceedings

19. Following the Certification Order, Defendants petitioned for appellate review of the order under Rule 23(f). ECF No. 297. The Second Circuit Court of Appeals granted their petitions. Thereafter, Defendants filed their opening appellate briefs on September 27, 2017, with Kimberly-

---

[6] The Certification Order also certified a class of New York purchasers of Procter & Gamble's Charmin "flushable" wipes in the *Belfiore* Action.

Clark defining the statement of the issues as follows: (1) whether the District Court erred in applying a presumption in favor of class certification throughout its decision; (2) whether the District Court erred in certifying a Rule 23(b)(3) damages class when Dr. Kurtz failed to present evidence of common, predominating questions on the issues of misrepresentation, injury, and causation; and (3) whether the District Court erred in holding that Dr. Kurtz has Article III standing for a Rule 23(b)(2) injunctive class to enjoin the sale of products that he has no intention of repurchasing, particularly when the products he previously purchased are different from the ones he seeks to enjoin. Dr. Kurtz filed his response on December 27, 2017, and Defendants filed their reply briefs on January 24, 2018. *See Kurtz v. Kimberly-Clark Corp., et al.*, No. 17-1856 (2d Cir.) ECF Nos. 61, 62, 82, 103, 104.

20. After oral argument on the appeals, heard on April 10, 2019, the Second Circuit issued a Summary Order concluding "that further development of the record is appropriate" to decide whether Defendants' predominance argument has any merit, and remanding the *Kurtz* and *Belfiore* matters "pursuant to the procedure set out in *United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994), so that the parties may be afforded the chance to supplement the record with additional evidence and so that the district court can then make appropriate findings on the predominance issue." *Kurtz v. Costco Wholesale Corp.*, 768 F. App'x 39, 40 (2d Cir. 2019).

21. On May 16, 2019, Judge Weinstein issued an order setting an evidentiary hearing in *Kurtz* and *Belfiore* per the Second Circuit's mandate. The Court then held an in-person case management conference on June 18, 2019, where it set hearing dates beginning August 6, 2019 in connection with the mandate. Dr. Kurtz obtained and produced updated data from IRI that was necessary for Mr. Weir to complete his analysis. Dr. Kurtz served and filed Mr. Weir's supplemental expert report as to Kimberly-Clark on July 9, 2019. ECF No. 335-1. Mr. Weir sat for

a deposition in the related *Belfiore* Action on July 26, 2019 (at which Class Counsel was present), and each defendant filed its respective rebuttal expert report on July 30, 2019. *E.g.*, ECF Nos. 342-1, 343-1.

22. Between August 6 and 12, 2019, the Court held four days of evidentiary hearings in the *Kurtz* and *Belfiore* matters. ECF Nos. 384-387. Plaintiffs in both cases, as well as defendants Kimberly-Clark, Costco and Procter & Gamble, presented testimony from their respective damages experts – Mr. Weir, Dr. Ugone, Dr. Martin and Dr. Carol A. Scott, respectively – subject to cross-examination, re-direct, and in the case of Mr. Weir, rebuttal testimony. At the conclusion of the hearings, the parties exchanged extensive supplemental post-hearing briefing in September 2019 on the issues of causation and injury under Rule 23's predominance standard, and in support of motions to strike Mr. Weir and Dr. Ugone's testimony, respectively. ECF Nos. 360, 362, 370, 372. On October 8, 2019, the Court held another hearing to consider the parties' arguments in connection with the evidentiary hearing and issues remanded by the Court of Appeals.

23. On October 25, 2019, Judge Weinstein issued an order denying the parties' motions to exclude expert testimony and reasserting the Certification Order. ECF No. 382 (the "Remand Order"). Thereafter, on November 4, 2019, the Court of Appeals granted the parties' request to reinstate the appeals in *Kurtz* and *Belfiore* and ordered that the parties submit further briefing to discuss the District Court's decision on remand. The parties filed their supplemental post-remand briefs in January and March 2020, and Defendants filed reply briefs on April 24, 2020. *Kurtz v. Kimberly-Clark Corp., et al.*, No. 17-1856 (2d Cir.) ECF Nos. 237-259, 274-275. On April 27, 2020, Dr. Kurtz filed a motion to strike Defendants' unauthorized supplemental reply briefs. *Id.* ECF No. 279.

