UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. JOSEPH KURTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KIMBERLY-CLARK CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 1:14-cv-01142-PKC-RML<br><br>CLASS ACTION |
| GLADYS HONIGMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KIMBERLY-CLARK CORPORATION,<br><br>Defendant. | Civil Action No. 2:15-cv-02910-PKC-RML<br><br>CLASS ACTION |

**OBJECTION OF THEODORE H. FRANK**
**TO PROPOSED CLASS ACTION SETTLEMENT AND ATTORNEYS' FEE REQUEST**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.      Objector is a member of the Settlement Class .............................................. 2

II.     A court owes a fiduciary duty to unnamed class members. .......................... 2

III.    The settlement should be rejected because it disproportionately benefits the attorneys in violation of Rule 23 ................................................................................................ 4

        A.      Rule 23(e)(2)(C) confirms that courts should look to the ratio of fees to actual class recovery to determine settlement fairness ......................................................... 5

        B.      Class counsel negotiated a disproportionate share of the settlement for themselves. . 7

        C.      Class counsel designed an onerous claims process that throttles claims and reduces class recovery ........................................................................................................ 12

        D.      Class counsel negotiated a segregated fund that insulates their fee from scrutiny and unfairly prevents the class from recovering any reduction, while providing for immediate payment for themselves .................................................................... 13

IV.     If the Court approves the settlement, any fee award should be based on true class benefit . 15

        CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 216 (2d Cir. 1987) ........................................................................................3, 4

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013) ........................................................................................5, 6

*Belfiore v. Procter & Gamble Co.*,
   No. 2:14-cv-04090 (N.D. Cal. Jan. 26, 2021) ...............................................................11

*Berni v. Barilla S.P.A*,
   964 F.3d 141 (2d Cir. 2020) ..............................................................................................2

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)................................................................................ 8, 13, 16

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021)............................................................. 3, 5, 6, 8, 10, 13

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366, 2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016)....................10

*Cassese v. Wash. Mut., Inc.*,
   2014 U.S. Dist. LEXIS 85836 (E.D.N.Y. June 23, 2014)............................................13

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................................4, 15

*City of Pontiac Gen. Empls. Ret. Sys. v. Lockeed Martin*,
   954 F. Supp. 2d 276 (S.D.N.Y. 2013)..............................................................................17

*Cunningham v. Suds Pizza, Inc.*,
   290 F.Supp.3d 214 (W.D.N.Y. 2017) ................................................................................9

*Dennis v. Kellogg*,
   697 F.3d 858 (9th Cir. 2012)..............................................................................................9

*In re Dry Max Pampers*,
   724 F.3d 713 (6th Cir. 2013) ....................................................................................3, 7, 16

*Espinal v. Victor's Cafe 52nd St., Inc.*,
  2019 WL 5425475, 2019 U.S. Dist. LEXIS 183642 (S.D.N.Y. Oct. 23, 2019) ........................10

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ..................................................................................................14

*In re Facebook Biometric Info. Privacy Litig.*,
  No. 15-cv-3747, Dkt. 517-2 (N.D. Cal. Dec. 14, 2020) ..........................................................10

*Ferrington v. McAfee, Inc.*,
  No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) ......................9

*Fessler v. Porcelana Corona De Mexico*,
  23 F.4th 408 (5th Cir. 2022) ...................................................................................................16

*Fitzgerald v. Gann Law Books*,
  2014 U.S. Dist. LEXIS 174567 (D.N.J. Dec. 17, 2014) ..........................................................14

*Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Family Tr.*,
  925 F.3d 63 (2d Cir. 2019) .....................................................................................................16

*Gallego v. Northland Grp., Inc.*,
  814 F.3d 123 (2d Cir. 2016) .....................................................................................................5

*In re Giant Interactive Group, Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................................... 11, 16

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...................................................................................................6, 13

*Goldberger v. Integrated Res.*,
  209 F.3d 43 (2d Cir. 2000) ....................................................................................................3, 12

*Grant v. Bethlehem Steel Corp.*,
  823 F.2d 20 (2d Cir. 1987) .......................................................................................................2

*Hale v. Manna Pro Prods., LLC*,
  2021 WL 4993036, 2021 U.S. Dist. LEXIS 207828 (E.D. Cal., Oct. 26, 2021) .......................6

*Hart v. BHH, LLC*,
  334 F.R.D. 74 (S.D.N.Y. 2020) ...............................................................................................14

*Hart v. BHH LLC*,
 2020 WL 5645984, 2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sept. 22, 2020) ........................9

*Hesse v. Godiva Chocolatier*,
 2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ............................................................9

*Holt v. Foodstate, Inc.*,
 No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020)..................................10

*In re HP Inkjet Printer Litig.*,
 716 F.3d 1173 (9th Cir. 2013)....................................................................................................12

*Hymes v. Earl Enters. Holdings*,
 2021 U.S. Dist. LEXIS 26534 (M.D. Fla. Feb. 10, 2021)..........................................................15

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
 2018 WL 5013764, 2018 U.S. Dist. LEXIS 177824 (W.D. Wash. Oct. 16, 2018)...................10

*Jones v. Monsanto*,
 No. 19-CV-0102, Dkt. 65-2 (W.D. Mo. Feb. 25, 2021)...............................................................6

*Kaplan v. Rand*,
 192 F.3d 60 (2d Cir. 1999) ...........................................................................................................7

*Karvaly v. eBay Inc.*,
 245 F.R.D. 71 (E.D.N.Y. 2007) ..................................................................................................10

*Kukorinis v. Walmart, Inc.*,
 No. 19-cv-20592, Dkt. 97 (S.D. Fla. Sept. 20, 2021) .................................................................10

*Kumar v. Salov N. Am. Corp.*,
 No. 14-cv-02411, Dkt. 164 ¶4 (N.D. Cal. May 26, 2017)..........................................................10

