# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————— x

D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

                   Plaintiff,

      vs.

KIMBERLY-CLARK CORPORATION, et al.,

                  Defendants.

:   Civil Action No. 1:14-cv-01142-PKC-RML
:
:   <u>CLASS ACTION</u>
:
:
:
:
:
:
:
:

————————————————————— x

GLADYS HONIGMAN, Individually and on
Behalf of All Others Similarly Situated,

                   Plaintiff,

      vs.

KIMBERLY-CLARK CORPORATION,

                  Defendant.

:   Civil Action No. 2:15-cv-02910-PKC-RML
:
:   <u>CLASS ACTION</u>
:
:
:
:
:
:
:

————————————————————— x

**DECLARATION OF ROBERT A. VILLÉE IN CONNECTION WITH FINAL
APPROVAL OF SETTLEMENT AND CLASS COUNSEL'S APPLICATION FOR AN
AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**

I, ROBERT A. VILLÉE, declare as follows:

1.      I am a career wastewater professional.  I have over 45 years' experience in the wastewater industry, including serving as Executive Director of the Plainfield Area Regional Sewerage Authority ("PARSA") in New Jersey for 24 years before my retirement in 2019.  I have previously served as the chair of the Water Environment Federation ("WEF") Collection System Committee.  I am a co-founder of the International Water Services Flushability Group ("IWSFG"), which developed the IWSFG flushability specifications that wastewater entities and officials use to determine whether a moist wipe is in fact "flushable."

2.      I have consulted with the Federal Trade Commission and the Australian Consumer Competition Commission on wipes-related issues, worked with the U.S. Environmental Protection Agency on operational issues in the U.S. Virgin Islands, and presented on various operational topics including wipe-related issues, all over the world, including twice at the INDA (the Association of the Nonwoven Fabrics Industry), World of Wipes International Conference.  I was a key representative of the U.S. wastewater industry, including through WEF and NACWA (the National Association of Clean Water Agencies), at the North American negotiations with the wipes manufacturers.  In the ISO (International Organization for Standardization) Technical Committee 224, Workgroup 10 flushability specification effort I represented the U.S. wastewater on the ANSI (American National Standards Institute) committee.

3.      I also worked with a collective group of manufacturers and retailers of "flushable" wipes and their trade group, INDA, along with other municipality and industry representatives, in an effort to establish a standard for the terms "flushable" or "flushability" that is acceptable to a reasonable consumer as well as for the wastewater industry.  Through these efforts, I worked on the joint taskforce to help develop the fourth edition of INDA's flushability guidelines ("GD4").

Unfortunately, INDA finalized and implemented the GD4 guidelines without my support and that of the wastewater industry.

4.      I have remained active in the New Jersey Environment Association and the WEF Collection Systems Committee since my retirement, and continue to work on flushable wipes issues.

5.      In 2018, my organization developed the 2018 IWSFG flushability specifications, a set of guidelines to ensure that wipes that do not pass wastewater industry-supported testing protocols are either removed from the market or relabeled as "non-flushable." In 2020, a revised set of specifications was released. As part of my mission to develop these guidelines, I have consulted and worked with the Plaintiffs' attorneys in this litigation and others, on an unpaid basis, since not long after the first consumer action (*Kurtz*) was brought in 2014. The consultations I have had with Robbins Geller attorneys include dozens of phone calls, numerous in-person meetings, and participation in testing of various wipes products for flushability, including at the PARSA facilities in New Jersey and twice at Kimberly-Clark facilities in Wisconsin in connection with settlement discussions in this and other litigation.

6.      In addition to my consultations with counsel, I provided testimony at a July 21, 2015 "Science Day" hearing before Judge Weinstein in the *Kurtz* and related *Belfiore* matters (involving Procter & Gamble) regarding flushable wipes. I also submitted declarations in connection with this litigation in November 2016 and January 2017, in which I testified about flushability issues with respect to various flushable wipes products. In those declarations, while I stated that Kimberly-Clark's flushable wipes were in fact better than its competitors' products, I also stated that no product on the market at the time was in fact "flushable," as that term is used on labeling and advertising of flushable wipes products.

