UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| D. JOSEPH KURTZ, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:14-cv-01142-PKC-RML |
| | : | |
| | : | <u>CLASS ACTION</u> |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| KIMBERLY-CLARK CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ———————————————— x | | |

| | | |
|---|---|---|
| GLADYS HONIGMAN, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 2:15-cv-02910-PKC-RML |
| | : | |
| | : | <u>CLASS ACTION</u> |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| KIMBERLY-CLARK CORPORATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| ———————————————— x | | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S
SEPTEMBER 9, 2022 ORDER AND IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................1

II.   THE COURT SHOULD FINALLY CERTIFY THE NATIONWIDE
      SETTLEMENT CLASS .....................................................................................3

      A.    Dr. Kurtz and Ms. Honigman Are Adequate Representatives for a
            Nationwide Settlement Class........................................................................3

            1.    Plaintiffs Have Vigorously Pursued Their Claims on Behalf of the
                  Nationwide Class...............................................................................4

            2.    There Are No Fundamental Conflicts Between Plaintiffs and
                  Settlement Class Members.................................................................8

      B.    Variations in State Consumer Protection Laws Do Not Defeat
            Predominance with Respect to the Nationwide Settlement Class ........................12

      C.    Certification of the Nationwide Class Furthers the Goal of Achieving
            Global Resolution of Pending "Flushable" Wipes Litigation ............................16

III.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ...........................17

      A.    The Scope of the Released Claims is Consistent with Second Circuit
            Precedent ......................................................................................17

      B.    The Notice Plan Has Adequately Advised Settlement Class Members of
            Their Rights .................................................................................19

      C.    The Settlement is Both Procedurally and Substantively Fair .............................21

IV.   CONCLUSION .................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adames v. Mitsubishi Bank, Ltd.*,
 133 F.R.D. 82 (E.D.N.Y. 1989) ...................................................................................6, 7

*Amchem Prod., Inc. v. Windsor*,
 521 U.S. 591 (1997) ...................................................................................................3, 12

*Bezdek v. Vibram USA Inc.*,
 79 F. Supp. 3d 324 (D. Mass. 2015), a*ff'd*,
 809 F.3d 78 (1st Cir. 2015) ............................................................................................8

*Bourlas v. Davis Law Assocs.*,
 237 F.R.D. 345 (E.D.N.Y. 2006) .....................................................................................4

*Cassese v. Washington Mut., Inc.*,
 255 F.R.D. 89 (E.D.N.Y. 2008) .....................................................................................15

*de Lacour v. Colgate-Palmolive Co.*,
 338 F.R.D. 324 (S.D.N.Y. 2021) ......................................................................................8

*Denney v. Jenkens & Gilchrist*,
 230 F.R.D. 317 (S.D.N.Y. 2005), *aff'd in part, vacated in part*,
 443 F.3d 253 (2d Cir. 2006) ..........................................................................................13

*Dewey v. Volkswagen Aktiengesellschaft*,
 681 F.3d 170 (3d Cir. 2012) ..........................................................................................11

*Dupler v. Costco Wholesale C*orp.,
 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...........................................................................10

*Elkind v. Revlon Consumer Prod. Corp.*,
 2017 WL 9480894
 (E.D.N.Y. Mar. 9, 2017), *report and recommendation adopted*,
 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017) .......................................................... 10, 13

*Ersler v. Toshiba Am., Inc.*,
 2009 WL 454354
 (E.D.N.Y. Feb. 24, 2009) ........................................................................... 10, 13, 16

*Grayson v. Gen. Elec. Co.*,
 2020 WL 4282185
 (D. Conn. July 27, 2020) ........................................................................ 10, 12

**Page**

*Grimes v. Vitalink Commc'ns Corp.*,
17 F.3d 1553 (3d Cir. 1994) ...................................................................................18

*Hyland v. Navient Corp.*,
48 F.4th 110 (2d Cir. 2022) .......................................................................................9

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ............................................................... 3, 11, 12, 13

*In re Credit Default Swaps Antitrust Litig.*,
2016 WL 2731524
(S.D.N.Y. Apr. 26, 2016) .........................................................................................24

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ...................................................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2018 WL 3475465
(S.D.N.Y. July 19, 2018) ..........................................................................................13

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) .......................................................................................4

*In re Lupron Mktg. & Sales Pracs. Litig.*,
228 F.R.D. 75 (D. Mass. 2005)..................................................................................14

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
270 F.R.D. 45 (D. Mass. 2010)..................................................................................16

*In re Mexico Money Transfer Litig.*,
267 F.3d 743 (7th Cir. 2001) ............................................................................. 13, 14

*In re Namenda Indirect Purchaser Antitrust Litig.*,
338 F.R.D. 527 (S.D.N.Y. 2021) ...............................................................................15

*In re Nasdaq Market–Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) .................................................................................4

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
332 F.R.D. 202 (N.D. Ill. 2019), *aff'd sub nom.*
*Walker v. Nat'l Collegiate Athletic Ass'n*,
2019 WL 8058082 (7th Cir. Oct. 25, 2019) .............................................................19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019)........................................................................ 3, 4, 12

**Page**

*In re Petrobras Sec. Litig.*,
317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*,
784 F. App'x 10 (2d Cir. 2019) ...............................................................................3

*In re Pharm. Ind. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009)............................................................................. 13, 15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005)...............................................................................15

*Kurtz v. Costco Wholesale Corp.*,
818 F. App'x 57 (2d Cir. 2020) ................................................................................9

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017) ........................................................................3, 16

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
897 F.3d 88 (2d Cir. 2018) ............................................................................. 14, 15

*Mascol v. E & L Transp., Inc.*,
2005 WL 1541045
(E.D.N.Y. June 29, 2005) .........................................................................................6

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019) .....................................................................................18

*Meta v. Target Corp.*,
2016 WL 5076089
(N.D. Ohio Sept. 20, 2016)......................................................................................10

*Rapoport-Hecht v. Seventh Generation, Inc.*,
2017 WL 5508915
(S.D.N.Y. Apr. 28, 2017) ........................................................................................10

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ......................................................................... 3, 12, 16

*Taylor v. Am. Bankers Ins. Grp., Inc.*,
267 A.D.2d 178 (1st Dep't 1999).............................................................................15

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982) ...................................................................................18

*United States v. Uccio*,
940 F.2d 753 (2d Cir. 1991) ......................................................................................9

**Page**

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  2020 WL 1922902
  (E.D. Pa. Apr. 21, 2020) ..................................................................................14

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................ 16, 17, 18, 19

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................ 1, 3, 12, 19
  Rule 23(a)(4) ....................................................................................................3
  Rule 23(b)(2) ....................................................................................................9
  Rule 23(b)(3) ..................................................................................................12
  Rule 23(e) ........................................................................................................17
  Rule 23(e)(1) ..................................................................................................21
  Rule 26 ..............................................................................................................5

**OTHER**

Duke Law School*,* GUIDELINES AND BEST PRACTICES
  IMPLEMENTING 2018 AMENDMENTS TO RULE 23
  CLASS ACTION SETTLEMENT PROVISIONS, at 56,
  *available at* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?
  article=1003&context=bolch
  (last visited Oct. 11, 2022) ................................................................................20

