UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

               Plaintiffs,        **<u>AMENDED MEMORANDUM & ORDER</u>**
                                     14-CV-1142 (PKC) (RML)

      - against -

KIMBERLY-CLARK CORPORATION and
COSTCO WHOLESALE CORPORATION,

               Defendants.
-------------------------------------------------------x
GLADYS HONIGMAN; and D. JOSEPH
KURTZ, Individually and on Behalf of
All Others Similarly Situated,

               Plaintiffs,

       -against-                            15-CV-2910 (PKC) (RML)

KIMBERLY-CLARK CORPORATION,

               Defendant.
-------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      D. Joseph Kurtz ("Kurtz") and Gladys Honigman ("Honigman") (together, "Plaintiffs"),

on behalf of two putative classes (the "Class" or "Class Members"), bring the instant class action

lawsuits against Defendant Kimberly-Clark Corporation ("Defendant" or "Kimberly-Clark") and

Costco Wholesale Corporation (together with Kimberly-Clark, "Defendants"), alleging that

Defendants falsely labeled and advertised their wipe products as "flushable" and seeking damages

under New York General Business Law.  Currently before the Court for approval is Plaintiffs' fee

application for Class Counsel's[1] attorneys' fees and litigation expenses and class representative

---

[1] Class Counsel in these two actions are members (including former members) of Robbins
Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm"), a 200-lawyer firm with offices
nationwide.  (*See* Decl. of Vincent M. Serra ("Serra Decl. I"), Ex. B, *Kurtz v. Kimberly-Clark Co.*,

incentive awards, pursuant to a class settlement agreement (the "Settlement Agreement" or "Settlement") entered into by Plaintiffs and Defendant Kimberly-Clark and finally approved by this Court.  For the reasons set forth below, Plaintiffs' request is granted in part and denied in part.

## BACKGROUND[2]

### I.    Relevant Factual and Procedural History

In April 2022, eight years after the instant lawsuits were initiated, Plaintiffs and Defendant Kimberly-Clark (the "Parties") entered into the Settlement Agreement, which, together with the exhibits attached thereto, sets forth the terms and conditions for a proposed settlement and the dismissal of the instant class action lawsuits as to Defendant.  (*See generally* Settlement Agreement & General Release ("Settlement Agreement"), Dkt. 432-1.)  Plaintiffs moved for preliminary approval of the Settlement (Dkts. 430–32), which the Court granted on May 19, 2022 (Dkt. 439). On August 3, 2022, Plaintiffs moved for final approval of the Settlement and applied for fees. (Dkts. 442–45.)  In response to Plaintiffs' motion for final approval, class member Theodore H. Frank ("Objector") filed an objection to the Settlement and fee application, contending that the Settlement failed to meet the fairness standard under Federal Rule of Civil Procedure ("Rule") 23(e) and that the requested fees were unreasonable.  (*See generally* Obj. of Theodore H. Frank to

---

No. 14-CV-1142 (PKC) (RER), Dkt. 445, at ECF 25.)  Lead Counsel are members of the Firm's Melville office in New York.  (*See* Serra Decl. I, Exs. A, D, G, Dkt. 445; *Kurtz v. Kimberly-Clark Co.*, No. 14-CV-1142 (PKC) (RER)).  The Court notes that citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.  Hereafter, all citations to the ECF docket refer to *Kurtz v. Kimberly-Clark Co.*, No. 14-CV-1142 (PKC) (RER), unless otherwise stated.

[2] The procedural history and factual background of this litigation has been detailed extensively in various opinions by the Court, including the Court's June 12, 2023 Memorandum & Order finally approving the Settlement Agreement and certifying the settlement class.  (*See, e.g.*, Memorandum & Order ("Mem. & Order"), Dkt. 471, at 2–6.)  Therefore, the Court assumes the Parties' familiarity with the general background of this case and repeats only the information necessary to resolve the instant request.

Proposed Class Action Settlement & Att'ys' Fee Request ("Objector's Br."), Dkt. 446.)  On June 12, 2023, after holding two final settlement approval hearings (*see* 9/7/2022 Minute Entry; 11/7/2022 Minute Entry), the Court finally approved the Settlement and certified the settlement class, as well as scheduled a hearing on Class Counsel's fees.  (*See* Mem. & Order, Dkt. 471, at 30.)

A week before the scheduled hearing, Plaintiffs filed a notice of supplemental authority apprising the Court of a Second Circuit opinion issued in August 2023, *Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023).  (Dkt. 472.)  On September 13, 2023, the Court informed the Parties that the Court would discuss the impact of the *Moses* decision on the finally-approved Settlement at the upcoming hearing on Class Counsel's fees.  (*See* 9/13/2023 Docket Order.)

On September 19, 2023, the Court held the fees hearing.  (*See* 9/19/2023 Minute Entry.) Class Counsel, Defendant's counsel, and Objector's counsel participated.  (*See id.*)  At the hearing, the Court informed the Parties and Objector that, in light of *Moses*, it would re-open its prior decision finally approving the Settlement and re-analyze whether the Settlement is substantively fair.  (*Id.*; Tr. of Class Counsel's Fees Hr'g ("Tr."), 3:20–7:18.)  The Court also heard Class Counsel's and Objector's arguments regarding the fee application, including the appropriate method for calculating the fees. (Tr. 9:24–18:21.)  The Court directed Class Counsel to submit for *in camera* review unredacted contemporaneous billing records (Tr. 28:13–17), and informed the Parties that it would resolve the fee petition in tandem with its reevaluation of the Settlement's substantive fairness as required by *Moses* (Tr. 4:24–5:5).  As directed, Class Counsel subsequently submitted their billing records to the Court.  (*See* Dkt. 473.)

II.    **Plaintiffs' Fee Application**

A.    **Terms of the Proposed Fee Award**

Under the terms of the Settlement Agreement, Plaintiffs may apply to the Court for an award of attorneys' fees and expenses in a total amount not to exceed $4,100,000.  (Settlement Agreement, Dkt. 432-1, ¶ 6.1, at ECF 22.)  In addition, Plaintiffs may apply to the Court for class representative incentive awards of $10,000 for Kurtz and $5,000 for Honigman "as compensation for their time and effort undertaken in the Actions."  (*Id.* ¶ 6.2, at ECF 23.)  The Parties also agree that Defendant will pay any attorneys' fees, expenses, incentive awards, and settlement administration costs "separate and apart from" the $20 million fund made available to the Class. (*Id.* ¶ 2.5, at ECF 15.)  With respect to the timing of payment, Defendant will pay such fee awards to Plaintiffs and Class Counsel within 30 calendar days following the Court's issuance of an order granting the fee application.  (*Id.* ¶ 6.4, at ECF 23.)

B.    **Class Counsel's Fee Request**

Plaintiffs seek a total fee award of $4,100,000, consisting of $3,961,668.77 in attorneys' fees, $138,331.23 in litigation expenses and charges, and $10,000 and $5,000 in incentive awards for Kurtz and Honigman, respectively.  (Pls.' Mem. in Support of Final Approval of Settlement, Application for An Award of Att'ys' Fees & Expenses, & Class Representative Payments ("Pls.' Settlement Br."), Dkt. 443, at 2, 18–19, 25.)  As to the method for calculating the attorneys' fees, Plaintiffs request that the Court use the lodestar method.  (*Id.* at 19–21.)

C.    **Objections**

Objector challenges Plaintiffs' fee request.  (*See generally* Objector's Br., Dkt. 446.) Citing to the 2018 Amendments to Rule 23(e), Objector contends that attorneys' fee awards should be "focused on the actual result for the class so as to encourage class counsel to achieve the best possible result for the class."  (*Id.* at 5.)  Objector argues that the requested attorneys' fees are

excessive and disproportionate to the actual recovery for the Class.  (*Id.* at 13–14.)  Objector also

challenges the provision in the Settlement Agreement that provides advance payment to Class

Counsel before the recovery benefits are distributed to the Class.  (*Id.* at 14–15.)  While Objector

argues that the Court should use the percentage-of-recovery method to calculate attorneys' fees,

he reiterates that, regardless of the method applied, "the actual benefit to the class [should be] a

fundamental focus for the Court's fee award."  (*Id.* at 1.)

## LEGAL STANDARD

**I.    Settlement Approval Under Rule 23(e)(2): Fairness, Reasonableness, and Adequacy**

"[Rule 23(e)] sets forth the standards and procedures that apply to class action settlements."

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y.

2019) [hereinafter "*In re Payment Card I*"].  Under Rule 23(e)(2), a district court may approve a

class action settlement only upon "finding that it is fair, reasonable, and adequate."  *Moses*, 79

F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2)).  To make that determination, a court should

expressly evaluate four "primary procedural considerations and substantive qualities that should

always matter" in its "holistic" review of a proposed settlement.  *Id.* (quoting Fed. R. Civ. P.

23(e)(2) Advisory Committee's Note to 2018 Amendment (the "2018 Advisory Note")).  These

four considerations include whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"The first two factors are procedural in nature," *Moses*, 79 F.4th at 242, and "examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *In re Payment Card I*, 330 F.R.D. at 29 (quoting 2018 Advisory Note). The latter two factors "guide the substantive review of a proposed settlement," *Moses*, 79 F.4th at 244, assessing "[t]he relief that the settlement is expected to provide to class members . . . ." *In re Payment Card I*, 330 F.R.D. at 29 (quoting 2018 Advisory Note).

Specifically, in evaluating the substantive fairness of a proposed settlement, a court must expressly consider the "two core factors" under Rule 23(e)(2)(C)–(D): "the adequacy of relief provided to a class" and "the equitable treatment of class members." *Moses*, 79 F.4th at 244. In particular, such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the settlement agreement. *Id.* Importantly, "the revised Rule 23(e)(2) does not displace" the nine-factor test set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors")[3] that courts

---

[3] The nine *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund [compared] to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

have traditionally applied, "which remain a useful framework for considering the substantive fairness of a settlement." *Moses*, 79 F.4th at 243.

## II.     Attorneys' Fees, Litigation Expenses, and Class Representative Incentive Awards

### A.     Attorneys' Fees

Under Rule 23(h), "the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In a class action settlement, the court must carefully scrutinize class counsel's application for attorneys' fees to "ensure that the interests of the class members are not subordinated to the interests of . . . class counsel." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).  The court's role in this context is "to act as a fiduciary who must serve as a guardian of the rights of absent class members." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (internal quotation marks and citation omitted).

Courts commonly employ either the "percentage of the fund method" or the "lodestar method" to evaluate the reasonableness of an attorneys' fee award in a class action settlement. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49–50 (2d Cir. 2000).  Irrespective of which method is used, "district courts should continue to be guided by the traditional criteria" identified in *Goldberger* (the "*Goldberger* factors") in analyzing the reasonableness of attorneys' fees, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.*  (internal quotation marks and citation omitted).  In addition to the *Goldberger* factors, "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Moses*, 79 F.4th at 244 (quoting 2018 Advisory Note).  Additionally, attorneys must submit contemporaneous time

records to support their fee applications.  *See N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

## B.      Litigation Expenses

In class action settlements, "[c]ourts may reimburse counsel for expenses reasonably and necessarily incurred in litigating a class action." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *18 (D. Conn. Nov. 3, 2016);  *see also Jermyn v. Best Buy Stores, L.P.*, No. 8-CV-214 (CM), 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).  "When the 'lion's share' of expenses reflects the typical costs of complex litigation such as 'experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses,' courts should not depart from 'the common practice in this Circuit of granting expense requests.'" *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (quoting *In re Visa/Mastermony Antitrust Litig.*, 297 F. Supp. 3d 503, 525 (E.D.N.Y. 2013)).

## C.      Class Representative Incentive Awards

"[C]lear precedent [in this Circuit] . . . permits district courts to approve fair and appropriate incentive awards to class representatives," in addition to their allocable share of the ultimate recovery.  *Moses*, 79 F.4th at 253 (citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019)).  "[T]he decision to grant the award, and the amount thereof, rests solely within the discretion of the [c]ourt." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (citing *Roberts v. Texaco*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).  "The guiding standard in determining

an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (*e.g.*, factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery." *Roberts*, 979 F. Supp. at 200.  "Awards on an individualized basis have generally ranged from $2,500 to $85,000."  *Dial Corp.*, 317 F.R.D. at 439.  However, courts should "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members" to "ensure that [such] awards are reasonable and promote equity between class representatives and absent class members."  *Moses*, 79 F.4th at 245.

## DISCUSSION

### I.     The Settlement Agreement is Substantively Fair Under *Moses*

Under the Second Circuit's newly established precedent in *Moses*, the Court finds that the Settlement Agreement in this case satisfies all four factors under Rule 23(e)(2), as well as the *Grinnell* factors.  As such, the Court concludes that the Settlement Agreement is substantively fair, subject to the reduction of the requested attorneys' fees.

#### A.     The Second Circuit's Case Law on Settlement Fairness Prior to *Moses*

Prior to *Moses*, courts in the Second Circuit applied a presumption of fairness to proposed settlement agreements that resulted from arm's-length negotiations, and relied on the *Grinnell* factors to determine fairness, adequacy, and reasonableness without expressly assessing *all* four Rule 23(e)(2) factors.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (internal quotation marks and citation omitted)); *McReynolds v. Richards-*

*Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement is reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (internal brackets and citation omitted)); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (concluding that a class action settlement "represent[ed] a fair, adequate and reasonable result for the class" after attaching a presumption of fairness to the settlement and analyzing the *Grinnell* factors).

**B.      The Second Circuit's New Precedent on Settlement Fairness in *Moses***

In *Moses*, a newspaper customer brought a putative class action against a publisher, alleging that the publisher had automatically renewed her subscription without providing the disclosures and authorizations required by California's Automatic Renewal Law.  *See* First Am. Class Action Compl. & Demand for Jury Trial ¶ 1, at 1–2, *Moses v. N.Y. Times Co.*, No. 1:20-CV-4658 (RA) (S.D.N.Y. Aug. 31, 2020), Dkt. 22.  The district court certified a class for settlement purposes under Rule 23(b)(2) and finally approved the settlement.  *See Moses v. N.Y. Times Co.*, No. 1:20-CV-4658 (RA), 2021 WL 4931657, at *1–2 (S.D.N.Y. Sept. 13, 2021), *vacated & remanded*, 79 F.4th 235 (2d Cir. 2023).  Specifically, the district court applied a presumption of fairness, adequacy, and reasonableness to the proposed settlement after evaluating only two of the four core factors under Rule 23(e)(2)—namely whether the named plaintiff in the action adequately represented the class under Rule 23(e)(2)(A) and whether the settlement agreement was reached in an arm's-length negotiation under Rule 23(e)(2)(B).  *Id.* at *2.

The objector in *Moses* appealed the district court's judgment finally approving the settlement, arguing that the court erred because, *inter alia*, (1) it applied the wrong legal standard "when it imposed a presumption of fairness, adequacy, and reasonableness to the parties' proposed class-action settlement on the ground that it was negotiated between the settling parties at arm's

length," and (2) it failed to consider the attorneys' fee award and incentive award in evaluating the settlement's fairness, reasonableness, and adequacy.  Appellant's Opening Br. at 21, 25, *Moses v. N.Y. Times Co.*, No. 21-2556, Dkt. 40 (2d Cir. Jan. 26, 2022).

The Second Circuit agreed with the objector on both grounds.  As an initial matter, the panel recounted the historic practice of applying the *Grinnell* factors to evaluate fairness, reasonableness, and adequacy under Rule 23(e).  *Moses*, 79 F.4th at 242.  Then, the panel highlighted that Congress recently revised the rule "to include a list of four 'primary procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal.'"  *Id.* (quoting 2018 Advisory Note).  The *Moses* panel emphasized that the amended Rule 23(e) "now mandates courts to evaluate factors that may not have been highlighted in [this Circuit's] prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements."  *Id.* at 243.  The panel then explained the rule's requirements and clarified the correct legal standard in evaluating fairness, reasonableness, and adequacy of a proposed settlement agreement.  *Id.* at 242–46.

The Second Circuit held that the district court erred because it presumed that the proposed settlement was fair, reasonable, and adequate solely because it was reached through an arm's-length negotiation, without evaluating all four factors codified in Rule 23(e)(2).  *Id.* at 243.  The panel explained that "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length" "because the rule 'does not suggest that an affirmative answer to that one [factor] creates a favorable presumption on review of the other three.'"  *Id.* (citation omitted).

In addition, the Second Circuit agreed that the district court erred because it evaluated the proposed fees, including attorneys' fees and the incentive award, "separately" from its inquiry into

the settlement's fairness, reasonableness, and adequacy.  *Id.* at 242–46.  While courts in this Circuit historically "evaluate[d] substantive fairness [by] considering the nine *Grinnell* factors," which largely overlap with the revised Rule 23(e)(2), the *Moses* court emphasized that the "rule now requires courts to expressly consider two core factors [under Rule 23(e)(2)(C)–(D)] when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members."  *Id.* at 244.

As to the adequacy of class relief under Rule 23(e)(2)(C), the Second Circuit instructed that "the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem," and that "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award."  *Id.* (internal quotation marks and citations omitted).  The panel further explained that this "symbiotic review of proposed relief and attorneys' fees aligns with [t]he express goal of [the] *Grinnell* opinions [which] was to prevent unwarranted windfalls for attorneys."  *Id.* (internal quotation marks and citation omitted).

With respect to the equitable treatment of class members under Rule 23(e)(2)(D), the *Moses* panel explained that courts evaluating the substantive fairness of a settlement now must consider proposed incentive awards to ensure that the awards are "reasonable and promote equity between class representatives and absent class members."  *Id.* at 245.  Although courts must expressly consider the two factors in Rule 23(e)(2)(C)–(D), the panel also noted that "the revised Rule 23(e)(2) does not displace [the] traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement."  *Id.* at 243.

In sum, under the Second Circuit's interpretation of the revised Rule 23(e)(2) in *Moses*, courts in this Circuit "must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account—among other substantive considerations stated in the rule—the proposed attorneys'

fees and incentive awards" in evaluating fairness of a proposed settlement.  *Id.*  In addition, courts may use the traditional *Grinnell* factors to guide such evaluations.

### C.     Substantive Fairness Revisited in Light of *Moses*

In its June 12, 2023 Memorandum & Order finally approving the Settlement, the Court, consistent with pre-*Moses* precedent, applied a presumption of fairness based on the Parties' arm's-length negotiations[4] and concluded that the Settlement was fair, adequate, and reasonable by analyzing the *Grinnell* factors.  (*See* Mem. & Order, Dkt. 471, at 14–29.)  "Given the substantial overlap between the traditional *Grinnell* factors and the Rule 23(e)(2) factors," *Moses* "does not automatically require the reversal of the [S]ettlement's approval."  *Moses*, 79 F.4th at 246. However, the Court revisits its prior decision out of an abundance of caution.  In re-analyzing whether the Settlement is substantively fair, reasonable, and adequate, the Court considers both the *Grinnell* factors and the Rule 23(e)(2) factors.  Specifically, the Court expressly evaluates the two core factors under Rule 23(e)(2)(C)–(D) and reviews the appropriateness of the proposed fees—including attorneys' fees, litigation expenses, and incentive awards—in assessing the overall fairness of the Settlement.

For the following reasons, the Court finds that the Rule 23(e)(2)(C)–(D) factors and the *Grinnell* factors weigh in favor of finding that the Settlement is substantively fair and warrants final approval, subject to the reduction of the requested attorneys' fees.

---

[4] In its June 12, 2023 Memorandum & Order, the Court also evaluated the "adequacy of representation" under Rule 23(a).  (*See* Mem. & Order, Dkt. 471, at 9–13.)  Given the Court's prior finding of adequacy under Rule 23(a) (*id.*), and the similarity of analyses regarding adequacy of representation under Rule 23(e)(2)(A) and Rule 23(a)(4), the Court finds that the class representatives and Class Counsel provided adequate representation to the putative classes under Rule 23(e)(2)(A).  *See In re Payment Card I*, 330 F.R.D. at 54 (holding that the court will likely find that class representatives and class counsel have provided adequate representation under Rule 23(a) after finding adequate representation by class representatives and class counsel under Rule 23(e)(2)(A)).

1.       **Rule 23(e)(2)(C): Adequacy of Class Relief**

In assessing whether a proposed settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), a district court must take into account several factors, including: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C). The Court notes that this "inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)."  *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 321 (S.D.N.Y. 2019).

a.       Rule 23(e)(2)(C)(i) and (ii): Costs, Risk, Delay of Trial and Appeal, and Effectiveness of Proposed Method of Distributing Relief to the Class

The Court previously considered the factors set forth in Rule 23(e)(2)(C)(i) and (ii) and found that they all favored granting final approval of the Settlement.  (*See* Mem. & Order, Dkt. 471, at 23, 25–26, 28–29.)  Because *Moses* does not affect the analysis of these factors, the Court does not revisit that analysis and simply affirms its prior finding that these factors weigh in favor of final approval.

b.       Rule 23(e)(2)(C)(iii): The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment

As instructed by *Moses*, the Court now addresses the other subsections of Rule 23(e)(2)(C). Rule 23(e)(2)(C)(iii) directs courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  "This review provides a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check."  *Moses*,

14

79 F.4th at 244 (quoting *Fresno Cty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019)).

Here, under the Settlement, Class Counsel may apply to the Court for an award of attorneys' fees and expenses in a total amount not to exceed $4,100,000.  (Settlement Agreement, Dkt. 432-1, ¶ 6.1, at ECF 22.)   Unlike in *Moses*, where "there [was] effectively an inverse correlation between the amount of attorneys' fees . . . and the cash available for . . . distribution to class member," *Moses*, 79 F.4th at 246, the Parties here have agreed that Defendant will pay any attorneys' fees award "separate and apart from" the settlement benefits made available to Class Members.  (*Id.* ¶ 2.5, at ECF 15.)   Because the attorneys' fee award will not affect the Class's recovery, the Court finds this aspect of the Settlement adequately protects the Class's interests. *See, e.g.*, *Hesse v. Godiva Chocolatier*, No. 1:19-CV-972 (LAP), 2022 U.S. Dist. LEXIS 7264, at *27 (S.D.N.Y. Apr. 20, 2022).

Regarding the timing of payment, the Parties stipulate that Defendant will pay the attorneys' fees, litigation expenses, and incentive awards to Class Counsel within 30 calendar days following the issuance of an order granting the fee application.  (*Id.* ¶ 6.4, at ECF 23.)   Objector argues that this "quick-pay" provision, which allows attorneys' fees to be paid before class claims, "indicates unfairness" under Rule 23(e)(2)(C)(iii).[5]   (Objector's Br., Dkt. 446, at 14.)   While a settlement provision providing for payment of attorneys' fees prior to the distribution of settlement funds among class members "does not bolster the case" for approval, "it also does not undercut

---

[5] Under the terms of the Settlement Agreement, "[a]ll Valid Claims shall be paid by the Claims Administrator within sixty (60) days after the Effective Date except that, in the event of an appeal from Final Approval that challenges only the award of attorneys' fees and expenses and/or the Class Representative Payments and does not challenge any other aspect of the Settlement, all Valid Claims shall be paid within ninety (90) days after Final Approval, unless otherwise ordered by the Court."  (Settlement Agreement, Dkt. 432-1, ¶ 2.9, at ECF 16–17.)

that case where, as here, the majority of other factors weigh significantly in its favor." *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349, 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021).  Given that the amount the Class recovers will not be affected by the amount or payment of attorneys' fees to Class Counsel, this timing provision does not result in any unfairness to Class Members. Therefore, the Court finds the terms of the proposed award of attorneys' fees to be reasonable under Rule 23(e)(2)(c)(iii), subject to the reduction of the requested attorneys' fees as explained below.  *See infra* Discussion Section II.A.

      c.    Rule 23(e)(2)(C)(iv): Any Agreement Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) mandates that courts consider "any agreement required to be identified under Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(c)(iv); *Johnson*, 333 F.R.D. at 322.  Here, because "[t]here are no side agreements pertaining to the Settlement Agreement that are required to be identified under Rule 23(e)(3)" (Pls.' Settlement Br., Dkt. 443, at 18 n.12), this factor has no bearing on the final approval analysis.

**2.    Rule 23(e)(2)(D): Equitable Treatment of Class Members**

The Court now considers the other Rule 23(e)(2) factor that it did not previously analyze, Rule 23(e)(2)(D), which requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  In evaluating this factor, courts may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Moses*, 79 F.4th at 245 (quoting 2018 Advisory Note).  Particularly, after *Moses*, "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Id.* (quoting

16

Fed. R. Civ. P. 23(e)(2)(D)).  In "evaluating the substantive fairness of a settlement[, courts] must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." *Id.*  In doing so, courts must not only ensure that a settlement protects "the interests of class representatives who play an active role in the litigation— often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process—from having absent class members free ride on their efforts," but they must also "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* (internal quotation marks omitted).

Here, under the Settlement Agreement, a Class Member with proof of purchase can receive a payment of up to $50.60, and one without such proof of purchase can receive up to $7. (Settlement Agreement, Dkt. 432-1, ¶ 2.4, at ECF 14–15.)  Thus, the Settlement Agreement applies to all Class Members equally as "they are each entitled to receive the same payment based on the number of [Defendant's product packages] they purchased and whether they have documented Proof of Purchase." *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *28.  Additionally, the Settlement Agreement subjects all Class Members to the same release condition.  (*See* Settlement Agreement, Dkt. 432-1, ¶¶ 7.1–7.2, at ECF 23–24.)  Because "the scope of the release applies uniformly to putative class members," it "does not appear to affect the apportionment of the relief to class members." *In re Payment Card I*, 330 F.R.D. at 47.

As to the incentive awards, Kurtz and Honigman seek incentive awards of $10,000 and $5,000, respectively, to compensate them for their efforts and personal time spent aiding Class Counsel in prosecuting the litigation on behalf of the Class.  (Decl. of Dr. D. Joseph Kurtz ("Kurtz Decl."), Dkt. 444-1, ¶ 2, at ECF 3; Decl. of Gladys Honigman ("Honigman Decl."), Dkt. 444-2,

¶ 2, at ECF 3.)  By comparison, under the Settlement, a Class Member with proof of purchase is only entitled to recover up to $50.60, and one without such proof of purchase up to $7.  (Settlement Agreement, Dkt. 432-1, ¶ 2.4, at ECF 14–15.)  The contrast is even starker when looking at the recovery actually paid to the Class.  According to Class Counsel's calculations as of September 19, 2023, the average claim actually conferred on Class Members is $6.73, with $30.90 being the average for Class Members with proof of purchase and $6.28 for those without proof of purchase.  (Tr. 9:12–14.)

Although the Court recognizes that the requested incentive awards are vastly larger than the average recovery for individual Class Members, the Court finds that they are reasonable in light of the circumstances of this case.  Large incentive awards, such as the two requested here, ordinarily might be deemed too disproportionate to the average class member's recovery to be equitable,  *see, e.g.*, *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *44 (reducing named plaintiffs' requested service awards "in light of the *de minimis* recovery by the members of the Class"); *Reynolds v. Marymount Manhattan Coll.*, No. 1:22-CV-6846 (LGS), 2023 WL 6977635, at *3 (S.D.N.Y. Oct. 23, 2023) (finding a reduced service award to be "justified because it [was] comparable to the available recovery to class members for ordinary losses and significantly less than the available recovery for other documented losses"); however, the special circumstances in this case justify these awards.  First, the Settlement in this matter was reached after more than eight years of intensive litigation that involved substantial discovery, motion practice, and two appeals to the Second Circuit.  (*See* Decl. of Vincent M. Serra ("Serra Decl. II") ¶¶ 6–32, Dkt. 444, at 3–15.)  The length and intensity of this lawsuit logically necessitated more extensive services and work by the named Plaintiffs, and such contributions to the litigation justify additional compensation.  *See, e.g.*, *Norflet ex rel. Norflet v. John Hancock Life Ins. Co.*, 658 F. Supp. 2d

350, 351, 353–54 (D. Conn. 2009) (finding that the named plaintiff "should be awarded $20,000 as an incentive award, an amount that is reasonable and equitable as an incentive award for the time she spent in deposition, responding to discovery, and/or otherwise working with Class Counsel to prosecute and resolve this case" during several years of intensive litigation).  Here, Kurtz and Honigman each spent "a considerable amount of time performing actions that benefitted the Settlement Class at large," such as "detailing [their] experience with the products at issue to Settlement Class Counsel and the Court;" "reviewing . . . various pleadings, motions, briefs, orders, and correspondence related to the Litigation, including the initial complaint, status updates," and numerous court orders; "searching for and producing documents;" and "reviewing and responding to Defendant's interrogatories[.]"  (Kurtz Decl., Dkt. 444-1, ¶ 3, at ECF 3; Honigman Decl., Dkt. 444-2, ¶ 3, at ECF 3.)   Kurtz also provided other services, including reviewing additional documents (such as "the opposition to Defendant's motion to dismiss the complaint" and "briefs submitted in connection with class certification and the appeal"), "preparing and sitting for his deposition[,]" and "making his homes (and their plumbing systems) . . . available over the course of two days for physical inspection by Defendant's consultant[.]"  (Kurtz Decl., Dkt. 444-1, ¶ 3, at ECF 3.)[6]  In order to comply with their ethical obligations, Class Counsel consulted with, and obtained approval from, the named Plaintiffs in pursuing the exhaustive litigation strategy pursued in these actions.  (Kurtz Decl., Dkt. 444-1, ¶ 4, at ECF 3; Honigman Decl., Dkt. 444-2, ¶ 4, at ECF 3.)  Furthermore, the price-premium theory of recovery that Plaintiffs ultimately would have pursued at trial, even if successful, likely would have yielded small average recovery amounts for

---

[6] Notably, the incentive award requested for Honigman is half the amount requested for Kurtz.  Presumably, this is because Honigman expended less time and services in connection with the lawsuit, as a result of the later filing of the *Honigman* litigation and the efficiencies achieved in *Honigman* based on the *Kurtz* litigation.  (*Compare* Kurtz Decl., Dkt. 444-1, ¶¶ 3, 6, at ECF 3–4 *with* Honigman Decl., Dkt. 444-2, ¶¶ 3, 6, at ECF 3–4.)

individual Class Members.  Finally, the incentive awards will be paid directly by Defendant, not at the expense of the Class.  *See Hart v. BHH, LLC*, No. 15-CV-4804, 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) (finding the requested incentive awards fair and reasonable because they were paid directly by defendants).  Thus, the Court finds that the incentive awards requested for Kurtz and Honigman, respectively of $10,000 and $5,000, are reasonable in light of the particular circumstances of these two cases.

### 3.    Remaining *Grinnell* Factors

In its June 12, 2023 Memorandum & Order finally approving the Settlement, the Court specifically considered the remaining *Grinnell* factors—including the reaction of the Class to the Settlement; the stage of the proceedings and the amount of discovery completed; the ability of Defendant to withstand a greater judgment; the range of reasonableness of the Settlement Fund in light of the best possible recovery; and the range of reasonableness of the Settlement Fund compared to a possible recovery in light of all the attendant risks of litigation—in conducting the substantive fairness inquiry.  The Court previously found and now affirms that each of these *Grinnell* factors supports final approval of the Settlement.  (*See* Mem. & Order, Dkt. 471, at 23–25, 26–28.)

*    *    *

On the basis of the foregoing discussion, the Court finds that all four factors enumerated in Rule 23(e)(2) and the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement, subject to the reduction of the requested attorneys' fees.

## II.    Attorneys' Fees, Litigation Expenses, and Incentive Awards Request

Plaintiffs seek the Court's approval for an award of $3,961,668.77 in attorneys' fees, $138,331.23 in litigation expenses and charges, and $10,000 and $5,000 in incentive awards for named Plaintiffs Kurtz and Honigman, respectively.  (Pls.' Settlement Br., Dkt. 443, at 2, 18–19,

25.)  In accordance with the Settlement Agreement, Defendant has not opposed this fee request; however, Objector challenges the amount of the requested attorneys' fees for Class Counsel.  (*See* Dkts. 446, 460.)  For the reasons set forth below, the Court awards $3,169,335.02 in attorneys' fees and $138,331.23 in litigation expenses to Class Counsel, and incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively.

A.      **Attorneys' Fees**

As an initial matter, the Court recognizes that the Settlement in this action is a claims-made settlement.  Unlike a common fund settlement, where class members share from a settlement pool, in a claims-made settlement, the extent of a defendant's liability "is wholly dependent upon the number of claims [filed by class members], the cost of administering the settlement and such fees and expenses as are assessed by the Court." *Parker v. Time Warner Ent. Co.*, 631 F. Supp. 2d 242, 266 (E.D.N.Y. 2009).  In claims-based settlements, "where the parties agree to a fee that is to be paid separately by the Defendants rather than one that comes from, and therefore reduces, the Settlement Fund available to the class, 'the Court's fiduciary role in overseeing the award is greatly reduced' because 'the danger of conflicts of interest between attorneys and class members is diminished.'" *Kemp-DeLisser*, 2016 WL 6542707, at *14 (quoting *Jermyn*, 2012 WL 2505644, at *9).  However, "that does not mean this Court's duty is that of a disinterested observer." *Hart*, 2020 WL 5645984, at *6.  Rather, the Court must "still 'assess the reasonableness of the fee award' where the fee does not come from a common fund, because 'a defendant is interested only in disposing of the total claim asserted against it, and not in the allocation between the class payment and the attorneys' fees.'" *Kemp-DeLisser*, 2016 WL 6542707, at *14 (citation omitted).

As to the best approach for calculating fee awards in claims-made settlements, courts in this Circuit are divided between the lodestar method and the percentage-of-fund method.  "[A]

21

number of courts have concluded that utilizing the percentage method would provide plaintiffs' counsel with a percentage of a 'hypothetical recovery,' and have instead opted to use the lodestar method, finding that it 'better accommodates the policy concerns in settling class actions on a claims-made basis.'" *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV) (RML), 2018 WL 3642627, at *15 (E.D.N.Y. July 30, 2018) (citation omitted); *see also Bodon v. Domino's Pizza*, No. 9-CV-2941, 2015 WL 3889577, at *5–7 (E.D.N.Y. June 4, 2015) (declining to employ the percentage-of-fund method and instead adopting the modified lodestar method, which better accommodates the policy concerns), *R&R adopted*, 2015 WL 3902405 (E.D.N.Y. June 24, 2015). Other courts, however, have adopted the percentage-of-fund method, as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation marks and citation omitted); *see, e.g.*, *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *32 (same).

In this case, Plaintiffs ask the Court to award attorneys' fees on a lodestar basis (Pls.' Settlement Br., Dkt. 443, at 19–20), while Objector urges the Court to use the percentage-based method because it "directly aligns class counsel's interests with those of the class" (Objector's Br., Dkt. 446, at 16). For the following reasons, this Court utilizes the lodestar method, which it considers to be a more accurate measure of attorneys' fees. Based on this method, the Court awards Class Counsel $3,169,335.02 in attorneys' fees, an amount that the Court finds is also supported by the *Goldberger* factors.

### 1.   Percentage-of-Fund Method

"Under the percentage method, the court calculates the fee award as some percentage of the funds made available to the Settlement Class." *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *33 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*,

*L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007)).  When applying the percentage-of-fund method to a claims-made settlement, there is some debate about whether the award should be based on a percentage of the total funds made available to the class or the smaller amount actually claimed by the class.  *See McLaughlin*, 2018 WL 3642627, at *15.  In other words, the question becomes "whether the unclaimed funds [should be] included in the denominator" for calculating the fee. *Hart*, 2020 WL 5645984, at *7.

a.      Total Funds Made Available Versus Actual Payment to the Class

Objector argues that the denominator should not be the total amount that Defendant would have had to pay had the claims process yielded a 100% response rate,[7] but rather the final actual settlement payout to the Class.  (Objector's Br., Dkt. 446, at 16.)  Regarding this issue, the Second Circuit held in *Masters v. Wilhelmina Model Agency, Inc.* that "[a]n allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not."  473 F.3d 423, 437 (2d Cir. 2007).  However, a number of district courts in this Circuit have held that *Masters* does not apply to claims-made settlements, where defendants retain the unclaimed portion of the settlement fund, instead opining that the benefits actually conferred to the class should be used.  *See, e.g.*, *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *34 (relying on the actual benefits paid to class members in applying the percentage method and distinguishing *Masters* "on the ground that the defendant there did not retain the unclaimed portion of the settlement fund like [defendant] will under the proposed settlement here"); *Hart*, 2020 WL 5645984, at *7–8 (explaining that *Masters* "focused on the 'benefit achieved for class members'"

---

[7] This amount is not the same as, and could be less than, the total funds made available to the Class under the Settlement, since it is impossible to know how many claims could be made and the amount of the recovery for each claim, which would be based on whether or not the Class Member has proof of purchase.

and that "any benefit from funds reverted back or never tendered by defendants are purely hypothetical" and "provide no benefit to the class"); *Bodon*, 2015 WL 3889577, at *5 ("Because the class members in *Masters* . . . would receive the benefit of the entire fund, plaintiffs' counsel were entitled to a percentage of the whole recovery. The Second Circuit's award of a percentage of the entire recovery in *Masters* does not, however, mean that plaintiffs' counsel are entitled to a percentage of a *hypothetical* recovery." (emphasis in original)). *But see Zink v. First Niagara Bank, N.A.*, No. 13-CV-1076 (JJM), 2016 WL 7473278, at *8 (W.D.N.Y. Dec. 29, 2016) (holding that even if funds revert to the defendant, they still provide an indirect benefit to the class and thus should be included in fee calculations).

The Court agrees with Objector because there is a huge disparity between the benefits that will actually be achieved for Class Members and the amount of funds that will revert to Defendant. Based on Class Counsel's most recently provided figures, the total value of the actual monetary benefits to the Class is $993,958.70. (Tr. 8:25–9:1.) Because any unpaid funds, which amount to approximately $19 million, would revert to Defendant, about 95% of the purported $20 million benefit is "purely hypothetical." *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *34. Given the stark "difference between the theoretical maximum benefit given to Plaintiffs and the actual claimed benefits," "[t]he theoretical benefit dwarfs any real benefit the class receives." *Hart*, 2020 WL 5645984, at *8. Accordingly, unclaimed funds should not be used when assessing the fee percentage. This is especially true in light of *Moses*, where the Second Circuit emphasized that "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Moses*, 79 F.4th at 244 (quoting 2018 Advisory Note).

b.      Percentage of the Fund in the Instant Case

Here, the actual monetary benefits that the Class will receive from Defendant is $993,958.70; Class Counsel request $3,961,668.77 in attorneys' fees and $138,331.23 in litigation expenses; and named Plaintiffs request an additional $15,000 of incentive awards.  As such, under the percentage-of-the-fund method, the total value of the Settlement is $5,108,958.70, compared to $20 million, the total amount of funds made available under the Settlement.  *See, e.g.*, *Hart*, 2020 WL 5645984, at *8 (including actual class payments, attorneys' fees, costs, and expenses, and incentive awards in the total benefit given to the class to calculate the denominator in a claims-based settlement).   Accordingly,  the  requested  fee  award  is  approximately  77.5%  of  the Settlement's total value $\left( \frac{\$3,961,668.77}{\$993,958.70 + \$3,961,668.77 + \$138,331.23 + \$15,000} = 77.5\% \right)$.  The Court finds that the award is unreasonable under the circumstances.

Objector argues that "attorneys' fees should be reduced to the 25% benchmark of the actual benefit to the class."  (Objector's Br., Dkt. 446, at 1.)  An award of 25%, or even 33.3%, *see Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405 (CM) & 14-CV-8714 (CM), 2015 WL 10847814, at *16 & n.11 (S.D.N.Y. Sept. 9, 2015) (collecting cases where courts granted fee awards of approximately 30–33.3% of the total value of the settlement), would not be reasonable here.  The Court finds such an award "would not give due credit for [Class Counsel's] efforts or the results achieved" in this case.  *Hart*, 2020 WL 5645984, at *9.  As discussed, the Settlement in this matter was achieved after eight years of intensive litigation, which entailed substantial discovery, motion practice, and two appeals to the Second Circuit.  (*See* Serra Decl. II ¶¶ 6–32, Dkt. 444, at 3–15.)  The Court further observes that such a low "award may disincentivize some plaintiffs' attorneys" in pursuing cases like this one in the future.  *Hart*, 2020 WL 5645984, at *9. Thus, "the percentage of the fund does not appear to be a useful metric" in these circumstances.

*Id.* Rather, "[d]ue to the atypical structure of the [S]ettlement, lodestar is a more accurate measure of attorneys' fees," and should be applied here. *Id.*

### 2.   Lodestar Analysis

Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47 (citing *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)).

### a.   Reasonable Hourly Rates

"A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" *McLaughlin*, 2018 WL 3642627, at *16 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). To determine reasonable hourly rates for the legal services performed, courts typically take into account several factors, such as "the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney." *Bodon*, 2015 WL 3889577, at *7 (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190). "In assessing the hourly rate, courts consider rates awarded in the district in which the reviewing court sits, pursuant to what is known as the 'forum rule.'" *Id.* (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009)).

Here, Class Counsel request a reduced lodestar of $3,961,668.77[8] based on 5,662.88 hours of work. (Pls.' Settlement Br., Dkt. 443, at 2, 19; Serra Decl. I, Ex. A, Dkt. 445, at ECF 8.) In support of their request for attorneys' fees, Class Counsel initially submitted a summary chart of

---

[8] In this case, Class Counsel calculated a lodestar of $4,269,331.50 (*see* Serra Decl. I, Ex. A, Dkt. 445, at ECF 8), but seek only $3,961,668.77 in attorneys' fees, which amounts to a negative lodestar multiplier of 0.93 (Pls.' Settlement Br., Dkt. 443, at 20).

their billing rates and hours expended, along with the declaration of Attorney Vincent M. Serra. (*See* Serra Decl. I, Ex. A., Dkt. 445, at ECF 8.)  The summary chart shows the hours expended by many individuals, including twelve partners, ten associates, one of counsel, two staff attorneys, one investigator, two litigation support personnel, one summer associate, and unspecified numbers of paralegals and document clerks, as well as the various rates charged.  (*Id.*)  However, this summary chart provides virtually no information about the nature of the work performed in connection with the hours for which compensation is sought.  At the Court's request, Class Counsel submitted for the Court's *in camera* review their contemporaneous billing records.  (*See* 9/19/2023 Minute Entry; Dkt. 473.)  These records show that Class Counsel based their calculation on the timekeepers' *current* hourly billing rates, rather than blended historical rates, "i.e., the hourly rates reflective of the rate at the time the work was performed," even though their billings spanned more than eight years preceding the fee petition.  *In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6888488, at *3 (E.D.N.Y. Dec. 16, 2019) [hereinafter "*In re Payment Card II*"].

The Court finds Class Counsel's use of current hourly rates in calculating attorneys' fees problematic because this "may have overstated [the lodestar calculation] given the lengthy duration of this case and the likelihood that the [F]irm's rates increased over the years."  *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK), 2021 WL 2453972, at *1 (S.D.N.Y. June 15, 2021).  In addressing the Court's concerns regarding the use of current rates, Class Counsel argue that "using current rates is a practice that's well accepted in the Circuit," reasoning that they have represented Plaintiffs since the beginning of this case without compensation and that allowing such rates is "justified to compensate for the delayed payment." (Tr. 20:24–25; 21:4–6; *see also* Pls.' Settlement Br., Dkt. 443, at 19 ("Class Counsel's efforts thus

far have been uncompensated and the fees have been entirely contingent upon the result achieved.").)

While courts may have discretion to apply current rates in awarding attorneys' fees, they must consider "all case-specific variables" and "all pertinent factors," including the experience of the attorney, in setting a reasonable hourly rate. *Lilly v. City of N.Y.*, 934 F.3d 222, 230 (2d Cir. 2019); *see, e.g.*, *Jara v. P.N. Fin., Inc.*, No. 10-CV-6274, 2014 WL 4388515, at *6 (S.D.N.Y. Sept. 4, 2014) ("In determining reasonable hourly rates, a court should first examine the attorneys' experience."); *Chavez v. MCS Claim Servs., Inc.*, No. 15-CV-3160 (JMA) (AKT), 2016 WL 1171586, at *4 (E.D.N.Y. Mar. 23, 2016) ("[T]he Court must determine a reasonable hourly rate for the legal services performed, using factors such as the labor and skill required, the difficulty of the questions, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney." (internal quotation marks and citation omitted)).

Here, as an example, Attorney Serra, who billed the highest number of hours in this action (*see* Serra Decl. I, Ex. A, Dkt. 445, at ECF 8), started working on this case when he was an associate with the Firm in 2015 and did not become a partner until 2021.   (Tr. 20:11–21.)   Thus, "[t]he vast majority of [Attorney Serra's] hours [expended in this case] were billed as an associate." (Tr. 20:15–16.)   Despite now being a partner at Robbins Geller, Attorney Serra did not have the commensurate experience for at least six of the years he worked on this case as an associate, so as to "warrant[] the award of an hourly fee that courts in this District deem appropriate for partners, *i.e.*, attorneys with significantly more relevant experience than that of [Attorney Serra]." *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *5 (E.D.N.Y. Jan. 29, 2020).   Therefore, the Court does not find it reasonable to apply Attorney Serra's current

28

hourly rate to all of the time he expended in this action given that the majority of his work on this case was done as an associate.

Indeed, the Court also notes that Class Counsel used blended historic hourly rates in their attorneys' fees requests in other class action lawsuits litigated in this Circuit, either at the court's direction or in the first instance. *See, e.g.*, *City of Westland Police*, 2021 WL 2453972, at *1 ("At the Court's request, counsel provided a restated lodestar based on blended historic hourly rates[.]"); *In re Payment Card II*, 2019 WL 6888488, at *3 (noting that class counsel calculated a lodestar of $204 million "based on historical rates" for their attorneys' fees request).[9]

Even if it were appropriate to apply attorneys' current hourly rates—*e.g.*, to account for delayed payment in prolonged litigation—the Court is not persuaded that those rates are reasonable on their face, as they are not in line with the prevailing rates in the Eastern District of New York. "Under the 'forum rule,' this Court uses the prevailing hourly rate in the Eastern District of New York in calculating the reasonable hourly rate." *Chrysafis v. Marks*, No. 21-CV-2516 (GRB) (AYS), 2023 WL 6158537, at *4 (E.D.N.Y. Sept. 21, 2023). "[I]n complex matters, courts [in more recent cases] have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *7 (E.D.N.Y. Nov. 21, 2023); *see also Aptive Env't, LLC v. Vill. of E. Rockaway, N.Y.*, No. 19-CV-3365 (DRH) (SIL), 2022 WL 5434178, at *5 (E.D.N.Y. July 8, 2022) (setting billing rates at $325 to $600 per hour for partners, $200 to $395 per hour for associates, and $125 to $240 per hour for paralegals), *R&R adopted*,

---

[9] In *In re Payment Card II*, the court appointed Robbins Geller, along with the law firms of Robins Kaplan LLP and Berger & Montague P.C., to serve as class counsel. *In re Payment Card II*, 2019 WL 6888488, at *3. There, the law firms submitted a request for attorneys' fees using historic hourly rates. *Id.*

2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022); *Ctr. for Popular Democracy v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 16-CV-5829 (NGG) (VMS), 2021 WL 4452202, at *11 (E.D.N.Y. Sept. 29, 2021) (setting billing rates at $450 to $630 per hour for partners, $360 per hour for associates, $170 for law clerks, and $100 for paralegals).  Notably, "[t]he rates awarded in complex matters are higher than the typical 'prevailing rates for attorneys in the [Eastern District of New York], which are approximately $300 [to] $450 per hour for partners, $200 [to] $300 per hour for senior associates, and $100 [to] $200 per hour for junior associates.'"  *Alcon Vision*, 2023 WL 8072507, at *7 (citation omitted).  Furthermore, "courts in the Second Circuit have found that the hourly rates for litigation support personnel should be comparable to the hourly rates for paralegals."  *City of Westland Police*, 2021 WL 2453972, at *3.

Here, the Court finds that Class Counsel's current hourly rates—$800 to $1,350 per hour for partners, more than $500 per hour for some associates, $265 to $375 per hour for paralegals, and $300 to $400 per hour for litigation support personnel (*see* Serra Decl. I, Ex. A, Dkt. 445, at ECF 8)—exceed the prevailing hourly rates, including those approved in complex litigation. Specifically, seven of the twelve partners for whom attorneys' fees are sought have hourly rates in excess of $1,000, with two attorneys' rates exceeding $1,300 per hour.  (*Id.* (billing records for Attorneys Paul J. Geller and Samuel H. Rudman).)  Furthermore, Class Counsel seek $895 per hour for Attorney Mark S. Reich for a total of 1,289.55 hours of work, the second highest number of hours billed for this case, but provide no information about his background and experience.[10] (*See generally* Serra Decl. I, Exs. A, D, G, Dkt. 445.)

---

[10] While the Court notes that Attorney Reich is no longer employed by Robbins Geller (*see* Serra Decl. I ¶ 4, Dkt. 445, at ECF 3; Serra Decl. I, Ex. G, Dkt. 445; *Kurtz v. Kimberly-Clark Co.*, No. 14-CV-1142 (PKC) (RER)), information about Attorney Reich's background and experience at the time he was working on this matter for the Firm is still relevant to the Court's evaluation of the hourly rate at which his services are being billed in this case.

Therefore, the Court finds that the unjustifiably inflated hourly rates being claimed by Class Counsel warrant a reduction in the attorneys' fees to be awarded in this case.

b.   <u>Reasonable Hours</u>

In determining whether the number of hours worked is reasonable, "a district court should 'examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.'" *Chaparro v. John Varvatos Enters., Inc.*, No. 21-446-CV, 2021 WL 5121140, at *2 (2d Cir. Nov. 4, 2021) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). "Where, as is the case here, 'the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent.'" *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) (citation omitted). "In dealing with hours that are 'excessive, redundant, or otherwise unnecessary, . . . the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Chaparro*, 2021 WL 5121140, at *2 (citation omitted).

Here, Class Counsel's fee application raises several issues with respect to the number of hours worked. First, the allocation of time is heavily weighted toward partners. Twelve of the twenty-five attorneys who billed were partners, and they billed more than 68% of the hours.[11] (*See* Serra Decl. I, Ex. A, Dkt. 445, at ECF 8.) Furthermore, Class Counsel billed for work performed by a summer associate, which typically is not done. *See Okla. Firefighters Pension & Ret. Sys. v.*

---

[11] Even treating Attorney Serra's hours as if he were an associate and not a partner, the hours billed by the remaining eleven partners still account for nearly 40% of the total hours billed in this matter.

*Lexmark Int'l, Inc.*, No. 17-CV-5543, 2021 WL 76328, at *5 (S.D.N.Y. Jan. 7, 2021) (noting that the billing of a summer associate's time was "a practice this Court has never seen").

Moreover, Class Counsel's billing records contain vague entries that "lack sufficient specificity to enable a court to assess what tasks were completed." *Alcon Vision*, 2023 WL 8072507, at *4 (internal quotation marks and citation omitted). For instance, many of Class Counsel's claimed hours are for vaguely described tasks, such as "factual and legal research," "review research and case law," "draft complaint," "research/draft opposition brief," "deposition prep," and "work on settlement." (*See generally* Dkt. 473.) Such entries "do not allow a court to assess what legal issues, in particular, the attorneys were researching, or which sections of a legal brief they were drafting, and whether the time spent was excessive or duplicative." *Alcon Vision*, 2023 WL 8072507, at *4 (internal quotation marks and citations omitted); *see also Mawere v. Citco Fund Servs., (USA) Inc.*, No. 9-CV-1342 (BSJ) (DF), 2011 WL 6779319, at *8 (S.D.N.Y. Sept. 16, 2011) (finding vague time entries that state "research" or "read cases," or refer vaguely to legal research regarding a motion, making it impossible to determine whether the hours were excessive); *Mary Jo C. v. Dinapoli*, No. 9-CV-5635 (SJF) (ARL), 2014 WL 7334863, at *10 (E.D.N.Y. Dec. 18, 2014) (finding time entries such as "work[ing] on memo of law in opposition to defendants' motions to dismiss" vague); *Calvo v. City of N.Y.*, No. 14-CV-7246 (VEC), 2017 WL 4119280, at *7 (S.D.N.Y. Sept. 15, 2017) (finding time entries such as "[d]rafting & legal research on motion for summary judgment" vague). Such an indefinite showing cannot suffice to support the reasonableness of the hours expended on these tasks.

Finally, Class Counsel often engaged in block billing by combining several tasks into a single entry. "The practice of block billing, although not forbidden, makes it 'difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual

services or tasks provided . . . .'" *Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d at 432 (citation omitted).   For example, Attorney Lauren Karalis spent 4.25 hours on the following tasks: "Reviewed defendant[']s documents. Team meeting regarding discovery and discuss documents found so far."   (Dkt. 473, at 48.)   Similarly, Attorney Edward Kroub spent 1.13 hours on the following tasks: "Collected materials for preparation of witness. Reviewed preparation outline with partner. Created preparation outline."   (*Id.* at 30.)   Other examples of block billing abound, making it difficult for the Court to assess the reasonableness of many of Class Counsel's time entries.

### c.   Fees To Be Awarded

A court has discretion to impose an across-the-board fee reduction "where counsel relies on vague/excessive entries or block billing practices which make it difficult for a court to assess reasonableness." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 619 (E.D.N.Y. 2017); *see also Costa v. Sears Home Improvement Prods., Inc.*, 212 F. Supp. 3d 412, 426 (W.D.N.Y. 2016) (applying an across-the-board reduction to the fee application of 40% due to unreasonable and vague billed hours).

In light of the considerations set forth above—including the high partner, associate, and other legal personnel billing rates, the partner-heavy billing, the vagueness of the timekeeping, the block billing, and the billing of a summer associate—the Court exercises its informed discretion to impose an across-the-board reduction of 20% to Class Counsel's fee application.   As a result, the Court finds that the reasonable attorneys' fees incurred by Class Counsel on behalf of Plaintiffs are $3,169,335.02.

### 3.   **Reasonableness Under the *Goldberger* Factors**

In applying either the lodestar or the percentage-of-the-fund method to calculate attorneys' fees, "[t]he final step in this analysis is to determine whether the fee award calculated above is

reasonable under the *Goldberger* factors." *McLaughlin*, 2018 WL 3642627, at *20. These six factors are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (internal quotation marks and citation omitted). For the following reasons, the Court finds that an award of $3,169,335.02 is reasonable under the *Goldberger* factors, which largely overlap with the *Grinnell* factors.

a.    The Time and Labor Expended by Counsel

As set forth in Class Counsel's declarations, Class Counsel expended significant time, resources, and effort in successfully representing the Class in the instant case. (*See* Serra Decl. II ¶¶ 6–32, Dkt. 444, at 3–15.) Over the course of the lifespan of this case, Class Counsel engaged in intensive litigation, entailing substantial discovery, motion practice, two appeals to the Second Circuit, class certification, and settlement negotiations. (*See id.*); *see also Hallmark v. Cohen & Slamowitz, LLP*, 378 F. Supp. 3d 222, 232 (W.D.N.Y. 2019) (holding that the first *Goldberger* factor supported the attorneys' fee award because class counsel "engaged in several years of discovery and related motion practice, including various conferences and court appearances, and participated in other court proceedings, such as mediation sessions, settlement negotiations, and motion hearings"). "The scope of work[] performed by Class Counsel was necessary and reasonable for complex class actions of this type." *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *36. Accordingly, this factor favors the attorneys' fee award determined by the Court.

b.    The Magnitude and Complexities of the Litigation

"In evaluating the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors to be considered[.]" *Hallmark*, 378 F. Supp. 3d at 232 (internal quotation marks and citation omitted). As discussed above, class actions themselves are considered

34

inherently complex.  The instant action spanned over eight years of contentious litigation, involved a substantial number of class members, and necessitated extensive discovery, third-party subpoenas, class certification, appeals to the Second Circuit, oral arguments, and evidentiary hearings.  (*See* Serra Decl. II ¶¶ 6–32, Dkt. 444, at 3–15.)  Thus, the second *Goldberger* factor weighs in favor of approving the revised award.

c.    The Risk of the Litigation

"The most important *Goldberger* factor is often the case's risk."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440–41 (E.D.N.Y. 2014) (citations omitted).  As discussed in the Court's June 12, 2023 Memorandum & Order, the Court recognizes that Plaintiffs would encounter substantial litigation risks at trial in seeking to establish liability and damages, as well as in maintaining the class action through trial, particularly because of the factual and legal complexities of this action.  (*See* Mem. & Order, Dkt. 471, at 25–26.)  In light of Class Counsel's "willingness to endure for many years the risk that their extraordinary efforts would go uncompensated," *id.* at 441, the third *Goldberger* factor supports the fee award determined by the Court.

d.    The Quality of the Representation

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation."  *Hallmark*, 378 F. Supp. 3d at 233 (internal quotation marks and citations omitted).  "Considering the favorable result reached on behalf of the Class, it is obvious that the members of the Class benefited from [C]ounsel proficient in consumer protection litigation," while avoiding the risk and uncertainty of trial and continued litigation.  *Id.* at 234.  Also, "[t]hat Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage, is a

35

testament to the skill displayed by Class Counsel." *Hesse*, 2022 U.S. Dist. LEXIS 7264, at *39.

Accordingly, the fourth *Goldberger* factor supports the awarded attorneys' fees.

e.    The Requested Fee in Relation to the Settlement

"To avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee as the size of the fund increases." *Hart*, 2020 WL 5645984, at *11 (internal quotation marks and citation omitted). As discussed, Class Counsel's requested attorneys' fees represent approximately 77.5% of the total value of the Settlement (based on the benefits actually obtained for the Class), which the Court has found excessive. *See supra* Discussion Section II.A.1.b. While this factor weighs against Class Counsel's requested award, the excessiveness of the fee request has been addressed by the 20% reduction of the fees to be awarded, *i.e.*, from $3,961,668.77 to $3,169,335.02. Thus, the Court finds that the adjusted attorneys' fee award is appropriate and does not constitute a windfall to Class Counsel.

f.    Public Policy Considerations

Lastly, "when determining whether a fee award is reasonable, courts consider the social and economic value of the class action, and the need to encourage experienced and able counsel to undertake such litigation." *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906 (HBP), 2015 WL 4006896, at *12 (S.D.N.Y. July 1, 2015) (internal quotation marks and brackets omitted). Here, the Court notes that the public's interest in regulating the "flushable wipes" market is furthered by the approval of the adjusted attorneys' fee award. Nevertheless, "these public policies must be balanced against the need to award fees 'with an eye to moderation,' particularly when the fee application is unopposed and there is little incentive for plaintiffs to object when the impact on their individual potential recovery of any increase or decrease in the fee award is incremental[,]" or, as here, non-existent. *Id.* at *12 (quoting *Goldberger*, 209 F.3d at 52–53). Thus, the Court finds that the across-the-board 20% reduction to Class Counsel's fee request is reasonable in light

of the need to incentivize similarly experienced attorneys to take on the risk of litigation to police valuable policy goals and the fact that Plaintiffs were unlikely to pursue their claims individually due to the burden of litigation, balanced against the need for moderation given Plaintiffs' lack of incentive to oppose Class Counsel's fee application.  Accordingly, this factor weighs in favor of approving the attorneys' fee award.

Given that all of the *Goldberger* factors weigh in favor of approving the adjusted attorneys' fee award, the Court finds that the award is reasonable.

*   *   *

In sum, the Court finds that the lodestar method and the *Goldberger* factors both support awarding Class Counsel attorneys' fees of $3,169,335.02.

**B.      Litigation Expenses**

Class Counsel also request reimbursement for litigation expenses and charges in the amount of $138,331.23.  (Pl.'s Settlement Br., Dkt. 443, at 2, 19.)  To support their request, Class Counsel have submitted declarations documenting their incurred expenses.  (*See* Serra Decl. I, Exs. B–F, Dkt. 445.)  The Court finds that these expenses, primarily attributed to expert and consultant fees, were typical and necessary for Class Counsel to successfully prosecute this case, and thus should be reimbursed to Class Counsel.  *See, e.g.*, *Yang v. Focus Media Holding Ltd.*, No. 11-CV-9051(CM) (GWG), 2014 WL 4401280, at *19 (S.D.N.Y. Sept. 4, 2014) (approving mediator fees, expert fees, electronic research, photocopying, postage, meals, and court filing fees and finding that these are the type of expenses that law firms typically bill to their clients).

**C.      Class Representative Incentive Awards**

As discussed above, the Court finds that named Plaintiffs' requested incentive awards are reasonable in light of the circumstances of this case, especially considering its protracted history.

*See supra* Discussion Section I.C.2.  Based on the factors noted in *Moses* and the amended Rule 23(e), the Court finds that incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively, are appropriate.

## CONCLUSION

For the reasons stated above, the Court finds that the Settlement Agreement in this matter satisfies all four factors under Rule 23(e)(2) and the *Grinnell* factors, and thus is substantively fair, reasonable, and adequate.  The Court hereby affirms its prior decision finally approving the Settlement Agreement and certifying the Settlement Class.  In addition, the Court approves and awards: (1) attorneys' fees in the amount of $3,169,335.02, (2) litigation expenses and charges in the amount of $138,331.23, and (3) class representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively.  These payments shall be paid by Defendant to Plaintiffs and Class Counsel in accordance with the terms of the Settlement Agreement.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 17, 2024
     Brooklyn, New York