UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

                       Plaintiff,

      vs.

KIMBERLY-CLARK CORPORATION, et al.,

                 Defendants.

———————————————————————— x

Civil Action No. 1:14-cv-01142-PKC-RML

<u>CLASS ACTION</u>

**MEMORANDUM OF LAW IN SUPPORT OF: (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES; AND (3) CLASS REPRESENTATIVE PAYMENT**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND OF THE LITIGATION AND SETTLEMENT .......................................4

III.    THE NOTICE PLAN HAS SATISFIED RULE 23 AND DUE PROCESS ......................4

IV.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ..........................6

    A.      The Class Representative and Class Counsel Have Adequately
        Represented the Class ...................................................................................7

    B.      The Proposal Was Negotiated at Arm's Length .......................................8

    C.      The Relief Provided for the Class Is Adequate...........................................9

        1.      The Settlement Is Adequate, Taking into Account the Costs, Risks,
                and Delay of Trial or Appeal .......................................................9

        2.      The Proposed Method of Distributing Relief Is Effective ........................11

        3.      The Proposed Attorneys' Fees Are Reasonable........................................11

    D.      The Proposal Treats Class Members Equitably ......................................11

    E.      The *Grinnell* Factors Are Also Met ........................................................12

V.      THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE
    REASONABLE ........................................................................................................15

    A.      Class Counsel Are Entitled to an Award of Attorneys' Fees Under the
        Lodestar Method ......................................................................................16

    B.      The Goldberger Factors Support Counsel's Fee Request ....................20

    C.      The Request for an Award of Litigation Expenses Should Be Granted ...............23

VI.     THE REQUESTED CLASS REPRESENTATIVE PAYMENT SHOULD BE
    GRANTED ................................................................................................................24

VII.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED........................................25

VIII.   CONCLUSION........................................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*Blessing v. Sirius XM Radio Inc.*,
   507 F. App'x 1 (2d Cir. 2012) ........................................................................17, 22

*Campos v. Kijakazi*,
   2023 WL 8096923
   (E.D.N.Y. Nov. 20, 2023) ...................................................................................8

*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534
   (S.D.N.Y. Oct. 16, 2019) ....................................................................................5

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).......................................................................7, 9, 12

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494
   (S.D.N.Y. May 9, 2014)....................................................................................21

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).............................................................................................10

*Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*,
   2024 WL 1004697
   (D.S.C. Mar. 8, 2024) .......................................................................................23

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..............................................6, 17, 19, 24

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496
   (N.D. Cal. July 15, 2022)..................................................................................18

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)....................................................................19, 20, 21

*Gordon v. Vanda Pharms. Inc.*,
   2022 WL 4296092
   (E.D.N.Y. Sept. 15, 2022).................................................................................12

*Gutman v. Klein*,
   2009 WL 3296072
   (E.D.N.Y. Oct. 13, 2009), *aff'd*, 515 F. App'x 8 (2d Cir. 2013) ........................19

*Hart v. BHH, LLC*,
2020 WL 5645984
(S.D.N.Y. Sept. 22, 2020) ...................................................................................17, 22

*Hesse v. Godiva Chocolatier*,
2022 U.S. Dist. LEXIS 7264
(S.D.N.Y. Apr. 20, 2022) ...........................................................................................12

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909
(E.D.N.Y. Jan. 4, 2024) ...............................................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354
(E.D.N.Y. June 24, 2010) ...........................................................................................18

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ...............................................................................24

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
2015 WL 6971424
(S.D.N.Y. Nov. 9, 2015) ............................................................................................20

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
2024 WL 308242
(E.D.N.Y. Jan. 26, 2024) ............................................................................................18

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020).........................................................................13

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).......................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2019 WL 6875472
(E.D.N.Y. Dec. 16, 2019) .......................................................................................6, 7

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468
(S.D.N.Y. July 21, 2020) ........................................................................................8, 9

*In re Tenaris S.A. Sec. Litig.*,
2024 WL 1719632
(E.D.N.Y. Apr. 22, 2024).............................................................................................9

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808
(S.D.N.Y. Nov. 7, 2007) .............................................................................................19

*Kurtz v. Kimberly-Clark Corp.*,
   2024 WL 184375
   (E.D.N.Y. Jan. 17, 2024) ................................................................................ *passim*

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ................................................................................ 19

*Luca v. Cnty. of Nassau*,
   698 F. Supp. 2d 296 (E.D.N.Y. 2010) ................................................................ 19

*McLaughlin v. IDT Energy*,
   2018 WL 3642627
   (E.D.N.Y. July 30, 2018) ..................................................................................... 17

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................. 19

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ............................................................................. 7, 11

*Pearlman v. Cablevision Sys. Corp.*,
   2019 WL 3974358
   (E.D.N.Y. Aug. 20, 2019) ................................................................................ *passim*

*Reyes v. Summit Health Mgmt., LLC*,
   2024 WL 472841
   (S.D.N.Y. Feb. 6, 2024) .......................................................................................... 8

*Rosenfeld v. Lenich*,
   2022 WL 2093028
   (E.D.N.Y. Jan. 19, 2022) ...................................................................................... 18

*Simerlein v. Toyota Motor Corp.*,
   2019 WL 2417404
   (D. Conn. June 10, 2019) ..................................................................................... 24

*Simmons v. New York City Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009) ................................................................................ 18

*Stinson v. City of New York*,
   256 F. Supp. 3d 283 (S.D.N.Y. 2017) ................................................................. 13

*Velez v. Novartis Pharms. Corp.*,
   2010 WL 4877852
   (S.D.N.Y. Nov. 30, 2010) ..................................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .............................................................................. 4, 18

*Zink v. First Niagara Bank, N.A.*,
  2016 WL 7473278
  (W.D.N.Y. Dec. 29, 2016) ...................................................................................................23

**STATUES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ...........................................................................................................................4
  Rule 23(b)(2) ................................................................................................................23
  Rule 23(c)(2)(B) ........................................................................................................4, 6
  Rule 23(c)(3) ..................................................................................................................6
  Rule 23(e)(1)(B) ............................................................................................................4
  Rule 23(e)(1)(B)(ii) .....................................................................................................25
  Rule 23(e)(2) ...............................................................................................6, 7, 11, 12
  Rule 23(e)(2)(A) ............................................................................................................8
  Rule 23(e)(2)(A)-(B) .....................................................................................................9
  Rule 23(e)(2)(C) ............................................................................................................9
  Rule 23(e)(2)(C)–(D) .....................................................................................................7
  Rule 23(e)(2)(C)(iv) ....................................................................................................11
  Rule 23(e)(2)(C)-(D) .....................................................................................................9
  Rule 23(e)(2)(D) ..........................................................................................................11
  Rule 23(e)(3) ...........................................................................................................6, 11
  Rule 23(f) ........................................................................................................................2
  Rule 23(h) .....................................................................................................................16

**SECONDARY AUTHORITIES**

*1 Newberg & Rubenstein On Class Actions* (6th ed. June 2022 update)
  §1.8 ...............................................................................................................................23

*5 Newberg & Rubenstein On Class Actions* (5th ed.)
  §16:5 .............................................................................................................................23

Representative plaintiff Dr. D. Joseph Kurtz ("Dr. Kurtz" or "Plaintiff"), on behalf of himself and all Settlement Class Members, respectfully submits this memorandum of law in support of his motion for: (1) final approval of a proposed class action settlement (the "Settlement") with defendant Costco Wholesale Corporation ("Costco" or "Defendant"), as set forth in the Settlement Agreement; (2) an award of attorneys' fees and litigation expenses; and (3) Class Representative Payment.[1]

## I.      INTRODUCTION

The Settlement – achieved after nearly eight-and-a-half years of intense litigation, along with lengthy negotiations assisted by Michael Ungar, Esq., an accomplished mediator with significant consumer and flushable wipes-related settlement experience – provides relief in the form of *automatic* cash payments of between $7.50 and $55.90 to the majority of Settlement Class Members *without* the need to submit a claim form and *without* the need to submit proofs of purchase.[2]  In other words, each Settlement Class Member will receive no less than $7.50 regardless of how many packages of the Product were purchased – which is significant given that roughly half of the Settlement Class purchased only a single package of the Product during the Class Period and will therefore receive a payment over *five times* the price premium associated with the "flushable" representation calculated by Plaintiff's expert (8.56%, or $1.28 for a $14.99 package of the Product).

Because Costco maintains contact information for its customers, the overwhelming majority of Settlement Class Members received notice of the Settlement via email and/or U.S. mail.  Given this direct notice mechanism, coupled with the automatic payments for current Costco members, counsel expect that over 60% of the Settlement Class will receive settlement benefits, an extremely high distribution rate for a consumer class action settlement.  Indeed, even with a notice campaign

---

[1]  All capitalized terms not otherwise defined herein have the same meanings as in the Settlement Agreement and General Release, filed April 27, 2023, ECF No. 469-1 ("Settlement Agreement"), and in Plaintiff's Memorandum of Law in Support of Preliminary Approval of Class Action Settlement, ECF No. 468 ("Preliminary Approval Motion"). Internal quotations and citations are omitted unless otherwise indicated.

[2]  Former Costco members – representing approximately 36% of the Settlement Class – are required to submit an online or paper Claim Form to verify certain information, including addresses to which Settlement checks will be mailed.

reaching roughly 95% of Settlement Class Members directly, to date not a *single* one of them has filed an objection to *any* aspect of the Settlement.  In fact, several major news organizations have further publicized the Settlement, providing direct links to the Settlement website, including *USA Today* and *Fox Business*.[3]  The absence of objections is thus particularly noteworthy here given the direct Notice Plan and highly publicized nature of the Settlement.

While an onslaught of flushable wipes lawsuits followed, this Action was the first-of-its kind, filed over ten years ago, challenging the practice of manufacturers and/or retailers representing wipes as "flushable" that were far from it according to those closest to the issue – consumers and wastewater utilities literally left cleaning-up the mess.  The Action followed Plaintiff's counsel's ("Class Counsel") extensive pre-suit investigation, *not* a government investigation as is often the case in consumer litigation.  In fact, the Federal Trade Commission ("FTC") announced an enforcement action and Consent Order with Costco's supplier over fifteen months *after* Plaintiff filed this Action, following extensive media coverage of *Plaintiff's* case.[4]  While Plaintiff achieved significant success throughout the eight-plus-year prosecution of the Action, including defeating motions to dismiss, obtaining class certification in the District Court *twice*, including after remand from the Second Circuit following a four-day witness-packed evidentiary hearing, fending off Costco's Rule 23(f) appeal, and deterring Defendants from filing post-appeal summary judgment motions before the completion of further discovery, the risks of continuing the litigation through trial were real absent the Settlement.  Indeed, Judge Weinstein verbalized these risks several times, and at

---

[3]  *E.g.*, Pilar Arias, *Costco flushable wipes settlement has wholesale giant agree to $2M payout*, FOX BUSINESS (July 2, 2024), https://www.foxbusiness.com/retail/costco-flushable-wipes-settlement-wholesale-giant-2m-payout; Sara Chernikoff, *Costco to pay $2M in class action settlement over flushable wipes: Here's what to know*, USA TODAY (July 5, 2024), https://www.usatoday.com/story/money/2024/07/05/costco-class-action-lawsuit-settlement-wipes/74307671007/.

[4]  *Compare Flushability of Wipes Spawns Class-Action Lawsuit*, ABC NEWS (Mar. 4, 2014), https://abcnews.go.com/Business/flushability-flushable-wipes-spawns-class-action-lawsuit/story?id=22759642, *with* Federal Trade Commission, *Wet Wipe Manufacturer Agrees To Substantiate "Flushability" Advertising Claims under Settlement with FTC* (May 18, 2015), available at: https://www.ftc.gov/news-events/news/press-releases/2015/05/wet-wipe-manufacturer-agrees-substantiate-flushability-advertising-claims-under-settlement-ftc.

one point even indicated he would ***deny*** class certification altogether.

That didn't happen. Rather, Plaintiff and Class counsel's dedication and effort secured economic relief for all New York purchasers of Costco's Kirkland Signature Moist Flushable Wipes during the Settlement Class Period. The Settlement here will resolve ***all*** of Plaintiff's claims, and follows Plaintiff's settlement with defendant Kimberly-Clark Corp. ("Kimberly-Clark," and the "Kimberly-Clark Settlement") in this Action, and a related settlement with Procter & Gamble & Co. ("P&G") in the *Belfiore* flushable wipes action,[5] both approved by this Court. This Settlement, however, provides additional unique features, including automatic payments to the majority of Settlement Class members, a ***guaranteed*** minimum payment of at least $7.50, and recovery of the maximum payment – here, $55.90 – without having to provide proof of purchase. And the recovery in this Settlement far exceeds recoveries in other flushable wipes settlements. For example, the ***minimum*** payout here is ***1,400%*** more than the minimum payout ($0.50) and ***200%*** more than the maximum payout without proof of purchase ($2.50) in the recent Dude Products settlement,[6] and ***1,150%*** more than the minimum payout ($0.60) and ***91%*** more than the average payout ($3.92) in the 49-state P&G flushable wipes settlement.[7] By all measures, the results achieved here are exceptional as compared to comparable flushable wipes settlements.

Class Counsel also request that the Court approve a fee and expense award (including court costs) not to exceed $3,000,000, Settlement Agreement ¶6.1, consisting of attorneys' fees of $2,849.015.75, and the payment of litigation expenses and charges of $150,984.25, as compensation for their efforts, along with a Class Representative Payment of up to $10,000 for Dr. Kurtz as compensation for his time and effort undertaken in the Action as to Costco, *id.* ¶6.2. Fee awards are

---

[5] *Belfiore v. The Procter & Gamble Co.*, No. 2:14-cv-04090-PKC-RML (E.D.N.Y.) ("*Belfiore*").

[6] *See* Ex. A, *Darnall* Settlement ¶2.3(a). All references to "Ex.___" are to the Serra Declaration (defined below), unless otherwise noted.

[7] *See* Ex. B, *Pettit* Post-Distribution Decl. ¶10.

designed to encourage counsel to achieve the best result for the class.  Given the significant result obtained and the obstacles Class Counsel faced over years of litigation, the amount requested is warranted.  The requested fee results in a negative multiplier of 0.83 – a discount to counsel's lodestar based on *historical* rates – is less than or similar to awards in other flushable wipes actions, and will likely be paid over the course of three years.  Likewise, the requested Class Representative Payment is in line with payments in similar consumer actions in this jurisdiction and is justified given Plaintiff's lengthy participation in the Action on behalf of the Settlement Class.

Thus, Plaintiff requests that the Court enter an order granting final approval of the Settlement and awarding the requested attorneys' fees and expenses and Class Representative Payment.

## II.   BACKGROUND OF THE LITIGATION AND SETTLEMENT

To avoid repetition, Plaintiff refers the Court to the accompanying Declaration of Vincent M. Serra in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, an Award of Attorneys' Fees and Expenses and Class Representative Payment ("Serra Decl." or "Serra Declaration"), for a detailed discussion of the Action, the efforts undertaken by Plaintiff and Class Counsel in litigating the Action, the Settlement negotiations, and the risks of continued litigation.

## III.   THE NOTICE PLAN HAS SATISFIED RULE 23 AND DUE PROCESS

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3), the Settling Parties were required to provide notice to Settlement Class Members under Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(c)(2)(B); *see also* Rule 23(e)(1)(B) (notice of a settlement must be directed "in a reasonable manner to all class members who would be bound"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005) ("The standard for the adequacy of a settlement notice . . . is measured by reasonableness.").  The notice employed here easily satisfied that standard.  Because Costco maintains records and addresses (both email

- 4 -

and/or physical) of past and present customers, the Settling Parties were able to directly notify the vast majority of Settlement Class Members of the Settlement – making notice in this Action far more successful than the "constructive" notice employed in typical cases. *See* Ex. C, Gilardi Decl. ¶¶2-3.

Notice went out to the Settlement Class's 131,039 members via email and/or postcard on June 10, 2024. *Id*. ¶4.[8] 83,224 Class Members were determined to be current Costco members, *id.* ¶3,[9] which means they are eligible to receive payment automatically unless they opt out. The Claims Administrator also established a Settlement Website — https://www.costcoflushablewipessettlement.com/ — as well as a toll free information line accessible 24 hours a day, per the Court's Preliminary Approval Order. *Id*. ¶¶7-8. The Settlement Website contains the Long Form Notice, the Summary Notice, answers to frequently asked questions, contact information for the Claims Administrator and Class Counsel, the Settlement Agreement, the signed order of Preliminary Approval, a downloadable and online version of the Claim Form, a downloadable and online version of the form by which Settlement Class Members may opt out of the Settlement Class, and other settlement-related materials filed by the Settling Parties or the Court. *See, e.g.*, *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *6-*7 (S.D.N.Y. Oct. 16, 2019) (approving settlement where similar notice plan was employed).

The Notice apprises Settlement Class Members of their rights to: (i) submit a claim (for non-current Costco members); (ii) opt out; or (iii) object to and/or comment upon the Settlement and/or proposed attorneys' fees and expenses. Ex. C, Gilardi Decl. at Exs. A-B. It also informs them that they have until August 9, 2024 to exercise those rights. *Id*. Additionally, the Notice includes, *inter*

[8] At the time Plaintiff filed his Preliminary Approval Motion, Costco had estimated the Settlement Class size as approximately 161,000 members. Thereafter, Costco refined the list by de-duplicating multiple purchasers within the same household and eliminating Costco employees, who were excluded from the class, and consumers who already returned the product for a full refund. The Claims Administrator then further refined the list to arrive at a total of 131,039 potential Settlement Class Members. Ex. C, Gilardi Decl. ¶3.
[9] For purposes of the Settlement, "current" Costco membership is determined by membership as of June 10, 2024. https://costcoflushablewipessettlement.com/faqs.aspx.

- 5 -

*alia*: (i) a statement indicating the attorneys' fees and expenses that will be sought; (ii) the Settlement Class definition; (iii) the time and place of the Fairness Hearing (August 30, 2024); and (iv) further explanation of the Settlement and its benefits. *Id.*[10] Therefore, the Notice's content and distribution fairly apprised prospective members of the class of the terms of the proposed settlement and of the options that are open to them. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 236-37, 248-49 (E.D.N.Y. 2010) (finding method of providing notice to a class consisting of Costco members, including by regular mail and email, reasonable).

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Approval of a settlement proposal is governed by Rule 23(e)(2), which requires a court to determine that the proposal is "fair, reasonable, and adequate after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

   (i)    the costs, risks, and delay of trial and appeal;

   (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other."

Rule 23(e)(2). Subsections (A)-(B) focus on the settlement's "procedural" fairness, whereas subsections (C)-(D) concern the settlement's "substantive" fairness. Advisory Committee Notes to 2018 Amendment to Rule 23(e)(2); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *13 (E.D.N.Y. Dec. 16, 2019).

---

[10] Pursuant to Rule 23(c)(2)(B), a notice must concisely and clearly state in plain, easily understood language the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3). The Class Notice contains all this information.

"[I]n evaluating the substantive fairness of a proposed settlement, a court must expressly consider the 'two core factors' under Rule 23(e)(2)(C)–(D): 'the adequacy of relief provided to a class' and 'the equitable treatment of class members.'"  *Kurtz v. Kimberly-Clark Corp.*, 2024 WL 184375, at *3 (E.D.N.Y. Jan. 17, 2024) ("*Kurtz II*") (discussing *Moses v. New York Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023)).  "Importantly, 'the revised Rule 23(e)(2) does not displace' the nine-factor test set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the '*Grinnell* factors')[11] that courts have traditionally applied, 'which remain a useful framework for considering the substantive fairness of a settlement.'"  *Id.* (quoting *Moses*, 79 F.4th at 243).

## A.      The Class Representative and Class Counsel Have Adequately Represented the Class

Plaintiff and Class Counsel vigorously litigated the Action for over eight years.  In that time, counsel have had dozens of appearances before Judges Weinstein and Chen, Magistrate Judge Levy, and the Second Circuit Court of Appeals, including oral arguments, evidentiary hearings, settlement conferences, and status conferences.  Serra Decl. ¶¶17-67.  Counsel have opposed Defendant's motions (*e.g.*, ECF No. 20, motion to dismiss) and litigated Plaintiff's own motions (*e.g.*, ECF No. 81, motion for class certification).  Class Counsel also secured hundreds of thousands of pages of documents produced by Costco and presented and challenged witness testimony over multiple days of hearings.  Serra Decl. ¶¶22-29, 45-52.  As this Court concluded in the related Kimberly-Clark Settlement, "[t]he robust prosecution" of this Action "evidences procedural fairness."  Memorandum & Order, dated June 12, 2023 ("*Kurtz I*"), ECF No. 471 at 22; *see also Kurtz II*, 2024 WL 184375, at *7 n.4 (upholding the Court's prior finding of adequacy).  So too here.

---

[11] Those factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *See Payment Card*, 2019 WL 6875472, at *13-*14 (citing *Grinnell*, 495 F.2d at 463).

The Court also found as to the Kimberly-Clark Settlement that: (i) "Plaintiffs' attorneys are qualified and capable of litigating the matter"; and (ii) there is "no fundamental conflict among the class representatives, class members, or between class members themselves." *Kurtz I*, ECF No. 471 at 9-10; *see also Kurtz II*, 2024 WL 184375, at *7 n.4 (applying the Court's "prior finding of adequacy" to its analysis under Rule 23(e)(2)(A)). These two observations apply with equal force here, further indicating that the Settlement is the result of adequate representation. *See, e.g.*, *Reyes v. Summit Health Mgmt., LLC*, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024) (finding Rule 23(e)(2)(A) satisfied based on these two factors).

## B. The Proposal Was Negotiated at Arm's Length

Plaintiff and Costco engaged in a settlement conference with Magistrate Judge Levy in 2016 and a mediation in 2020. While those negotiations did not result in settlement, the discussions that directly preceded the Settlement began in 2022 with mediator Michael Ungar, Esq. These most recent discussions encompassed not only dozens of telephone calls between counsel and Mr. Ungar, but also two separate all-day settlement sessions in May 2022 and November 2022, and extensive follow-up discussions. *See Campos v. Kijakazi*, 2023 WL 8096923, at *5 (E.D.N.Y. Nov. 20, 2023) (finding "arm's length" requirement satisfied where "negotiations spanned more than a year and a half" including "numerous settlement conferences" and "over a dozen telephone conferences").

Mr. Ungar — a respected neutral who successfully mediated other flushable wipes cases, including *Meta v. Target Corp.*, No. 4:14-cv-00832-DCN (D. Ohio), and three separate settlements in *Commissioners of Public Works of the City of Charleston v. Costco Wholesale Corp., et al.*, No. 2:21-cv-00042-RMG (D.S.C.) — was intimately involved throughout the process and guided the discussions over the course of a year leading up to execution, including extensive post-mediation follow-up, which further underscores the arm's-length nature of the negotiations. *See* Serra Decl. ¶¶64-67; *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020)

(noting that a "mediator's involvement" is indicative of procedural fairness).

In sum, the exhaustive motion practice, fulsome record, and good-faith negotiations in this case "provided Lead Plaintiff and Lead Counsel with the information necessary to achieve a fair, reasonable, and adequate settlement." *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *5 (E.D.N.Y. Apr. 22, 2024) (granting final settlement approval after "extensive briefing, including with respect to Defendants' motions to dismiss and Defendants' motion for reconsideration"; "fifteen (15) months of discovery"; and "two separate attempts to negotiate a settlement").[12]

## C.    The Relief Provided for the Class Is Adequate

Whereas the Rule 23(e)(2)(A)-(B) factors discussed thus far look at procedural fairness, the Rule 23(e)(2)(C)-(D) factors look instead at substantive fairness.   This inquiry "overlaps significantly" with the factors enumerated by the Second Circuit in *Grinnell*.  *Kurtz II*, 2024 WL 184375, at *5-*7; *see also, e.g.*, *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *9 (E.D.N.Y. Jan. 4, 2024) (using the *Grinnell* factors to evaluate adequacy of relief under Rule 23(e)(2)(C)).

### 1.    The Settlement Is Adequate, Taking into Account the Costs, Risks, and Delay of Trial or Appeal

As this Court noted with respect to the Kimberly-Clark Settlement, "this case has already spanned nine years of intensive litigation [and settlement negotiations], with the prospect of litigation of this matter through trial presenting a daunting and long path of extensive and complex motion practice, including challenges to experts, and high fees and costs." *Kurtz I*, ECF No. 471 at 23; *see also Kurtz II*, 2024 WL 184375, at *7 ("affirm[ing] its prior finding that these factors weigh in favor of final approval").

For instance, absent settlement, Costco would refine its vigorous arguments to this Court and on appeal that Dr. Kurtz failed to establish injury and causation with common proof at the class

---

[12] Courts take into account the opinion of counsel, "who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Counsel's recommendation is "entitled to 'great weight.'" *Signet Jewelers*, 2020 WL 4196468, at *4.

certification stage, and relatedly that the hedonic regression analysis set forth by Plaintiff's expert, Colin B. Weir, failed to comply with *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Serra Decl. ¶¶43, 49-56. While the Court ultimately accepted Mr. Weir's analysis in the context of class certification, there is no guarantee that the Court or a jury would reach a similar conclusion at summary judgment or trial on the related issue of whether Plaintiff can prove that Costco charged a premium for the "flushable" claim on its wipes, or that any such premium caused Plaintiff's damages. *See, e.g.*, *Kurtz v. Kimberly-Clark Corp., et al.*, No. 17-1856 (2d Cir. June 26, 2020), ECF No. 293-1 at 8-9 (noting that "[a] factfinder may ultimately agree" with Defendants about Mr. Weir's analysis); *see also Kurtz I*, ECF No. 471 at 25 (noting uncertainties around "price-premium, causation, and injury" as well as "[c]omplex *Erie* problems"); Serra Decl. ¶¶57, 60, 89-95.

Additionally, while Costco argued repeatedly that the mootness doctrine barred Plaintiff's injunctive relief claims due to the FTC Consent Order with Nice-Pak (which supplies wipes to Costco), Plaintiff believes Costco would similarly argue that the primary jurisdiction doctrine ***permits*** Nice-Pak to continue advertising and selling its post-May 2014 wipes as "flushable," and that Plaintiff's damages are limited to purchases before May 30, 2014. Serra Decl. ¶¶92-94. Relatedly, Costco has also argued, and would almost certainly continue to argue, that its wipes were in fact flushable under the more general FTC flushability standard. *Id.* ¶¶37-41. These arguments, if successful, could dramatically reduce the class size and amount of recoverable damages.

Even if successful, continued litigation would result in additional expense, including costly "motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Kurtz I*, ECF No. 471 at 23. The Action has already generated a massive body of evidence, including over half a million pages of documents, depositions, expert reports, and evidentiary hearings. Serra Decl. ¶¶22-29, 45-52, 63. "A settlement, by contrast, provides relief

without the delay, risk, and uncertainty of trial and continued litigation." *Kurtz I*, ECF No. 471 at 23.

### 2.   The Proposed Method of Distributing Relief Is Effective

As mentioned above, the Settlement Agreement provides for automatic payments to current Costco members.  This means approximately 64% of the Settlement Class are eligible to receive payment ***without even submitting a claim***.  Those who are no longer Costco members are entitled to the same relief as current Costco members but are required to submit a claim online or through the mail to verify certain information, including their addresses so that the Claims Administrator can ensure that Settlement payments will be mailed to the appropriate residence.  The Claim Form can be completed in a few minutes, ***and does not require proof of purchase to receive up to the maximum payment under the Settlement***.  Moreover, the vast majority of Settlement Class Members (approximately 95%) have been apprised of their rights via direct notice, and all who participate will receive payments from the Claims Administrator via check.

### 3.   The Proposed Attorneys' Fees Are Reasonable

Attorneys' fees are addressed below, *infra* §V.[13]

### D.   The Proposal Treats Class Members Equitably

The final factor to be considered under Rule 23(e)(2) is whether the proposed settlement "treats class members equitably relative to each other."  Rule 23(e)(2)(D).  "In evaluating this factor, courts may weigh 'whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'"  *Kurtz II*, 2024 WL 184375, at *8 (quoting *Moses*, 79 F.4th at 245).  Here, all Class Members are entitled to a minimum payment of $7.50, and up to $55.90, depending on the number of packages they bought.  "Thus, the Settlement Agreement applies to all Class Members equally as 'they are each entitled to receive the same

---

[13] Rule 23(e)(2)(C)(iv), which requires consideration of "any agreement required to be identified under Rule 23(e)(3)," has no bearing here, as there are no other agreements pertaining to the Settlement that are required to be identified.

payment based on the number of [Defendant's product packages] they purchased[.]'" *Id.* (quoting *Hesse v. Godiva Chocolatier*, 2022 U.S. Dist. LEXIS 7264, at \*28 (S.D.N.Y. Apr. 20, 2022)) (alteration in original).   Additionally, the Settlement Agreement subjects all Settlement Class Members to the same release condition.  *See* Settlement Agreement ¶¶7.1-7.2.[14]

E.      **The *Grinnell* Factors Are Also Met**

In addition to the factors enumerated in Rule 23(e)(2), courts in the Second Circuit continue to be guided by the traditional *Grinnell* factors.  *See Kurtz II*, 2024 WL 184375, at \*6, \*10.  Because of the "considerable overlap" between the *Grinnell* factors and the Rule 23(e)(2) factors, courts often "limit[ their] analysis to areas where the *Grinnell* factors provide additional guidance."  *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at \*5 (E.D.N.Y. Sept. 15, 2022).  As discussed below, the Settlement also satisfies the unique factors not discussed above.

**The Reaction of the Settlement Class to the Settlement.**  "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Kurtz I*, ECF No. 471 at 23.  The class's reaction is measured by "the absence of significant exclusions or objections" rather than by "response rates."  *Id.* at 24.  That is, "the fact that a relatively small number of class members submitted claims is not decisive"; what matters is that "the majority of class members have not objected to or opted out of a settlement."  *Id.* at 23-24.

Here, the Settlement Class comprises 131,049 current and former Costco members.  To date, there have been 71 requests for exclusion and ***no*** objections to the Settlement.[15]  Ex. C, Gilardi Decl. ¶¶9, 12-13.  Considering that the notice employed in this Action was designed to reach the

---

[14]  While Dr. Kurtz also seeks a payment of up to $10,000 as compensation for his time and effort undertaken in the Action as to Costco, *supra* at 3-4, the Court has already found, with respect to the Kimberly-Clark Settlement, "[t]he length and intensity of this lawsuit logically necessitated more extensive services and work by the named Plaintiff[], and such contributions to the litigation justify additional compensation."  *Kurtz II*, 2024 WL 184375, at \*9.

[15]  There have been a high number of claims from unknown claimants that coincided with significant media exposure regarding the Settlement, *supra* n.3, including a suspected high number of potentially fraudulent and bot-generated claims, which will likely be significantly reduced to some percentage of the 47,825 known former Costco members through the fraud detection and validation process.  Ex. C, Gilardi Decl. ¶¶9-11.

overwhelming majority Settlement Class Members directly (through email or U.S. mail), *see supra* §III, the absence of a ***single*** objection is highly noteworthy and weighs strongly in favor of the Settlement.  *See, e.g.*, *Kurtz I*, ECF No. 471 at 24 (granting final approval where "only 16 class members ha[d] sought exclusion" and "only one objection ha[d] been lodged"); *Stinson v. City of New York*, 256 F. Supp. 3d 283, 288, 293 (S.D.N.Y. 2017) (five objections and 30 opt-outs, "in the context of the hundreds of thousands of Notices already delivered, is itself a positive indication of general approval").

**The Ability of Defendants to Withstand a Greater Judgment**.  "This factor is typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement.  When that situation is not present, courts generally do not give much consideration to this factor[.]"  *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020); *accord Kurtz I*, ECF No. 471 at 26.  Because this Settlement provides exceptional relief, *see infra*, Costco's ability to withstand greater judgment does not count against approval.  In any event, potential exposure of up to $2 million (apart from attorneys' fees) is not an insignificant sum even for a company the size of Costco, and particularly for Nice-Pak, a private company and "fourth-generation business" with 1,500 employees[16] that is indemnifying Costco in this Action and whose insurers rejected a demand for contribution for the agreed-to attorneys' fees and costs (*see* ECF No. 465).

**The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**.  The relief provided by the Settlement is excellent considering the potential recovery at trial and prior relief obtained in similar "flushable" wipes-related class actions. The Settlement provides significant monetary relief to Settlement Class Members ***in addition to***

---

[16]  https://www.nicepak.com/inside-nice-pak (last visited July 25, 2024).

payment of attorneys' fees and expenses, settlement administration costs and awards to Plaintiff. Settlement Agreement ¶2.6 ("The $2 million cap is separate and apart from, and shall not be affected in any way by, the amount ultimately paid by Costco and Nice-Pak for any award of attorneys' fees and expenses, and any Class Representative Payment.").  Each Settlement Class Member will receive a minimum of $7.50 regardless of the number of packages purchased by that Settlement Class Member, and a maximum recovery of $55.90 (for 43 packages).  Current Costco members — approximately 64% of the Class — are eligible to receive those payments ***automatically***.  Settlement Agreement ¶¶2.2-2.6.   Moreover, Settlement Class Members will be eligible to receive their settlement sums, including up to the maximum payment, ***regardless of whether their claims are corroborated by proofs of purchase***.  *Id*. ¶2.5.

This Settlement is thus markedly more favorable to Settlement Class Members than were other analogous flushable wipes settlements, including the settlements with P&G in the *Belfiore* and *Pettit* Actions and with Dude Products in the *Darnall* Action, in at least five ways.  *First*, none of those settlements provided for automatic payments; ***only*** class members who submitted claims were eligible to receive payment.  *See Pettit*, ECF No. 117-4 ¶4.1 [17]; *Belfiore*, ECF No. 351-3 ¶4.1; Ex. A, *Darnall* Settlement ¶¶2.3(a), 5.1(d).  *Second*, those settlements required proof of purchase to receive full recovery; class members without proof of purchase could not receive the maximum payment even if they purchased the maximum amount of product packages.  *See Pettit*, ECF No. 117-4 ¶4.4; *Belfiore*, ECF No. 351-3 ¶4.4; Ex. A, *Darnall* Settlement ¶2.3(a).  *Third*, the P&G and Dude Products settlements did not provide for a minimum guaranteed payment (here, $7.50) significantly greater than the price premium associated with a single package of wipes; a class member who certified that they bought only one or two packages would receive a refund for only one or two

---

[17] *Pettit v. The Procter & Gamble Co.*, No. 3:15-cv-02150-RS (N.D. Cal.) ("*Pettit*").

packages in those settlements.  *See Pettit*, ECF No. 117-4 ¶4.4; Ex. A, *Darnall* Settlement ¶2.3(a). *Fourth*, the **minimum** guaranteed payment in the Settlement is 200%, 78%, and 19% greater than the **maximum** payment without proof of purchase in the *Darnall*, *Pettit*, and *Belifore* Actions, respectively.  *See* Ex. A, *Darnall* Settlement ¶2.3(a); *Pettit*, ECF No. 117-4 ¶4.4; *Belfiore*, ECF No. 351-3 ¶4.4.  *Fifth*, the maximum payment here – $55.90 – is greater than in any of these other settlements.  In fact, the maximum payout is over 179% and 86% more than the maximum payouts in the *Darnall* and *Pettit* Actions, respectively ($20.00 and $30.00).  *See* Ex. A, *Darnall* Settlement ¶2.3(a); *Pettit*, ECF No. 117-4 ¶4.4.

The benefits of the Settlement are also highlighted by data and analysis suggesting that the vast majority of eligible Settlement Class Members will receive significantly more relief than they would otherwise be entitled to under a price premium analysis.  Plaintiff's economic expert, Mr. Weir, determined that a Costco wipe labeled as "flushable" carries an 8.56% price premium over a wipe without the flushability claim.  *See* ECF No. 382 at 12.  Furthermore, according to Costco's data, over 75% of Households from July 15, 2011 through May 31, 2019 purchased three or fewer packages of the Product, and over 51% of Households purchased only one package.  *See* ECF No. 380 at 25.  Thus, the $7.50 minimum recovery in the Settlement is far greater than most Settlement Class Members' actual damages under a price premium analysis, and the maximum recovery is greater than the $50 statutory recovery under GBL §349.  *See Kurtz I*, ECF No. 471 at 26-27 (noting that under plaintiffs' best-case scenario, they could "recover statutory damages under New York law, amounting to $50 per class-member").

For all of the foregoing reasons, the Court should find that the Settlement is fair, adequate and reasonable, and in Settlement Class Members' best interests.

## V.   THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

Class Counsel request that the Court approve an award of attorneys' fees and expenses of $3,000,000 – consisting of $2,849,015.75 in attorneys fees' and $150,984.25 in expenses (including Court costs). Fees for counsel's efforts in achieving this Settlement have been contingent since they began the investigation of this litigation over a decade ago. The amount requested is warranted given the results achieved in the face of significant risks in bringing a first-of-its-kind lawsuit challenging the marketing of flushable wipes and in prosecuting the Action for nearly eight-and-a-half years – in the face of a vigorous defense – and negotiating the settlement. The litigation involved extensive fact and expert discovery, exhaustive motion practice, a "battle of the experts" involving multiple rounds of expert and rebuttal reports, a four-day post-remand mini-trial on the predominance element of class certification, a two-day evidentiary "science day" proceeding, and two trips to the Second Circuit Court of Appeals. *See* Serra Decl. ¶¶17-67. The requested fee award represents 83% of Class Counsel's lodestar – *i.e.*, a ***negative*** lodestar multiplier of 0.83 – based on ***historical*** rates, and is expected to be paid by Costco and Nice-Pak in installments over the course of ***three years*** following approval.

## A. Class Counsel Are Entitled to an Award of Attorneys' Fees Under the Lodestar Method

In class actions, courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Rule 23(h). Like here, "where the parties agree to a fee that is to be paid separately by the Defendants rather than one that comes from, and therefore reduces, the Settlement Fund available to the class, the Court's fiduciary role in overseeing the award is greatly reduced because the danger of conflicts of interest between attorneys and class members is diminished." *Kurtz II*, 2024 WL 184375, at *10.[18] Likewise, as is the case here where

---

[18] *See also Pearlman v. Cablevision Sys. Corp.*, 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) ("where the attorneys' fees are to be paid directly by defendant and, thus, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members").

the parties did not negotiate fees until ***after*** reaching agreement on the monetary relief component of the Settlement (Serra Decl. ¶¶66-67), courts credit separately negotiated fee agreements that follow the negotiated class benefits as supportive of reasonableness.  *See Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (affirming reasonableness of $13 million fee award for non-cash settlement where "the fee was negotiated only after settlement terms had been decided and did not [] reduce what the class ultimately received"); *Dupler*, 705 F. Supp. 2d at 243 (finding requested fee award reasonable where fees were not discussed until "after the parties had already agreed upon the benefit to the class" and were not "drawn from a common fund").

In non-common fund settlements, such as this one, courts in this Circuit regularly use the lodestar, as opposed to the common fund, method for calculating attorneys' fees.  *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (explaining that the "wiser course of action" in a claims made settlement is to apply the lodestar rather than common fund method for assessing attorneys' fees).  As this Court determined in connection with the Kimberly-Clark Settlement, the lodestar method is "a more accurate measure of attorneys' fees," where, as here, an award of a percentage of the actual benefit to the Settlement Class "'would not give due credit for [Class Counsel's] efforts or the results achieved.'"  *Kurtz II*, 2024 WL 184375, at *12 (noting that "such a low 'award may disincentivize some plaintiffs' attorneys' in pursuing cases like this one in the future," and thus, "'the percentage of the fund does not appear to be a useful metric' in these circumstances") (quoting *Hart v. BHH, LLC*, 2020 WL 5645984, at *9 (S.D.N.Y. Sept. 22, 2020)).

"Under the lodestar method, the court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate."  *Pearlman*, 2019 WL 3974358, at *3.  "'Courts in their discretion may increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the

- 17 -

attorneys.'"  *Id.* (quoting *Wal-Mart Stores*, 396 F.3d at 121).

Class Counsel's requested fee of $2,849,015.75 is less than their lodestar based on ***historical*** rates applicable to the attorneys and support staff at the time they performed the work.  As of July 12, 2024, Class Counsel have spent 5,264.10 hours working on this litigation with respect to Costco, and their corresponding historical lodestar is $3,431,211.00.  *See* Robbins Geller Decl. ¶4 and Ex. A thereto.[19]  The blended historical rates for partners and associates are $745.55 and $409.71, respectively.  *Id.*  These rates are reasonable in ***this*** District.  *Compare* Ex. H, *Chembio* Fee Exhibit (requesting Robbins Geller partner rates up to $1,375, associate rates up to $425, and paralegal rates up to $395), *with* Ex. I, *Chembio* Final Approval Hr'g Tr., at 9 (granting those fees with a 1.15 multiplier); *compare* Ex. F, *Belfiore* Fee Decl. (showing partner rates up to $990 and associate rates up to $555), *with* Ex. E, *Belfiore* Final Approval Hr'g Tr. at 14 (finding those rates reflective of "market value"); *see also Rosenfeld v. Lenich*, 2022 WL 2093028, at *4 (E.D.N.Y. Jan. 19, 2022) (approving hourly rates up to $900 per hour in privacy class action settlement and noting that lodestar calculation based on such rates was "well within the range of reasonableness").[20]

---

[19]  Plaintiff and his counsel litigated this Action efficiently since its inception.  *See, e.g.*, Ex. G, *Kimberly-Clark* Final Approval Hr'g Tr., at 26-27 ("**Mr. Rudman's firm has litigated this case, from Kimberly-Clark's perspective, *efficiently and professionally*.** I've never come to this courtroom seeing it packed with people I've never heard of, which I wish that had been my case in other consumer class-action litigations . . . generally I saw Mr. Reich and Mr. Serra when Mr. Serra was still an associate, and that is over the course of, essentially, two trials . . . I can speak to counsel's professional conduct, and it was -- as I said, I wish everyone held themselves out in these cases the same way."); *cf.* Ex. F, *Belfiore* Fee Decl. ¶31 (noting 7,596 hours of attorney time in consumer flushable action pending six years).

[20]  *See also In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *14-*16, n.13 (E.D.N.Y. Jan. 26, 2024) (approving attorneys' fees reflecting 3.5 multiplier of "reduced hourly rates," including $900 for partners); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (finding lodestar cross-check "confirms the reasonableness of Lead Counsel's [fee] request" and noting – ***fourteen years ago*** – that rates for plaintiffs' attorney time of up to $880 per hour in class action litigation "are not extraordinary for top New York law firms").  Courts in the Southern District of New York have also determined Class Counsel's current rates to be reasonable.  *See* Ex. J, *Oatly* Final Approval Hr'g Tr. at 17:1-19:19 (noting that "the rates that are charged by Robbins Geller," including partner rates of $1,200 and $1,400, "are more in line with the rates that one should expect with someone looking to get fees from the Court . . ."); Ex. K, *Deutsche Bank* Final Approval Hr'g Tr. at 25:12-16 ("I find that these billable rates [for Robbins Geller] based on the timekeeper's title, specific years of experience, and market rates for similar professionals in their fields . . . to be reasonable in this context."); *see also Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving Robbins Geller rates and awarding fee request representing 2.6 multiplier).  While under the forum rule "courts 'should generally use 'the hourly rates employed in the district in which the reviewing court sits'" in calculating the presumptively reasonable fee,'" *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir.

Moreover, the requested fee is over 32% less than the market value of Class Counsel's time based on current rates (Robbins Geller Decl., Ex. B), which courts in this District often use to determine fees. [21]  And even adopting the rates previously referenced by the Court in *Kurtz II*, 2024 WL 184375, at *7, the requested fee represents a negligible lodestar multiplier of 1.01 (Robbins Geller Decl., Ex. C), well within the range of reasonableness in the Second Circuit.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623-24 (S.D.N.Y. 2012) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *Dupler*, 705 F. Supp. at 245 (finding 3.3 multiplier of lodestar reasonable, "particularly in light of the fact that class counsel's fee does not come out of a common fund"); *Pearlman*, 2019 WL 3974358, at *6 (awarding multiplier in action where "fee award [] is completely separate from the benefits awarded to the class").  The requested fee award is reasonable, unopposed, and should be approved by the Court.

---

2009), strict application of the rule to the "uniquely permeable" border between the Eastern and Southern Districts of New York has been heavily criticized in this District.  *See Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 300 (E.D.N.Y. 2010) (noting the rule's "unreasonable disincentive for Manhattan-based attorneys to bring suits in Brooklyn, as well as 'an incentive for lawyers based in the Eastern District not to take cases in their own backyard because higher rates for the same work lie just across the East River.'"); *see also Gutman v. Klein*, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009), *aff'd*, 515 F. App'x 8 (2d Cir. 2013) ("[o]f lawyers that currently appear before this Court, 307 of the lawyers have offices in the Eastern District, while 727 of the lawyers have offices in the Southern District.  This raises the question of exactly what is the bar that practices in this district.  Indeed, much less travel time is chargeable to clients coming from Manhattan to this Court than from Riverhead, which is within this district.  Moreover, the two district courts have recognized the significant overlap between attorneys practicing in the Southern and Eastern Districts by adopting a single set of Local Rules for both districts.  Even Congress has recognized the overlap by allowing an exception from the normal district-only residence requirement for U.S. Attorneys and federal judges . . . .").  Class Counsel's **current** rates are also in line with what Morrison Foerster, defense counsel throughout most of this Litigation, charged in **2019**, a half-decade ago.  *See* Ex. L, Morrison & Foerster S.D. Texas Fee Application at 61-67, 77 (partner rates as high as $1,500 per hour and associate rates as high as $895 per hour).

[21] Many courts in this Circuit have endorsed the use of current rates to calculate the lodestar.  *See, e.g.*, *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at *23 (S.D.N.Y. Nov. 30, 2010) (quoting *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *9 (S.D.N.Y. Nov. 7, 2007)) ("The use of current rates to calculate the lodestar figure has been **repeatedly** endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation"); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) (noting that "market rates, where available, are the ideal proxy" for an attorney's compensation); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (noting current rates should be applied to compensate for delay in payment).  Settlement Class Counsel rely here on relatively conservative historical rates, but note that application of current rates is instructive.  *See* Declaration of Vincent M. Serra filed on behalf of Robbins Geller Rudman & Dowd LLP in support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), filed herewith.  This Court has also recently approved a requested fee award, at a discount to counsel's lodestar (like here), calculated based on current rates.  *Compare* Ex. E, *Belfiore* Final Approval Hr'g Tr. at 14 (finding requested attorneys' fees reasonable under lodestar method), *with* Ex. F, *Belfiore* Fee Decl. ¶28 (providing lodestar request based on **current** rates).

### B.     The Goldberger Factors Support Counsel's Fee Request

Regardless of which method of assessing fees is used, "[t]he final step in this analysis is to determine whether the fee award calculated above is reasonable under the *Goldberger* factors." *Kurtz II*, 2024 WL 184375, at *16.  Those factors include: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'"  *Goldberger*, 209 F.3d at 50.  Each confirms the requested fee is reasonable.

**Class Counsel's Investment of Time Favors the Request.**  As noted above, Class Counsel have devoted 5,264.10 hours prosecuting the Action (Robbins Geller Decl. ¶4 and Ex. A thereto) and the requested fee is ***less*** than the historical market value of their time.  The work performed by counsel in this case is described above and in the accompanying Serra Declaration.  This investment of time spanned ***ten years***, including over eight years of vigorous litigation through various procedural phases.  Serra Decl. ¶¶6-26.  This enormous amount of time was necessary due to the size and complexity of the Action and the many motions and appeals involved, justifying the requested fee award.  Class Counsel will continue to devote many hours to administering the Settlement but do not seek fees for any additional hours.  *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (considering counsel's future efforts to oversee the claims process in awarding fee).

**The Magnitude and Complexity of the Case Favors the Request.**  In cases that require more expertise, a larger award is warranted to the lawyers who can competently bring and prosecute the case.  *Goldberger*, 209 F.3d at 55.  The Action was of considerable magnitude and complexity.  *See generally* Serra Decl.; *see also Kurtz II*, 2024 WL 184375, at *17 (finding that the magnitude and complexity of the Action with respect to Kimberly-Clark favored the fee award).  It involved the production of hundreds of thousands of pages of documents, third party subpoenas, numerous

depositions, litigation of class certification, two appeal to the Second Circuit, numerous oral arguments, and a half-dozen days of evidentiary and scientific hearings with testimony of several expert and fact witnesses, among other complicating factors.  *See* Serra Decl. ¶¶17-67.

**The Litigation Risks Favor the Request.**  "The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award."  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*14 (S.D.N.Y. May 9, 2014).  The "litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 54-45 (the risk of the litigation is "perhaps the foremost factor to be considered in determining whether to award an enhancement").  Indeed, while many "flushable" wipes-related cases followed, the *Kurtz* Action was the first of its kind, and thus carried considerable risk.  Class Counsel faced significant risks in proving liability, class-wide impact and damages, and actually litigated each of these issues, none of which had a guaranteed outcome.  *See supra* §IV.C.1; *see also* Serra Decl. ¶¶19-21 (motion to dismiss); ¶¶28-41 (class certification); ¶¶42-44 (appeal); ¶¶45-53 (remand); 54-59 (second appeal); *Kurtz II*, 2024 WL 184375, at \*17 ("In light of Class Counsel's 'willingness to endure for many years the risk that their extraordinary efforts would go uncompensated,' the third *Goldberger* factor supports the fee award determined by the Court.").

**The Quality of Representation Favors the Request.**  "[T]he quality of representation is best measured by results."  *Goldberger*, 209 F.3d at 55.  The exceptional results here reflect the quality of the lawyering, and both the Plaintiff and the Settlement Class have indicated their agreement.  *E.g.*, Ex. D, Kurtz Decl. ¶4 ("I consider the Settlement to be a very good result for the Settlement Class that would not have been possible without Settlement Class Counsel's diligent efforts."); Serra Decl. ¶¶75-78 (discussing lack of objections to the fee and expense application); Ex. C, Gilardi Decl. ¶¶12-13 (same).  The relief achieved here – including cash payments equaling

- 21 -

several times the price premium for the majority of Settlement Class Members, automatic payments to current Costco members, and the ability to receive up to the maximum payment ($55.90) without proof of purchase – is extraordinary, particularly when viewed in the context of other comparable flushable wipes settlements (*supra* at 13-15), warranting a commensurate fee.

**The Fee Is Reasonable in Relation to the Settlement.**  The Settlement is an excellent result for the Settlement Class.  The majority of Settlement Class Members will receive cash payments for their purchases.  While the requested fee is more than funds made available to Settlement Class Members ($2 million, including claims administration expenses), and the ultimate payout to Settlement Class Members will be less than the funds made available, the requested fee award is consistent with awards by this Court and others in similar consumer litigation resulting in non-common fund settlements.  *See, e.g.*, Ex. M, *Belfiore* Final Approval Order ¶18 (awarding $3.2 million in fees, costs, and expenses in flushable action with $350,000 worth of claims submitted as of the fairness hearing, before validation); *Kurtz II*, 2024 WL 184375, at *18 (awarding over $3.3 million in fees and expenses in this Action); Ex. N, *Darnall* Final Approval Order ¶12 (awarding $3 million in fees, costs, and expenses in flushable action with little litigation history); *Blessing*, 507 F. App'x at 3-4 (holding district court did not abuse its discretion in finding $13 million fee award reasonable in non-monetary settlement despite objectors complaining that "the district court did not thoroughly evaluate the value of the settlement"); *Hart*, 2020 WL 5645984, at *9, *11 (awarding $3.9 million in attorneys' fees, representing a multiplier of 1.5, and 51.75% of the total benefit inured to the class, where the maximum claim without proof of purchase was capped at $15 per unit).

**Public Policy Favors Approval of the Fee.**  Class Counsel's efforts in this and related "flushable" wipes cases have resulted not only in compensatory relief for Settlement Class Members,

but also – despite the Second Circuit reversing certification of Plaintiff's Rule 23(b)(2) injunctive relief claims – the development of an unprecedented, truly "flushable" wipe, now sold by Costco, that is fully supported by the wastewater industry, benefitting both consumers and municipalities alike.[22]   "[T]o encourage [such] positive societal effects, class counsel must be adequately compensated."  *Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, at \*9 (W.D.N.Y. Dec. 29, 2016); *see also* 1 *Newberg & Rubenstein On Class Actions* §1.8 (6th ed. June 2022 update) ("In addition to their compensatory function, class actions deter misconduct by harnessing private attorneys general to assist in the enforcement of important public policies.").

### C.    The Request for an Award of Litigation Expenses Should Be Granted

"Just as attorneys may recover reasonable attorneys' fees in a certified class action, they may also recover 'nontaxable costs.' . . . Costs may include items such as 'photocopying, travel, telephone costs, witness fees, long distance faxes, transcript requests necessary for post-trial motions and costs of necessary depositions.'"  *Pearlman*, 2019 WL 3974358, at \*7 (collecting cases). Compensable expenses broadly include "reasonable expenses normally charged to a fee paying client."  *See generally* 5 *Newberg & Rubenstein on Class Actions* §16:5 (5th ed.) (collecting cases). Through July 12, 2024, Class Counsel have incurred $150,984.25 in litigation expenses and charges with respect to Costco in prosecuting the Action.  Robbins Geller Decl. ¶¶7-8, Ex. D (description of expenses by category), E-H (further break-down and details of expenses).  This amount primarily includes expert fees, on-line research costs, travel expenses, mediator fees and other expenses

---

[22]  *Compare Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 2024 WL 1004697, at \*4 (D.S.C. Mar. 8, 2024) (approving settlements with Costco and others requiring them to meet certain flushability standards, submit to periodic independent testing, and make modifications to the packaging of non-flushable wipes, appointing Robbins Geller as co-class counsel, and noting that the settlement discussions "followed lengthy negotiations with Kimberly-Clark regarding similar injunctive relief that predated the filing of this lawsuit . . . [and] the Parties participated in mediations and drew on their extensive knowledge of the merits of their respective positions and counsel's involvement in several previous flushable wipes-related actions"), *with* ECF No. 450-3, Declaration of Robert A. Villeé ¶¶11-14 (noting that Costco is "now asserting that they are developing or have developed truly flushable wipes" and that "[i]n my opinion, this litigation is also responsible in significant part for pressuring other manufacturers (such as Nice-Pak) to begin improving their flushable wipes."); Serra Decl. ¶¶86-88.

necessary to prosecute the Action.  *Id.*  Such expenses are regularly awarded by courts.  *See Pearlman*, 2019 WL 3974358, at *7 (approving request for expenses of over $264,000 in eight-year litigation).  Notably, the expenses are being paid directly by Defendant, and not coming from the monetary relief obtained for Settlement Class Members.

## VI.   THE REQUESTED CLASS REPRESENTATIVE PAYMENT SHOULD BE GRANTED

Service awards in class actions "compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.  These awards are designed to reimburse representative plaintiffs, who take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action."  *Simerlein v. Toyota Motor Corp.*, 2019 WL 2417404, at *26 (D. Conn. June 10, 2019).  The amount of $10,000 for Dr. Kurtz is well within the "typical" range of awards to plaintiffs.  *See Dupler*, 705 F. Supp. 2d at 245-46 (finding awards of $25,000 and $5,000 reasonable based on the representatives' participation in the action, and "not[ing] with approval that Costco has agreed to pay these incentive awards directly, and therefore the awards will not diminish the recovery of any other class members"); *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (finding that incentive awards of $45,000, $35,000, and lesser amounts were "within the range of what other courts have found to be reasonable, although on the higher end").

Here, Dr. Kurtz aided his counsel in successfully prosecuting this litigation and reaching a settlement, including retrieving responsive documents and information, reviewing and responding to discovery, communicating with counsel, keeping abreast of significant developments in the litigation, attending an important early hearing, and preparing and sitting for a deposition and providing access to two homes for inspection.  Ex. D, Kurtz Decl. ¶3.  Thus, the requested Class

Representative Payment should be approved.

## VII.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The requirement of Rule 23(e)(1)(B)(ii) is easily met here because the Court has already certified a substantially similar class in the Action after years of motion practice and evidentiary hearings, and issued two orders consisting of over 160 pages of legal opinion on class certification issues alone.  *See* Committee Notes, Subdivision (e) ("[The] procedural requirements apply in instances in which the court has not certified a class at the time that a proposed settlement is presented to the court.").  Because of this, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted."  *Id*. at Subdivision (e)(1).

The Settlement Class is similar to the certified class as to Costco – both classes are New York only and do not implicate choice of law issues associated with nationwide settlements.  The only difference is that the "Settlement Class Period" has been extended through May 31, 2017, instead of the Court's prior order that ended the class period on March 1, 2017.  This small extension is reasonable and beneficial to Settlement Class Members.  The Court has already conditionally certified a Settlement Class consisting of "all individuals over the age of 18 who reside in the United States and purchased the Product in the State of New York between July 1, 2011 and May 31, 2017." Preliminary Approval Order, ECF No. 382 ¶3.  Because nothing has changed since the preliminary approval stage which would undermine certification, the Settlement Class should be finally certified.

## VIII.   CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court: (1) certify the Settlement Class for settlement purposes; (2) grant final approval of the proposed Settlement; and (3) approve the request for attorneys' fees and expenses, and the Class Representative Payment.

DATED:  July 26, 2024                     Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          VINCENT M. SERRA
                                          FRANCIS P. KARAM
                                          JOSHUA D. FORGY


                                                    */s/ Vincent M. Serra*
                                          VINCENT M. SERRA

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          vserra@rgrdlaw.com
                                          fkaram@rgrdlaw.com
                                          jforgy@rgrdlaw.com

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          STUART A. DAVIDSON
                                          MARK DEARMAN
                                          Florida Bar No. 0079987
                                          120 East Palmetto Park Road, Suite 500
                                          Boca Raton, FL  33432
                                          Telephone:  561/750-3000
                                          561/750-3364 (fax)
                                          sdavidson@rgrdlaw.com
                                          mdearman@rgrdlaw.com

                                          *Attorneys for Plaintiff*