UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

- against -

KIMBERLY-CLARK CORPORATION, *et al.*,

                Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-1142 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

Lead Plaintiff D. Joseph Kurtz ("Plaintiff"), on behalf of himself and the settlement class, seeks final certification of the Settlement Class; final approval of the settlement agreement (the "Settlement" or "Settlement Agreement"); and attorneys' fees, litigation expenses, and class representative incentive awards. (Dkt. 483.) Plaintiff, represented by Robbins Geller Rudman & Dowd LLP ("Class Counsel"), brought this class action against Kimberly-Clark Corporation ("Kimberly-Clark")[1] and Costco Wholesale Corporation ("Costco") (collectively, "Defendants"), alleging, *inter alia*, violations of New York's General Business Law §§ 349 and 350. On March 25, 2024, the Court granted Plaintiff's motion for preliminary approval of the Settlement Agreement. (Dkt. 482.) Plaintiff now moves for final approval of the Settlement, attorneys' fees, litigation expenses, and a class representative incentive award. (Dkts. 483–87.) For the reasons stated below, the Court grants Plaintiff's unopposed motion.

---

[1] The Court issued a final approval of Plaintiffs' settlement with Defendant Kimberly-Clark on January 17, 2024, resolving claims against Kimberly-Clark and the related claims in *Honigman v. Kimberly-Clark Corp.*, No. 15-CV-2910 (PKC) (RML). *See Kurtz v. Kimberly-Clark Corp.*, Nos. 14-CV-1142 (PKC) (RML) & 15-CV-2910 (PKC) (RML), 2024 WL 184375 (E.D.N.Y. Jan. 17, 2024), *appeal filed*, No. 24-454 (2d Cir. Feb. 23, 2024).

# BACKGROUND

## I.     Factual Background

This class-action lawsuit brought by Plaintiff, on behalf of himself and all settlement class ("Settlement Class") members, alleges that the flushability-related claims made on the labeling and packaging of Defendants' wipes sold in New York under the brand name Kirkland Signature Moist Flushable Wipes (the "Product")—including that the wipes were "flushable," and safe for sewer or septic systems—were false, deceptive, or misleading, in violation of, *inter alia*, New York General Business Law §§ 349 and 350.  (Compl., Dkt. 1, ¶¶ 73–75, 84, 86.)  Specifically, Plaintiff alleged that Defendants' false and deceptive marketing and labeling of its wipes as "flushable" caused Plaintiff and other members of the class to pay a premium attributable to the "flushable" representation.  (*Id.* ¶ 76.)  Before the Court is Plaintiff's motion for final approval of his settlement with Costco and interested party Nice-Pak Products, Inc. ("Nice-Pak"), (collectively, the "Settling Parties").   Though not a defendant in this action, Nice-Pak manufactured the wipes Costco sold under the Kirkland Signature label and is indemnifying Costco in this litigation.  (Settlement Agreement, Dkt. 469-1, at ECF[2] 3.)

## II.     Procedural History

On February 21, 2014, Plaintiff filed a class-action complaint against Defendants Kimberly-Clark and Costco, seeking damages and injunctive relief under, *inter alia*, New York's General Business Law §§ 349 and 350, on behalf of state and nationwide classes of purchasers of Costco and Kimberly-Clark flushable wipes.  (Compl., Dkt. 1.)[3]  On May 5, 2014, Costco filed its

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] This case was originally assigned to the Honorable Jack B. Weinstein.  It was reassigned to the undersigned on February 12, 2020.  (Order of Recusal, Dkt. 395.)

motion to dismiss, which the Court denied on November 18, 2014, referring the case to the Honorable Robert M. Levy, U.S. Magistrate Judge, for expedited discovery.  (Dkt. 49.)

The parties then engaged in extensive discovery, with Class Counsel reviewing and reproducing to Defendants over 12,000 documents obtained from issuing subpoenas to third parties such as wastewater districts, municipalities, industry groups, market data providers, and retailers. (Decl. of Vincent M. Serra, Dkt. 485 ("Serra Decl."), ¶ 23.)  Costco inspected Plaintiff's home plumbing systems and deposed him in December 2014, and Class Counsel conducted their own depositions in January and February 2015.  (*Id.* ¶ 24.)  In all, Costco produced 81,433 documents as part of discovery.  (*Id.* ¶ 27.)

In connection with their motion papers for and against class certification, the parties submitted briefs and expert reports in the spring of 2015.  (*Id.* ¶ 28.)  On October 9, 2015, the Court heard argument on the class certification-related motions but stayed the motion a few days later, pending any action by the Federal Trade Commission ("FTC"), which was already investigating the "flushability" issue in related cases.  (*Id.* ¶ 31 & n.7.)  Following a consent order between the FTC and Nice-Pak on October 30, 2015, (*id.* ¶ 32), the Court heard arguments, held various status and settlement conferences, and eventually lifted the stay in this case on December 7, 2016, and allowed the parties to submit additional briefing on various issues.  (Dkt. 263.)  Costco subsequently renewed its motion to deny Plaintiff's motion for class certification, (Dkt. 270), but on March 27, 2017, the Court issued an order ("Certification Order") certifying a class consisting of "all persons and entities who purchased Kirkland Signature Flushable Wipes in the State of New York between July 1, 2011 and March 1, 2017."  (Certification Order, Dkt. 296, at 130.)  The Court also certified the injunctive class in its Certification Order.  (*Id.* at 113.)

Following the Certification Order, Defendants appealed to the Second Circuit under Rule 23(f). (Dkt. 297.) On April 10, 2019, the Second Circuit concluded that it "cannot decide whether the Defendants' predominance argument has merit," so it remanded the case for "further development of the record" on predominance, asking the District Court to specifically address whether Plaintiff's expert, Colin B. Weir, could establish through the use of hedonic regression analysis that class members paid a price premium for Defendants' Products that was attributable to their flushability representation. *Kurtz v. Costco Wholesale Corp.*, 768 F. App'x 39, 40 (2d Cir. 2019).

Following remand, the litigation focused on Mr. Weir's expert testimony, which concluded that the flushability claim increased the Product's price by 8.5619%. (Weir Suppl. Decl. Costco, Dkt. 378, ¶ 82.) Following several days of evidentiary hearings, two rounds of supplemental briefing, and an additional hearing to address Defendants' *Daubert*[4] claims, the Court ultimately issued an order reasserting its 2017 Certification Order on October 25, 2019. (Dkt. 382.)

The Second Circuit then allowed Defendant to reinstate their appeal. On June 26, 2020, the Second Circuit affirmed the Certification Order as to the damages classes under Rule 23(b)(3) but reversed as to the injunctive relief classes under Rule 23(b)(2). *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 63 (2d Cir. 2020).

In early March 2022, the parties discussed the possibility of mediation, participating in a virtual mediation in May 2022 with mediator Michael Ungar, Esq., who had experience successfully mediating settlements in other flushable wipes cases. (Serra Decl. ¶ 65.) Another mediation in November 2022 resulted in an agreement in principle regarding the monetary relief aspect of the Settlement, while continuing to negotiate attorneys' fees and costs. (*Id.* ¶ 66.) On

---

[4] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

4

April 27, 2023, the Settling Parties filed the fully executed Settlement and Plaintiff moved for preliminary approval of the Settlement. (Dkts. 467–69.) On March 25, 2024, the Court preliminarily approved the Costco Settlement and scheduled a final approval hearing for August 30, 2024. (Dkt. 482.) On July 26, 2024, Plaintiff filed a motion for final approval of the class action settlement. (Dkts. 483–86.) On August 23, 2024, Plaintiff filed a reply memorandum in support of his motion for final settlement. (Dkt. 487.)

The final approval hearing took place on August 30, 2024. (8/30/2024 Min. Entry.) After discussion, the Court ordered Class Counsel to submit contemporaneous billing records supporting the attorneys' fees request. (*Id.*) Additionally, the Court advised Class Counsel to provide an updated number of valid claims and estimated administration expenses by October 15, 2024. (*Id.*) On September 9, 2024, Class Counsel provided the Court with contemporaneous billing records for *in camera* review. (Dkt. 489.) On October 15, 2024, Plaintiff timely filed a letter that estimated the number of Settlement Class members, but noted "[t]he amounts and counts are subject to change following the conclusion of the de-duplication of households process." (Dkt. 490-1, ¶ 6.) On October 16, 2024, the Court ordered Plaintiff to file a letter disclosing the updated number of valid claims and claims administration expenses after the claims administrator, Gilardi & Co. LLC ("Gilardi"), finished the claims de-duplication process. (10/16/2024 Dkt. Order.) Plaintiff filed a letter containing those numbers on October 25, 2024. (Dkt. 491.)

## III.   The Settlement Agreement, Fund Allocation, and Notification to Class

### A.   Terms of the Settlement Agreement

The essential terms of the Settlement Agreement are as follows. (*See generally* Settlement Agreement, Dkt. 469-1.) The Settlement Class period is from July 1, 2011, through May 31, 2017 (the "Class Period"). (*Id.* ¶ 1.33.) The Settlement Class is broadly defined as all individuals over

the age of 18 who reside in the United States and purchased the Product[5] in the State of New York during the Class Period.  (*Id.* ¶ 1.30.)  Class members need not provide proof of purchase.  (*Id.* ¶ 2.5.)  The Settlement amount is $2,000,000, inclusive of settlement administration costs and excluding attorneys' fees and expenses.  (*Id.* ¶ 2.6.)  No taxes will be taken from the Settlement Class's payments at the time of distribution.  (*Id.* ¶ 2.12.)  The Settlement Class members shall pay taxes on the distribution themselves.  (*Id.*)

Each Settlement Class member who either (1) currently maintains a Costco membership[6] and who does not opt out of the Settlement or (2) does not have a Costco membership but submits a valid claim, will be paid one dollar and thirty cents ($1.30) for each Product unit purchased during the Class Period, subject to the following conditions: (i) a minimum of seven dollars and fifty cents ($7.50) will be paid to each Settlement Class member, regardless of the number of Product units purchased by that Settlement Class member, (ii) a maximum of fifty-five dollars and ninety cents ($55.90) will be paid to any one household, and (iii) only one claim may be submitted per household.[7]  (*Id.* ¶ 2.5.)  If the number of valid claims exceed $2 million (including the settlement administration costs), the Claims Administrator shall fulfill all valid claims on a pro rata basis so that the total amount of payments and administration costs does not exceed $2 million.  (*Id.* ¶ 2.6.)  As of October 25, 2024, the total settlement administration costs were approximately

---

[5] For the purposes of the Settlement Agreement, "Product" is defined as "Costco's flushable wipes sold in New York during the Settlement Class Period under the Kirkland Signature Moist Flushable Wipes brand."  (Settlement Agreement, Dkt. 469-1 ¶ 1.25.)

[6] Plaintiff notes that, "[f]or purposes of the Settlement, 'current' Costco membership is determined by membership as of June 10, 2024."  (Mem. Supp. Final Approval of Settlement, Dkt. 484 ("Class Counsel Mem."), at 5 n.9.)

[7] "Household" will be defined as persons living at a shared residential address.  (Settlement Agreement, Dkt. 469-1 ¶ 1.16.)

$400,000. (Decl. of Derek Smith Regarding Claim Review, Dkt. 491-1 ("Updated Smith Decl."), ¶ 4.)

For those Settlement Class members who currently maintain memberships with Costco and who do not opt-out of the Settlement, Costco will issue automatic payments via check to the mailing address on file with Costco or allow them to receive payment via electronic transfer. (Settlement Agreement, Dkt. 469-1 ¶ 2.2.) Settlement Class members who do not have a current Costco membership must go through the claims submission process. (*Id.* ¶ 2.3.) Objectors to the Settlement may also submit claim forms or be subject to automatic settlement payments. (*Id.* ¶ 4.16.)

Costco shall bear all fees and expenses incurred by the Claims Administrator, as well as the cost of paying all valid claims. (*Id.* ¶ 2.13.) All uncashed, unclaimed, or undeliverable checks will revert back to Costco and Nice-Pak and there will be no interest assessed on payments made to Settlement Class members. (*Id.* ¶ 2.5.) Attorneys' fees and expenses will not come out of the $2 million Settlement amount. (*Id.* ¶ 2.6.) It will be a separate payment, consisting of attorneys' fees of $2,849,015.75 and litigation expenses, charges, including court costs, of $150,984.25, totaling $3,000,000. (Class Counsel Mem. at 16.) Within 30 calendar days of the Court awarding attorneys' fees and expenses, Costco and Nice-Pak shall make an initial payment of $250,000 to Class Counsel, followed by a payment of $250,000 per quarter until the full amount of the awarded attorneys' fees and expenses is reached. (Settlement Agreement, Dkt. 469-1, ¶ 6.4.) Any changes or denial of the request for attorneys' fees or expenses will not be grounds for modification or termination of the Settlement Agreement. (*Id.* ¶ 6.3.) Lastly, the class representative payment to Plaintiff will be $10,000. (*Id.* ¶ 6.2.)

**B.**     **Notice and Claims**

1.     Notice

All Settlement Class members, regardless of whether they are current Costco members, will receive notice of the Settlement via email.  (Settlement Agreement, Ex. A, Dkt. 469-1, at ECF 39.)  On June 10, 2024, Notice went out to the Settlement Class's 131,039 members via email and first-class mail.[8]  (Class Counsel Mem. at 5.)  The Claims Administrator set up a Settlement website[9] and a toll-free information line accessible 24 hours/day per the Court's Preliminary Approval Order.  (*Id.*; Prelim. Approval Order, Dkt. 482, ¶ 6; Settlement Agreement, Ex. A, Dkt. 469-1, at ECF 39.)  The Settlement website also contained "the Long Form Notice, the Summary Notice, answers to frequently asked questions, contact information for the Claims Administrator and Class Counsel, the Settlement Agreement, the signed order of Preliminary Approval, a downloadable and online version of the Claim Form, a downloadable and online version of the form by which Settlement Class members may opt out of the Settlement Class, and other settlement-related materials filed by the Settling Parties or the Court."  (Class Counsel Mem. at 5.)  The receipt deadline for Class Members to file claims, opt-out, or object to the Settlement was August 9, 2024.  (Decl. of Derek Smith, Dkt. 490-1 ("Smith Decl."), ¶ 3.)  Of those receiving notice of the Settlement, 83,224 were current Costco members who are eligible to receive payment automatically unless they opted out.  (Updated Smith Decl. ¶ 3; Settlement Agreement, Dkt. 469-

_____

[8] If no current email address was available for a Settlement Class member, Costco and Nice-Pak gave notice of the Settlement to class members via first-class mail.  (Class Counsel Mem. at 5.)

[9] The website informed Settlement Class members that they must submit a claim online by August 9, 2024, or by mail so that it is received by August 9, 2024, to receive a payment; that they can also opt out of the Settlement Class, but the objection must be filed by August 9, 2024; and that the Settlement releases all claims "related to Plaintiff's contentions that Costco's marketing, advertising, and sale of the Product was false or misleading."  *Costco Flushable Wipes Settlement*, https://www.costcoflushablewipessettlement.com (last visited Nov. 22, 2024).

8

1, ¶ 2.2.)  Only those class members who do not currently maintain Costco memberships need to go through the claims submissions process.  (Settlement Agreement, Dkt. 469-1, ¶ 2.3.)

       2.    <u>Claims Submissions Process</u>

Upon receiving notice of the Settlement, class members were prompted to provide certain information that verified claim validity in connection with submitting a claim form.  (*Id.* ¶ 2.4.) This information included, *inter alia*, (a) their name and address; (b) an attestation that all information provided on the Claim Form is truthful, accurate, and complete; (c) their email address (if they elect to provide that information); (d) the number of packages of the Product purchased during the Settlement Class Period; (e) the number of packages of the Product purchased during the Settlement Class Period that have been refunded or voided by Costco or any other retailer; and (f) an attestation that the purchases were not made for purposes of resale.  (*Id.*)  The validity[10] of all submitted claims was determined within 30 days of the end of the Claim Period, defined as "the period of time during which a settlement class member who is a former Costco member and/or non-member must submit a valid Claim Form to be eligible."  (*Id.* ¶¶ 1.5, 2.7.)  For claims deemed deficient, the Settlement Class members received notice of such deficiency and were able to cure the claim within 20 calendar days of receiving notice.  (*Id.* ¶ 2.4.)  Where a corrected claim was timely submitted, the determination of the validity of the corrected claim was within 30 days of its submission.  (*Id.* ¶ 2.7.)

As of October 15, 2024, the Claims Administrator had received 848,326 claim forms through the website, 3,070 forms that were downloaded and mailed in, and 863 forms that were

---

[10] Valid Claim Forms had to be received by the Claims Administrator (not just postmarked) or submitted online no later than the Claim Filing Deadline, i.e., August 9, 2024.  (Settlement Agreement, Dkt. 469-1, ¶ 2.3.)  The Claims Administrator determined whether the claims were valid.  (*Id.*)

submitted via email.  (Smith Decl. ¶ 3.).[11]  Of those, only 440 were identified as previous Costco members with a valid claim.  (Updated Smith Decl. ¶ 3.)  Moreover, as of October 15, 2024, no objections to the Settlement have been filed.  (Smith Decl. ¶ 5.)  Lastly, there were no valid opt-out requests received.  (*Id.* ¶ 4.)[12]  Taken together, the Settlement Class therefore comprises 81,792 current Costco members with a total of 265,677 units purchased, and 440 former Costo members with a total of 9,721 units purchased, with a total payment amount of $709,955.60 and administration costs of $400,000.  (Updated Smith Decl. ¶¶ 3–4.)

## DISCUSSION

### I.    The Settlement Class Is Certified

On March 25, 2024, the Court preliminarily certified the Settlement Class for the purposes of Settlement under Federal Rules of Civil Procedure ("Rule" or "Rules") 23(a) and (b)(3). (Prelim. Approval Order, Dkt. 482.)  The Court now grants final certification of the Settlement Class.

### A.    Legal Standard

To certify a settlement class, the Court must find that Rule 23(a)'s requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation are satisfied. *See In re Am. Int'l Grp., Inc. Sec. Litig. (In re Am. Int'l Grp.)*, 689 F.3d 229, 238 (2d Cir. 2012) (citations omitted).  "The salience of the 'adequacy' factor, Fed. R. Civ. P. 23(a)(4), is particularly

---

[11] It is worth noting, however, that the majority of the claims were deemed to likely be submissions by "bots."  (Declaration of Derek Smith Regarding Notice Procedures, Dkt. 485-3, ("Gilardi Decl."), ¶ 10.)

[12] Class Counsel note that "Gilardi has received 73 requests for exclusion. . . . Under the terms of the Settlement, submitted claims supersede opt out requests.  In addition, Gilardi sent notification to these class members asking that confirmation of the intention to be included in the Settlement be submitted within 30 days of the date the notification was sent.  All of the responses Gilardi received requested that their claims take precedence."  (Smith Decl. ¶ 4.)

acute in settlement class situations." *Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 366 (E.D.N.Y. 2014) (citation omitted); *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129 (2d Cir. 2016) ("In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance."). The requirement ensures that the class representatives "fairly and adequately protect the interests of the class [and] serve[] to uncover conflicts of interest between [them] and the class they seek to represent, as well as the competency and conflicts of class counsel." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig. (In re Payment Card)*, 827 F.3d 223, 231 (2d Cir. 2016) (cleaned up) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997)). Furthermore, "to certify a Rule 23(b)(3) [settlement] class, [a plaintiff] must show that common questions of law or fact 'predominate' over purely individual questions and that a class action is 'superior' to other methods of resolving the dispute." *In re Am. Int'l Grp.*, 689 F.3d at 239.

Applying these legal standards, the Court finds that the Settlement meets all of the Rule 23 requirements.

### B.    Numerosity, Typicality, and Commonality Are Met

Rule 23 requires a determination that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible, and a precise enumeration or identification of class members is not required." *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 397 (E.D.N.Y. 2022) (cleaned up) (citation omitted). Notably, "[c]ourts in the Second Circuit presume numerosity at a level of 40 members." *Id.* (citation omitted). Here, the numerosity requirement is plainly met. Plaintiff alleges that there are 82,232 valid Settlement Class members. (Updated Smith Decl. ¶ 3.)

The requirement of typicality is similarly satisfied here. "Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citing Fed. R. Civ. P. 23(a)(3)). "This requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). In this case, all members of the class are similarly affected by Costo's wrongful conduct. All claims relate to the same events and are fundamentally similar, i.e., the purchase of "flushable" wipes from New York Costco stores. Even though the strength of individual class members' claims might vary due to differences among purchases, the cost of litigation by a single plaintiff anywhere is likely to mean that everyone will recover similar amounts. Therefore, any variation in recovery is unlikely to be consequential, as the cost of litigating the matter is likely higher than any reasonable amount of recovery. Thus, "[Plaintiff's] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See Marisol. A.*, 126 F.3d at 376 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Likewise, the commonality requirement is satisfied. Rule 23 requires a finding that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "Even a single common question" is enough. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). Here, commonality is met because common questions of law and fact exist as to all members of the class pertaining to "whether Costco charged a premium for the 'flushable' claim on its wipes, or that any such premium caused Plaintiff's damages." (Class Counsel Mem. at 10.)

C.      **Class Representatives Are Adequate**

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig. (In re Payment Card I)*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) (quotation omitted).

First, to be adequate, a proposed class "representative must have [(1)] an interest in vigorously pursuing the claims of the class, and [(2)] must have no interests antagonistic to the interests of other class members." *In re Payment Card*, 827 F.3d at 231 (quotation omitted); *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[D]istrict courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members."). Here, there are no fundamental conflicts between the class representative, Dr. Kurtz, and the class members. Dr. Kurtz, who purchased "flushable" wipes at Costco, (*see* Complaint, Dkt. 1, ¶ 4), has interests that are aligned with other class members seeking to maximize their recovery from Costco.

Turning to the second prong, Class Counsel are qualified and capable of litigating the matter. Class Counsel have litigated this matter for over ten years, with dozens of appearances before the Court and the Second Circuit, including oral arguments, evidentiary hearings, settlement conferences, and status conferences. (Serra Decl. ¶¶ 17–67.) Class Counsel have opposed Defendant's motions, litigated Plaintiff's own motions, secured hundreds of thousands of pages of documents produced by Costco, and presented and challenged witness testimony over multiple days of hearings. (*Id.* ¶¶ 22–29, 45–52.) Thus, the Court has no concern about Class Counsel's ability to adequately prosecute this matter.

**D.    Rule 23(b)(3)'s Requirements of Predominance and Superiority Are Met**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (quoting *Amchem Inc.*, 521 U.S. at 623). This "predominance requirement is satisfied if: (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof." *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017) (cleaned up) (citation omitted).

In this case, the crucial question is whether Costco's marketing practices and labeling of its wipes as "flushable" caused Plaintiff and members of the class to pay a premium attributable to the "flushable" representation. That question is "essential to the claims of all putative class members," and the "same evidence will suffice for each [class] member" to answer it. *In re Payment Card I*, 330 F.R.D. at 56 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). While individual questions will remain as to the extent of the harm caused to each Class Member, "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted).

The requirement of superiority is likewise satisfied. "To establish the superiority prong of this inquiry, 'the moving party must show that the class action presents economies of time, effort and expense, and promotes uniformity of decision.'" *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at *8 (E.D.N.Y. Jan. 4, 2024) (cleaned up) (quoting *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *6 (S.D.N.Y. Nov. 30, 2021)). Here, in light of the numerosity of the class members and the uniformity of their claims, there is a strong

14

basis for finding that "a class action is 'superior' to other methods of resolving the dispute." *In re Am. Int'l Grp.*, 689 F.3d at 239 (quoting Fed. R. Civ. P. 23(b)(3)); *see Pub. Emps.' Ret. Sys. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (finding superiority where "there is no overwhelming interest by class members to proceed individually" and noting that in some cases, "[m]ultiple actions by multiple plaintiffs could also significantly reduce the prospects for recovery as it would decrease plaintiffs' bargaining power").

## II.    The Settlement Is Substantively and Procedurally Fair

Under Second Circuit precedent, as recently established in *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023), both Rule 23(e)(2) factors and the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors"), weigh in favor of finding that the Settlement is procedurally and substantively fair, and warrants final approval.

### A.    Legal Standard

Rule 23(e) "sets forth the standards and procedures that apply to class action settlements." *In re Payment Card I*, 330 F.R.D. at 27.  Pursuant to Rule 23(e), approval of a class action settlement generally occurs in two stages: (1) the preliminary approval stage, where the Court makes an initial evaluation of the Settlement's fairness before notifying the class, and (2) the final approval stage when class members and the parties are given an opportunity to be heard before the Court approves the Settlement.  *See id.*  At the final approval stage, a district court may approve a class action settlement only upon "finding that it is fair, reasonable, and adequate."  *Moses*, 79 F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2)).  To make that determination, a court should expressly evaluate four "primary procedural considerations and substantive qualities that should always matter" in its "holistic[]" review of a proposed settlement.  *Id.* at 242–43 (quoting Fed. R.

Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (the "2018 Advisory Note")).

These four considerations include whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The first two factors are procedural in nature," *Moses*, 79 F.4th at 242, and "examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement,'" *In re Payment Card I*, 330 F.R.D. at 29 (quoting 2018 Advisory Note). The latter two factors "guide the substantive review of a proposed settlement," *Moses*, 79 F.4th at 242, assessing "[t]he relief that the settlement is expected to provide to class members . . . ," *In re Payment Card I*, 330 F.R.D. at 29 (alteration in original) (quoting 2018 Advisory Note).

In *Moses*, the Second Circuit emphasized that the amended Rule 23(e) "now mandates courts to evaluate factors that may not have been highlighted in [this Circuit's] prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements." 79 F.4th at 243. The panel explained that "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length . . . because the rule 'does not suggest that an affirmative answer to that one [factor] creates a favorable presumption

16

on review of the other three.'" *Id.* (alteration in original) (citation omitted).  Regarding substantive

fairness, while courts in this Circuit historically "evaluate[d] substantive fairness [by] considering

the nine *Grinnell* factors," which largely overlap with the revised Rule 23(e)(2), the *Moses* court

emphasized that the "rule now requires courts to expressly consider two core factors [under Rules

23(e)(2)(C)–(D)] when reviewing the substantive fairness of a settlement: the adequacy of relief

provided to a class and the equitable treatment of class members."  *Id.* at 244 (second alteration in

original) (citation omitted).  Importantly, the *Moses* panel noted that "the revised Rule 23(e)(2)

does not displace" the *Grinnell* factors that courts have traditionally applied, "which remain a

useful framework for considering the substantive fairness of a settlement."  *Id.* at 243.  The nine

*Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
>
> (9) the range of reasonableness of the settlement fund [compared] to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

## B.    Procedural Fairness

To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(A)–(B).

The Court has already evaluated the "adequacy" factor in determining that the Settlement Class should be finally certified under Rule 23(a).  *See infra* Discussion Section I.C.  Given the Court's finding that the requirement of adequacy is satisfied under Rule 23(a), and the similarity of analyses regarding adequacy under Rule 23(e)(2)(A) and Rule 23(a)(4), the Court finds that the class representatives and Class Counsel provided adequate representation to the putative classes under Rule 23(e)(2)(A).  *See In re Payment Card I*, 330 F.R.D. at 54 (holding that the court will likely find that class representatives and class counsel have provided adequate representation under Rule 23(a) after finding adequate representation by class representatives and class counsel under Rule 23(e)(2)(A)).  Further, the Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (cleaned up) (citation omitted).  Here, the discussions that directly preceded the Settlement began in 2022 with mediator Michael Ungar, Esq.  (Class Counsel Mem. at 8.)  These discussions encompassed not only dozens of telephone calls between counsel and Mr. Ungar, but also two separate all-day settlement sessions in May 2022 and November 2022, and extensive follow-up discussions.  (*Id.*)  The mediator remained intimately involved throughout the process and guided the discussions over the course of a year.  (*Id.*)  Furthermore, the settlement negotiations, guided by Mr. Ungar, followed years of vigorous litigation between the parties.

Based on these facts, the Court concludes that the proposal was negotiated at arm's length and that there was procedural fairness in reaching the Settlement.

### C.    Substantive Fairness

In evaluating the substantive fairness of a proposed settlement, a court must expressly consider the "two core factors" under Rules 23(e)(2)(C)–(D): "the adequacy of relief provided to a class and the equitable treatment of class members." *Moses*, 79 F.4th at 244.  In particular, such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the Settlement. *Id.*

### 1.    Rule 23(e)(2)(C): Adequacy of Class Relief

In assessing whether a proposed settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), a district court must take into account several factors, including: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

The first statutory factor under Rule 23(e)(2)(C)(i) largely overlaps with the first *Grinnell* factor, "complexity, expense, and likely duration of the litigation." *Grinnell*, 495 F.2d at 463.  As Class Counsel accurately notes, this case "has already generated a massive body of evidence, including over half a million pages of documents, depositions, expert reports, and evidentiary hearings." (Class Counsel Mem. at 10 (citing Serra Decl. ¶¶ 22–29, 45–52, 63).)  By contrast, the Settlement provides "relief without the delay, risk, and uncertainty of trial and continued litigation." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020).  Thus, the first factor supports approving the Settlement.

The second statutory factor requires courts to look at "the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "To warrant approval, the plan of allocation must also meet the standards by which the settlement [is] scrutinized—namely, it must be fair and adequate . . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card I*, 330 F.R.D. at 40 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). While the plan of distribution must be fair, it "need not be perfect." *Id.* (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007)).

Here, each Settlement Class member who either maintains a Costco membership and who does not opt out of the Settlement, or does not have a Costco membership but submits a valid claim, will be paid $1.30 for each Product unit purchased during the Class Period. (Settlement Agreement, Dkt 469-1, ¶ 2.5.) The minimum payment made to a Class member is $7.50, and the maximum payment is $55.90. (*Id.*) The Settlement Class consists of 82,232 Costco members who purchased 275,398 units of Product. (Updated Smith Decl. ¶ 3.) Of those Settlement Class members, 81,792 are current Costco members who purchased 265,667 Product units and 440 are former Costco members who purchased 9,721 units. (*Id.*) The total amount to be paid to claimants is $709,955.60. (*Id.*) For current Costco members, the payment will be automatically issued via check to the mailing address on file. (Settlement Agreement, Dkt 469-1, ¶ 2.2.) For former Costco members with valid claims, the Claims Administrator will send payment via check to the address provided on the Claim Form. (*Id.* ¶ 2.10.) The plan of allocation was described in detail in the notice provided to Settlement Class members. (Long-Form Notice, Dkt. 469-1 at ECF 42, 48–49); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) (approving

20

allocation plan where "[t]he Notice provided the class members with an explanation of how their award would be calculated according to the plan of allocation."). The Court thus finds that the allocation plan is reasonable, fair, and adequate.

The third statutory factor, Rule 23(e)(2)(C)(iii), directs courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). In this case, attorneys' fees and expenses will not come out of the Settlement Amount. (Settlement Agreement, Dkt 469-1, ¶ 2.6.) It will be a separate payment of up to $3,000,000, including litigation expenses. (*Id.* ¶ 6.1.) For the reasons described below, s*ee infra* Discussion Section III, the Court finds that the proposed attorneys' fees in this case are reasonable.

Regarding the timing of payment, at least one district court in this Circuit has held that there are "sound reasons for courts to ensure that the class has been compensated prior to attorneys in class-action settlements," including that, "[c]ynically, money is the best way to keep lawyers engaged." *Hart v. BHH, LLC*, No. 15-CV-4804 (WHP), 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020) (citation omitted). Here, the Court notes that according to the terms of the Settlement Agreement, Costco shall start paying attorneys' fees within 30 calendar days of the Court awarding attorneys' fees and expenses. (Settlement Agreement, Dkt. 469-1, ¶ 6.4.) The valid claims themselves, on the other hand, must be paid out within 60 days of the "Effective Date," defined as the later of: "(a) the expiration of the time to appeal the Final Judgment and Order with no appeal having been filed; (b) if any such appeal is filed, the termination of such appeal on terms that affirm the Final Judgment and Order or dismiss the appeal with no material modification of the Final Judgment and Order; or (c) the expiration of the time to obtain any further appellate review of the Final Judgment and Order." (*Id.* ¶ 1.13.) These two provisions taken together indicate that the attorneys would start getting paid before the claimants, and that this would be the case for both

21

automatic payments and mailed payments to class members.  While a settlement provision providing for payment of attorneys' fees prior to the distribution of settlement funds among class members "does not bolster the case" for approval, "it also does not undercut that case where, as here, the majority of other factors weigh significantly in its favor." *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021).  This is especially the case where, as here, the attorneys' fees awards will be paid out over the course of three years.  (*See* Settlement Agreement, Dkt. 469-1, ¶ 6.4 ("Costco and Nice-Pak shall continue to pay $250,000 per quarter (measuring the specific start date by adding three months to the initial payment) until the full amount of the awarded attorneys' fees and expenses is reached.").)  So, while payment of attorneys' fees will *begin* before class members are paid, those fees likely will not be fully paid until after all class members have been paid.  The fact that the attorneys would be at least partially paid before the Class Members therefore does not weigh against granting final approval of the settlement given the totality of factors.

Finally, the fourth statutory factor mandates that courts consider "any agreement required to be identified under Rule 23(e)(3)," that is, "any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(2)(c)(iv) & (e)(3).  Here, the Court agrees with Plaintiff that "Rule 23(e)(2)(C)(iv), which requires consideration of 'any agreement required to be identified under Rule 23(e)(3),' has no bearing here, as there are no other agreements pertaining to the Settlement that are required to be identified." (Class Counsel Mem. at 11 n.13.)  Accordingly, the Court finds that the supplemental agreement does not pose an impediment to final approval of the Settlement.

2.    Rule 23(e)(2)(D): Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  In evaluating this factor, courts may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Moses*, 79 F.4th at 245 (quoting 2018 Advisory Note).  Particularly, after *Moses*, "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Id.* (alteration in original) (quoting Fed. R. Civ. P. 23(e)(2)(D)).  In evaluating the substantive fairness of a settlement, courts must not only ensure that a settlement protects "the interests of class representatives who play an active role in the litigation—often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process—from having absent class members free ride on their efforts," but must also "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* (cleaned up) (citation omitted).

Here, all Class Members are entitled to a minimum payment of $7.50 and a maximum payment of $55.90, depending on the number of Product units they bought.  (Settlement Agreement, Dkt 469-1, ¶ 2.5.)  Additionally, the Settlement Agreement subjects all Settlement Class Members to the same release condition.  (*Id.* ¶¶ 7.1–7.2.)  If the total dollar amount for valid claims exceeded $2,000,000 then Class Members would have been paid on a pro rata basis.  (*Id.* ¶ 2.6.)  "Pro rata distribution schemes are sufficiently equitable and satisfy the requirements of

Rule 23(e)(2)(D)." *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK) (LB), 2021 WL 7906584, at *9 (E.D.N.Y. May 25, 2021).

In addition, Class Counsel seek an award of $10,000 for Plaintiff.  In his Declaration, Plaintiff states that he

> ha[s] spent a considerable amount of time performing actions that benefitted the Settlement Class at large, including, for example: (a) detailing [his] experience with the products at issue to Settlement Class Counsel and the Court; (b) consulting with [his] attorneys about the progress of the Litigation and this Court's orders; (c) reviewing on [his] own and/or with Settlement Class Counsel various pleadings, motions, briefs, orders, and correspondence related to the Litigation, . . . ; (d) searching for and producing documents; (e) preparing and sitting for [his] deposition; (f) reviewing and responding to Defendant's interrogatories; (g) making [his] homes (and their plumbing systems) in Brooklyn and New Jersey available over the course of two days for physical inspection by Defendant's consultant; (h) attending an important status and scheduling hearing presided over by Magistrate Judge Levy; and (i) conferring with [his] attorneys throughout the case on a variety of issues relating to the status of the Litigation and settlement negotiations.

(Decl. of Dr. D. Joseph Kurtz, Dkt. 485-4 ("Kurtz Decl."), ¶ 3.)  While the award for Plaintiff is much higher than the estimated average class recovery, this difference is not so great as to be unreasonable in light of the fact that Plaintiff has been involved in the case for almost a decade and has played a role that required frequent interactions with counsel for case-related matters. Moreover, this Court has previously found, with respect to the Kimberly-Clark Settlement, that "[t]he length and intensity of this lawsuit logically necessitated more extensive services and work by the named Plaintiff[], and such contributions to the litigation justify additional compensation." *Kurtz*, 2024 WL 184375, at *9.

### 3.    Remaining *Grinnell* Factors

Having already considered the first *Grinnell* factor, *see supra* Discussion Section II.C.1, the Court now finds that the Settlement satisfies the remaining eight *Grinnell* factors.

24

a.    *Grinnell* Factor 2: Reaction of the Class to the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). "Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 300 (E.D.N.Y. 2015) (quoting *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014)). Here, there have been 73 requests to opt-out, though they were all deemed invalid requests, and no objections to date, out of a class of over 131,000 potential Class Members. (Smith Decl. ¶ 4; Gilardi Decl. ¶ 3.) Thus, the Court finds that the Settlement, overall, has been well received.

b.    *Grinnell* Factor 3: State of Proceedings and Amount of Discovery

In considering the third *Grinnell* factor, courts "focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Fleisher v. Phoenix Life Ins. Co.*, No. 14-CV-8714 (CM), 2015 WL 10847814, at *7 (E.D.N.Y. Sept. 9, 2015) (alteration in original) (citation omitted). "While the parties need not have engaged in extensive discovery, a sufficient factual investigation must have been conducted to afford the Court the opportunity to intelligently [] make . . . an appraisal of the Settlement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (alterations in original) (citations omitted). Here, Class Counsel assert that they have:

> (i) conducted a thorough investigation and drafted a detailed complaint; (ii) successfully opposed Defendants' motions to dismiss; (iii) issued subpoenas to over a dozen non-parties and received documents from many of them; (iv) took and defended numerous depositions; (v) obtained over half a million pages of documents from Defendants; (vi) submitted expert testimony during a two-day "Science Day" tutorial hearing before the Court, the transcripts of which span 335

25

pages; (vii) conducted intensive motion practice on class certification, including numerous rounds of briefing, multiple hearings, and an appeal to the Second Circuit; (viii) submitted, on remand from the Second Circuit, additional expert testimony during a four-day evidentiary "trial" – the transcripts of which span 886 pages – and briefed related *Daubert* motions; (ix) responded to Defendants' second appeal to the Second Circuit upon a fuller record; and (x) engaged in four good-faith mediations or settlement sessions, in addition to copious mediator-assisted follow-up, before reaching this Settlement.

(Serra Decl. ¶ 7.)  Taken together, the "stage of proceedings" factor weighs in favor of final approval of the Settlement.

> c.    *Grinnell* Factors 4–6: Risk of Establishing Liability and Damages and Maintaining the Class Action Through Trial

"Litigation inherently involves risks." *Flores*, 104 F. Supp. at 303 (citation omitted).  This case is no exception.  Plaintiff would face several substantial risks with respect to recovery if this case were to proceed.  Plaintiff admits that due to the Settlement, the vast majority of eligible Settlement Class Members will receive significantly more relief than they would otherwise be entitled to under a price premium analysis: "[T]he $7.50 minimum recovery in the Settlement is far greater than most settlement class members' actual damages under a price premium analysis, and the maximum recovery is greater than the $50 statutory recovery under [General Business Law] § 349."  (Class Counsel Mem. at 21.)  Thus, this factor weighs significantly in favor of final approval of the Settlement.

> d.    *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment

This factor is "typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *In re Namenda*, 462 F. Supp. 3d at 314.  Plaintiff asserts that the Settlement is a highly favorable result and that "potential exposure of up to $2 million (apart from attorneys' fees) is not an insignificant sum to pay even for a company the size of Costco, and particularly for Nice-Pak, a

private company and 'fourth-generation business' with 1,500 employees." (Class Counsel Mem. at 13.) Accordingly, the Court finds that this factor does not oppose Settlement approval.

        e.   *Grinnell* Factors 8 & 9: Range of Reasonableness of the Settlement in Light of the Attendant Risks of Litigation

"The final two *Grinnell* factors[, *i.e.*, the range of reasonableness of the settlement in light of the best possible recovery and all attendant risks,] are typically considered together." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 432 (S.D.N.Y. 2016). "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The mere "fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

Here, Plaintiff asserts that the relief provided by the Settlement is excellent considering the potential recovery at trial and prior relief obtained in similar "flushable" wipes-related class actions, comparing the Settlement to the *Belfiore*, *Pettit*, and *Darnall* Settlements. (Class Counsel Mem. at 14; *see Darnall* Settlement Agreement, Dkt. 485-1, ¶ 2.3; *Pettit v. Procter & Gamble Co.*, No. 15-CV-2150 (RS) (N.D. Cal.), Dkt. 117-4, ¶ 4.4; *Belfiore v. Procter & Gamble Co.*, No. 14-CV-4090 (PKC) (RML) (E.D.N.Y. Mar. 5, 2020), Dkt. 351-3, ¶ 4.4.). None of those settlements provided for automatic payments or payments without proof of purchase. (Class Counsel Mem. at 14.) Class Counsel reiterate that "the ***minimum*** guaranteed payment in the Settlement is 200%, 78%, and 19% greater than the ***maximum*** payment without proof of purchase in the *Darnall*, *Pettit*, and *Belifore* Actions, respectively" and that "the maximum payment here–$55.90–is greater than in any of these other settlements." (*Id.* at 15 (emphasis in original).) Lastly, as mentioned above,

the vast majority of the eligible Settlement Class Members will receive significantly more relief than they would otherwise be entitled to under a price premium analysis. (*Id.*) Given the many legal and factual uncertainties involved in litigation, this factor favors final approval of the Settlement. *See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *16 (E.D.N.Y. Sept. 9, 2024) ("Plaintiff[] would face several substantial risks of establishing liability and damages and maintaining the class action if this case were to proceed.").

## III.    Attorneys' Fees, Litigation Expenses, and Incentive Awards Request

As previously mentioned, Class Counsel seek an award of attorneys' fees in the amount of $2,849,015.75; reimbursement of $150,984.25 in litigation expenses (plus accrued interest); and an incentive award to Plaintiff of $10,000.

### A.    Legal Standard

Under Rule 23(h), "the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In a class action settlement, the court must carefully scrutinize Class Counsel's application for attorneys' fees to "ensure that the interests of class members are not subordinated to the interests of . . . class counsel." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995). The court's role in this context is "to act as a fiduciary who must serve as a guardian of the rights of absent class members." *McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (citation omitted).

Courts commonly employ either the "percentage of the fund method" or the "'lodestar' method" to evaluate the reasonableness of attorneys' fees awards in common fund settlement cases. *Wal-Mart Stores, Inc.*, 396 F.3d 96 at 121 (cleaned up). Irrespective of which method is used, "district courts should continue to be guided by the traditional criteria" identified in

*Goldberger* (the "*Goldberger* factors") in analyzing the reasonableness of attorneys' fees, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (alteration in original) (citation omitted). In addition to the *Goldberger* factors, "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Moses*, 79 F.4th at 244 (quoting 2018 Advisory Note). Additionally, attorneys must submit contemporaneous time records to support their fee applications. *See N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

### B.    Application

As mentioned above, Class Counsel seek an award of attorneys' fees in the amount of $2,849,015.75, and expenses (including court costs) of $150,984.25; as well as an incentive award to Plaintiff of $10,000. (Class Counsel Mem. at 16.) According to the Settlement, within 30 days of the Court awarding attorneys' fees and expenses, Costco and Nice-Pak are required to make an initial payment of $250,000 of those fees and expenses and the incentive award payment to Plaintiff. (Settlement Agreement, Dkt. 469-1, ¶ 6.4.) Thereafter, Costco and Nice-Pak will continue to pay $250,000 per quarter until the full amount of fees and expenses are paid, though Costco and Nice-Pak may pay early or in advance. (*Id.*)

As an initial matter, the Settlement in this action is a claims-made settlement. Unlike a common fund settlement, where class members share from a settlement pool, in a claims-made settlement, the extent of a defendant's liability "is wholly dependent upon the number of claims [filed by class members], the cost of administering the settlement and such fees and expenses as

29

are assessed by the Court." *Parker v. Time Warner Ent. Co.*, 631 F. Supp. 2d 242, 266 (E.D.N.Y. 2009). In claims-based settlements, "where the parties agree to a fee that is to be paid separately by the Defendants rather than one that comes from, and therefore reduces, the Settlement Fund available to the class, 'the Court's fiduciary role in overseeing the award is greatly reduced' because 'the danger of conflicts of interest between attorneys and class members is diminished.'" *Kurtz*, 2024 WL 184375, at *10 (citation omitted). Moreover, where, as here, the parties did not negotiate fees until after reaching agreement on the monetary relief component of the Settlement, (Serra Decl. ¶¶ 66–67), courts credit separately negotiated fee agreements as supportive of reasonableness. *See Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (affirming reasonableness of $13 million fee award for non-cash settlement where "the fee was negotiated only after settlement terms had been decided and did not . . . reduce what the class ultimately received"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 71 (S.D.N.Y.2003) (same). However, "that does not mean this Court's duty is that of a disinterested observer." *Hart*, 2020 WL 5645984, at *6. Rather, the Court must "still 'assess the reasonableness of the fee award' where the fee does not come from a common fund, because 'a defendant is interested only in disposing of the total claim asserted against it, and not in the allocation between the class payment and the attorneys' fees.'" *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-113 (VAB), 2016 WL 6542707, at *14 (D. Conn. Nov. 3, 2016) (citation omitted).

In this case, Plaintiff asks the Court to assess the reasonableness of attorneys' fees on a lodestar basis. (Class Counsel Mem. at 16–19.) Although this is not a common fund settlement case, it is appropriate to apply the lodestar method in assessing the reasonableness of Plaintiff's attorneys' fees request. *See Kurtz*, 2024 WL 184375, at *10–11 (noting that courts in this Circuit are divided between the lodestar method and the percentage-of-fund method for assessing claims-

made settlements); *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV) (RML), 2018
WL 3642627, at *15 (E.D.N.Y. July 30, 2018) ("[A] number of courts have concluded that
utilizing the percentage method would provide plaintiffs' counsel with a percentage of a
'hypothetical recovery,' and have instead opted to use the lodestar method, finding that it 'better
accommodates the policy concerns in settling class actions on a claims-made basis.'" (citation
omitted)).

        1.    <u>Lodestar Method</u>

Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the
number of hours reasonably billed to the class and then multiplies that figure by an appropriate
hourly rate." *Goldberger*, 209 F.3d at 47 (citing *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d
Cir. 1999)).

Here, the requested attorneys' fee is $2,849,015.75. (Class Counsel Mem. at 16.) The
lodestar amount for attorney/paraprofessional time based on Class Counsel's historical rates (i.e.,
the rate applicable at the time the task was performed) is $3,431,211.00. (*See* Decl. of Robbins
Geller, Dkt. 486 ("Robbins Geller Decl."), ¶ 4). Thus, compared to the historical lodestar, the
requested fee has a negative multiplier of 0.83, which is "below what has been deemed reasonable
for the common fund settlements in securities class action cases in this circuit." *In re Graña y
Montero S.A.A. Sec. Litig.*, No. 17-CV-1105 (LDH) (ST), 2021 WL 4173684, at *18 (E.D.N.Y.
Aug. 13, 2021); *see, e.g., Athale v. Sinotech Energy Ltd.*, No. 11-CV-5831 (AJN), 2013 WL
11310686, at *8 (S.D.N.Y. Sept. 4, 2013) (collecting cases).

        a.    <u>Reasonable Hourly Rates</u>

"A reasonable hourly rate is 'the rate a paying client would be willing to pay . . . bear[ing]
in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case

effectively.'"  *McLaughlin*, 2018 WL 3642627, at *16 (second alteration in original) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).  To determine reasonable hourly rates for the legal services performed, courts typically consider several factors, such as "the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney." *Bodon v. Domino's Pizza*, No. 09-CV-2941 (SLT), 2015 WL 3889577, at *7 (E.D.N.Y. June 4, 2015) (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190).  "In assessing the hourly rate, courts consider rates awarded in the district in which the reviewing court sits, pursuant to what is known as the 'forum rule.'"  *Id.* (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009)).

The rates charged by Class Counsel are higher than the prevailing rates in the Eastern District of New York.  "[I]n complex matters, courts [in more recent cases] have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals."  *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *7 (E.D.N.Y. Nov. 21, 2023); *see also Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-CV-3365 (DRH) (SIL), 2022 WL 5434178, at *5 (E.D.N.Y. July 8, 2022) (setting billing rates at $375 to $600 per hour for partners, $200 to $395 per hour for associates, and $150 to $240 per hour for paralegals), *R. & R. adopted*, No. 19-CV-3365 (JMA) (SIL), 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022).  Class Counsel submitted a table of "court referenced rates" based on "the top-end rates the Court indicated were reasonable in the Eastern District of New York for complex matters" in the *Kimberly-Clark* litigation, (Robbins Geller Decl. ¶ 6), which shows that the hourly rates for current and former partners and of-counsel attorneys are $630, for associates $400, and for all other professional support staff $125.  (*Id.*)  By comparison, Class Counsel's historical hourly rates are $675 to $1,186 per hour for partners, $310 to $535 per

hour for associates, and $150 to $425 per hour for support staff.  (Robbins Geller Decl., Ex. A, Dkt. 486, at ECF 9.)  Specifically, three of the eight then-partners and one of-counsel lawyer for whom attorneys' fees are sought have hourly rates in excess of $1,000.  (*Id.*)  However, even using the capped rates set forth in Plaintiff's summary chart, the lodestar multiplier would be 1.1, which is only slightly higher than 0.8 and well within the range that courts have found to be reasonable.  *See Spicer v. Pier Sixty LLC*, No. 08-CV-10240 (PAE), 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("[L]odestar multiples of over 4 are routinely awarded by courts." (citation omitted)).

b.    <u>Reasonable Hours</u>

In determining whether the number of hours worked is reasonable, "a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.'"  *Chaparro v. John Varvatos Enters., Inc.*, No. 21-CV-446, 2021 WL 5121140, at *2 (2d Cir. 2021) (summary order) (alterations in original) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)).  "Where, as is the case here, 'the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent.'"  *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) (citation omitted).  "In dealing with hours that are 'excessive, redundant, or otherwise unnecessary, . . . the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'"  *Chaparro*, 2021 WL 5121140, at *2 (alteration in original) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).

In support of their request for attorneys' fees, Class Counsel submitted contemporaneous billing records as required by this Circuit.  (Dkt. 489); *see Scott v. City of New York*, 643 F.3d 56,

57–58 (2d Cir. 2011) (per curiam).  The contemporaneous billing records show itemized hours under the Costco billing code for each attorney who billed on the matter, describing the nature of the work done.  (*See* Dkt. 489.)  From November 13, 2013, to August 6, 2024, Class Counsel spent 5,264.10 hours working on this matter.  (Robbins Geller Decl. ¶ 4.)  The records show Class Counsel's work from prior to filing the complaint until the drafting of Vincent M. Serra's declaration filed on July 26, 2024.  (*See generally id.*)  The total partner hours worked, excluding associate hours worked by timekeepers who are currently partners, was 2,329.90.  (*Id.* ¶ 4.)  The total proportion of the hours generated by attorneys who were then-partners was thus roughly 44%.  In this case, there was not only "motion practice, discovery, and extensive settlement negotiations," *In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239 (SJB), 2024 WL 3650611, at *6 (E.D.N.Y. Aug. 5, 2024), but also an appeal to the Second Circuit and remand for further evidentiary proceedings.  The hours show Class Counsel's extensive entries for items like conducting research for and drafting countless briefs, preparation for an oral argument on appeal, and preparation for further proceedings on remand.  (*See* Dkt. 489.)[13]  While the proportion of partner hours was high, the significance and complexity of the work they performed justified the amount of time spent.

As a whole, Class Counsel's hours billed were not unreasonable given the nature of the work performed, the length of this class action, and the thorny procedural issues it presented.  Additionally, Class Counsel submitted a summary chart of their blended historical billing rates and hours expended, along with the declaration of attorney Vincent M. Serra.  (Robbins Geller Decl., Ex. A, at ECF 9.)  The summary chart shows the hours expended by a large number and

---

[13] Class Counsel filed their contemporaneous billing records for the Court's *in camera* review.

wide range of professionals at the firm, including eight partners (one of whom was promoted to partner during the pendency of his work on this matter), eight associates, one of-counsel attorney, two staff attorneys, one litigation support personnel, and unspecified numbers of paralegals and document clerks, as well as the various rates charged.  (*Id.*)  Based on a review of these documents, the Court finds that the number of hours worked is reasonable.

2.    <u>Reasonableness Under the *Goldberger* Factors</u>

In applying either the lodestar or the percentage-of-the-fund method to calculate attorneys' fees, "[t]he final step in this analysis is to determine whether the fee award calculated above is reasonable under the *Goldberger* factors."  *McLaughlin*, 2018 WL 3642627, at *20.  These six factors are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50 (alteration in original) (citation omitted).  For the following reasons, the Court finds that the requested award is reasonable under the *Goldberger* factors, which largely overlap with the *Grinnell* factors.

a.    <u>Time and Labor Expended by Counsel</u>

As set forth in Class Counsel's declarations, Class Counsel expended significant time, resources, and effort in successfully representing the Class in the instant case.  (*See* Serra Decl. ¶ 7.)  Over the course of this case, Class Counsel engaged in extensive investigation, discovery, litigation, and settlement negotiations, as well as preliminary approval of the Settlement and class certification.  (*See id.*)  Generally, "[t]he scope of work[ ] performed by Class Counsel was necessary and reasonable for complex class actions of this type."  *Hesse v. Godiva Chocolatier*, No. 19-CV-972 (LAP), 2022 U.S. Dist. LEXIS 72641, at *36 (S.D.N.Y. Apr. 20,

35

2022).  However, based on an *in camera* review of the contemporaneous billing records, at least some overlap between the Kimberly-Clark and Costco Settlements existed under the Costco Wholesale matter number, resulting in at least some duplicative work, though this was the case for a relatively small number of entries.  (Dkt. 489.)[14]  While the Court notes that Class Counsel should not be able to capitalize on duplicative work, the Court finds that this factor neither favors nor counsels against the attorneys' fees award.

### b.   The Magnitude and Complexities of the Litigation

"In evaluating the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors to be considered."  *Hallmark v. Cohen & Slamowitz, LLP*, 378 F. Supp. 3d 222, 232 (W.D.N.Y. 2019) (cleaned up) (citation omitted).  Class actions themselves are considered inherently complex.  *In re Payment Card I*, 330 F.R.D. at 36.  The instant action spanned over ten years, involved a substantial number of class members, and necessitated investigations, discovery, litigation, appeals, and settlement negotiations.  Thus, the second *Goldberger* factor weighs in favor of the attorneys' fees request.

### c.   The Risk of the Litigation

"The most important *Goldberger* factor is often the case's risk."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) (citations omitted).  As discussed above, *see supra* Discussion Section II.C.3.c, Plaintiff would face substantial risks with respect to establishing liability and damages and maintaining the class

---

[14] At the Final Fairness Hearing, the Court was concerned that Class Counsel were also awarded attorneys' fees related to the Kimberly-Clark settlement.  After the Court ordered contemporaneous billing records, the Court reviewed the entries.  Across the 303-page document, Kimberly-Clark is listed in entries 40 times, with the designation "Kimberly-Clark and Costco" before the item that was reviewed or drafted.  The Court understands that sometimes motions were jointly filed, like the Second Circuit appeal.  However, the Court notes that there are other occasions where the entry is only referencing "Kimberly-Clark" and not Costco.

action if this case proceeded to trial. Therefore, this factor weighs in favor of approving the fee award.

### d.   The Quality of Representation

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation." *Hallmark*, 378 F. Supp. 3d at 233 (citations omitted). "Considering the favorable result reached on behalf of the Class, it is obvious that the members of the Class benefited from [C]ounsel," while avoiding the risk and uncertainty of trial and continued litigation. *Id.* at 234. Also, "[t]hat Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced [Plaintiff's] negotiating leverage, is a testament to the skill displayed by Class Counsel." *Hesse*, 2022 U.S. Dist. LEXIS 72641, at *39. Accordingly, the fourth *Goldberger* factor supports the requested award of attorneys' fees.

### e.   The Requested Fee in Relation to the Settlement

"To avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee as the size of the fund increases." *Hart*, 2020 WL 5645984, at *11 (citation omitted).

Here, Class Counsel's requested award (roughly $2.8 million) is both higher than the funds made available to the Settlement Class members ($2 million, including claims administration expenses) and the total value of the estimated monetary benefits to the class (around $709,955.60). In *Kurtz,* the Court emphasized that since any unclaimed funds would revert back to the defendants, the monetary amount requested in the submitted claims matters more for the attorneys' fees analyses than the total amount of the available settlement fund. *Kurtz*, 2024 WL 184375,

at *12.  Class Counsel cite to a number of cases to support the proposition that "the requested fee award is consistent with awards by this Court and others in similar consumer litigation resulting in non-common fund settlements."  (Class Counsel Mem. at 22.)  In *Belfiore*, for example, the Court awarded $3.2 million in fees, costs, and expenses when only $350,000 worth of claims had been submitted as of the fairness hearing, before the claims were validated.  (*See Belfiore* Final Approval Order, Dkt. 485-13, ¶ 18; *Belfiore*, No. 14-CV-4090 (PKC) (RML) (E.D.N.Y. Jan. 26, 2021), Dkt. 363 at 7:10–14.).  In *Kurtz*, where the actual monetary benefit to the class was $993,958.70, the Court awarded around $3.1 million in attorneys' fees.  *Kurtz*, 2024 WL 184375, at *12, 18.  Given this history of approved settlements in similar and/or related cases, this factor weighs in favor of the fee award.

### f.  Public Policy Considerations

Lastly, "when determining whether a fee award is reasonable, courts consider the social and economic value of the class action, and the need to encourage experienced and able counsel to undertake such litigation."  *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906 (HBP), 2015 WL 4006896, at *12 (S.D.N.Y. July 1, 2015) (cleaned up) (citation omitted).  Here, the public's interest in regulating the "flushable wipes" market would be furthered by the approval of the attorneys' fees award.  Plaintiff also alleges that this litigation and settlement has contributed to "the development of an unprecedented, truly 'flushable' wipe, now sold by Costco, that is fully supported by the wastewater industry, benefitting both consumers and municipalities alike."  (Class Counsel Mem. at 23.)  This factor thus weighs in favor of the fee award.

Based on the *Goldberger* factors, the Court finds that the attorneys' fees are reasonable—particularly in light of the low multiplier using the historical lodestar method.

Therefore, Plaintiff's attorneys' fees request is approved.

38

### C.    Litigation Expenses

In class action settlements, "[a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-214 (CM), 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) (citation omitted).

Here, Class Counsel request reimbursement of litigation expenses of $150,984.25.  To support their request, Class Counsel have submitted a chart summarizing their incurred expenses. (*See* Robbins Geller Decl., Ex. D, at ECF 15.)  These expenses, primarily attributed to expert fees, electronic discovery database hosting, and online legal and financial research were typical and necessary for Class Counsel to successfully prosecute this case, and thus should be reimbursed to Class Counsel.  *See, e.g.*, *Yang v. Focus Media Holding Ltd.*, No. 11-CV-9051 (CM) (GWG), 2014 WL 4401280, at *19 (S.D.N.Y. Sept. 4, 2014) (approving mediator fees, expert fees, electronic research, photocopying, postage, meals, and court filing fees and finding that these are the type of expenses that law firms typically bill to their clients).

### D.    Class Representative Incentive Awards

In determining a fair and appropriate incentive award, courts look to the existence of special circumstances, including

> the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).  However, courts should "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members" to "ensure that [such] awards are reasonable and promote equity between class representatives and absent class members."  *Moses*, 79 F.4th at 245.  Although the

$10,000 incentive award is significantly more than the maximum recovery any individual Class Member can obtain, that is not uncommon in consumer price-premium class actions such as this one. Indeed, the Court approved the same service awards in the *Kimberly Clark* and *Belfiore* flushable wipes class actions. *See Kurtz*, 2024 WL 184375 at *9; *Belfiore*, No. 14-CV-4090 (PKC) (RML) (E.D.N.Y. July 27, 2020), Dkt. 361, ¶ 18. Furthermore, here, as discussed, Plaintiff spent a considerable amount of time assisting Class Counsel in litigating this case because of its protracted history. Accordingly, the Court finds the $10,000 incentive award to Plaintiff reasonable.

## CONCLUSION

For the reasons stated above, the Court hereby finally approves the Settlement and certifies the Settlement Class. In addition, the Court approves and awards: (1) attorneys' fees in the amount of $2,849,015.75, (2) reimbursement of litigation expenses in the amount of $150,984.25, and (3) an incentive award to Plaintiff of $10,000.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 3, 2024
      Brooklyn, New York