UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————— x

D. JOSEPH KURTZ, Individually and on :   Civil Action No. 1:14-cv-01142-PKC-RML
Behalf of All Others Similarly Situated, :
                                :   CLASS ACTION
                    Plaintiff, :
                                :
      vs. :
                                :
KIMBERLY-CLARK CORPORATION, et al., :
                                :
                  Defendants. :
                                :

—————————————————————— x

GLADYS HONIGMAN, Individually and on :   Civil Action No. 2:15-cv-02910-PKC-RML
Behalf of All Others Similarly Situated, :
                                :   CLASS ACTION
                    Plaintiff, :
                                :
      vs. :
                                :
KIMBERLY-CLARK CORPORATION, :
                                :
                  Defendant. :
                                :

—————————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH KIMBERLY-CLARK**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ...........................................................................................................4

     A.      The Settlement Proceedings and Final Approval Orders.........................................5

     B.      The Appeal.................................................................................................................7

     C.      The Second Circuit Order .........................................................................................8

III.    THE COURT SHOULD REAFFIRM APPROVAL OF THE SETTLEMENT ..............10

     A.      The Vast Majority of the Court's Rule 23(e)(2) Findings Remain
          Undisturbed by the Appellate Order ........................................................................10

     B.      The Court's Analysis of the *Grinnell* Factors Remains Undisturbed by the
          Appellate Order........................................................................................................12

     C.      The Settlement Relief Is Adequate Under Rule 23(e)(2)(C)(iii) ...........................13

     D.      A Holistic Review of Rule 23(e)(2) and the *Grinnell* Factors Supports
          Reaffirming Approval of the Settlement...................................................................20

     E.      Overarching Policy Considerations Further Support Reaffirming that the
          Settlement Is Fair and Reasonable ...........................................................................22

IV.     CONCLUSION...........................................................................................................23

# TABLE OF AUTHORITIES

Page

**CASES**

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................... *passim*

*Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*,
2024 WL 1004697
(D.S.C. Mar. 8, 2024) ...................................................................22

*Everetts v. Pers. Touch Holding Corp.*,
2025 WL 942800
(E.D.N.Y. Mar. 28, 2025) ...............................................................20

*Hart v. BHH, LLC*,
2020 WL 5645984
(S.D.N.Y. Sep. 22, 2020) ................................................................18

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013)............................................................19

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
333 F.R.D. 364 (E.D. Pa. 2019).......................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2019 WL 6875472
(E.D.N.Y. Dec. 16, 2019) .................................................................5

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
2019 WL 3773737
(N.D. Ohio Aug. 12, 2019) ..............................................................19

*In re Wawa, Inc. Data Sec. Litig.*,
141 F.4th 456 (3d Cir. 2025) ...................................................18, 20, 23

*Jones v. Monsanto Co.*,
38 F.4th 693 (8th Cir. 2022) ...........................................................19

*Kurtz v. Kimberly-Clark Corp.*,
142 F.4th 112 (2d Cir. 2025) ......................................................... *passim*

*Kurtz v. Kimberly-Clark Corp.*,
2024 WL 184375
(E.D.N.Y. Jan. 17, 2024) ............................................................. *passim*

Page

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ............................................................. *passim*

*Tran v. Tran*,
    2002 WL 31108362
    (S.D.N.Y. Sep. 23, 2002), *aff'd*, 67 F. App'x 40 (2d Cir. 2003) ................................11, 12, 13

*United States v. Ben Zvi*,
    242 F.3d 89 (2d Cir. 2001)..............................................................10, 11

**STATUES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 ...........................................................................................3, 13
    Rule 23(b)(2)...................................................................................22
    Rule 23(e)....................................................................................... *passim*
    Rule 23(e)(2)...............................................................................5, 6, 10, 20
    Rule 23(e)(2)(A)..............................................................................11
    Rule 23(e)(2)(B)..............................................................................11
    Rule 23(e)(2)(C)..............................................................................9, 14
    Rule 23(e)(2)(C)(i)............................................................................11
    Rule 23(e)(2)(C)(ii)..........................................................................7, 11, 12
    Rule 23(e)(2)(C)(iii)......................................................................... *passim*
    Rule 23(e)(2)(C)(iv)..........................................................................11
    Rule 23(e)(2)(D)............................................................................6, 11, 14
    Rule 23(e)(3)................................................................................6, 11
    Rule 23(h) ..................................................................................... *passim*

Representative plaintiffs Dr. D. Joseph Kurtz and Gladys Honigman ("Plaintiffs") respectfully submit this memorandum in support of their renewed motion for final approval of the proposed class action Settlement with defendant Kimberly-Clark (the "Renewed Motion"), submitted herewith, the terms and conditions of which are set forth in the Settlement Agreement.[1]

## I.    INTRODUCTION

Settlement approval returns to this Court on remand from the Second Circuit Court of Appeals following objector Theodore Frank's ("Frank") Rule 23(e) appeal of the Court's decision finally approving the Settlement between Plaintiffs and Kimberly-Clark. The Court of Appeals ultimately issued an opinion "clarify[ing]" the scope of just one of the 16 factors and sub-factors of Rule 23(e) and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), narrowly finding that Rule 23(e)(2)(C)(iii) now requires district courts, in their examination of the adequacy of class relief "taking into account . . . the terms of any proposed award of attorney's fees," "to compare the proportion of total recovery allocated to the class to the proportion of total recovery allocated to class counsel." *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 115 (2d Cir. 2025) (the "Appellate Order"). Because this Court "did not adequately consider the allocation of recovery between attorney's fees and class compensation **in its Rule 23(e) discussion**," the opinion reasoned, the Court of Appeals vacated the order approving the Settlement and remanded for further proceedings. *Id.*

---

[1]    Plaintiffs' Renewed Motion incorporates by reference their original motion for final approval of the Settlement (ECF No. 442; the "Motion") and Plaintiffs' initial, reply, and supplemental memoranda, and accompanying documents, submitted therewith. *See* ECF Nos. 443-45, 449-50, 456-57. All references to "ECF No. __" are to the docket in the *Kurtz* Action unless otherwise stated. All capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Settlement Agreement and General Release, filed April 5, 2022, ECF No. 432-1, and in Plaintiffs' memorandum of law in support of the Motion, filed August 3, 2022, ECF No. 443. Dr. Kurtz's separate settlement with defendant Costco Wholesale Corporation was finally approved by the Court on December 3, 2024. ECF No. 492. All internal quotations and citations are omitted unless otherwise indicated.

But the Court of Appeals also clarified that it offered "no opinion as to whether [this] settlement . . . is fair under Rule 23(e)," and "explicitly le[ft] open the possibility that after applying Rule 23(e)" and conducting a comparative analysis of the proportion of total recovery allocated to the Class and Class Counsel, "the district court may again conclude that this settlement is fair and approve it." *Id*. at 121. Indeed, the Appellate Order left untouched the vast majority of this Court's findings in its two thoroughly-reasoned approval orders. Instead, the Appellate Order focused intently on a single issue – the proper analysis required when considering the adequacy of class relief under Rule 23(e)(2)(C)(iii). On remand, the Court here is tasked with evaluating the adequacy of the Settlement relief under Rule 23(e) and determining whether the proportionality analysis "reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Id*. at 119.

Regardless of how the Court evaluates proportionality, the analysis leads to the same result that the Court reached in its previous opinions: the Settlement relief is adequate under Rule 23(e) and *Grinnell*, and the Settlement should be approved. That result is inescapable because whether the Court chooses to evaluate the "class recovery" based on the potential maximum, or actual, recovery, the fees awarded to Class Counsel do not raise issues about the adequacy of Class relief. In fact, Frank did not even challenge the fee award on appeal. Nor did he challenge the adequacy of the total value of the Settlement or cash benefits provided to Settlement Class Members. Rather, Frank argued that the Settlement is *per se* unfair under Rule 23(e) because the Class relief ultimately claimed by Settlement Class Members is less than the fee award, and that the Court erred by looking to the total amount offered rather than the amount claimed. But the Court of Appeals rejected both of these arguments, instead issuing an opinion that merely clarified that courts must perform a proportionality analysis under Rule 23(e)(2)(C)(iii) regardless of whether attorneys' fees are paid

- 2 -

separately from Class relief, and regardless of whether the district court performed a similar analysis under Rule 23(h).

The purpose of the Rule 23 proportionality inquiry, as the Court of Appeals confirmed, is to "prevent[] unscrupulous counsel from quickly settling a class's claims to cut a check." Appellate Order at 118. But that clearly did not happen here as the Settlement was reached only after over eight years of intense litigation and protracted settlement negotiations, facilitated by a neutral mediator, which delivers substantial nationwide relief for Settlement Class Members. As the Court of Appeals recognized, class actions serve "significant deterrence functions in service of the public," and "substantial payments to attorneys can help serve that function." *Id*. at 121. Such is the case here, where Class Counsel secured a "substantial benefit" for the Settlement Class and have dedicated over a decade to the litigation and Settlement of the Actions, and where the litigation played a significant role in encouraging Kimberly-Clark and other "flushable" wipes manufacturers to meaningfully improve the quality of their wipes, benefiting consumers and wastewater facilities alike.

Because the Settlement is fair and reasonable under Rule 23(e) and the *Grinnell* factors, and because the Rule 23(e)(2)(C)(iii) evaluation raises no "questions about the *adequacy of class relief*" (Appellate Order at 121 (emphasis in original)) that would render the Settlement unfair, the Court should reaffirm final approval of the Settlement and its findings in the Approval Orders (defined below) that remain undisturbed by the Appellate Order.[2]

---

[2]    While outside the substantive scope of the remand for the reasons explained below, because the Court of Appeals vacated the Amended Approval Order (defined below) in its entirety, Plaintiffs respectfully request that the Court also reaffirm its approval of the awards of attorneys' fees, litigation expenses and charges, and class representative incentive awards.

## II.    BACKGROUND

Class Counsel unwaveringly pursued Plaintiffs' claims in hard-fought litigation over the course of eight years that included multiple evidentiary hearings, two trips to the Second Circuit, extensive discovery, contentious expert submissions and testimony, and exhaustive class certification briefing and proceedings, including on remand from the Court of Appeals.  Serra Decl. ¶¶6-26 (ECF No. 444).  After persistent encouragement by the Court, the parties eventually engaged in settlement discussions that spanned several years and included the assistance of the Honorable Wayne R. Andersen (Ret.), multiple trips to Kimberly-Clark's offices in Neenah, Wisconsin, and several rounds of expert-facilitated testing of Kimberly-Clark's "flushable" wipes Products.  *Id*. ¶¶27-29.  The parties ultimately reached agreement on the contours of a settlement on December 29, 2021.  *Id*. ¶29.  On April 5, 2022, Plaintiffs moved for preliminary approval of a nationwide, claims-made Settlement.  ECF Nos. 430-32.

Under the terms of the Settlement Agreement, Settlement Class Members submitting a claim without a proof of purchase will receive seventy cents ($0.70) for each package of wipes purchased up to a maximum claim of seven dollars ($7.00), representing a limit of 10 packages per household. ECF No. 432-1 ¶2.4.  Alternatively, a class member submitting a claim with a proof of purchase will receive one dollar and ten cents ($1.10) for each package purchased up to a maximum claim of fifty dollars and sixty cents ($50.60), representing a limit of 46 packages per household.  *Id*.  Kimberly-Clark agreed to a $20 million cash cap on settlement claims and to pay fees and expenses of no more than $4,100,000.  *Id*. ¶¶2.5, 6.1.  The Settlement also provided for notifying Settlement Class Members about the agreement using best-in-class tools and technology to reach as many Settlement Class Members as possible, including by publication media notice utilizing online display, search terms, social media impressions, a settlement website, and a toll-free number.  *Id*. ¶¶4.1-4.3 and Exhibits A and B1-B3 attached thereto.

- 4 -

A.       The Settlement Proceedings and Final Approval Orders

On August 3, 2022, Plaintiffs moved for final approval of the Settlement.  ECF No. 442.  On

August 16, 2022, Frank – a routine objector to class action settlements – lodged the sole objection to

the Settlement, arguing, *inter alia*, that the disproportionality between the attorneys' fees and class

recovery render the Settlement and fee request unfair under Rules 23(e) and (h).  ECF No. 446.  The

Court held a final approval hearing on September 7, 2022.  Following the request for, and

submission of, supplemental briefing on several issues, the Court resumed the fairness hearing on

November 7, 2022.

On June 12, 2023, the Court issued a Memorandum & Order approving the Settlement, but

deferring the issue of attorneys' fees for a subsequent hearing (the "Approval Order").  ECF No. 471

at 30.  In the Approval Order, the Court rejected Frank's claim that the Settlement is "unduly tainted

by self-interest," reasoning that "the settlement cannot be viewed as self-serving simply because the

class did not fully utilize it or because other elements could have enhanced it."  *Id*. at 16-20.  The

Court also found that the Settlement was both procedurally and substantively fair, concluding that

"nearly every *Grinnell* factor favors approving the Agreement" and that the Rule 23(e)(2) factors

supported approval.[3]  *Id*. at 20-29.  Additionally, the Court concluded that the notice plan and claims

---

[3]    The *Grinnell* factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 2019 WL 6875472, at *13-*14 (E.D.N.Y. Dec. 16, 2019) (citing, *e.g*., *Grinnell*, 495 F.2d at 463).  The Rule 23(e)(2) factors, which largely overlap with the *Grinnell* factors, are:

　　　　(A) the class representatives and class counsel have adequately represented the class;
　　　　(B) the proposal was negotiated at arm's length;
　　　　(C) the relief provided for the class is adequate, taking into account:
　　　　　　　(i) the costs, risks, and delay of trial and appeal;

process supported approval and ensured an "'equitable and timely distribution of [the] settlement fund,'" and rejected Frank's unfounded arguments that the plan of distribution was designed to throttle claims and reduce the Class recovery. *Id*. at 29.

On September 19, 2023, the Court held a hearing to resolve Plaintiffs' request for attorneys' fees and expenses, and to reevaluate the fairness of the Settlement in light of the Second Circuit's newly-issued decision in *Moses v. New York Times Co*., 79 F.4th 235 (2d Cir. 2023).  During the hearing, Plaintiffs updated the Court on the claim-administration process, stating that they received 147,645 valid claims worth $993,958.70.  Transcript, dated Sep. 19, 2023, ECF No. 485-7 at 8-9 ("Hr'g Tr.").  On January 17, 2024, the Court issued an Amended Memorandum & Order, which extensively analyzed the impact of *Moses* on the class-action settlement approval process, "revisit[ed]" the substantive fairness analysis to ensure compliance with *Moses*, and awarded $3,169,335.02 in "reasonable attorneys' fees" after an "across-the-board reduction of 20% to Class Counsel's fee application."  *Kurtz v. Kimberly-Clark Corp*., 2024 WL 184375, at *5-*10, *16 (E.D.N.Y. Jan. 17, 2024) (the "Amended Approval Order"; together with the Approval Order, the "Approval Orders").

As to the analysis of the Class relief "taking into account" the award of attorneys' fees under Rule 23(e)(2)(C)(iii), the Court in the Amended Approval Order found that the payment of fees "separate and apart" from the settlement benefits "will not affect the Class's recovery" and, thus, "adequately protects the Class's interests." *Id*. at *6, *8.  For similar reasons, although attorneys' fees are paid before the Settlement benefits under the agreement, the Court determined that the

---

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Settlement's "timing provision does not result in any unfairness to Class Members." *Id*. at *8.

Accordingly, and applying Rule 23(e) and *Grinnell* – aided by the Second Circuit's *Moses* decision –

the Court re-approved the Settlement. *Id*. at *20. In doing so, the Court affirmed those factors and

analyses supporting approval in its earlier Approval Order that were unaffected by *Moses*. *Id*.

at *14, *20.

### B.    The Appeal

Following entry of the Amended Approval Order, Frank appealed. ECF Nos. 476, 480.

Frank's arguments relied almost exclusively on Rule 23(e)(2)(C)(ii)-(iii) to argue that the Settlement

is unfair because it purportedly grants an outsized share of the recovery to Class Counsel, thereby

shortchanging the Class.[4] Notably, despite challenging the proposed attorneys' fee award in the

district court, Frank chose not to challenge the award under Rule 23(h) on appeal. *See generally*

Objector Br.; *see also* Appellate Order at 116-17. In response, Plaintiffs argued that Rule

23(e)(2)(C)(ii)'s effectiveness inquiry did not address the allocation of funds between the Class and

Class Counsel, and thus could not render the Settlement "ineffective" based on the ultimate

allocation result.[5] As to Rule 23(e)(2)(C)(iii), Plaintiffs argued that: (1) the attorneys' fee review

guards against counsel who sellout the class for a quick pay-off – something that did not occur here

given the nearly eight years of active and contentious litigation before the Settlement was reached;

(2) the separately-funded attorneys' fee structure was designed to maximize the relief provided to the

Class, and would thus not impact the settlement benefits; and (3) the Ninth Circuit's "red flags"

---

[4]    Appellant's Opening Brief, dated June 7, 2024, *Kurtz v. Kimberly-Clark Corp*., Nos. 24-425(L), 24-454 (2d Cir.) ("Appellate Action"), ECF No. 50.1 ("Objector Br.") at 3.

[5]    Plaintiffs-Appellees' Answer Brief, dated Sep. 6, 2024, Appellate Action, ECF No. 70.1 ("Answer Br.") at 38-43.

analysis did not indicate self-dealing as Frank contended.  Answer Br. at 43-50.  The Court held oral argument on the appeal on March 19, 2025.

### C.     The Second Circuit Order

On July 1, 2025, the Court of Appeals issued an opinion vacating the Amended Approval Order and remanding to the district court for further proceedings.  Appellate Order at 121.  The Court of Appeals held that "regardless of whether a settlement is structured as two separate funds, Rule 23(e) requires courts to consider the allocation of recovery between class counsel and the class before approving a settlement."  *Id*. at 117.  The Court of Appeals "explicitly decline[d], however, Frank's invitation to go further and reject the settlement."  *Id*.  The ruling examined Rule 23(e), the 2018 Amendments thereto (the "2018 Amendments"), and the *Moses* decision, and reaffirmed that Rule 23(e)(2)(C)(iii)'s "review of attorney's fees was intended to 'prevent[ ] unscrupulous counsel from quickly settling a class's claims to cut a check.'"  *Id*. at 118 (quoting *Moses*, 79 F.4th at 244).  The Court of Appeals reasoned that an attorneys' fee award "can impact the amount of monetary relief provided to the class" because a "major risk[] of class action settlements is that class counsel may undervalue the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly."  *Id*.  Accordingly, the Court of Appeals directed district courts to (1) "compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and [(2)] consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness."  *Id*. at 118-19.

As to the specific "proportionality analysis" that district courts are required to perform, the Court of Appeals identified certain benchmarks that parties typically use to assess the adequacy of the "class recovery" under Rule 23(e)(2)(C)(iii), including the hypothetical, actual, and predicted recoveries.  *Id*. at 119.  But the Court of Appeals refused to mandate that district courts utilize any particular benchmark, instead concluding that "which of these is the most appropriate benchmark to

use in any specific settlement is the kind of fact-bound question that is best left to the district court's discretion." *Id*. For example, settlements with "unduly complicated claim procedures," coupled with "abysmal claim rates," might favor "using actual class recovery as the comparator." *Id*. "So long as the proportion of the total recovery that goes to attorney's fees is compared to the proportion of 'relief provided for the class,'" the Court of Appeals reasoned, "whether that be the actual, hypothetical, or predicted class recovery, Rule 23(e)(2)(C)(iii) is satisfied." *Id*. at 119-120 (quoting Fed. R. Civ. P. 23(e)(2)(C)).

The focus of Rule 23(e)(2)(C)(iii)'s comparative analysis, as the opinion explained, is to determine if "the proportion of the total recovery allocated to attorney's fees compared to the proportion of the total recovery allocated to the class raise[s] any questions about the *adequacy of class relief*?" *Id*. at 121 (emphasis in original).[6] Because the Court "did not consider the allocation of recovery between class counsel and the class in assessing settlement fairness" in its Rule 23(e) analysis, the Court of Appeals explained, it vacated the Amended Approval Order. *Id*. Notably, however, the Court of Appeals "explicitly [left] open the possibility" that the district court may affirm approval, clarifying that Rule 23(e)(2)(C)(iii) is "just one of multiple factors" to be considered, along with important policy concerns, when evaluating a settlement's fairness:

> To be clear: we offer no opinion as to whether the settlement in this instant case is fair under Rule 23(e) or not. That decision remains within the district court's discretion, and *we explicitly leave open the possibility that after applying Rule 23(e) and comparing the allocation of attorney's fees to class recovery, the district court may again conclude that this settlement is fair and approve it*. After all, the impact of attorney's fees on class relief is just one of multiple factors detailed in Rule 23(e). Our holding today that a court must consider this factor does not render it singularly

---

[6] The Court of Appeals made clear that the Rule 23(e) comparative analysis is separate and distinct from the Rule 23(h) comparative analysis for assessing attorneys' fees, which focuses on "whether fees are reasonably calculated and genuinely earned—using class recovery as a measuring stick for attorney success." Appellate Order at 121. To that end, the Court of Appeals acknowledged the Amended Approval Order's comparative analysis under Rule 23(h). *Id*. at 120. It also clarified that the "portion of the court's decision, in which it calculated the attorney's fees under Rule 23(h), is not before us on appeal." *Id*. at 116.

dispositive. Alongside providing a class with compensation, class action lawsuits fulfill significant deterrence functions in service of the public. When properly earned, substantial payments to attorneys can help serve that function. As a result, ***even settlements that grant a substantial proportion of monetary recovery to class counsel may ultimately be fair upon consideration of all the requisite factors***.

*Id*.

## III.    THE COURT SHOULD REAFFIRM APPROVAL OF THE SETTLEMENT

### A.    The Vast Majority of the Court's Rule 23(e)(2) Findings Remain Undisturbed by the Appellate Order

The Appellate Order addressed an exceedingly narrow issue: when district courts evaluate the fairness of a class action settlement under Rule 23(e)'s four factors, including Rule 23(e)(2)(C)'s four sub-factors, and the nine *Grinnell* factors, does Rule 23(e)(2)(C)(iii) require an examination of "how recovery is apportioned between class members and class counsel, regardless of whether the parties use a separate fund structure in their settlement agreement"? Appellate Order at 118. The Court of Appeals concluded that, because "formal segregation" between attorneys' fees and class compensation is unhelpful in assessing settlement negations and because "fees and class recovery are inevitably intertwined," it does. *Id*. at 120. The opinion did not make ***any*** explicit findings as to this Court's consideration of the other ***16 factors and sub-factors*** of Rule 23(e) and *Grinnell*. And it clarified that "the impact of attorney's fees on class relief is ***just one of multiple factors*** detailed in Rule 23(e)." *Id*. at 121. It unambiguously confirmed that the Court's attorneys' fee decision under Rule 23(h) was "not before us on appeal." *Id*. at 116.

Consequently, the vast majority of the Court's findings in the Approval Orders remain outside the "specific dictates of the remand order as well as the broader 'spirit of the mandate'" issued by the Second Circuit. *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001). To that end, the mandate here "is unambiguously limited in scope" (*id.*): "[b]ecause the district court did not consider the allocation of recovery between class counsel and the class in assessing settlement

- 10 -

fairness, as required by Rule 23(e)," the Court of Appeals "vacate[d] and remand[ed] for the district court to conduct *this analysis* in the first instance." Appellate Order at 121. Thus, because Frank chose not to challenge the Court's findings under nearly all of the other settlement fairness factors on appeal, those findings "[became] the law of the case" and he is "deemed to have waived the right to challenge" them. *Ben Zvi*, 242 F.3d at 96.

For example, Frank did not challenge on appeal, and the Appellate Order did not address or overturn, *any* of the Court's procedural fairness findings under Rule 23(e)(2)(A)-(B). Thus, the Court's findings in the Approval Orders that the settlement is untainted by self-interest, the class representatives and Class Counsel provided adequate representation, and the settlement was negotiated at arm's length, remain unaffected by the Appellate Order and are the law of the case. Approval Order at 16-22; Amended Approval Order at *7, *10, and n.4. Similarly, Frank did not challenge on appeal, and the Appellate Order did not address or overturn, the Court's substantive fairness findings under Rule 23(e)(2)(C)(i) and (iv), and under Rule 23(e)(2)(D). Accordingly, the Court's findings that the "costs, risks, and delay of trial and appeal . . . weigh in favor of final approval" and that "the Settlement Agreement applies to all Class Members equally," remain undisturbed by the Appellate Order and are the law of the case.[7] Approval Order at 17-20, 25-26; Amended Approval Order at *7-*9.

Similarly, even with respect to the sole other factor that Frank *did* challenge – Rule 23(e)(2)(C)(ii)'s "effectiveness" provision – the law of the case doctrine precludes the Court from reconsidering the issue because it was "decided by necessary implication." *Tran v. Tran*, 2002 WL 31108362, at *2 (S.D.N.Y. Sep. 23, 2002), *aff'd*, 67 F. App'x 40 (2d Cir. 2003) (because the notice

---

[7]   As to Rule 23(e)(2)(C)(iv)'s assessment of "any agreement required to be identified under Rule 23(e)(3)," the Court found that the factor "has no bearing on the final approval analysis" because there are no side agreements under the Settlement. Amended Approval Order at *8. This finding likewise remains undisturbed by the Appellate Order.

- 11 -

of appeal included the court's order awarding plaintiff's attorneys' fees, and the "Court of Appeals did not disturb" that award, "the implication is that it was affirmed and reconsideration is precluded"). Rule 23(e)(2)(C)(ii) requires courts to assess whether "the relief provided for the class is adequate, taking into account . . . the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Frank argued both before this Court and on appeal that the Settlement was unfair under Rule 23(e)(2)(C)(ii) because the parties purportedly designed an onerous claims process that throttled claims to ensure a low payout and because the Settlement allocated a disproportionately large fee award to Class Counsel. ECF No. 446 at 4-5, 12; Objector Br. at 15, 23, 27, 34-36. Rejecting Frank's claims that the method of distribution was ineffective, this Court found that the claims process did not unduly burden Settlement Class Members' ability to file claims and otherwise determined that the Settlement provided Settlement Class Members with a "substantial benefit," reasoning that "any unclaimed funds will result from class members failing to accept the settlement offer, not from an inherently deficient offer." Approval Order at 18, 27-29. Because the Court of Appeals impliedly affirmed these findings on appeal – and clarified that the requested proportionality analysis must be conducted under Rule 23(e)(2)(C)(iii), *not* (C)(ii) – they remain the law of the case and "reconsideration is precluded" on remand. *Tran*, 2002 WL 31108362, at *2.

**B.      The Court's Analysis of the *Grinnell* Factors Remains Undisturbed by the Appellate Order**

This Court thoroughly examined the reasonableness of the Settlement under the Second Circuit's *Grinnell* factors in the Approval Order, including methodically analyzing: (a) the expected complexity, expense and likely duration of the litigation; (b) the overwhelmingly positive reaction of the Class to the Settlement; (c) whether Plaintiffs are sufficiently informed about the Actions; (d) the risks Plaintiffs face in establishing liability and damages; (e) Kimberly-Clark's ability to withstand a

greater judgment; and (f) the range of reasonableness of the settlement in light of the best possible recovery, and concluded that "nearly every *Grinnell* factor favors approving the Agreement." Approval Order at 22-28.  While Frank devoted "little attention" to these factors in both his objection and on appeal (*e.g.*, *id*. at 16, n.8; *see also generally* Objector Br.), the Court revisited its analysis in the Amended Approval Order following the Second Circuit's *Moses* opinion and affirmed "that each of these *Grinnell* factors supports final approval of the Settlement."  Amended Approval Order at *3, *10 (noting that the *Grinnell* factors "'remain a useful framework for considering the substantive fairness of a settlement'") (quoting *Moses*, 79 F.4th at 243).  In its opinion, the Court of Appeals again confirmed that the 2018 Amendments to Rule 23 "did not displace the traditional *Grinnell* factors" (Appellate Order at 118) and, by not disturbing the Court's *Grinnell* analysis, the Court's findings as to the *Grinnell* factors remain the law of the case and "reconsideration is precluded" on remand.  *Tran*, 2002 WL 31108362, at *2.

### C. The Settlement Relief Is Adequate Under Rule 23(e)(2)(C)(iii)

The Appellate Order's narrow mandate requires this Court to conduct an analysis on remand under Rule 23(e)(2)(C)(iii) to determine whether the comparison of "the proportion of the total recovery going to attorney's fees with the proportion going to the class . . . reveals a sufficient imbalance as to cast doubt on the settlement's fairness."  Appellate Order at 118-19.  To be clear, this Court's Approval Orders ***already*** provided considerable analysis of the reasonableness of both the Settlement relief and attorneys' fee award, including evaluating the fee award in relation to ***both*** the total funds made available to the Class ***and*** the total funds actually claimed by the Class.  *E.g.*, Approval Order at 18-20, 26-28; Amended Approval Order at *11-*12.  In fact, the Court repeatedly emphasized that it considered "all four factors under Rule 23(e)(2)," including the terms of the proposed attorneys' fee award under Rule 23(e)(2)(C)(iii), in reaching its conclusion that the Settlement is "substantively fair, reasonable, and adequate."  Amended Approval Order at *10, *18.

- 13 -

[8] But the Court of Appeals held that regardless of whether a district court conducts the comparative analysis under Rule 23(h)'s fee analysis, and regardless of whether the settlement separately funds attorneys' fees and Class relief, "Rule 23(e) requires its own separate analysis of fees in relation to class relief," focusing on whether the recovery allocated to fees "raise[s] any questions about the adequacy of class relief."  Appellate Order at 121.

To that end, the Court of Appeals made abundantly clear that a "major risk[] of class action settlements" underpinning the Rule 23(e)(2)(C)(iii) analysis is "that class counsel may undervalue the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly." *Id*. at 118.  Neither of those scenarios applies here.  Only after nearly eight years of hard-fought litigation, marked by multiple evidentiary hearings, extensive discovery, two trips to the Second Circuit, protracted class certification proceedings, an exhaustive battle of the experts, and years of arms-length settlement negotiations, including with the assistance of an experienced mediator, did the parties here eventually reach an agreement.  *See, e.g.*, Serra Decl. ¶¶6-29.  And only after Plaintiffs and Class Counsel were confident they had secured the best possible result for the Settlement Class in light of the "substantial litigation risks at trial in seeking to establish liability and damages, as well as in maintaining the class action through trial, particularly because of the factual and legal complexities of this action," did they ultimately agree to the Settlement.  Amended Approval Order at *17.  While the Court of Appeals reasoned that Rule 23(e)(2)(C)(iii) presumes that "attorney's fees *can* impact the amount of monetary relief provided to the class," the history of the Actions reveals that Plaintiffs and Class Counsel have in no way "sold out [the Court's] interests

---

[8]    *See also id*. at *7-*8 ("Specifically, the Court expressly evaluates the two core factors under Rule 23(e)(2)(C)–(D) and reviews the appropriateness of the proposed fees—including attorneys' fees, litigation expenses, and incentive awards—in assessing the overall fairness of the Settlement.").

in settling the case" by undervaluing the Settlement Class's claims in order to collect a quick fee. Appellate Order at 118.

The nature of the settlement negotiations and the significant relief obtained here for Settlement Class Members dispel any ulterior motive on Class Counsel's part and evidence that counsel appropriately valued Settlement Class Members' claims.  Indeed, while Judge Weinstein implored the parties to engage in settlement negotiations early in the litigation, the parties resisted, instead opting to test their positions through intense class certification, expert, appellate, and remand proceedings.  *See, e.g.*, Serra Decl. ¶¶13-17, 19-23, 27.  When the parties did elect to engage in settlement negotiations after approximately four-and-a-half years of litigation, their initial efforts spanned two years beginning in 2018 and involved dozens of telephone calls, two separate multi-day settlement meetings at Kimberly-Clark's offices in Wisconsin, a video conference, a mediation with the Honorable Wayne R. Andersen (Ret.), and multiple testing sessions at Kimberly-Clark's facilities to ensure that the company was on the path to developing wipes that were truly "flushable." *Id*. ¶¶27-28.  Following months of further direct negotiations in the fall and winter of 2021, the parties finally executed an MOU in December 2021, and Class Counsel spent another three months after that negotiating the terms of the agreement.  *Id*. ¶29.  These are not the efforts of self-interested counsel seeking a quick payday, as this Court has already found.  *See* Approval Order at 16-22.

Moreover, Class Counsel properly valued Settlement Class Members' claims in light of the attendant risks of continued litigation. *See, e.g.*, *id*. at 25-28.  The Court concluded as much when it determined, for example, that the majority of Settlement Class Members (those without proofs of purchase) "will be fairly compensated" as they "are set to receive an amount seven times greater than the minimum cost of one unit of flushable wipes and nearly half of the maximum cost of one unit." *Id*. at 18.  Tellingly, Frank did not challenge the individual or collective Settlement relief

during the settlement proceedings before this Court, nor did he challenge the relief on appeal, shedding further light as to the reasonableness of the recovery.  *See, e.g.*, *id*.; Objector Br. at 16 ("To be clear, Frank's appeal does not challenge the total value of the Settlement[.]").  And he did not present any evidence challenging the Settlement benefits provided to Settlement Class Members – (1) $0.70 per package purchased up to a total of $7.00 per household without proof of purchase, or (2) $1.10 per package purchased up to a total of $50.60 per household with proof of purchase – nor did he attempt to rebut Plaintiffs' expert, who opined that Kimberly-Clark charged a 6.2% price premium attributable to the "flushable" component of the wipes.  Approval Order at 27.

Frank's position is unsurprising because, from virtually every angle, the Settlement benefits provided to Settlement Class Members are reasonable. For example, the average claim of each Settlement Class Member ($6.73) is ***70% more*** than the average payout ($3.92) in the 49-state *Pettit* "flushable" wipes class action settlement, to which no objections were filed.  Hr'g Tr. at 9; ECF No. 457-3 at 3.  This is consistent with the fact that the maximum recovery obtained for Settlement Class Members here is greater for claimants with and without Proofs of Purchase than in both the *Pettit* and *Belfiore* "flushable" wipes class action settlements.  ECF No. 443 at 17.  And the aggregate Settlement relief here (nearly $1 million) results in a larger total cash payout than the known payouts in the *Belfiore* and *Pettit* "flushable" settlements ***combined*** (after two separate notice periods).  *See* ECF No. 456 at 22-23.  This is true even though Plaintiffs' expert found a larger price premium in the *Belfiore* action (7.95%),[9] and despite the fact that Kimberly-Clark's "flushable" wipes generally performed better during the Settlement Class Period than any other "flushable" wipes product available on the market.  ECF No. 443 at 17-18.

---

[9]    Plaintiff in the *Belfiore* action and Plaintiffs here used the same economic expert, Colin Weir.

Furthermore, the Court of Appeals refused to adopt Frank's position that attorneys' fees **must** be assessed in proportion to the actual class recovery.  *E.g.*, ECF No. 446 at 6; ECF No. 460 at 3. While district courts **can** assess the adequacy of the class "recovery" under Rule 23(e)(2)(C)(iii) in claims-made settlements utilizing the actual class recovery – for example, where there are "unduly complicated claim procedures combined with abysmal claim rates," neither of which are present here as the valid claims exceeded those in the comparable *Belfiore* and *Pettit* "flushable" settlements – the Court of Appeals said that courts can also assess the relief using the "hypothetical maximum recovery" or the "predicted class recovery."   Appellate Order at 119.   The choice of which benchmark to use "is the kind of fact-bound question that is best left to the district court's discretion."  *Id*.  But regardless of which benchmark the Court chooses to use for its comparative analysis, the proportion of the recovery allocated to fees in the Settlement undoubtedly does not raise questions about the adequacy of Class relief obtained for Settlement Class Members.  *Id*. at 121.

And the Court of Appeals explicitly refused to adopt a bright-line rule, advocated by Frank, that attorneys' fees can **never** exceed the amount claimed by the class.  Objector Br. at 27-30; Appellate Order at 119-20.   Rather, the Court of Appeals stressed that "successful class counsel should certainly be compensated," acknowledging that "even settlements that grant a substantial proportion of monetary recovery to class counsel may ultimately be fair upon consideration of all the requisite factors."  *Id*. at 118, 121.  That is precisely the case here.  Class Counsel negotiated a Settlement that provides Settlement Class Members the opportunity to claim collectively up to $20 million in Class relief.  Indeed, the Court of Appeals specifically acknowledged that a fee award not only "sheds light on how much is left for the class," but "how much was **negotiated for the class in the first place**."  *Id*. at 118.[10]  The fee award here – $3,169,335.02 – in litigation that has now been

---

[10]    The Court of Appeals' reasoning on this point is consistent with that of the Court.  *See, e.g.*, Approval Order at 17.

pending over eleven-and-a-half years, yields a negative lodestar of .80 as of July 15, 2022.[11]  That amounts to just 13.7% of the recovery obtained on behalf of the Settlement Class when the "total recovery" is assessed based on the "hypothetical maximum recovery," as envisioned by the Court of Appeals.  Appellate Order at 119-20.[12]  Such an award in the context of **this** litigation and claims-made Settlement "cast[s no] doubt on the settlement's fairness" in light of the unchallenged substantial Class relief secured for the Settlement Class.[13]  *Id*. at 119.

Indeed, Class Counsel should not be penalized for advocating for, and obtaining, a large cap on claims – a "heavily-negotiated term" that served in part to assuage Kimberly-Clark's very real concerns about the potential for liability.  *See* Hr'g Tr. at 12 (noting that "Kimberly-Clark certainly went into the settlement thinking it may well pay $20 million based on past experience").[14]  Those concerns were not unreasonable here given the sweeping scope of the Settlement Class – extending over **fourteen years** to purchasers of a variety of Kimberly-Clark-branded "flushable" wipes,

---

[11]  Class Counsel have not requested compensation for **any** of the settlement-related and appellate work incurred after July 15, 2022, over three years ago.  Nor do they intend to in the future.

[12]  Under this analysis, the numerator is the fee award – $3,169,335.02 – and the denominator is the $20,000,000 made available to the Settlement Class plus the fee award, or $23,169,335.02.  *See* Appellate Order at 120, n. 5 (discussing the Second Circuit's preferred "definition of 'total recovery,' comprised of just 'the relief provided for the class' (actual or hypothetical) and 'attorney's fees'").  Arguably, the total recovery using the hypothetical maximum benchmark is as high as $23,961,668.77 if calculated using Class Counsel's requested fee award prior to the Court's 20% reduction – $3,961,668.77 – which would make the fee award 13.2% of the maximum recovery.  *See id.*

[13]  *See, e.g.*, *Hart v. BHH, LLC*, 2020 WL 5645984, at *9 (S.D.N.Y. Sep. 22, 2020) (collecting cases awarding class counsel between 12% and 28% for settlement funds ranging from $15 million to $336 million); *see also In re Wawa, Inc. Data Sec. Litig.*, 141 F.4th 456, 470, 473-76 (3d Cir. 2025) (affirming attorneys' fee award, rejecting Frank objection and argument on appeal that district court "abused its discretion in determining that the fee request was reasonable by considering only the amount 'made available' to the class instead of also the amount actually claimed by the class," and endorsing Third Circuit's "flexible approach" for considering reasonableness that avoids "adopting hardline rules that would make 'fee awards exceeding the amount directly distributed to class members [ ] presumptively unreasonable'").

[14]  *See also* Hearing Transcript, dated Nov. 7, 2022, ECF No. 463 at 33 (explaining that claims in Kimberly-Clark's last consumer class action settlement consumed the entire $7 million fund, triggering pro rata reduction); Hr'g Tr. at 11-12 (discussing same).

including Cottonelle, Scott, and Huggies, ***nationwide***.  Ultimately, despite implementing a cutting edge notice program run by a well-respected settlement administrator that had successfully managed at least two other similarly-structured "flushable" wipes-related settlements, ECF No. 432-2 ¶7, and despite Class Counsel securing a significantly longer notice period for claims submissions than in analogous "flushable" settlements, ECF No. 443 at 9-10, the relatively low value of most Settlement Class Members' individual damages may ultimately have been "simply too small to motivate them to submit claims."  *See In re Baby Prods. Antitrust Litig*., 708 F.3d 163, 178 (3d Cir. 2013).  But Class Counsel should not be faulted for securing substantial Class relief for Settlement Class Members in hard-fought litigation "where claims are inherently less likely to be made."  *In re Sonic Corp. Customer Data Sec. Breach Litig*., 2019 WL 3773737, at *10 (N.D. Ohio Aug. 12, 2019).[15]

The reasonableness of the relief secured for the Settlement Class as compared to the fees awarded is also plainly evident when assessed using the nearly $1 million actually claimed by Settlement Class members.  That recovery compares favorably to other court-approved "flushable" wipes settlements in terms of total and individual payouts, as noted above, and is unqualifiedly reasonable as already outlined by the Court – namely because the costs, risk, delay of trial and appeal, and the effectiveness of the proposed method of distributing relief to the Settlement Class, "all favor[] granting final approval of the Settlement" and support the adequacy of the Class relief. Amended Approval Order at *7 (citing Approval Order at 23, 25-26, 28-29).  Those findings are not diminished by Class Counsel's recovery of reasonable (and reduced) fees under a lodestar analysis for eight-and-a-half years of work that achieved a "substantial benefit" for the Settlement Class.

---

[15]  *See also* Approval Order at 18 ("any unclaimed funds will result from class members failing to accept the settlement offer, not from an inherently deficient offer"); *Jones v. Monsanto Co*., 38 F.4th 693, 700 (8th Cir. 2022) ("If the court affirms the adequacy of the notice to the class, then the court cannot fault plaintiffs' counsel for the fact that class members, for myriad possible reasons, did not submit enough claims to exhaust the Common Fund.").

Nor are they out-of-step with other cases following the 2018 Amendments. *See, e.g.*, *Everetts v. Pers. Touch Holding Corp.*, 2025 WL 942800, at *4-*5 (E.D.N.Y. Mar. 28, 2025) (approving settlement that provided $98,284.88 in direct payments to claimants, along with credit monitoring services valued at $50,000, and awarding $297,038.56 in attorneys' fees, representing a 2.39 multiplier of the court's recalculated lodestar); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 385-86 (E.D. Pa. 2019) (approving claims-made settlement with potential $15.5 million value, where only 20,262 individuals filed claims for a total of $211,255.00 in cash payments plus an additional $286,986.50 in in-kind relief, and awarding a $1.1 million fee and expense award); *Wawa*, 141 F.4th at 462-63, 465-66, 476 (affirming award of $3.04 million in fees where 99% of claimants received $5 gift cards totaling $2.8 million and settlement included injunctive relief).[16]

### D.    A Holistic Review of Rule 23(e)(2) and the *Grinnell* Factors Supports Reaffirming Approval of the Settlement

The Second Circuit in *Moses* held that "[c]ourts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) *holistically*, taking into account – among other substantive considerations stated in the rule – the proposed attorneys' fees and incentive awards." 79 F.4th at 243. It also held that "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a ***useful framework*** for considering the substantive fairness of a settlement." *Id.* The Court of Appeals here echoed these

---

[16]    It is also worth noting that while district courts are now required "to examine how recovery is apportioned between class members and class counsel, regardless of whether the parties use a separate fund structure in their settlement agreement," the Court of Appeals also explicitly clarified that "a defendant's separate funds for attorney's fees and class recovery ***may [still] be a relevant consideration in assessing a settlement's fairness***." Appellate Order at 118, 120. Thus, while "not a replacement for the proportionality analysis required by Rule 23(e)(2)(C)(iii)," *id.* at 120, the Court may take this aspect of the Settlement into consideration in its fairness analysis. *Cf. Moses*, 79 F.4th at 246 (rejecting settlement where "there [was] effectively an inverse correlation between the amount of attorneys' fees . . . and the cash available for . . . distribution to class members").

sentiments, noting that "the impact of attorney's fees on class relief is just one of multiple factors detailed in Rule 23(e)" that is not "singularly dispositive." Appellate Order at 121. It also reaffirmed the holding that "the Amendments did not displace the traditional *Grinnell* factors." *Id*. at 118. Because the Rule 23(e) and *Grinnell* factors, considered individually and collectively, weigh in favor of finding that the Settlement is fair, reasonable, and adequate, final approval of the Settlement should be reaffirmed.

The Court of Appeals' narrow mandate directed the Court to conduct an analysis of fees in relation to the Class relief under Rule 23(e)(2)(C)(iii). That analysis, as explained above, *supra* §III.C., favors approval. Indeed, "even settlements that grant a substantial proportion of monetary recovery to class counsel may ultimately be fair upon consideration of all the requisite factors," as the Court of Appeals reasoned. Appellate Order at 121. But even if the Court found the proportionality factor neutral, or weighed against a finding of fairness, reaffirming approval here is appropriate under both the Second Circuit's holistic approach to evaluating the Rule 23(e) factors and the *Grinnell* framework for evaluating a settlement's fairness. As detailed in the Final Approval Orders, the Court thoroughly examined the Rule 23(e) and *Grinnell* factors and concluded that they overwhelmingly support that the Settlement is fair, reasonable, and adequate. That conclusion would not suddenly flip with a finding that a single factor is neutral or even weighed against approval. Rather, the Court's findings are only bolstered by the re-evaluation of Rule 23(e)(2)(C)(iii) as directed, and envisioned, by the Court of Appeals. *See id*. at 121 ("[W]e ***explicitly*** leave open the possibility that after applying Rule 23(e) and comparing the allocation of attorney's fees to class recovery, the district court may again conclude that this settlement is fair and approve it.").

- 21 -

### E.    Overarching Policy Considerations Further Support Reaffirming that the Settlement Is Fair and Reasonable

The Court of Appeals also recognized that important policy considerations regarding class actions play a role in courts' consideration and evaluation of settlement fairness. For example, the Court of Appeals noted that, "[a]longside providing a class with compensation, class action lawsuits fulfill significant deterrence functions in service of the public. When properly earned, substantial payments to attorneys can help serve that function." Appellate Order at 121. Such is the case here, where Class Counsel's efforts in securing a significant result for the Settlement Class served to deter false and misleading advertising practices. *E.g.*, *1 Newberg & Rubenstein on Class Actions* §1:8 (6th ed. June 2025 update) ("In addition to their compensatory function, class actions deter misconduct by harnessing private attorneys general to assist in the enforcement of important public policies."). And the Actions yielded additional game-changing deterrent and societal benefits as they helped contribute to the development and sale of the first truly "flushable" wipes in the United States that pass wastewater-supported, stringent industry standards, benefitting both consumers and municipalities alike – despite the Second Circuit reversing certification of Plaintiff's Rule 23(b)(2) injunctive relief claims. *See* Hr'g Tr. at 31-33.[17]

---

[17]    *Compare Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 2024 WL 1004697, at *4 (D.S.C. Mar. 8, 2024) (approving settlements with "flushable" wipes manufactures that "are materially similar to the already approved Kimberly-Clark settlement" requiring them to meet certain flushability standards, submit to periodic independent testing, and make modifications to the packaging of non-flushable wipes, appointing Robbins Geller as co-class counsel, and noting that the settlement discussions "followed lengthy negotiations with Kimberly-Clark regarding similar injunctive relief that predated the filing of this lawsuit"), *with* ECF No. 450-3, Declaration of Robert A. Villeé ¶¶8-9 ("[B]ased on my experience, knowledge, and first-hand testing, while Kimberly-Clark wipes were not flushable at the beginning of this litigation in 2014, during the course of this eight-year litigation, Kimberly-Clark has succeeded in developing a flushable wipe that meets the IWSFG (wastewater industry-supported) flushability standards. *That occurred in significant part due to this litigation* and the flushability negotiations in which I played a part, and which extended from this litigation to the *Preserve* matter, and eventually, the *Charleston* matter.").

## IV.    CONCLUSION

For the reasons discussed above and in its previous submissions, Plaintiffs respectfully request that the Court reaffirm: (1) approval of the proposed Settlement as fair, reasonable, and adequate; (2) its findings in the Approval Orders that remain unaffected by the Appellate Order; and (3) the Court's approval of awards of attorneys' fees, litigations expenses and charges, and class representative incentive awards as detailed in the Amended Approval Order. "It is past time for [Kimberly-Clark] class members to receive the benefits they were promised as part of the settlement, especially during a time of inflation." *Wawa*, 141 F.4th at 477.

DATED:  August 22, 2025                    Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           SAMUEL H. RUDMAN
                                           VINCENT M. SERRA
                                           FRANCIS P. KARAM


                                                  */s/ Vincent M. Serra*
                                           VINCENT M. SERRA

                                           58 South Service Road, Suite 200
                                           Melville, NY  11747
                                           Telephone:  631/367-7100
                                           631/367-1173 (fax)
                                           srudman@rgrdlaw.com
                                           vserra@rgrdlaw.com
                                           fkaram@rgrdlaw.com

- 23 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
Florida Bar No. 0079987
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1 of the United States District Court for the Eastern District of New York because it contains 7,887 words.

*/s/ Vincent M. Serra*
VINCENT M. SERRA