UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. JOSEPH KURTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>KIMBERLY-CLARK CORPORATION, et al.,<br><br>                    Defendants. | Civil Action No. 1:14-cv-01142-PKC-RML<br><br><u>CLASS ACTION</u> |
| GLADYS HONIGMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>KIMBERLY-CLARK CORPORATION,<br><br>                    Defendant. | Civil Action No. 2:15-cv-02910-PKC-RML<br><br><u>CLASS ACTION</u> |

**OBJECTION OF THEODORE H. FRANK
TO RENEWED PROPOSED CLASS ACTION SETTLEMENT
AND ATTORNEYS' FEE REQUEST**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.     The Second Circuit requires courts to consider the allocation of settlement funds. ................. 3

II.    The settlement should be rejected because Rule 23(e) forbids preferential treatment to class counsel such as the payment of over $3 million to the attorneys compared to less than $1 million to the class................................................................................................................. 5

     A.     Claims-made settlements where funds are "made available" but never paid to the class obscure the true allocation of class relief. .................................................. 6

     B.     The settlement should be rejected because the ratio of fees to actual class recovery shows the parties structured the settlement to disproportionately benefit the attorneys.................................................................................................................. 10

     C.     Class counsel negotiated a disproportionate share of the settlement for themselves. 12

     D.     Class counsel designed an onerous claims process that throttled claims and reduced class recovery................................................................................................ 15

     E.     Class counsel negotiated a segregated fund that insulates their fee from scrutiny and unfairly prevents the class from recovering any reduction........................................... 15

III.    If the Court approves the settlement, any fees should be based on true class benefit. .......... 17

CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*In re "Agent Orange" Prod. Liab. Litig.,*
    818 F.2d 216 (2d Cir. 1987) ....................................................................................4, 11

*In re Baby Prods. Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013) ....................................................................................7, 11

*Belfiore v. Procter & Gamble Co.,*
    No. 2:14-cv-04090 (N.D. Cal. Jan. 26, 2021) ..............................................................15

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) .......................................................................... 12, 17, 19

*Briseño v. Henderson,*
    998 F.3d 1014 (9th Cir. 2021) ...........................................................5, 7, 8, 10, 11, 14, 18

*Burrell v. United States,*
    467 F.3d 160 (2d Cir. 2019) ......................................................................................... 6

*In re Carrier iQ, Inc., Consumer Privacy Litig.,*
    2016 WL 4474366, 2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016)...................7, 15

*Cassese v. Wash. Mut., Inc.,*
    2014 U.S. Dist. LEXIS 85836 (E.D.N.Y. June 23, 2014)...........................................17

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ...................................................................................4, 19

*Cunningham v. Suds Pizza, Inc.,*
    290 F.Supp.3d 214 (W.D.N.Y. 2017) .........................................................................13

*Dennis v. Kellogg,*
    697 F.3d 858 (9th Cir. 2012)......................................................................................13

*In re Dry Max Pampers,*
    724 F.3d 713 (6th Cir. 2013) ...............................................................................4, 12, 19

*Espinal v. Victor's Cafe 52nd St., Inc.,*
    2019 WL 5425475, 2019 U.S. Dist. LEXIS 183642 (S.D.N.Y. Oct. 23, 2019) ........................14

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 15-cv-3747, Dkt. 517-2 (N.D. Cal. Dec. 14, 2020) ................................................................. 8

*Ferrington v. McAfee, Inc.*,
    No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) ...................... 13

*Fitzgerald v. Gann Law Books*,
    2014 U.S. Dist. LEXIS 174567 (D.N.J. Dec. 17, 2014) ................................................................ 17

*Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Family Tr.*,
    925 F.3d 63 (2d Cir. 2019) ........................................................................................................... 18

*Gallego v. Northland Grp., Inc.*,
    814 F.3d 123 (2d Cir. 2016) ......................................................................................................... 11

*In re Giant Interactive Group, Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................................. 14

*Goldberger v. Integrated Res.*,
    209 F.3d 43 (2d Cir. 2000) ........................................................................................................... 15

*Hart v. BHH LLC*,
    2020 WL 5645984, 2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sept. 22, 2020) ...................... 13

*Hasemann v. CVS Pharm. Inc.*,
    2023 U.S. Dist. LEXIS 19561, 2023 WL 1785545 (E.D.N.Y. Feb. 6, 2023) ............................ 9

*Hesse v. Godiva Chocolatier*,
    2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ........................................................... 13

*Holt v. Foodstate, Inc.*,
    No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) .................................... 8

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ..................................................................................................... 15

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
    2018 WL 5013764, 2018 U.S. Dist. LEXIS 177824 (W.D. Wash. Oct. 16, 2018) .................... 7

*Kaplan v. Rand*,
    192 F.3d 60 (2d Cir. 1999) ........................................................................................................... 12

*Karvaly v. eBay Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) .................................................................................................13

*Kukorinis v. Walmart, Inc.*,
    No. 19-cv-20592, Dkt. 97 (S.D. Fla. Sept. 20, 2021).......................................................8

*Kumar v. Salov N. Am. Corp.*,
    No. 14-cv-02411, Dkt. 164 ¶4 (N.D. Cal. May 26, 2017)...........................................7

*Kurtz v. Kimberly-Clark Corp.*,
    142 F.4th 112 (2d Cir. 2025) ...........................................................................................passim

*Lagarde v. Support.com, Inc.*,
    2013 WL 1994703, 2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013)............8

*In re Livingsocial Mktg. and Sales Practices Litig.*,
    298 F.R.D. 1 (D.D.C. 2013)...............................................................................................8

*Lowery v. Rhapsody Int'l, Inc.*,
    69 F.4th 994 (9th Cir. 2023)............................................................................................10

*Ma v. Harmless Harvest*,
    2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018) ...............................................................5

*Mahoney v. Endo Health Solutions, Inc. et al.*,
    No. 1:15-cv-09841 (S.D.N.Y. Oct. 21, 2016) ...............................................................9

*McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626
    (E.D. Pa. 2015) .................................................................................................................12

*Moses v. N.Y. Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ..............................................................................................4

*Ostrowski v. Amazon*,
    2016 WL 4992051, 2016 U.S. Dist. LEXIS 126532 (W.D. Wash. Sept. 16, 2016)....9

*Parker v. Time Warner Entm't Co., L.P.*,
    631 F. Supp. 2d 242 (E.D.N.Y. 2009) ..........................................................................12

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ....................................................................... 1, 7, 8, 9, 11, 16

iv

*Pettit v. Procter & Gamble,*
    No. 3:15-cv-2150 (N.D. Cal. July 17, 2019) ...............................................................14

*Plummer v. Chemical Bank,*
    668 F.2d 654 (2d Cir. 1982) ...................................................................................................11

*Poertner v. The Gillette Co.,*
    No. 6:12-v-00803-GAP-DAB (S.D. Fla.) ...........................................................................8

*Roes v. SFBSC Mgmt., LLC,*
    944 F.3d 1035 (9th Cir. 2019).........................................................................................7, 13

*In re Samsung Top-Load Washing Machine Mktg. Sales Practices & Liab. Litig.,*
    997 F.3d 1077 (10th Cir. 2021).............................................................................................11

*Serby v. First Alert, Inc.,*
    783 Fed. Appx. 38 (2d Cir. 2019).........................................................................................5

*Sobel v. Hertz,*
    No. 3:06-CV-00545, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ...........................18

*In re Sony VAIO Computer Notebook Trackpad Litig.,*
    No. 09-cv-2109 (S.D. Cal. Aug. 7, 2017) ..............................................................................8

*Tarlecki v. Bebe Stores, Inc,*
    No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3, 2009) ...................13

*Trombley v. Bank of Am. Corp.,*
    No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072 (D.R.I. May 3, 2012) ..................................13

*Wilson v. Playtika Ltd.,* No. 18-cv-05277-RSL,
    2020 U.S. Dist. LEXIS 222843 (W.D. Wash. Nov. 30, 2020).......................................................9

*In re World Trade Ctr. Disaster Site Litig.,*
    2015 U.S. Dist. LEXIS 15942 (S.D.N.Y. Jan. 16, 2015)............................................................16

Rules and Statutes

Fed. R. Civ. P. 23 .............................................................................................................4, 10, 18

Fed. R. Civ. P. 23(e)........................................................................................................1, 3, 5, 18

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................ 1, 4, 10, 14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................................ 2, 6, 10

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................ 2, 3, 6, 10

Fed. R. Civ. P. 23(h) ........................................................................................................ 3, 18

Other Authorities

American Law Institute,
*Principles of the Law of Aggregate Litig.* § 3.05, cmt. b (2010) ........................................ 12

Erichson, Howard M.,
*Aggregation As Disempowerment: Red Flags in Class Action Settlements,*
92 NOTRE DAME L. REV. 859 (2016) ........................................................ 11

Frank, Ted,
*Settlement Insurance Shows Need for Court Skepticism in Class Actions,*
CEI Open Market blog (Aug. 31, 2016) ........................................................ 5

Notes of Advisory Committee on 2003 Amendments to Rule 23(h) .................................... 18

# INTRODUCTION

On remand from the Second Circuit, Plaintiffs renew their request that this Court approve an unaltered settlement that pays the attorneys over $3 million while the class recovered less than $1 million. This disproportionate allocation not only violates intuitive notions of justice, but also Rule 23(e).

Plaintiffs try to convince the Court that it already conducted the necessary analysis, but they presented this same argument on appeal and the Second Circuit disagreed. Rule 23(e)(2)(C) requires courts to scrutinize the allocation of funds between class counsel and the class to ensure a fair settlement. *See* Section I. Plaintiffs claim they satisfy Rule 23(e)(2)(C) despite reaching a settlement that's more lop-sided than the result the Seventh Circuit called impermissibly "selfish." *Pearson v. NBTY Inc.*, 772 F.3d 778, 787 (7th Cir. 2014). Plaintiffs argue that the situation recognized by the Second Circuit as an example of when courts should look to the actual class benefit in the approval analysis—*i.e.*, "unduly complicated claim procedures combined with abysmal claim rates"—is not present here, but both factors exist in spades. Dkt. 495 at 17; *see Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 119 (2d Cir. 2025). They fail to address the fact that they devised and implemented a claims process that required proof of purchase for any class member to claim more than $7, even though the disposable wipes at issue are a consumable product that class members purchased over a decade-long class period and for which no one would save their receipts in the ordinary course. It shouldn't surprise anyone, and certainly not the experienced class-action attorneys representing the settling parties, that the amount claimed by the class was less than $1 million. Yet they nevertheless tried to sell an illusory $20 million settlement to this Court. No matter how the parties spin it, this is not "significant relief" for the class. *See* Dkt. 495 at 15. The Court saw right through this charade previously, and it should do so again now. *See* Section II.

To reject the settlement, the Court need not find that class counsel was simply "seeking a quick payday." Dkt. 495 at 15. Allocational problems tend to arise because of the inherent agency problems in class-action settlements. A defendant wishes only to get out of a case as cheaply as

possible, and is indifferent as to the allocation of the cost of settlement between class counsel and the class. Both class counsel and the defendant have the incentive to create the *illusion* of relief at the expense of the class to obtain settlement approval, maximize fees, and minimize the cost to the defendant. Claims-made settlements with imaginary "caps" on defendant liability can create that illusion if a district court fails to scrutinize what is happening. *See* Section II.A.

Here, Kimberly-Clark agreed to make "available" up to $20 million to compensate the class and paid class counsel over $3 million from a separate fund. But that $20 million figure was illusory—or, as this Court acknowledged, "purely hypothetical." Dkt. 474 at 24. The claims process was effectively throttled, making it onerous for class members to claim $7, with a tier capped at $50.60 for those rare consumers who saved grocery receipts for years. Surprising no one, the number of claims in the class of millions was dismal, with Kimberly-Clark paying less than 5% of the illusory $20 million made "available" and the remaining $19 million never having a chance of leaving its pockets. Because the parties created a segregated fee structure, they prevented this Court from "fixing" the disproportionality by reducing attorneys' fees and reallocating those funds to the class, in contrast to  a pure common fund where this reallocation would have been possible. Thus, Frank agrees with class counsel that the segregated fee structure is a proper consideration for the Court, just not that it is a salutary feature. Meanwhile, the settlement terms expanded the class from a smaller certified class to a nationwide class granting Kimberly-Clark a broad release of claims over a fourteen-year period.

For settlement approval, Rule 23(e)(2)(C)(ii)-(iii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" and the terms of a proposed award of attorneys' fees, including the timing of payment. "Effectiveness" under Rule 23(e)(2)(C)(ii) is an objective standard, easily measured with certainty: the settlement will distribute under $1 million of relief to the class. A more effective method would have distributed more; a less effective method would have distributed less. The method of distributing class relief here was woefully inadequate, leaving the overwhelming majority of the class with nothing, and the settling parties disproportionately allocated the relief in

favor of the attorneys. The settlement cannot be approved unless and until the parties remedy the disproportionate allocation that favors counsel over the class by, at a minimum, allowing class members to recover any reduction in attorneys' fees.

As Plaintiffs recognize, the Second Circuit vacated the order that included their fee award. If the Court approves the settlement, the Court retains discretion to reduce attorneys' fees to the 25% benchmark of the actual benefit to the class. Such a reduction is consistent with Rule 23(h)'s "fundamental focus" on class benefit for fee awards. *See* Section III.

## ARGUMENT

## I.    The Second Circuit requires courts to consider the allocation of settlement funds.

Before this Court is the same settlement that the Second Circuit vacated approval of on Frank's appeal. *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 121 (2d Cir. 2025). *Kurtz* holds that "regardless of whether a settlement is structured as two separate funds, Rule 23(e) requires courts to consider the allocation of recovery between class counsel and the class before approving a settlement." *Id.* at 117. Rule 23(e)(2)(C)(iii) rightly "presumes that an award of attorney's fees can impact the amount of monetary relief provided to the class." *Id.* at 118. Even when class recovery and fees purportedly come from two separate funds, "the share of recovery that class counsel takes as compensation sheds light on how much is left for the class—or how much was negotiated for the class in the first place." *Id.* Defendants "think of the two payments in tandem as they negotiate," and, accordingly, their "willingness to pay a high or low fee will be impacted by what [the defendant] anticipates paying out to the class and vice versa." *Id.* at 120. In the light of this dynamic, the court "conclude[d] that Rule 23(e) directs courts to compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and to consider whether that comparison reveals a sufficient imbalance to cast doubt on the settlement's fairness." *Id.* at 119.

The Second Circuit reiterated the need for courts to "act as a 'protector of the rights of the class,' scrutinizing class action settlements to ensure that absent class members and their claims are not shortchanged or undercut.'" *Id.* (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 222

(2d Cir. 1987)). The reason that courts must play this role is that class members "are at risk of being unfairly treated as a result of the payout to others" from class action settlements. *Id.* The Second Circuit vacated and remanded for further proceedings consistent with its opinion, in particular, whether to approve the settlement.

This appeal was the second time that the Second Circuit addressed Rule 23(e)(2)(C) since Congress added those provisions as part of the 2018 Amendments. The *Kurtz* decision builds upon the existing precedent of *Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023), by "clarif[ying] that [the] symbiotic review [of fees and class relief] entails directly comparing the allocation of the total recovery between the class and class counsel." *Kurtz*, 142 F.4th at 119. *Moses* held that "when reviewing the substantive fairness of a proposed settlement, the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem" in order to ensure the class is not being shortchanged in the allocation of settlement funds. 79 F.4th at 244 (internal quotation marks omitted). *Moses* also "abrogated the presumption of fairness [this Circuit] previously applied to those class action settlements that were negotiated at arm's length" and confirmed that Rule 23 mandates "'courts to evaluate factors that may not have been highlighted in our prior case law,'" including the *Grinnell* factors. *Kurtz*, 142 F.4th at 118 (quoting *Moses*, 79 F.4th at 243). And significantly, *Moses* applies with equal force "regardless of whether the parties use a separate fund structure in their settlement agreement." *Id.*

These standards for a court's scrutiny of class-action settlements are driven not necessarily by "instances of major abuse, but rather is for those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests." *Agent Orange,* 818 F.2d at 224 (internal quotation omitted). Due to the defendant's indifference as to the allocation of settlement funds, courts must look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (internal quotation omitted). The proponents bear the burden to demonstrate the settlement is fair, reasonable, and adequate under Rule 23. *Ma v. Harmless Harvest*, 2018 WL 1702740, at *4 (E.D.N.Y. Mar. 31, 2018).

II.    **The settlement should be rejected because Rule 23(e) forbids preferential treatment to class counsel such as the payment of over $3 million to the attorneys compared to less than $1 million to the class.**

Following *Kurtz*, the class's recovery of less than $1 million and the payment of three times that amount to the attorneys must be considered as part of the Rule 23(e) settlement approval analysis. This Court previously observed that "about 95% of the purported $20 million benefit is 'purely hypothetical,'" and should not be considered a class benefit for assessing a fee percentage. Dkt. 474 at 24. The Court further recognized that the attorneys' fee request of $4.1 million (which it reduced to about $3.1 million) represented over 77% of the settlement's total value, which was "unreasonable under the circumstances." *Id.* at 25. Nothing has changed to make the gross imbalance fair or reasonable, as the attorneys still capture over 75% of the actual settlement value. Although the Second Circuit left open the possibility that district courts could evaluate the relationship of attorneys' fees to the hypothetical recovery by the class, the Court need not resort to that methodology here because we know the actual class recovery and we know the $20 million is "purely hypothetical." The experienced class-action attorneys for the parties must have expected (and even laid the groundwork for) the sub-$1 million class recovery in this claims-made settlement involving a consumable product and low-dollar recovery for class members. Rewarding class counsel with over 75% of the total settlement value for achieving such a small distribution to the class would encourage future class counsels to similarly structure settlements to disproportionately allocate the settlement funds to themselves and allow the defendant to negotiate to keep the remainder. *See Briseño v. Henderson,* 998 F.3d 1014, 1025 (9th Cir. 2021), "join[ed]" by *Kurtz,* 142 F.4th at 119.

Plaintiffs are wrong that the Court is limited to the narrow issue of "an examination of 'how recovery is apportioned between class members and class counsel,'" regardless of their use of a separate fund structure. Dkt. 495 at 10 (quoting *Kurtz,* 142 F.4th at 118). The mandate rule does not restrict the Court's review on remand as to any issue the Second Circuit "did not reach." "The mandate therefore d[oes] not foreclose the district court from considering this other portion of the settlement agreement" or factors relevant thereto. *Serby v. First Alert, Inc.,* 783 Fed. Appx. 38, 40 (2d Cir. 2019). "In other words, the trial court is barred from reconsidering or modifying any of its prior

decisions that have been ruled on by the court of appeals. Of course, there is a corollary to this rule—if an issue was not part of the appellate decision, a trial court may consider the matter." *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2019) (internal quotation marks omitted). In particular, because the Second Circuit vacated the approval order because the district court did not analyze the allocation of funds in accordance with Rule 23(e)(2)(c)(iii), the court did not reach Frank's related argument that the settlement relied had not been effectively distributed to the class under Rule 23(e)(2)(c)(ii). This Court should consider the ineffective distribution of what the parties claim was $20 million available, though less than $1 million was actually distributed. *See Kurtz*, 142 F.4th at 121 n.6 ("we decline to reach Frank's remaining arguments.")

### A. Claims-made settlements where funds are "made available" but never paid to the class obscure the true allocation of class relief.

"Claims-made" settlements such as this one—where class members must submit a claim form to obtain compensation—are notorious for a lop-sided result favoring attorneys over the class. Rather than make direct payment to class members, a defendant agrees to make a specified amount of money available to the class, in theory at least, but the defendant pays out only on the claims that class members file and keeps the remainder for itself. But parties often cite the amount "made available" when presenting the settlement to the district court for approval to hide the true allocation of settlement benefit. And that's what happened here: class counsel boast about the amount purportedly made available and how hard they worked to obtain that result, and seek to justify an outsized fee, even though class members received a small fraction of that amount.

At the approval stage it is important for courts to look through the illusory "made available" amount—just as this Court previously recognized that "about 95% of the purported $20 million benefit is 'purely hypothetical'"—to protect the class. Dkt. 474 at 24. Because any amount not paid from the fund "made available" remains with the defendant, claims-made settlements "create[] an incentive for defendants to ensure as low a claims rate as possible so as to maximize the funds that will revert." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058-59 (9th Cir. 2019) (discussing perverse incentives in claims-made settlements). This incentive structure "might lead defendants to negotiate

for a subpar notice process, a more tedious claims process, or restrictive claim eligibility conditions." *Id.* at 1059. It also "raise[s] the specter of their collusion, by (1) reducing the actual amount defendants are on the hook for, especially if the individual claims are relatively low-value, or the cost of claiming benefits relatively high; and (2) giving counsel an inflated common-fund value against which to base a fee motion." *Id.*

We see many of those roadblocks to class recovery here. In particular, class members did not receive direct notice, and had to submit proof of purchase—rather than a simple affirmation required in many settlements—for consumable wipes products purchased over a 14-year period or else were capped at a $7 recovery. *Compare In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175-76 (3d Cir. 2013) (impugning a similar $5 cap that prevented class members from realizing much benefit).

*Ex ante*, practical sense, and empirical data from other cases foretold that claims without proof of purchase would be the far more common type of claim, particularly because the case involved a consumer product—flushable wipes—for which consumers rarely save their receipts. *See, e.g., McCrary v. Elations Co.*, 2016 WL 777865, 2016 U.S. Dist. LEXIS 24050, at *15 (C.D. Cal. Feb. 25, 2016) (only 2 of 3,405 claimants submitted proof of purchase); Supp. Decl. of Jeanne C. Finegan, APR, *Kumar v. Salov N. Am. Corp.*, No. 14-cv-02411, Dkt. 164 ¶4 (N.D. Cal. May 26, 2017) (only 33 of more than 53,000 valid claims were submitted with proof of purchase); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2018 WL 5013764, 2018 U.S. Dist. LEXIS 177824 at *31 (W.D. Wash. Oct. 16, 2018) (365 of 300,000 class members claimed two free James Bond movies when notice required proof of purchase); *Holt v. Foodstate, Inc.*, No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) (99.5% of claimants submitted claims without proof of purchase); *Kukorinis v. Walmart, Inc.*, No. 19-cv-20592, Dkt. 97 at 16 n.9 (S.D. Fla. Sept. 20, 2021) (0.0012% of claims were made with proof of purchase).

Even without proof of purchase hurdles, claims rates in low value consumer class settlements are "notoriously low." *Briseño*, 998 F.3d at 1020 (claims rate of "barely more than one-half of one percent"); Second Expert Decl. of Prof. William B. Rubenstein, *In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-3747, Dkt. 517-2 ¶ 5 (N.D. Cal. Dec. 14, 2020) (average claims rate for

classes above 2.7 million class members is less than 1.5%). For years, courts have remarked upon how "especially in consumer class actions," such as this one, "the percentage of class members who file claims is often quite low." *Pearson*, 772 F.3d at 782 (discussing perverse incentives created by a claims-made settlement and noting claims rate of one-quarter of one percent). "[T]he redemption rate is notoriously low, especially when [a settlement] involves small-ticket items" and "provides for no direct notice to class members." *Briseño*, 998 F.3d at 1026 & n.3.

A settlement administration company conducted a wide-ranging survey that concluded that "settlements with little or no direct mail notice will almost always have a claims rate of less than one percent (1%)." Declaration of Deborah McComb re Settlement Claims ¶ 5, *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Dkt. 156 (S.D. Fla.); *see also, e.g.*, *In re Carrier iQ, Inc. Consumer Privacy Litig.*, 2016 WL 4474366, at *4 (prominent settlement administrator found a median claims rate of 0.023% in settlements with publication-only notice). Data points from other cases reinforce the low claims rates in low-stakes consumer settlements. *See, e.g.*, *In re Livingsocial Mktg. & Sales Practices Litig.*, 298 F.R.D. 1, 19 (D.D.C. 2013) (0.25% claims rate with direct email notice); *Lagarde v. Support.com, Inc.*, 2013 WL 1994703, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) (0.18% of class claiming $10); *In re Sony VAIO Computer Notebook Trackpad Litig.*, No. 09-cv-2109, Dkt. 378 (S.D. Cal. Aug. 7, 2017) (0.44% of class claiming either $5 or $25 without proof of purchase).More generally, courts recognize the obvious: "experienced class action lawyers … must have known that the notice and claim forms, and the very modest monetary award that the average claimant would receive, were bound to discourage filings." *Pearson*, 772 F.3d at 783. Settling parties can now even fine-tune claims procedures to adjust claims rates with near-actuarial certainty; in fact, a defendant can purchase "settlement insurance" precisely because claims rates are so predictable. Ted Frank, *Settlement Insurance Shows Need for Court Skepticism in Class Actions*, CEI Open Market blog (Aug. 31, 2016).

Notably, the settling parties chose not to reach out to big-box retailers and grocery stores that track purchases with shopper cards, such as Target, Amazon, and Kroger—and, if necessary, subpoena them—to obtain class member purchase information. This would enable the

administrator to remit direct distributions to class members. This isn't an untested hypothetical; similar information-gathering processes occur often in the context of consumer class litigation. *See, e.g., Pearson*, 772 F.3d at 784 (using "loyalty programs" to provide direct postcard notice to 4.72 million class members); *Wilson v. Playtika Ltd.*, No. 18-cv-05277-RSL, 2020 U.S. Dist. LEXIS 222843 (W.D. Wash. Nov. 30, 2020) (stipulated discovery protective order between class plaintiffs and Amazon "for the purpose of providing notice to and verifying and paying the recovery amount owed to each member of the Settlement class"); Declaration of Scott A. Kamber, *In re McCormick & Co., Inc. Pepper Prods. Mktg. & Sales Pracs. Litig.*, No. 15-mc-01825, Dkt. 237-1 at 4 (D.D.C. May 20, 2020) (process of subpoenaing Target and Safeway "yielded extensive customer data that appears likely to yield electronic cash distributions to a substantial number of Class Members who did not file claims"); *Ostrowski v. Amazon*, 2016 WL 4992051, 2016 U.S. Dist. LEXIS 126532 (W.D. Wash. Sept. 16, 2016) (granting motion to compel Amazon to produce class member information so that the parties in *In re NVIDIA GTX 970 Graphics Chip Litigation*, No. 15-cv-00760 (N.D. Cal.), could provide direct notice of settlement to class members); *Mahoney v. Endo Health Sols., Inc. et al.*, No. 1:15-cv-09841, Dkt. 90 at 10 (S.D.N.Y. Oct. 21, 2016) ("Plaintiff's counsel issued subpoenas to the nineteen largest providers of retail pharmacy services in the United States (e.g., Walmart, Walgreens, CVS) to obtain electronic files of the names and addresses of Class members that purchased the Tablets."); *Hasemann v. CVS Pharm. Inc.*, 2023 U.S. Dist. LEXIS 19561, *4, 2023 WL 1785545 (E.D.N.Y. Feb. 6, 2023) (granting motion to compel non-party production of class member contact information).

The way to ameliorate this problem is to motivate counsel to seek out absent class members by tying fees to the amounts the class *actually* receives. Otherwise, class counsel have no incentive to ensure that their putative clients will actually make claims and receive cash. In settlements where class counsel have agreed to settlement provisions that do not ensure the complete recovery benefits the class, class counsel often recover an excessive share of the settlement funds for themselves. That's exactly what we see here.

**B.    The settlement should be rejected because the ratio of fees to actual class recovery shows the parties structured the settlement to disproportionately benefit the attorneys.**

Rule 23(e)(2)(C) requires scrutiny of how effectively the settlement actually distributes benefits to the class members and rejection of settlements, like this one, where class counsel take an unfair portion of the settlement pie. Although the Second Circuit left to district courts the discretion to compare class relief to the actual, hypothetical, or predicted class recovery, the only measure that is legally appropriate or makes sense here is the actual class recovery. By design, attorneys' fee awards are to be focused on the actual result for the class so as to encourage class counsel to achieve the best possible result for the class. Any other measure encourages parties to take the familiar route of setting an illusory figure that is "available" to be claimed by the class, while creating a claims process that results in low-dollar recovery and discourages class members from filing claims. There is simply no reason to rely on a hypothetical, illusory figure when we know how much the class actually recovered. Nor can the parties realistically claim that this is an "extraordinary case[]" that could even possibly justify looking beyond the value provided to class members. *Lowery v. Rhapsody Int'l, Inc.*, 69 F.4th 994, 1002 (9th Cir. 2023).

Evaluating fees in relation to the actual recovery under Rule 23 is supported by the 2018 Amendments, Circuit precedent, and decisions by other courts that have considered the issue. Codifying the long-running concern with lawyer-driven settlements, the 2018 Amendments to Rule 23(e) specifically require consideration of "the effectiveness of any proposed method of distributing relief to the class" and assurance the class's recovery is commensurate with "the terms of any proposed award of attorney's fees" Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iii); *see also Briseño*, 998 F.3d at 1023-27. The 2018 amendments follow widespread criticism by courts and legal scholars of the abuse of claims-made settlements to inflate attorneys' fees and deflate defendants' obligations to class members. For example, in *Pearson*, 772 F.3d at 787, the Seventh Circuit reversed approval of what it termed a "selfish" claims-made settlement in which the parties claimed the class benefit was a "fiction[al]" $14.2 million but the class had actually claimed less than $1 million. The court rejected the district court's determination that a fee award of $1.93 million was reasonable because it equaled less than ten person of the total settlement value based on the fictional amount "made available"

and including notice and administrative costs. Instead, "the ratio that is relevant is the ratio of (1) the fee to (2) the fee plus what the class members received." *Id.* at 781. Using that calculation, the attorneys' fees represented "an outlandish 69 percent." *Id.* More recently, and following the 2018 Amendments, the Ninth Circuit similarly reversed settlement approval where attorneys received $7 million and class received less than $1 million. *Briseño*, 998 F.3d at 1026. *See also In re Samsung Top-Load Washing Machine Mktg. Sales Practices & Liab. Litig.*, 997 F.3d 1077, 1094 (10th Cir. 2021) (significantly reducing fee award where actual class relief was difficult to calculate); Howard M. Erichson, *Aggregation As Disempowerment: Red Flags in Class Action Settlements*, 92 Notre Dame L. Rev. 859, 892-83 (2016).

Circuit precedent, too, has long required courts to examine whether the class's "interests are somewhat encroached upon by the attorneys' interests." *Agent Orange*, 818 F.2d at 224; *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982) (affirming settlement rejection where named plaintiffs were afforded "preferential treatment"). Class members are simply not "best served" by low-value claims made settlements, characterized by "mass indifference," that provide defendant a blanket release of all class members' claims whether or not they submit a claim. *Gallego v. Northland Grp., Inc.*, 814 F.3d 123, 129-30 (2d Cir. 2016).

There are practical and policy reasons for evaluating the disproportion between the attorneys' fee and the actual class recovery. When class counsel have the financial incentive to put settlement funds in class members' hands, that is in fact what happens. In the *cy pres* context, for example, after the Third Circuit rejected a settlement in *Baby Products* that would pay class counsel $14 million, charities about $15 million, and class members under $3 million, class counsel on remand, appropriately incentivized to avoid a fee reduction, restructured the settlement to eliminate superfluous *cy pres* in favor of direct class distributions. This constituted a class improvement of nearly $15 million. *McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626 (E.D. Pa. 2015).

Here, we see how the parties had control over the process and, as a result of their decisions, a low class recovery was guaranteed. In particular, class counsel made insufficient effort to directly identify and provide notice to class members and agreed to cap payments at unreasonably and

artificially low amounts, especially for class members without proofs of purchase.

"As a matter of public policy, it would be unseemly for the rewards to Class Counsel to exceed those to Class Members, the ones for whom the litigation is ostensibly contested." *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009) (reducing fee award from $5 million to $3.3 million so that the award did not exceed the $3.7 million value to class members). Any attempt to rely on Plaintiffs' representation of a $20 million fund, when the defendant will retain bulk of that amount, improperly exalts fiction over reality. *See Pampers*, 724 F.3d at 721 (cases "are better decided on reality than fiction"). Class counsel does not earn fees from generating illusory benefits or "superficial accomplishments." *Kaplan v. Rand*, 192 F.3d 60, 71-72 (2d Cir. 1999).

## C.    Class counsel negotiated a disproportionate share of the settlement for themselves.

The disproportion between the $3 million allocated to class counsel and less than $1 million allocated to the class "reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.4th at 119. The main signpost of preferential treatment, as seen in this settlement, is that "counsel receive a disproportionate distribution of the settlement," obtaining an ample reward for themselves while about 99% of the class recovers no monetary compensation in exchange for a release of their claims. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *accord* American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05, cmt. b at 208 (2010).

Courts in this Circuit recognize the fiction of "made available" settlement funds and the impropriety of relying on such capped figures for purposes at the final approval and fee award stage of the case. For example, in *Hart v. BHH LLC*, Judge Pauley observed that "[a]ny benefit from funds reverted back or never tendered by Defendants are purely hypothetical" and "provide no benefit to the class." 2020 WL 5645984, 2020 U.S. Dist. LEXIS 173634, at *19-*20 (S.D.N.Y. Sept. 22, 2020). "The theoretical benefit [of the settlement fund] dwarfs any real benefit the class receives. Accordingly, unclaimed funds should not be used when assessing the fee percentage." *Id.*; *see also Cunningham v. Suds Pizza, Inc.*, 290 F.Supp.3d 214, 225 (W.D.N.Y. 2017) (holding that fee award that took into account amounts of settlement fund not ultimately distributed to class members and not

benefiting class would result in "an improper windfall for counsel"). And, in *Hesse v. Godiva Chocolatier*, another claims-made settlement, the court reduced attorneys' fees and costs from the requested $5 million to $2.85 million where the payments to the class totaled just $7.55 million, reducing the fee percentage of the total actual settlement value from 37% to 25%. *See* 2022 U.S. Dist. LEXIS 72641, at *40-*41 (S.D.N.Y. Apr. 20, 2022). Other courts similarly recognize that low achieving claims-made settlements should not result in disproportionate recovery by the attorneys. The court in *Tarlecki v. Bebe Stores, Inc*, lowered the 21.3% fee request to 14.7% based on the poor rate of class participation in the settlement and to prevent the attorney award from constituting 86% of the amounts claimed by class members. No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3, 2009). As these cases indicate, courts across the country routinely consider amounts claimed in determining whether the attorney award is disproportionate to class recovery. *See also*, *e.g., Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8-9 (D.R.I. May 3, 2012); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160, at *36-37 (N.D. Cal. Apr. 6, 2012). And courts routinely reject settlements allocating an unseemly portion of the total fund to class counsel. *See, e.g. Dennis v. Kellogg,* 697 F.3d 858, 868 (9th Cir. 2012) (38.9% fee would be "clearly excessive"); *SFBSC Mgmt., LLC,* 944 F.3d at 1051 (fee award of 45% of gross cash fund is "disproportionate"); *Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 n.29 (E.D.N.Y. 2007) (43% of the common fund as a fee "would clearly be excessive"). As a share of recovery, the "norm" in this Circuit is "within a range of 15% to 33%." *Espinal v. Victor's Cafe 52nd St., Inc.*, 2019 WL 5425475, 2019 U.S. Dist. LEXIS 183642, *6 (S.D.N.Y. Oct. 23, 2019).

While class counsel can cite a handful of cases awarding fees based on the potential settlement value, those cases are not controlling and do not represent the better approach. That is especially true when class counsel surely were aware that their claims-made settlement involving a low-dollar consumer product and no direct notice would have minimal class benefit, and they were in a position to achieve a different outcome. *See In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) (conditioning fees on "the benefit actually conferred on the class" "will incent plaintiffs' counsel to work vigorously … to make sure that class members are located and

encouraged to submit claims."). In the *Pettit* flushable wipes settlement that plaintiffs discuss, for example, out of a class of approximately 3.9 million, only 137,068 valid claims were filed for a class distribution of only $537,879. Decl. of Jonathan Shaffer and Post-Distribution Accounting, *Pettit v. Procter & Gamble*, Case No. 3:15-cv-2150, Dkt. 139 (N.D. Cal. July 17, 2019). The settlement in *Belfiore* was just as bad, with only about $350,000 in claims made about a month before the claims deadline and before invalid claims were excluded. *See* Tr. of Motion Hearing Via Teleconference, *Belfiore v. Procter & Gamble Co.*, No. 2:14-cv-04090, Dkt. 363 at 7:2-21 (N.D. Cal. Jan. 26, 2021).

Plaintiffs cannot justify the meager class relief by claiming that class members are fairly compensated because they are individually set to receive an amount nearly half of the maximum cost of one unit and nearly seven times greater than the minimum cost of one unit of flushable wipes. Very few class members even made claims because of the difficulty of doing so and the lack of value. And the recovery of half the cost of one unit certainly doesn't raise any windfall concerns. Moreover, the very nature of a settlement means that any opinion as to the price premium proffered by the defendant is not adjudicated as fact. *Contra* Dkt. 495 at 15.

Plaintiffs again raise their failed argument that Frank did not challenge the adequacy of individual or collective settlement relief provided under Rule 23(e)(2)(C). Plaintiffs unsuccessfully made this argument on appeal, but the Second Circuit rejected it to reach the merits of Frank's argument. What in the world would he otherwise be challenging? The Rule 23(e)(2)(C) analysis that he has argued from the beginning addresses the adequacy of relief. Class counsel appear to be twisting his assertion that he is not telling the parties what the overall amount of the settlement should be. Dkt. 495 at 16. But Frank consistently has challenged the settlement's claims process that provides only $0.70 per package of wipes up to a maximum payment of $7.00 for class members who did not save proofs of purchase—which is nearly all of them—and emphasized that low-dollar recovery as a reason for the overall ineffectiveness of distribution of funds to the class under Rule 23(e)(2)(C)(ii).

Finally, it is inconsequential that the requested fee results in a fractional lodestar multiplier. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182 (9th Cir. 2013) ("Plaintiffs attorneys don't get

paid simply for working; they get paid for obtaining results."). As employed in this Circuit, the lodestar crosscheck is a ceiling on excessive fees, not a floor that would prop them up above what the appropriate percentage-of-recovery calculation would result. *See Goldberger v. Integrated Res.*, 209 F.3d 43, 50, 57 (2d Cir. 2000) (counseling use of the lodestar crosscheck "consistent with our preference for moderation").

**D. Class counsel designed an onerous claims process that throttled claims and reduced class recovery.**

The claims process here appears designed to reduce the number of claims below the rate in a typical class action settlement. As detailed in Mr. Frank's declaration filed with his initial objection, the process of submitting a claim took far more than the "few minutes" represented by class counsel. The settlement website had features that made it difficult for class members to obtain the required customer ID, gave multiple error messages, and provided a 1-833 telephone number that offered no assistance. *See* Dkt. 446-1 ¶ 7. Meanwhile, the process of submitting a paper claim required printing and mailing a four-page paper claim form that, for the vast majority of class members without proof of purchase, would yield at most mere $7. The settlement website also made it even more unlikely that class members would obtain the higher recovery by submitting a proof of purchase because it incorrectly informed class members that the only acceptable form of documentation is "itemized receipts," even though the settlement allows class members to submit an actual label or bar code portion of the package as proof of their purchase. *See id.* ¶¶ 7, 9. This type of unnecessary burden imposed by class counsel is likely to reduce the claims rate well below 1%, *id.* ¶ 10, and reinforces the importance of incentivizing class counsel to maximize class recovery by awarding fees that are appropriately proportionate to the actual class benefit.

**E.     Class counsel negotiated a segregated fund that insulates their fee from scrutiny and unfairly prevents the class from recovering any reduction.**

Plaintiffs emphasize that this Court may consider the decision to create separate funds for settlement relief and attorneys fee in the settlement approval analysis. *See* Dkt. 495 at 20 n.16. Frank agrees but for a different reason. The settlement structure here creates a "constructive common

fund," also known as a reversion clause or "kicker." *See, e.g.*, *Pearson*, 772 F.3d at 786; *In re GMC Pick-Up Truck Fuel Tank Prods*, 55 F.3d 786, 820-21 (3d Cir. 1995) (A severable fee structure "is, for practical purposes, a constructive common fund."). A traditional common fund structure—in which attorneys' fees and class benefits come from the same pot—is superior to a segregated fund because it renders transparent the relationship between gains to counsel and loss to the class. *See Pearson*, 772 F.3d at 786; *Bluetooth*, 654 F.3d at 949. In a common fund, the court can rectify an imbalanced settlement by reducing attorneys' fees because such a step results in a corresponding increase in class benefit. *See, e.g.*, *Pearson*, 772 F.3d at 786 (calling this the "simple and obvious" solution); *In re World Trade Ctr. Disaster Site Litig.*, 2015 U.S. Dist. LEXIS 15942, at *43 (S.D.N.Y. Jan. 16, 2015) (ordering improper portion of attorneys' fees to be distributed among plaintiffs); *Cassese v. Wash. Mut., Inc.*, 2014 U.S. Dist. LEXIS 85836, at *6 (E.D.N.Y. June 23, 2014) (describing the reduction of "the fee award sought by Class Counsel in order to provide the Class with the opportunity to claim against a larger share of the Settlement Proceeds."). The constructive common fund structure, in contrast, is a red flag indicating that the settlement puts the interests of counsel ahead of those of the class, adding a "strong presumption of … invalidity." *E.g.*, *Pearson*, 772 F.3d at 787. A segregated fund deters judicial scrutiny precisely because there is no way to benefit the class through redistribution.

There is "no plausible reason why the class should not benefit from the spillover of excessive fees." *Briseño*, 998 F.3d at 1027. Yet that's what class counsel negotiated here. Class members' benefit is capped on the upside, not only in the aggregate ($20 million), but also per claimant—$7.00 for claims without proof of purchase and $50.60 for claims with proof of purchase. Yet, on the downside, if claims had exceeded the $20 million, there was a *pro rata* reduction. The monetary benefit per class member could only decrease and there is no mechanism to increase the benefit to the class. Meanwhile, class counsel seeks the same $3 million fee award without regard for the actual class recovery.

The settlement didn't have to be structured this way. Were it structured to allow a reduction of the fee award to supplement class relief, the settlement could be salvaged simply by reducing attorneys' fees. For example, in *Fitzgerald v. Gann Law Books*, 2014 U.S. Dist. LEXIS 174567 (D.N.J.

Dec. 17, 2014), the parties negotiated a $1 million attorney fee, excessive in relation to class member recovery of $180,000. The court found this untenable, but the settlement was salvageable because of a provision that distributed excess amounts of the cash fund *pro rata* to non-claimant class members. This ensured that "a low response rate does not inure to the benefit of the defendant or class counsel." *Id.* at *48. By decreasing class counsel's proposed fee from $1 million to almost $400,000, the court was able to augment the class's residual distribution by a reciprocal $600,000, and bring the settlement back into proportion without sacrificing funds that the defendant was willing to pay. Unfortunately, this settlement lacks a similar provision that would allow the Court to save the agreement. The only solution is denying settlement approval until the parties amend their agreement.

*         *         *

Having already recognized the "purely hypothetical" nature of the bulk of the purported settlement relief, the appropriate measure for the Court's analysis is the actual benefit to the class. Such measure is especially warranted in light of the excessive attorneys' fee request, made from a segregated fee fund, combined with the claims-made nature of the settlement, lack of direct notice, and onerous claims process. The parties struck a settlement that gives preferential treatment to class counsel at the expense of the class. This result is inconsistent with Rule 23 and cannot be approved.

## III.    If the Court approves the settlement, any fees should be based on true class benefit.

The Second Circuit vacated the order awarding attorneys' fees, and class counsel now requests that this Court award them the same fees it awarded previously. Dkt. 495 at 3 n.2. The fee analysis is separate from the fairness analysis, but focuses on "the result achieved for the class" regardless of whether the Court applies a lodestar or percentage-of-the fund approach. Notes of Advisory Committee on 2003 Amendments to Rule 23(h). Ultimately, "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so." *City of Detroit v. Grinnell*, 495 F.2d 448, 469 (2d Cir. 1974). Thus, if the Court approves the settlement, it has discretion to reduce the fee award in accordance with this principle.

As Frank noted in his initial objection, a problem with the settlement is that the attorneys have structured it so that they have no incentive to care whether the class obtains a significant portion of the $20 million fund. Yet a fee award must be reasonable relative to the class benefit, with the relevant measure being the value to class members, under both a lodestar and percentage analysis. *Pampers*, 724 F.3d at 719-20. A lodestar-based fee award leads to the unfair result that the attorneys are asking for three times as much as the entire class will recover. Such disproportionality between attorney recovery and actual class recovery violates Rule 23(h). *Bluetooth*, 654 F.3d at 946-49. As one court described the unsuitability of lodestar, "Class Counsel has requested for itself an uncontested cash award based on lodestar, rather than the value of the class recovery, with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz*, No. 3:06-CV-00545, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011). A percentage-based award, in contrast, directly aligns class counsel's interests with those of the class and "serves as important motivation for counsel to maximize the class's recovery, and, a fortiori, counsel's fee." *Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 71 (2d Cir. 2019).

Frank thus asks the Court to recognize once again that a fee award equal to over 75% of the actual class benefit is unreasonable and to appropriately reduce any fee award. *See* Dkt. 474 at 25.

## CONCLUSION

For the foregoing reasons, the Court should reject the proposed settlement and fee award or, at a minimum, award no more than 25% of the actual value of the settlement benefit to the class.

Dated: September 5, 2025

/s/ *Anna St. John*
Anna St. John
HAMILTON LINCOLN LAW INSTITUTE
1629 K St. NW, Suite 300
Washington, DC 20006
Phone: (917) 327-2392
Email: anna.stjohn@hlli.org

*Attorney for Objector Theodore H. Frank*

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Objection and associated declarations via the CM/ECF system for the Eastern District of New York, thus sending the Objection and declarations to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Dated: September 5, 2025

/s/ *Anna St. John*

Anna St. John

**Certificate of Word Count**

I hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1 of the United States District Court for the Eastern District of New York because it contains 7,166 words.


/s/ *Anna St. John*
Anna St. John