UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| D. JOSEPH KURTZ, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:14-cv-01142-PKC-RML |
| Plaintiff, | : | CLASS ACTION |
| vs. | : | |
| KIMBERLY-CLARK CORPORATION, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| GLADYS HONIGMAN, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:15-cv-02910-PKC-RML |
| Plaintiff, | : | CLASS ACTION |
| vs. | : | |
| KIMBERLY-CLARK CORPORATION, | : | |
| Defendant. | : | |

**REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH KIMBERLY-CLARK**

**TABLE OF CONTENTS**

                                                                                          **Page**

I. INTRODUCTION ..................................................................................................1

II. FRANK'S REHASHED ARGUMENTS IMPLORING THE COURT TO REJECT THE SETTLEMENT FAIL UNDER RULE 23(e) AND *GRINNELL*..................1

III. THE COURT SHOULD REAFFIRM THE ATTORNEYS' FEE AWARD ......................8

IV. HUANG'S OBJECTION SHOULD BE REJECTED..........................................................9

V. CONCLUSION...................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*Berni v. Barilla S.p.A.*,
 964 F.3d 141 (2d Cir. 2020) ...................................................................................................10

*Blessing v. Sirius XM Radio Inc.*,
 507 F. App'x 1 (2d Cir. 2012) ...................................................................................................7

*Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A.*,
 2001 WL 185134
 (S.D.N.Y. Feb. 23, 2001) ..........................................................................................................8

*Casey v. Citibank, N.A.*,
 2014 WL 4120599
 (N.D.N.Y. Aug. 21, 2014) .........................................................................................................6

*Devlin v. Scardelletti*,
 536 U.S. 1 (2002) ....................................................................................................................10

*Grimes v. Navigant Consulting, Inc.*,
 536 U.S. 920 (2002) ................................................................................................................10

*Hart v. BHH, LLC*,
 2020 WL 5645984
 (S.D.N.Y. Sep. 22, 2020) ..........................................................................................................6

*Hesse v. Godiva Chocolatier, Inc.*,
 2022 WL 22895466
 (S.D.N.Y. Apr. 20, 2022) ................................................................................................4, 5, 6

*In re Blue Cross Blue Shield Antitrust Litig.*,
 2022 WL 4587618
 (N.D. Ala. Aug. 9, 2022), *aff'd sub nom.*, *In re Blue Cross Blue Shield Antitrust Litig.* MDL
 2406, 85 F.4th 1070 (11th Cir. 2023) .......................................................................................9

*In re Credit Default Swaps Antitrust Litig.*,
 2016 WL 2731524
 (S.D.N.Y. Apr. 26, 2016) ........................................................................................................10

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
 999 F.3d 1247 (11th Cir. 2021) .................................................................................................9

*In re Navigant Consulting, Inc., Securities Litigation*,
 275 F.3d 616 (7th Cir. 2001) ..................................................................................................10

                                                                                                   **Page**

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
   867 F.3d 791 (7th Cir. 2017) ...................................................................................................9

*McMorrow v. Mondelez Int'l, Inc.*,
   2022 WL 1056098
   (S.D. Cal. Apr. 8, 2022) ...........................................................................................................9

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) .................................................................................................7, 8

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ................................................................................................6, 9

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*,
   507 U.S. 380 (1993) .................................................................................................................9

*Poertner v. Gillette Co.*,
   2014 WL 4162771
   (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. App'x 624 (11th Cir. 2015) .......................................4

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013) ...............................................................................................................10

*United States v. Ben Zvi*,
   242 F.3d 89 (2d Cir. 2001) ...................................................................................................4, 8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 23 ..................................................................................................................................6, 8
   Rule 23(b)(2) ..........................................................................................................................10
   Rule 23(e) ....................................................................................................................... *passim*
   Rule 23(e)(2) ............................................................................................................................5
   Rule 23(e)(2)(C) .......................................................................................................................6
   Rule 23(e)(2)(C)(ii) .........................................................................................................2, 4, 5
   Rule 23(e)(2)(C)(iii) ....................................................................................................... *passim*
   Rule 23(e)(5) ............................................................................................................................9
   Rule 23(h) .............................................................................................................................8, 9

## I. INTRODUCTION

As explained in the Renewed Motion, no matter what benchmark the Court uses to measure the "class recovery" when revisiting Rule 23(e)(2)(C)(iii), the Settlement remains reasonable under a holistic review of Rule 23(e) and the *Grinnell* factors.[1]  Objector Theodore H. Frank lodges the same failed attacks in his brief on remand, painting Class Counsel as collusive actors who "throttled" the claims process and sought an outsized fee that short-changes the Settlement Class.[2]  But the extensive record and exhaustive settlement proceedings in the Actions demonstrate the stark fallacy of Frank's arguments.  Rule 23(e)(2)(C)(iii), as the Court of Appeals explained, focuses squarely on the adequacy of class relief, including in particular the risk of counsel undervaluing class members' claims in exchange for a quick or larger fee award.  That risk is not present here.  Plaintiffs litigated the Actions for eight years before reaching the Settlement, engaged an experienced claims administrator that employed a cutting-edge notice program, and separately negotiated attorneys' fees only after counsel secured substantial economic relief for Settlement Class Members.  That relief, by all measures, is reasonable.  The attorneys' fees – which were reduced 20% and are less than Class Counsel's lodestar from over **three years ago** – are likewise reasonable.  A comparison of the two, unsurprisingly, "cast[s]" no "doubt on the settlement's fairness."  Appellate Order at 118-19.  Thus, the Court should reaffirm approval of the Settlement.

## II. FRANK'S REHASHED ARGUMENTS IMPLORING THE COURT TO REJECT THE SETTLEMENT FAIL UNDER RULE 23(e) AND *GRINNELL*

Ignoring virtually all of this Court's well-reasoned findings in the Approval Orders –

---

[1] All references to "ECF No. __" are to the docket in the *Kurtz* Action unless otherwise stated.  All capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Settlement Agreement, ECF No. 432-1, and the Memorandum of Law in Support of Plaintiffs' Renewed Motion for Final Approval of Class Action Settlement with Kimberly-Clark ("Renewed Motion"), ECF No. 495.  All internal quotations and citations are omitted and emphasis is added unless otherwise indicated.

[2] *See generally*, Objection of Theodore H. Frank to Renewed Proposed Class Action Settlement and Attorneys' Fee Request ("Frank Br."), ECF No. 496.  Shiyang Huang also filed a short Objection to Renewed Motion for Settlement Approval on September 21, 2025.  *See* ECF No. 497 ("Huang Br.").  As discussed below, *infra* §IV, Huang's "objection" is procedurally improper and, in any event, substantively misguided.

findings that largely remain undisturbed by the Appellate Order – Frank urges the Court to enter a Twilight Zone of legal analysis where it should re-evaluate all of his previously rejected arguments as to the fairness of the Settlement despite the narrow mandate from the Court of Appeals.[3] Frank's arguments boil down to three interrelated attacks. *First*, he argues that Class Counsel "throttled" the claims process to ensure a disproportionate share of the recovery for themselves. *Second*, Frank claims that the Settlement ineffectively distributed the class relief under Rule 23(e)(2)(C)(ii). *Third*, Frank attacks the Settlement's structure generally, arguing that the "segregated" settlement fund and claims-made framework favor the attorneys at the expense of the Settlement Class. Each of these arguments is unfounded. Class Counsel implemented an effective and reasonable notice program designed to maximize the class recovery and could not have predicted the Settlement Class's precise response rate. Moreover, Frank's "effectiveness" argument mistakenly focuses on the amount to-be distributed instead of method of distributing relief. And there is nothing inherently problematic about the Settlement's structure, which adequately compensates Settlement Class Members for the alleged harm. In any case, none of Frank's arguments reveal a sufficient imbalance between the class relief and attorneys' fees so as to render the Settlement unfair.

***The Robust Notice Plan Was Designed to Maximize the Class Recovery.*** The thrust of Frank's half-hearted attempt to address the Court of Appeals' proportionality analysis focuses on the unproven and far-fetched contention that Class Counsel intentionally throttled the claims process to ensure a windfall recovery for themselves at the expense of the Settlement Class. Frank Br. at 15, 17. But this argument makes little sense. Indeed, Frank fails to explain why Class Counsel wouldn't have every incentive to develop a notice program that encourages Settlement Class Members to file

---

[3] Frank copies-and-pastes large swaths of argument from his original objection with little or no modification. *E.g., compare* Frank Br. at 12-13 *with* ECF No. 446 at 8-10 and Frank Br. at 15-17 (§II.E) *with* ECF No. 446 at 13-15 (§III.D). For example, §II.D. of Frank's brief is substantively identically to §III.C of Frank's original objection, *compare* Frank Br. at 15 *with* ECF No. 446 at 12, and continues to assert the false contention that the "onerous claims process . . . is likely to reduce the claims rate well below 1%."

valid claims. The parties negotiated attorneys' fees – after they agreed on the Settlement benefits capped at $20 million – that were less than Class Counsel's lodestar and represented less than 17% of the "total recovery" based on the "hypothetical maximum class recovery" (roughly $4 million versus $24 million). Appellate Order at 119-20, n.5. Yet Frank complains that the ultimate fee award ($3,169,335.02) – while less than 14% of the potential total recovery – consumes over 75% of the actual total recovery, and argues that counsel designed a process to ensure that result. That claim is implausible, however, because despite Class Counsel's best efforts in designing and implementing a robust notice program with the assistance of a highly experienced claims administrator, and regardless of what the parties contemplated might ultimately be claimed, the eventual payout to the Settlement Class was simply ***unknowable*** at the time. If anything, Class Counsel expected a much higher participation rate and total payout given the size and scope of the Settlement Class and then-recent payout in the analogous *Belfiore* "flushable" wipes matter approved by the Court.[4]

The Court's finding that the notice program is reasonable is supported by ample evidence demonstrating the effectiveness of the claims process, including the fact that: (1) the notice clearly informed Settlement Class Members of the Settlement benefits, subject to an overall "$20 million cap on cash payments," and the attorneys' fees sought (ECF No. 437, Ex. B1 at 6-7 and Ex. B2 at 1); (2) the Notice Plan used cutting-edge tools, including targeted online banner and keyword search advertising, social media, an informational website and toll-free telephone line (ECF No. 450-1 ¶¶12-14); (3) the Notice Plan exceeded the Claim's Administrator's original projections and reached over 80% of targeted Settlement Class Members (ECF No. 450-1 ¶4); (4) Class Counsel secured a comparatively lengthy notice period for Settlement Class Members to file claims (Renewed Motion at 19); (5) Settlement Class Members filed over 147,000 valid claims following a thorough fraud and

---

[4] *See Belfiore v. The Procter & Gamble Co.*, Case No. 2:14-cv-04090-PKC-RML (E.D.N.Y.), ECF No. 363 at 7:11-14 ($350,000 in claims before claims-filing deadline and validation in New York-only "flushable" wipes action with approximately 35% shorter settlement class period).

- 3 -

de-duplication review with virtually no complaints about the claims process (Hr'g Tr. at 8-10; ECF No. 450-2 ¶13); and (6) the Claims Administrator systematically rejected each gripe about the Settlement website and claims process that Frank now reasserts on remand (ECF No. 450-2 ¶13).

Failing to acknowledge any of these facts, Frank laments the absence of direct notice to Settlement Class Members. *See* Frank Br. at 7-9. But even putting aside the cost of providing direct notice to millions of purchasers, Frank disregards that Kimberly-Clark is a ***manufacturer*** of "flushable" wipes, which it sells nationwide through a variety of third-party merchants. Despite Frank's claim that "class counsel made insufficient effort to directly identify and provide notice to class members," Frank Br. at 11, neither Kimberly-Clark nor Plaintiffs possess retailer sales data identifying Settlement Class Members, and obtaining even a fraction of this personal identifying data from over a fourteen-year period nationwide would require protracted third-party discovery from retailers who would undoubtedly and vigorously object, while much of the Settlement Class simply remains unidentifiable.[5] "Attempting to access [this] information would be an unreasonable effort to demand for this Settlement." *Hesse v. Godiva Chocolatier, Inc.*, 2022 WL 22895466, at *2 (S.D.N.Y. Apr. 20, 2022).

***Frank's "Effectiveness" Argument Is Misguided.*** Struggling to grapple with what the Court of Appeals confirmed is the real intention of Rule 23(e)(2)(C)(iii) – to "prevent[] unscrupulous counsel from quickly settling a class's claims to cut a check," Appellate Order at 118 – Frank largely flouts the "spirit of the mandate," *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001), and argues that the Settlement funds were ineffectively distributed in violation of Rule 23(e)'s "effectiveness" prong. Rule 23(e)(2)(C)(ii); Frank Br. at 2, 6, 10. However, the Court of Appeals

---

[5] *See* Joint Appendix Vol. 3 submitted in support of Frank's Opening Brief, *Kurtz v. Kimberly-Clark Corp.*, No. 24-425 (2d Cir. June 7, 2024), ECF 49.1 at A-503 (Sep. 7, 2022 Hr'g Tr. at 49-51); *see also Poertner v. Gillette Co.*, 2014 WL 4162771, at *3 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. App'x 624 (11th Cir. 2015) (rejecting similar argument lodged by Frank and noting that "attempting to gain this information from retailers would be difficult, expensive, and essentially fruitless").

impliedly rejected that argument, clarifying that the proportionality analysis must be conducted under Rule 23(e)(2)(C)(iii), *not* Rule 23(e)(2)(C)(ii). Renewed Motion at 11-12. That makes sense given that the Advisory Committee notes confirm that Rule 23(e)(2)(C)(ii) focuses on the effectiveness of the "*method*," or process, for distributing relief to class members, not the *amount* of distribution or how the relief is divided between the class and counsel.[6] To the extent this Court chooses to consider Frank's "effectiveness" argument *again* on remand, the Court should reaffirm its findings in the Approval Order rejecting Frank's reading of Rule 23(e)(2)(C)(ii) and concluding that the proposed plan of allocation "ensures an 'equitable and timely distribution of [the] settlement fund without burdening the process in a way that will unduly waste the fund.'" Approval Order at 16-20, 29; *see also id*. at 29, n.12 ("the Court does not find that the distribution plan is inadequate or unduly burdens class members' reasonable recovery in this case").

***Frank's Attacks on the Settlement Structure Are Misplaced.*** Frank also takes issue with the basic framework of the agreement – a claims-made Settlement that allows for a higher recovery with proof of purchase and separately funds the class relief and attorneys' fees. *See* Frank Br. at 6, 15-17. But there is nothing "inherently unfair" with claims-made settlements, as this Court recognized; they are "regularly permitted." Approval Order at 20. Indeed, the Court of Appeals here discussed claims-made settlements without any hint of disapproval. *See* Appellate Order at 119 (discussing how to analyze proportionality under Rule 23(e) in "claims-based class actions"); *see also Hesse*, 2022 WL 22895466, at *7 (rejecting objection that relief was not "effectively" distributed because of claims-made settlement structure and insufficient total payout). But Frank harps on claims-made

---

[6] Rule 23(e)(2) Advisory Committee's Note to 2018 Amendment ("Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."); *see also Hesse*, 2022 WL 22895466, at *7 (noting that in considering the effectiveness of the proposed method of distributing relief under Rule 23(e)(2)(C)(ii), the "plan of allocation need not be perfect, and instead need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel").

settlements generally, complaining about their low claims rates, arguing that they obscure the "true allocation of class relief," and advocating for a common fund settlement where fee reductions can be reallocated to class members.[7]  Frank Br. at 6-9, 15-17.  Nonetheless, a claims-made settlement structure like the one here does not "impact the fairness, reasonableness, or adequacy of the proposed settlement," and Rule 23 and district court oversight provide the necessary guardrails against unfair and unreasonable settlements.  *Casey v. Citibank, N.A.*, 2014 WL 4120599, at *2-*3 (N.D.N.Y. Aug. 21, 2014) (declining "invitation to infer collusion" based on claims-made "payment structure and timing of the settlement," and noting that courts do "not have the authority to impose a preferred payment structure upon the settling parties").[8]  And while it may be true that "formal segregation tells us little of the practical reality of the settlement negotiations," (Appellate Order at 120) the reality here is that the parties' protracted negotiations throughout the latter half of eight years of intense litigation rendered a Settlement that is appropriately structured, procedurally and substantively fair, and "untainted by self-interest."  Approval Order at 16-22.

Reviewing the class relief and attorneys' fees "as a package deal," as the Court of Appeals instructs, only reaffirms the reasonableness of the Settlement.  Appellate Order at 120.  The Settlement provides Settlement Class Members with a reasonable and "substantial benefit," Approval Order at 27, approximating the "price premium" damages incurred, subject to a $20 million cap on total payments, and for attorneys' fees and expenses up to $4.1 million (later reduced

---

[7] Frank fails to explain how a claims procedure that produced an above-average claims rate, ***according to Frank***, runs afoul of either Rule 23(e)(2)(C)'s effectiveness or attorneys' fee prong, let alone "cast[s] doubt on the settlement's fairness."  Appellate Order at 118-19; Frank Br. at 7-8 (citing cases stating that claims rate is "almost always" less than 1% in settlements with no direct notice and averages less than 1.5% in larger actions).  The claims rate here (roughly 1.59% after validation, using the claims administrator's estimated Settlement Class size) is over six times higher than the rate in *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014), upon which Frank heavily relies.

[8] Nor are settlements requiring proof of purchase with caps for larger recoveries unfair.  *See, e.g.*, *Hesse*, 2022 WL 22895466, at *10 (approving settlement providing higher payment for claims with proof of purchase, capped at $25); *Hart v. BHH, LLC*, 2020 WL 5645984, at *1 (S.D.N.Y. Sep. 22, 2020) (approving settlement providing payment for up to six product units with proof of purchase, and up to two units without proof).  Moreover, Frank's "argument ignores the unique risks that the class members in this case, especially those without proof of purchase, would face if their claims were to go to trial."  Approval Order at 20.

- 6 -

to $3.3 million). The parties negotiated reasonable fees approximating Class Counsel's lodestar only after they agreed to the class relief, and, importantly, Kimberly-Clark *expected* that it would pay most, if not all, of the agreed-to cap on payments based on recent experience. Renewed Motion at 18 and n.14; Appellate Order at 120 (noting that fees "will be impacted by what [defendant] anticipates paying out to the class and vice versa"). In this context in particular, Class Counsel should not be faulted for choosing to have Kimberly-Clark pay the fee award through a segregated, non-fund payment – as opposed to a percentage of a common fund – which maximizes the relief obtainable by the Settlement Class. *Cf. Moses v. New York Times Co.*, 79 F.4th 235, 246 (2d Cir. 2023) (questioning fairness of common fund settlement where the "fee awards—especially the $1.25 million in attorneys' fees (about 76% of the $1.65 million Settlement Fund)—are intimately intertwined with the settlement," effectively constituting "an inverse correlation between the amount of attorneys' fees . . . and the cash available for . . . distribution to class members"); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (approving fee award where "the fee was negotiated only after settlement terms had been decided and did not, as the district court found, reduce what the class ultimately received").[9]

**Rule 23(e) and Grinnell Favor Reaffirming the Settlement.** Evaluating the allocation of fees and class relief – even when using the actual class recovery as the appropriate benchmark (nearly $1 million) – leads to the same conclusion: the Settlement is fair, reasonable, and adequate in the context and circumstances of *this* litigation. The underlying concerns of Rule 23(e)(2)(C)(iii) – undervaluing the Class relief for a quick or larger fee award – simply are not present here. Frank's rehashed and previously rejected arguments, *supra*, fail to "reveal[] a sufficient imbalance as to cast doubt on the settlement's fairness." Frank Br. at 10-12: Appellate Order at 118-19. This is

---

[9] *See also* Appellate Order at 120 (noting that "a defendant's separate funds for attorney's fees and class recovery may be a relevant consideration in assessing a settlement's fairness").

- 7 -

particularly true when assessing the Settlement in the context of Rule 23(e)'s holistic approach to evaluating fairness, along with the "useful framework" of the *Grinnell* factors. *Moses*, 79 F.4th at 243; Approval Order at 21-29; Amended Approval Order at *7-*10. Indeed, Rule 23(e)(2)(C)(iii) and "the impact of attorney's fees on class relief is just one of multiple factors" the Court must consider when evaluating the Settlement. Appellate Order at 121. The Settlement is fair, reasonable, and adequate under Rule 23 and *Grinnell*, and the Court should reaffirm its approval.

## III. THE COURT SHOULD REAFFIRM THE ATTORNEYS' FEE AWARD

Frank chose not to challenge the attorneys' fee award on appeal, and instead focused solely on the Settlement's reasonableness under Rule 23(e). Having forgone the opportunity to challenge attorneys' fees on appeal, Frank waived that argument. He now attempts to reassert it, arguing that the Court should reject or reduce the fee award under Rule 23(h). *See* Frank Br. at 3, 17-18. But Frank's deliberate abandonment of this argument on appeal should foreclose the Court's reconsideration of the issue on remand:

> Under [the second rule of the law of the case doctrine], a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision, for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.

*Ben Zvi*, 242 F.3d at 96. Thus, because Frank "did not raise the question of attorney fees on appeal and the Second Circuit did not include the issue in its opinion . . . [i]t would be unfair to allow relitigation of the issue here." *Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A.*, 2001 WL 185134, at *3 (S.D.N.Y. Feb. 23, 2001) ("[A]lthough it had the opportunity, Banesto did not make an issue of the attorney fees before the Second Circuit. It would be unfair to allow relitigation of the issue here. . . . Banesto can not and did not demonstrate a change in applicable law, a manifest injustice in upholding the District Court's previous decision, or evidence that was not available during earlier proceedings. Therefore, the prior award will stay.").

- 8 -

In any event, the Court here already properly exercised its discretion in awarding fees in the Actions, including carefully considering the same argument that Frank advances again on remand – *i.e.*, in order to avoid "windfall fees," the Court should reduce the fee award to no more than 25% of the funds claimed by Settlement Class Members. Frank Br. at 17-18. In previously rejecting these arguments, the Court reasoned that "such an award would not give due credit for Class Counsel's efforts or the results achieved in this case," and further observed that "such a low award may disincentivize some plaintiffs' attorneys in pursuing cases like this one in the future." Amended Approval Order at *12. The Court of Appeals did not address the evaluation of attorneys' fees other than to clarify that the proportionality analyses conducted under Rules 23(e) and 23(h) are separate and distinct. Appellate Order at 121-22. Thus, nothing has changed that would require the Court to reevaluate its analysis of attorneys' fees on remand, and the fee award should be reaffirmed.[10]

## IV. HUANG'S OBJECTION SHOULD BE REJECTED

Frequent class action settlement objector Shiyang Huang also submitted a purported "objection" to the Renewed Motion under Rule 23(e)(5). *See generally* Huang Br.[11] Formal objections, however, were due on August 17, 2022, and were required to follow certain procedures to be considered valid. *See* ECF No. 437, Ex. B1 at 9. Huang failed to timely submit his objection, and did not otherwise comply with the objection criteria as detailed in the notice. Huang Br. at 1-2.[12] His objection should therefore be overruled and/or stricken on these bases alone. *See In re*

---

[10] *See, e.g.*, *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 867 F.3d 791, 793 (7th Cir. 2017) (distinguishing *Pearson*, 772 F.3d at 780-81, directing district court to award $2.7 million in fees despite $900,000 benefit to the class, and explaining that where class counsel devoted "extensive time and effort" in a "difficult case against a powerful corporation," counsel are "entitled [] to a fee in excess of the benefits to the class").

[11] Numerous courts have recently overruled Huang's objections. *See, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *40-*41 (N.D. Ala. Aug. 9, 2022), *aff'd sub nom., In re Blue Cross Blue Shield Antitrust Litig.* MDL 2406, 85 F.4th 1070 (11th Cir. 2023); *McMorrow v. Mondelez Int'l, Inc*., 2022 WL 1056098, at *4-*6, *9 (S.D. Cal. Apr. 8, 2022); *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1261-64 (11th Cir. 2021).

[12] Acknowledging the tardiness of his objection, Huang argues for an extension to file his brief due to "lack of notice on remand." Huang Br. at 1. The cases upon which he relies, however, do not support his request. In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, the Supreme Court established four factors for courts to consider when addressing claims of excusable neglect. 507 U.S. 380, 395 (1993). But Huang makes no attempt to even discuss

*Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *11 (S.D.N.Y. Apr. 26, 2016) (finding that late-filed "objections are untimely and must be rejected on that basis alone"). Nevertheless, Huang's arguments largely overlap with Frank's and include attacks on the allegedly throttled claims process and inadequate and disproportionate Settlement benefits. Huang Br. at 1-2.[13] Huang makes other, sometimes difficult-to-discern, arguments that echo those that Plaintiffs have already addressed, including complaining that he was "deprived of economic incentive to file a claim" and requesting that the entire Settlement be thrown out and rewritten to increase the class relief because Plaintiffs "thr[e]w away . . . a major component of the class's recovery." Huang Br. at 1-2. All of these arguments should be rejected for the reasons stated above and in the Renewed Motion.[14]

## V.  CONCLUSION

For the reasons discussed above and in their previous submissions, Plaintiffs respectfully request that the Court reaffirm its grant of final approval of the proposed Settlement and the awards of attorneys' fees and Class Representative Payments, and overrule the purported objections.

---

these factors, let alone demonstrate that he meets the standard for excusable neglect. Rather, the Claims Administrator informed Class Counsel that Huang submitted a claim without proof of purchase for one unit of "flushable" wipes, demonstrating his awareness of the Settlement before the objection deadline and corresponding indifference in waiting over three years to lodge his objection. In *In re Navigant Consulting, Inc., Securities Litigation*, 275 F.3d 616, 620 (7th Cir. 2001), the court affirmed an order denying a motion to intervene where "objectors tarried when their own deeds [] demonstrate that they understood the need for action." While that order was eventually vacated in *Grimes v. Navigant Consulting, Inc.*, 536 U.S. 920 (2002) in light of *Devlin v. Scardelletti*, 536 U.S. 1 (2002), *Devlin* merely held that "nonnamed class members [] who have **objected in a timely manner** to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." 536 U.S. at 14.

[13] Huang appears to misunderstand both the Settlement benefits and claims-filing process, implying that he was required to use an envelope and stamp to submit a claim, and "mail-in [his] UPC [code] found in a bathroom[,] . . . for no more than $1 net." Huang Br. at 1. But Settlement Class Members were permitted to submit claims online for up to seven dollars without proof of purchase. ECF No. 432-1 ¶¶2.2, 2.4.

[14] Huang's cited authority is likewise inapposite. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594-96 (2013) (vacating order granting motion to remand where class-action plaintiff stipulated he would not seek damages that exceed $5 million); *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-49 (2d Cir. 2020) (vacating order approving settlement because class of past purchasers of pasta could not maintain certification for injunctive relief under Rule 23(b)(2)).

DATED: October 6, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA
FRANCIS P. KARAM

/s/ Vincent M. Serra
VINCENT M. SERRA

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com
fkaram@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiffs*