UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
D. JOSEPH KURTZ, Individually and on
Behalf of All Others Similarly Situated,

               Plaintiff,

       - against -

KIMBERLY-CLARK CORPORATION and
COSTCO WHOLESALE CORPORATION,

               Defendants.
--------------------------------------------------------x
--------------------------------------------------------x
GLADYS HONIGMAN; and D. JOSEPH
KURTZ, Individually and on Behalf of All
Others Similarly Situated,

               Plaintiffs,

       - against -

KIMBERLY-CLARK CORPORATION,

               Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-1142 (PKC) (RML)

**MEMORANDUM & ORDER**
15-CV-2910 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

Plaintiffs D. Joseph Kurtz and Gladys Honigman, on behalf of two putative classes, brought the instant class action lawsuit against Defendants Kimberly-Clark Corporation and Costco Wholesale Corporation, alleging that Defendants falsely labeled and advertised their bathroom wipes as "flushable" and seeking damages under New York General Business Law. Before the Court is Plaintiffs' renewed motion for final approval of attorneys' fees pursuant to the class settlement agreement entered into by Plaintiffs and Defendant Kimberly-Clark Corporation, following the Second Circuit's remand of this matter. *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th

112, 115, 121 (2d Cir. 2025). For the reasons set forth below, Plaintiffs' renewed motion is granted in its entirety.

## BACKGROUND[1]

### I. Procedural History

In April 2022, eight years after the lawsuits were initiated, Plaintiffs and Defendant Kimberly-Clark Corporation ("Kimberly-Clark") (together, the "Parties") entered into a settlement agreement ("Settlement") setting forth the terms and conditions for a proposed settlement and the dismissal of the instant class action lawsuits as to Kimberly-Clark. (*See* Settlement Agreement & General Release ("Settlement Agreement"), Kurtz Dkt.[2] 432-1.)

On May 19, 2022, Plaintiffs moved for preliminary approval of the Settlement, (*see* Kurtz Dkt. 430), which the Court granted on May 19, 2022, (*see* Kurtz Dkt. 439). On August 3, 2022, Plaintiffs moved for final approval of the Settlement and applied for attorneys' fees. (Kurtz Dkt. 442.) On August 16, 2022, Class member Theodore H. Frank filed an objection to the Settlement and fee application, contending that the Settlement failed to meet the fairness standard under Federal Rule of Civil Procedure ("Rule") 23(e) and that the requested fees were

---

[1] The procedural history and factual background of this litigation has been detailed extensively in various opinions by the Court. *See Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML), 2024 WL 184375, at *1–2 (E.D.N.Y. Jan. 17, 2024), *vacated and remanded*, 142 F.4th 112 (2d Cir. 2025); *Kurtz v. Kimberly-Clark Corp.*, 414 F. Supp. 3d 317, 321–30 (E.D.N.Y. 2019), *aff'd in part, rev'd in part and remanded sub nom. Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 496–97 (E.D.N.Y. 2017). Thus, the Court recounts here only the background relevant to this decision.

[2] Citations to the "Kurtz Dkt." and "Kurtz Min. Entry" refer to the docket entries in *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML). Several docket entries are included in both the docket for *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML) and *Honigman v. Kimberly-Clark Corp.*, No. 15-CV-2910 (PKC) (RML). In the interest of brevity and clarity, the Court herein cites only to the entries in the *Kurtz* action. Unless otherwise noted, the filings are equally relevant to the *Honigman* action.

unreasonable. (*See* Kurtz Dkt. 446.) The Court held two settlement approval hearings thereafter, (*see* 09/07/2022 Kurtz Min. Entry; 11/07/2022 Kurtz Min. Entry), and, on June 12, 2023, approved the Settlement, certified the settlement class, and scheduled a hearing on the fees for the Class's attorneys ("Class Counsel"), (Mem. & Order, Kurtz Dkt. 471, at 30).

On September 13, 2023, the Court informed the Parties that it would discuss the impact of the Second Circuit's decision in *Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023) on the previously approved Settlement at a new hearing on Class Counsel's fees. (09/13/2023 Dkt. Order.) On September 19, 2023, the Court held the fees hearing, (09/19/2023 Kurtz Min. Entry), and on January 17, 2024, the Court granted final approval in part and denied it in part, approving all of the Settlement's terms, except that the Court imposed an across-the-board 20% reduction to Class Counsel's fees, reducing them to $3,169,335.02. *See Kurtz*, 2024 WL 184375, at *16.

Objector Frank appealed the Court's amended final approval and, on July 1, 2025, the Second Circuit vacated the Court's approval and remanded for review consistent with the Circuit's decision. *See Kurtz*, 142 F.4th at 115–16. On August 22, 2025, Plaintiffs renewed their motion for final approval of the Settlement. (*See* Pls.' Renewed Mot. for Final Approval, Kurtz Dkt. 494; Pls.' Mem. in Supp. Mot. for Final Approval ("Pls.' Mem."), Kurtz Dkt. 495.) Frank and another Class member, Shiyang Huang (together, the "Objectors"), filed objections on September 5, 2025, and September 21, 2025, respectively. (*See* Obj. of Theodore H. Frank ("Frank Obj."), Kurtz Dkt. 496; Obj. of Shiyang Huang ("Huang Obj."), Kurtz Dkt. 497.) Kimberly-Clark filed a memorandum in support of final approval of the Settlement on October 6, 2025. (*See* Kimberly-Clark's Br. in Resp. to Frank Obj. ("Kimberly-Clark Br."), Kurtz Dkt. 499.)

## II.  Prior Settlement Approval

### A.  Settlement Terms

The Settlement provided that Kimberly-Clark would pay up to $20 million in compensation to the Class, generally defined as "all individuals over the age of 18 who purchased [its flushable wipes products] not for the purpose of resale" between 2008 and 2022.  (Settlement Agreement, Kurtz Dkt. 432-1, ¶¶ 1.32, 1.35, 2.5.)  Class members who provided proof of purchase could claim $1.10 per package of wipes purchased, for a maximum of 46 packages, or $50.60 in total per any one household.  (*Id.* ¶ 2.4.)  Class members without proof of purchase could claim $0.70 per package, for a maximum of 10 packages, or $7.00 in total.  (*Id.*)  Kimberly-Clark also agreed to pay up to $4.1 million to Class Counsel for attorney's fees and expenses, separate from the $20 million for class recovery.  (*Id.* ¶ 6.1.)  In other words, the attorney's fees and class recovery funds were "separately funded." *Kurtz*, 142 F.4th at 120.

At the time Plaintiffs moved for final approval of the Settlement, the total value of the compensation to the Class was $993,958.70.  *Kurtz*, 2024 WL 184375, at *12.  The unpaid funds, or roughly $19 million, was to revert to Kimberly-Clark.  *Id.*  Additionally, Class Counsel sought roughly $3.9 million in attorneys' fees, roughly $138,000 in litigation expenses and charges, and $15,000 in incentive awards to the named Plaintiffs.  *Id.*

### B.  Rule 23(e)(2) and *Grinnell* Factors

In the 2024 decision granting final approval, the Court first revisited its prior review[3] of the Settlement in light of the *Moses* decision and found that the Rule 23(e)(2)(C)–(D) and *Grinnell*

---

[3] The Court's prior review occurred on June 12, 2023, following the second settlement approval hearing, which was before *Moses* was decided.  (*See* Mem. & Order, Kurtz Dkt. 471.)

factors[4] "weigh[ed] in favor of finding that the Settlement [was] substantively fair and warrant[ed] final approval, subject to [a] reduction of the requested attorneys' fees." *Id.* at *7. Relevant here, the Court determined whether the relief was adequate by looking to "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). With regard to the first and second factors, "the Court d[id] not revisit [its prior] analysis and simply affirm[ed] its prior finding that these factors weigh in favor of final approval." *See id.* With regard to the third factor, the Court found that because the attorneys' fees were funded separately from the settlement benefits, "the attorneys' fee award will not affect the Class's recovery." *Id.* at *8. Therefore, the Court found, the Class's interests were adequately protected, and the payment timing provision for the attorneys' fees did not result in "any unfairness to the Class Members." *Id.* at *8. The fourth factor was not at issue and, turning to Rule 23(e)(2)(D), the Court found that the requested incentive awards for the named plaintiffs were "reasonable in light of the circumstances of this case." *Id.* at *8–9. Finally, the Court reaffirmed its prior conclusion that the remaining *Grinnell* factors support final approval of the Settlement. *Id.* at *10.

---

[4] The "*Grinnell* factors" refers to the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

**C.  Class Counsel Fees**

1.  Percentage-Based Review

In reviewing the attorneys' fees requested by Class Counsel under Rule 23(h) and the *Goldberger* factors,[5] the Court started by recognizing that courts in this circuit "are divided between the lodestar and the percentage-of-fund method" as the better approach to determining whether attorneys' fees are reasonable in a "claims-made settlement" like the one in this case.  *See id.*  Looking first at a potential analysis under the percentage-of-fund method,[6] the Court found that there was "a huge disparity between the benefits that will actually be achieved by the Class Members and the amount of funds that will revert to the Defendant" and, thus, the "unclaimed funds should not be used when assessing the fee percentage." *Id.* at *12.  The Court calculated the fee percentage to be "77.5% of the Settlement's total value,"[7] and found that amount to be "unreasonable under the circumstances." *Id.*

_____

[5] The "*Goldberger* factors" refers to the six factors set out in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), that the Court must consider in assessing the reasonableness of attorneys' fees in class actions.  Although the Court did not explicitly cite to Rule 23(h) in its analysis of the attorneys' fees, *see Kurtz*, 2024 WL 184375, at *10–18, the Court discussed Rule 23(h) and the *Goldberger* factors in setting out the legal standard for its analysis, *see id.* at *3–4.

[6] As the Court explained, "[u]nder the percentage method, the court calculates the fee award as some percentage of the funds made available to the Settlement Class." *Kurtz*, 2024 WL 184375, at *11 (citation omitted).  The Court determined that the allocation of fees by percentage should not be based on the unpaid funds that would revert back to Kimberly-Clark. *Id.* at *11–12.

[7] To arrive at the "total value" of the Settlement, the Court added together $993,958.70 in "actual monetary benefits" that the Class would receive under the Settlement; $3,961,668.77 in attorneys' fees requested by Class Counsel; $138,331.23 in litigation expenses; and $15,000 in incentive awards for the named Plaintiffs. *Id.* at *12.  The Court then found that "[a]s such, under the percentage-of-the-fund method, the total value of the Settlement is $5,108,958.70, compared to $20 million, the total amount of funds made available under the Settlement," and that "the requested fee award [was] approximately 77.5% of the Settlement's total value." *Id.*

However, the Court also rejected Objector Frank's invitation to reduce the fees to a 25% benchmark. *See id.* Such a low award would "not give due credit for [Class Counsel's] efforts or the results achieved in this case." *Id.* (quoting *Hart v. BHH, LLC*, No. 15-CV-4804 (WHP), 2020 WL 5645984, at *9 (S.D.N.Y. Sep. 22, 2020)). Instead, given the "eight years of intensive litigation, which entailed substantial discovery, motion practice, and two appeals to the Second Circuit," and the likelihood that "a low 'award may disincentivize some plaintiffs' attorneys' in pursuing cases like this one in the future," the Court found that "the percentage of the fund does not appear to be a useful metric" and that, "'[d]ue to the atypical structure of the [S]ettlement, lodestar is a more accurate measure of attorneys' fees,' and should be applied here." *Id.* (alterations in original) (quoting *Hart*, 2020 WL 5645984, at *9).

### 2. Lodestar-Based Review

Under the lodestar method, the Court "scrutinize[d] the fee petition to ascertain the number of hours reasonably billed to the class and then multiplie[d] that figure by an appropriate hourly rate." *Id.* at *12 (quoting *Goldberger*, 209 F.3d at 47). Because of factors including high partner, associate, and other legal personnel billing rates; partner-heavy billing; vagueness in the timekeeping; block billing; and the billing of a summer associate, the Court "exercise[d] its informed discretion to impose an across-the-board reduction of 20% to Class Counsel's fee application," and found $3,169,335.02 to be a reasonable fee for Class Counsel. *See id.* at *12–16.

Finally, the Court reviewed the lowered fee against the six *Goldberger* factors and found that they "weigh[ed] in favor of approving the adjusted attorneys' fee award." *See id.* at *16–18. The Court found that: (a) "Class Counsel expended significant time, resources, and effort in successfully representing the Class," which was "necessary and reasonable for complex class actions of this type"; (b) the magnitude and complexities of litigation weighed in favor of approval;

7

(c) Plaintiffs would encounter substantial litigation risks at trial because of the complexities of the case; (d) Class Counsel achieved a "favorable result" against a "sophisticated company represented by highly capable counsel"; (e) the adjusted attorneys' fee award was "appropriate and [did] not constitute a windfall to Class Counsel"; and (f) the adjusted award was "reasonable in light of the need to incentivize similarly experienced attorneys to take on the risk of litigation to police valuable policy goals and the fact that Plaintiffs were unlikely to pursue their claims individually due to the burden of litigation, balanced against the need for moderation given Plaintiffs' lack of incentive to oppose Class Counsel's fee application." *Id.* (citations omitted).

Accordingly, the Court approved the adjusted award. *See id.* at \*18.

### III. Second Circuit's Decision

On appeal, the Second Circuit vacated the Court's decision. *See Kurtz*, 142 F.4th at 115, 121. The Circuit found that the Court "erred when it applied Rule 23(e)" without engaging in a proportionality analysis—i.e, "considering the allocation of recovery between the class and class counsel." *Id.* at 120. The Circuit noted that the Court had considered the "segregation of the fee funds from the class recovery funds" under Rule 23(e), reasoning that "the size of the fee award cannot impact class relief." *Id.* (citing *Kurtz*, 2024 WL 184375, at \*8). However, the Circuit explained, "formal segregation tells [a court] little of the practical reality of the settlement negotiations." *Id.* Although the funds' separation "may be a relevant consideration in assessing a settlement's fairness, it is not a replacement for the proportionality analysis," and "'class recovery and the agreement on attorneys' fees should be viewed as a package deal' even when the two are structurally segregated." *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948–49 (9th Cir. 2011)).

The Circuit also noted that the Court had analyzed the allocation of recovery between the Class and Class Counsel in its Rule 23(h) analysis. *See id.* Nonetheless, the Circuit reasoned that

"further analysis was needed under Rule 23(e)." *See id.* While "both [Rule 23(e) and Rule 23(h)] ask courts to weigh class recovery against attorney's fees," they are "distinct rules with distinct purposes," and thus "Rule 23(e) requires its own separate analysis of fees in relation to class relief, regardless of how the court conducts its Rule 23(h) inquiry." *Id.* at 121.

Ultimately, however, the Circuit offered "no opinion as to whether the settlement in this instant case is fair under Rule 23(e) or not." *Id.*

## LEGAL STANDARDS

### I.     Settlement Approval under Rule 23(e)

#### A.     Generally

Under Rule 23(e)(2), a district court may approve a class action settlement only upon "finding that it is fair, reasonable, and adequate." *Moses*, 79 F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2)). To make that determination, a court should expressly evaluate four "primary procedural considerations and substantive qualities that should always matter" in its "holistic[]" review of a proposed settlement. *Id.* at 242–43 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (the "2018 Advisory Note")). These four considerations include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

"The first two factors are procedural in nature," *Moses*, 79 F.4th at 242, and "examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *In re*

9

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (quoting 2018 Advisory Note). The latter two factors "guide the substantive review of a proposed settlement," *Moses*, 79 F.4th at 243, in assessing "[t]he relief that the settlement is expected to provide to class members," *In re Payment Card*, 330 F.R.D. at 29 (alteration in original) (quoting 2018 Advisory Note).

Specifically, in evaluating the substantive fairness of a proposed settlement, a court must expressly consider the "two core factors" under Rule 23(e)(2)(C)–(D): "the adequacy of relief provided to a class and the equitable treatment of class members." *Moses*, 79 F.4th at 244. Such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the settlement agreement. *Id.* Importantly, "the revised Rule 23(e)(2) does not displace" the *Grinnell* factors, "which remain a useful framework for considering the substantive fairness of a settlement." *Id.* at 243.

### B. Attorneys' Fees Relative to Class Recovery

As outlined in the Circuit's decision, Rule 23(e) also requires "courts to compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and to consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.4th at 118–19. Courts must do so "regardless of whether a settlement is structured as two separate funds." *Id.* at 117. This evaluation allows the courts to ensure that class counsel does not "undervalue the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly"—"[o]ne of the major risks of class action settlements." *Id.* at 118. Nonetheless, "[s]uccessful class counsel should certainly be compensated." *Id.* Rule 23(e)'s comparative inquiry is also distinct from a Rule 23(h) inquiry into counsel's success, as the former focuses on what the proportion reveals about the adequacy of class relief. *See id.* at 121.

10

**II.     Law of the Case and Mandate Rule**

The "law of the case" doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).  In the absence of an "intervening ruling of a higher court, . . . when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367 n.6 (2d Cir. 2024) (quoting *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999)).

"[W]here a case has been decided by an appellate court and remanded," however, "the court to which it is remanded must proceed in accordance with the mandate and such law of the case as established by the appellate court." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)); *see Callahan*, 96 F.4th at 367 (noting that a district court "has no discretion in carrying out the mandate." (quoting *Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015))).  A court must consider "both the express terms and broader spirit of the mandate to ensure that its terms have been 'scrupulously and fully carried out.'" *Puricelli*, 797 F.3d at 218 (quoting *Ginett v. Comput. Task Grp., Inc.*, 11 F.3d 359, 361 (2d Cir. 1993)).  Still, a "mandate is controlling only as to matters within its compass." *Fezzani v. Dweck*, No. 24-2478, 2025 WL 3061340, at *2 (2d Cir. Nov. 3, 2025) (summary order) (quoting *In re Coudert Bros. LLP*, 809 F.3d 94, 98 (2d Cir. 2015)).

11

## I.     Scope of the Mandate

As a starting point, the Court does not read the Circuit's decision to vacate the Court's rulings on the Settlement's terms outside of Rule 23(e). In describing the reasoning for its decision, the Circuit specifically stated that it vacated the Court's order and judgment approving the Settlement only "because [the Court] did not adequately consider the allocation of recovery between attorney's fees and class compensation in its Rule 23(e) discussion." *Kurtz*, 142 F.4th at 115. The Circuit also discussed the Court's Rule 23(h) analysis, *see id.* at 120–21, but it clearly stated that the question of whether the Court's award of roughly $3.1 million as fees to Class Counsel satisfied Rule 23(h) was not before it on appeal. *See id.* at 116. Finally, the panel declined to "reach the question whether the [S]ettlement . . . was necessarily improper." *Id.* at 115; *see id.* at 121 ("To be clear: we offer no opinion as to whether the settlement in this instant case is fair under Rule 23(e) or not. That decision remains within the district court's discretion.").

Similarly, the Court also does not understand the mandate's text and broader spirit to preclude reliance on the Court's prior conclusions as to whether other Rule 23(e) elements, as well as the *Grinnell* and *Goldberger* factors, weigh in favor or against approval of the Settlement. As the Circuit put it, "the impact of attorney's fees is just one of multiple factors detailed in Rule 23(e)." 142 F.4th at 121. Additionally, beyond the mandate, the Objectors identify no "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Ali*, 529 F.3d at 490 (quoting *Tenzer*, 213 F.3d at 39). Accordingly, the Court reaffirms its prior ruling that "all four factors enumerated in Rule 23(e)(2) and the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement," *Kurtz*, 2024 WL 184375, at *10; (*see* Mem. & Order, Kurtz Dkt. 471, at 22–26, 28–29), except to the extent affected by the Court's reconsideration of its prior Rule 23(e) conclusions in light of the mandate. The

Court also reaffirms that the *Goldberger* factors, which already account for a comparison between the requested fees and the total value of the Settlement, generally favor approval of the Settlement. *See Kurtz*, 2024 WL 18437, at *16–17.

## II. The Appropriate Benchmark for the Proportionality Analysis

The Court now turns to the issue on remand: the fairness of the settlement as measured, in part, by the Rule 23(e) proportionality analysis, i.e., the "allocation of recovery between the class and class counsel," *Kurtz*, 142 F.4th at 120.

As the Circuit noted, "a proportionality analysis comparing fees and class recovery raises the question: fees in proportion to exactly what 'class recovery'?" *Id.* at 119. The Circuit found it to be a "fact-bound question that is best left to the district court's discretion." *Id.* With respect to this analysis, "[d]ifferent settlement structures, different rates of actual recovery by the class, and different treatments of unclaimed funds might lead a district court to conclude that comparison [of attorneys' fees] to the actual, to the hypothetical, or to some predicted class recovery is most suitable." *Id.* Although the decision of which benchmark to use is left to the district court, the Circuit offered certain guideposts based on ensuring the adequacy of relief to class members: "at one extreme, unduly complicated claim procedures combined with abysmal claim rates would weigh in favor of using actual class recovery as the comparator. On the other hand, if a settlement is structured so that unclaimed funds did not revert to the defendant, then it might make more sense to compare fees to the hypothetical maximum class recovery." *Id.*

Plaintiffs do not argue for any particular measure of "class recovery," stating that "regardless of which benchmark the Court chooses to use for its comparative analysis, the proportion of the recovery allocated to fees in the Settlement undoubtedly does not raise questions about the adequacy of Class relief obtained for Settlement Class Members." (Pls.' Mem., Kurtz Dkt. 495, at 2, 17.) Objector Frank, by contrast, maintains that the Court's decision should turn

solely on the "true class benefit"—the "less than $1 million allocated to the class."  (Frank Obj., Kurtz Dkt. 496, at 12, 17–18.)

Here, the Court finds that the proper measure of class recovery is the actual monetary benefits that the Class will receive—in this case, $993,958.70.  The Court's reasoning for what best measures the "adequacy of class relief" of the Settlement reflects in part its thinking about the measure of "attorney success" under Rule 23(h).[8]  The unpaid funds, about 95% of the "theoretical maximum," would revert to Defendant, and thus remain "purely hypothetical," while "dwarf[ing] any real benefit the class receives."  *Kurtz*, 2024 WL 184375, at *12 (quoting *Hart*, 2020 WL 5645984, at *8).

This conclusion is supported by the guideposts provided by the Second Circuit.  Whereas this case does not involve "unduly complicated claim procedures" or "abysmal claim rates," *see Kurtz*, 142 F.4th at 119, the unclaimed funds revert to Kimberly-Clark and the roughly 5% rate of the maximum claims materializing suggests a relatively low claim rate, both elements which weigh in favor of using the value of the actual claims to determine the appropriate amount of the fees to be awarded to Class counsel.  *See id.* ("Different settlement structures, different rates of actual recovery by the class, and different treatments of unclaimed funds all might lead a district court to conclude that comparison to the actual, to the hypothetical, or to some predicted class recovery is most suitable."); *see also Kurtz*, 2024 WL 184375, at *12 (noting that "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award" (citing *Moses*, 79 F.4th at 244)); *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995 (EK) (JAM), 2025 WL 2773748,

---

[8] Although the mandate maintains that a Rule 23(h) and a Rule 23(e) are "separate," the Circuit acknowledged that their "examination may overlap."  *Kurtz*, 142 F.4th at 121.  Here, the Court relies on its evaluation of Rule 23(h)'s measurement of "attorney success" only insofar as it overlaps with the Rule 23(e) inquiry into "adequacy of class relief."  *See id.*

at \*4 (E.D.N.Y. Sep. 29, 2025) (finding actual recovery to be the appropriate benchmark given the *Kurtz* guidance where claim rates were low, unclaimed funds reverted to the defendant, and higher recovery required proof of purchase for low-dollar purchase over the years).

It could certainly be the case that, in a claims-made Settlement like this one, plaintiffs' counsel might forego some amount of fees to secure a higher cap on claims (and vice-versa).  As the Circuit noted in *Kurtz*, "[a]ttorney's fees and class recovery are inevitably intertwined: parties often negotiate the two simultaneously, and defendants, who pay both fees and class recovery, must be expected to think of the two payments in tandem as they negotiate."  142 F.4th at 120.  But attorneys' fees and claims cap are only two parts of a settlement.  For instance, relevant as well is the predicted amount of claims, which itself depends in part on the cap on any given individual's claim, the necessary proof to recover, the definition of what constitutes the class, and the extent of outreach to class members.  Without more information on the negotiation of these other factors, the Court is unable to conclude that the hypothetical maximum captures a benefit for the class that is relevant to determining the appropriate amount of Class Counsel's fees.[9]  In other words, Plaintiffs have not advanced sufficient evidence for the Court to conclude, without substantial speculation, that Class Counsel's fees would have been higher had the cap on total claims been lower (and the relief less adequate).  In contrast, the actual recovery value—the actual money the Class will receive—provides a tangible and direct measure of an undeniable benefit conferred to the Class.[10]

---

[9] The Court considers the hypothetical maximum and the actual claims as the only two values from which the Court must choose because neither party has advanced a "predicted class recovery" or sufficient data to calculate one.  *See Kurtz*, 142 F.4th at 119.

[10] Kimberly-Clark has also filed a brief stating in part that "[t]his Settlement was negotiated and agreed upon in light of the parties' knowledge of the outcomes in similar class settlements involving other companies' flushable wipes[,] . . . Kimberly-Clark's own then-recent experience in class action settlements, and the eight years Plaintiffs and Kimberly-Clark spent intensely

### III. Fairness Reassessment

Having determined the appropriate benchmark for the Rule 23(e) proportionality analysis, the Court now turns to whether the proportion of attorneys' fees to class recovery, roughly 3:1,[11] "cast[s] doubt on the settlement's fairness." *See Kurtz*, 142 F.4th at 119.

In evaluating proportionality, "[t]he [C]ourt's role as fiduciary is primarily to ensure that the class's own agents—its class representatives and class counsel—have not sold out its interests in settling the case." *Id.* at 118 (quoting 4 Newberg and Rubenstein on Class Actions § 13:40). And, as discussed, while "[s]uccessful class counsel should certainly be compensated," the Court must ensure that "unscrupulous counsel" cannot "quickly settl[e] a class's claim to cut a check." *Id.* (quoting *Moses*, 79 F.4th at 244). Still, "the impact of attorney's fees on class relief is just one of multiple factors detailed in Rule 23(e)." *Id.* at 121. This factor is not "singularly dispositive" and the Court "may again conclude that this settlement is fair and approve it." *Id.*

Courts have diverged on what impact an attorneys' fees award exceeding actual recovery should have on the overall fairness of a settlement.[12] *Briseño v. Henderson*, to which *Kurtz* cited

---

litigating this action." (Kimberly-Clark Br., Dkt. 499, at 6.) Whereas this statement does not change the Court's conclusion, as it does not establish a direct relationship between the claims cap and the attorneys' fees, the Court agrees with Kimberly-Clark that Objector Frank's suggestions and "assertions that . . . the parties intentionally structured the Settlement as to minimize the number of claims" find no support in the record. (*Id.* at 6–7.)

[11] Here, the exact ratio between the actual claims and the attorneys' fees is roughly 3.19:1, or $3,169,335.02 divided by $993,958.70. The Court could also consider the costs, expenses, and incentive awards as part of the class recovery to be compared to the attorneys' fees, which would yield a ratio of 2.76:1, or $3,169,335.02 divided by the sum of the actual claims ($993,958.70), named plaintiffs' incentives ($15,000), and costs and expenses ($138,331.23). The Court need not choose between the two because its decision would be same irrespective of which measure it used. For simplicity, and as a way to capture this range, the Court uses the approximation of "3:1" in its discussion.

[12] Since deciding *Kurtz*, the Court of Appeals has not provided additional guidance as to the permissible allocation of recovery between class and class counsel under Rule 23(e). *C.K. through P.K. v. McDonald*, No. 2:22-CV-1791 (NJC) (JMW), 2026 WL 220984, at *15 (E.D.N.Y.

approvingly, found that a 7:1 ratio of attorneys' fees to a class's actual recovery "raise[d] an urgent red flag." 998 F.3d 1014, 1026 (9th Cir. 2021). In turn, *Hasemann*, a decision in this district issued soon after *Kurtz* was decided, found that a 19:1 proportion of the same measure "d[id] cast some 'doubt on the settlement's fairness,'" but it did not preclude settlement approval. *See* 2025 WL 2773748, at *5 (quoting *Kurtz*, 142 F.4th at 119); *see also Everetts v. Pers. Touch Holding Corp.*, No. 21-CV-2061 (JMA) (ARL), 2025 WL 942800, at *3–4 (E.D.N.Y. Mar. 28, 2025) (approving roughly $300,000 in attorneys' fees where class received, *inter alia*, $98,284.88 in monetary relief and $50,000 in credit monitoring services); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 385–86 (E.D. Pa. 2019) (approving roughly $1.1 million in attorneys' fees where class received $211,255 in monetary relief and $286,986.50 in in-kind relief).[13]

Although the 3:1 ratio in this case raises superficial concerns about the fairness of the Settlement, under the circumstances of this case, and in light of other Rule 23(e)(2)(C) factors, the Court concludes that Rule 23(e)'s factors weigh in favor of approving the Settlement and attorneys' fees of $3,169,335.02. Here, the Court reaffirms that all other aspects of Rule 23(C)(2)(i) and (ii) favor final approval, (*see* Mem. & Order, Kurtz Dkt. 471, at 22–26, 28–29), and that Class Counsel has "expended significant time, resources, and effort in successfully

Jan. 15, 2026) ("Since the Second Circuit decided *Kurtz* around six months ago, it has not provided additional guidance regarding the permissible allocation of recovery between the class and class counsel under Rule 23(e)." (citing *Hasemann*, 2025 WL 2773748, at *4)).

[13] Courts in this district have also approved awards to class counsel upwards of $1 million where the class's recovery was substantially non-monetary. *See C.K. through P.K.*, 2026 WL 220984, at *16, *18 (finding that $5.3 million for attorneys' fees, costs, and expenses "raises no concern about any imbalance"); *Engesser v. McDonald*, No. 25-CV-1689 (FB) (LKE), 2025 WL 2552602, at *9 (E.D.N.Y. Aug. 12, 2025) (finding $1,052,644 for attorneys' costs and fees "fair and reasonable").

representing the Class." *Kurtz*, 2024 WL 184375, at *7, *16. Over the course of eight years, Class Counsel has engaged in "intensive litigation, entailing substantial discovery, motion practice, two appeals to the Second Circuit, class certification, and settlement negotiations." *Id.* at *16 (citation omitted). The case was "complex[]" and going to trial would have been a "substantial litigation risk." *Id.* at *17. "That Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage, is a testament to the skill displayed by Class Counsel." *Id.* (citation omitted). Finally, settlement negotiations were extensive. (*See* Serra Decl., Kurtz Dkt. 444, ¶¶ 27–29.) Any seeming disproportionality between the attorneys' fees and total recovery is explained by the nature of this case as one involving a price-premium claim for an inexpensive consumer product, i.e., flushable wipes; thus, despite Class Counsel's significant expenditure of time and resources over the course of eight years, the potential recovery for Class Members was inherently and unavoidably limited.

It is thus clear that the attorneys' fees reflect this extensive work, that Class Counsel has not "undervalue[d] the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly," and that the instant case is not one where "unscrupulous counsel [seeks to] quickly settl[e] a class's claims to cut a check." *See Kurtz*, 142 F.4th at 118 (citations omitted); *see also Hasemann*, 2025 WL 2773748, at *5 (approving settlement with 19:1 ratio and finding that "[g]iven the long history of th[e] case, class counsel ha[d] not 'quickly settl[ed] a class's claim to cut a check'" (quoting *Moses*, 79 F.4th at 244)); *C.K. through P.K*, 2026 WL 220984, at *17 (approving $5.3 million for attorneys' fees, costs, and expenses in part due to settlement being "the result of hard work by Class Counsel to secure significant, meaningful, and immediate relief for the Classes"). Viewing the fee award and its proportion to the class relief in tandem with all other

aspects of the Settlement, the Court finds that Rule 23(e) is satisfied and that the *Grinnell* and *Goldberger* factors continue to weigh in favor of approving the Settlement.

Objector Frank attempts to rely on the mandate to re-open review of several aspects of the Settlement that the Court previously found favored approval, including the use of separate funds for attorneys' fees and class recovery, the sufficiency of notice, and the claims submissions process. (*See* Frank Obj., Kurtz Dkt. 496, at 15–17; *see also* Huang Obj., Kurtz Dkt. 497, at 1 (raising similar objection to the claim process).) For the reasons discussed above, the Court finds that its prior conclusions as to these factors do not need revisiting in light of the proportionality analysis and in the absence of any new material evidence, clear error, or manifest injustice.

Ultimately, Objector Frank would still have the Court declare that the 3:1 ratio makes the Settlement unreasonable and set Class Counsel's fees to no more than 25% of the claims made, or roughly $250,000. (*See* Frank Obj., Kurtz Dkt. 496, at 18.) Objector Huang argues for a similar result. (*See* Huang Obj., Kurtz Dkt. 497, at 2.) But as the Court noted, the ratio is only one factor in the Court's consideration, and such an award would "not give due credit for [Class Counsel's] efforts or the results achieved in this case," *Kurtz*, 2024 WL 184375, at *12 (quoting *Hart*, 2020 WL 5645984, at *9), and would be patently and woefully inadequate.

Accordingly, the Settlement is substantively fair despite the superficial concern raised by a 3:1 ratio between attorneys' fees and class recovery. Thus, the Court reaffirms its prior ruling that Class Counsel's fees, as previously modified to $3,169,335.02, is reasonable.

**CONCLUSION**

For the reasons stated above, the Court again finds that the Settlement Agreement in these matters is substantively fair, reasonable, and adequate. The Court hereby reaffirms its prior decision finally approving the Settlement Agreement and certifying the Settlement Class. The Court approves and awards: (1) attorneys' fees in the amount of $3,169,335.02 to Class Counsel, (2) litigation expenses and charges in the amount of $138,331.23 to Class Counsel, and (3) class representative incentive awards of $10,000 and $5,000 to Kurtz and Honigman, respectively. These payments shall be paid by Defendant to Plaintiffs and Class Counsel in accordance with the terms of the Settlement Agreement.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 12, 2026
Brooklyn, New York