24.     On June 26, 2020, the Court of Appeals granted the motion to strike, affirmed the Certification Order as to the damages classes under Rule 23(b)(3), reversed the Certification Order as to the injunctive relief classes under Rule 23(b)(2), and remanded to the District Court for further proceedings, *Kurtz v. Kimberly-Clark Corp., et al.*, No. 17-1856 (2d Cir. June 26, 2020), ECF No. 293-1, after which the case was reassigned to Judge Pamela K. Chen after Senior Judge Weinstein – who oversaw *Kurtz* and other related matters since 2014 – recused himself on February 12, 2020.

### 3.     Post-Appeal Litigation

25.     On September 8, 2020, after the Court of Appeals affirmed certification of the Kimberly-Clark damages class and remanded the *Kurtz* Action to the District Court (for the second time), Defendants filed requests for a pre-motion conference in connection with their anticipated motions for summary judgment.  ECF Nos. 403, 404.  Dr. Kurtz filed responses on September 23, 2020 (ECF Nos. 405-406), and following a pre-motion conference held on October 22, 2020 at which the Court cast doubt on Defendants' proposed arguments as potentially "futile," both Costco and Kimberly-Clark thereafter decided to delay filing their motions for summary judgment, if at all, until the conclusion of fact and expert discovery.  ECF No. 416.

26.     On November 25, 2020, the Court entered an order setting forth dates for discovery and dispositive motions, which have since been extended.  In the interim, the Actions have continued into fact discovery.  Ms. Honigman and Kimberly-Clark served Rule 26 disclosures in the *Honigman* Action on January 27, 2021, and Plaintiffs and Defendants negotiated an ESI protocol in the Spring and Summer of 2021, applicable to both Actions, which was finalized on July 26, 2021.  ECF No. 417.  Ms. Honigman responded to interrogatories and document requests on July 26, 2021.  Thereafter, the parties met and conferred as to the scope of discovery, and exchanged correspondence regarding discovery, including in response to Defendant's August 31, 2021 Notice

of Inspection of Property of Honigman. Kimberly-Clark made multiple updated document productions in August and October 2021, totaling more than 48,000 documents (over 271,000 pages). To date, Kimberly-Clark has produced over 54,000 documents (over 292,000 pages).

### 4.    Settlement Negotiations and Preliminary Approval

27.    While the Court repeatedly urged settlement discussions between the parties early in the Actions (ECF Nos. 202, 226; July 21, 2015, October 22, 2015, June 28, 2016 and September 29, 2016 Orders), Plaintiffs and Kimberly-Clark first engaged in settlement negotiations in mid-to-late 2018. These discussions have not only encompassed dozens of telephone calls between counsel, but also two separate multi-day settlement meeting and testing sessions at and nearby Kimberly-Clark's offices in Neenah, Wisconsin, a videoconference with Kimberly-Clark's in-house counsel and "flushable" wipes technical personnel, the exchange of numerous settlement proposals and counter-proposals and a mediation. The first multi-day in-person settlement session took place in December 2018, and included meetings, discussions and testing of Kimberly-Clark and other manufacturers' "flushable" wipes. Following the December 2018 session, the parties continued negotiations, including discussing the possibility of mediation, and Class Counsel sent Kimberly-Clark's counsel settlement proposals in March 2019. The second multi-day settlement session took place in July 2019, and consisted of further discussions and testing of "flushable" and non-flushable products at Kimberly-Clark's offices and testing facility.

28.    Over the ensuing months, the parties negotiated further refinements to the follow-up testing proposals. Plaintiffs continued to analyze testing data into December 2019 that was necessary to inform their decision as to an appropriate testing standard that could be acceptable to Plaintiffs based on input from prominent wastewater professionals. After the Second Circuit's June 26, 2020 Summary Order reversing the District Court's certification of the injunctive relief class in the *Kurtz* Action, however, Class Counsel re-focused its pursuit of injunctive relief through

the *Honigman* Action and/or their proposed action on behalf of the Charleston Water System, which was at the time still in its investigatory stage. Plaintiffs' counsel ultimately obtained a commitment by Kimberly-Clark that its "flushable" wipes products would fully comply with the International Water Services Flushability Group ("IWSFG") Publicly Available Standards ("PAS") – the wastewater industry's gold standard for flushability – by May 1, 2022 through a class action settlement on behalf of wastewater entities in *Commissioners of Public Works of the City of Charleston v. Costco Wholesale Corp., et al.*, No. 2:21-cv-00042-RMG (D.S.C.), approved by Judge Gergel on January 24, 2022. *Charleston*, ECF No. 133. Multiple rounds of confirmatory testing pursuant to the *Charleston* settlement have confirmed that Kimberly-Clark is meeting that commitment.

29. While the parties' early discussions did not result in a settlement of the Actions, they continued to pursue resolution of the Actions and participated in a mediation with the Honorable Wayne R. Andersen (Ret.) on July 22, 2020. That mediation also did not result in a settlement, however, the parties resumed discussions in late August and September 2021, with Class Counsel providing Kimberly-Clark a formal settlement proposal on September 22, 2021. The parties continued to negotiate the contours of a potential settlement during the following months and began working on a memorandum of understanding (the "MOU") in December 2021. On December 29, 2021, the parties executed the MOU. Over the following several months the parties negotiated the terms of the Settlement Agreement, which was filed with the Court on April 5, 2022, ECF No. 432-1, along with Plaintiffs' memorandum in support of their motion for preliminary approval of the Settlement. ECF Nos. 430-431.

30. Following a May 16, 2022 Order stating that the Court was prepared to approve the proposed notices and preliminary approval order subject to certain changes, Plaintiffs filed revised

Settlement exhibits on May 19, 2022. ECF Nos. 435, 437. That same day the Court issued an Order

Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), which

preliminary approved the settlement, conditionally certified the Settlement Class, approved the

Notice Plan, designated Kroll Settlement Administration ("Kroll"; formerly Heffler Claims Group)

as the Claims Administrator, set a date for the Final Approval hearing and established certain dates

in connection with the Notice Plan, the filing of claims, objections, and requests for exclusions, and

for the filing of Plaintiffs' motion for final approval and application for an award of attorneys' fees

and expenses and Class Representative Payments. ECF No. 439.

31. In accordance with the Settlement Agreement and Preliminary Approval Order, the

Claims Administrator has implemented the Notice Plan. The Claims Administrator provided Notice

to Settlement Class Members beginning on June 17, 2022 via the online advertising plan, including:

(1) online display banner advertising targeting Cottonelle, Kotex, Huggies Pull-Ups, Scott and Poise

brand purchasers; (2) keyword search online advertising showing advertisements to users in their

Google search results; and (3) social media through Facebook and Instagram targeting, *e.g.*,

followers of Kimberly-Clark pages, and through YouTube and Pinterest targeting, including content

related to "flushable" wipes or related search terms. As instructed by the Court in its Preliminary

Approval Order, the Claims Administrator has also established a Settlement Website, which contains

all of the required information, and has been operating a toll-free number as described in the Notice

Plan. Preliminary Approval Order ¶6(a)-(c); https://www.flushablewipessettlement.com/ (last

visited Aug. 2, 2022).

32. The Claims Administrator (Kroll) has been providing Plaintiffs' Counsel with

periodic updates on the claims administration and notice process. As of August 3, 2022, Settlement

Class Members have made 119,610 total claims, with only sixteen (16) requests for exclusion and

zero (0) objections to any part of the Settlement or the fee and expense application since the Court granted preliminary approval of the Settlement.

## II.    THE SETTLEMENT

### A.    The Settlement Was Fairly, Honestly, and Aggressively Negotiated by Counsel Who Endorse the Settlement

33.    The terms of the Settlement were negotiated by the Settling Parties at arm's length through adversarial, good faith negotiations. The Settlement was reached only after extensive settlement negotiations on behalf of and between the Settling Parties over the course of several years, including mediation, in-person and virtual meetings with counsel and Kimberly-Clark personnel, countless telephone conversations and the exchange of numerous settlement proposals. *See supra* ¶¶27-29. Class Counsel were ultimately able to achieve a settlement that provides considerable monetary relief to Settlement Class Members in the form of cash payments. Settlement Agreement ¶¶2.4-2.5.

34.    Class Counsel have extensive experience representing consumers and other entities in complex and other litigation in federal and state courts nationwide. Robbins Geller is actively engaged in "flushable" wipes-related litigation in the *Charleston* matter, for which it also reached a settlement with Kimberly-Clark (*see supra* ¶28), and has achieved favorable results in a variety of important and unprecedented complex class actions. *See, e.g.*, https://www.rgrdlaw.com/services-litigation-consumer-fraud-privacy-litigation.html (last visited Aug. 2, 2022).

35.    Defense Counsel are experienced lawyers from Sidley Austin LLP ("Sidley"), a well-respected top defense firm with offices worldwide, with a reputation for vigorous advocacy in the defense of complex class action litigation. Indeed, according to the National Law Journal, Sidley placed 6th on The American Lawyer's 2021 Am Law 200 ranking and was ranked as the 7th highest grossing law firm in the world. *See* https://www.law.com/law-firm-

profile/?id=274&name=Sidley&slreturn=20211109005919 (last visited Aug. 2, 2022). Defense Counsel continue to deny any wrongdoing or legal liability for any wrongdoing on behalf of Kimberly-Clark, and have vigorously pressed their client's defenses and would continue to do so.

36.     The volume and substance of Class Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims are adequate to support the Settlement.  It took hard and diligent work by skilled counsel to develop the facts and theories which persuaded Defendant to enter into serious settlement negotiations.  As discussed above, Class Counsel engaged in hard-fought litigation over the course of more than eight years.  Class Counsel also thoroughly researched the law applicable to the claims of the Settlement Class and applicable defenses thereto, including analyzing the strengths and weaknesses of Plaintiffs' claims against Defendant on appeal and after extensive work with expert consultants, and based on Robbins Geller's history of litigating "flushable" wipes-related claims against Kimberly-Clark and other defendants.  The accumulation of these efforts permitted Plaintiffs and Class Counsel to be well-informed of the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendant.

37.     In deciding to enter into the Settlement, Plaintiffs and Class Counsel considered, among other things, the substantial immediate benefit to Settlement Class Members under the terms of the Settlement Agreement, and the risks of continued litigation, including the legal hurdles and risks involved in opposing a motion for summary judgment, as well as the further risk, delay, and expense in ultimately proving liability and damages, particularly in cases such as these where expert economic issues are highly contested.  *See infra* ¶¶42-44.

### B.     The Terms of the Settlement

38.     As outlined in the Settlement Agreement, ¶2.4, each Settlement Class Member who submits a Valid Claim without Proof of Purchase will receive a payment of seventy cents ($0.70) for

each package of wipes purchased during the Settlement Class Period, regardless of the price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to the following limitations: a maximum of seven dollars ($7.00) (*i.e.*, a maximum of 10 packages) will be paid on any claim submitted by any Household for claimed purchases that are not corroborated by Proof of Purchase, and only one claim may be submitted per Household (either with or without proof of purchase, but not both).

39.     Alternatively, each Settlement Class Member who submits a Valid Claim corroborated by Proof of Purchase will receive a refund of one dollar and ten cents ($1.10) for each Product package purchased during the Settlement Class Period, regardless of the price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to the following limitation: a maximum of fifty dollars and sixty cents ($50.60) (*i.e.*, maximum of 46 packages) will be paid on any claim submitted by any Household for claimed purchases that are corroborated by Proof of Purchase, and only one claim may be submitted per Household (either with or without Proof of Purchase, but not both).   Settlement Agreement ¶2.4.

40.     In addition, a $20 million cap on all claims made shall apply.  *Id.* ¶2.5.  If the Valid Claims exceed the cap, the Claims Administrator will fulfill all Valid Claims on a *pro rata* basis so that the total amount of payments does not exceed the cap.  *Id.*  The Claims Administrator will be responsible for processing Claim Forms and administering the Settlement Website, opt-out process, and Settlement claims process described herein.  *Id.* ¶2.6.

41.     The Settlement would resolve Plaintiffs' claims against Kimberly-Clark in both the *Kurtz* and *Honigman* actions.

**C.** **The Settlement Eliminates the Risks and Any Potential Delay of Relief for Plaintiff and the Settlement Class**

42.     The *Kurtz* Action, to Class Counsel's knowledge, was the first action of its kind to allege misrepresentations by a manufacturer or retailer regarding their "flushable" wipes products. Accordingly, no playbook had yet been written, not settlements had yet been achieved and the prospects of recovery were uncertain. During the course of the Litigation, Defendant previewed many of its forthcoming arguments at various stages of the Actions, including in its motion to dismiss, numerous class certification-related briefs and pre-motion letter in connection with summary judgment. For example, Kimberly-Clark has lodged relentless criticisms about Mr. Weir's expert analysis and testimony on price premium analysis, damages, injury and causation. In one instance, following the Court's four-day post-remand evidentiary hearings, Defendant submitted a 54-page brief dedicated entirely to attacking and delegitimizing Mr. Weir's analyses. ECF No. 362 at 14-40. While those analyses survived scrutiny at the class certification stage, there is no guarantee that they would hold up to similar – and likely even more severe scrutiny – at trial.

43.     The availability of statutory damages is another risk that has been heavily litigated in this case and further supports the reasonableness of the Settlement. Judge Weinstein indicated that statutory damages "presents serious substantive legal questions" (ECF No. 382 at 30), indicating that statutory damages in their full amount are far from certain. Ultimately, any judgment in the Actions would likely present significant legal questions, which the losing parties would likely appeal, adding further cost, risk and delay to these proceedings.

44.     The process of ultimately proving liability and entitlement to relief requires further expert work in examining the performance of Defendant's "flushable" wipes, exchanging expert reports and rebuttal reports, taking expert depositions, briefing *Daubert* motions and/or holding *Daubert* hearings, briefing summary judgment and preparing for and prevailing at trial. This is a

costly and time-consuming process that is not guaranteed to enhance the relief the Settlement Class is currently expected to receive under the Settlement terms described above.

45.     Based on their extensive experience in "flushable" wipes-related litigation, class action litigation, and in the Actions, and after weighing the substantial benefits of the Settlement against the numerous obstacles to recovery after continued litigation, Class Counsel maintains that the Settlement is fair, reasonable, and in the best interest of the Settlement Class.

## III.    CLASS COUNSEL'S REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES IS REASONABLE

46.     Class Counsel has substantial experience representing consumers and other entities in complex cases, including in this District and in district courts throughout the country. *Supra* ¶34. As described above, Class Counsel brought their substantial experience to bear, working efficiently and diligently to obtain an exceptional result for the Settlement Class on a wholly contingent basis. The negative lodestar multiplier for the requested fee is 0.93, and the total requested fee and expense award of $4,100,000 is reasonable in light of the extensive and contentious Litigation and the result obtained. Class Counsel's experience and advocacy were required in presenting the strengths of the case throughout the Litigation and settlement process, in an effort to achieve the best possible settlement and convince Defendant, its insurers, and Defense Counsel of the risks Defendant faced from continuing to litigate Plaintiffs' claims. The Settlement represents a substantial recovery for the Settlement Class, attributable to the diligence, determination, hard work and reputation of Class Counsel. In light of Class Counsel's significant efforts in the face of numerous risks, we respectfully submit that the fee request is reasonable and warrants approval.

## IV.    CONCLUSION

47.     Given that the Settlement will result in substantial monetary relief, and the uncertainty surrounding whether Plaintiffs would have ultimately prevailed, Class Counsel

respectfully submits that the Settlement is fair, reasonable, and adequate, and warrants final approval. Class Counsel also submit that their request for an award of attorneys' fees of $3,961,668.77 and an award of expenses of $138,331.23, along with the Class Representative Payments, are reasonable and warrant this Court's approval.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of August, 2022.

*/s/ Vincent M. Serra*
VINCENT M. SERRA