*Lacovara v. Hard Rock Cafe Int'l (USA), Inc.*,
 2012 WL 603996 (S.D.N.Y. Feb. 24, 2012) ..............................................................................17

*Lagarde v. Support.com, Inc.*,
 2013 WL 1994703, 2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013)..........................11

*In re Livingsocial Mktg. and Sales Practices Litig.*,
 298 F.R.D. 1 (D.D.C. 2013)........................................................................................................11

*Ma v. Harmless Harvest*,
  2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018) ................................................................ 3

*McCrary v. Elations Co.*,
  2016 WL 777865, 2016 U.S. Dist. LEXIS 24050 (C.D. Cal. Feb. 25, 2016) ............... 10

*McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626
  (E.D. Pa. 2015) .............................................................................................................. 6

*In re Mercury Interactive Secs. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ........................................................................................ 17

*Nguyen v. New Link Genetics Corp.*,
  2021 U.S. Dist. LEXIS 37023, 2021 WL 732254 (S.D.N.Y. Feb. 25, 2021) ............... 6

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
  711 F.2d 1136 (2d Cir. 1983) ....................................................................................... 17

*In re Optical Disk Drive Prod. Antitrust Litig.*,
  No. 10-MD-2143 (N.D. Cal. Oct. 27, 2009) ................................................................. 6

*Parker v. Time Warner Entm't Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ........................................................................... 7

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016) ........................................................................................... 3

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ........................................................................... 5, 6, 10, 13

*Pettit v. Procter & Gamble*,
  No. 3:15-cv-2150 (N.D. Cal. July 17, 2019) ................................................................ 11

*Plummer v. Chemical Bank*,
  668 F.2d 654 (2d Cir. 1982) ....................................................................................... 3, 4

*Poertner v. The Gillette Co.*,
  No. 6:12-v-00803-GAP-DAB (S.D. Fla.) ..................................................................... 10

*Redman v. Radioshack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ....................................................................................... 17

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
    944 F.3d 1035 (9th Cir. 2019) .................................................................................. 9

*In re Samsung Top-Load Washing Machine Mktg. Sales Practices & Liab. Litig.,*
    997 F.3d 1077 (10th Cir. 2021) ............................................................................... 6

*Scott v. City of New York,*
    626 F.3d 130 (2d Cir. 2010) ................................................................................... 17

*Sobel v. Hertz,*
    No. 3:06-CV-00545, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ......... 16

*In re Sony VAIO Computer Notebook Trackpad Litig.,*
    No. 09-cv-2109 (S.D. Cal. Aug. 7, 2017) ............................................................... 11

*Tarlecki v. Bebe Stores, Inc,*
    No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3, 2009) ...... 9

*Trombley v. Bank of Am. Corp.,*
    No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072 (D.R.I. May 3, 2012) .................. 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ..................................................................................... 16

*In re World Trade Ctr. Disaster Site Litig.,*
    2015 U.S. Dist. LEXIS 15942 (S.D.N.Y. Jan. 16, 2015) ......................................... 13

*In re World Trade Ctr. Disaster Site Litig.,*
    754 F.3d 114 (2d Cir. 2014) ..................................................................................... 4

Rules and Statutes

Fed. R. Civ. P. 23 ...........................................................................................3, 4, 5, 6, 15

Fed. R. Civ. P. 23(e) ............................................................................................. 1, 5, 7

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................................... 3

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................... 3, 4, 5

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................................................... 1, 4, 5

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..................................................................... 1, 4, 5, 14

Fed. R. Civ. P. 23(e)(5) ........................................................................................ 2

Fed. R. Civ. P. 23(h) ...................................................................... 1, 4, 14, 15, 16, 17

Other Authorities

American Law Institute,
  *Principles of the Law of Aggregate Litig.* § 3.05, cmt. b (2010) ....................... 8

Erichson, Howard M.,
  *Aggregation As Disempowerment: Red Flags in Class Action Settlements,*
  92 NOTRE DAME L. REV. 859 (2016) ............................................................ 5

Federal Trade Commission,
  *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*
  (Sept. 2019) ....................................................................................................... 6

Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ................ 15, 16

Notes of Advisory Committee on 2018 Amendments to Rule 23(e) .................... 7

Report on Contingent Fees in Class Action Litigation,
  25 Rev. Litig. 459 (2006) .................................................................................. 17

**INTRODUCTION**

Plaintiffs ask this Court to approve a settlement that will likely pay the attorneys as much as the entire class combined. Because class counsel negotiated a settlement that pays their requested $4.1 million from a segregated fund, any reduction in fees cannot be used to augment class recovery. For the majority of claimants who did not save their flushable wipes receipts for a decade, they are eligible for a maximum payment of a mere $7 after going through an onerous claims process; meanwhile, 99% of the class will recover nothing. The settlement allows the remainder of the $20 million available for class members—likely more than $15 million—to be flushed away (after paying class representative incentive awards and administrative costs), staying in Kimberly Clark's treasury rather than paid as relief to the class.

The settlement does not meet Rule 23(e)'s fairness standard and should be rejected. Rule 23(e)(2)(C)(ii)-(iii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" and the terms of a proposed award of attorneys' fees, including the timing of payment. Here, the proposed method of distributing class relief is woefully inadequate, leaving the overwhelming majority of the class with nothing, while the attorneys seek millions of dollars for themselves, paid far more expeditiously than the class's claims. The settlement cannot be approved unless and until the parties remedy the disproportionate allocation that favors counsel over the class by, at a minimum, allowing class members to recover any reduction in attorneys' fees. *See* Section III.

In the alternative, if the Court approves the settlement, attorneys' fees should be reduced to the 25% benchmark of the actual benefit to the class. Although class counsel seek a lodestar-based fee award, they do not provide adequate time records or other support for their request. And under either a percentage-of-recovery or lodestar approach, the actual benefit to the class is a fundamental focus for the Court's fee award under Rule 23(h). The Court should defer any attorneys' fee award until plaintiffs provide adequate time records for their request and a final accounting of the amount distributed to the class. *See* Section IV.

# ARGUMENT

## I.     Objector is a member of the Settlement Class.

Objector Theodore H. Frank is an individual over the age of 18 who purchased Cottonelle brand Kimberly Clark flushable wipes Products, not for resale, between February 21, 2008 and May 19, 2022, and is not an individual excluded from the settlement.  Decl. of Theodore H. Frank ("Frank Decl.") ¶ 5. Mr. Frank therefore is a member of the class with standing to object to the settlement. Fed. R. Civ. P. 23(e)(5). Mr. Frank's business address is 1629 K St. NW, Suite 300, Washington, DC 20006. His telephone number is (703) 203-3848. His email address is ted.frank@hlli.org. Frank Decl. ¶ 2.

Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF"), through attorney Anna St. John, represents Mr. Frank *pro bono*. St. John gives notice of her intent to appear at the fairness hearing on behalf of Mr. Frank, where she wishes to discuss matters raised in this Objection. CCAF represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See, e.g. Berni v. Barilla S.P.A*, 964 F.3d 141 (2d Cir. 2020) (sustaining CCAF's objection to improper settlement certification). CCAF's track record—and preemptive response to the most common false *ad hominem* attacks made against it by attorneys defending unfair settlements and fee requests—can be found in the Mr. Frank's declaration. To avoid doubts about his motives, Mr. Frank is willing to stipulate to an injunction prohibiting him from accepting compensation in exchange for the settlement of this objection. Frank Decl. ¶ 12. Mr. Frank brings this objection through CCAF in good faith to protect the interests of the class, and his objection applies to the entire class. *Id.* ¶¶ 11, 14. He and his counsel believe he has complied with the requirements for objecting set forth in the preliminary approval order; however, he is willing to correct any omission of information or other requirement that is brought to his attention. He adopts any arguments filed or submitted to the Court regarding the settlement and fee request that are not inconsistent with this objection.

## II.    A court owes a fiduciary duty to unnamed class members.

A "district court ha[s] a fiduciary responsibility to the silent class members," *Grant v.*

*Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987), and must act "with a jealous regard" for the rights and interests of such absent class members, *Goldberger v. Integrated Res.*, 209 F.3d 43, 53 (2d Cir. 2000) (cleaned up). The fiduciary role is necessary because unlike in bilateral settlements, "there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *In re Dry Max Pampers*, 724 F.3d 713, 715 (6th Cir. 2013). The representatives assume a fiduciary obligation to the class, and the Court, through its oversight responsibility, assumes a derivative fiduciary obligation to the class. *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982).

"The concern is not necessarily in isolating instances of major abuse, but rather is for those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests." *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 216, 224 (2d Cir. 1987) (internal quotation omitted). The Court's oversight role thus does not end at making sure that the parties engaged in arm's length settlement negotiations. "[T]the adversarial process—or … 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717.

Due to the defendant's indifference as to the allocation of settlement funds, courts must look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 718 (internal quotation omitted). That a mediator helped to ensure collusion-free arms-length negotiations is insufficient to ensure settlement fairness. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 235 (2d Cir. 2016); *see also Briseño v. Henderson,* 998 F.3d 1014 (9th Cir. 2021) (after the 2018 amendments, arm's length negotiations are covered by Rule 23(e)(2)(B), and satisfying Rule 23(e)(2)(B) does not mean that Rule 23(e)(2)(C) is satisfied). The proponents bear the burden to demonstrate the settlement is fair, reasonable, and adequate under Rule 23. *Ma v. Harmless Harvest*, 2018 WL 1702740, at *4 (E.D.N.Y. Mar. 31, 2018).

III.   **The settlement should be rejected because it disproportionately benefits the attorneys in violation of Rule 23.**

Courts have a duty to ensure that overcompensation of attorneys does not result in under-compensation of class members. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 n.9 (2d Cir. 2014). "Claims-made" settlements such as this one—where class members must submit a claims form to obtain compensation—are notorious for a lop-sided result favoring attorneys over the class. In settlements where class counsel have agreed to settlement provisions that do not ensure the complete recovery benefits the class, class counsel often recover an excessive share of the settlement funds for themselves. A claims-made process is not per se unreasonable; however, one with disproportionate results raises a red flag warning that perverse self-dealing incentives have prevailed.

Red flags are waving wildly here. An examination of the settlement terms and the expected class recovery under Rule 23(e)(2)(C)(ii) and (iii) shows why the settlement must be rejected unless there is a flood of new claims in the final two weeks of the claims period—a highly unlikely scenario given the publication-only notice and extremely small recovery for class members who did not retain years-old proofs of purchase for their flushable wipes purchases. Instead, the settlement terms ensure that the class will recover an unfairly small portion of the total settlement payout—with about 99% of the class recovering nothing, while the attorneys will receive an unreasonably large portion of the payout. Although class counsel touts the "up to $20 million" the settlement provides to the class, and premises their requested $4.1 million Rule 23(h) award on that amount, this figure is entirely illusory. The reality is that the attorneys have requested a grossly excessive share of the settlement.

Rule 23(e)(2)(C) requires scrutiny of how effectively the settlement actually distributes benefits to the class members and rejection of settlements, like this one, where class counsel take an unfair portion of the settlement pie. Circuit precedent, too, requires courts to examine not only the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), but also to examine whether the class's "interests are somewhat encroached upon by the attorneys' interests." *"Agent Orange,"* 818 F.2d at 224; *Plummer*, 668 F.2d at 660 (affirming settlement rejection where named

plaintiffs were afforded "preferential treatment"). Class members are simply not "best served" by low-value claims made settlements, characterized by "mass indifference," that provide defendant a blanket release of all class members' claims whether or not they submit a claim. *Gallego v. Northland Grp., Inc.*, 814 F.3d 123, 129-30 (2d Cir. 2016). Because Rule 23 does not allow such a result, the settlement must be rejected.

**A.      Rule 23(e)(2)(C) confirms that courts should look to the ratio of fees to actual class recovery to determine settlement fairness.**

The Rule 23(e) fairness inquiry evaluates what the class *actually* received. Fed. R. Civ. Proc. 23(e)(2)(C)(ii). Codifying the long-running concern with lawyer-driven settlements, the 2018 Amendments to Rule 23(e) specifically require consideration of "the effectiveness of any proposed method of distributing relief to the class" and assurance the class's recovery is commensurate with "the terms of any proposed award of attorney's fees" Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iii); *see also Briseño*, 998 F.3d at 1023-27.

The 2018 amendments follow widespread criticism by courts and legal scholars of the abuse of claims-made settlements to inflate attorneys' fees and deflate defendants' obligations to class members. *E.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (reversing approval of an attorney-centric "selfish" claims made settlement); *Briseño*, 998 F.3d 1014 (9th Cir. 2021) (same); Howard M. Erichson, *Aggregation As Disempowerment: Red Flags in Class Action Settlements*, 92 Notre Dame L. Rev. 859, 892-83 (2016) (citing, *inter alia, In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ("*Baby Prods.*")).

By design, attorneys' fee awards are to be focused on the actual result for the class so as to encourage class counsel to achieve the best possible result for the class. Indeed, when class counsel have the financial incentive to put settlement funds in class members' hands, that is in fact what happens. In the *cy pres* context, for example, after the Third Circuit rejected a settlement in *Baby Products* that would pay class counsel $14 million, charities about $15 million, and class members under $3 million, class counsel on remand, appropriately incentivized to avoid a fee reduction, restructured the settlement to eliminate superfluous *cy pres* in favor of direct class distributions. This

constituted a class improvement of nearly $15 million. *McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626 (E.D. Pa. 2015).

To ensure that settlements prioritize class recovery, Rule 23 requires courts to examine what the class actually receives. *See, e.g.*, *Briseño*, 998 F.3d at 1026; *In re Samsung Top-Load Washing Machine Mktg. Sales Practices & Liab. Litig.*, 997 F.3d 1077, 1094 (10th Cir. 2021); *Pearson*, 772 F.3d at 781-82. The Court therefore must "affirmatively seek out" the necessary claims data to ascertain the class benefit. *Baby Prods.*, 708 F.3d at 174; *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) ("*GM Trucks*"); *Nguyen v. New Link Genetics Corp.*, 2021 U.S. Dist. LEXIS 37023, *4, 2021 WL 732254 (S.D.N.Y. Feb. 25, 2021) (ordering claims administrator to provide claims report prior to final approval). This information is critical to ensuring class members, rather than their counsel are the "foremost beneficiaries of the settlement." *Baby Prods.*, 724 F.3d at 179.

Here, the Court already has ordered the claims administrator to file a declaration seven days before the fairness hearing that sets forth the number and dollar amount of claims received. Dkt. 439 ¶ 8. That information is an important first step; however, the Court also should require the claims administrator to provide a declaration detailing the final number of validated, approved claims as soon as that information is available. This information is necessary because in other class action settlements, the number of invalid claims has ranged from about 15% to 87.9%, suggesting that the initial claims figures could be materially misleading as to the actual recovery for the class. *See, e.g.*, *Jones v. Monsanto*, No. 19-CV-0102, Dkt. 65-2 (W.D. Mo. Feb. 25, 2021) (Decl. of Brandon Schwartz) (43,087 of 285,399 claims, or 15.1%, were invalid); *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-MD-2143, Dkt. 3072 (N.D. Cal. Oct. 27, 2009) (Status Update Regarding Claims Distribution) (99,408 of 561,254, or 17.7%, were invalid); *Hale v. Manna Pro Prods., LLC*, 2021 WL 4993036, 2021 U.S. Dist. LEXIS 207828, at *7-8 (E.D. Cal., Oct. 26, 2021) (3,420 out of 3,891 claims, or 87.9% were invalid); *see also See* Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* 21 (Sept. 2019) (finding that, as a weighted mean, 15%

of claims were denied in a review of over 100 consumer class action settlements).[1]

"As a matter of public policy, it would be unseemly for the rewards to Class Counsel to exceed those to Class Members, the ones for whom the litigation is ostensibly contested." *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009) (reducing attorney award from $5 million requested to $3.3 million so that the award did not exceed the $3.7 million value to class members). Any attempt to rely on plaintiffs' representation of a $20 million fund, when the defendant will retain bulk of that amount, improperly exalts fiction over reality. *See Pampers*, 724 F.3d at 721 (cases "are better decided on reality than fiction"). Class counsel does not earn fees from generating illusory benefits or "superficial accomplishments." *Kaplan v. Rand*, 192 F.3d 60, 71-72 (2d Cir. 1999). Under Rule 23(e), the class's actual recovery is the proper focus of the Court's fairness inquiry. *See* 2018 Advisory Committee Notes on Rule 23(e).

Here, a low claims rate (and class recovery) is almost guaranteed: class counsel have made insufficient effort to directly identify and provide notice to class members and agreed to cap payments at unreasonably and artificially low amounts, especially for class members without proofs of purchase for a consumable product for which very few class members would have saved their receipts or bar codes.

## B.     Class counsel negotiated a disproportionate share of the settlement for themselves.

Class counsel state, as of August 3, with less than two weeks remaining in the claims period, that they have received 119,610 claims. Dkt. 443 at 2. Claims are limited to (i) $1.10 per product, up to $50.60 per household for those corroborated by proof of purchase and (ii) $0.70 per product up to $7.00 per household for those that are not corroborated by proof of purchase. Although class counsel did not provide the value of those claims, it is certain that not all are for the maximum $50.60 recovery. The odds of someone retaining the proof of purchase for tens of consumable, flushable wipes products over the 14-year class period is absurdly small. Yet even if one generously

---

[1]     *Available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

assumes that half of the 119,610 claims are for the maximum proof-of-purchase amount of $50.60 and the other hand are for the maximum no-proof-of-purchase amount of $7.00, the total class recovery with only about two weeks left in the claims period is only about $3.45 million—meaning that the attorneys are asking the Court to award them more than half of the entire settlement payout.

As these figures indicate, the settlement defect that exists here is one of allocation. The main signpost of preferential treatment, as seen in this settlement, is that "counsel receive a disproportionate distribution of the settlement," obtaining an ample reward for themselves while about 99% of the class recovers no monetary compensation in exchange for a release of their claims. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *accord* American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05, cmt. b at 208 (2010).

Settling parties attempting to maximize attorneys' fees while minimizing a defendant's expense might ask a court to look at a hypothetical world where the settlement fund might have been exhausted, however unlikely. Here we see such a setup: Plaintiffs repeatedly note the $20 million maximum settlement fund but fail to discuss the actual value represented by the 119,610 claims received to date. While counsel's fee request of $4.1 million might be reasonable if the class actually recovered the full $20 million "made available," the class will recover nowhere close to that amount. Instead, the value actually available to class members is totally dependent on the number of value of claims submitted. The remainder of the $20 million will remain with Kimberly Clark—thus providing no benefit to the class.

Yet class counsel stake their request for settlement approval and attorneys' fee request on two figures attempted to obscure this fact. First, they focus on the $20 million cap—rather than the actual single-digit-million recovery that seems certain. And, second, they focus on the slightly higher per-claim and no-proof-of-purchase maximum recoveries here as compared to settlements in two other class actions involving flushable wipes. *See* Dkt. 443 at 16-17.

Such a focus does not sync with either Rule 23(e)(2) or precedent. Neither one addresses the critical issue under Rule 23(e)(2) of the quantum of benefit to the class as a whole. *See Briseño*, 998 F.3d at 1023-27. Courts in this Circuit recognize the fiction of "made available" settlement funds

and the impropriety of relying on such capped figures for purposes at the final approval and fee award stage of the case. For example, in *Hart v. BHH LLC*, Judge Pauley observed that "[a]ny benefit from funds reverted back or never tendered by Defendants are purely hypothetical" and "provide no benefit to the class." 2020 WL 5645984, 2020 U.S. Dist. LEXIS 173634, at *19-*20 (S.D.N.Y. Sept. 22, 2020). "The theoretical benefit [of the settlement fund] dwarfs any real benefit the class receives. Accordingly, unclaimed funds should not be used when assessing the fee percentage." *Id.*; *see also Cunningham v. Suds Pizza, Inc.*, 290 F.Supp.3d 214, 225 (W.D.N.Y. 2017) (holding that fee award that took into account amounts of settlement fund not ultimately distributed to class members and not benefiting class would result in "an improper windfall for counsel"). And, in *Hesse v. Godiva Chocolatier*, another claims-made settlement, the court reduced attorneys' fees and costs from the requested $5 million to $2.85 million where the payments to the class totaled just $7.55 million, reducing the fee percentage of the total actual settlement value from 37% to 25%. *See* 2022 U.S. Dist. LEXIS 72641, at *40-*41 (S.D.N.Y. Apr. 20, 2022). Other courts similarly recognize that low achieving claims-made settlements should not result in disproportionate recovery by the attorneys. The court in *Tarlecki v. Bebe Stores, Inc*, lowered the 21.3% fee request to 14.7% based on the poor rate of class participation in the settlement and to prevent the attorney award from constituting 86% of the amounts claimed by class members. No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3, 2009). As these cases indicate, courts across the country routinely consider amounts claimed in determining whether the attorney award is disproportionate to class recovery. *See also*, *e.g., Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8-9 (D.R.I. May 3, 2012); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160, at *36-37 (N.D. Cal. Apr. 6, 2012).

Even applying the $3.45 million recovery that likely overestimates the number of with-proof-of-purchase claims and includes claims that will be invalidated, the $4.1 million fee excessively represents more than half of the settlement payout. Such a result demonstrates the settlement is unfair and cannot be approved. *See, e.g. Dennis v. Kellogg*, 697 F.3d 858, 868 (9th Cir. 2012) (38.9% fee would be "clearly excessive"); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1051 (9th Cir. 2019)

(fee award of 45% of gross cash fund is "disproportionate"); *Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 n.29 (E.D.N.Y. 2007) (43% of the common fund as a fee "would clearly be excessive"). As a share of recovery, the "norm" in this Circuit is "within a range of 15% to 33%." *Espinal v. Victor's Cafe 52nd St., Inc.*, 2019 WL 5425475, 2019 U.S. Dist. LEXIS 183642, *6 (S.D.N.Y. Oct. 23, 2019).

These results could not have come as a surprise to class counsel. *Ex ante*, practical sense and empirical data from other cases indicate that claims without proof of purchase are far more common, particularly where there's a consumer product like flushable wipes for which consumers rarely save their receipts for years. *See, e.g.*, *McCrary v. Elations Co.*, 2016 WL 777865, 2016 U.S. Dist. LEXIS 24050, at *15 (C.D. Cal. Feb. 25, 2016) (only 2 of 3,405 claimants submitted proof of purchase); Supp. Decl. of Jeanne C. Finegan, APR, *Kumar v. Salov N. Am. Corp.*, No. 14-cv-02411, Dkt. 164 ¶4 (N.D. Cal. May 26, 2017) (only 33 of more than 53,000 valid claims were submitted with proof of purchase); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2018 WL 5013764, 2018 U.S. Dist. LEXIS 177824 at *31 (W.D. Wash. Oct. 16, 2018) (365 of 300,000 class members claimed two free James Bond movies when notice required proof of purchase); *Holt v. Foodstate, Inc.*, No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) (99.5% of claimants submitted claims without proof of purchase); *Kukorinis v. Walmart, Inc.*, No. 19-cv-20592, Dkt. 97 at 16 n.9 (S.D. Fla. Sept. 20, 2021) (0.0012% of claims made were made with proof of purchase).

Even without proof of purchase hurdles, claims rates in low value consumer class settlements are "notoriously low." *Briseño*, 998 F.3d at 1020 (claims rate of "barely more than one-half of one percent"); *Pearson*, 772 F.3d at 782 (claims rate of one-quarter of one percent); Second Expert Decl. of Prof. William B. Rubenstein, *In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-3747, Dkt. 517-2 ¶ 5 (N.D. Cal. Dec. 14, 2020) (average claims rate for classes above 2.7 million class members is less than 1.5%). A settlement administration company conducted a wide-ranging survey that concluded that "settlements with little or no direct mail notice will almost always have a claims rate of less than one percent (1%)." Declaration of Deborah McComb re Settlement Claims ¶ 5, *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Dkt. 156 (S.D. Fla.). Data points from other cases reinforce the low claims rates in low-stakes consumer settlements. *In re Carrier iQ, Inc.*,

*Consumer Privacy Litig.*, 2016 WL 4474366, 2016 U.S. Dist. LEXIS 114235, at *28 (N.D. Cal. Aug. 25, 2016) (0.14% claims rate with direct notice component); *In re Livingsocial Mktg. and Sales Practices Litig.*, 298 F.R.D. 1, 19 (D.D.C. 2013) (0.25% claims rate with direct email notice); *Lagarde v. Support.com, Inc.*, 2013 WL 1994703, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) (0.18% of class claiming $10); *In re Sony VAIO Computer Notebook Trackpad Litig.*, No. 09-cv-2109, Dkt. 378 (S.D. Cal. Aug. 7, 2017) (0.44% of class claiming either $5 or $25 without proof of purchase).

Class counsel surely were aware of this phenomenon, and they were in a position to achieve a different outcome. *See In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) (conditioning fees on "the benefit actually conferred on the class" "will incent plaintiffs' counsel to work vigorously … to make sure that class members are located and encouraged to submit claims."). Yet class counsel nevertheless agreed to settlement terms and a notice plan guaranteed to result in a small class recovery while they sought millions in fees for themselves. In the *Pettit* flushable wipes settlement that plaintiffs discuss at length, for example, out of a class of approximately 3.9 million, only 137,068 valid claims were filed for a class distribution of only $537,879. Decl. of Jonathan Shaffer and Post-Distribution Accounting, *Pettit v. Procter & Gamble*, Case No. 3:15-cv-2150, Dkt. 139 (N.D. Cal. July 17, 2019). The settlement in *Belfiore* was just as bad, with only about $350,000 in claims made about a month before the claims deadline and before invalid claims were excluded. *See* Tr. of Motion Hearing Via Teleconference, *Belfiore v. Procter & Gamble Co.*, No. 2:14-cv-04090, Dkt. 363 at 7:2-21 (N.D. Cal. Jan. 26, 2021).

Here, it appears that parties have tried to obscure the anemic claims rate by hiding any information that might offer clues on the size of the putative class. The court filings in which one would expect to find information reflecting the size of the class were filed in redacted form. *See* Dkts. 81-83, 85-89, 189. Plaintiffs nevertheless asserted in their memorandum in support of class certification that "[i]t is administratively feasible to identify class members" and that counsel had "already uncovered several methods to identify class members" yet the details supporting such statements were redacted, and it appears there was no direct outreach to the class to try to improve

the claims rate. Dkt. 189 at 35. Similarly, sections of Kimberly-Clark's responses are redacted and contain little public information about the potential size of the putative class, despite revealing that plaintiff obtained sales data from two online retailers. *See* Dkt. 124 at 27; Dkt. 189 at 35.

Finally, it is inconsequential that the requested fee results in a "negative," or fractional, lodestar multiplier. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182 (9th Cir. 2013) ("Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results."). As employed in this Circuit, the lodestar crosscheck is a ceiling on excessive fees, not a floor that would prop them up above what the appropriate percentage-of-recovery calculation would result. *See Goldberger*, 209 F.3d at 50, 57 (counseling use of the lodestar crosscheck "consistent with our preference for moderation"). *See also* Section IV.

## C. Class counsel designed an onerous claims process that throttles claims and reduces class recovery.

The claims process here appears designed to reduce the number of claims below the rate in a typical class action settlement. As detailed in Mr. Frank's declaration, the process of submitting a claim took far more than the "few minutes" represented by class counsel. The settlement website had features that made it difficult for class members to obtain the required customer ID, gave multiple error messages, and provided a 1-833 telephone number that offered no assistance. *See* Frank Decl. ¶ 7. Meanwhile, the process of submitting a paper claim required printing and mailing a four-page paper claim form that, for the vast majority of class members without proof of purchase, would yield at most mere $7. The settlement website also made it even more unlikely that class members would obtain the higher recovery by submitting a proof of purchase because it incorrectly informed class members that the only acceptable form of documentation is "itemized receipts," even though the settlement allows class members to submit an actual label or bar code portion of the package as proof of their purchase. *See id.* ¶¶ 7, 9. This type of unnecessary burden imposed by class counsel is likely to reduce the claims rate well below 1%, *id.* ¶ 10, and reinforces the importance of incentivizing class counsel to maximize class recovery by awarding fees that are appropriately proportionate to the actual class benefit.

**D.    Class counsel negotiated a segregated fund that insulates their fee from scrutiny and unfairly prevents the class from recovering any reduction, while providing for immediate payment for themselves.**

The proposed settlement agreement provides that class counsel's attorneys' fee award will be paid separately from the $20 million used to pay class members' claims. This structure creates a "constructive common fund," also known as a reversion clause or "kicker." *See, e.g.*, *Pearson*, 772 F.3d at 786; *GM Trucks*, 55 F.3d at 820-21 (A severable fee structure "is, for practical purposes, a constructive common fund."). A traditional common fund structure—in which attorneys' fees and class benefits come from the same pot—is superior to a segregated fund because it renders transparent the relationship between gains to counsel and loss to the class. *See Pearson*, 772 F.3d at 786; *Bluetooth*, 654 F.3d at 949. In a common fund, the court can rectify an imbalanced settlement by reducing attorneys' fees because such a step results in a corresponding increase in class benefit. *See, e.g.*, *Pearson*, 772 F.3d at 786 (calling this the "simple and obvious" solution); *In re World Trade Ctr. Disaster Site Litig.*, 2015 U.S. Dist. LEXIS 15942, at *43 (S.D.N.Y. Jan. 16, 2015) (ordering improper portion of attorneys' fees to be distributed among plaintiffs); *Cassese v. Wash. Mut., Inc.*, 2014 U.S. Dist. LEXIS 85836, at *6 (E.D.N.Y. June 23, 2014) (describing the reduction of "the fee award sought by Class Counsel in order to provide the Class with the opportunity to claim against a larger share of the Settlement Proceeds."). A constructive common fund structure, in contrast, is a red flag indicating that the settlement puts the interests of counsel ahead of those of the class, adding a "strong presumption of … invalidity." *E.g.*, *Pearson*, 772 F.3d at 787. A segregated fund deters judicial scrutiny precisely because there is no way to benefit the class through redistribution.

There is "no plausible reason why the class should not benefit from the spillover of excessive fees." *Briseño*, 998 F.3d at 1027. Yet that's what plaintiffs' counsel negotiated here. In this instance, class members' benefit is capped on the upside, not only in the aggregate ($20 million), but also per claimant—$7.00 for claims without proof of purchase and $50.60 for claims with proof of purchase. Yet, on the downside, if claim exceed the $20 million, there is a *pro rata* reduction. The monetary benefit per class member can only decrease and there is no mechanism to increase the benefit to the class. Meanwhile, class counsel seeks the same $4.1 million without regard for the class

recovery.

The settlement didn't have to be structured this way. Were it structured to allow a reduction of the fee award to supplement class relief, the settlement could be salvaged simply by reducing attorneys' fees. For example, in *Fitzgerald v. Gann Law Books*, 2014 U.S. Dist. LEXIS 174567 (D.N.J. Dec. 17, 2014), the parties negotiated a $1 million attorney fee, excessive in relation to class member recovery of $180,000. The court found this untenable, but the settlement was salvageable because of a provision that distributed excess amounts of the cash fund *pro rata* to non-claimant class members. This ensured that "a low response rate does not inure to the benefit of the defendant or class counsel." *Id.* at *48. By decreasing class counsel's proposed fee from $1 million to almost $400,000, the court was able to augment the class's residual distribution by a reciprocal $600,000, and bring the settlement back into proportion without sacrificing funds that the defendant was willing to pay. Unfortunately, this settlement lacks a similar provision that would allow the Court to save the agreement. The only solution is denying settlement approval until the parties amend their agreement.

Adding to this problem is the "suspicious feature" that the settlement has a "quickpay" provision that provides advance payment to class counsel before the funds are distributed to the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014) (characterizing a settlement provision allowing a portion of attorneys' fees to be paid before class claims as "suspicious"). Here, Section 6.4 of the Settlement provides that Kimberly Clark must pay class counsel their Rule 23(h) award within 30 days of the Court's order awarding attorneys' fees, regardless of when claims are paid. Such a quick-pay provision indicates unfairness under Rule 23(e)(2)(C)(iii), which examines "the terms of any proposed award of attorney's fees, *including timing of payment*." In *Hart v. BHH, LLC*, 334 F.R.D. 74, 77-78 (S.D.N.Y. 2020), class counsel argued that the quick-pay provision was designed to dissuade frivolous objections, even though it would have paid counsel even before class members in the event there were no objections. The district court rejected this argument and the quick-pay provision noting that "the entire purpose of the lawsuit is to compensate the class—not the lawyers." *Id.* at 77 ("The interest of the class being paid before the attorneys clearly outweighs any theoretical risk of frivolous objectors."). The district court reasoned that it was more appropriate "to

ensure that the class has been compensated prior to attorneys in class-action settlements" because there was no longer an adversarial footing between class attorneys and the defendant. *Id.* Hence, the award of attorneys' fees was "the best way to keep lawyers engaged." *Id. See also Hymes v. Earl Enters. Holdings,* 2021 U.S. Dist. LEXIS 26534, *32 (M.D. Fla. Feb. 10, 2021) ("It is especially troubling as the Agreement does not provide that Class Counsel will pay interest on the amount of attorney's fees and costs that it received but was subsequently revoked."). Accordingly, the Court should refrain from awarding attorneys' fees and expenses until after claims have been validated and distribution has been made to the class members.

*                    *                    *

The excessive attorneys' fee request, made from a segregated fee fund on an expedited basis, combines with the claims-made nature of the settlement, lack of direct notice, and onerous claims process, to create a settlement that gives preferential treatment to class counsel at the expense of the class, with no way for the Court to correct the imbalance by reducing fees to augment class recovery. Such a result is inconsistent with Rule 23 and cannot be approved.

## IV.    If the Court approves the settlement, any fee award should be based on true class benefit.

Class counsel requests that this Court award them fees on a lodestar basis, Dkt. 443 at 19, but neither a percentage-of-recovery nor lodestar analysis supports the $4.1 million request. Regardless of the approach applied, under Rule 23(h), a "fundamental focus is the result actually achieved for class members." Notes of Advisory Committee on 2003 Amendments to Rule 23(h). Ultimately, "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so." *City of Detroit v. Grinnell,* 495 F.2d 448, 469 (2d Cir. 1974). Yet class counsel now attempt to coax this Court into awarding just such a windfall fee.

One problem here is that the attorneys have structured the settlement so that they have no incentive to care whether the class obtains a significant portion of the $20 million fund. A lodestar-

based fee award leads to the unfair result that the attorneys are asking for as much as their millions of clients will receive combined. Such disproportionality between attorney recovery and actual class recovery violates Rule 23(h). *Bluetooth*, 654 F.3d at 946-49. A fee award must be reasonable relative to the class benefit, with the relevant measure being the value to class members. *Pampers*, 724 F.3d at 719-20. As one court described the unsuitability of lodestar, "Class Counsel has requested for itself an uncontested cash award based on lodestar, rather than the value of the class recovery, with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz*, No. 3:06-CV-00545, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011). A percentage-based award, in contrast, not only "directly aligns" class counsel's interests with those of the class; it also prevents courts from undertaking the "gimlet-eyed review" necessitated by using lodestar in a manner that augments fees. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121-22 (2d Cir. 2005). Relevant here, "once the parties have agreed to settle, the percentage-of-the-fund methodology serves as important motivation for counsel to maximize the class's recovery, and, a fortiori, counsel's fee." *Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 71 (2d Cir. 2019).

The correct approach is for the Court to award fees based on the final settlement payout to the class after class counsel provides that information. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."). If plaintiffs are not able to provide final recovery figures by the time of the fairness hearing, deferring the attorneys' fee award is in line with the common practice of doing so where the value of class members' recovery is unknown at the time or settlement approval or class members will not be paid until a future time. *See, e.g., In re Giant Interactive Group, Inc. Secs. Litig.*, 279 F.R.D. at 165 (holding half the fee award in abeyance pending a report to the Court on the progress of the claims administration process); *Fessler v. Porcelana Corona De Mexico*, 23 F.4th 408, 419 (5th Cir. 2022) ("The court's mere uncertainty about the actual monetary value obtained by the Class is no reason to duck the required inquiry. If the projections of

future benefit to the Class are too fluid, the district court is capable of staying its determination of attorneys' fees until the comparison can be properly made."); Report on Contingent Fees in Class Action Litigation, 25 Rev. Litig. 459, 476 (2006) ("The Task Force endorses the policy of payment of class counsel fees only as and when class members receive compensation."). Once the actual benefit to the class is known, an appropriate fee is "the increasingly used benchmark of 25%" of that actual benefit. *See, e.g., City of Pontiac Gen. Empls. Ret. Sys. v. Lockeed Martin*, 954 F. Supp. 2d 276, 281 (S.D.N.Y. 2013).

Even if a lodestar-based award were otherwise appropriate at this time, class counsel have failed to provide the necessary information for the Court to make such an award. "[C]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983); *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("[W]e are adamant that, after *Carey*, applications for attorney's fees allowed by federal law 'must' be accompanied by contemporaneous time records."). Class counsel provided no specific breakdown of their work and the associated hours; they merely list the hourly fees of each biller and total hours expended without even a general description of tasks. *See* Dkt. 445 & Ex. A. Additional detail is necessary because a "summary spreadsheet reciting attorney names, hourly rates, and total hours spent" provides an "inadequate basis for the Court to place great weight on the lodestar" *even* "as a valid cross-check," to say nothing of its adequacy as the primary calculation of fees. *See Lacovara v. Hard Rock Cafe Int'l (USA), Inc.*, 2012 WL 603996, at *3 (S.D.N.Y. Feb. 24, 2012).

In addition, under Rule 23(h), class members are entitled to a full and fair opportunity to object to counsel's fee requests. *See, e.g., In re Mercury Interactive Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *Redman v. Radioshack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014). Both the class and the Court have been improperly denied such an opportunity to examine the basis for class counsel's $4.1 million fee request. Their fee request must be denied.

# CONCLUSION

For the foregoing reasons, the Court should reject the proposed settlement and fee award or, at a minimum, award no more than 25% of the actual value of the settlement benefit to the class.

Dated: August 16, 2022

/s/ *Anna St. John*
Anna St. John
HAMILTON LINCOLN LAW INSTITUTE
   CENTER FOR CLASS ACTION FAIRNESS
1629 K St. NW, Suite 300
Washington, DC 20006
Phone: (917) 327-2392
Email: anna.stjohn@hlli.org

*Attorney for Objector Theodore H. Frank*

I, Theodore H. Frank, am the objector. As required by ¶ 4.13 of the Settlement Agreement and General Release and page 7 of the Notice, I sign this written objection drafted by my attorneys from Hamilton Lincoln Law Institute, whom I retained to represent me in this matter.

_____
Theodore H. Frank

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Objection and associated declarations via the CM/ECF system for the Eastern District of New York, thus sending the Objection and declarations to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Additionally, she caused to be sent by overnight delivery a copy of this Objection and associated declarations to the following:

Kurtz/Honigman v. Kimberly-Clark
c/o Kroll Settlement Administration
P.O. Box 5324
New York, NY 10150-5324

Vincent M. Serra
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, New York 11747

Dated: August 16, 2022

/s/ *Anna St. John*
Anna St. John