- 2 -

7.     In addition to working with Robbins Geller attorneys in this litigation, I worked with them in *The Preserve at Connetquot Homeowners Association, Inc. v. Costco Wholesale Corporation, et al.*, No. 2:17-cv-07050-JFB-AYS (E.D.N.Y.) and *Commissioners of Public Works of the City of Charleston v. Costco Wholesale Corp., et al.*, No. 2:21-cv-00042-RMG (D.S.C.), in an effort to obtain a commitment from Kimberly-Clark that its flushable wipes would fully comply with wastewater-approved flushable wipes standards, including eventually the 2020 IWSFG publicly available specification (PAS) documents, the wastewater industry's gold standard for flushability.

8.     In my opinion, based on my experience, knowledge, and first-hand testing, while Kimberly-Clark wipes were not flushable at the beginning of this litigation in 2014, during the course of this eight-year litigation, Kimberly-Clark has succeeded in developing a flushable wipe that meets the IWSFG (wastewater industry-supported) flushability standards.  That occurred in significant part due to this litigation and the flushability negotiations in which I played a part, and which extended from this litigation to the *Preserve* matter, and eventually, the *Charleston* matter. The efforts of counsel in bringing and litigating the *Kurtz* and *Honigman* actions has had a major and direct effect on, and I believe was the genesis of, Kimberly-Clark's development of wipes that meet the wastewater industry's flushability definition.

9.     Based on my experience, including first-hand testing, Kimberly Clark flushable wipes are now in fact flushable and were the first wipes produced by a manufacturer available on a wide-scale that satisfied the IWSFG flushability standard, including the PAS 3 disintegration test (slosh box testing) – the most difficult test to pass.  This opinion is based on confirmatory testing that I conducted as recently as June of this year in connection with *Charleston* settlement.

10.     In contrast to the IWSFG flushability standards, the manufacturer and retail-industry supported INDA GD4 guidelines do not represent a flushability standard supported by the

wastewater industry. In other words, if a manufacturer passes the INDA GD4 guidelines but not the IWSFG specifications, those wipes are not considered "flushable" in my view or in the view of the wastewater industry. My knowledge of and/or review of flushability testing conducted as recently as 2021 indicate that flushable wipes manufactured and sold by Procter & Gamble did not at that time pass the IWSFG PAS 3 disintegration test, even if those wipes might have passed the INDA disintegration test guidelines.

11.     Other manufacturers such as Nice-Pak, which supplies flushable wipes for retailers such as Costco, CVS, and Target, are now asserting that they are developing or have developed truly flushable wipes.[1]

12.     It is fair to infer that this and related litigation have played a significant part in effecting the progress that many manufacturers and distributors have made (or are making) toward flushability over the past eight years. I base this conclusion not only upon my observations in connection with this litigation, but also upon my knowledge of the wastewater industry, and communications with professionals in the industry.

13.     The strategy of counsel to continue this litigation until there was satisfactory evidence of flushability through valid testing, including by pursing separate flushable wipes litigation on behalf of sewage treatment plant operators (*i.e.*, the *Preserve* and *Charleston* matters), has clearly been a factor in the manufacturers' and distributors' progress. In my opinion, this litigation is also responsible in significant part for pressuring other manufacturers (such as Nice-Pak) to begin improving their flushable wipes.

14.     It is also my opinion that this litigation, as well as the settlement provisions secured in the *Charleston* case, have been integral in achieving the labeling improvements for non-flushable

---

[1]     https://www.nonwovens-industry.com/contents/view_breaking-news/2021-11-30/nice-pak-unveils-improved-flushable-wipe/.

wipes (*i.e.*, baby wipes) – which are also key to alleviating stress on municipal systems from improperly flushed wipes products.

15.     In conclusion, the prosecution of this litigation and others such as the *Charleston* matter have achieved not only the settlement compensation negotiated for class members (through the *Kurtz* and *Honigman* actions), but also the public benefit of encouraging Kimberly-Clark and other manufacturers and distributors to work to improve the quality of their flushable products to the point where, at least with respect to Kimberly-Clark, independent testing now confirms that they are indeed flushable.

16.     Other than reimbursement of limited travel-related expenses, I have not been compensated by Robbins Geller for any of the above-referenced work, nor am I being compensated for this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3ᵏᵗ day of August, 2022
at Long Branch, NJ_____.

_____
ROBERT A. VILLÉE