National Consumer Law Center, *A 50-State Evaluation of Unfair and
  Deceptive Practices Laws*, Appendix C, State-by-State
  Summaries of State UDAP Statutes, 2018, at 65-67, *available at*
  https://www.nclc.org/wp-content/uploads/2022/08/udap-appC.pdf
  (last visited Oct. 11, 2022) ................................................................................14

## I.    INTRODUCTION

In their preliminary and final approval memoranda, Plaintiffs explained why: (1) the Notice Plan is reasonable and satisfies due process and Rule 23; (2) the proposed Settlement is fair, reasonable and adequate; (2) Plaintiffs are adequate representatives of the Settlement Class; and (3) certification of the nationwide Settlement Class is warranted.[1]  Plaintiffs then submitted a reply memorandum responding to the lone objection that explained why the reaction of the Settlement Class further supports final approval, and that included declarations with additional detail as to why the notice and settlement are reasonable.  Following the September 7, 2022 fairness hearing and in response to the Court's September 9, 2022 Order requesting supplemental briefing as to why Plaintiffs are adequate representatives for a nationwide settlement class and whether the proposed Settlement is fair, reasonable and adequate, Plaintiffs provide this supplemental memorandum in further support of their Final Approval Motion.

Certification of the Settlement Class is appropriate.  Plaintiffs have demonstrated their adequacy to represent the Settlement Class through vigorous and steadfast pursuit of their claims, including by pressing those claims in hard-fought litigation stretching nearly nine years that included multiple evidentiary hearings and two trips to the Second Circuit, extensive and contentious expert submissions and testimony, exhaustive class certification briefing and argument and protracted arms-length settlement efforts.  No conflict, much less a fundamental conflict, disrupts Plaintiffs' adequacy.  Regarding Plaintiffs' ability to represent a nationwide settlement class, the law is well-settled that manageability concerns drop out of the certification analysis in the settlement context,

---

[1]  All references to "ECF No. __" are to the docket in the *Kurtz* Action unless otherwise stated.  All capitalized terms not otherwise defined herein or in Plaintiffs' opening memorandum (the "Final Approval Brief," ECF No. 443) in support of their motion for final approval ("Final Approval Motion") have the same meanings ascribed to them in the Settlement Agreement and General Release, filed April 5, 2022, ECF No. 432-1.  All references to "Ex.__" are to the accompanying Declaration of Vincent M. Serra.  All internal quotations and citations are omitted and emphasis is added unless otherwise indicated.

and there are no material differences in state consumer protection laws that would cause Plaintiffs' and class members' interests to diverge with respect to the Settlement. Rather, the substantial participation in the Settlement by non-New York class members further demonstrates Plaintiffs' adequacy and alignment of interests with out-of-state Settlement Class Members. Additionally, both the District Court and Second Circuit rejected Kimberly-Clark's argument that Dr. Kurtz was an inadequate representative for the class because he sacrificed higher-value plumbing damages claims for lower-value price premium-based claims. In addition, there is nothing unique or improper about the release of the property damage claims as part of the proposed Settlement. Indeed, the Second Circuit found that Dr. Kurtz's litigation strategy in pursing only statutory damages "did not amount to a 'fundamental' conflict" that disadvantaged other class members.

Furthermore, Plaintiffs have demonstrated that the proposed Settlement is fair, reasonable and adequate. With respect to the release, unlike in other "flushable" wipes cases, Plaintiffs here asserted claims for property and plumbing damages at the outset of the litigation, which Dr. Kurtz continued to pursue at the certification stage. In this context, and given the unlikelihood that Settlement Class Members retain viable claims for plumbing damages worth pursuing in litigation, the release of these claims as part of the proposed Settlement is entirely proper, including under the identical factual predicate doctrine. And the monetary relief obtained here – which is substantially greater than the *Pettit* and *Belfiore* "flushable" wipes settlements combined, and has thus far resulted in substantially higher individual payouts than in either of these settlements – followed a sophisticated and cutting-edge online Notice Program that is similar to plans implemented in deceptive labeling litigation in this District and elsewhere and exceeded the reach of the targeted Settlement Class.

- 2 -

For these reasons and the additional reasons set forth below, Plaintiffs respectfully request that the Court finally certify the Settlement Class and approve the Settlement.

## II.   THE COURT SHOULD FINALLY CERTIFY THE NATIONWIDE SETTLEMENT CLASS

While Judge Weinstein certified a damages class of **New York** purchasers of Kimberly-Clark's "flushable" wipes on March 27, 2017, *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 527-39, 547-54 (E.D.N.Y. 2017), which he reaffirmed in an October 2019 Order following an intensive four-day evidentiary hearing, and which was affirmed by the Second Circuit, Plaintiffs seek final approval of a **nationwide** class for settlement purposes only. "[S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (Scirica, J., concurring) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). For example, a district court "'[c]onfronted with a request for settlement-only class certification . . . need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Id.* at 240 (quoting *Amchem*, 521 U.S. at 620). Additionally, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 51 (E.D.N.Y. 2019).

### A.   Dr. Kurtz and Ms. Honigman Are Adequate Representatives for a Nationwide Settlement Class

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." The Rule, among other things, "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 867 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) (quoting *Amchem*, 521 U.S. at 625). "[A]

- 3 -

class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *In re Payment Card*, 330 F.R.D. at 31.  Representation is "adequate" where the class representatives have (1) an interest in vigorously pursuing the claims of the class and (2) no interests antagonistic to the interests of the other class members.  *Id*.  "Not every conflict among subgroups of a class will prevent class certification—the conflict must be 'fundamental' to violate Rule 23(a)(4)." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *see also Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 352 n.5 (E.D.N.Y. 2006) ("conflicting interests which would justify denial of class certification is not easily shown"); *In re Nasdaq Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 514–15 (S.D.N.Y. 1996) ("in order to warrant denial of class certification, it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every member in proceeding with the litigation.").

### 1. Plaintiffs Have Vigorously Pursued Their Claims on Behalf of the Nationwide Class

The records in the Actions easily demonstrate that Dr. Kurtz and Ms. Honigman have committed to "vigorously pursue" their claims and representation of a nationwide Settlement Class. For example, Dr. Kurtz facilitated and coordinated the inspections of his home plumbing systems at his residences in both New York and New Jersey, responded to extensive written discovery requests, sat for a deposition, attended a hearing before Judge Weinstein on November 14, 2015, and testified that he had reviewed the complaint in full and commented on it before it was filed, that he reviewed and verified his detailed responses to interrogatories and requests for documents, that he has knowledge of the factual allegations and other issued raised in the lawsuit and that he maintains regular contact with his counsel and remains aware of the status of the case.  ECF No. 189 at 18-19.[2]

While the *Honigman* matter – which was filed after Dr. Kurtz moved for class certification – was

---

[2] *See also generally* ECF No. 444-1, Declaration of Dr. D. Joseph Kurtz in Support of Plaintiffs' Motion for Final Approval.

mostly stayed until after the Court of Appeals issued its order on June 26, 2020 affirming certification of the Kimberly-Clark damages class, once litigation resumed, Ms. Honigman served Rule 26 disclosures, reviewed, commented on, and verified responses to interrogatories, and responded to document requests. Serra FA Decl. ¶26.[3] Together, Dr. Kurtz and Ms. Honigman, through Class Counsel, helped secure more than 54,000 documents (over 271,000 pages) from Kimberly-Clark for use in support of their claims had the Actions not settled. *Id.* Through their efforts and dedication to the litigation for nearly nine years, Plaintiffs have demonstrated their continued commitment to prosecute the Actions to the fullest extent possible.

Unlike other "flushable" wipes cases that have settled, Plaintiffs have always asserted claims for plumbing and/or property damages. *Compare Kurtz* ECF No. 1 ¶¶77, 84, Prayer for Relief, §§B., D. and *Honigman* ECF No. 1 ¶¶77, 84, Prayer for Relief, §§B., D. with *Belfiore v. The Procter & Gamble Company*, Case No. 2:14-cv-04090-PKC-RML (E.D.N.Y.), ECF No. 1 at Ex. A. and *Pettit v. The Procter & Gamble Co.*, No. 3:15-cv-2150-RS (N.D. Cal.), ECF No. 119-1. And unlike in *Belifore* and *Pettit*, Dr. Kurtz continued to press those claims, along with the price premium-based claims, when he moved for class certification, and Class Counsel refused to dismiss Plaintiffs' individual property damage claims when the Court expressed its intent to exclude them from certification. *See* ECF No. 251 at 21:11-19, Sept. 26, 2016 Tr. ("I'm actually not going to withdraw the plumbing damages on behalf of our plaintiffs. You have made clear that we can't get [them] on a class basis"); *id.* at 21:20 (Judge Weinstein recognizing that counsel may "want to appeal" an order denying certification of the property damage claims).

---

[3] *See also generally* Declaration of Gladys Honigman in Support of Plaintiffs' Motion for Final Approval, ECF No. 444-2. All references to "Serra FA Decl. __" are to the Declaration of Vincent M. Serra in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Class Counsel's Application For an Award of Attorneys' Fees and Expenses and Class Representative Payments, ECF No. 444.

Moreover, Plaintiffs' Complaints sought relief not only on behalf of a New York class, but also on behalf of a nationwide class, and Plaintiffs pursued those claims as part of the litigation until Judge Weinstein declined to certify them in February 2017. *E.g.*, ECF No. 282 (Feb. 6, 2017 letter requesting certification of nationwide class in response to Judge Weinstein's request to define the classes plaintiff sought to certify); *see also* ECF No. 119 at 54-61 (March 27, 2015 class certification memorandum with extensive arguments in support of nationwide litigation class).[4]   Judge Weinstein's order denying certification of a nationwide class, however, was based partly on a misplaced assumption that Dr. Kurtz somehow lacked the financial capacity to represent a national class, including because counsel did not commit to conduct a "costly" national survey of consumers' understanding of the term "flushable" at the class certification stage.  ECF No. 292 at 4-5.[5]  But this concern is easily dispelled given Plaintiffs' selection of Robbins Geller to aggressively litigate and finance the litigation over the course of nearly nine years, including through an appeal to and remand from the Second Circuit, more than demonstrating Plaintiffs' financial commitment to represent a national class.[6]

---

[4]  Ms. Honigman did not move for class certification, and the Court's findings as to certification and adequacy were limited to Dr. Kurtz given that, at the time Judge Weinstein decided certification, discovery had not yet started in the *Honigman* Action, which was stayed pending resolution by the Second Circuit.

[5] Counsel merely stated at a hearing that a survey was not necessary for **class certification**, and expressed a willingness to conduct one at a later stage of the litigation, including in connection with summary judgment or trial.  ECF No. 303 at 56:7-14, June 29, 2017 Hr'g Tr.  Moreover, unlike in *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 91 (E.D.N.Y. 1989), upon which Judge Weinstein relied in his opinion denying the nationwide class, Class Counsel here never "concede[d] that financial limitations have precluded further efforts" to pursue discovery on behalf of a nationwide class. *Mascol v. E & L Transp., Inc.*, 2005 WL 1541045, at *6 (E.D.N.Y. June 29, 2005).

[6]  At a class certification hearing on February 2, 2017, Judge Weinstein stated that "nationwide certification is not warranted **at this point**," not because of any financial constraints related to Dr. Kurtz's ability to represent a national class, but because of potential "differences in the state law[s]." ECF No. 303 at 63.  For the reasons discussed below, including because variations in state law do not cause Plaintiffs' and Settlement Class Members' interests to diverge and given Judge Weinstein's desire to achieve a global resolution of the litigation, these concerns should not prevent certification of the nationwide **settlement** class.  *See infra* §§II.A.2., II.B.

And although it is true, as Judge Weinstein noted in his opinion concerning the nationwide class, that the events underlying Plaintiffs' purchases of Kimberly-Clark's "flushable" wipes took place in New York (and New Jersey), it is not true that "discovery has largely been confined to New York." The documentary and testimonial record relating to Kimberly-Clark's uniform conduct was ***not*** confined to New York. For example, each of Kimberly-Clark's 30(b)(6) deponents was deposed near Kimberly-Clark's former headquarters in Neenah, Wisconsin, where Kimberly-Clark maintains a massive campus that houses, *inter alia*, its flushability testing lab, marketing personnel, and consumer services division (which handles complaints about "flushable" wipes). ECF No. 190-7, Powling Tr. at 47:6-48:23; ECF No. 190-19, O'Connor Tr. at 27:7-18, 100:3-12, 126:15-127:3, 148:7-23. Additionally, over half of the more than a dozen entities and individuals that Dr. Kurtz subpoenaed for documents and/or testimony were located outside of New York. Thus, the nature of discovery sought and obtained further supports an adequacy finding with respect to the nationwide class. *Cf. Adames*, 133 F.R.D. at 86 (finding plaintiffs inadequate representatives of nationwide litigation class in part because of their failure to pursue nationwide discovery).

Even after Judge Weinstein's denial of the nationwide class, when the parties first began settlement negotiations, they sought to include relief for absent class members nationwide. For example, Plaintiffs' initial monetary demand that they sent to Kimberly-Clark in March 2019 identified a settlement class that included putative class members who purchased Kimberly-Clark "flushable" wipes throughout the United States. Subsequent settlement negotiations, including the parties' July 2020 mediation, continued to contemplate nationwide relief. Thus, while Judge Weinstein limited certification ***for litigation purposes*** to a New York class following over three years of intense litigation, the Actions – unlike the *Belfiore* Action, which always sought relief for only New York class members – were largely litigated and settled with nationwide settlement relief

in mind. Indeed, Judge Weinstein himself implored the parties to seek nationwide relief in the settlement context. *See infra* §II.C. (discussing Judge Weinstein's efforts to pursue global settlement and to avoid piecemeal state-by-state certifications). Additionally, the results that Plaintiffs secured for non-New York Settlement Class Members is particularly noteworthy. Of the 185,375 claims received (representing an aggregate value of over $1.35 million), the ***overwhelming majority*** were from Settlement Class Members outside of New York. *Compare* ECF No. 452 at 2 (detailing total claims received) *with* ECF No. 453 (specifying numbers of claims for purchases in New York). Therefore, the significant level of participation in the Settlement generated from absent class members nationwide further weighs in favor of Plaintiffs' adequacy to represent the nationwide Settlement Class.[7]

### 2. There Are No Fundamental Conflicts Between Plaintiffs and Settlement Class Members

Plaintiffs' interests align with those of the Settlement Class as a whole. Plaintiffs seek redress from the same injury suffered by the Settlement Class nationwide – namely, the payment of a price premium in connection with the purchase of Kimberly-Clark's "flushable" wipes based on uniform misrepresentations about the wipes' flushability. *See de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339 (S.D.N.Y. 2021) (adequacy requirement satisfied and "no conflict between [plaintiffs'] interests and those of absent class members" in multi-state settlement where "plaintiffs claim to have suffered the same injury as the absent class members: paying a price premium for Tom's of Maine deodorant and/or toothpaste products because of allegedly false and misleading advertising."); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 339 (D. Mass. 2015), a*ff'd*, 809 F.3d 78 (1st Cir. 2015) (plaintiff's interests aligned with those of nationwide settlement class where they

---

[7] The accompanying Third Supplemental Declaration of Jeanne C. Finegan, APR, Concerning Media Process and Methodology Questions ("Finegan Supp. Decl."), annexed as Ex. A to the accompanying Declaration of Vincent M. Serra, addresses the Court's request for further explanation about how the notice was distributed and the estimated size of the putative nationwide class. *See also infra* §III.B.

"all seek redress from the same injury: the purchase of FiveFingers footwear based on Vibram's misrepresentation of its health benefits").  There is no evidence that Plaintiffs' and absent class members' interests are antagonistic.

The Court's September 9, 2022 Order requested briefing on Plaintiffs' adequacy to represent the nationwide class in light of the fact that the Settlement Agreement "releases all claims any class member has or might have against Defendant, including for property and plumbing damages, whether the class member files a claim or not."  Both the District Court and Second Circuit rejected Kimberly-Clark's attempt to argue that Dr. Kurtz was an inadequate representative because he "sacrificed potentially higher-value plumbing damages claims in order to advance lower-value, but more easily certifiable, claims based on a price premium theory, which amounts to a conflict of interest between himself and other class members." *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 60 (2d Cir. 2020).  The Second Circuit found no abuse of discretion in the District Court's conclusion that "the cost of litigating such plumbing damages claims likely would have outweighed any recovery" and "that the strategic decision to forgo plumbing damages and pursue statutory damages did not amount to a 'fundamental' conflict." *Id.*  Thus, the law of the case requires the District Court to follow the appellate court's previous ruling on this issue. *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991).

As to the Court's concern at the September 7, 2022 fairness hearing about whether Plaintiffs could adequately represent class members outside of New York with potentially different claims (Sept. 7, 2022 Hr'g Tr. at 18-20), the Second Circuit just last month affirmed certification of a nationwide settlement class based on New York GBL claims in *Hyland v. Navient Corp.*, 48 F.4th 110 (2d Cir. 2022) (affirming certification of nationwide Rule 23(b)(2) class in connection with claims brought under New York GBL §349 for deceptive practices against for-profit loan servicer).

Other district courts in the Second Circuit have likewise certified nationwide classes based on New York GBL or other consumer fraud claims, finding plaintiffs to be adequate representatives of nationwide classes. *See Elkind v. Revlon Consumer Prod. Corp.*, 2017 WL 9480894, at *9, *11, *15 (E.D.N.Y. Mar. 9, 2017), *report and recommendation adopted*, 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017) (finding that "interests of the Plaintiffs and those of the class are largely aligned" in preliminarily certifying nationwide class based on NY GBL §350 claim where ascertainable loss can be "measured uniformly across the class . . . by using the premium paid for the product")[8]; *Dupler v. Costco Wholesale Co*rp., 705 F. Supp. 2d 231, 236 (E.D.N.Y. 2010) (approving settlement of nationwide class in action removed to federal court in which plaintiff asserted a §349 claim and previously sought and obtained certification of a New York-only litigation class); *Ersler v. Toshiba Am., Inc.*, 2009 WL 454354, at *4 (E.D.N.Y. Feb. 24, 2009) ("discern[ing] no actual or potential conflict of interest" between named class representatives asserting claims under the New Jersey Consumer Fraud Act and absent class members in finally certifying nationwide class of television purchasers).[9]

　　*Meta v. Target Corp.* is instructive.  In *Meta*, a plaintiff sought to certify an Ohio class of purchasers of Target-brand "flushable" wipes in the litigation context following a determination by the Court that plaintiff's price premium damages model was sufficient to survive summary judgment. *See Meta v. Target Corp.*, 2016 WL 5076089, at *1 (N.D. Ohio Sept. 20, 2016).  After

---

[8]  The court in *Elkind* finally affirmed certification of the nationwide settlement class for the reasons set forth in the March 2017 orders.  *See Elkind*, ECF No. 131, Sept. 5, 2017 Final Settlement Order.

[9]  District courts in this Circuit likewise have found plaintiffs to be adequate representatives of nationwide classes in other consumer-based litigation. *E.g.*, *Grayson v. Gen. Elec. Co.*, 2020 WL 4282185, at *2 (D. Conn. July 27, 2020) (certifying nationwide settlement class of microwave oven purchasers under common claims of defect and concealment and noting that plaintiffs have "fairly and adequately protected the interests of the Class" where plaintiffs "have incentives to seek to maximize an award of damages under all damages theories – including benefit-of-the-bargain damages, which would apply to all class members"); *Rapoport-Hecht v. Seventh Generation, Inc.*, 2017 WL 5508915, at *2-*3 (S.D.N.Y. Apr. 28, 2017) (certifying nationwide class of purchasers of misleadingly labeled products under unjust enrichment claim and noting that "numerous courts have certified nationwide classes based on a common claim of unjust enrichment").

the court certified an Ohio litigation class under Ohio Revised Code §1302.27(B)(6) (implied warranty) and the Magnuson-Moss Warranty Act, plaintiff and Target reached a settlement which sought certification of a nationwide class. In its order finally approving the settlement and certifying the nationwide class, the Court found that plaintiff would adequately protect the interests of the settlement class because "the interests of the Class Representative are consistent with those of the Settlement Class Members" and because "there appear to be no conflicts between or among the Settlement Class Representative and other Settlement Class Members." Ex. B at 2-3, *Meta v. Target Corp.*, No. 4:14-cv-0832 (N.D. Ohio), Aug. 8, 2018 Settlement Order and Final Judgement (noting that "the Court has further considered the choice of law issues relating to Plaintiff's surviving [warranty] claims against Target and has determined nationwide settlement of these claims is appropriate.").

"[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). Here, Plaintiffs have consistently sought recovery on a nationwide basis for a common injury based on a uniform course of conduct and have always been incentivized to maximize any potential recovery for absent class members regardless of residency. Any differences in state laws, as discussed further below, do not "cause class members' interests to diverge." *In re Am. Int'l Grp.*, 689 F.3d at 243. Plaintiffs' efforts have in fact secured substantial settlement benefits for the Settlement Class nationwide. Thus, Plaintiffs' interests are directly aligned with those of absent class members, and there are no conflicts – let alone fundamental conflicts – that render them inadequate class representatives for the proposed Settlement Class.

B. **Variations in State Consumer Protection Laws Do Not Defeat Predominance with Respect to the Nationwide Settlement Class**

Rule 23(b)(3)'s predominance requirement tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Am. Int'l Grp.*, 689 F.3d at 239 (quoting *Amchem*, 521 U.S. at 623). Even though a settlement class must meet the requirements of Rule 23, the "settlement is a factor in the calculus." *Amchem*, 521 U.S. at 619-22. Thus, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id*. at 620; *In re Am. Int'l Grp.*, 689 F.3d at 242 ("[M]anageability concerns do not stand in the way of certifying a settlement class."); *In re Payment Card*, 330 F.R.D. at 56 (quoting Newberg on Class Actions) ("[I]n settlement class actions, because manageability need not be a concern, predominance—the main focus of manageability—recedes in importance as well . . . . Courts therefore regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

In concluding that "state law variations are largely ***irrelevant*** to certification of a settlement class," the Third Circuit in *Sullivan* distilled "three guideposts that direct the predominance inquiry":

> first, that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members; second, that variations in state law do not necessarily defeat predominance; and third, that concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class.

*Sullivan*, 667 F.3d at 297, 304. Accordingly, "variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance" in the context of settlement-only class certification. *Id.* at 301-02; *Grayson*, 2020 WL 4282185, at *2 ("although differences in state law earlier shaped the proposed classes the Plaintiffs sought to certify before Judge Eginton, several courts have found such differences to be irrelevant when the Court is faced with whether to certify a proposed class for settlement purposes, because a settlement contemplates that there will be no trial and thus no need to craft jury

- 12 -

instructions reflecting the varying elements in different states' laws"); *Ersler*, 2009 WL 454354, at *4 ("When considering certification for purposes of settlement, though, courts are more inclined to find the predominance test met, even when there are differences in applicable state laws."); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 336 (S.D.N.Y. 2005), *aff'd in part, vacated in part*, 443 F.3d 253 (2d Cir. 2006) ("although there may be some variations in applicable law, particularly with respect to damages, the variations are not so great as to defeat predominance.").[10]

Furthermore, numerous courts have found that potential differences in state consumer protection laws in particular do not defeat predominance where the claims are based on defendants' uniform course of conduct and common injury. *See Elkind*, 2017 WL 9480894, at *15 n.3 (certifying nationwide settlement class where "classwide evidence of the premium paid for the Products may be utilized to prove plaintiffs' injuries," concluding that "the predominance requirement has been met by virtue of Plaintiff's NY GBL §350 claim," and noting that "state law distinctions do not defeat the commonality and predominance requirements in the settlement context because the state-law distinctions impact trial manageability, which is relevant principally with respect to litigation at trial."); *Ersler*, 2009 WL 454354, at *5 (finding predominance requirement met for nationwide settlement class under New Jersey Consumer Fraud Act claim and noting that "it seems likely that plaintiffs from any state would be able to state a claim against defendants, and that variations in state laws would not have a substantial impact in this case").[11]

---

[10] *See also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3475465, at *2 (S.D.N.Y. July 19, 2018) ("find[ing] that the context of settlement is sufficient to tip the predominance balance" because "individual issues of reliance and variations in state law weigh less heavily against predominance … and can be manageably addressed through the plan of distribution.") (citing *In re Am. Int'l Grp.*, 689 F.3d at 241-42).

[11] *See also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir. 2019) (affirming certification of nationwide settlement class and noting that "idiosyncratic differences between state consumer protection laws" do not defeat predominance "where the class claims turn on the automakers' common course of conduct . . . and no objector established that the law of any other states applied); *In re Pharm. Ind. Average Wholesale Price Litig.*, 588 F.3d 24, 40-41 (1st Cir. 2009) (affirming nationwide settlement class despite district court's exclusion of certain states from the nationwide litigation class); *In re Mexico Money Transfer*

Further, while it is true that non-New York class members may have state law claims during a small fraction of the Settlement Class Period, those hypothetical claims – including claims for property damage (*see supra* §II.A.2.) – do not pose a risk of diverging interests among class members.  New York's consumer protection statute is one of the strongest in the country in breath, access, enforcement and remedies – it allows consumer enforcement, does not require pre-suit notice, does not require plaintiffs to prove actual reliance and does not limit recovery to actual, provable damages.[12]  Given the financial and other impediments to bringing individual or collective litigation with low-value claims, the desirability of resolving potential claims in a single forum (*see infra* §II.C.), and the fact that no other similar pending litigation against Kimberly-Clark exists or is likely to develop (thus leaving out-of-state class members with nothing absent the Settlement), Settlement Class Members' interests are wholly aligned despite potential differences in state law.  And in response to the Settlement notice, there were ***no*** objections to the propriety or scope of the Settlement Class.

Finally, even in the litigation context, courts in this Circuit and elsewhere have held that differences in state laws will not defeat certification, including because "[t]he predominance inquiry

---

*Litig.*, 267 F.3d 743, 746-47 (7th Cir. 2001) (recognizing that while certification of ***litigation*** classes arising under varying state consumer fraud statutes might be inappropriate, the same is not true for ***settlement*** classes where "no one need draw fine lines among state-law theories of relief"); *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *12 (E.D. Pa. Apr. 21, 2020) (despite previously finding "that predominance could not be satisfied due to material differences" in state consumer protection law, including plaintiffs' inability to account for such differences ***at trial***, determining that "[t]his concern is no longer relevant at the settlement class stage" and that "state law variations do not defeat predominance"); *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 92 n.33 (D. Mass. 2005) (finding that "differences in the state consumer protection laws . . . do not pose a serious obstacle to certification" and "[i]n any event, the issue is one of manageability, which is not a consideration in the certification of a settlement class."). The Second Circuit has held that "out-of-circuit precedent offers helpful guidance" to a court's analysis of "whether the common legal questions predominate over individual ones." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 97-98 (2d Cir. 2018) (analyzing Eleventh Circuit law in evaluating variations of state laws for purposes of ***litigation*** certification).

[12]  *See* National Consumer Law Center, *A 50-State Evaluation of Unfair and Deceptive Practices Laws*, Appendix C, State-by-State Summaries of State UDAP Statutes, 2018, at 65-67, *available at* https://www.nclc.org/wp-content/uploads/2022/08/udap-appC.pdf (last visited Oct. 11, 2022).

- 14 -

should focus on the liability issue— if the liability issue is common to the class, common questions are held to predominate over individual questions." *Cassese v. Washington Mut., Inc.*, 255 F.R.D. 89, 97-98 (E.D.N.Y. 2008) ("potential variations among state consumer protection statutes do not preclude certification" but "even if a substantial variation in applicable state laws were to arise, the Court may employ subclasses or decertify those state law subclasses whose adjudication becomes unmanageable."); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 571 (S.D.N.Y. 2021) (variations in state consumer protection and antitrust laws did not preclude finding of predominance); *Taylor v. Am. Bankers Ins. Grp., Inc.*, 267 A.D.2d 178 (1st Dep't 1999) (holding that certification of nationwide litigation class is appropriate for §§349 and 350 claims when the alleged injury concerns the defendant's general practice or uniform conduct); *see also* ECF No. 119 at 54-61 (class certification memorandum discussing case law supporting certification of a nationwide litigation class); *but see Langan*, 897 F.3d at 97-98 (recognizing that "[v]ariations in state laws do not necessarily prevent a class from satisfying the predominance requirement" but remanding to the district court for a more thorough analysis because the court's one-paragraph analysis did not "sufficiently engage with Johnson & Johnson's arguments about *reliance*").[13]

---

[13] *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005) is informative. There, the court was provided with a "detailed fifty-state survey" containing "differences among the state consumer protection laws." *Id*. at 84. After a thorough analysis, the court granted a nationwide *litigation* class except in nine states where consumer class actions were not authorized and in any of the 15 states that possess special notice provisions and to the extent such notice was not given. *Id*. at 84-85. As to all other "differences in requirements for establishing reliance, proximate cause, scienter, damages, and statutes of limitations" raised by defendants, the court concluded that "these variations in legal standards are unlikely to be material," particularly where plaintiffs proceeded under a single theory related to defendants' fraudulent misrepresentations. *Id*. at 85. Certain parties reached a settlement that included consumers from the nine states who had previously been excluded from the class "[i]n an effort to achieve a comprehensive settlement," and one of the class representatives appealed an order approving the settlement. *In re Pharm. Indus.*, 588 F.3d at 27-29. The First Circuit affirmed the settlement, including the expansion of the settlement class, noting that it is "perfectly clear why the district court expanded the settlement class" – defendant had "bargained for '*total peace*' to resolve all remaining claims against it." *Id*. at 40-41.

**C.    Certification of the Nationwide Class Furthers the Goal of Achieving Global Resolution of Pending "Flushable" Wipes Litigation**

The law in the Second Circuit favors settlements. *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting a "strong judicial policy in favor of settlements, particularly in the class action context"). And courts recognize the benefit of a "practical and common sense approach toward class settlements." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 64 (D. Mass. 2010); *see also Sullivan*, 667 F.3d at 311 ("From a practical standpoint, however, achieving global peace is a valid, and valuable, incentive to class action settlements."). As noted in *Ersler*, "[i]f this case could only have proceeded by means of separate lawsuits brought on a state-by-state basis, plaintiffs might not have mustered the resources to press their claims, and defendants might not have been willing to settle those claims on comparably favorable terms." 2009 WL 454354, at *6.

Judge Weinstein recognized these principles, imploring the parties to reach a global resolution of the sprawling "flushable wipes" litigation then-pending before him and elsewhere. For example, in a June 2016 Order, Judge Weinstein encouraged the parties to pursue aggregate adjudication of six pending actions before the FTC, *Kurtz*, 321 F.R.D. at 504-05, and then declared in an October 2016 Order that the cases "***crie[d] out for a global settlement***." *Id*. at 506. And in a Memorandum issued in advance of a December 2016 settlement conference, Judge Weinstein cautioned that a "failure to settle" could result in "a number of different state certifications," which themselves could create "conflict between household and municipality plaintiffs." ECF No. 259 at 4, Nov. 18, 2016 Memorandum; *see also id*. at 12 (acknowledging the "***unsatisfactory procedural posture of having independent class actions applying different state laws in the [pending] flushable wipes cases***").

Judge Weinstein's "goal" was "to achieve a single decision by a single court or administrative agency—preferably by *global settlement*—that fairly decides all pending disputes, forestalls future similar disputes, and protects both consumers and suppliers." *Id*. at 5. While a single decision resolving all "flushable" wipes litigation is no longer possible at this time, the proposed Settlement does further the goal of achieving universal resolution of the remaining "flushable" wipes litigation as to Kimberly-Clark without the prospect of further litigation outside of New York. Indeed, the proposed Settlement serves the dual purpose of providing monetary relief to consumers nationwide – relief that would likely not otherwise be available to out-of-state class members absent the Settlement – while simultaneously providing global peace to Defendant.

## III.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The proposed Settlement, including the release and Notice, is both procedurally and substantively fair under Rule 23(e). *See* ECF No. 443 at 7-16, Final Approval Brief. A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116. "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id*. at 117.

### A.   The Scope of the Released Claims is Consistent with Second Circuit Precedent

"Broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country." *Wal-Mart Stores*, 396 F.3d at 106. The release here, in pertinent part, extinguishes Plaintiffs' and Settlement Class Members' claims:

> that arise from or relate to the claims and allegations in the Complaints, including, but not limited to, Unknown Claims, and the acts, facts, omissions, or circumstances that were or could have been alleged by Plaintiffs in the Actions related to any wipe products (flushable and non-flushable) currently or formerly manufactured, marketed, or sold by Kimberly-Clark or any of its affiliates.

- 17 -

ECF No. 432-1 at ¶1.24, Settlement Agreement (defining "Plaintiffs' Released Claims").   The

Settlement Agreement further clarifies that the release does not "operate to bar or release any claim

for personal injury arising out of the use of the Product." *Id*. at ¶7.1(b).  However, the release does

include claims for property damage, unlike the settlements in *Belfiore* and *Pettit*.  *Belfiore*, ECF No.

351-3 at ¶9.2(a), Settlement Agreement (excluding "property damage allegedly caused by use of the

Product" from the release); *see also Pettit*, ECF No. 117-4 at ¶9.2(a), Settlement Agreement

(excluding "property damage (for example, costs of plumbing repairs) arising out of the use of the

Product" from the release).  The inclusion of property damage claims is wholly appropriate because

they arise from the "identical factual predicate" of the settled litigation.

"The law is well established in this Circuit and others that class action releases may include

claims not presented and even those which could not have been presented as long as the released

conduct arises out of the 'identical factual predicate' as the settled conduct."  *Wal-Mart Stores*, 396

F.3d at 107; *see also Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019) (quoting

same).  The release of all claims "serves the important policy interest of judicial economy by

permitting parties to enter into comprehensive settlements that 'prevent relitigation of settled

questions at the core of a class action.'"  *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563

(3d Cir. 1994) (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir.

1982)).  In other words, so long as the plaintiffs release claims that are within the "identical factual

predicate" of the settled litigation, the law places no limit on which particular claims a settlement

release may act to release.

Not only did Plaintiffs explicitly plead property and plumbing damages in their Complaints,

unlike in *Belifore* and *Pettit*, but Dr. Kurtz continued to seek that relief at the class certification

stage, and Plaintiffs continued to pursue their individual property damage claims even after Judge

- 18 -

Weinstein indicated that he would exclude them from certification. *See supra* §II.A.1. But none of that is even required to effectuate a valid release because claims do not have to be pled in order to release them in exchange for settlement relief so long as the claims "share the same integral facts as settled claims." *Wal-Mart Stores*, 396 F.3d at 106 ("Plaintiffs in a class action may release claims that were or ***could have*** been pled in exchange for settlement relief.").[14] Because the property damage claims, like Plaintiffs' GBL claims, arise from Kimberly-Clark's uniform misrepresentations that its products were flushable when extensive evidence demonstrated that they were not, the identical factual predicate doctrine permits their release.

### B.     The Notice Plan Has Adequately Advised Settlement Class Members of Their Rights

The Settlement Administrator designed and implemented a cutting-edge and highly targeted Notice Plan using best-in-class research data and adhering to class action notice expert best practices that fully complies with Rule 23 and due process. *See generally* Ex. A, Finegan Supp. Decl. The plan was designed "to reach at least 72% of the target audience, who are Settlement Class Members nationwide, on average three times, through publication media notice utilizing online display, search terms, social media impressions, a settlement website, and a toll-free number." ECF No. 432-2 ¶3.[15] In developing the Notice Plan methodology, the Settlement Administrator utilized nationally

---

[14] *See also id.* at 107, n.13 ("The Eighth Circuit notes, 'There is no impropriety in including in a settlement a description of claims that is somewhat broader than those that have been specifically pleaded. In fact, most settling defendants insist on this.' [citation] The Fifth Circuit has noted, 'The weight of authority establishes that . . . a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint.'"); *see also In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 219 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) (granting final approval of settlement releasing certain personal injury claims over class member objection given the opportunity to opt out and that such claims "have little value because the likelihood of certification of a nationwide personal-injury class against the NCAA was 'minimal, at best.'").

[15] The Federal Judicial Center's Guidelines concerning appropriate reach suggest that the minimum threshold for adequate notice is 70%. Ex. A, Finegan Supp. Decl. ¶16.

syndicated research data which reports that certain purchasers are likely to read and view certain publications and websites, and thus measures, in quantifiable terms, the media consumption habits of a target audience (*i.e.*, Settlement Class Members), as well as how many people had the opportunity to see an advertisement (referred to by notice experts as an "impression"). Ex. A, Finegan Supp. Decl. ¶¶5-6, 13. Given the unavailability of sales or other data that would allow for an accurate estimate of the size of the Settlement Class, the Settlement Administrator utilized an over-inclusive proxy audience, defined to encompass a larger audience than the Settlement Class definition, to maximize efficacy of the Notice Plan. *Id.* ¶¶8-10.[16] Using proxy audiences – in this case, "*Purchasers of Cottonelle Fresh Care moist wipes or 'other' brand moist toilet paper*" – is considered a best practice among class action notice experts and takes into account Settlement Class Members who may have infrequently purchased the Products and/or have switched brands. *Id.* ¶¶8-10 (emphasis in original). The Settlement Administrator found the proxy audience to be approximately 9.3 million individuals nationwide. *Id.*[17]

The Settlement Administrator targeted digital advertisements to reach this proxy audience using consumer data, computer software and algorithms. *Id.* ¶11. The Notice Plan incorporated transactional data for purchasers of Cottonelle and other wipes. *Id.* Following implementation of the plan, the Settlement Administrator delivered over 161.7 million impressions (through online

---

[16] Kimberly-Clark sells to wholesalers, who then sell to retailers, and thus "doesn't have retailer sales data." Sept. 7, 2022 Hr'g Tr. at 49:5-7; *see also id.* at 50:1-5 ("Kimberly-Clark doesn't know who buys its products except for people it contacted to comment on them. And Kimberly-Clark, essentially, relies . . . on the same kind of data that Kroll used in this case.").

[17] Given that the number of Settlement Class Members is unknown, accepted advertising and communications practices allows the use of a proxy audience definition – and in this case, a purposefully over-inclusive definition – to allow the notice expert to establish that number and the percentage of the population reached. *Id.* ¶9, fn. 6; *see also* Duke Law School, GUIDELINES AND BEST PRACTICES IMPLEMENTING 2018 AMENDMENTS TO RULE 23 CLASS ACTION SETTLEMENT PROVISIONS, at 56, *available at* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1003&context=bolch (last visited Oct. 11, 2022).

display, search, and social mediums with cross-device targeting on desktop and mobile, a press release, a settlement website, and a toll-free number) reaching an estimated 81% of targeted Settlement Class members *nationwide*. *Id.* ¶¶4, 17. For comparison, in finally certifying a nationwide class of purchasers of "Age Defying" beauty products in *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-2484(JS)(AKT) (E.D.N.Y.), the court-approved notice program – a web-based program very similar in structure to the program that the Court preliminarily approved here – delivered 11,025,759 impressions, reached 70% of the class, and generated 55,664 claims. *Elkind*, ECF No. 131 at 1-2, Sept. 5, 2017 Final Settlement Order; *see also Pettit*, ECF No. 135, slip op. at 2, 6 (N.D. Cal. Mar. 29, 2019) (granting final approval of 49-state class settlement where notice reached at least 72% of the settlement class members where "[a]pproximately 101 million online impressions of the notice were displayed on a variety of websites (both mobile and desktop) targeted at likely members of the Settlement Class.").[18] Of the 185,375 claims received here (representing an aggregate value of over $1.35 million), the overwhelming majority of claims submitted were from Settlement Class Members outside of New York. *Compare* ECF No. 452 at 2 (detailing total claims received) *with* ECF No. 453 (specifying numbers of claims for purchases in New York).

Thus, the Notice Plan, as designed and implemented has been highly effective and reasonable and satisfies both due process and Rule 23(e)(1).

### C. The Settlement is Both Procedurally and Substantively Fair

Before reaching an agreement to settle the Actions, the parties engaged in meaningful discovery and protracted and contentious litigation spanning nearly nine years. *See* Serra FA Decl. ¶¶6-26. As noted above, unlike in other "flushable" wipes litigation, Plaintiffs brought and litigated

---

[18] *See also Hesse v. Godiva Chocolatier, Inc.*, No. 1:19-cv-00972-LAP, ECF No. 135, slip op. 3 (S.D.N.Y. Apr. 20, 2022) (granting final approval of nationwide class settlement where "82 percent of targeted Class members were reached by the notice program, on average 2.8 times" and "Kroll implemented a state-of-the-art publication notice plan, which consisted of 35 million media impressions").

claims for property damages,[19] as well as for price premium and statutory damages. Throughout the course of the litigation, Plaintiffs and Class Counsel completed multiple rounds of class certification briefing and argument, including before the Second Circuit Court of Appeals, conducted a two-day scientific hearing and a four-day evidentiary hearing on remand on the issue of predominance and provided pre-motion briefing and argument on summary judgment. *See id.* ¶¶10-25. Plaintiffs and Class Counsel also pursued their nationwide claims throughout most of the litigation and during Settlement negotiations. *See supra* §II.A.1. Indeed, three years after the *Kurtz* Action was filed, and after extensively briefing the nationwide issue (*see* ECF No. 119 at 54-61), Dr. Kurtz and Class Counsel crystalized their continued desire to certify a nationwide class in a letter submitted at Judge Weinstein's request. ECF No. 282 at 2.

The Settlement, achieved only after several in-person meetings between the parties that included testing and analysis of Kimberly-Clark's "flushable" wipes, a mediation with the honorable Wayne R. Anderson and the exchange of numerous proposals and counter-proposals, was negotiated at arms-length and based on Class Counsel and Plaintiffs' analysis of the substantial recovery on behalf of Settlement Class Members vis-à-vis the risks and potential of recovering nothing were the Actions to proceed to trial. The Settlement relief is certainly substantively fair in comparison to the relief obtained in similar "flushable" wipes-related class actions. *See* ECF No. 443 at 15-18, Final Approval Brief. For example, the aggregate settlement relief – valued at $1.35 million if all claims were determined to be valid – would result in a larger cash payout than any other flushable wipes settlement, and is ***over 50% greater than the known payouts in the Belfiore and Pettit settlements***

---

[19] In accordance with Defendants' long-standing view of the importance of Plaintiffs' plumbing systems to the litigation, both of Dr. Kurtz's homes were inspected and analyzed by Defendants' expert, and Kimberly-Clark sought to inspect Ms. Honigman's home when discovery resumed in 2021. *Id.* ¶¶8, 26. Moreover, the issue of plumbing damages was briefed at class certification, *see, e.g.*, ECF No. 119 at 47-50, and Dr. Kurtz continued to pursue his individual property damage claims even after the Court expressed its intent to deny certification of those claims on behalf of any class. *See supra* at §II.A.1.

***combined*** (after a separate notice period in each of the cases). *See Belfiore*, ECF No. 363 at 7:11-14 ($350,000 in claims before validation); Ex. C, *Pettit*, ECF No. 139 at 4 ($537,879.00 in claims distributed).[20]   In fact, the estimated average payment to Settlement Class Members under this scenario ($7.30) is over 31% greater than in *Belfiore* and 86% greater than in *Pettit*.  *See* Sept. 7, 2022 Hr'g Tr. at 51:18-24.[21]   Thus, the Settlement provides a substantial, certain and immediate benefit to Settlement Class Members, avoiding years of continued litigation, expense and uncertainty.

The Settlement is also particularly reasonable considering the risks the Actions faced. Though Plaintiffs have compiled substantial evidence to prove their claims, establishing liability was still uncertain, particularly given that Kimberly-Clark's "flushable" wipes performed better than any of its competitors during the class period.  Thus, though fiercely disputed by Plaintiffs, Kimberly-Clark had colorable arguments that, at least in the context of industry-wide product performance, consumers were less likely to be deceived by its "flushable" representations than those of other manufacturers.  And out-of-state consumers would recover nothing at all at trial given Judge Weinstein's denial of nationwide certification for litigation purposes.  Those consumers would be forced to bring separate claims and seek separate certifications on a state-by-state basis – an outcome that Judge Weinstein sought to avoid and one that never came to fruition in any event.  *See supra* §II.C.  Moreover, as briefed and argued ad nauseam, Kimberly-Clark has lodged persistent criticisms

---

[20]   In *Pettit* – the 49-state "flushable" wipes settlement – 137,068 valid claims forms were submitted with an approximate total class size of 3.88 million.  Ex. C, *Pettit*, ECF No. 139 at 3, Declaration of Jonathan Shaffer and Post-Distribution Accounting.  In other words, 3.53% of the estimated class submitted valid claims.

[21]   In *Belfiore*, the average payout at the time of the fairness hearing was approximately $5.55.  *Belfiore*, ECF No. 363 at 7:11-14 (63,000 claims worth $350,000).  In *Pettit*, after a final accounting, class members received an average payout of $3.92 per claimant.  Ex. C, *Pettit*, ECF No. 139 at 4.  The $3.2 million in fees, costs and expenses awarded in *Belfiore* was more than ***nine times*** the value of claims before validation.  *See Belfiore*, ECF No. 361 at 9.  The $2.15 million in fees and costs awarded in *Pettit* was almost ***four times*** the value of claims distributed.  *See* Ex. C, *Pettit*, ECF No. 139 at 4.  Like Plaintiffs here, plaintiffs in *Pettit* and *Belfiore* sought fees based on the lodestar method – not as a percentage of a common fund.

targeting Mr. Weir's expert analysis and testimony on price premium analysis, damages, injury and causation. *E.g.*, Serra FA Decl. ¶42. While Mr. Weir's analyses withstood the class certification stage, however, there is no guarantee they would withhold the severe scrutiny a trial would entail. Plaintiffs also faced the risk of the availability of statutory damages, which "presents serious substantive legal questions," heightening the uncertainty surrounding their availability and weighing in further support of the Settlement. Serra FA Decl. ¶43.

Finally, the scope of the released claims in the Settlement, including for property damages claims, is wholly appropriate, particularly given the unique circumstances of ***this*** "flushable" wipes litigation. Here, Plaintiffs' Released Claims fall firmly within the "identical factual predicate" of the settled litigation since, unlike *Belfiore* and *Pettit*, Plaintiffs affirmatively asserted property damage claims. *See supra* §III.A.[22] Further, releasing property damage is appropriate, where, as here, the majority of Settlement Class Members' potential claims are time barred, Kimberly-Clark purports to have a "no questions asked refund policy" (Sept. 7, 2022 Tr. at 36:18-19) and any recent claims are highly unlikely given the significantly improved nature of Kimberly-Clark's product, which Plaintiffs' expert concedes is now in fact flushable and widely available on the market in the U.S. – a result achieved "in significant part due to this litigation and the flushability negotiations" in the Actions that were "the genesis of[] Kimberly-Clark's development of wipes that meet the wastewater industry's flushability definition." *See* ECF No. 450-3 ¶¶8, 13-14, Declaration of Robert A. Villée in Connection with Final Approval Settlement and Class Counsel's Application for an Award of Attorneys' Fees and Litigation Expenses.

---

[22] In any event, the release is "precise, reasonable, and appropriate to the circumstances of this case" given Settlement Class Members "were in a position to make an informed decision to opt out . . . if they were unhappy with the breadth or effect of the Release on any lawsuit they were contemplating." *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *15 (S.D.N.Y. Apr. 26, 2016).

## IV.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court certify the

Settlement Class for settlement purposes and grant final approval of the proposed Settlement.

DATED:  October 11, 2022                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA
FRANCIS P. KARAM
WILLIAM A. MASSA


                                     /s/ Vincent M. Serra
                                  VINCENT M. SERRA

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com
fkaram@rgrdlaw.com
wmassa@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiffs*